Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

Aaron L. Parker (*Pro Hac Vice* pending)
aaron.parker@finnegan.com
David C. Reese (*Pro Hac Vice* pending)
david.reese@finnegan.com
Nicholas A. Cerulli (*Pro Hac Vice* pending)
nicholas.cerulli@finnegan.com
Ryan T. Davies (SBN: 330922)
ryan.davies@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

*Attorneys for Defendant and Counterclaim Plaintiffs*
*TETRA TECH, INC. AND TETRA TECH TAS INC.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT AND COUNTERCLAIM PLAINTIFFS' COUNTERCLAIM; DEMAND FOR JURY TRIAL**<br><br>**[Honorable Mark C. Scarsi]** |

1

TETRA TECH, INC.

                Counterclaim Plaintiff,

TETRA TECH TAS INC.

             Third-Party
             Counterclaim Plaintiff,

       v.

PAVEMETRICS SYSTEMS, INC.

             Counterclaim
             Defendant.

Defendant and Counterclaim Plaintiff Tetra Tech, Inc. hereby files its answer and affirmative defenses ("Answer") to the Complaint filed on February 11, 2021 ("Complaint") by Plaintiff and Counterclaim Defendant Pavemetrics Systems, Inc. ("Pavemetrics"). Each of the paragraphs below corresponds to the same numbered paragraph in the Complaint. Tetra Tech, Inc. denies all allegations in the Complaint, whether express or implied, that are not specifically admitted below. Tetra Tech, Inc. further denies that Pavemetrics is entitled to the relief requested in the Complaint, or to any other relief.

## I.    <u>JURISDICTION AND VENUE</u>

1.    Tetra Tech, Inc. admits that Pavemetrics alleges that this Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202. Tetra Tech, Inc. denies the merits of this action or that Pavemetrics has stated a cause of action, and therefore, except as expressly admitted, denies any other allegations set forth in paragraph 1.

2.    Admitted.

3.    Admitted.

4.     Tetra Tech, Inc. admits that Pavemetrics alleges an actual case and controversy exists between the parties sufficient to give rise to this Court's jurisdiction under Article III and 28 U.S.C. § 2201. Tetra Tech, Inc. denies the merits of this action or that Pavemetrics has stated a cause of action, or that Pavemetrics is entitled to the declaratory relief sought in the Complaint, or any other relief whatsoever.

## II.    THE PARTIES[1]

1.     Tetra Tech, Inc. lacks sufficient knowledge or information to either admit or deny the allegations in this paragraph.

2.     Admitted.

## III.    THE PATENT-IN-SUIT

5.     Tetra Tech, Inc. admits that, on July 23, 2019, the United States Patent and Trademark Office issued U.S. Patent No. 10,362,293, entitled "3D Track Assessment System and Method" ("the '293 patent"). Tetra Tech, Inc. further admits that the application for the '293 patent was filed on May 29, 2015, and claims priority to U.S. provisional application No. 62/118,600, filed on February 20, 2015. Tetra Tech, Inc. further admits that Pavemetrics contends that Exhibit A is a copy of the '293 patent. Tetra Tech, Inc. further admits that Tetra Tech, Inc. owns by assignment the '293 patent. Tetra Tech, Inc. denies any remaining allegations in paragraph 5.

## IV.    EXISTENCE OF AN ACTUAL CONTROVERSY

6.     Tetra Tech, Inc. admits that, on January 5, 2021, Tetra Tech, Inc., through its counsel, Aaron Parker of Finnegan, Henderson, Farabow, Garrett, & Dunner LLP, sent a letter to Pavemetrics' Chief Executive Officer, Richard Habel. Tetra Tech, Inc. further admits that Pavemetrics contends that Exhibit B is a copy of the January 5, 2021, letter. Tetra Tech, Inc. further admits that the January 5, 2021, letter included a copy of the '293 patent. Tetra Tech, Inc. further admits that the January 5, 2021, letter states

---

[1] The paragraph numbering in the Complaint restarts in this section (i.e., paragraphs 1 and 2) before continuing the previous numbering in the next section. The same paragraph numbering is used herein to avoid further confusion.

