APPLICATION

OF

DAREL MESHER

FOR

LETTERS PATENT OF THE UNITED STATES

FOR

3D TRACK ASSESSMENT SYSTEM AND METHOD

(TETRA TECH, INC.)

ROBINSON IP LAW, PLLC
9724 Kingston Pike, Suite 1403
Knoxville TN 37922

(865) 978-6480          (Tel)
(865) 978-6493          (Fax)

Docketing@robinsoniplaw.com

Attorney Docket:      06.00995.0042

EXHIBIT 2
-74-

Attorney Docket No. 06.00995.0042

CLAIMS

What is claimed is:

1.   A system for assessing a railway track bed, the system comprising:

a power source;

a light emitting apparatus powered by the power source for emitting light energy toward a

5   railway track;

a data storage apparatus in communication with at least one processor;

at least one sensor for sensing reflected light that was emitted from the light emitting

apparatus and acquiring three dimensional image data of the railway track to be stored in the data

storage apparatus, wherein the plurality of sensors are in communication with the at least one

10   processor; and

the at least one processor wherein the at least one processor is configured to run an

algorithm for processing three-dimensional elevation data gathered from the plurality of sensors

and saved in the data storage apparatus, the algorithm comprising the steps of:

a.   acquiring three dimensional data representative of a segment of railway track bed;

15   b.   generating a track elevation map based on the acquired three dimensional data;

c.   identifying a railway track bed feature from the track elevation map; and

d.   storing information corresponding to the identified railway track bed feature in the

data storage apparatus.

20   2. The system of claim 1 wherein the algorithm step of identifying a railway track bed feature
further comprises the step of identifying a rail head edge by detecting significant vertical
gradient edges over a two dimensional area wherein such vertical gradient edges are greater than
a minimum rail height threshold.

25   3. The system of claim 2 wherein the algorithm step of identifying a railway track bed feature
further comprises the step of identifying a rail base edge by detecting significant vertical gradient
edges over a two dimensional area adjacent the detected rail head edge wherein such vertical
gradient edges are greater than a minimum rail base height threshold.

EXHIBIT 2
-75-

# Electronic Acknowledgement Receipt

| | |
|---|---|
| **EFS ID:** | 22484836 |
| **Application Number:** | 14725490 |
| **International Application Number:** | |
| **Confirmation Number:** | 4258 |
| **Title of Invention:** | 3D Track Assessment System and Method |
| **First Named Inventor/Applicant Name:** | Darel  Mesher |
| **Customer Number:** | 117642 |
| **Filer:** | Michael E. Robinson |
| **Filer Authorized By:** | |
| **Attorney Docket Number:** | 06.00995.0042 |
| **Receipt Date:** | 29-MAY-2015 |
| **Filing Date:** | |
| **Time Stamp:** | 15:02:49 |
| **Application Type:** | Utility under 35 USC 111(a) |

## Payment information:

| | |
|---|---|
| Submitted with Payment | yes |
| Payment Type | Credit Card |
| Payment was successfully received in RAM | $3940 |
| RAM confirmation Number | 1424 |
| Deposit Account | |
| Authorized User | |
| The Director of the USPTO is hereby authorized to charge indicated fees and credit any overpayment as follows: | |

**EXHIBIT 2**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/725,490 | 05/29/2015 | Darel Mesher | 06.00995.0042 | 4258 |

117642      7590      03/30/2017
Robinson IP Law, PLLC
9724 Kingston Pike
Suite 1403
Knoxville, TN 37922

| EXAMINER |
|---|
| HASAN, MAINUL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2489 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/30/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

rrobinson@robinsoniplaw.com
docketing@robinsoniplaw.com

**EXHIBIT 2**
**-77-**

| ***Office Action Summary*** | Application No. 14/725,490 | Applicant(s) MESHER, DAREL |
|---|---|---|
| | Examiner MAINUL HASAN | Art Unit 2489 | AIA (First Inventor to File) Status Yes |

| *-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --* |
|---|

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on <u>02/14/2017</u>.
    ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☐ This action is **FINAL**.    2b) ☒ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☒ Claim(s) <u>1-44</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) <u>1-44</u> is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☒ The specification is objected to by the Examiner.

11) ☒ The drawing(s) filed on <u>05/29/2015</u> is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All  b) ☐ Some**  c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4) ☐ Other: _____.

**EXHIBIT 2**
**-78-**

Application/Control Number: 14/725,490                                                    Page 2
Art Unit: 2489

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the first inventor to file provisions of the AIA. There are a total of 44 claims and claims 1-44 are pending.

### *Information Disclosure Statement*

The information disclosure statement filed 02/26/2016 fails to comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because the first entry under the NPL Documents (Russian Patent and Trademark Office grant decision) and the fifth entry titled "European Patent Office, Supplementary European Search Report" were not found attached. Also the contents of 2nd and 3rd entries of NPL Documents titled "International Searching Authority, International search report" were not legible due to poor scanning quality. These four NPL documents of the aforementioned IDS have not been considered and therefore have been striked out.

### *Specification*

Applicant is reminded of the proper language and format for an abstract of the disclosure.

The abstract should be in narrative form and generally limited to a single paragraph on a separate sheet within the range of 50 to 150 words.  The form and legal phraseology often used in patent claims, such as "means" and "said," should be avoided.  The abstract should describe the disclosure sufficiently to assist readers in deciding whether there is a need for consulting the full patent text for details.

**EXHIBIT 2**
**-79-**

Application/Control Number: 14/725,490                                             Page 3
Art Unit: 2489

The language should be clear and concise and should not repeat information given in the title.  It should avoid using phrases which can be implied, such as, "The disclosure concerns," "The disclosure defined by this invention," "The disclosure describes," etc.

The abstract of the disclosure is objected to because it contains a phrase that can be implied ("A 3D track assessment system is **disclosed** …").

Appropriate correction is required. Also see MPEP 608.01(b), Paragraph C – "Language and Format".

### Claim Objections

Claims 1, 22 are objected to because of the following informalities:

Claims 1, 22, 5th element recites " ... *and* ***the at least one processor*** *wherein the at least one processor* ...". Since the "at least one processor" has already been declared in the previous limitation, reiterating it again does not put any weightage to the wherein clause. Moreover, it creates ambiguity in the limitation. The Examiner believes the claimed limitation should be recited as following " ... *and wherein the at least one processor* ...".

Appropriate correction is required.

### Claim Rejections - 35 USC § 102

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

**EXHIBIT 2**
**-80-**

Application/Control Number: 14/725,490                                                Page 4

Art Unit: 2489

**Claims 1-16, 18-21, 24-39, 41-44 are rejected under AIA 35 U.S.C. 102(a)(1) as being anticipated by Kainer et al. (US PGPub 2013/0191070 A1).**

Regarding claim **1**, **Kainer et al.** disclose *a system for assessing a railway track bed* **([0036], L5-6)**, *the system comprising:*

*a power source* **([0046], L14-17)***;*

*a light emitting apparatus powered by the power source for emitting light energy toward a railway track* **([0012], L2-6; Fig. 1** and **2,** reference numeral **40)***;*

*a data storage apparatus* **(Fig. 1,** reference numeral **62)** *in communication with at least one processor* **(Fig. 1,** reference numeral **54, 60)***;*

*at least one sensor for sensing reflected light that was emitted from the light emitting apparatus* **(Fig. 1** and **2,** reference numeral **50)** *and acquiring three dimensional image data of the railway track* **([0029])** *to be stored in the data storage apparatus* **(Fig. 1** shows the communicative coupling between the camera and the storage device **62)***, wherein the plurality of sensors* **(Fig. 2,** reference numeral **50** shows two cameras) *are in communication with the at least one processor* **(Fig. 1** shows communicative coupling between the camera **50** and the processor **54)***; and*

*the at least one processor wherein the at least one processor is configured to run an algorithm* **([0012], L10-13)** *for processing three-dimensional elevation data* **(Figs. 11-12** represent a 3D track elevation map) *gathered from the plurality of sensors* **(Fig. 2,** reference numeral **50** shows two cameras) *and saved in the data storage apparatus* **(Fig. 1** shows the

**EXHIBIT 2**

-81-

Application/Control Number: 14/725,490                                    Page 5
Art Unit: 2489

communicative coupling between the camera and the storage device **62**), *the algorithm*

*comprising the steps of:*

    *a. acquiring three dimensional data representative of a segment of railway track bed*

(**[0047], L14-18**);

    *b. generating a track elevation map based on the acquired three dimensional data*

(**[0082], L18-20; Figs. 11-12** represent a 3D track elevation map where different parameters, e.g.

elevations, height, cracks, splits, orientations, etc. can be measured as disclosed in **[0056], L7-**

**17**);

    *c. identifying a railway track bed feature from the track elevation map* (**[0083], L1-5;**

**[0087], L10-15**); *and*

    *d. storing information corresponding to the identified railway track bed feature in the*

*data storage apparatus* (**[0046], L5-13**).


    Regarding claim **2**, **Kainer et al.** disclose *the system of claim 1 wherein the algorithm*

*step of identifying a railway track bed feature further comprises the step of identifying a rail*

*head edge by detecting significant vertical gradient edges over a two dimensional area wherein*

*such vertical gradient edges are greater than a minimum rail height threshold* (**[0059], Fig. 5;** It

discloses calculating the gradient of the rail head edge **12** with respect to the tie plate. Since the

computer analysis checks the angles of tie plates with respect to rail heads and determines either

a worn out rail head/base plate or not, it is understood that there is a threshold involved in

determining the worn condition).

