Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff/Counterclaim Defendant
PAVEMETRICS SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:21-cv-1289 MCS-MMA<br><br>**PAVEMETRICS' OPPOSITION TO TETRA TECH'S EX PARTE APPLICATION FOR EXPEDITED DISCOVERY AND SECOND EXTENSION ON REPLY BRIEF**<br><br>Honorable Mark C. Scarsi |

**TABLE OF CONTENTS**

Page No.

I.  INTRODUCTION ................................................................................................1

II. TETRA TECH MISREPRESENTS THE FACTS SETTING
    THE STAGE FOR ITS EX PARTE APPLICATION ..........................2

    A.  Tetra Tech Knew Its Patent Claim Requires Algorithmic
        Sub-steps ...............................................................................................2

    B.  Tetra Tech Initiated this Dispute ..................................................3

    C.  Tetra Tech Escalated the Dispute by Filings Its
        Unsupported Motion for Preliminary Injunction .......................5

    D.  Tetra Tech Should Not Have Been Surprised That It
        Would Need to Show Likelihood of Success on Validity ..........6

III. TETRA TECH HAS NOT ESTABLISHED ENTITLEMENT
     TO ANY OF THE EXTRAORDINARY RELIEF IT SEEKS.............7

    A.  Tetra Tech Is Misusing the Ex Parte Application Process .........7

    B.  Tetra Tech Has Not Established Good Cause for
        Expedited Discovery ..............................................................................9

    C.  Tetra Tech's Request for a Second Extension Should be
        Denied, as Should Its Request for Additional Pages ................12

IV. CONCLUSION ..................................................................................................14

# TABLE OF AUTHORITIES

Page No(s).

*Am. Legalnet v. Davis*,
  673 F. Supp. 2d 1063 (C.D. Cal. 2009) ........................................................... 9

*Apple Inc. v. Samsung Elecs. Co.*,
  2011 WL 1938154 (N.D. Cal. May 18, 2011) ............................................. 11

*Disability Rights Council of Greater Wash. v. Wash.*
*Metro. Area Transit Auth.*,
  234 F.R.D. 4 (D.D.C. 2006) ...................................................................... 2, 3

*Extreme Reach, Inc. v. PriorityWorkforce, Inc.*,
  CV 17-6796 SJO, 2017 WL 10544621
  (C.D. Cal. Oct. 18, 2018) .................................................................. 7, 9, 11

*Nutrition 21 v. United States*,
  930 F.2d 867 (Fed. Cir. 1991) ................................................................... 12

*Principal Lighting Group, LLC v. Sloan Co.*,
  2018 WL 6499354 (C.D. Cal. Sept. 10, 2018) ............................... 11, 12, 13

*Sierra Forest Legacy v. Rey*,
  577 F.3d 1015 (9th Cir. 2009) ................................................................ 9, 10

## OTHER AUTHORITIES

35 U.S.C. § 273 ........................................................................................................ 4

L.R. 7-9 ................................................................................................................. 13

L.R. 7-10 ............................................................................................................... 13

Rule 26 ......................................................................................................... 1, 2, 12

## I. INTRODUCTION

Tetra Tech's ex parte application seeks extraordinary relief—the immediate production of Pavemetrics' highly confidential, proprietary source code outside the protections and bounds of the normal discovery process. The parties have yet to conduct a Rule 26(f) conference of counsel. Nor have they even begun to negotiate the details of a protective order or a discovery agreement for inspecting source code.

Yet Tetra Tech seeks expedited discovery of that source code to support its motion to preliminarily enjoin Pavemetrics from continuing to sell its LRAIL system for inspecting railway tracks—one week *after* Pavemetrics' filed its opposition to that motion. Tetra Tech seeks to force Pavemetrics to divulge its source code *within the next six days* to attempt to show a likelihood of success on infringement—something Tetra Tech was required to show in its moving papers. Pavemetrics should not have to rush to provide access to its highly sensitive source code without the normal protections, particularly when Tetra Tech cannot show good cause to support its extraordinary request.

