UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| Pavemetrics Systems, Inc., | Case No. 2:21-cv-01289-MCS-MAA |
|---|---|
| Plaintiff, | **ORDER GRANTING TETRA TECH'S MOTION TO AMEND [75]** |
| v. | |
| Tetra Tech, Inc., | |
| Defendant. | |
| Tetra Tech, Inc., | |
| Counterclaim Plaintiff, | |
| Tetra Tech TAS Inc., | |
| Third-Party Counterclaim Plaintiff, | |
| v. | |
| Pavemetrics Systems, Inc., | |
| Counterclaim Defendant. | |

1

Defendant and Counterclaimant Tetra Tech, Inc. and Third-party Counterclaimant Tetra Tech TAS Inc. (collectively, "Tetra Tech") move for leave to amend their pleading to include an additional counterclaim of patent infringement against Plaintiff and Counterclaim Defendant Pavemetrics Systems, Inc. ("Pavemetrics"). ("Mot.," ECF No. 75.) Pavemetrics filed a response. ("Opp.," ECF No. 76.) Tetra Tech filed a reply. ("Reply," ECF No. 77.)

The Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15. The Court takes off calendar the hearing set for August 30, 2021. For the following reasons, the Court **GRANTS** the motion.

I.     BACKGROUND

Tetra Tech currently accuses Pavemetrics of infringing "at least Claims 1, 15, 16, 19–22, 36, 37, and 40–42 of the [U.S. Patent No. 10,362,293 ("the '293 Patent")] by bidding and contracting for, offering to sell, selling, using, testing, and importing the ["Laser Rail Inspection System" ("LRAIL")] in the United States." (*See* "Answer," ECF No. 12 ¶ 29.) The '293 Patent, titled "3D Track Assessment System and Method" issued on July 23, 2019 and generally relates to "railway track inspection and assessment systems." '293 Patent at 1:16–17. According to the '293 Patent, the claimed invention provides "a robust and reliable system for analyzing and processing data collected during and/or after a high speed assessment of a railway track" and "is able to quickly and accurately identify railway track features and associate measured parametric data with those features." '293 Patent at 1:49–54. Claim 1 of the '293 Patent recites:

> 1.     A system for assessing a railway track bed, the system comprising:
>
> a power source;
>
> a light emitting apparatus powered by the power source for emitting light energy toward a railway track;

      a data storage apparatus in communication with at least one processor;

      at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation and intensity image data of the railway track to be stored in the data storage apparatus, wherein the at least one sensor is in communication with the at least one processor; and

      wherein the at least one processor is configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the at least one sensor and saved in the data storage apparatus, the algorithm comprising the steps of:

        a. acquiring three dimensional surface elevation and intensity data representative of an area segment of railway track bed;

        b. generating a track elevation map based on the acquired three dimensional data;

        c. identifying a railway track bed feature from the track elevation map further including the steps of:

           i. defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and

           ii. moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor; and

        d. storing information corresponding to the identified railway track bed feature in the data storage apparatus.

'293 Patent, Claim 1.

    On March 3, 2021, Tetra Tech moved for a preliminary injunction enjoining Pavemetrics from importing, using, and selling its LRAIL products. (*See* ECF Nos. 17, 30 (sealed version).) On April 15, 2021, the Court denied Tetra Tech's motion for a preliminary injunction, finding that Pavemetrics raised a substantial question as to infringement and anticipation. (*See* ECF Nos. 51 (sealed version), 61.) On April 22,

2021, the Court issued a scheduling order setting the deadline to hear any motion to amend the pleadings on December 6, 2021. (*See* "Scheduling Order," ECF No. 56 at 3.) The same day, the Court issued a scheduling order setting patent specific deadlines through the Claim Construction Hearing, such as the deadline for Tetra Tech to serve its infringement contentions on June 10, 2021. (*See* "Patent Scheduling Order," ECF No. 62.)

