Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Jency J. Mathew (*pro hac vice*)
jency.mathew@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, Virginia 20190-6023
Telephone:  (571) 203-2700
Facsimile:   (571) 203-2777

*Attorneys for Defendant and Counterclaim Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**TETRA TECH'S REPLY CLAIM CONSTRUCTION BRIEF**<br><br>**Honorable Mark C. Scarsi**<br><br>**Date: November 15, 2021**<br>**Time: 9:00 a.m.**<br>**Courtroom: 7C** |

# **TABLE OF CONTENTS**

I. REPLY ARGUMENTS ................................................................................... 1
    A. "Track Elevation Map" and "Three Dimensional Elevation Map" ('293 Patent) ............................................................................... 1
    B. "Identifying" ('293 Patent) .................................................................. 3
    C. "Appropriate Gradient Neighborhood" ('293 Patent) ......................... 4
    D. "2D Track Section Over Which Differential Vertical Measurements Are Calculated" ('293 Patent) ...................................... 5
    E. "Sliding Window" ('293 Patent) .......................................................... 6
    F. "Moving the Gradient Neighborhood Like a Sliding Window Over the 3D Elevation Data" ('293 Patent) ...................................... 6
    G. "Is Configured to Run an Algorithm" ('293 Patent) ........................... 7
    H. "Comprising the Steps of" ('293 Patent) ............................................ 8
    I. "Tie Surface Plane Model" ('557 Patent) ............................................ 9
    J. "Tie Bounding Box" ('557 Patent) .................................................... 10
    K. "Small Area" and "Small Length" ('557 Patent) .............................. 10
II. CONCLUSION .............................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
 694 F.3d 1312 (Fed. Cir. 2012) ................................................................. 4, 5, 9

*Am. Piledriving Equip., Inc. v. Geoquip, Inc.*,
 637 F.3d 1324 (Fed. Cir. 2011) ....................................................................... 3, 7

*Baxalta Inc. v. Genentech, Inc.*,
 972 F.3d 1341 (Fed. Cir. 2020) ............................................................................ 2

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
 2020 WL 863976 (E.D. Va. 2020) ....................................................................... 8

*Cont'l Circuits LLC v. Intel Corp.*,
 915 F.3d 788 (Fed. Cir. 2019) .............................................................................. 5

*Ecojet, Inc. v. Luraco, Inc.*,
 2016 WL 9000104 (C.D. Cal. Dec. 13, 2016) ................................................. 3, 6

*Finjan, Inc. v. Secure Computing Corp.*,
 626 F.3d 1197 (Fed. Cir. 2010) ............................................................................ 8

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
 582 F.3d 1288 (Fed. Cir. 2010) ............................................................................ 3

*Homeland Housewares, LLC v. Rsch.*,
 2013 WL 12134266 (C.D. Cal. Feb. 28, 2013) ................................................. 10

*Huawei Techs. Co. v. Verizon Commc'ns Inc.*,
 2021 WL 150442 (E.D. Tex. 2021) ...................................................................... 8

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
 2016 WL 4363485 (D. Del. Aug. 12, 2016) ...................................................... 10

*Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*,
 790 F.3d 1298 (Fed. Cir. 2015) ............................................................................ 8

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
 358 F.3d 898 (Fed. Cir. 2004) .......................................................................... 6, 7

*Loral Fairchild Corp. v. Sony Elecs. Corp.*,
    181 F.3d 1313 (Fed. Cir. 1998) ................................................................................ 9

*Mantech Env't Corp. v. Hudson Env't Servs., Inc.*,
    152 F.3d 1368 (Fed. Cir. 1998) ................................................................................ 9

*Medicines Co. v. Mylan, Inc.*,
    853 F.3d 1296 (Fed. Cir. 2017) ................................................................................ 2

*NeoMagic Corp. v. Trident Microsystems, Inc.*,
    287 F.3d 1062 (Fed. Cir. 2002) ........................................................................... 3, 7

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003) .............................................................................. 10

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2008) ................................................................................ 3

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ........................................................................ 4, 5, 6

*Salazar v. Procter & Gamble Co.*,
    414 F.3d 1342 (Fed. Cir. 2005) ................................................................................ 9

*Sulzer Textil A.G. v. Picanol N.V.*,
    358 F.3d 1356 (Fed. Cir. 2004) ................................................................................ 5

*Thorner v. Sony Computer Entm't Am. LLC*,
    669 F.3d 1362 (Fed. Cir. 2012) ........................................................................... 4, 9

