Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Payne McQueen Montgomery (*Pro Hac Vice*)
mack.montgomery@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
1717 Pennsylvania Ave. N.W., Ste. 900
Washington D.C. 20006
Phone: (202) 640-6400
Facsimile: (202) 640-6401
*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TETRA TECH, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | Case No. 2:21-cv-1289-MCS-MMA <br><br> **PAVEMETRICS' SUR-REPLY CLAIM CONSTRUCTION BRIEF** <br><br><br> Honorable Mark C. Scarsi <br> Honorable Maria A. Audero |

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ...................................................................................... 1

II. MOST SIGNIFICANT CLAIM TERMS ................................................. 2

    A. "Track Elevation Map" | "Three Dimensional Elevation Map" ('293 Patent) ........................................................................... 2

    B. "Identifying" ('293 Patent) ........................................................... 3

    C. "Appropriate Gradient Neighborhood" ('293 Patent) ................ 4

    D. "2D Track Section Over Which Differential Vertical Measurements Are Calculated" ('293 Patent) ............................ 6

    E. "Sliding Window" ('293 Patent) .................................................. 6

    F. "Moving the Gradient Neighborhood Like a Sliding Window Over the 3D Elevation Data" ('293 Patent) ................. 7

    G. "Is Configured To Run An Algorithm" ('293 Patent) ................ 7

    H. "Comprising The Steps Of:" a, b, c, d ('293 Patent) .................. 9

    I. "Tie Surface Plane Model" ('557 Patent) ................................... 9

    J. "Tie Bounding Box" ('557 Patent) ............................................ 10

    K. "Small Area" and "Small Length" ('557 Patent) ...................... 10

III. CONCLUSION ......................................................................................... 11

# TABLE OF AUTHORITIES

Page No.

*AFG Indus., Inc. v. Cardinal IG Co.*,
  239 F.3d 1239 (Fed. Cir. 2001) .................................................................... 2

*Bell Atl. Network Servs. v. Covad Commc'ns Grp.*,
  262 F.3d 1258 (Fed. Cir. 2001) .................................................................... 7

*Centripetal Networks, Inc. v. Cisco Sys., Inc.*,
  2020 WL 863976 (E.D. Va. 2020) ............................................................... 8

*Every Penny Counts, Inc. v. Am. Express Co.*,
  563 F.3d 1378 (Fed. Cir. 2009) .................................................................... 5

*Finjan, Inc. v. Secure Computing Corp.*,
  626 F.3d 1197 (Fed. Cir. 2010) .................................................................... 8

*Fresenius USA, Inc. v. Baxter Int'l, Inc.*,
  582 F.3d 1288 (Fed. Cir. 2009) .................................................................... 3

*Huawei Techs. Co. v. Verizon Commc'ns, Inc.*,
  2021 WL 150442 (E.D. Tex. 2021) ............................................................. 8

*Intellectual Ventures I LLC v. AT&T Mobility LLC*,
  2016 WL 4363485 (D. Del. 2016), *vacated in part on other
  grounds*, 902 F.3d 1372 (Fed. Cir. 2018) .................................................. 11

*Markman v. Westview Instruments, Inc.*,
  52 F.3d 967 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) ......................... 1

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
  2018 WL 5603631 (N.D. Cal. 2018) ......................................................... 11

*Signal IP v. Am. Honda Motor Co.*,
  2015 WL 5768344 (C.D. Cal. 2015) ......................................................... 11

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015) .................................................................... 6

*Valinge Innovation AB v. Halstead New England Corp.*,
  2018 WL 2108199 (D. Del. 2018) ............................................................. 11

*Zelinski v. Brunswick Corp.*,
  185 F.3d 1311 (Fed. Cir. 1999) .................................................................... 5

## I. INTRODUCTION

Tetra Tech wrongly argues that Pavemetrics "seeks to litigate infringement now." Reply 1. But Pavemetrics is not asking the Court to determine infringement. Rather, Pavemetrics raises Tetra Tech's infringement contentions to show that the parties dispute the *scope* of the claims. Tetra Tech cannot shield terms from construction by arguing for "ordinary meaning" and "needs no construction," while applying *non*-ordinary, unsupported meanings in its infringement contentions.