1    "Pavemetrics is making, using, selling, offering for sale, and/or inducing others to use

2    a railroad track inspection system in the United States that infringes the '293 patent,"

3    and that "Pavemetrics' Laser Rail Inspection System ('LRAIL') infringes at least claim

4    1 of the '293 patent." Tetra Tech, Inc. denies any remaining allegations in paragraph 6.

5        7.    Tetra Tech, Inc. admits that the January 5, 2021, letter states "Pavemetrics

6    recently sold its LRAIL track inspection system to CSX Transportation for its use in the

7    United States," and "Pavemetrics recently used its LRAIL track inspection system in

8    the United States in conjunction with a field study with the Federal Railroad

9    Administration." Tetra Tech, Inc. further admits that the January 5, 2021, letter states

10   "Tetra Tech demands that Pavemetrics stop making, using, selling, offering for sale,

11   and inducing others to use its LRAIL track inspection system in the United States.

12   Please confirm in writing within 14 days that you have discontinued, including outlining

13   the steps you have taken, all further infringing activities relating to this track inspection

14   system. In addition, provide an accounting for all LRAIL track inspection systems

15   manufactured, sold, offered for sale, or in use in the United States. This accounting

16   should include the number of units manufactured, sold, or in use, the gross revenues

17   received for the sales of those units, and the net revenues derived from the sales of those

18   units. Absent Pavemetrics' compliance with this request, Tetra Tech will take the

19   necessary steps to enforce its rights without further notice." Tetra Tech, Inc. denies any

20   remaining allegations in paragraph 7.

21       8.    Tetra Tech, Inc. admits that it received, through its counsel, a letter from

22   Mr. Habel on January 19, 2021. Tetra Tech, Inc. further admits that, in the January 19,

23   2021, letter, Mr. Habel purports that Pavemetrics was unaware of the '293 patent and

24   that Pavemetrics was having a U.S. patent attorney study the '293 patent. Tetra Tech,

25   Inc. further admits that Pavemetrics contends that Exhibit C is a copy of the January 19,

26   2021, letter. Tetra Tech, Inc. denies any remaining allegations in paragraph 8.

27       9.    Tetra Tech, Inc. admits that, on January 25, 2021, Tetra Tech, Inc., through

28   its counsel, sent an email to Mr. Habel. Tetra Tech, Inc. further admits that Pavemetrics

contends that Exhibit D is a copy of the January 25, 2021, email. Tetra Tech, Inc. further admits that the January 25, 2021, email states that "[i]f [Pavemetrics does] not substantively respond to the allegations set forth in our January 5, 2021, letter by Tuesday, February 2, 2021, confirming that Pavemetrics has ceased its infringing activities, then Tetra Tech will be forced to pursue legal action to enjoin Pavemetrics from further infringement." Tetra Tech, Inc. denies any remaining allegations in paragraph 9.

10.     Tetra Tech, Inc. admits that it received, through its counsel, a letter from Mr. Habel on February 1, 2021. Tetra Tech, Inc. further admits that, in the February 1, 2021, letter, Mr. Habel purports that "[Pavemetrics] immediately initiated a preliminary internal analysis of Tetra Tech's '293 patent, including the claims of the '293 patent," and "[b]ased upon that preliminary internal analysis, [Pavemetrics has] come to the preliminary conclusion that the LRAIL system does not infringe any of the claims of the '293 patent." Tetra Tech, Inc. further admits that, in the February 1, 2021, letter, Mr. Habel purports that "[Pavemetrics is] now in the process of choosing a US patent attorney, who will independently assess your allegations of infringement," and "[o]nce that independent assessment has been completed, then he will respond directly to you in due course." Tetra Tech, Inc. further admits that Pavemetrics contends that Exhibit E is a copy of the February 1, 2021, letter. Tetra Tech, Inc. denies any remaining allegations in paragraph 10.