**EXHIBIT 2**
**-82-**

Attorney Docket No. 06.00995.0042

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Applicant(s):          Tetra Tech, Inc.

Inventor:               Mesher, Darel

Application No.:      14/725,490

Filing Date:            May 29, 2015

Confirmation No.:    4258

Title:                    3D Track Assessment System and Method

Examiner:              Hasan, Mainul

Group Art Unit:      3617


## AMENDMENT A

Mail Stop AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA   22313-1450

Sir/Madam:

In response to the Office Action dated March 30, 2017, please amend the above-referenced application as follows:

**Amendments to the Abstract** begin on page 2 of this paper.

**Amendments to the Claims** are reflected in the listing of claims which begins on page 3 of this paper.

**Remarks/Arguments** begin on page 12 of this paper.

**EXHIBIT 2**
**-83-**

## AMENDMENTS TO THE CLAIMS:

This listing of claims will replace all prior versions and listings of claims in the application:

## Listing of Claims:

1.      (Currently Amended) A system for assessing a railway track bed, the system comprising:

a power source;

a light emitting apparatus powered by the power source for emitting light energy toward a railway track;

a data storage apparatus in communication with at least one processor;

at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation and intensity image data of the railway track to be stored in the data storage apparatus, wherein the plurality of sensors are in communication with the at least one processor; and

~~the at least one processor~~ wherein the at least one processor is configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the plurality of sensors and saved in the data storage apparatus, the algorithm comprising the steps of:

a.   acquiring three dimensional surface elevation and intensity data representative of [[a]]an area segment of railway track bed;

b.   generating a track elevation map based on the acquired three dimensional data;

c.   identifying a railway track bed feature from the track elevation map; and

d.   storing information corresponding to the identified railway track bed feature in the data storage apparatus.


2. (Original) The system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail head edge by detecting significant vertical gradient edges over a two dimensional area wherein such vertical gradient edges are greater than a minimum rail height threshold.

EXHIBIT 2
-84-

## REMARKS

Claims 1-44 are currently pending.  Claims 1 and 22-24 are the pending independent claims.  Claims 1-16, 18-21, 24-39 and 41-44 are rejected under 35 U.S.C. § 102 over U.S. Patent Application Publication Number 2013/0191070 to Kainer et al. ("Kainer").  Claims 22 and 23 are rejected under 35 U.S.C. § 103 over Kainer in view of U.S. Patent Application Publication Number 2010/0026551 to Szwilski et al. ("Szwilski"). Claims 17 and 40 are rejected under 35 U.S.C. § 103 over Kainer in view of U.S. Patent Application Publication Number 2013/0096739 to Landes et al. ("Landes"). Claims 1, 12, 19, 22, 23, 24, 32, 35, 38, 39 and 42 have been amended. No new matter has been introduced by the amendments, which are supported by the disclosure of the original claims and the specification.  Reconsideration and allowance of the claims are requested.

Each of the foregoing rejections is respectfully traversed and favorable reconsideration is requested in view of the above amendments and following remarks.

### I.   Specification Objection

Applicant has submitted an amended Abstract to obviate the objection raised in the Office Action.

### II.  Objection to Claims 1 and 22

Claims 1 and 22 have been amended in accordance with the Examiner's recommendation to obviate the objection to these claims raised in the Office Action.

### III.§ 102 Rejections of claims 1-16, 18-21, 24-39 and 41-44

Claims 1-16, 18-21, 24-39 and 41-44 are rejected under 35 U.S.C. § 102 over Kainer.  "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987).

**EXHIBIT 2**
**-85-**

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

### A.  Claims 1-16, 18-21

Independent claim 1, as amended, claims, *inter alia*, a system for assessing a railway track bed including a processor running one or more algorithms wherein the algorithm steps include (a) acquiring three dimensional *surface elevation and intensity data representative of an area segment of railway track bed*; (b) generating a track elevation map based on the acquired three dimensional data; and (c) identifying a railway track bed feature from the track elevation map. *See, e.g.*, Applicant's Application, ¶ [0007].

### 1.  Claim 1

Applicant's system and method for generating a 3D model is very different from the approach described in Kainer. In Kainer, a very large number of slices or "frames" across the track surface are taken (about 633,600 per mile) and variations in height profile of each slice are used together to identify features of interest in each profile. *See* Kainer, ¶ [0048]. These slices are compiled to arrive at a 3D image. *See* Kainer, ¶ [0056]. In contrast, Applicant's system and method describes 3D surface elevation and intensity data models (the elevations for an *area* of the track surface) to identify features of interest. Kainer does not teach or suggest combining 3D slices to create a surface from which to identify true 3D features (elevations over an area). As such, Kainer does not teach or suggest each and every limitation of Applicant's claim 1. Reconsideration and allowance of claim 1 as amended are respectfully requested.

Dependent claims 2-16 and 18-21 depend from independent claim 1, and contain additional important aspects of the invention.  Therefore, dependent claims 2-16 and 18-21 patentably define over Kainer.  Reconsideration and allowance of dependent claims 2-16 and 18-21 are respectfully requested.

### 2.  Claim 12

Applicant's claim 12 has been amended to expressly exclude rail heads. As disclosed in FIG. 13 of Applicant's Application, the prominent rail head features of a scan are purposefully removed to allow for detection of other, subtler features based on height deviations (e.g., weld artifacts). *See* Applicant's Application, ¶ [00106]. The section relied on in the Office Action in Kainer is specifically referring to rail height and detecting rail wear. *See* Kainer, FIG. 7A. As such, because Applicant's claim 12 is not referring to rail height or rail erosion and in fact

EXHIBIT 2
-86-

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/725,490 | 05/29/2015 | Darel Mesher | 06.00995.0042 | 4258 |

117642          7590          08/16/2017
Robinson IP Law, PLLC
9724 Kingston Pike
Suite 1403
Knoxville, TN 37922

| EXAMINER |
|---|
| HASAN, MAINUL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2489 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/16/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

rrobinson@robinsoniplaw.com
docketing@robinsoniplaw.com

PTOL-90A (Rev. 04/07)

**EXHIBIT 2**
**-87-**

| **Office Action Summary** | Application No. 14/725,490 | Applicant(s) MESHER, DAREL |
|---|---|---|
| | Examiner MAINUL HASAN | Art Unit 2489 | AIA (First Inventor to File) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1) ☒ Responsive to communication(s) filed on *07/31/2017*.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a) ☒ This action is **FINAL.**    2b) ☐ This action is non-final.

3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5) ☒ Claim(s) *1-44* is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6) ☐ Claim(s) _____ is/are allowed.

7) ☒ Claim(s) *1-44* is/are rejected.

8) ☐ Claim(s) _____ is/are objected to.

9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10) ☐ The specification is objected to by the Examiner.

11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12) ☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐ All   b) ☐ Some**   c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____.
      3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4) ☐ Other: _____.

Application/Control Number: 14/725,490                                          Page 2
Art Unit: 2489

## DETAILED ACTION

### *Response to Amendment*

The amendment filed on 07/31/2017 has been entered. Claims 1-44 remain pending in the application. Applicant's amendments are in response to the Non-Final Office Action mailed on 03/30/2017.

### *Information Disclosure Statement*

The information disclosure statement filed 02/26/2016 fails to comply with the provisions of 37 CFR 1.97, 1.98 and MPEP § 609 because the first entry under the NPL Documents (Russian Patent and Trademark Office grant decision) and the fifth entry titled "European Patent Office, Supplementary European Search Report" were not found attached. Also the contents of 2nd and 3rd entries of NPL Documents titled "International Searching Authority, International search report" were not legible due to poor scanning quality. These four NPL documents of the aforementioned IDS have not been considered and therefore have been stroked out.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

> (a)  IN GENERAL.—The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same,  and shall set forth the best mode contemplated by the inventor or joint inventor of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

> The specification shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person

**EXHIBIT 2**
**-89-**

Application/Control Number: 14/725,490                                                    Page 3
Art Unit: 2489

> skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the
> same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 12-13, 16, 19-20, 35-36, 39, 42-43 are rejected under 35 U.S.C. 112(a) or

35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description

requirement. The claim(s) contains subject matter which was not described in the specification

in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint

inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of

the claimed invention.

The aforementioned claims recite "*measuring a surface feature **other than a rail head***

...". The claimed limitation now includes measurement of each and every other features of a rail

track "other than a rail head" with respect to a tie height. The claim limitation has broadened the

scope of the invention by including the measurement process of each and every other features of

a rail track "other than a rail head" with respect to a tie height. However, the originally filed

specification lacks the written description of how each and every features of a rail track is being

measured against a tie height. For written description, the specification as filed must describe the

claimed invention in sufficient detail so that one of ordinary skill in the art can reasonably

conclude that the inventor had possession of the claimed invention. A claim may lack written

description when the claim defines the invention in functional language specifying a desired

result but the specification does not sufficiently identify **how** the inventor has devised the

function to be performed or result achieved. For software, this can occur when the algorithm or

steps/procedure for performing the computer function are not explained at all or are not

explained in sufficient detail.