Tetra Tech blames its extraordinary request on Pavemetrics, repeatedly asserting that Pavemetrics introduced "new facts" into the record. But those supposedly "new facts" come from the exhibits Tetra Tech relied on to show the features of Pavemetrics' LRAIL system. Pavemetrics and its expert responded to Tetra Tech's allegations by explaining that those exhibits do not show that LRAIL satisfies every limitation of Claim 1, particularly that claim's algorithmic substeps. Tetra Tech, a multi-billion-dollar technology company, and its outside intellectual property counsel, Finnegan Henderson, knew that Tetra Tech had the burden to show likelihood of success on infringement and, by this ex parte application, show that they know they failed to meet it.

Tetra Tech's extraordinary request should be denied because it seeks expedited discovery to transform the status quo, not preserve it. Pavemetrics

has been promoting and selling its LRAIL system or its predecessor in the United States since 2012. ECF37 at 11-13. Tetra Tech has been Pavemetrics' customer since 2012 and has known about LRAIL since at least 2015. *Id.* at 14. Almost one year ago, Tetra Tech requested a quote and discount to purchase multiple LRAIL systems from Pavemetrics. *Id.* at 15. It also asked to observe delivery of an LRAIL system to one of Pavemetrics' U.S. customers. *Id.* These facts alone defeat Tetra Tech's request for both a preliminary injunction and expedited discovery to support it. The purpose of a preliminary injunction and expedited discovery to support that injunction is "to preserve the status quo, not to radically transform the status quo[] on an expedited basis." *Disability Rights Council of Greater Wash. v. Wash. Metro. Area Transit Auth.,* 234 F.R.D. 4, 7 (D.D.C. 2006). Tetra Tech never addresses the governing law, including the law requiring that any request for expedited discovery must preserve the status quo. Accordingly, this Court should deny Tetra Tech's ex parte application for expedited discovery.

Moreover, Tetra Tech should not have used the ex parte application process to seek its relief. It caused whatever urgency there is. It filed its preliminary injunction motion, and it agreed to the briefing schedule on that motion. The due date for its reply brief is not something warranting ex parte relief. Accordingly, this Court should deny Tetra Tech's ex parte application for a second extension on its reply brief.

## II. TETRA TECH MISREPRESENTS THE FACTS SETTING THE STAGE FOR ITS EX PARTE APPLICATION

### A. Tetra Tech Knew Its Patent Claim Requires Algorithmic Sub-steps

Tetra Tech asserts Pavemetrics infringes Claim 1 of U.S. Patent No. 10,362,293. The '293 patent is directed to a system that uses computer vision to inspect railway tracks for defects. As Pavemetrics' Opposition explains in detail, Claim 1 requires conventional features (power source, processor, sensor,

etc.) and an algorithm for processing certain data. ECF37 at 15. One of the algorithmic steps, "identifying a railway track bed feature from the track elevation map" includes two sub-steps that Tetra Tech added during prosecution to overcome prior-art rejections. *Id.* at 15-16. Those sub-steps are:

> i. defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated; and
>
> ii. moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor.

Tetra Tech cannot feign surprise that, in opposing its motion seeking to stop Pavemetrics from selling LRAIL, Pavemetrics would deny infringement and would hold Tetra Tech to its burden of proof. Nor can it be surprised that Tetra Tech would need to present some evidence showing how Pavemetrics' current algorithms operate to show Pavemetrics infringes Claim 1 of the '293 patent.