On August 2, 2021, Tetra Tech filed this motion to add a claim for patent infringement of U.S. Patent No. 10,616,557 ("the '557 Patent"). (*See generally* Mot.) The '557 Patent, titled "3D Track Assessment Method," is a continuation application of the '293 Patent and issued on April 7, 2020. Claim 1 of the '557 Patent recites:

> 1. A method of detecting and defining planar regions along a railway track bed using a system for assessing a railway track bed, the method comprising the steps of:
>
> a. inputting elevation data, rail head edge feature coordinates, and rail base edge feature coordinates to a processor wherein significant elevations due to the rail heads for each rail have been removed from the elevation data;
>
> b. eliminating rail regions from the elevation data using the processor;
>
> c. defining a rail base 2D sliding neighborhood window;
>
> d. calculating a 3D gradient using the sliding neighborhood window using the processor to produce 3D gradient data using the processor;
>
> e. calculating surface normals for the 3D gradient data using the processor; and
>
> f. determining planar regions of a railway track bed as areas in the 3D gradient data that have 3D surface normal values greater than a surface normal threshold using the processor.

'557 Patent, Claim 1.

## II.   DISCUSSION

### A.   Legal Standard

#### a. Amendments to the Pleadings Under Rule 15

"The court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "This policy is to be applied with extreme liberality." *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 (9th Cir. 2018) (internal quotation marks omitted). "Courts may decline to grant leave to amend only if there is strong evidence of 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment, etc.'" *Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma County*, 708 F.3d 1109, 1117 (9th Cir. 2013) (alteration in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "[T]he consideration of prejudice to the opposing party carries the greatest weight." *Id.* (alteration in original) (quoting *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003)). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Cap.*, 316 F.3d at 1052.

#### b. Good Cause Standard Under Rule 16 and for Amendments to Infringement Contentions

The parties dispute whether the Court should apply the "good cause" standard for Federal Rule of Civil Procedure 16 ("Rule 16") governing modification of scheduling orders (Fed. R. Civ. P. 16 (b)(4)) in addition to the standard for Federal Rule of Civil Procedure 15 ("Rule 15") governing amendments to the pleadings (Fed. R. Civ. P. 15 (a)(2)). Pavemetrics argues that the Court should apply the more stringent "good cause" standard under Rule 16 in addition to the standard for Rule 15. (*See* Opp. at 4–5.) Specifically, Pavemetrics argues that Tetra Tech's new patent infringement claim would require the Court to modify at least six deadlines in the Court's Patent Scheduling

Order, including the deadline for Tetra Tech to serve its infringement contentions. (*Id.*) Pavemetrics also argues that this Court applies a "good cause" standard to amendments to infringement contentions. (*Id.* at 5 (citing *Voltstar Techs., Inc. v. Superior Commnc's, Inc.*, Case No. 2:19-cv-07355-MCS-(Ex), ECF No. 70 (C.D. Cal. Feb. 23, 2021)).)

Tetra Tech responds that Rule 16 only applies to amendments to the pleadings that are made after the deadline for the parties to amend their pleadings. (Reply at 2.) Given that the deadline for Tetra Tech to amend its pleadings is still months away, Tetra Tech asserts that Rule 16 does not apply. (*Id.*) Tetra Tech argues that it does not seek to modify any of the deadlines in the Patent Scheduling order yet, and that "good cause" would exist to do so should the Court grant Tetra Tech's motion to amend its pleadings. (*Id.* at 3.) Tetra Tech also argues that there is no dispute that the contentions served were preliminary and that any shift it patent deadlines would not derail the case. (*Id.* at 3–4.) Finally, Tetra Tech argues that the "good cause" standard for amending infringement contentions articulated in *Voltstar Techs.* does not apply because that case was governed by a different set of local patent rules. (*Id.* at 4–5.)