*Uni-Systems, LLC v. United States Tennis Assoc.*,
    2020 WL 3960841 (E.D.N.Y. July 13, 2020) ......................................................... 10

Under the guise of simplifying the technology for the jury, Pavemetrics seeks to rewrite the claims. But this is a red herring. Instead, Pavemetrics imposes additional limitations or replaces clear language with extraneous words to suit its litigation needs. Indeed, throughout its brief, Pavemetrics mischaracterizes Tetra Tech's infringement contentions as its basis for claim construction and, in doing so, inaptly seeks to litigate infringement now. Setting these distractions aside reveals that Pavemetrics' erroneous constructions read in limitations that lack support from the intrinsic record and controlling legal authority and are manufactured from out-of-context dictionary definitions. And ironically, many of its constructions would simply confuse a jury. The Court should therefore reject Pavemetrics' proposed constructions.

## I.  REPLY ARGUMENTS

### A.  "Track Elevation Map" and "Three Dimensional Elevation Map" ('293 Patent)

Pavemetrics' allegation that "Tetra Tech seeks to avoid construction" of "track elevation map" and "three dimensional elevation map" is simply incorrect. Tetra Tech thoroughly addressed both terms in its opening brief, disputing the importation of additional limitations proposed by Pavemetrics. Br. 20-23. Pavemetrics apparently faults Tetra Tech for seeking to comply with the Court's order limiting the parties to "up to ten (10)" terms as "most significant." ECF 62; ECF 85. Pavemetrics, however, circumvents this order by treating both terms as a single term, even though there is no dispute they use different language and are recited in different claims. Pavemetrics itself recognizes that these differences presume different meanings. Resp. 15, 21. Pavemetrics' only basis for equating these two terms is a clear drafting error in dependent claim 36, which mirrors claim 15. This drafting error does not mean the two terms are used "interchangeably." Indeed, none of claims 1-21 recites a "three dimensional elevation map."

To import limitations into the claims, Pavemetrics misreads a statement from the specification as an express definition for both map terms. But this statement is not a

definition "because it does not accord with the linguistic formula used by the patentee to signal the designation of other defined terms." *Medicines Co. v. Mylan, Inc.*, 853 F.3d 1296, 1306 (Fed. Cir. 2017). Unlike the definition section in the '293 patent (8:42-63), it does not use quotations or the unequivocal defining transition phrases, "defined herein" or "means." Moreover, the statement discusses only "3D elevation maps" and not the claimed "track elevation map." Nor does the statement even provide a definition for "3D elevation maps" because the term "[t]he full profiles," not "3D elevation maps," precedes the transitional phrase "also referred to as." That the full elevation and intensity profiles are "also referred to as" 3D elevation maps does not mean the 3D elevation maps are limited to or defined as the full profiles. The language in the specification falls short of the "exacting" standard required for an express definition. *Baxalta Inc. v. Genentech, Inc.*, 972 F.3d 1341, 1349 (Fed. Cir. 2020).

The rest of the intrinsic record similarly fails to demonstrate a clear and unmistakable disclaimer that further narrows "track elevation map" and "three dimensional elevation map." Pavemetrics points to the Abstract, but it does not "explain[] the invention," let alone discuss a "track elevation map" or a "three dimensional elevation map." During prosecution, Applicant amended the claims to recite capturing "three dimensional surface elevation and intensity data," but nowhere did Applicant make any explicit statements distinguishing the prior art because the claimed track elevation map or the three dimensional elevation map is "a representation of both the height (elevation) and intensity of reflected laser light (intensity)." *See generally* Ex. J. For example, Applicant distinguished *Kainer* because it teaches compiling "slices" of elevation data as opposed to describing "elevations for an area of the track surface," not because *Kainer* lacked a map containing both elevation and intensity data. *Id.* at 50. Indeed, Pavemetrics' citations to the prosecution history relate only to processing or capturing elevation and intensity data, not to generating maps. *Id.*

Pavemetrics does not dispute that the claims encompass more than one "track elevation map" or "three dimensional elevation map," but instead insists that each such

2

map must be a representation of both elevation and intensity. Resp. 4. But this is belied by the specification teaching multiple elevation maps with and without intensity data and Pavemetrics' own concession that FIG. 10 "does not have the required intensity data." *Id.*, 4-5. Pavemetrics attempts to retreat from this teaching by claiming that FIG. 10 is not a "track elevation map." *Id.* In doing so, Pavemetrics ignores the specification explicitly describing FIG. 10 as "an *elevation map* of a portion of a *railway track bed*." '293 patent, 7:10-11. And even under Pavemetrics' own view, this "elevation map" that lacks intensity data is interchangeable with a 3D elevation map. Pavemetrics' proposed construction should be rejected as it would improperly exclude FIG. 10 among other disclosed embodiments. *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008).

### B. "Identifying" ('293 Patent)

Pavemetrics' proposed "construction" for "identifying" should be rejected because it is veiled as a dispute of infringement, not the proper meaning of the term. Pavemetrics mischaracterizes one example from Tetra Tech's infringement contentions and improperly seeks a determination on whether that example meets the "identifying" term. Resp. 5-6. But this is a factual question for the jury, and not a proper basis for claim construction. *NeoMagic Corp. v. Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("[C]laims may not be construed by reference to the accused device"); *Am. Piledriving Equip., Inc. v. Geoquip, Inc.*, 637 F.3d 1324, 1331 (Fed. Cir. 2011). Nevertheless, Pavemetrics seemingly admits that its accused product identifies rail track features, acknowledging its algorithms process data associated with an "identified rail head feature." Resp. 5. Thus, even under Pavemetrics' view of the infringement dispute, the Court need not construe "identifying." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1304 (Fed. Cir. 2010) (declining to consider construction of term where parties had not identified how the construction would affect the judgment rendered).

To suit its litigation needs, Pavemetrics takes the otherwise commonly understood "identifying" term and seeks to inject overly complex and unnecessary limitations. *See Ecojet, Inc. v. Luraco, Inc.*, 2016 WL 9000104, at *5 (C.D. Cal. Dec.

13, 2016). But nothing in the intrinsic record mandates further limiting "identifying" beyond its ordinary meaning. Br. 12-14. Nor does adopting Tetra's Tech construction leave "speculat[ion]" about the scope of "identifying." *See, e.g.*, *ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, 694 F.3d 1312, 1325-26 (Fed. Cir. 2012) (The "proposed construction erroneously reads limitations into the claims and the district court properly rejected that construction and resolved the dispute between the parties").

In formulating its construction, Pavemetrics ignores the plain language of "identifying" and begins with a dictionary definition. Resp. 6. This, however, "focuses the inquiry on the abstract meaning of words rather than on the meaning of claim terms within the context of the patent." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1321 (Fed. Cir. 2005). And nowhere within the context of the '293 patent does it limit the plain meaning of "identifying" to "assigning a class" or require being based on "a predetermined rule or model." Rather, the specification and claims refer to "assigning" as one example process to identify track features. Br. 13-14. Limiting "identifying" to "assigning" would otherwise improperly read limitations into claims. *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1366 (Fed. Cir. 2012).

### C. "Appropriate Gradient Neighborhood" ('293 Patent)

Notably silent from Pavemetrics' responsive brief is the Court's prior ruling that the term "gradient neighborhood" does not require further construction. What's more, Pavemetrics now seeks a significantly narrower construction than it previously proposed. ECF 32, 26-30 (Pavemetrics' expert testifying that a "gradient neighborhood" means "a zone of limited area used for calculating differential vertical measurements"). The inclusion of the word "appropriate" results in the same conclusion. Nowhere does the specification require that the "appropriate gradient neighborhood" be a predetermined size and shape. Rather, "appropriate" is used consistent with its ordinary meaning as "suitable" and does not require further construction. '293 patent, 9:50-56.

Yet Pavemetrics contends that "appropriate gradient neighborhood" needs further construction because it is "not readily understood by a lay juror." Resp. 7. This

4

misapprehends the basic canon that claim construction is an "inquiry into how a [POSA] understands a claim term." *Phillips*, 415 F.3d at 1313. Further, that a term is not commonly used by a juror does not justify rewriting the term and adding unclaimed limitations. Nor does the *Sulzer* case support that notion. Instead, *Sulzer* merely stands for the principle that the court present its claim construction rulings for disputed terms to the jury. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004). Contrary to Pavemetrics' contentions, adopting Tetra Tech's construction does not leave it to the jury to determine the scope of "appropriate gradient neighborhood." Resp. 9-10. Rejecting Pavemetrics' construction and the additional limitations it seeks to impose resolves the parties' dispute on claim scope. *ActiveVideo*, 694 F.3d at 1326.

Pavemetrics otherwise pieces together dictionary definitions and unsupported expert testimony for "gradient" and "neighborhood" to rewrite "appropriate gradient neighborhood" with additional convoluted and inaccurate limitations. Resp. 8-9. But extrinsic evidence cannot replace the words and meaning provided in the claims and specification. *Cont'l Circuits LLC v. Intel Corp.*, 915 F.3d 788, 799 (Fed. Cir. 2019) ("[E]xtrinsic evidence" is "secondary to the intrinsic evidence"). This is precisely what Pavemetrics does here, ignoring the plain language of the claims and the examples in the specification that already provide context for and describe the meaning of the claim term—"a small 2D track section over which differential vertical measurements are calculated." Br. 5-6. Nothing in the specification mandates that the term be ascribed the additional limitations that Pavemetrics proposes.

**D.   "2D Track Section Over Which Differential Vertical Measurements Are Calculated" ('293 Patent)**

In completely rewriting this term, Pavemetrics relies solely on its expert without support from any intrinsic evidence. And while Pavemetrics contends that it "defines how a POSA would have understood the phrase in view of the intrinsic record" (Resp. 11), its expert relies on a single sentence from the specification relating to the definition of "track" as "a section of railway." Frakes Decl., ¶¶48-51. As Pavemetrics and its

5

expert acknowledge, nowhere does the specification support rewriting "differential vertical measurements" to "changes in railway track bed height" or imposing an additional functional limitation of "selected for calculating." Br. 7-8. Nor does "the average juror's vocabulary" (Resp. 11) justify rewriting the term, particularly where the intrinsic record fails to reflect the new and additional limitations Pavemetrics proposes.

### E. "Sliding Window" ('293 Patent)

Pavemetrics confusingly faults Tetra Tech for not applying the "standard for construing terms" by describing how a POSA would understand "sliding window" in view of the specification. Resp. 12. But claims are interpreted through the perspective of a POSA, not a layperson. *Phillips*, 415 F.3d at 1313. A POSA would understand "sliding window" to not require any further construction, and particularly not the additional limitations proposed by Pavemetrics. Br. 9-10. Yet even under Pavemetrics' layperson standard, nothing about its 41-word construction for "sliding window" is "straightforward." Rather, the overly complicated construction injects confusion and risks misapplication by the jury. *See Ecojet*, 2016 WL 9000104, at *5.

Pavemetrics claims to have "adapted" a dictionary definition, but its own expert admits that it contradicts the proposed construction. According to Pavemetrics' expert, the dictionary definition does not require that the "sliding window" move to an adjacent pixel because it "allow[s] for unusual or atypical edge cases." Frakes Decl., ¶55. Pavemetrics also acknowledges that it ignored the definition's use of "typically" but did so to "avoid contradicting the intrinsic record." Yet there is nothing contradictory—the intrinsic record does not require that the sliding window must always move to an adjacent pixel. Nor can Pavemetrics read in an embodiment that describes moving the neighborhood "sequentially and completely" to support its faulty construction. *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 913 (Fed. Cir. 2004).

### F. "Moving the Gradient Neighborhood Like a Sliding Window Over the 3D Elevation Data" ('293 Patent)

Pavemetrics again mischaracterizes one example from Tetra Tech's infringement

6

contentions and improperly asks the Court to resolve a factual dispute of infringement concerning this term. The Court should reject this request. *NeoMagic*, 287 F.3d at 1074; *Geoquip*, 637 F.3d at 1331. Pavemetrics seeks to read into the claims the embodiment of moving the neighborhood "sequentially and completely for each position in the railway track bed elevation data." Resp. 14-15. But this is improper, even if it is the only embodiment, absent a clear intent in the intrinsic record. *Medrad*, 358 F.3d at 913. Pavemetrics dismisses other embodiments in the specification describing that the neighborhood is moved only "over the entire region to be processed," by arguing that they do not refer to the "appropriate gradient neighborhood." Resp. 15. Yet Pavemetrics' argument is contradicted by its own reliance on these exact embodiments to support its construction of "appropriate gradient neighborhood" and its characterization as "how a gradient neighborhood is used." Resp. 8-9.

### G. "Is Configured to Run an Algorithm" ('293 Patent)

Once again, Pavemetrics' proposed "construction" should be rejected because it raises a factual dispute of infringement and not the proper meaning of the term. Pavemetrics claims that certain template matching algorithms, which relate only to asserted dependent claims in the '293 patent, are "disabled" on the accused product. Resp. 16. Not only is this inconsistent with Pavemetrics' § 273 defense, which claims continuing commercial use of template matching methods since before the '293 patent, it raises a number of factual issues for infringement, including what, how, why, and when the algorithms were "disabled," if at all.

Pavemetrics admits that these algorithms are part of its "master source code" for the accused product and that the processor can run the algorithms by modifying the software settings. *Id.* Pavemetrics therefore purportedly "seeks to clarify" the "configured to" term because it infringes under its ordinary meaning. Yet Pavemetrics can cite to nothing in the intrinsic record that requires the processor to run algorithms without modification. Instead, Pavemetrics' only citation from the specification simply describes a system "configured to carry out a method." Even its own extrinsic evidence

7

does not support this additional limitation (e.g., being "set up … in a particular way" is not the same as being configured "without modification"). Ex. F, 216.

Pavemetrics' reliance on *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197 (Fed. Cir. 2010) is misplaced. There, the court rejected arguments that "disabled" products could not infringe because—like here—nothing in the claims required the software components to be "active" or "enabled." By Pavemetrics' own admission, the infringing algorithms exist in its master source code. Resp. 16. Pavemetrics' other cited cases are also unavailing. In *Huawei Techs. Co. v. Verizon Commc'ns Inc.*, 2021 WL 150442 (E.D. Tex. 2021), the Court found that a particular means-plus-function term must include all structure that actually performs the function. And *Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 2020 WL 863976 (E.D. Va. 2020) is inapposite because Pavemetrics' algorithms are not wholly incapable of performance.

### H. "Comprising the Steps of" ('293 Patent)

Pavemetrics urges, based on an example from Tetra Tech's infringement contentions, that the generating/defining a "track elevation map" or "three dimensional elevation map" step cannot be after the identifying step. Yet the accused product generates multiple elevation maps prior to identifying track features. Pavemetrics' construction is premised on its flawed constructions of the map terms. *Supra*, 1-3. The claims are not limited to generating/defining a single "track elevation map" or "three dimensional elevation map" or that all track elevation or three dimensional elevation maps must be generated before the identifying step.

Pavemetrics relies primarily on antecedent basis to argue that all of the claimed steps must occur in the recited order. Resp. 19-20. But antecedent basis alone is not sufficient to mandate that the claimed steps be performed in order. Indeed, certain steps could occur simultaneously or in a different order even if antecedent basis suggests an order. *See Kaneka Corp. v. Xiamen Kingdomway Grp. Co.*, 790 F.3d 1298, 1306–07 (Fed. Cir. 2015) (finding that, despite antecedent basis, "[t]he claims do not exclude a process in which every claim step is occurring simultaneously"). Pavemetrics' reliance

on the specification and prosecution history also do not support its limiting construction. Pavemetrics cites to various embodiments in the specification (Resp. 20), but these embodiments cannot be read into the claims. *Thorner*, 669 F.3d at 1366. Pavemetrics further cites to allegedly unrebutted characterizations by the Examiner, yet these statements, "without more, cannot amount to a 'clear and unmistakable disavowal' of claim scope.'" *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1345 (Fed. Cir. 2005). Further, Pavemetrics' reliance on *Mantech Env't Corp. v. Hudson Env't Servs., Inc.*, 152 F.3d 1368 (Fed. Cir. 1998) and *Loral Fairchild Corp. v. Sony Elecs. Corp.*, 181 F.3d 1313 (Fed. Cir. 1998) is unavailing. The circumstances are distinguishable here because the claim language does not unambiguously indicate that each step must be performed in its entirety prior to the subsequent step.

## I. "Tie Surface Plane Model" ('557 Patent)

Pavemetrics incorrectly contends that Tetra Tech "argues for no construction" because "[i]t plans to argue at trial" that "tie surface plan model" and "tie surface plane" have the same meaning. Resp. 22. Tetra has never argued that the two terms have the same meaning. Rather, Tetra Tech's position is that the plain meaning of "tie surface plane model" in view of the specification does not require the additional limitations imposed by Pavemetrics, namely "the entire tie" and "industry standard tie model" limitations. Br. 18-19. Rejecting Pavemetrics' erroneous reading of limitations into the claims and finding that the term requires no additional construction is entirely proper. *ActiveVideo*, 694 F.3d at 1326.

For the "the entire tie" limitation, Pavemetrics asserts that it has "synthesized" disclosure concerning boundaries of a tie into the "jury-friendly" term of "entire tie." Resp. 22-23. But this "synthesis" improperly imports an unsupported limitation into the claim. Instead, the specification specifically contemplates that portions of the tie are excluded. Br. 19. And for the "industry standard tie model" limitation, Pavemetrics conflates its description concerning a "bounding box definition method" with the "tie surface plane model" and "tie bounding box" and otherwise equates "best fit models,"

9

"standard tie physical models," and "industry standard tie models" as all the same, despite the terms being different and lacking any support in the specification. Resp. 23.

### J. "Tie Bounding Box" ('557 Patent)

Pavemetrics seeks to rewrite the term "tie bounding box" to improperly import an embodiment from the specification. Resp. 23. Contrary to Pavemetrics' contentions, "tie bounding box" should not be "defined by matching the elevation data to industry standard tie models" because the specification describes this embodiment for only some cases—"where the tie is damaged or broken." Br. 20. Further, nothing in specification mandates reading into the claims any other embodiments describing the use of other models in connection with tie bounding boxes.

### K. "Small Area" and "Small Length" ('557 Patent)

As discussed in Tetra Tech's opening brief, the '557 patent provides objective boundaries in the form of "threshold[s]" to determine whether a crack is small. Br. 24-25. Pavemetrics' contention that the specification lacks numerical values does not mean the claim is indefinite. "[A] patentee need not define his invention with mathematical precision in order to comply with the definiteness requirement." *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1341 (Fed. Cir. 2003). Indeed, in *Homeland Housewares, LLC v. Rsch.*, 2013 WL 12134266, at *5 (C.D. Cal. Feb. 28, 2013), the Court found a claimed "threshold rate" to be definite, even without specifying that threshold in the specification, and rejected the argument that there was "no set formula." Further, Pavemetrics' cited cases are inapposite. Neither *Uni-Systems, LLC v. United States Tennis Assoc.*, 2020 WL 3960841 (E.D.N.Y. July 13, 2020) nor *Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2016 WL 4363485 (D. Del. Aug. 12, 2016) involve the use of objective criteria, like thresholds.

## II. CONCLUSION

For the foregoing reasons, Tetra Tech respectfully requests that the Court adopt Tetra Tech's proposed constructions.

| | | |
|---|---|---|
| 1 | Dated: October 25, 2021 | **CLARK HILL LLP** |
| 2 | | By: _[signature]_ |
| 3 | | |
| 4 | | Donald L. Ridge |

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

*Attorneys for Defendant and Counterclaim Plaintiffs*
TETRA TECH, INC. AND TETRA TECH TAS INC.

Case No. 2:21-CV-1289-MCS-MMA

**CERTIFICATE OF SERVICE**
*PAVEMETRICS SYSTEMS, INC. V. TETRA TECH, INC.*

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

    I am employed in the County of Los Angeles , State of California.  I am over the age of eighteen years and not a party to the within action; my business address is 1055 West Seventh Street, Suite 2400, Los Angeles, CA 90017.

    On October 25, 2021, I served the following document(s) described as

**TETRA TECH'S REPLY CLAIM CONSTRUCTION BRIEF**

on the interested parties in this action by placing true copies thereof enclosed in sealed envelopes addressed as follows:

| | |
|---|---|
| Christy L Lea, Esq.<br>Nicholas Matthew Zovko, Esq.<br>Joseph R. Re, Esq.<br>Payne McQueen Montgomery, Esq.<br>**Knobbe Martens Olson and Bear LLP**<br>2040 Main Street 14th Floor<br>Irvine, California 92614 | Attorneys for Plaintiff,<br>***Pavemetrics Systems, Inc***<br>Tel: 949-760-0404<br>Fax: 949-750-9502<br>Email: joe.re@knobbe.com;<br>Mac.montgomery@knobbe.com;<br>Nicholas.zovko@knobbe.com;<br>clea@kmob.com;<br>litigation@kmob.com |

☐    (BY ELECTRONIC SERVICE):  By electronically mailing a true and correct copy through Clark Hill LLP's electronic mail system from DVo@ClarkHill.com to the email addresses set forth below.

☑    **BY CM/ECF SYSTEM:**  I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then be sent Electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent by first class mail to any counsel of record indicated as non-registered participants.

Executed on October 25, 2021, at Los Angeles, California.

    I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Diane Vo

12