Tetra Tech ignores *O2 Micro*, neglecting to mention it, much less persuasively arguing how it does not apply in this case. Instead, Tetra Tech doubles down on its misunderstanding of the purpose of claim construction. Citing *Phillips*, Tetra Tech continues to assert that terms need no construction if they would have been understood by a POSA. *See, e.g.*, Reply 4-5. But *Phillips* is a case about *how* to construe claim terms, not *when* to construe claim terms. *Phillips* is therefore inapposite to whether claims *should* be construed.

Tetra Tech invites this Court to err by failing to resolve disputes of claim scope. Under Tetra Tech's theory of claim construction, if a POSA merely would have understood a disputed claim term, the jury must decide, without instruction, whether the accused product meets the claim limitation. Tetra Tech's claim construction standard would require the jury to make this uninformed infringement decision even if the parties presented radically different theories of the scope of the disputed claim term when making arguments regarding infringement.

The law prohibits such a *laissez-faire* approach to claim construction. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996) (The Court, not the jury, "has the power and obligation to construe as a matter of law the meaning of language used in the patent claim."). In fact, "[i]t is critical for trial courts to set forth an express

-1-

construction of the material claim terms in dispute, in part because the claim construction becomes the basis of the jury instructions, should the case go to trial." *AFG Indus., Inc. v. Cardinal IG Co.*, 239 F.3d 1239, 1247 (Fed. Cir. 2001). Accordingly, the Court should construe the disputed claim terms. For the reasons that follow, and those previously set forth in Pavemetrics' Responsive Claim Construction Brief, the Court should adopt Pavemetrics' proposed constructions of the disputed claim terms.

## II. MOST SIGNIFICANT CLAIM TERMS

### A. "Track Elevation Map" | "Three Dimensional Elevation Map" ('293 Patent)

Pavemetrics' claim construction is correct for a simple reason: Claims 1 and 22 require that the 3D map include both intensity *and* elevation data. Tetra Tech's silence on this clear claim language speaks volumes.

The intrinsic record confirms that the Court should reject Tetra Tech's attempts to replace the conjunctive *and* with the disjunctive *or*. Having narrowed the scope of its claims during prosecution, Tetra Tech cannot now reclaim that scope during claim construction. *See* Ex. J at 2, 40, 50.

Tetra Tech argues that the specification does not expressly define "3D elevation maps." Reply 1-2. Regardless of whether the specification provides an express definition, it reinforces that the claim language requires the track elevation map to include surface elevation *and* intensity data.[1] *See* Ex. A, 9:17-21, 2:11-14. Tetra Tech ignores that Figure 10 plainly depicts a distinct concept from Figures 2 and 19. Any visual comparison of Figures 2 and 10 makes this apparent, and the specification expressly describes Figures 2 and 19 as "3D elevation maps." Ex. A, 9:17-21, 16:10-11.

---

[1] In its order denying Tetra Tech's motion for a preliminary injunction, the Court equated the "full elevation and intensity profile of the full width of a railway track bed" to a "3D elevation map." ECF 61 at 5.

Finally, Tetra Tech's arguments about the 3D map contradict its earlier representations in this case.[2] For example, in its reply brief in support of its motion for a preliminary injunction, Tetra Tech argued that the prior art Sobel filters "are not applied to calculate differential vertical measurements *from 3D elevation data of a 3D track elevation map*."[3] ECF 46 at 3 (emphasis added). Tetra Tech argued that Sobel filters are instead "typically used to detect sharp changes *in intensity* between pixels of two-dimensional intensity images." *Id.* at 20 (emphasis added). The clear inference from Tetra Tech's prior argument is that the claimed "3D track elevation map" always includes elevation data. This contradicts Tetra Tech's current argument that such a map may include either elevation *or* intensity data.

## B. "Identifying" ('293 Patent)

Citing *Fresenius*, Tetra Tech argues that the Court need not construe "identifying" because Pavemetrics "admits that its accused product identifies rail track features." *See* Reply 3.[4] In making that argument, Tetra Tech insinuates that Pavemetrics concedes infringement. This insinuation completely misrepresents the claims, which cannot possibly be so broad. The '293 patent

---

[2] Tetra Tech conflated "track elevation map" and "three dimensional elevation map" in its own infringement contentions. Also, *two* claims that depend from claim 22 use "track elevation map," not just one. Tetra Tech never sought a certificate of correction for what it now alleges is a drafting error.

[3] This statement also contradicts Tetra Tech's current argument that "3d elevation map" and "track elevation map" are distinct terms by using a term conflating a 3d elevation map and a track elevation map, i.e., "3D track elevation map."

[4] Pavemetrics does not infringe the '293 patent for multiple reasons, including that its product is not "configured to run an algorithm" comprising the step of "*identifying* a railway track bed feature from the track elevation map." In contrast, in *Fresenius*, the accused infringer "**unconditionally** stipulated that its accused infringing device contains each and every element of the claims." *Fresenius USA, Inc. v. Baxter Int'l, Inc.*, 582 F.3d 1288, 1304 (Fed. Cir. 2009) (emphasis added).

does not require merely "identifying" a railway track bed feature. It requires that such a feature be identified *from* a 3D map, using algorithmic sub-steps recited in the claims. Given these limitations, Tetra Tech misuses "identifying" in its infringement contentions to mean fine-tuning an already-identified feature by filtering out data. Pavemetrics disputes that "identifying" has that meaning and seeks a ruling on this dispute. In contrast, Tetra Tech refuses to articulate the ordinary meaning of "identifying" in hopes that the Court will not decide the parties' claim construction dispute. It offers no support for the meaning in its infringement contentions, never explaining how "identifying" could have such a meaning within the context of the '293 patent and its claims.

Pavemetrics' construction properly describes how a POSA would have understood "identifying" when reading the '293 patent. For example, Pavemetrics explained how the specification and the understanding of a POSA in computer vision supported construing "identifying" to include "based on a predetermined rule or model." Response 6. In contrast, Tetra Tech points to no example in the intrinsic record where a railway track bed feature is identified without being based on a predetermined rule or model.

C.  **"Appropriate Gradient Neighborhood" ('293 Patent)**

Tetra Tech faults Pavemetrics for not acknowledging "this Court's prior ruling that the term 'gradient neighborhood' does not require further construction." Reply 4. But the Court did not need to construe "gradient neighborhood" to deny Tetra Tech's motion for a preliminary injunction. ECF 61 at 13. The scope of that term did not determine the outcome of the preliminary-injunction motion. Here, the parties present a dispute over the scope of "appropriate gradient neighborhood" that must be decided before the jury can conduct its infringement analysis.

Tetra Tech argues that "adopting Tetra Tech's construction does not leave it to the jury to determine the scope of 'appropriate gradient neighborhood.'"

-4-

1 Reply 5. But Tetra Tech never explains how that could possibly be true. Its so-called "construction" is no construction at all. "Appropriate gradient neighborhood" is not a commonly understood term, and the patent does not define it. Therefore, the jury's understanding of the scope of "appropriate gradient neighborhood" should come only from this Court's instructions, and not from experts disputing the meaning of the terms. *See Every Penny Counts, Inc. v. Am. Express Co.*, 563 F.3d 1378, 1383 (Fed. Cir. 2009).

Tetra Tech argues that the "the specification does not recite the specific language Pavemetrics seeks to inject into the claims." Reply 4-5. But the specification's limited description of "appropriate gradient neighborhood" does not fully reflect how a POSA would have understood the term. And when it does provide meaning relevant to "appropriate gradient neighborhood," Pavemetrics incorporated that meaning in its construction. For example, according to Tetra Tech, "appropriate" means "suitable." But "suitable" adds nothing to "appropriate," unless it incorporates the specification's teaching of what makes a gradient neighborhood "suitable." And the specification teaches that "suitable" neighborhoods have a certain size and shape. *See, e.g.*, Ex. A, 9:54-56 ("A suitable neighborhood **30** as shown in FIG. 5 is preferably a 10 mm×30 mm gradient area."). In computer vision, that size and shape is predetermined. Frakes ¶46. Tetra Tech calls this understanding "unsupported," but it is supported by the Declaration of Dr. Frakes, dictionary definitions, and the examples in the specification. Response 8-9. Thus, Pavemetrics' construction reflects how a POSA would have understood "appropriate gradient neighborhood." *See Zelinski v. Brunswick Corp.*, 185 F.3d 1311, 1315 (Fed. Cir. 1999) ("[I]f a term of art, it is given the ordinary and accustomed meaning as understood by those of ordinary skill in the art.").

/ / /

### D. "2D Track Section Over Which Differential Vertical Measurements Are Calculated" ('293 Patent)

Tetra Tech never rebuts that Pavemetrics' construction reflects how a POSA would have understood this "2D Track Section" phrase when reading the '293 patent. Reply 5-6. Instead, it objects that Pavemetrics' construction does not merely restate the claim language. But Tetra Tech itself has previously explained, using words other than the claim language, that the gradient neighborhood is calculating 3D gradient measures on the area of track within the neighborhood. For example, during the preliminary-injunction motion, its expert explained that "[a]s the processor moves the gradient neighborhood like a sliding window over the 3D elevation data of the 3D track elevation map, ***differential vertical measurements, or 3D gradient measures***, are repeatedly calculated on the 3D elevation data of the 3D track elevation map located within the neighborhood to identify various railroad track bed features." ECF 46-1 ¶31 (emphasis added). The jury should be equally informed that "differential vertical measurements" are 3D gradient calculations over the selected track area before evaluating infringement.

### E. "Sliding Window" ('293 Patent)

Tetra Tech wrongly suggests that Pavemetrics is applying a "layperson standard" for its proposed construction. Reply 6. Pavemetrics' construction defines how a *POSA* would have understood "sliding window" in terms *understandable* to a lay juror.

Resort to a technical dictionary is appropriate to define a term of art, like "sliding window." *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1339 (Fed. Cir. 2015). Tetra Tech never explains how the dictionary definition of "sliding window" would supposedly inject "confusion" and risk "misapplication" by the jury, as it argues. Reply 6. Nor does it explain how the jury could possibly be expected to understand the technical term "sliding

window" without *any* construction from the Court.

Finally, removing the word "typically" hardly creates a contradiction. Pavemetrics explained how the intrinsic record compels the removal of "typically" from its construction. Response 12-13. Rather than contest this explanation, Tetra Tech ignores it. This Court should adopt the commonly understood technical meaning of "sliding window" proposed by Pavemetrics.

### F. "Moving the Gradient Neighborhood Like a Sliding Window Over the 3D Elevation Data" ('293 Patent)

Pavemetrics has already explained how it is not asking the Court to resolve any factual disputes of infringement, but to resolve legal disputes of proper claim scope.

Tetra Tech argues that Pavemetrics improperly reads an embodiment into the claims. Reply 7. But the claim language requires that the gradient neighborhood be applied to "the 3D elevation data." Ex. A, 29:52, 31:58. Moreover, "when a patentee uses a claim term throughout the entire patent specification, in a manner consistent with only a single meaning, he has defined that term 'by implication.'" *Bell Atl. Network Servs. v. Covad Commc'ns Grp.*, 262 F.3d 1258, 1271 (Fed. Cir. 2001). Every time the specification discusses moving a *gradient* neighborhood like a sliding window, it teaches that the neighborhood is "moved like a window sequentially and completely for each position in the railway track bed elevation data." *See* Ex. A, 10:31-36; 11:59-63. Indeed, the specification uses sliding window consistent with its technical meaning of moving to an adjacent pixel after performing a calculation at a first pixel. Ex. E at 209.

### G. "Is Configured To Run An Algorithm" ('293 Patent)

Pavemetrics explained how the parties' differing views of the claim scope require a resolution before the jury may determine infringement. It did not ask the Court to decide whether it infringes. The infringement issues Tetra Tech

-7-

raises ("including what, how, why, and when the algorithms were 'disabled,' if at all") will still be left for the jury to decide. *See* Reply 7. In contrast, the claim construction dispute over the meaning of "configured to" should be resolved by the Court.

With respect to the meaning of "configured to," Tetra Tech misconstrues *Finjan*. In *Finjan*, the accused product infringed even though customers needed to "activate the functions programmed" in the code because "Finjan's apparatus **claims do not require** that the proactive scanning software **be configured in a particular way** to infringe—only that it be programmed for performing the claimed steps." *Finjan, Inc. v. Secure Computing Corp.*, 626 F.3d 1197, 1204 (Fed. Cir. 2010) (emphasis added). Tetra Tech's fallback construction—"is programmed to run an algorithm"—directly contradicts the Federal Circuit's distinction between "configured to" claims and "programmed to" claims.

Tetra Tech's distinction of *Huawei* misses the point. *Huawei* found that "[t]he 'configured to' and 'adapted to' limitations denote actual capability to perform the claim-recited function, not merely some potential capability." *Huawei Techs. Co. v. Verizon Commc'ns, Inc.*, 2021 WL 150442, at *18 (E.D. Tex. 2021). The *Huawei* court's conclusion did not rely on the claim limitations being "means-plus-function" limitations. Tetra Tech's distinction of *Centripetal Networks* is also irrelevant. Whether Pavemetrics' algorithms are "wholly incapable of performance" is a factual issue for the jury, not an issue for claim construction. The correct issue is whether "configured to" requires a device to be "**actually configured to do the function**," or merely capable of performing the function. *See Centripetal Networks, Inc. v. Cisco Sys., Inc.*, 2020 WL 863976, at *7 (E.D. Va. 2020) (emphasis original). As *Centripetal Networks* recognized, courts have consistently recognized that "configured to" requires the former. *See id.* at *8.

/ / /

### H. "Comprising The Steps Of:" a, b, c, d ('293 Patent)

Tetra Tech makes non-sensical arguments about the claims not being limited to generating "a single" 3D map or that "all" 3D maps must be generated before the identifying step. Reply 8. Plainly, the claims require generating a 3D map and identifying a feature from it. The parties dispute whether those (and other steps) must be performed in the recited order, and the Court should resolve the dispute.

Tetra Tech claims that Pavemetrics relies "primarily on antecedent basis" to argue that all steps must occur in the recited order, and that the claim language "does not unambiguously indicate that each step must be performed in its entirety prior to the subsequent step." Reply 8-9. But, in addition to the antecedent language, Pavemetrics explained how the claims unambiguously indicate that each step must be performed prior to the subsequent step. Response 19. A processor cannot generate a 3D map based on *acquired* three dimensional data until that data has actually been acquired. Similarly, a processor cannot identify a railway track bed feature from a 3D map until a 3D map has been generated. The claimed steps follow an unambiguous logical order, and the antecedent basis confirms that unambiguous logical order. In contrast, Tetra Tech does not attempt to explain how "certain steps could occur simultaneously" as it alleges without support. Reply 8-9.

### I. "Tie Surface Plane Model" ('557 Patent)

Absent construction, Pavemetrics has no idea how Tetra Tech intends to define "tie surface plane model" before the jury. Tetra Tech insists it is not conflating "tie surface plane" and "tie surface plane model." Reply 9. If that were true, what meaning of "tie surface plane model" would Tetra Tech apply to the claims?

In truth, Tetra Tech is equating "tie surface plane model" to "tie surface plane," thereby reading out the word "model." Tetra Tech's argument that "the

specification specifically contemplates that portions of the tie are excluded" exemplifies how it conflates the "plane" with the "plane model." In arguing that portions of the tie are excluded, Tetra Tech cites two passages from the specification. Reply 9. One passage describes that an "estimate of the crosstie surface elevation" is calculated excluding "regions of the track bed surface which are outside expected tie surface dimensions." Ex. B 10:10-46. The other passage describes that the "*tie surface plane* 192 preferably excludes the rail and tie plate surfaces." Ex. B, 16:16-17 (emphasis added). Unless a "tie surface plane model" refers to the same concept as an "estimate of the crosstie surface elevation" or the "tie surface plane 192," the specification does not support that any portions of the tie are excluded from a tie surface plane model.

## J. "Tie Bounding Box" ('557 Patent)

Pavemetrics is not improperly importing "industry standard tie models" from the specification. The specification says that "[t]he bounding box definition method includes edge quality measures (to determine how linear each planar surface based tie edge is) and industry standard tie models to assist in correctly defining and orienting the bounding box in cases where the tie is damaged or broken." Ex. B, 15:5-9. This sentence suggests that the tie bounding box definition method *always* includes industry standard tie models, even if those tie models are *used* only when needed to assist in correctly defining and orienting the bounding box.

## K. "Small Area" and "Small Length" ('557 Patent)

Tetra Tech concedes that the '557 patent never explains what constitutes a "small area" or "small length," and never provides numeric guidance or concrete examples. *See* Reply 10. Yet, Tetra Tech insists that the specification's sparse mention of a "threshold" provides objective boundaries for these claim terms. *Id.* Tetra Tech's argument is baseless.

Tetra Tech cites two inapplicable, pre-*Nautilus* cases, *Oakley* and

*Homeland Housewares*. *See Intellectual Ventures I LLC v. AT&T Mobility LLC*, 2016 WL 4363485, at *17 (D. Del. 2016), *vacated in part on other grounds*, 902 F.3d 1372 (Fed. Cir. 2018) (rejecting "the less exacting, pre *Nautilus* standard for indefiniteness"). Additionally, in *Homeland Housewares*, "threshold rate" was the disputed claim term—not the supposed support for a term of degree. Also, unlike *Homeland Housewares*, Tetra Tech has identified no evidence suggesting empirical testing can determine whether a crack has a "small area" or a "small length."

District courts after *Nautilus* have found claim terms involving thresholds indefinite. *See, e.g.*, *Power Integrations, Inc. v. ON Semiconductor Corp.*, 2018 WL 5603631, at *20 (N.D. Cal. 2018) ("moderate power level threshold" indefinite because "the specification must provide some meaningful way to determine what the moderate value is"); *Valinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2108199, at *4-5 (D. Del. 2018) ("Nor has Plaintiff offered any persuasive evidence that a POSA would know a minimum threshold of swelling or absorbency that is required for a plank to be considered moisture damaged."); *Signal IP v. Am. Honda Motor Co.*, 2015 WL 5768344, at *65-73 (C.D. Cal. 2015).

Here, an unspecified "minimum crack depth threshold" or "minimum crack length (extent) threshold," Ex. A, 16:26-33, does not provide any objective criteria. Thus, "small area" and "small length" are indefinite.

### III. CONCLUSION

Pavemetrics asks that the Court reject Tetra Tech's invitation not to construe any of the claim terms and adopt Pavemetrics' proposed constructions.

Respectfully Submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: November 1, 2021    By: /s/ *Christy G. Lea*
Joseph R. Re

1  Christy G. Lea
2  Nicholas M. Zovko
   Payne McQueen Montgomery
3
   *Attorneys for Plaintiff/Counterclaim Defendant*,
4  PAVEMETRICS SYSTEMS, INC.

5

6

7  54494732

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28