11.     Tetra Tech, Inc. admits that, on February 5, 2021, Tetra Tech, Inc., through its counsel, sent an email to Mr. Habel. Tetra Tech, Inc. further admits that the February 5, 2021 email states that "[i]f, by February 12, 2021, Pavemetrics does not provide a detailed analysis, on an element-by-element basis, explaining why Pavemetrics' LRAIL does not infringe claim 1 of the '293 patent, Tetra Tech will have no choice but to proceed with filing a complaint against Pavemetrics in a U.S. District Court for patent infringement of the '293 patent." Tetra Tech, Inc. further admits that Pavemetrics

contends that Exhibit F is a copy of the February 5, 2021, email. Tetra Tech, Inc. denies any remaining allegations in paragraph 11.

12.     Tetra Tech, Inc. admits that Pavemetrics alleges that a substantial controversy of sufficient immediacy and reality between the parties. Tetra Tech, Inc. denies the merits of this action or that Pavemetrics has stated a cause of action, or that Pavemetrics is entitled to the declaratory relief sought in the Complaint, or any other relief whatsoever.

13.     Tetra Tech, Inc. admits that Pavemetrics seeks a declaration that it does not infringe claim 1 or any other claim of the '293 patent. Tetra Tech, Inc. denies the merits of this action or that Pavemetrics has stated a cause of action, or that Pavemetrics is entitled to the declaratory relief sought in the Complaint, or any other relief whatsoever.

## V.     COUNT I:

### (Declaratory Judgment of Non-Infringement of the '293 Patent)

14.     Tetra Tech, Inc. incorporates its responses in the above paragraphs of this Answer (i.e., paragraphs 1 through 4 in Section I, paragraphs 1 and 2 in Section II, and paragraphs 5 through 13 in Sections III and IV).

15.     Tetra Tech, Inc. admits that it has alleged and continues to allege that Pavemetrics infringes at least claim 1 of the '293 patent at least by offering to sell, importing, using, and selling its LRAIL track inspection system in the United States.

16.     Denied.

17.     Tetra Tech, Inc. admits that 35 U.S.C. § 273 provides a defense to infringement based on prior commercial use. Tetra Tech, Inc. denies the merits of Pavemetrics' 35 U.S.C. § 273 defense or that Pavemetrics has stated a cause of action, or that Pavemetrics is entitled to the declaratory relief sought in the Complaint, or any other relief whatsoever. Tetra Tech, Inc. denies the remaining allegations in allegations in paragraph 17.

18.     Denied.

19.     Tetra Tech, Inc. admits that 2012 is at least one year before the effective filing date of the '293 patent. Tetra Tech, Inc. denies the remaining allegations in paragraph 19.

20.     Denied.

21.     Tetra Tech, Inc. admits that Pavemetrics alleges that there is an actual, justifiable, substantial, and immediate controversy between the parties. Tetra Tech, Inc. denies the merits of this action or that Pavemetrics has stated a cause of action, or that Pavemetrics is entitled to the declaratory relief sought in the Complaint, or any other relief whatsoever.

22.     Denied.

## VI.   <u>PRAYER FOR RELIEF</u>

Tetra Tech, Inc. denies any and all allegations of noninfringement in the Complaint. Tetra Tech, Inc. denies all allegations that Pavemetrics is entitled to any relief requested in paragraphs "A-C" of the Complaint's Prayer for Relief, or any other relief whatsoever.

## <u>AFFIRMATIVE DEFENSES</u>

Pursuant to Federal Rule of Civil Procedure 8(c), and without altering any applicable burdens of proof, Tetra Tech, Inc. asserts the following defenses to the Complaint and reserves its right to assert additional defenses.

## FIRST AFFIRMATIVE DEFENSE

Pavemetrics' Complaint, and purported Count I, fails to state a claim upon which relief can be granted.

## SECOND AFFIRMATIVE DEFENSE

Pavemetrics has directly infringed, contributorily infringed, and/or actively induced infringement of the '293 patent, literally or under the doctrine of equivalents, by making, using, importing, offering for sale and/or selling in the United States its LRAIL track inspection system.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**THIRD AFFIRMATIVE DEFENSE**

Pavemetrics' only asserted defense to infringement of the '293 patent under 35 U.S.C. § 273 is inapplicable. Pavemetrics was not commercially using or selling its LRAIL track inspection system, or any other track inspection system, in the United States more than one year prior to the priority date of the '293 patent.

**RIGHT TO ASSERT ADDITIONAL DEFENSES**

Tetra Tech, Inc. reserves the right to assert and pursue any additional defenses, which may be revealed in the further development of this case. Tetra Tech, Inc. also reserves the right to amend this Answer to assert any claim or defense discovery reveals to be appropriate.

**COUNTERCLAIM**

Counterclaim Plaintiff Tetra Tech, Inc. and Third-Party Counterclaim Plaintiff Tetra Tech TAS Inc. (referred to collectively in this counterclaim as "Tetra Tech") allege the following counterclaim against Counterclaim Defendant Pavemetrics:

**NATURE OF COUNTERCLAIM**

1.     This is a counterclaim for patent infringement of United States Patent No. 10,362,293 B2 ("the '293 patent") under the United States Title 35, United States Code, §§ 100 *et seq*., including 35 U.S.C. § 271.

2.     Tetra Tech brings this counterclaim against Pavemetrics because of its infringement of Tetra Tech's patent rights. As explained herein, Pavemetrics' Laser Rail Inspection System ("LRAIL") infringes claims in the '293 patent. Tetra Tech brings this counterclaim to seek injunctive relief and damages arising out of this patent infringement.

**THE PARTIES**

3.     Counterclaim Plaintiff Tetra Tech, Inc. is a United States corporation with a principal place of business at 3475 East Foothill Boulevard, Pasadena, California 91107-6024.

4.     Third-Party Counterclaim Plaintiff Tetra Tech TAS Inc. is a Canadian corporation with a principal place of business at 14940 123 Avenue, Edmonton, Alberta, Canada, T5V 1B4.

5.     Counterclaim Defendant Pavemetrics Systems, Inc. is a Canadian corporation with a principal place of business at 150 Boul René-Lévesque E Bureau 1820 Québec, Quebec, Canada, G1R 5B1.

## JURISDICTION AND VENUE

6.     This counterclaim arises under the patent laws of the United States, Title 35 of the United States Code 35 U.S.C. §101, *et seq*. This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

7.     This Court has jurisdiction over Pavemetrics at least because Pavemetrics has consented to personal jurisdiction in this Court by filing the Complaint in this action.

8.     Venue is proper in this Court with respect to Pavemetrics at least because Pavemetrics filed the Complaint in this action.

## THE ASSERTED PATENT
## U.S. Patent No. 10,362,293 B2

9.     On July 23, 2019, the United States Patent and Trademark Office duly and legally issued U.S. Patent No. 10,362,293 B2, entitled "3D Track Assessment System and Method" ("the '293 patent"). The '293 patent is the subject of Pavemetrics' Complaint for Declaratory Judgment of Noninfringement in this action. A true and accurate copy of the '293 patent is attached as Exhibit A.

10.     Tetra Tech, Inc. is the owner of the '293 patent. Tetra Tech TAS Inc. is an indirect wholly-owned subsidiary of Tetra Tech, Inc. and exclusive licensee of the '293 patent. Tetra Tech, Inc. and Tetra Tech TAS Inc. both have the right to sue for and collect damages.

11.     The '293 patent is valid and enforceable.

<u>**FACTS GIVING RISE TO THIS ACTION**</u>

**Tetra Tech is an Innovator and Leading Provider of Worldwide Engineering Products and Services**

12.     Founded in 1966, Tetra Tech, Inc. is a leading provider of worldwide consulting and engineering products and services that has been *Leading with Science*® to address its clients' most complex needs. With experts in science, research, engineering, construction, and information technology, Tetra Tech's innovative, sustainable solutions help clients address their water, environment, infrastructure, transportation, resource management, energy, and international development challenges. With 20,000 associates in 450 worldwide offices, Tetra Tech's capabilities span the entire project life cycle. In keeping with Tetra Tech's full-service reputation and client-focused approach, Tetra Tech TAS Inc., a subsidiary of Tetra Tech, Inc., provides a complete range of innovative products and services in the railroad transportation sector.

**Tetra Tech's Innovative and Patented 3DTAS Technology**

13.     To improve rail safety in a climate of increasing annual rail traffic volumes and increasing regulatory reporting requirements, objective and automated processes may be used to replace the time consuming and subjective process of manual track inspection. Objective, repeatable, and accurate track inventory and condition assessment also facilitates comprehensive asset management systems including specific track component deterioration models that yield significant economic benefits in the operation, maintenance, and capital planning of rail networks.

14.     One objective of automated systems is non-destructive railway track infrastructure high-speed assessment. Track inspection and assessment systems may use coherent light emitting technology, such as laser radiation, to illuminate regions of a railway track bed during assessment operations. An important consideration after field data collection of railway data is the manner in which the data is processed. One of the most time-consuming tasks is to identify different railway track features and to

1   categorize and track such railway track features.

2      15.   Tetra Tech's innovative three-dimensional track assessment system
3   ("3DTAS") addresses these and other track inspection needs by providing a robust and
4   reliable system for quickly and accurately identifying railway track features and
5   associated measured parametric data at high speeds by automatically processing full
6   width track surface elevation and intensity data to identify features and extract physical
7   parameters of interest. These innovative features of 3DTAS are described and claimed
8   in the '293 patent.

9   **Pavemetrics' Infringing LRAIL**

10     16.   Tetra Tech's patented 3DTAS technology has spawned imitators,
11  including Pavemetrics.

12     17.   Based on public information (including information and documents
13  available on Pavemetrics' website), between March and December 2017, after bidding
14  for and securing a contract with the Federal Railroad Administration ("FRA"),
15  Pavemetrics imported, used, and performed field testing of its LRAIL (see Figure 1,
16  below) at Amtrak's Bear Maintenance Facility in Delaware, and on the mainline near
17  the Wilmington Maintenance Facility (see annotated Figures 4 and 6, below). Exhibit
18  B; *see also* Exhibits C, D, E.



**Figure 1 – Primary Sensor Configuration**

11



Figure 4 – Map of Bear Maintenance Facility          Figure 6 – Map of Wilmington Maintenance Facility

18.     Between May and September 2019, Pavemetrics performed additional use and field testing of its LRAIL (see Figure 1, below) on Amtrak lines starting at approximately MP 25 on the south leg of Wye-Landlith (north of Wilmington, DE) until approximately MP 17 at the Hook Interlocking (Marcus Hook, PA, see annotated Figure 9, below). *See* Exhibit F; *see also* Exhibit G and H.



Figure 1 – LRAIL Trailer



**Figure 9 – Test Loop (MP 25 at Wye-Landlith to MP 17 at the Hook Interlocking)**

19.     Tetra Tech also understands that Pavemetrics performed additional LRAIL field use and testing between at least May 2019 and August 2020 at the Transportation Technology Center (TTC) in Pueblo, Colorado. *See* Exhibit I (High Tonnage Loop at TTC being located in Pueblo, Colorado). And Tetra Tech understands that Pavemetrics recently started its fourth FRA-funded project. *See* Exhibit J.

20.     The description of Pavemetrics' LRAIL based on publicly available information (including information and documents available on Pavemetrics' website), as offered and contracted for, imported, used, and tested in the United States (e.g., Delaware, Pennsylvania, Colorado), confirms that the LRAIL infringes numerous claims of Tetra Tech's '293 patent directed to its innovative and patented 3DTAS technology. Pavemetrics' infringing FRA bid offer and contract, importation, use, and testing of its LRAIL system (along with the associated promotion and advertising) in the United States constitutes infringement of the Tetra Tech's '293 patent as detailed in the Count below.

21.     Separately, Tetra Tech also understands that Pavemetrics has at least offered to sell, sold, imported, and/or delivered an LRAIL to CSX Transportation ("CSX") at CSX headquarters in Jacksonville, FL and/or at CSX's Waycross, GA, terminal. Tetra Tech also understands that Pavemetrics has offered to sell and contracted with CSX to provide LRAILs for delivery and installation on two of CSX's

Autonomous Track Assessment Cars in March-April 2021 in Jacksonville, FL and/or at CSX's Waycross, GA, terminal. Pavemetrics' additional acts of at least offering to sell and selling, its LRAIL in the United States to CSX, and the act of importing the same into the United States also constitutes infringement of the '293 patent, as detailed in the Count below.

22.   On information and belief, CSX chose not to purchase Tetra Tech's 3DTAS in favor of purchasing Pavemetrics' infringing LRAIL, offered by Pavemetrics to CSX.

23.   Upon learning that Pavemetrics was offering its infringing LRAIL to Tetra Tech's customers, Tetra Tech, through its counsel, reached out to Pavemetrics' President and CEO, Richard Habel, on January 5, 2021, to provide notice of the '293 patent and request that Pavemetrics immediately cease its infringing activities. In response, on January 19, 2021, Mr. Habel stated that Pavemetrics was having a U.S. patent attorney study the '293 patent and would respond in due course. On January 25, 2021, and February 5, 2021, Tetra Tech's counsel again requested that Pavemetrics immediately cease all infringing activities or otherwise provide a substantive response explaining why it does not infringe the '293 patent.

24.   Without any advanced notice, and without ever substantively responding to Tetra Tech's requests, Pavemetrics initiated this action seeking a declaratory judgement of noninfringement of the '293 patent. In the Complaint, Pavemetrics' only basis for noninfringement is a purported defense under 35 U.S.C. § 273 due to alleged prior commercial use and sale of the LRAIL more than one year before the priority date of the '293 patent.

25.   The day after filing the declaratory judgment, on February 12, 2021, Pavemetrics' counsel sent a letter to Tetra Tech's counsel, asserting noninfringement due to alleged prior commercial use and sale of its LRAIL since 2012. Exhibit M. As alleged proof for this commercial use and sale, Pavemetrics' counsel provided a copy of a Tetra Tech proposal of a "Pavement Asset Management Program" for the Town of

14

Gibsons (Gibsons, British Columbia, Canada). Exhibit N. The proposal is dated January 2015, however, and not as early as 2012. *Id*. The proposal also does not mention Pavemetrics' LRAIL or any other railroad track inspection system made by Pavemetrics. Instead, the only Pavemetrics system described in the proposal is Pavemetrics' 3D Laser Crack Measurement System (LCMS), which is for pavement inspection, not railroad inspection, as recited by the '293 patent claims. *Id*.; *see also*, Exhibit O. Pavemetrics' LCMS does not meet all of the limitations of the '293 patents.

26.     Tetra Tech understand that Pavemetrics only just recently filed a trademark application for the mark "Railmetrics," as an "intent to use" application filed on November 3, 2020 and claiming priority to a Canadian trademark application filed on October 20, 2020. *See* Exhibit P.

27.     Upon information or belief, Pavemetrics' LRAIL was not being commercially used or sold more than one year before the priority date of the '293 patent, and thus, 35 U.S.C. § 273 does not apply.

## COUNT I

## INFRINGEMENT OF U.S. PATENT NO. 10,362,293 B2

28.     Tetra Tech re-alleges and incorporates by reference the allegations above in Paragraphs 1 – 27 of this Counterclaim as if fully set forth herein.

29.     Pavemetrics has been and is directly infringing under 35 U.S.C. § 271, literally or under the doctrine of equivalents, at least Claims 1, 15, 16, 19-22, 36, 37, and 40-42 of the '293 patent by bidding and contracting for, offering to sell, selling, using, testing, and importing the LRAIL in the United States. *See* ¶¶16-22, *supra*.

30.     Pavemetrics has also been and continues to induce its customers to directly infringe at least Claims 1, 15, 16, 19-22, 36, 37, and 40-42 of the '293 patent by intentionally promoting, advertising, aiding, and instructing customers (e.g., the FRA, CSX) to bid on, purchase, and use its LRAIL in the United States. *See* ¶¶16-22, *supra*. Pavemetrics knew or should have known that the use of the LRAIL by its customers

directly infringes at least Claims 1, 15, 16, 19-22, 36, 37, and 40-42 of the '293 patent in the United States.

31.     Pavemetrics has also contributed and continues to contribute to infringement of the '293 patent. Pavemetrics has also induced and continues to induce infringement of the '293 patent. Pavemetrics knew or should have known that the use and testing of the LRAIL by its customers directly infringes at least Claims 1, 15, 16, 19-22, 36, 37, and 40-42 of the '293 Patent in the United States. *See* ¶¶16-22, *supra*.

32.     The following claim chart demonstrates that each and every element of independent Claim 1 of the '293 Patent is found in the LRAIL imported, used, tested, offered for sale, and sold in the United States:

| '293 Patent, Claim 1 | Pavemetrics' LRAIL[2] |
| --- | --- |
| A system for assessing a railway track bed, the system comprising: |  |

[2] Original images were obtained from Exhibits B, C, D, E, F, G, I, K, and L; *see also* Exhibits H and J. All red line, circle, arrow, and box annotations have been added to the Figures, except for the red boxes in the original images of Figures 16 and 17.

| a power source; |  |
|---|---|
| a light emitting apparatus powered by the power source for emitting light energy toward a railway track; |  |

17

| | |
|---|---|
| a data storage apparatus in communication with at least one processor; |  |
| at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation and intensity image data of the railway track to be stored in the data storage apparatus, wherein the at least one sensor is in communication with the at least one processor; and |  |

|  |  |
|---|---|
| | <br><br>  • **Sensor Controller**<br>• **Data Storage PC**<br>• **Data Processing PC**<br>• Power Invertor<br>• UPS |
| wherein the at least one processor is configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the at least one sensor and saved in the data storage apparatus, the |   • **Sensor Controller**<br>• **Data Storage PC**<br>• **Data Processing PC**<br>• Power Invertor<br>• UPS<br><br>► Data capture<br>  • RailTEC and/or Railmetrics personnel on site at TTC<br>  • Images relayed from trailer to computer in high-rail vehicle<br>  • Uploaded to Railmetrics database for further processing and transfer to RailTEC<br><br> |

| | |
|---|---|
| algorithm comprising the steps of: | |
| a. acquiring three dimensional surface elevation and intensity data representative of an area segment of railway track bed<br><br>b. generating a track elevation map based on the acquired three dimensional data; | <br>Figure 6 – Range Image<br><br><br>Figure 5 – Intensity Image<br><br><br>Figure 7 – 1 mm by 1 mm Scan of Railway |

c. identifying a railway track bed feature from the track elevation map further including the steps of:

i. defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and

ii. moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor; and



Gradient Neighborhood

ROI contains a fastener

ROI contains an object that is similar to a fastener, but it may be covered or surrounded by ballast

ROI is empty

Figure 16 – Fastener Detection Algorithm

Figure 17 – Anchor Change Detection

**3.2   Fastener Change Detection**

The change detection process first detects the ties and rails, and then defines four regions of interest (ROI) at each intersection (two on the gauge side and two on the field side). Each ROI is then inspected for the presence of fasteners using a three-dimensional model. The status of each ROI was reported in three states: a) fastener present, b) ROI contained an object that resembles a fastener, and c) ROI was empty (Figure 16).

**3.3   Anchor Change Detection**

For change detection of anchors, each ROI was inspected for the presence of anchors using a 3-dimensional model before a run-to-run comparison was completed to detect changes (Figure 17).

| d. storing information corresponding to the identified railway track bed feature in the data storage apparatus. | <br> |
|---|---|

33.   In addition, each and every element of Claims 15, 16, 19-22, 36, 37, and 40-42 of the '293 patent is also found in Pavemetrics' LRAIL.

34.   Pavemetrics' acts of infringement have occurred within the United States within the term of the '293 patent.

35.   The description is based on publicly available information. Tetra Tech reserves the right to modify the description, including, for example, based on information about the LRAIL that it obtains during discovery.

36.   Pavemetrics has had actual knowledge of the '293 patent at least as early as January 5, 2021, when Tetra Tech provided Pavemetrics with notice of the LRAIL's infringement of Tetra Tech's '293 patent, through a letter to Pavemetrics' President and CEO, Richard Habel.

37.   Pavemetrics' LRAIL has no substantial non-infringing uses and is not a staple article of commerce.

## **PRAYER FOR RELIEF**

WHEREFORE, Tetra Tech prays for relief against Pavemetrics as follows:

A.     A judgment that Pavemetrics has infringed and is infringing the '293 patent;

B.     A judgment that Pavemetrics has contributed to and induced infringement of the '293 patent, and is actively contributing to and inducing infringement of the '293 patent;

C.     An order under 35 U.S.C. § 283 preliminarily enjoining Pavemetrics from continuing to make, use, sell, and/or offer to sell the products accused of infringing the '293 patent and from further inducing or contributing to the infringement of the '293 patent;

D.     An award of damages adequate to compensate Tetra Tech for the infringement that has occurred, under 35 U.S.C. §§ 284 or 289, including with pre-judgment and post-judgment interest;

E.     An order requiring Pavemetrics to account for and pay to Tetra Tech any and all profits made by Pavemetrics from sales of the LRAIL under 35 U.S.C. § 289;

F.     An award of treble damages for Pavemetrics' willful infringement of the '293 patent, pursuant to 35 U.S.C. § 284;

G.     An accounting and/or supplemental damages for all damages occurring after any discovery cutoff and through the Court's decision regarding imposition of a compulsory ongoing royalty;

H.     An order under 35 U.S.C. § 283 permanently enjoining Pavemetrics from continuing to make, use, sell, and/or offer to sell the products accused of infringing the '293 patent and from further inducing or contributing to the infringement of the '293 patent;

I.     An award of attorneys' fees, expenses and costs based on this being an exceptional case under 35 U.S.C. § 285, including prejudgment interest on such fees, expenses and costs;

J.     Costs and expenses in this action; and

K.     Such other and further relief as the Court deems just and equitable.

1

## DEMAND FOR JURY TRIAL

2      Tetra Tech demands a trial by jury on all issues triable by jury.

3

4

5  Dated:  March 3, 2021                  **CLARK HILL LLP**

6

7                                         By: _____/s/_____
                                               Donald L. Ridge
8
                                         *Attorneys for Defendant and Counterclaim*
9                                        *Plaintiffs*
                                         *TETRA TECH, INC. AND TETRA TECH TAS*
10                                       *INC.*

11                                       Aaron L. Parker (*Pro Hac Vice* pending*)*
12                                       David C. Reese (*Pro Hac Vice* pending*)*
                                         Nicholas A. Cerulli (*Pro Hac Vice* pending*)*
13                                       Ryan T. Davies (SBN:  330922)
                                         **FINNEGAN, HENDERSON, FARABOW,**
14                                       **GARRETT & DUNNER, LLP**

15

16

17

18

19

20

21

22

23

24

25

26

27

28

24