EXHIBIT 2
-90-

Application/Control Number: 14/725,490                                    Page 4
Art Unit: 2489

### *Claim Rejections - 35 USC § 103*

The following is a quotation of AIA 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

**Claims 1-16, 18-21, 24-39, 41-44 are rejected under AIA 35 U.S.C. 103(a) as being**

**unpatentable over Kainer et al. (US PGPub 2013/0191070 A1) in view of Farritor (US**

**PGPub 2012/0300060 A1).**

Regarding claim **1** (Currently Amended), **Kainer et al.** teach *a system for assessing a*

*railway track bed* (**[0036], L5-6**)*, the system comprising:*

a power source (**[0046], L14-17***);*

*a light emitting apparatus powered by the power source for emitting light energy toward*

*a railway track* (**[0012], L2-6; Fig. 1** and **2,** reference numeral **40***);*

*a data storage apparatus* (**Fig. 1,** reference numeral **62**) *in communication with at least*

*one processor* (**Fig. 1,** reference numeral **54, 60***);*

*at least one sensor for sensing reflected light that was emitted from the light emitting*

*apparatus* (**Fig. 1** and **2,** reference numeral **50**) *and acquiring three dimensional <u>surface*

*elevation and intensity</u> image data of the railway track* (**[0029]. Figs. 11** and **12** show the

perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc.

In **[0105]** it describes how the elevation of different rail track features are measured using the

**EXHIBIT 2**
**-91-**

Application/Control Number: 14/725,490                                          Page 5
Art Unit: 2489

image. On the other hand, in **[0071],** it teaches illuminating the rail track with certain light intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or more camera, which means the captured images contain intensity of light) *to be stored in the data storage apparatus* (**Fig. 1** shows the communicative coupling between the camera and the storage device **62**)*, wherein the plurality of sensors* (**Fig. 2,** reference numeral **50** shows two cameras) *are in communication with the at least one processor* (**Fig. 1** shows communicative coupling between the camera **50** and the processor **54**)*; and*

wherein the at least one processor is configured to run an algorithm (**[0012], L10-13**) *for processing three-dimensional <u>surface</u> elevation <u>and intensity</u> data* (**Figs. 11** and **12** show the perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc. In **[0105]** it describes how the elevation of different rail track features are measured using the image. On the other hand, in **[0071],** it teaches illuminating the rail track with certain light intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or more camera, which means the captured images contain intensity of light) *gathered from the plurality of sensors* (**Fig. 2,** reference numeral **50** shows two cameras) *and saved in the data storage apparatus* (**Fig. 1** shows the communicative coupling between the camera and the storage device **62**)*, the algorithm comprising the steps of:*

a. acquiring three dimensional <u>surface elevation and intensity</u> (**Figs. 11** and **12** show the perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc. In **[0105]** it describes how the elevation of different rail track features are measured using the image. On the other hand, in **[0071],** it teaches illuminating the rail track with certain light intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or

**EXHIBIT 2**
-92-

Application/Control Number: 14/725,490                                      Page 6
Art Unit: 2489

more camera, which means the captured images contain intensity of light) *data representative of
an area segment of railway track bed* (**[0047], L14-18**)*;*

       *b. generating a track elevation map based on the acquired three dimensional data*
(**[0082], L18-20; Figs. 11-12** represent a 3D track elevation map where different parameters, e.g.
elevations, height, cracks, splits, orientations, etc. can be measured as disclosed in **[0056], L7-
17**)*;*

       *c. identifying a railway track bed feature from the track elevation map* (**[0083], L1-5;
[0087], L10-15**)*; and*

       *d. storing information corresponding to the identified railway track bed feature in the
data storage apparatus* (**[0046], L5-13**).

       Although, **Kainer et al.** teach capturing perspective three-dimensional image showing
the elevation of rail head, tie plate, tie surface etc. as shown in **Figs. 11, 12** and also illuminating
the rail track with certain light intensity, e.g. 0.15 watts/in and receiving the reflected light from
the track surface using one or more camera as described in **[0071]**, which means the captured
images contain intensity of light, but it does not explicitly teach capturing the intensity image
data.

       However, **Farritor** teaches a system of rail road deflection measurement using visioning
means which is in the same field of endeavor, where it teaches calculating image intensities from
the captured image data as described in **[0043]**.

       It would have been obvious for one of ordinary skill in the art at the time the invention
was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Farritor's**

**EXHIBIT 2**
-93-

Application/Control Number: 14/725,490                                          Page 7
Art Unit: 2489

usage of image intensity data capturing, because this technique can be used in identifying the edges of the rail, and thereby the slope of the rail in the image (**Farritor; [0043]**).

Regarding claim **2** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail head edge by detecting significant vertical gradient edges over a two dimensional area wherein such vertical gradient edges are greater than a minimum rail height threshold* (**Kainer et al.; [0059], Fig. 5;** It teaches calculating the gradient of the rail head edge **12** with respect to the tie plate. Since the computer analysis checks the angles of tie plates with respect to rail heads and determines either a worn out rail head/base plate or not, it is understood that there is a threshold involved in determining the worn condition).

Regarding claim **3** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 2 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail base edge by detecting significant vertical gradient edges over a two dimensional area adjacent the detected rail head edge wherein such vertical gradient edges are greater than a minimum rail base height threshold* (**Kainer et al.; [0059], Fig. 5;** It teaches calculating the gradient of the rail head edge **12** with respect to the tie plate edge **10**. Since the computer analysis checks the angles of tie plates with respect to rail heads and determines either a worn out rail head/tie plate or not, it is understood that there is a threshold involved in determining the worn condition).

EXHIBIT 2
-94-

Application/Control Number: 14/725,490                                          Page 32
Art Unit: 2489

It would have been obvious for one of ordinary skill in the art at the time the invention

was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Landes et**

**al**'s determination of ballast volume from the acquired data by the system, because since ballast

beneath and between the ties stabilizes the positions of the ties, keeps the rails level, and

provides some cushioning of the composite structure for loads imposed by rail traffic, any

dislodging of the ballast over time could cause rail track deterioration and safety hazards.

Therefore, periodic monitoring of ballast volume and replacement thereof will ensure rail track

safety and integrity (**Landes et al.; [0005], L6-15**).


### *Response to Arguments*

Applicant's arguments filed on 07/31/2017, page 12 – 21, with respect to the rejection(s)

of independent claim(s) 1, 17, 24, 40 under 102(a)(1) have been fully considered but are moot

because the arguments do not apply to any of the references being used in the current rejection.

However, the Examiner would like to reiterate that in **[0029]** and in view of **Figs. 11** and **12**,

**Kainer et al.** show the perspective three-dimensional image showing the elevation of rail head,

tie plate, tie surface etc. In **[0105]** it describes how the elevation of different rail track features

are measured using the image. On the other hand, in **[0071]**, it teaches illuminating the rail track

with certain light intensity, e.g. 0.15 watts/in and receiving the reflected light from the track

surface using one or more camera, which means the captured images contain intensity of light.

But since **Kainer et al.** do not explicitly teach capturing intensity image, the Examiner brings in

the reference of **Farritor** which is in the same field of endeavor and explicitly teach the intensity

image capturing.

**EXHIBIT 2**
-95-

Attorney Docket No. 06.00995.0042

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant(s): | Tetra Tech, Inc. |
| Inventor: | Mesher, Darel |
| Application No.: | 14/725,490 |
| Filing Date: | May 29, 2015 |
| Confirmation No.: | 4258 |
| Title: | 3D Track Assessment System and Method |
| Examiner: | Hasan, Mainul |
| Group Art Unit: | 2489 |

AMENDMENT B AND REQUEST FOR CONTINUED EXAMINATION

Mail Stop RCE
Commissioner for Patents
P.O. Box 1450
Alexandria, VA   22313-1450

Sir/Madam:

In response to the Office Action dated August 16, 2017, please amend the above-referenced application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 11 of this paper.

EXHIBIT 2
-96-

**AMENDMENTS TO THE CLAIMS:**

This listing of claims will replace all prior versions and listings of claims in the application:

**Listing of Claims:**

1.      (Previously presented) A system for assessing a railway track bed, the system comprising:

a power source;

a light emitting apparatus powered by the power source for emitting light energy toward a railway track;

a data storage apparatus in communication with at least one processor;

at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation and intensity image data of the railway track to be stored in the data storage apparatus, wherein the plurality of sensors are in communication with the at least one processor; and

wherein the at least one processor is configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the plurality of sensors and saved in the data storage apparatus, the algorithm comprising the steps of:

    a.  acquiring three dimensional surface elevation and intensity data representative of an area segment of railway track bed;

    b.  generating a track elevation map based on the acquired three dimensional data;

    c.  identifying a railway track bed feature from the track elevation map; and

    d.  storing information corresponding to the identified railway track bed feature in the data storage apparatus.


2. (Original) The system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail head edge by detecting significant vertical gradient edges over a two dimensional area wherein such vertical gradient edges are greater than a minimum rail height threshold.

**EXHIBIT 2**
**-97-**

# REMARKS

Claims 1-44 are currently pending.  Claims 1 and 22-24 are the pending independent claims.  Claims 1-16, 18-21, 24-39 and 41-44 are rejected under 35 U.S.C. § 103 over U.S. Patent Application Publication Number 2013/0191070 to Kainer et al. ("Kainer") in view of U.S. Patent Application Publication Number 2012/0300060 to Farritor ("Farritor").  Claims 22 and 23 are rejected under 35 U.S.C. § 103 over Kainer in view Farritor and further in view of U.S. Patent Application Publication Number 2010/0026551 to Szwilski et al. ("Szwilski"). Claims 17 and 40 are rejected under 35 U.S.C. § 103 over Kainer in view of Farritor and further in view of U.S. Patent Application Publication Number 2013/0096739 to Landes et al. ("Landes"). Claims 12, 16, 19, 23, 35, 39 and 42 have been amended. No new matter has been introduced by the amendments, which are supported by the disclosure of the original claims and the specification.

In response to the final office action mailed on August 16, 2017, Applicant, pursuant to 37 CFR   1.114, requests continued examination by filing the submission of amendments to the claims (above), new claims, and filing the appropriate fee under 37 CFR   1.17(e).  No new matter has been added by the amendments and/or new claims.  Form sb0030 is filed herewith which includes details of this RCE. Each of the foregoing rejections is respectfully traversed and favorable reconsideration is requested in view of the above amendments and following remarks.

## I.  § 112(a) Rejections of claims 12-13, 16, 19-20, 35-36, 39, and 42-43

Claims 12-13, 16, 19-20, 35-36, 39, and 42-43 are rejected under 35 U.S.C. § 112(a) for allegedly failing to comply with the written description requirement. The issue appears to center around the addition of the phrase "other than a rail head" in the prior amendment. These claims have been amended further to remove the phrase "other than a rail head" to obviate this particular refusal.

## II.  § 103 Rejections of claims 1-16, 18-21, 24-39 and 41-44

Claims 1-16, 18-21, 24-39 and 41-44 are rejected under 35 U.S.C. § 103 over Kainer in view of Farritor.  If the sum of references cited against an application is deficient as to the same element or combination of elements required by a rejected claim, then such claim is patentable over the cited references.  See *Velander v. Garner*, 348 F.3d 1359, 1363, 68 USPQ2d 1769, 1772

**EXHIBIT 2**
**-98-**

Application No. 14/725,490
January 15, 2018
Reply to Office Action of August 16, 2017

(Fed. Cir. 2003).  This requirement is separate and distinct from the Federal Circuit's Teaching, Suggestion, Motivation (TSM) Test analyzed in *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) and remains good law.  See *Abbott Laboratories v. Sandoz, Inc.*, 500 F.Supp.2d 846, 852 (N.D. Ill. 2007) (quoted with approval in *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1351 (Fed. Cir. 2008)).

### A. Claims 1-16, 18-21

Independent claim 1, as amended, claims, *inter alia*, a system for assessing a railway track bed including a processor running one or more algorithms wherein the algorithm steps include (a) acquiring three dimensional *surface elevation and intensity data representative of an area segment of railway track bed*; (b) generating a track elevation map based on the acquired three dimensional data; and (c) identifying a railway track bed feature from the track elevation map. *See, e.g.*, Applicant's Application, ¶ [0007]. Claim 1 also discusses the use of at least *one* sensor which implies that a single sensor in the simplest configuration would have to be capable of acquiring three dimensional surface elevation and intensity data for a specific viewing area.

Applicant's system and method for generating a 3D model is very different from the approach described in Kainer. In Kainer, a very large number of slices or "frames" across the track surface are taken (about 633,600 per mile) and variations in height profile of each slice are used together to identify features of interest in each profile. *See* Kainer, ¶ [0048]. These slices are compiled to arrive at a 3D image. *See* Kainer, ¶ [0056]. In contrast, Applicant's system and method describes 3D surface elevation and intensity data models (the elevations for an *area* of the track surface) to identify features of interest. Kainer does not teach or suggest combining 3D slices to create a surface from which to identify true 3D features (elevations over an area). As such, Kainer does not teach or suggest each and every limitation of Applicant's claim 1.

Farritor does not compensate for the deficiencies of Kainer. Farritor describes the use of different machine vision techniques to detect edges including the location of a rail. See Farritor, ¶ [0043]. This edge detection technique "can be used to examine features of groups of pixels such as the intensity and/or color of each pixel in two dimensions. *Id*. In order to get data of a different quality, a second machine vision instrument can be used so that both instruments operate stereoscopically. *Id*. However, this enhanced data acquisition requires at least two sensors. Applicant's claimed invention in claim 1 operates using "at least *one* sensor for sensing

**EXHIBIT 2**
**-99-**

Application No. 14/725,490
January 15, 2018
Reply to Office Action of August 16, 2017

reflected light that was emitted from the light emitting apparatus and *acquiring three dimensional surface elevation and intensity image data* of the railway track to be stored in the data storage apparatus" (emphasis added). The machine vision device described in Farritor cannot accomplish what is required by the simplest embodiment of Applicant's claim 1, namely, the use of *one* sensor for obtaining surface elevation *and* intensity data. If the apparatus described in Kainer were combined with the apparatus described in Farritor, at least *two* image gathering devices would be necessary. The sensor device used in Kainer could potentially be used to obtain some sense of elevation data while the sensor device used in Farritor could be used to gather intensity data. However, two sensing devices would be required. Applicant's embodiment claimed in claim 1 does not require at least two sensors—it requires at least one for each viewing area. For this reason, even a combination of Kainer and Farritor does not meet each and every limitation of Applicant's claim 1. Therefore, Applicant's claim 1 is patentable over the combination of Kainer and Farritor. Reconsideration and allowance of claim 1 are respectfully requested.

"If an independent claim is nonobvious under 35 U.S.C. 103, then any claim depending therefrom is nonobvious." M.P.E.P. § 2143.03 (citing *In re Fine*, 837 F.2d 1071, 5 U.S.P.Q.2d 1596 (Fed. Cir. 1988)). Dependent claims 2-16 and 18-21 depend from independent claim 1, and contain additional important aspects of the invention. Therefore, dependent claims 2-16 and 18-21 patentably define over Kainer in view of Farritor. Reconsideration and allowance of dependent claims 2-16 and 18-21 are respectfully requested.

**B.  Claims 24-39 and 41-44**

Independent claim 24, as amended, claims a method of assessing a railway track bed including, *inter alia*, the steps of (a) defining a three dimensional elevation map based on *surface elevation and intensity data representative of an area segment of the railway track bed*, gathered by *a sensor* sensing reflected light from a track bed surface; (b) storing the elevation map in a data storage apparatus; and (c) identifying a railway track bed feature from the elevation map.

Applicant's system and method for generating a 3D model is very different from the approach described in Kainer. In Kainer, a very large number of slices or "frames" across the track surface are taken (about 633,600 per mile) and variations in height profile of each slice are

EXHIBIT 2
-100-

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/725,490 | 05/29/2015 | Darel Mesher | 06.00995.0042 | 4258 |

117642        7590        02/23/2018
Robinson IP Law, PLLC
9724 Kingston Pike
Suite 1403
Knoxville, TN 37922

| EXAMINER |
|---|
| HASAN, MAINUL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2489 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/23/2018 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

rrobinson@robinsoniplaw.com
docketing@robinsoniplaw.com

**EXHIBIT 2**
**-101-**

| **Office Action Summary** | Application No. 14/725,490 | Applicant(s) MESHER, DAREL |
|---|---|---|
| | Examiner MAINUL HASAN | Art Unit 2489 | AIA (First Inventor to File) Status Yes |

*(Application No. / Examiner / Art Unit table with Applicant MESHER, DAREL and AIA Status Yes)*

| | Application No. | Applicant(s) |
|---|---|---|
| **Office Action Summary** | 14/725,490 | MESHER, DAREL |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | MAINUL HASAN | 2489 | Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --**

## Period for Reply

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

## Status

1)☒ Responsive to communication(s) filed on <u>01/15/2018</u>.
☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2a)☐ This action is **FINAL.**     2b)☒ This action is non-final.

3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

## Disposition of Claims*

5)☒ Claim(s) <u>1-44</u> is/are pending in the application.
    5a) Of the above claim(s) _____ is/are withdrawn from consideration.

6)☐ Claim(s) _____ is/are allowed.

7)☒ Claim(s) <u>1-44</u> is/are rejected.

8)☐ Claim(s) _____ is/are objected to.

9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

## Application Papers

10)☐ The specification is objected to by the Examiner.

11)☐ The drawing(s) filed on _____ is/are:  a)☐ accepted or b)☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

## Priority under 35 U.S.C. § 119

12)☐ Acknowledgement is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

**Certified copies:**
a)☐ All  b)☐ Some**  c)☐ None of the:
    1.☐ Certified copies of the priority documents have been received.
    2.☐ Certified copies of the priority documents have been received in Application No. _____.
    3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).

** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1)☐ Notice of References Cited (PTO-892)

2)☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____.

4)☐ Other: _____.

**EXHIBIT 2**
**-102-**

Application/Control Number: 14/725,490                                                     Page 2
Art Unit: 2489

### *Continued Examination Under 37 CFR 1.114*

A request for continued examination under 37 CFR 1.114, including the fee set forth in

37 CFR 1.17(e), was filed in this application after final rejection.  Since this application is

eligible for continued examination under 37 CFR 1.114, and the fee set forth in 37 CFR 1.17(e)

has been timely paid, the finality of the previous Office action has been withdrawn pursuant to

37 CFR 1.114.  Applicant's submission filed on 01/15/2018 has been entered.

### DETAILED ACTION

### *Response to Amendment*

The amendment filed on 01/15/2018 has been entered. Claims 1-44 remain pending in the

application. Applicant's amendments are in response to the Final Office Action mailed on

08/16/2017.

### *Information Disclosure Statement*

The information disclosure statement filed 02/26/2016 fails to comply with the provisions

of 37 CFR 1.97, 1.98 and MPEP § 609 because the first entry under the NPL Documents

(Russian Patent and Trademark Office grant decision) and the fifth entry titled "European Patent

Office, Supplementary European Search Report" were not found attached. Also the contents of

2nd and 3rd entries of NPL Documents titled "International Searching Authority, International

search report" were not legible due to poor scanning quality. These four NPL documents of the

aforementioned IDS have not been considered and therefore have been stroked out.

EXHIBIT 2
-103-

Application/Control Number: 14/725,490                                    Page 3
Art Unit: 2489

### *Claim Rejections - 35 USC § 112*

The following is a quotation of 35 U.S.C. 112(b):

(b)  CONCLUSION.—The specification shall conclude with one or more claims particularly pointing
out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the
invention.

The following is a quotation of 35 U.S.C. 112 (pre-AIA), second paragraph:

The specification shall conclude with one or more claims particularly pointing out and distinctly
claiming the subject matter which the applicant regards as his invention.

Claims 1-23 are rejected under 35 U.S.C. 112(b) or 35 U.S.C. 112 (pre-AIA), second

paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject

matter which the inventor or a joint inventor, or for pre-AIA the applicant regards as the

invention.

Claim 1 recites "**at least one sensor** *for sensing reflected light that was emitted from the*

*light emitting apparatus*". From this limitation, it is clearly understood that the sensor is a

"camera", because it is being used for sensing reflected light. Also with BRI, "at least one

sensor" means a single camera could be sensing the reflected light. However, in a subsequent

limitation, it is claimed "*wherein the* **plurality of sensors** *are in communication with the at least*

*one processor…*". This limitation is unequivocally directed to multiple (more than one) cameras.

There is a clear ambiguity between these two limitations because, at first one single camera is

defined as the sensor of reflected light and later multiple cameras come into play to do the same.

Because of this ambiguity it is difficult to assert the actual scope of the claimed invention and

therefore results in an indefinite situation. Because of the ambiguity in the independent claim(s),

all claims dependent thereof are also rejected for the same indefiniteness.

**EXHIBIT 2**
**-104-**

Application/Control Number: 14/725,490                                           Page 4
Art Unit: 2489

### *Claim Rejections - 35 USC § 103*

The following is a quotation of AIA 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

**Claims 1-16, 18-21, 24-39, 41-44 are rejected under AIA 35 U.S.C. 103(a) as being**

**unpatentable over Kainer et al. (US PGPub 2013/0191070 A1) in view of Farritor (US**

**PGPub 2012/0300060 A1).**

Regarding claim **1** (Previously Presented), **Kainer et al.** teach *a system for assessing a*

*railway track bed* (**[0036], L5-6**)*, the system comprising:*

*a power source* (**[0046], L14-17**)*;*

*a light emitting apparatus powered by the power source for emitting light energy toward*

*a railway track* (**[0012], L2-6; Fig. 1** and **2,** reference numeral **40**)*;*

*a data storage apparatus* (**Fig. 1,** reference numeral **62**) *in communication with at least*

*one processor* (**Fig. 1,** reference numeral **54, 60**)*;*

*at least one sensor for sensing reflected light that was emitted from the light emitting*

*apparatus* (**Fig. 1** and **2,** reference numeral **50**) *and acquiring three dimensional surface*

*elevation and intensity image data of the railway track* (**[0029]. Figs. 11** and **12** show the

perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc.

In **[0105]** it describes how the elevation of different rail track features are measured using the

**EXHIBIT 2**
**-105-**

Application/Control Number: 14/725,490                                        Page 5
Art Unit: 2489

image. On the other hand, in **[0071],** it teaches illuminating the rail track with certain light

intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or

more camera, which means the captured images contain intensity of light) *to be stored in the*

*data storage apparatus* (**Fig. 1** shows the communicative coupling between the camera and the

storage device **62**)*, wherein the plurality of sensors* (**Fig. 2,** reference numeral **50** shows two

cameras) *are in communication with the at least one processor* (**Fig. 1** shows communicative

coupling between the camera **50** and the processor **54**)*; and*

     *wherein the at least one processor is configured to run an algorithm* (**[0012], L10-13**) *for*

*processing three-dimensional surface elevation and intensity data* (**Figs. 11** and **12** show the

perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc.

In **[0105]** it describes how the elevation of different rail track features are measured using the

image. On the other hand, in **[0071],** it teaches illuminating the rail track with certain light

intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or

more camera, which means the captured images contain intensity of light) *gathered from the*

*plurality of sensors* (**Fig. 2,** reference numeral **50** shows two cameras) *and saved in the data*

*storage apparatus* (**Fig. 1** shows the communicative coupling between the camera and the

storage device **62**)*, the algorithm comprising the steps of:*

     *a. acquiring three dimensional surface elevation and intensity* (**Figs. 11** and **12** show the

perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc.

In **[0105]** it describes how the elevation of different rail track features are measured using the

image. On the other hand, in **[0071],** it teaches illuminating the rail track with certain light

intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or

**EXHIBIT 2**
**-106-**

Application/Control Number: 14/725,490                                      Page 6
Art Unit: 2489

more camera, which means the captured images contain intensity of light) *data representative of an area segment of railway track bed* (**[0047], L14-18**);

  b. *generating a track elevation map based on the acquired three dimensional data* (**[0082], L18-20; Figs. 11-12** represent a 3D track elevation map where different parameters, e.g. elevations, height, cracks, splits, orientations, etc. can be measured as disclosed in **[0056], L7-17**);

  c. *identifying a railway track bed feature from the track elevation map* (**[0083], L1-5; [0087], L10-15**); *and*

  d. *storing information corresponding to the identified railway track bed feature in the data storage apparatus* (**[0046], L5-13**).

  Although, **Kainer et al.** teach capturing perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc. as shown in **Figs. 11, 12** and also illuminating the rail track with certain light intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or more camera as described in **[0071]**, which means the captured images contain intensity of light, but it does not explicitly teach capturing the intensity image data.

  However, **Farritor** teaches a system of rail road deflection measurement using visioning means which is in the same field of endeavor, where it teaches calculating image intensities from the captured image data as described in **[0043]**.

  It would have been obvious for one of ordinary skill in the art at the time the invention was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Farritor's**

**EXHIBIT 2**
-107-

Application/Control Number: 14/725,490                                         Page 7
Art Unit: 2489

usage of image intensity data capturing, because this technique can be used in identifying the edges of the rail, and thereby the slope of the rail in the image (**Farritor; [0043]**).

Regarding claim **2** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail head edge by detecting significant vertical gradient edges over a two dimensional area wherein such vertical gradient edges are greater than a minimum rail height threshold* (**Kainer et al.; [0059], Fig. 5;** It teaches calculating the gradient of the rail head edge **12** with respect to the tie plate. Since the computer analysis checks the angles of tie plates with respect to rail heads and determines either a worn out rail head/base plate or not, it is understood that there is a threshold involved in determining the worn condition).

Regarding claim **3** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 2 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail base edge by detecting significant vertical gradient edges over a two dimensional area adjacent the detected rail head edge wherein such vertical gradient edges are greater than a minimum rail base height threshold* (**Kainer et al.; [0059], Fig. 5;** It teaches calculating the gradient of the rail head edge **12** with respect to the tie plate edge **10**. Since the computer analysis checks the angles of tie plates with respect to rail heads and determines either a worn out rail head/tie plate or not, it is understood that there is a threshold involved in determining the worn condition).

**EXHIBIT 2**
**-108-**

Application/Control Number: 14/725,490                                              Page 32
Art Unit: 2489

It would have been obvious for one of ordinary skill in the art at the time the invention

was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Landes et**

**al**'s determination of ballast volume from the acquired data by the system, because since ballast

beneath and between the ties stabilizes the positions of the ties, keeps the rails level, and

provides some cushioning of the composite structure for loads imposed by rail traffic, any

dislodging of the ballast over time could cause rail track deterioration and safety hazards.

Therefore, periodic monitoring of ballast volume and replacement thereof will ensure rail track

safety and integrity (**Landes et al.; [0005], L6-15**).


### *Response to Arguments*

Applicant's arguments filed on 01/15/2018, page 11 – 20, with respect to the rejection(s)

of independent claim(s) 1, 17, 24, 40 under 102(a)(1) have been fully considered but they are not

persuasive.

The Examiner acknowledges the amendments made in claims 12, 16, 19, 35, 39, 42 to

overcome the previously set forth 112(a) written description rejection. In view of the omission of

the term "other than a rail head" from the claims, the Examiner withdraws the 112(a) rejection.


The Applicant argues in P12-13 regarding rejection of claims 1-16, 18-21 by stating

"Applicant's system and method for generating a 3D model is very different from the approach

described in Kainer. In Kainer, a very large number of slices or "frames" across the track surface

are taken (about 633,600 per mile) and variations in height profile of each slice are used together

to identify features of interest in each profile. See Kainer, ¶ [0048], These slices are compiled to

EXHIBIT 2
-109-

Application/Control Number: 14/725,490                                          Page 33
Art Unit: 2489

arrive at a 3D image. See Kainer, ¶ [0056], In contrast, Applicant's system and method describes

3D surface elevation and intensity data models (the elevations for an area of the track surface) to

identify features of interest. Kainer does not teach or suggest combining 3D slices to create a

surface from which to identify true 3D features (elevations over an area). As such, Kainer does

not teach or suggest each and every limitation of Applicant's claim 1. Farritor does not

compensate for the deficiencies of Kainer. Farritor describes the use of different machine vision

techniques to detect edges including the location of a rail. See Farritor, ¶ [0043], This edge

detection technique "can be used to examine features of groups of pixels such as the intensity

and/or color of each pixel in two dimensions. *Id*. In order to get data of a different quality, a

second machine vision instrument can be used so that both instruments operate

stereoscopically. *Id*. However, this enhanced data acquisition requires at least two sensors.

Applicant's claimed invention in claim 1 operates using "at least **one** sensor for sensing reflected

light that was emitted from the light emitting apparatus and *acquiring three dimensional surface*

*elevation **and** intensity image data* of the railway track to be stored in the data storage apparatus"

(emphasis added). The machine vision device described in Farritor cannot accomplish what is

required by the simplest embodiment of Applicant's claim 1, namely, the use of one sensor for

obtaining surface elevation and intensity data. If the apparatus described in Kainer were

combined with the apparatus described in Farritor, at least two image gathering devices would be

necessary. The sensor device used in Kainer could potentially be used to obtain some sense of

elevation data while the sensor device used in Farritor could be used to gather intensity data.

However, two sensing devices would be required. Applicant's embodiment claimed in claim 1

does not require at least two sensors—it requires at least one for each viewing area. For this

**EXHIBIT 2**
**-110-**

Application/Control Number: 14/725,490                                          Page 34
Art Unit: 2489

reason, even a combination of Kainer and Farritor does not meet each and every limitation of

Applicant's claim 1. Therefore, Applicant's claim 1 is patentable over the combination of Kainer

and Farritor. Reconsideration and allowance of claim 1 are respectfully requested".

The Examiner cannot concur with the applicant and respectfully disagrees. First of all,

independent claim 1 is a system claim where there is no mention of "how" the 3D model is

generated. The claim simply recites "*acquiring three dimensional surface elevation*". Therefore,

whether **Kainer et al**'s 3D mode generation is different than the claimed invention is completely

irrelevant in light of the claimed system. Secondly, **Kainer et al.** at least touch based on the

intensity of the light that is being projected on to the rail track as described in **[0071],** where it

teaches illuminating the rail track with certain light intensity, e.g. 0.15 watts/in and receiving the

reflected light from the track surface using one or more camera, which means the captured

images contain variation of light intensity based on the intensity variation of the projected light.

However, since **Kainer et al.** do not explicitly teach acquiring intensity image data of the track,

the Examiner brought in the reference of **Farritor** which explicitly teach the element of the

claim limitation that was not explicitly taught by **Kainer et al. Farritor** teaches a system of rail

road deflection measurement using visioning means which is in the same field of endeavor,

where it teaches calculating image intensities from the captured image data as described in

**[0043]**. Now, the Applicant is arguing that "The machine vision device described in

Farritor cannot accomplish what is required by the simplest embodiment of Applicant's claim 1,

namely, the use of one sensor for obtaining surface elevation and intensity data" (emphasis

added). The Examiner would like to point out that the claim limitation recites "*at least one*

*sensor*" and in a later limitation it narrows it down to "*the plurality of sensors*", for which a

**EXHIBIT 2**
**-111-**

Application/Control Number: 14/725,490                                      Page 35
Art Unit: 2489

112(b) indefiniteness rejection was made. Therefore, there is no reason to believe that the claimed invention is using "one sensor". Secondly, in arguendo, even if we assume that the claimed limitation is using a single sensor, both **Kainer et al.** and **Farritor** cover that scenario as well. First, if we look at **Kainer et al.**, **[0036], Fig. 1**, we see that a single camera **50** is being used, whereas in **[0038], Fig. 2**, a pair of cameras **50** are being used. Now, if we look at **Farritor**, we see that in **Fig. 2**, it teaches imaging cameras "1" through "N". More explicitly, in **[0028]**, it states "In some embodiments, only a single imaging camera 20 is used for imaging the structure 30" (emphasis added). Therefore, irrespective of whether the claimed invention uses a single camera or plurality of cameras, the combination of **Kainer et al.** and **Farritor** conveniently teach each and every limitation of the claimed invention.

The Applicant's statement in P13-14 regarding rejection of claims 24-39, 41-44 do not present any new grounds of arguments other than what is already stated in the previous argument for claim 1. Therefore, the Examiner refers to the same rebuttal as before.


The Applicant argues in P15-16 regarding rejection of claim 22 by stating the same argument as before with the exception of "The sensor device used in Kainer could potentially be used to obtain some sense of elevation data while the sensor device used in Farritor could be used to gather intensity data. However, two sensing devices would be required. Applicant's embodiment claimed in claim 22 does not require at least two sensors—it requires at least one for each viewing area. For this reason, even a combination of Kainer and Farritor does not meet each and every limitation of Applicant's claim 22" (emphasis added).

**EXHIBIT 2**
-112-

Attorney Docket No. 06.00995.0042

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | |
|---|---|
| Applicant(s): | Tetra Tech, Inc. |
| Inventor: | Mesher, Darel |
| Application No.: | 14/725,490 |
| Filing Date: | May 29, 2015 |
| Confirmation No.: | 4258 |
| Title: | 3D Track Assessment System and Method |
| Examiner: | Hasan, Mainul |
| Group Art Unit: | 2489 |

## AMENDMENT C

Mail Stop AMENDMENT
Commissioner for Patents
P.O. Box 1450
Alexandria, VA   22313-1450

Sir/Madam:

In response to the Office Action dated February 23, 2018, please amend the above-referenced application as follows:

**Amendments to the Claims** are reflected in the listing of claims which begins on page 2 of this paper.

**Remarks/Arguments** begin on page 11 of this paper.

EXHIBIT 2
-113-

**AMENDMENTS TO THE CLAIMS:**

This listing of claims will replace all prior versions and listings of claims in the application:

**Listing of Claims:**

1.      (Currently amended) A system for assessing a railway track bed, the system comprising:

a power source;

a light emitting apparatus powered by the power source for emitting light energy toward a railway track;

a data storage apparatus in communication with at least one processor;

at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation and intensity image data of the railway track to be stored in the data storage apparatus, wherein the at least one sensor is~~plurality of sensors are~~ in communication with the at least one processor; and

wherein the at least one processor is configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the at least one sensor~~plurality of sensors~~ and saved in the data storage apparatus, the algorithm comprising the steps of:

a.  acquiring three dimensional surface elevation and intensity data representative of an area segment of railway track bed;

b.  generating a track elevation map based on the acquired three dimensional data;

c.  ==identifying a railway track bed feature from the track elevation map further including the steps of:==

   i.  ==defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and==

   ii. ==moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor;== and

d.  storing information corresponding to the identified railway track bed feature in the data storage apparatus.

**EXHIBIT 2**
**-114-**

## REMARKS

Claims 1-21 and 24-45 are currently pending.  Claims 1 and 22-24 are the pending independent claims.  Claims 1-16, 18-21, 24-39 and 41-44 are rejected under 35 U.S.C. § 103 over U.S. Patent Application Publication Number 2013/0191070 to Kainer et al. ("Kainer") in view of U.S. Patent Application Publication Number 2012/0300060 to Farritor ("Farritor"). Claims 22 and 23 are rejected under 35 U.S.C. § 103 over Kainer in view Farritor and further in view of U.S. Patent Application Publication Number 2010/0026551 to Szwilski et al. ("Szwilski"). Claims 17 and 40 are rejected under 35 U.S.C. § 103 over Kainer in view of Farritor and further in view of U.S. Patent Application Publication Number 2013/0096739 to Landes et al. ("Landes"). Claims 1 and 24 have been amended. Claim 45 is new and is supported by paragraphs [00125]-[00133]. No new matter has been introduced by the amendments, which are supported by the disclosure of the original claims and the specification.  Each of the foregoing rejections is respectfully traversed and favorable reconsideration is requested in view of the above amendments and following remarks.

### I.  § 112(a) Rejections of claims 1-23

Claims 1-23 are rejected under 35 U.S.C. § 112(b) for allegedly being indefinite. The issue appears to center around the addition of the phrase "at least one sensor" in conjunction with the use of the phrase "plurality of sensors". These claims have been amended to consistently use the phrase "at least one sensor" to obviate this particular refusal.

### II.  § 103 Rejections of claims 1-16, 18-21, 24-39 and 41-44

Claims 1-16, 18-21, 24-39 and 41-44 are rejected under 35 U.S.C. § 103 over Kainer in view of Farritor.  If the sum of references cited against an application is deficient as to the same element or combination of elements required by a rejected claim, then such claim is patentable over the cited references.  See *Velander v. Garner*, 348 F.3d 1359, 1363, 68 USPQ2d 1769, 1772 (Fed. Cir. 2003).  This requirement is separate and distinct from the Federal Circuit's Teaching, Suggestion, Motivation (TSM) Test analyzed in *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) and remains good law.  See *Abbott Laboratories v. Sandoz, Inc.*, 500 F.Supp.2d 846, 852

EXHIBIT 2
-115-

(N.D. Ill. 2007) (quoted with approval in *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1351 (Fed. Cir. 2008)).

**A. Claims 1-16, 18-21**

Independent claim 1, as amended, claims, *inter alia*, a system for assessing a railway track bed including a processor running one or more algorithms wherein the algorithm steps include (a) acquiring three dimensional surface elevation and intensity data representative of an area segment of railway track bed; (b) generating a track elevation map based on the acquired three dimensional data; and (c) identifying a railway track bed feature from the track elevation map. *See, e.g.*, Applicant's Application, ¶ [0007]. The latter step further includes the sub-steps of (i) defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and (ii) moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor as shown in FIGS. 5, 7 and 12. Kainer does not teach or suggest these latter algorithm steps and, therefore, does not teach or suggest each and every limitation of Applicant's claim 1.

Farritor does not compensate for the deficiencies of Kainer. Farritor describes the use of different machine vision techniques to detect edges including the location of a rail. *See* Farritor, ¶ [0043]. This edge detection technique "can be used to examine features of groups of pixels such as the intensity and/or color of each pixel in two dimensions. *Id.* In order to get data of a different quality, a second machine vision instrument can be used so that both instruments operate stereoscopically. *Id.* However, this enhanced data acquisition requires at least two sensors as previously discussed.

"If an independent claim is nonobvious under 35 U.S.C. 103, then any claim depending therefrom is nonobvious." M.P.E.P. § 2143.03 (citing *In re Fine*, 837 F.2d 1071, 5 U.S.P.Q.2d 1596 (Fed. Cir. 1988)). Dependent claims 2-16 and 18-21 depend from independent claim 1, and contain additional important aspects of the invention. Therefore, dependent claims 2-16 and 18-21 patentably define over Kainer in view of Farritor. Reconsideration and allowance of dependent claims 2-16 and 18-21 are respectfully requested.

EXHIBIT 2
-116-



UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

# NOTICE OF ALLOWANCE AND FEE(S) DUE

| | | |
|---|---|---|
| 117642 | 7590 | 09/27/2018 |

Robinson IP Law, PLLC
9724 Kingston Pike
Suite 1403
Knoxville, TN 37922

| EXAMINER |
|---|
| HASAN, MAINUL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2489 | |

DATE MAILED: 09/27/2018

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/725,490 | 05/29/2015 | Darel Mesher | 06.00995.0042 | 4258 |

TITLE OF INVENTION: 3D Track Assessment System and Method

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 12/27/2018 |

**THE APPLICATION IDENTIFIED ABOVE HAS BEEN EXAMINED AND IS ALLOWED FOR ISSUANCE AS A PATENT.
PROSECUTION ON THE MERITS IS CLOSED.** THIS NOTICE OF ALLOWANCE IS NOT A GRANT OF PATENT RIGHTS.
THIS APPLICATION IS SUBJECT TO WITHDRAWAL FROM ISSUE AT THE INITIATIVE OF THE OFFICE OR UPON
PETITION BY THE APPLICANT. SEE 37 CFR 1.313 AND MPEP 1308.

**THE ISSUE FEE AND PUBLICATION FEE (IF REQUIRED) MUST BE PAID WITHIN <u>THREE MONTHS</u> FROM THE MAILING
DATE OF THIS NOTICE OR THIS APPLICATION SHALL BE REGARDED AS ABANDONED. <u>THIS STATUTORY PERIOD
CANNOT BE EXTENDED.</u> SEE 35 U.S.C. 151. THE ISSUE FEE DUE INDICATED ABOVE DOES NOT REFLECT A CREDIT
FOR ANY PREVIOUSLY PAID ISSUE FEE IN THIS APPLICATION. IF AN ISSUE FEE HAS PREVIOUSLY BEEN PAID IN
THIS APPLICATION (AS SHOWN ABOVE), THE RETURN OF PART B OF THIS FORM WILL BE CONSIDERED A REQUEST
TO REAPPLY THE PREVIOUSLY PAID ISSUE FEE TOWARD THE ISSUE FEE NOW DUE.**

**HOW TO REPLY TO THIS NOTICE:**

I. Review the ENTITY STATUS shown above. If the ENTITY STATUS is shown as SMALL or MICRO, verify whether entitlement to that
entity status still applies.

If the ENTITY STATUS is the same as shown above, pay the TOTAL FEE(S) DUE shown above.

If the ENTITY STATUS is changed from that shown above, on PART B - FEE(S) TRANSMITTAL, complete section number 5 titled
"Change in Entity Status (from status indicated above)".

For purposes of this notice, small entity fees are 1/2 the amount of undiscounted fees, and micro entity fees are 1/2 the amount of small entity
fees.

II. PART B - FEE(S) TRANSMITTAL, or its equivalent, must be completed and returned to the United States Patent and Trademark Office
(USPTO) with your ISSUE FEE and PUBLICATION FEE (if required). If you are charging the fee(s) to your deposit account, section "4b"
of Part B - Fee(s) Transmittal should be completed and an extra copy of the form should be submitted. If an equivalent of Part B is filed, a
request to reapply a previously paid issue fee must be clearly made, and delays in processing may occur due to the difficulty in recognizing
the paper as an equivalent of Part B.

III. All communications regarding this application must give the application number. Please direct all communications prior to issuance to Mail
Stop ISSUE FEE unless advised to the contrary.

**IMPORTANT REMINDER: Utility patents issuing on applications filed on or after Dec. 12, 1980 may require payment of maintenance
fees. It is patentee's responsibility to ensure timely payment of maintenance fees when due.**

PTOL-85 (Rev. 02/11)

**EXHIBIT 2
-117-**

## PART B - FEE(S) TRANSMITTAL

**Complete and send this form, together with applicable fee(s), to:** _Mail_   **Mail Stop ISSUE FEE**
**Commissioner for Patents**
**P.O. Box 1450**
**Alexandria, Virginia 22313-1450**
_or_ **Fax** **(571)-273-2885**

INSTRUCTIONS: This form should be used for transmitting the ISSUE FEE and PUBLICATION FEE (if required). Blocks 1 through 5 should be completed where appropriate. All further correspondence including the Patent, advance orders and notification of maintenance fees will be mailed to the current correspondence address as indicated unless corrected below or directed otherwise in Block 1, by (a) specifying a new correspondence address; and/or (b) indicating a separate "FEE ADDRESS" for maintenance fee notifications.

CURRENT CORRESPONDENCE ADDRESS (Note: Use Block 1 for any change of address)

117642          7590          09/27/2018

Robinson IP Law, PLLC
9724 Kingston Pike
Suite 1403
Knoxville, TN 37922

Note: A certificate of mailing can only be used for domestic mailings of the Fee(s) Transmittal. This certificate cannot be used for any other accompanying papers. Each additional paper, such as an assignment or formal drawing, must have its own certificate of mailing or transmission.

**Certificate of Mailing or Transmission**
I hereby certify that this Fee(s) Transmittal is being deposited with the United States Postal Service with sufficient postage for first class mail in an envelope addressed to the Mail Stop ISSUE FEE address above, or being facsimile transmitted to the USPTO (571) 273-2885, on the date indicated below.

_____ (Depositor's name)
_____ (Signature)
_____ (Date)

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/725,490 | 05/29/2015 | Darel Mesher | 06.00995.0042 | 4258 |

TITLE OF INVENTION: 3D Track Assessment System and Method

| APPLN. TYPE | ENTITY STATUS | ISSUE FEE DUE | PUBLICATION FEE DUE | PREV. PAID ISSUE FEE | TOTAL FEE(S) DUE | DATE DUE |
|---|---|---|---|---|---|---|
| nonprovisional | UNDISCOUNTED | $1000 | $0.00 | $0.00 | $1000 | 12/27/2018 |

| EXAMINER | ART UNIT | CLASS-SUBCLASS |
|---|---|---|
| HASAN, MAINUL | 2489 | 348-047000 |

**1. Change of correspondence address or indication of "Fee Address" (37 CFR 1.363).**

❑ Change of correspondence address (or Change of Correspondence Address form PTO/SB/122) attached.

❑ "Fee Address" indication (or "Fee Address" Indication form PTO/SB/47; Rev 03-02 or more recent) attached. **Use of a Customer Number is required.**

**2. For printing on the patent front page, list**
(1) The names of up to 3 registered patent attorneys or agents OR, alternatively,
(2) The name of a single firm (having as a member a registered attorney or agent) and the names of up to 2 registered patent attorneys or agents. If no name is listed, no name will be printed.

1 _____
2 _____
3 _____

**3. ASSIGNEE NAME AND RESIDENCE DATA TO BE PRINTED ON THE PATENT** (print or type)

PLEASE NOTE: Unless an assignee is identified below, no assignee data will appear on the patent. If an assignee is identified below, the document has been filed for recordation as set forth in 37 CFR 3.11. Completion of this form is NOT a substitute for filing an assignment.

(A) NAME OF ASSIGNEE                    (B) RESIDENCE: (CITY and STATE OR COUNTRY)

Please check the appropriate assignee category or categories (will not be printed on the patent) : ❑ Individual ❑ Corporation or other private group entity ❑ Government

**4a. The following fee(s) are submitted:**

❑ Issue Fee

❑ Publication Fee (No small entity discount permitted)

❑ Advance Order - # of Copies _____

**4b. Payment of Fee(s):** (**Please first reapply any previously paid issue fee shown above**)

❑ A check is enclosed.

❑ Payment by credit card. Form PTO-2038 is attached.

❑ The director is hereby authorized to charge the required fee(s), any deficiency, or credits any overpayment, to Deposit Account Number _____ (enclose an extra copy of this form).

**5. Change in Entity Status** (from status indicated above)

❑ Applicant certifying micro entity status. See 37 CFR 1.29

❑ Applicant asserting small entity status. See 37 CFR 1.27

❑ Applicant changing to regular undiscounted fee status.

NOTE: Absent a valid certification of Micro Entity Status (see forms PTO/SB/15A and 15B), issue fee payment in the micro entity amount will not be accepted at the risk of application abandonment.
NOTE: If the application was previously under micro entity status, checking this box will be taken to be a notification of loss of entitlement to micro entity status.
NOTE: Checking this box will be taken to be a notification of loss of entitlement to small or micro entity status, as applicable.

NOTE: This form must be signed in accordance with 37 CFR 1.31 and 1.33. See 37 CFR 1.4 for signature requirements and certifications.

Authorized Signature _____   Date _____

Typed or printed name _____   Registration No. _____

Page 2 of 3
PTOL-85 Part B (10-13) Approved for use through 10/31/2013.   OMB 0651-0033   U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE

**EXHIBIT 2**
**-118-**

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/725,490 | 05/29/2015 | Darel Mesher | 06.00995.0042 | 4258 |

| | | |
|---|---|---|
| 117642 | 7590 | 09/27/2018 |

Robinson IP Law, PLLC
9724 Kingston Pike
Suite 1403
Knoxville, TN 37922

| EXAMINER |
|---|
| HASAN, MAINUL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2489 | |

DATE MAILED: 09/27/2018

## Determination of Patent Term Adjustment under 35 U.S.C. 154 (b)
(Applications filed on or after May 29, 2000)

The Office has discontinued providing a Patent Term Adjustment (PTA) calculation with the Notice of Allowance.

Section 1(h)(2) of the AIA Technical Corrections Act amended 35 U.S.C. 154(b)(3)(B)(i) to eliminate the requirement that the Office provide a patent term adjustment determination with the notice of allowance. See Revisions to Patent Term Adjustment, 78 Fed. Reg. 19416, 19417 (Apr. 1, 2013). Therefore, the Office is no longer providing an initial patent term adjustment determination with the notice of allowance. The Office will continue to provide a patent term adjustment determination with the Issue Notification Letter that is mailed to applicant approximately three weeks prior to the issue date of the patent, and will include the patent term adjustment on the patent. Any request for reconsideration of the patent term adjustment determination (or reinstatement of patent term adjustment) should follow the process outlined in 37 CFR 1.705.

Any questions regarding the Patent Term Extension or Adjustment determination should be directed to the Office of Patent Legal Administration at (571)-272-7702. Questions relating to issue and publication fee payments should be directed to the Customer Service Center of the Office of Patent Publication at 1-(888)-786-0101 or (571)-272-4200.

PTOL-85 (Rev. 02/11)

**EXHIBIT 2**
**-119-**

| *Notice of Allowability* | Application No. 14/725,490 | Applicant(s) Mesher, Darel | |
|---|---|---|---|
| | Examiner MAINUL HASAN | Art Unit 2489 | AIA Status Yes |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☑ This communication is responsive to 7/24/2018.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.

2. ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.

3. ☐ The allowed claim(s) is/are 1-21 and 24-45 . As a result of the allowed claim(s), you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information , please see **http://www.uspto.gov/patents/init_events/pph/index.jsp** or send an inquiry to **PPHfeedback@uspto.gov.**

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
   **Certified copies:**
   a) ☐All     b) ☐ Some     *c) ☐ None of the:
      1. ☐ Certified copies of the priority documents have been received.
      2. ☐ Certified copies of the priority documents have been received in Application No. _____ .
      3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).
   * Certified copies not received: _____ .

   Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

5. ☐ CORRECTED DRAWINGS (as "replacement sheets") must be submitted.
   ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No./Mail Date _____ .
   **Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the header according to 37 CFR 1.121(d).**

6. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**
1. ☑ Notice of References Cited (PTO-892)
2. ☑ Information Disclosure Statements (PTO/SB/08), Paper No./Mail Date _____ .
3. ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material _____ .
4. ☑ Interview Summary (PTO-413), Paper No./Mail Date. _____ .

5. ☑ Examiner's Amendment/Comment
6. ☑ Examiner's Statement of Reasons for Allowance
7. ☐ Other _____ .

| /MAINUL HASAN/ Examiner, Art Unit 2489 | /GIMS S PHILIPPE/ Primary Examiner, Art Unit 2489 |
|---|---|

**EXHIBIT 2**
-120-

Application/Control Number: 14/725,490                                             Page 2
Art Unit: 2489

## DETAILED ACTION

### *Notice of Pre-AIA or AIA Status*

The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA.


## EXAMINER'S AMENDMENT

An Examiner's amendment to the record appears below. Should the changes and/or

additions be unacceptable to Applicant, an amendment may be filed as provided by 37

CFR 1.312. To ensure consideration of such an amendment, it MUST be submitted no later than

the payment of the issue fee.

Applicant's Representative, Michael E. Robinson, during a telephone interview on

September 14, 2018, gave the Examiner an authorization to fix the typographical error (from

Previously Presented to Currently Amended) of the identifier in claim 24 designation as follows:


### *In the claim*

Claim 24. (<u>Currently Amended</u>)  A method of assessing a railway track bed, the method

comprising the steps of:

a. defining a three dimensional elevation map based on surface elevation and intensity

data representative of an area segment of the railway track bed, the data gathered by a sensor

sensing reflected light from a track bed surface;

b. storing the elevation map in a data storage apparatus;

c. identifying a railway track bed feature from the elevation map using a processor,

further comprising the sub-steps of:

EXHIBIT 2
-121-

i. defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and

ii. moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor; and

d. storing information corresponding to the identified railway track bed feature in the data storage apparatus.

### *Allowable Subject Matter*

Claims 1-21, 24-45 are allowed.

The following is an examiner's statement of reasons for allowance:

Claim 1 discloses a system of assessing a railway track bed consisting of a power source, light source, data storage unit, a processor and at least a sensor for capturing reflected lights from the track bed for acquiring three-dimensional surface elevation and intensity data, wherein the processor executes an algorithm to carry out the steps of acquiring 3D surface elevation data and intensity data, generating track elevation map and identifying track bed feature from the elevation map by defining an appropriate gradient neighborhood of a 2D track section for calculating differential vertical measurements by moving the gradient neighborhood as a sliding window over the 3D elevation data and finally storing the identified track bed feature into the storage unit.

The reference of **Kainer et al. (US PGPub 2013/0191070 A1)** teaches a railway bed feature measurement system having power source, light source, storage unit, processor and plurality of image sensors which captures the reflected lights from the railway track for determining 3D elevation map of the railway track for storage into the storage unit. On the other

**EXHIBIT 2**
-122-

Application/Control Number: 14/725,490                                      Page 4
Art Unit: 2489

hand, **Farritor (US PGPub 2012/0300060 A1)** teaches a system in the same field of endeavor, where it describes calculating image intensities from the captured image data, none of them teaches the process of defining an appropriate gradient neighborhood of a 2D track section for calculating differential vertical measurements by moving the gradient neighborhood as a sliding window over the 3D elevation data. As a result **Kainer et al.** alone or in combination with **Farritor** fail(s) to teach all the elements of the independent claim 1 and therefore stands allowable. For the same reason as mentioned above, the independent claim 24, which is a method claim of the corresponding system claim 1 stand allowable. Rest of the claims are directly or indirectly dependent on the independent claims and therefore stand allowable.

Any comments considered necessary by applicant must be submitted no later than the payment of the issue fee and, to avoid processing delays, should preferably accompany the issue fee. Such submissions should be clearly labeled "Comments on Statement of Reasons for Allowance."

### *Conclusion*

Any inquiry concerning this communication or earlier communications from the examiner should be directed to MAINUL HASAN whose telephone number is (571)272-0422. The examiner can normally be reached on MON-FRI: 10AM-6PM, Alternate FRIDAYS, EST.

If attempts to reach the examiner by telephone are unsuccessful, the examiner's supervisor, JORGE L. ORTIZ-CRIADO can be reached on (571)272-7624.  The fax phone number for the organization where this application or proceeding is assigned is 571-273-8300.

Information regarding the status of an application may be obtained from the Patent Application Information Retrieval (PAIR) system.  Status information for published applications

**EXHIBIT 2**
-123-