**B.** **<u>Tetra Tech Initiated this Dispute</u>**

Tetra Tech emphasizes that "Pavemetrics [filed] this action against Tetra Tech," but ignores that Tetra Tech began threatening Pavemetrics with an infringement suit to enjoin Pavemetrics back on January 5, 2021, more than one month before Pavemetrics filed its declaratory judgment complaint. *See* Appl. at 5. As the Complaint explains, on January 5, Tetra Tech's counsel, Aaron Parker of Finnegan Henderson, wrote Pavemetrics and accused it of infringing Claim 1 of the '293 patent by selling its Laser Rail Inspection System (LRAIL). ECF 1, ¶¶6-7, Ex. B. That letter demanded that Pavemetrics stop selling its LRAIL system in the United States or "Tetra Tech will take the necessary steps to enforce its rights without further notice." *Id.* Mr. Parker wrote to Pavemetrics two more times, on January 25 and February 5, again threatening "to pursue legal action to enjoin Pavemetrics from further infringement" and "to proceed with filing a complaint against Pavemetrics in a U.S. District Court for

patent infringement of the '293 patent." ECF 1, ¶¶9, 11, Exs. D, F.

After multiple responses, Pavemetrics filed its Complaint seeking a declaratory judgment of non-infringement. ECF 1, ¶¶8, 10, 12-13, Exs. C, E. First, Tetra Tech mischaracterizes that pleading. Second, Tetra Tech incorrectly presumes that the Complaint defines the universe of issues that Pavemetrics can fairly present on the pending preliminary injunction motion.

Tetra Tech repeatedly claims that Pavemetrics' Complaint "sought only a declaratory judgement of noninfringement . . . based on 35 U.S.C. § 273." Appl. at 4, 6. But that is not true. Pavemetrics clearly pled the Section 273 defense in the alternative. The Complaint reads:

> 16. Pavemetrics denies that the sale or use of the LRAIL track inspection system infringes any claim of the '293 patent.
>
> 17. ***If*** Defendant could prove that the LRAIL system falls within the scope of one or more claims of the '293 patent, Pavemetrics would have a complete defense to any such infringement under 35 U.S.C. § 273.

ECF1 at 4 (emphasis added). If there were any doubt, Pavemetrics' Prayer for Relief confirms that it pled the Section 273 defense in the alternative:

> A. That the Court enter a judgment declaring that Pavemetrics has not infringed and does not infringe any claim of the '293 patent, ***or in the alternative***, has a complete defense to any infringement under 35 U.S.C. § 273;

ECF1 at 5 (emphasis added). Pavemetrics must pursue both avenues in the alternative because Tetra Tech still refuses to construe the claims to show what it thinks is the invention.

Tetra Tech cites to Paragraph 16 of the Complaint but never explains why it believes Paragraph 16 suggests Pavemetrics is not contesting infringement. Appl. at 4, 6. Nor does Tetra Tech address the Prayer for Relief. Moreover,

-4-

Tetra Tech never explains how its reading of the Complaint would absolve it of (a) meeting its burden of proof on its infringement counterclaim or (b) showing a likelihood of success on the merits on its preliminary injunction motion.

### C. Tetra Tech Escalated the Dispute by Filings Its Unsupported Motion for Preliminary Injunction

Before Pavemetrics even *served* its Complaint, Tetra Tech answered and counterclaimed for infringement. ECF12. On the same day, it also filed its motion for a preliminary injunction. ECF17. Tetra Tech and Mr. Parker claim to have had a good-faith basis for those filings "based on publicly available information demonstrating what it understood to be Pavemetrics' *current* LRAIL system (as of *2017*)." Appl. at 5 (citing ECF17, Mesher Decl., Exs. B-J) (emphasis added). But that claim is based on faulty logic, especially because the asserted patent did not issue until *mid-2019*.

In support of its preliminary injunction motion, Tetra Tech cited eleven Pavemetrics' documents describing its LRAIL system. ECF17-1, ¶10. Only one document described Pavemetrics' LRAIL system of 2017, before the '293 patent issued. ECF17-3 at 4 (Ex. B). The other *ten* described Pavemetrics' system of after mid-2019, when it started using deep neural networks to identify defects in the railway tracks. ECF17-4 to ECF17-13 (Exs. C-L).

Dr. Mesher, Tetra Tech's CTO and its only witness to offer an opinion on infringement, cited only the 2017 document as evidence that LRAIL satisfies the algorithmic sub-steps of Claim 1. ECF17-1, ¶21. Dr. Mesher asserted that the 2017 document shows that the LRAIL allegedly identifies fasteners and anchors using a moving gradient neighborhood. *Id.* He completely ignored the other ten Pavemetrics' documents he cites, which show that Pavemetrics' current system uses deep neural networks to identify those same features. Given his purported 35 years of experience in artificial intelligence and computer vision, Dr. Mesher had to have recognized the difference between the system

described in the 2017 document and the deep neural network system described in the later documents. *See* ECF17-1, ¶4.

Mr. Parker, Tetra Tech's patent counsel, knew that, when he (a) sent letters threatening to sue Pavemetrics for patent infringement, (b) filed a counterclaim alleging Pavemetrics infringes Claim 1, and (c) filed a motion to preliminarily enjoin Pavemetrics from infringing Claim 1, Tetra Tech needed a good-faith basis for making those infringement allegations. He knew Tetra Tech would need to show Pavemetrics infringed every limitation of Claim 1, including the two algorithmic sub-steps.

But, Tetra Tech never sought Pavemetrics' source code or inquired about how its LRAIL system identified features of railway tracks prior to making any of those allegations. Instead, Tetra Tech waited and requested Pavemetrics' source code ***three days after*** Pavemetrics filed its opposition explaining that Tetra Tech had failed to meet its burden of showing likelihood of success on infringement. *See* Parker Decl. ¶ 2. Tetra Tech then waited four more days to file its ex parte application seeking expedited discovery. ECF42. Tetra Tech cannot now show that emergency relief is warranted.

### D. Tetra Tech Should Not Have Been Surprised That It Would Need to Show Likelihood of Success on Validity

Tetra Tech also repeatedly emphasizes that Pavemetrics "introduced invalidity arguments for the first time in its counterclaims." Appl. at 2. Tetra Tech cannot feign surprise that Pavemetrics would file an invalidity counterclaim in response to Tetra Tech's infringement counterclaim or that it would raise invalidity arguments in response to a motion for preliminary injunction. Once again, Tetra Tech relies on its unsupported misunderstanding that Pavemetrics would be limited to issues raised in its Complaint.

Mr. Parker, a registered patent attorney and one who frequently practices before the Patent Trial & Appeal Board, must know that Pavemetrics could not

seek a declaratory judgment of invalidity in its complaint without forfeiting its right to seek inter partes review (IPR) of the '293 patent. 35 U.S.C. § 315(a)(1). To preserve that right, Pavemetrics was statutorily required to wait and file its "counterclaim challenging the validity of a claim." *See* 35 U.S.C. § 315(a)(3). Thus, the statute explicitly contemplates the raising of invalidity issues in response to an infringement allegations, just as Pavemetrics did here.

Tetra Tech relies on the presumption of validity but nowhere explains its good-faith basis that its patent is valid. Appl. at 7. A basic Google search would have revealed the overwhelming amount of prior art teaching the use of computer vision **to inspect railway tracks** before the patent was filed in 2015. Moreover, a presumption is just that, a presumption. Certainly, Pavemetrics was entitled to rebut it with prior art. That should come as no surprise to Tetra Tech, especially here because it knew Pavemetrics has been in this infrastructure-inspection business for quite some time.

### III. <u>TETRA TECH HAS NOT ESTABLISHED ENTITLEMENT TO ANY OF THE EXTRAORDINARY RELIEF IT SEEKS</u>

#### A. <u>Tetra Tech Is Misusing the Ex Parte Application Process</u>

This Court's Initial Standing Order cautions parties that "[e]x parte applications are solely for extraordinary relief and should be used with discretion." ECF11, ¶3. This Court has observed that "[s]uch applications are inherently unfair, and they pose a threat to the administration of justice." *Extreme Reach, Inc. v. PriorityWorkforce, Inc.*, CV 17-6796 SJO, 2017 WL 10544621, *1 (C.D. Cal. Oct. 18, 2018). This follows because these applications "impose an unnecessary administrative burden on the court and an unnecessary adversarial burden on opposing counsel." *Id.* at *2. Thus, ex parte relief is justifiable only if an applicant like Tetra Tech can show two things: (1) evidence that its cause will be "irreparably prejudiced" if required to use a regularly noticed motion and (2) that it is "without fault in creating the crisis

that requires ex parte relief." *Id.*

But Tetra Tech cannot establish either. First, as explained in Pavemetrics' opposition to the preliminary injunction, Tetra Tech has little risk of being irreparably harmed. ECF37 at 20-29. Pavemetrics has been importing and selling its LRAIL system or its predecessor in the United States for years before issuance of Tetra Tech's patent. *Id.* Waiting to seek discovery through the normal course of litigation would not irreparably prejudice Tetra Tech. Nor would preparing a reply brief in two weeks, especially given its representation by one of the largest IP law firms in the world.

Second, Tetra Tech created its own crisis by (1) filing for preliminary relief not to preserve the status quo, but to change it (2) immediately filing its preliminary injunction motion without sufficient evidence of infringement and without an earlier motion for expedited discovery, (3) failing to perform any claim construction in its moving papers or to address the mountain of prior art that Dr. Mesher must know about from his years of experience in the industry, and (4) filing its counterclaim and motion before being served with the Complaint.

Third, allowing Tetra Tech to make its prima facie case of infringement on reply and to prolong the process through excessive extensions and extra pages, would make the judicial process less efficient and more costly for Pavemetrics. *See* ECF11 (attesting to this Court's commitment to adhering to scheduled dates and making the judicial process more efficient and less costly). Pavemetrics is a small business with only 22 employees and annual revenues of less than $15 million. ECF37 at 28. Responding to the preliminary injunction motion inflicted an exorbitant expense on Pavemetrics. Pavemetrics should not now face the additional expense of expedited discovery and having to respond on sur-reply to new arguments and evidence that should have been in Tetra Tech's opening papers.

For these reasons, this Court should deny Tetra Tech's ex parte application in its entirety.

**B.** **Tetra Tech Has Not Established Good Cause for Expedited Discovery**

As this Court has repeatedly explained on motions for expedited discovery, Tetra Tech "has the burden of showing good cause for the requested departure from usual discovery procedures." *Am. Legalnet v. Davis*, 673 F. Supp. 2d 1063, 1066 (C.D. Cal. 2009). But Tetra Tech has woefully failed to meet that burden. Its ex parte application alleges almost nothing relevant to showing good cause. It does not even attempt to address the five factors that this Court considers when determining whether to grant expedited discovery in support of a preliminary injunction motion.

This Court examines the reasonableness of the request based on the existing record, by considering the following factors: (1) whether a preliminary injunction is pending; (2) the breadth of the discovery requests; (3) the purpose for requesting the expedited discovery; (4) the burden on the defendants to comply with the requests; and (5) how far in advance of the typical discovery process the request was made." *Extreme Reach,* 2017 WL 10544621 at *2 (denying ex parte application for expedited discovery). None of these factors support Tetra Techs' request for expedited discovery.

First, "expedited discovery is not automatically granted merely because a party seeks a preliminary injunction." *Am. Legalnet*, 673 F. Supp. 2d at 1066. Although Tetra Tech has moved for a preliminary injunction, its motion does not seek to preserve the status quo and, thus, is not a proper motion for a preliminary injunction. *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009) (''The sole purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits."). As Pavemetrics explained in its opposition to the preliminary injunction motion, it has been selling its LRAIL system in the United States long before the patent

issued in 2019. ECF37 at 11. Thus, the status quo is for Pavemetrics to be able to continue to sell its LRAIL system at least until a trial on the merits.

Second, Tetra Tech seeks production of Pavemetrics' *entire* source code. Tetra Tech has not provided any claim construction or infringement theory based on the current LRAIL system. ECF19-1 at 14, 18-19. This makes it impossible for Pavemetrics to determine what portions of its source code would be relevant and appropriate to produce. Tetra Tech has made no effort to specify what source code it is seeking other than to say the source code to the current version of LRAIL. That is not focused at all.

Third, Tetra Tech's stated purpose for requesting expedited discovery is specious. Tetra Tech claims that expedited discovery is "necessary to evaluate the unsupported and conclusory testimony upon which Pavemetrics relies in its opposition." Appl. at 6. Tetra Tech cannot blame Pavemetrics. Tetra Tech had the burden to show likelihood of success on infringement, as its brief acknowledges. ECF18-1 at 13-14. Pavemetrics and its witnesses merely responded to the allegations made by Tetra Tech and its witnesses. Dr. Frakes, Pavemetrics' technical expert, responded to the infringement allegations made by Tetra Tech's CTO, Dr. Mesher, and his reliance on eleven Pavemetrics' documents describing the LRAIL system. ECF32, ¶¶ 94-107. With respect to the ten exhibits describing the more-recent LRAIL system that uses deep neural networks, Dr. Frakes relied on Pavemetrics' CTO, John Laurent, only for information concerning the date the LRAIL system shown in those exhibits was used in the United States. ECF32, ¶ 106. Dr. Frakes relied on the exhibits themselves for the type of deep neural network used by the LRAIL system. *Id.* And Dr. Frakes relied on his own technical expertise and understanding of deep neural networks to give an opinion on why Dr. Mesher did not cite to the deep neural network system to attempt to show that LRAIL satisfies the "moving the gradient neighborhood" limitation of Claim 1. ECF32, ¶ 107. In truth, Tetra

Tech does not need Pavemetrics' source code to evaluate Dr. Frakes' or Mr. Laurent's testimony. Tetra Tech needs the source code to attempt to offer at least a prima facie case that LRAIL satisfies the claimed algorithmic sub-steps.

But Tetra Tech has not cited any cases supporting immediate, one-sided production of source code to support a movant's burden on reply. Rather, Tetra Tech cites just two cases: *Apple Inc. v. Samsung Elecs. Co.*, 2011 WL 1938154 (N.D. Cal. May 18, 2011) and *Principal Lighting Group, LLC v. Sloan Co.*, 2018 WL 6499354, *5 (C.D. Cal. Sept. 10, 2018). Appl. at 6. But neither case supports expedited discovery for the purpose of transforming, rather than preserving, the status quo.

In *Apple*, Apple sought expedited discovery "regarding five products that Samsung is allegedly preparing to introduce into the U.S. market." 2011 WL 1938154 at *1. This Court recently distinguished *Apple* as allowing expedited discovery "to determine if a preliminary injunction was needed to preserve the status quo." *Extreme Reach,* 2017 WL 10544621 at *2. In *Principal Lighting*, the defendant was allegedly conducting a "fire sale" of the accused products to downstream distributors. 2018 WL 6499354 at *8. Had Tetra Tech studied and adhered to the case law governing early expedited discovery, it would not have filed its application.

Fourth, the burden on Pavemetrics to immediately produce its highly confidential, proprietary source code is significant. The parties have not even begun to discuss a protective order or discovery parameters for source code production. Source code is normally produced **for inspection only**, and only by a limited number of attorneys or approved technical experts. That inspection is normally performed on a particular computer in a particular place under supervision and with agreed upon rules (such as how many pages can be printed). Moreover, Tetra Tech is not sharing equally in the burden of producing source code early and without such protections. For example, Tetra

Tech alleges, without support, in its preliminary injunction moving papers that its 3DTAS system is covered by Claim 1. ECF19-1 at 9. Tetra Tech relies on this unsupported allegation to attempt to show a nexus between its claims of irreparable harm and lost sales. ECF19-1 at 9-11, 23-29. But Tetra Tech has not produced or offered to produce its source code.

Fifth, Tetra Tech is making its request before the Rule 26(f) conference and before the pleadings are even closed in this case. Tetra Tech, by its own admission, is seeking expedited litigation of "the entirety of this lawsuit." Appl. at 6. Nothing entitles Tetra Tech to such extraordinary relief. Thus, this Court should deny Tetra Tech's request for expedited discovery.

Tetra Tech argues that if it had the discovery now, it might put an end to the litigation. Appl. at 2. But Tetra Tech cannot skip the entire litigation process for it to decide quickly, before its reply brief is due, whether it can make out a prima facie case. Like all litigants, it must follow the normal procedure to take discovery in the ordinary course.

### C. Tetra Tech's Request for a Second Extension Should be Denied, as Should Its Request for Additional Pages

In preliminary injunction proceedings, "because of the extraordinary nature of the relief, the **patentee** carries the burden of showing likelihood of success on the merits with respect to the patent's validity." *Nutrition 21 v. United States*, 930 F.2d 867, 869 (Fed. Cir. 1991) (emphasis in original). But Tetra Tech merely relied on the presumption of validity. ECF19-1 at 22. Tetra Tech addressed no prior art, not even the prior art it knows about and raised in prior IPR proceedings when it invalidated a different competitors' four patents. *See* ECF37 at 24-25. Tetra Tech also knew about Pavemetrics long history in using computer vision to inspect transportation infrastructure, including railway tracks. *Id.* at 14. It should not be surprised that Pavemetrics would be a source for extensive prior art. Indeed, Tetra Tech used Pavemetrics knowledge of the

art when seeking to invalidate the four patents asserted against Tetra Tech. Tetra Tech now feigns surprise at having to respond to a substantial question of invalidity to support its request for a long extension of time to file its reply. Appl. at 6-7.

Specifically, Tetra Tech argues that this Court should grant it a second extension to file its reply. *Id.* The rules allow for one week to file a reply. *See* L.R. 7-9 & 7-10. Tetra Tech already received a one-week extension, doubling its allotted time to two weeks. ECF28. Granting this second extension of another two weeks would give Tetra Tech a total of four weeks to prepare its reply. That is almost two weeks more than Pavemetrics had to prepare its opposition papers.

Tetra Tech claims "it would be **unreasonable** to expect Tetra Tech to respond" on invalidity, including preparing an expert declaration, within two weeks. Appl. at 7. But Tetra Tech ignores that Pavemetrics had about the same amount of time to (1) search for and retain an expert witness, (2) prepare his declaration responding to Tetra Tech's infringement allegations and raising a substantial question of invalidity, and (3) prepare its fact witness declaration on Pavemetrics' long history of selling computer vision inspection systems for inspecting railway tracks, including marshalling Pavemetrics' numerous exhibits supporting that testimony.

It is inconceivable that Tetra Tech could not prepare a reply in the two weeks allotted, just as Pavemetrics prepared an opposition in two-and-a-half weeks. Tetra Tech ignores all the time it had to prepare its case when it started to allege infringement back in early January.

Nor should Tetra Tech require more pages to explain how it showed infringement in its moving papers and to respond to Pavemetrics' argument that it raised a substantial question of invalidity. Pavemetrics raised only a single reference to show that Claim 1, the sole asserted claim, is invalid for

anticipation and/or obviousness.

## IV. CONCLUSION

For the reasons stated herein, this Court should deny Tetra Tech's ex parte application in its entirety.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: March 30, 2021       By: /s/ Christy G. Lea
                                Joseph R. Re
                                Christy G. Lea
                                Nicholas M. Zovko

                            Attorneys for Plaintiff/Counterclaim Defendant,
                            PAVEMETRICS SYSTEMS, INC.

-14-