The Court agrees with Tetra Tech that the "good cause" standard does not apply, as Tetra Tech moved to amend its pleadings before the deadline to do so. Tetra Tech currently does not and cannot move to amend its infringement contentions or its claim construction positions to address the '557 Patent because that patent is not yet part of the case. Thus, Rule 16 and the "good cause" standard to amend infringement contentions are not yet implicated. Although Tetra Tech will inevitably have to amend its infringement contentions to include the '557 Patent, Tetra Tech would have "good cause" to do so given the Court's order granting its motion to amend its pleadings, so long as Tetra Tech amends its contentions diligently following the Court's order.[1]

Accordingly, the Court finds that only Rule 15 applies to the motion.

---

[1] Given Tetra Tech's representation that it already provided Pavemetrics with a claim chart for the '557 Patent, Tetra Tech was also diligent in amending its contentions.

6

### B. Analysis

Tetra Tech asserts that the Court should grant it leave to amend its pleadings to add its new counterclaim for patent infringement because all of the *Foman* factors and judicial economy support granting its motion. (*See generally* Mot.) Specifically, Tetra Tech claims that it discovered the evidence necessary to support infringement of the '557 Patent only after inspecting Pavemetrics's source code on July 14–16. (*Id*. at 9.)

Pavemetrics responds that Tetra Tech unduly delayed seeking leave to amend its pleadings and "fails to explain why source code was necessary to assert infringement of the '557 patent (unlike the '293 patent), or why it could have not inspected Pavemetrics' source code sooner." (Opp. at 9.) Pavemetrics also argues that it would be prejudiced by Tetra Tech's amendment as it "will only increase the burden and cost of this litigation," which is intended to hurt Pavemetrics's relatively small business and is disproportionate to the total alleged damages. (*Id*. at 7–9.)

Tetra Tech replies that the scope of the '293 Patent and '557 Patent are different and Pavemetrics does not point to any publicly available information "known to Tetra Tech that would map to the asserted claims of the '557 patent in lieu of the confidential source code." (Reply at 6.) Tetra Tech also argues that Pavemetrics delayed Tetra Tech's source code review . (*Id*. at 7–8.) Further, Tetra Tech argues that Pavemetrics's prejudice arguments are baseless as Tetra Tech could always file another lawsuit asserting the '557 Patent, Pavemetrics's size has no bearing on the motion, and Pavemetrics's infringement also affects future business opportunities. (*Id*. at 9–10.)

The Court is skeptical of Tetra Tech's decision to assert the '557 Patent at this stage of the litigation. The '557 Patent issued well before Tetra Tech filed this action, yet Tetra Tech waited until after the Court denied its preliminary injunction based on its '297 Patent infringement allegations to assert the '557 Patent. Tetra Tech also fails to articulate why it needed the source code to allege that Pavemetrics infringed the '557 Patent. At least steps c. and d. of Claim 1 of the '557 Patent are similar to the limitations

of Claim 1 of the '297 Patent. Tetra Tech's assertion that it was on Pavemetrics to show where the public information discloses the remainder of the limitations is unavailing given that the burden is on Tetra Tech to justify its amendment.

Nevertheless, the Court grants Tetra Tech's motion. The Court agrees with Tetra Tech that judicial economy is served by keeping the related '257 Patent and '557 Patent in the same case, particularly given the overlap in specifications, claim terms, and accused technology. The case is still in its early stages and Tetra Tech moved to add the '557 Patent well before the deadline to amend its pleadings. Although Tetra Tech's amendment may affect the parties' claim construction deadlines, that is common when a party seeks to add a new patent to a case. Any effect on the parties' claim construction deadlines is also minimal given the substantial overlap between the two patents. The Court is not convinced that Tetra Tech's amendment necessitates moving the *Markman* hearing. This is also Tetra Tech's first amendment to its pleadings.

Given the liberal policy in allowing amendments to the pleadings, the Court **GRANTS** Tetra Tech's motion.

## IV. CONCLUSION

The Court **GRANTS** the motion to amend the pleadings.

**IT IS SO ORDERED.**

Dated: August 23, 2021

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE