Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502
*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TETRA TECH, INC., <br><br> Defendant. <br><br><br> AND RELATED COUNTERCLAIMS | ) Case No. 2:21-cv-1289-MCS-MMA <br> ) <br> ) <br> ) **MEMORANDUM IN SUPPORT** <br> ) **OF PAVEMETRICS' MOTION** <br> ) **FOR SUMMARY JUDGMENT OF** <br> ) **NON-INFRINGEMENT OF THE** <br> ) **'293 PATENT** <br> ) <br> ) Hearing Date:   February 14, 2022 <br> ) Time:            9:00 am <br> ) Ctrm:            7C <br> ) <br> ) <br> ) <br> ) Honorable Mark C. Scarsi <br> ) Honorable Maria A. Audero |

# TABLE OF CONTENTS

**Page No.**

I.      INTRODUCTION ..................................................................................1

II.     FACTUAL BACKGROUND ...............................................................2

    A.      The '293 Patent .........................................................................2

    B.      This Court's Claim Construction ..............................................5

    C.      Pavemetrics' LRAIL Product ...................................................6

    D.      Tetra Tech's Infringement Contentions .................................11

III.    STANDARD FOR SUMMARY JUDGMENT .................................12

IV.     PAVEMETRICS DOES NOT INFRINGE ANY CLAIMS OF
    THE '293 PATENT AS A MATTER OF LAW................................12

    A.      No Reasonable Jury Could Find That LRAIL Literally
        Infringes ..................................................................................13

        1.      LRAIL Does Not Generate A 3D Map For
             Identifying Features ......................................................14

             a.      Marketing Image From PV3D Viewer
                  Software..............................................................14

             b.      Enhanced Intensity Image From Manuals ..........15

             c.      Test "Mixed" Image Never Processed .................16

        2.      LRAIL Does Not Identify Features From A 3D
             Map ...............................................................................16

    B.      Tetra Tech Is Barred from Asserting that LRAIL
        Infringes Under the Doctrine of Equivalents............................18

V.      ANY REQUEST BY TETRA TECH FOR ADDITIONAL
    DISCOVERY SHOULD BE DENIED.............................................20

VI.     CONCLUSION .................................................................................21

# TABLE OF AUTHORITIES

**Page No(s).**

*Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*,
    811 F.3d 1334 (Fed. Cir. 2016) ................................................. 12

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ................................................. 12

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986) ................................................. 12

*EMD Millipore Corp. v. AllPure Techs., Inc.*,
    768 F.3d 1196 (Fed. Cir. 2014) ................................................. 18

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*,
    344 F.3d 1359 (Fed. Cir. 2003) (en banc) ................................................. 18

*Glaukos Corp. v. Ivantis, Inc.*,
    2019 WL 1950297 (C.D. Cal. Mar. 19, 2019) ................................................. 15

*Jackrel v. Paragon Sporting Goods*,
    171 F. Supp. 2d 163 (S.D.N.Y. 2001) ................................................. 15

*Mag Aero. Indus. v. B/E Aero., Inc.*,
    816 F.3d 1374 (Fed. Cir. 2016) ................................................. 15

*Medgraph, Inc. v. Medtronic, Inc.*,
    843 F.3d 942 (Fed. Cir. 2016) ................................................. 17

*Novartis Corp. v. Ben Venue Lab'ys, Inc.*,
    271 F.3d 1043 (Fed. Cir. 2001) ................................................. 12

*Regents of the Univ. of Minn. v. AGA Med. Corp.*,
    717 F.3d 929 (Fed. Cir. 2013) ................................................. 15

*Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*,
    520 U.S. 17 (1997) ................................................. 18

*Whirlpool Corp. v. LG Elecs., Inc.*,
    2006 WL 2035215 (W.D. Mich. July 18, 2006) ................................................. 15

## OTHER AUTHORITIES

Fed. R. Civ. P. 56 ................................................. 12

Rule 56 ................................................. 12

-ii-

1    Pavemetrics submits this memorandum in support of its Motion for
2  Summary Judgment of Non-Infringement of U.S. Patent No. 10,362,293.
3                          **I.  INTRODUCTION**
4    Pavemetrics does not infringe the '293 patent as a matter of law.  All
5  asserted claims require identifying a railway track bed feature from a "track
6  elevation map" or "three dimensional elevation map" (a "3D map").  This Court
7  construed the 3D map to be a "representation of both the height (elevation) and
8  intensity of reflected laser light (intensity) at each data point within an area across
9  the entire railway track bed."  Pavemetrics' accused Laser Rail Inspection System
10 (LRAIL) does not identify a railway track bed feature from such a 3D map.
11 Rather, LRAIL identifies track bed features solely from images containing only
12 elevation data or from images containing only intensity data.  Tetra Tech cannot
13 genuinely dispute this fact.  Accordingly, Pavemetrics' sales of LRAIL and any
14 use of LRAIL cannot literally infringe any asserted claim of the '293 patent.
15   Moreover, prosecution history estoppel bars Tetra Tech from arguing that
16 Pavemetrics infringes under the doctrine of equivalents.  In its claim construction
17 order, this Court correctly held that Tetra Tech had disclaimed identifying a
18 railway track bed feature from an image containing either elevation or intensity
19 data.  Tetra Tech amended the claims to require that those images be 3D maps
20 having *both* surface elevation *and* intensity data.  Thus, Tetra Tech cannot
21 recapture through the doctrine of equivalents the step of identifying features from
22 images having either elevation *or* intensity data.
23   In its contentions, Tetra Tech could not identify any algorithm in
24 Pavemetrics' LRAIL source code that identifies a feature from a 3D map that is
25 a representation of both elevation and intensity data.  Instead, Tetra Tech's
26 contentions rely on a hodgepodge of images from marketing materials and user
27 manuals.  But none of those images are a 3D map from which any LRAIL
28 algorithm identifies a feature.  Faced with this deficiency, Tetra Tech contends

that three algorithms entirely unrelated to those images identify railway track bed features. But the three algorithms analyze elevation data only. And Tetra Tech does not even allege that those algorithms analyze a 3D map.

Finally, in its contentions, Tetra Tech makes vague references and incorrect contentions about Pavemetrics' use of deep neural networks to identify features. Nowhere in its contentions does Tetra Tech show an algorithm that identifies a feature from a 3D map having both types of data. It also fails to show that any algorithm does so by performing the claimed sub-steps of defining and moving an appropriate gradient neighborhood over 3D elevation data.

Thus, this Court should grant summary judgment of no infringement of the '293 patent.

## II.  FACTUAL BACKGROUND

Tetra Tech accuses Pavemetrics' LRAIL system of infringing claims 1, 2, 4, 15, 16, 19–23, 25, 36-37, and 40–43 of the '293 patent. Tetra Tech also accuses LRAIL of infringing U.S. Patent No. 10,616,557, a continuation of the '293 patent. This motion seeks judgment on the '293 patent only.

### A.  The '293 Patent

The '293 patent is titled "3D Track Assessment System and Method." Ex. 1. It discloses a three-dimensional railway track assessment system, which the patent refers to as "3DTAS." *Id.*, 1:58-59. The patent addresses systems and methods for automatically inspecting railway track beds to confirm their safety. More specifically, the patent discloses ways to identify defects or features of a railway track bed "based on 3D elevation and intensity data gathered from the railway track bed." *Id.*, Abstract.

The 3DTAS includes conventional hardware used for laser triangulation, including a processor, a light line projector (e.g., a laser), and sensors for detecting light from the light line projector that has been reflected from a railway track bed. *Id.*, 8:64–9:2. The sensors "detect elevation and intensity data" and that data "is

then combined for both rails to provide a full elevation and intensity profile of the full width of a railway track bed," also referred to as a 3D elevation map. *Id.*, 9:2–9:4, 9:17–21.  Then, the processor analyzes the 3D elevation map for each section of track "to extract objective, repeatable, and accurate measures for detected features of interest." *Id.*, 9:22–25.  As the summary of the invention explains, 3DTAS "automatically processes full width track surface elevation and intensity data to identify 3D features and extract physical parameters of interest." *Id.*, 2:11–14.

The '293 patent further explains that identifying a feature from the 3D elevation map must be performed in a very specific way: by calculating a "3D gradient measure over [a] zone of limited area referred to as a 'neighborhood' that is applied in sequential sliding and exhaustive fashion over the entire region to be processed." *Id.*, 9:50-54.  An appropriate gradient neighborhood "represents a small 2D track bed surface area over which differential vertical measurements are calculated." *Id.*, 10:26-30.  A suitable neighborhood "is preferably a 10 mmx30 mm gradient area." *Id.*, 9:54-56, 10:31.  The processor applies the gradient neighborhood to the 3D elevation data and moves the area "like a window sequentially and completely for each position in the railway track bed elevation data." *Id.*, 10:31-35.  "The resulting vertical gradient map represents the maximum 3D gradient at each elevation map measurement point." *Id.*, 10:35-37.

The '293 patent has two independent claims, claims 1 and 22, both of which Tetra Tech asserts.  Claim 1 recites:

> A system for assessing a railway track bed, the system comprising:
>
> a power source;
>
> a light emitting apparatus powered by the power source for emitting light energy toward a railway track;
>
> a data storage apparatus in communication with at least one processor;

at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation *and* intensity image data of the railway track to be stored in the data storage apparatus, wherein the at least one sensor is in communication with the at least one processor; and

wherein the at least one processor is configured to run an algorithm for processing three-dimensional surface elevation *and* intensity data gathered from the at least one sensor and saved in the data storage apparatus, the algorithm comprising the steps of:

a. acquiring three dimensional surface elevation *and* intensity data representative of an area segment of railway track bed;

b. generating a track elevation map based on the acquired three dimensional data;

c. **identifying a railway track bed feature from the track elevation map** further including the steps of:

i. defining **an appropriate gradient neighborhood** representing a small 2D track section over which differential vertical measurements are calculated and

ii. **moving the gradient neighborhood like a sliding window over the 3D elevation data** using the processor; and

d. storing information corresponding to the identified railway track bed feature in the data storage apparatus.

(emphases added).  Asserted claims 2, 4, 15, 16, and 19–21 depend from claim 1.

Claim 22 recites:

/ / /

A method of assessing a railway track bed, the method comprising the steps of:

a. defining a three dimensional elevation map based on surface elevation *and* intensity data representative of an area segment of the railway track bed, the data gathered by a sensor sensing reflected light from a track bed surface;

b. storing the elevation map in a data storage apparatus;

c. **identifying a railway track bed feature from the elevation map** using a processor, further comprising the sub-steps of:

i. defining **an appropriate gradient neighborhood** representing a small 2D track section over which differential vertical measurements are calculated and

ii. **moving the gradient neighborhood like a sliding window over the 3D elevation data** using the processor; and

d. storing information corresponding to the identified railway track bed feature in the data storage apparatus.

(emphases added). Asserted claims 23, 25, 36-37, 40-43 depend from claim 22.

**B.     This Court's Claim Construction**

On December 1, 2021, this Court issued its Claim Construction Order. ECF103. The Court construed the terms "track elevation map" and "three dimensional elevation map" to mean "representation of both the height (elevation) and intensity of reflected laser light (intensity) at each data point within an area across the entire railway track bed." *Id.* at 32. The Court rejected Tetra Tech's argument that the map could contain either elevation or intensity data. *Id.* at 31.

The Court also held that the gradient neighborhood sub-steps are a sub-step of identifying a feature from a track elevation map.  *Id.* at 27 ("sub-step (c)(1) is a sub-step of step(c)").  It construed "moving the gradient neighborhood like a sliding window over the 3D elevation data" to mean "sequentially and completely applying the gradient neighborhood to the 3D elevation data." *Id.* at 21.

## C.   Pavemetrics' LRAIL Product

Pavemetrics is a leader in vision systems for the automated inspection of transportation infrastructure, including roads and railways.  Hébert Decl. ¶3.  It has been using computer vision to inspect railway tracks since 2012. *Id.* ¶¶3, 15. Tetra Tech has accused Pavemetrics' LRAIL product of infringing the '293 patent, even though LRAIL existed years before Tetra Tech filed for the patent.

To explain LRAIL's technology and source code, Pavemetrics submits a declaration from its co-founder and Vice President of R&D and Operations, Jean-François Hébert, Ph.D.  Dr. Hébert oversees the development of LRAIL and its software source code. *Id.* ¶1.  He is intimately familiar with LRAIL's software and the algorithms used in the software. *Id.*  As Dr. Hébert explains, Pavemetrics customizes its LRAIL software based on each client's needs. *Id.* ¶5.  Its LRAIL software is based on source code that it frequently updates. *Id.*  This motion addresses the LRAIL software versions provided to U.S. customers since the '293 patent issued in 2019.

LRAIL uses laser triangulation technology to collect data on railway tracks, and then uses software to process that data and evaluate the condition of railway track components, such as rails, ties, ballast (gravel), and fasteners. *Id.* ¶¶6-9.  Laser triangulation involves a sensor projecting a line laser onto the railway surface to detect where the laser line hits that surface. *Id.* ¶6.  As shown below, the sensor uses a camera to capture intensity data and to detect the position of the laser line, which is later used to compute the distance between the sensor and the surface called range data or elevation data.



*Id.*

    After the data is collected using the sensors, LRAIL processing software analyzes 2D images that contain either intensity data or range data (after computing the range data from the laser line).  *Id.* ¶12.  Examples of an intensity image and a range image are shown below:



**Figure 5 – Intensity Image**

/ / /



**Figure 6 – Range Image**

Some LRAIL algorithms analyze range images and others analyze intensity images. *Id.* No LRAIL algorithm combines the range and intensity data into a single image and analyzes that image. *Id.* No LRAIL algorithm identifies a track bed feature from an image containing both range and intensity data. *Id.*

Merely to help customers visualize the railway tracks in 3D, Pavemetrics built 3D viewer software that can generate such a "combined" image, as shown in the image below:



**Figure 7 – 1 mm by 1 mm Scan of Railway**

*Id.* ¶¶26-28. Because this image is solely for the customer to visualize the track, Pavemetrics' LRAIL processing software does not interact with the 3D viewer software or that image. *Id.* ¶¶26, 31. It does not use it to identify a railway track bed feature. *Id.* ¶31.

1    After Pavemetrics' processing software has run to identify features from

2 either a range image or an intensity image, users have several options for saving

3 the output results, including saving result image(s) and overlay image(s). *Id.* ¶33.

4 As shown in the yellow-highlighted "Save Options" box on the viewer interface

5 below, users may select among three options for saving result image(s):

6 "Intensity," "Range," and "3D." *Id.* (unchecked in the image below). Users may

7 also select an "Overlay Image" for each of those options that allows them to see

8 the previously identified features overlayed onto the result images. *Id.*

9 (highlighting added) (two are checked in the image below).



25 Each result and overlay image is generated after the processing has been

26 completed and the features have been identified from other images. *Id.* ¶34.

27 Selecting one or more result or overlay images has no effect on the processing

28 algorithms. *Id.* The processing software runs the same algorithms on either a

range image or an intensity image, regardless of which result or overlay images the user chooses to save. *Id.*

The "3D" result image option is a 2D intensity image that has been enhanced with multiple artificial lighting sources to give it a 3D effect. *Id.* ¶35. Internally and in its source code, Pavemetrics refers to these enhanced intensity images as "Fake3D." *Id.* Externally, it refers to them as "3D effect" or "3D." *Id.* An example of a "3D" result image, *i.e.* a Fake3D image, is shown below:



*Id.* ¶36. As their name implies, Fake3D images are not 3D images because they do not contain any range data. *Id.* While Pavemetrics uses range data to direct the artificial lighting sources to create shadows over the intensity image, the Fake3D image does not contain any range data. *Id.* ¶37. It contains intensity data only. *Id.* If the user selects "Save Overlay Image – 3D," then that same Fake3D result image would be shown with the previously identified features overlayed onto the image in color, as shown below:

/ / /

*Id.* ¶38.

**D.   Tetra Tech's Infringement Contentions**

Tetra Tech inspected Pavemetrics' source code on May 27 and 28, 2021 and again on July 14, 15, and 16, 2021.  Laquer Decl. ¶7.  On June 10, 2021, Tetra Tech served its Preliminary Infringement Contentions for the '293 patent. *Id.* ¶3. On August 30, 2021, Tetra Tech amended those contentions and served First Supplemental Infringement Contentions.  *Id.* ¶4.  Tetra Tech's preliminary and first amended contentions did ***not*** allege that Pavemetrics' identified a railway track bed feature from a track elevation map representing both elevation and intensity data.

After this Court issued its Claim Construction Order on December 1, 2021, Pavemetrics requested that Tetra Tech stipulate to non-infringement of the '293 patent, because LRAIL does not identify features from a track elevation map. Laquer Decl. ¶18, Ex. 8.  Tetra Tech refused, and Pavemetrics' explained that it would seek summary judgment of non-infringement based on that missing limitation.  *Id.* ¶¶19-20, Ex. 9.  In December, over four days on two different visits, Tetra Tech again inspected Pavemetrics' source code.  *Id.* ¶¶14, 18. Thereafter, on December 20, 2021, Tetra Tech served its Second Supplemental

Infringement Contentions.  Laquer Ex. 3.  Between January 5-7, 2022, Tetra Tech deposed Pavemetrics' programmers, including Dr. Hébert.  *Id.* ¶21.

### III.  STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  A dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  "[A]n accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case."  *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001).

### IV.  PAVEMETRICS DOES NOT INFRINGE ANY CLAIMS OF THE '293 PATENT AS A MATTER OF LAW

Infringement is a question of fact and therefore "amenable to summary judgment when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent."  *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016).  That is the case here.

All claims of the '293 patent require identifying a railway track bed feature from the track elevation map by moving the gradient neighborhood like a sliding

window over the 3D elevation data.  Ex. 1 (Claims 1 and 22).  LRAIL does not perform that claim limitation.  Hebert Decl. ¶14.  Numerous elements of that claim limitation are missing from LRAIL's software.  LRAIL never identifies a feature from any image that satisfies this Court's construction of track elevation map.  *Id.*  Moreover, LRAIL never identifies a feature from a track elevation map by moving a gradient neighborhood over 3D elevation data.  *Id.* ¶46.

More specifically, Pavemetrics' LRAIL software never analyzes a three-dimensional track elevation map that represents *both* elevation *and* intensity data.  Hebert Decl. ¶12.  Depending on the function, LRAIL software analyzes *either* an intensity image *or* a range (i.e. elevation) image.  *Id.*  LRAIL software never combines intensity data and elevation data into a single image for identifying a feature from that image.  *Id.*  Nor does it do so by moving a gradient neighborhood over 3D elevation data in an image having both elevation and intensity data.  Thus, LRAIL software never identifies a railway track bed feature from a three-dimensional track elevation map, as required by all claims of the '293 patent.  *Id.* ¶14.  Therefore, this Court should grant summary judgment of non-infringement of the '293 patent.

**A.  No Reasonable Jury Could Find That LRAIL Literally Infringes**

Tetra Tech cannot show that LRAIL identifies a railway track bed feature from the claimed 3D map by moving a gradient neighborhood over 3D elevation data.  Tetra Tech's infringement contentions do not even allege that LRAIL does so.  *See* Ex. 3.  Tetra Tech presents a hodgepodge contention, arguing that LRAIL supposedly generates three different images that are 3D maps.  For support, it cites marketing materials, published papers, and user manuals.  Tellingly, it fails to support its claims with LRAIL source code.

/ / /

### 1.   LRAIL Does Not Generate A 3D Map For Identifying Features

For the limitation "generating a track elevation map" recited in claim 1 and "defining a three dimensional elevation map" recited in claim 22, Tetra Tech's contentions identify three different images of a railway trackbed: (1) a marketing image generated by Pavemetrics' 3D viewer software rather than LRAIL, (2) an enhanced intensity image that Pavemetrics' source code refers to as Fake3D, and (3) a test "Mixed" image never used with a customer.  Laquer Ex. 3 (TT Second Supplemental Infringement Contentions, Ex. A at 10-24).  None of these images are a 3D map generated and analyzed by LRAIL processing software.  Hébert Decl. ¶24.

### a.   Marketing Image From PV3D Viewer Software

Tetra Tech claims that the "Combined Result" image from Pavemetrics' marketing materials is a 3D map generated by LRAIL.  Ex. 3 (Ex. A at 12).  But Tetra Tech is incorrect.  That image is not generated by LRAIL.  Hebert Decl. ¶31.  And, it is never processed by LRAIL.  *Id*.  Rather, it is generated by Pavemetrics' 3D viewer software called LcmsPV3D, which is not provided with LRAIL.  *Id.* ¶¶25-26.  Pavemetrics developed that software to create 3D images for its customers to visualize the inspection surface.  *Id.* ¶26.  LcmsPV3D never identifies any features – it merely creates images.  *Id.* ¶27.  LRAIL's processing software is responsible for identifying features, but the LRAIL processing software is completely separate from LcmsPV3D.  *Id.* ¶26.  And LRAIL never analyzes any image from LcmsPV3D.  *Id*.  Accordingly, neither LRAIL nor LcmsPV3D identifies features from that image.  *Id.* ¶26-27.  That "Combined Result" image from LcmsPV3D cannot satisfy the 3D map limitations.

Moreover, Tetra Tech's reliance on marketing materials to show LRAIL generates and analyzes the "Combined Result" image is misplaced, particularly because it had full access to Pavemetrics' source code.  Laquer Decl. ¶¶6-18.  Marketing statements or images cannot create a genuine factual dispute over

unrebutted source code evidence. *Mag Aero. Indus. v. B/E Aero., Inc.*, 816 F.3d 1374, 1377-78 (Fed. Cir. 2016) (affirming summary judgment of non-infringement where "non-technical documents" and "out-of-context" testimony could not raise a triable issue about how the accused product worked); *Regents of the Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 939 (Fed. Cir. 2013) (no reasonable jury could find infringement based on sales materials contradicting the undisputed physical composition of the accused product); *Glaukos Corp. v. Ivantis, Inc.*, 2019 WL 1950297, at *10 (C.D. Cal. Mar. 19, 2019) (imprecise animations do not "overcome undisputed evidence" regarding the accused product); *Whirlpool Corp. v. LG Elecs., Inc.*, 2006 WL 2035215, at *8 (W.D. Mich. July 18, 2006) ("marketing materials cannot override the actual operation" of the accused device); *Jackrel v. Paragon Sporting Goods*, 171 F. Supp. 2d 163, 172 n.3 (S.D.N.Y. 2001) ("packaging materials" could not affect "the undisputed fact that defendant's product does not infringe plaintiff's patents").

### b. <u>Enhanced Intensity Image From Manuals</u>

In Tetra Tech's second attempt to show that LRAIL identifies a feature from a 3D map, it again cites non-source code documents, such as Pavemetrics' installation manuals and user manuals. Laquer Ex. 3 (Ex. A at 11-12.) Tetra Tech claims that "the LRAIL generates '3D' maps that 'result[] from the merging of both the intensity and range images.'" *Id.* But those manuals refer to a result image that Pavemetrics' processing software generates only *after* all features have been identified from other images. Hébert Decl. ¶33-34. Thus, no feature is identified from that result "3D" image, which Pavemetrics source code calls "Fake3D." *Id.* ¶¶34-35.

Moreover, that supposed "3D map" is not actually 3D because it does not contain elevation data. *Id.* ¶35. That is why Pavemetrics calls it "Fake3D." *Id.* It is an intensity image that is enhanced by artificial lighting sources to appear 3D. *Id.* ¶36. Elevation data is used to direct the lighting sources to create the 3D

effect, but the output image does not contain elevation data. *Id.* ¶37. Without elevation data, the enhanced intensity image cannot satisfy the claim requirement for a 3D map. Even if it could, it would not satisfy the sub-step of moving a gradient neighborhood over 3D elevation data. *Id.* ¶48.

### c.   Test "Mixed" Image Never Processed

Tetra Tech next points to a "2021 source code excerpt" to allege that Pavemetrics' LRAIL generates a "Mixed" image. Laquer Ex. 3 (Ex. A at 22-24). However, that Mixed image was an R&D feature that Pavemetrics developed for internal testing purposes only. Hébert Decl. ¶42. Pavemetrics never used a Mixed image to process any data for its customers. *Id.* Pavemetrics would need to make multiple modifications to its software (*i.e.*, LRAIL's processing software, configuration software, and deep neural network software) for LRAIL to process that image in order to identify a feature from it. *Id.* ¶43. Pavemetrics also would need to provide a neural network model trained with Mixed images. But such a neural network model does not exist. *Id.* Thus, LRAIL does not and cannot run an algorithm to identify any feature from a Mixed image. *Id.* ¶49. Therefore, the Mixed image cannot be used to satisfy the limitation of identifying a railway track feature from a 3D map.

### 2.   LRAIL Does Not Identify Features From A 3D Map

Recognizing that the three images it identifies for the generating a 3D map limitation are insufficient, Tetra Tech points to three irrelevant algorithms. *See* Ex. 3 (Ex. A at 30-40). However, none of those algorithms process any of the images, discussed above, that Tetra Tech alleges satisfy the generating a 3D map limitation. *Id.* ¶50. Instead, each of the algorithms that Tetra Tech relies on for "identifying a feature" process only elevation data. *Id.* They never process a 3D map representing both elevation and intensity data. *Id.* Accordingly, Tetra Tech's infringement contention is disjointed and fails to satisfy the claim language.

1      Tetra Tech admits that each of these algorithms applies only to elevation

2  values.  Laquer Ex. 3 (Ex. A at 30-40).  Tetra Tech does not even contend that

3  any of the algorithms analyzes a 3D map representing *both* elevation and

4  intensity.  *Id.*  Tetra Tech cannot articulate an infringement theory that addresses

5  the complete claim language.  Tetra Tech cannot offer *any* evidence that would

6  create a genuine factual dispute that LRAIL meets the claim requirement of

7  identifying a feature from a map representing both elevation and intensity.  For

8  those reasons, no reasonable jury could find that Pavemetrics literally infringes

9  the asserted claims.  *Cf. Medgraph, Inc. v. Medtronic, Inc.*, 843 F.3d 942, 950

10  (Fed. Cir. 2016) ("Because claim 16, as properly construed, requires that the

11  means for receiving and transmitting data include both computer *and* telephonic

12  capabilities, we conclude that the district court correctly granted summary

13  judgment of noninfringement of claim 16.").

14      Tetra Tech appears to point to the algorithms for the purpose of showing

15  the sub-steps of defining an appropriate gradient neighborhood and moving that

16  neighborhood over elevation data.  *See* Laquer Ex. 3 (Ex. A at 30).  But the claim

17  language clearly dictates, as this Court held, that these sub-steps must be

18  performed as a part of the main step of identifying a feature ***from a 3D map***.  ECF

19  103 at 27.  Thus, whether an algorithm performs these sub-steps is irrelevant if

20  Tetra Tech cannot show that the same algorithm performs the main step of

21  identifying a feature from a 3D map.  *See* Hébert Decl. ¶¶51-54.  Regardless, the

22  three algorithms also do not perform the sub-steps of defining an appropriate

23  gradient neighborhood and moving that neighborhood like a sliding window.  *Id.*

24  ¶¶55-58.

25      For all the above reasons, no reasonable jury could find that the LRAIL

26  literally infringes claims 1 or 22 of the '293 patent or their asserted dependent

27  claims.

28

**B.**     **<u>Tetra Tech Is Barred from Asserting that LRAIL Infringes Under the Doctrine of Equivalents</u>**

"Whether prosecution history estoppel applies to a particular argument, and thus whether the doctrine of equivalents is available for a particular claim limitation, is a question of law" that may be decided on summary judgment.  *See EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1201 (Fed. Cir. 2014).  Here, prosecution history estoppel applies because Tetra Tech narrowed the scope of its claims during prosecution to require that the recited 3D maps be based on surface elevation *and* intensity data.

Tetra Tech may not recapture claim scope it surrendered during the prosecution of the '293 patent. It is therefore estopped from asserting that LRAIL's process of identifying a railway track bed feature from a range (surface elevation) image *or* an intensity image is equivalent to the claim requirement of identifying a feature from a 3D map representative of both elevation *and* intensity data.  "Prosecution history estoppel applies when an applicant during patent prosecution narrows a claim 'to avoid the prior art, or otherwise to address a specific concern . . . that arguably would have rendered the claimed subject matter unpatentable.'"  *Id.* at 1203 (quoting *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30–31 (1997)).  "There is a presumption that prosecution history estoppel applies when a patentee has filed an amendment seeking to narrow the scope of a claim, and 'the reason for that amendment was a substantial one relating to patentability.'"  *Id.* (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 344 F.3d 1359, 1366 (Fed. Cir. 2003) (en banc)).

Prosecution history estoppel applies here because, as this Court held on claim construction, "Tetra Tech disclaimed the scope of the 'map' terms by amending the claims to require the 'map' terms to be based on both 'elevation' and 'intensity' data (*See* Exhibit J at 2, 15, 40, 50, 51, 57, 65)."  ECF 103 at 31 (Exhibit J is at ECF 87-2 and attached to Laquer Declaration as Ex. 2).  Indeed,

1  the asserted claims expressly recite that the 3D map is generated or defined based

2  on "surface elevation *and* intensity data," but the original claims did not include

3  such a requirement.

4       Original claim 1 did not require processing intensity data.  It merely

5  required processing "three dimensional elevation data."  Laquer Ex. 2 at 77.  The

6  examiner rejected all claims over a prior art reference that did "not explicitly teach

7  capturing the intensity image data."  *Id.* at 91, 140.  Tetra Tech responded by

8  amending claim 1 to require processing "three dimensional <u>surface</u> elevation <u>and</u>

9  <u>intensity</u> data."  *Id.* at 115.  As this Court found in its Claim Construction Order,

10  Tetra Tech subsequently distinguished claim 1 from the prior art on this basis:

11       Tetra Tech also argued that 'the track elevation map is gathered []via

12       the three dimensional surface elevation and intensity data[.]'  (*See*

13       Exhibit J at 50, 51.)  Thus, Tetra Tech argued that both the '3D

14       surface elevation and intensity data models' are necessary to analyze

15       'the elevations for an *area* of the track surface.'  (*Id.* at 50 (emphasis

16       in original); *see also id.* at 52 ("Kainer does not teach or suggest a

17       step of defining a three dimensional elevation map based ***on surface***

18       ***elevation and intensity data representative of an area segment of***

19       ***the railway track bed***.") (emphasis in original), 53, 57, 65

20       (recognizing that prior art reference did not 'explicitly teach

21       capturing the intensity image data'), 98, 100 (distinguishing prior art

22       on the grounds that it did not disclose 'the use of a single sensor for

23       obtaining surface elevation and intensity data for a given area' to

24       define 'a three dimensional elevation map' based on both 'surface

25       elevation ***and*** intensity data') (emphasis in original), 105).

26  ECF 103 at 32 (citing Ex. J (ECF 87-2)).

27       Similarly, claim 22, which issued from original claim 24, initially required

28  only "defining a three dimensional elevation map based on data gathered by a

-19-

sensor sensing reflected light from a track bed surface." Laquer Ex. 2 at 82. But Tetra Tech narrowed the claim, amending it to require "defining a three dimensional elevation map based on <u>surface elevation and intensity</u> data <u>representative of an area segment of the railway track bed</u>." *Id.* at 120. Tetra Tech then argued that the prior art, "does not teach or suggest a step of defining a three dimensional elevation map based on ***surface elevation and intensity data representative of an area segment of the railway track bed*** and, therefore, does not meet each and every limitation" of claim 22. *Id.* at 127.

These amendments narrowed the scope of independent claims 1 and 22, for a substantial reason related to patentability. Accordingly, as a matter of law, prosecution history estoppel bars Tetra Tech from alleging that LRAIL infringes under the doctrine of equivalents.

## V. <u>ANY REQUEST BY TETRA TECH FOR ADDITIONAL DISCOVERY SHOULD BE DENIED</u>

During the meet-and-confer process last month, Tetra Tech stated that it plans to oppose this motion by arguing that it needs additional fact discovery. But this motion is based on undisputed facts and the Court's construction. Even under Tetra Tech's infringement contentions, LRAIL does not satisfy the requirement of identifying a feature from a map containing both elevation data *and* intensity data. No additional discovery can change that.

On December 5, 2021, Pavemetrics' counsel sent Tetra Tech's counsel a detailed email explaining that Pavemetrics intended to move for summary judgment on the grounds set forth herein. *Id.*, Ex. 8. The parties met and conferred thereafter. *Id.* ¶20. Tetra Tech cannot explain what additional discovery, material to this Motion, it could take before fact discovery closes on January 20, 2022 that it could not have reasonably already completed.

Pavemetrics has made discovery abundantly available to Tetra Tech for many months. For example, on June 16, 2021, Pavemetrics made its full Gitlab

repository, containing every version of its source code, available for Tetra Tech's experts and attorneys to inspect.  Laquer Decl. ¶9-11.  Tetra Tech has inspected Pavemetrics' source code for nine full days, at approximately ten hours each day, with between two and four reviewers attending each day.  *Id.* 7, 11, 14, 18.  Tetra Tech served its First Supplemental Infringement Contentions on August 30, 2021.  *Id.* ¶4.  After this Court's Claim Construction Order, seven days of reviewing Pavemetrics' source code, and after meeting and conferring with Pavemetrics regarding this motion, Tetra Tech served its Second Supplemental Infringement Contentions on December 20, 2021.  *Id.* ¶5.  Tetra Tech has deposed Pavemetrics' witnesses most knowledgeable about its LRAIL source code, including the declarant on this motion, Dr. Hébert.  *Id.* ¶21.

Moreover, Tetra Tech cannot claim any surprise by this motion.  It has long known Pavemetrics' proposed construction of the 3D map terms and its non-infringement contentions.  *Id.* ¶3-4 (disclosing claim constructions with evidence on August 12, 2021 and non-infringement contentions on September 2, 2021).  Because the claims and specification expressly defined the 3D map terms, and the prosecution history clearly required those definitions, *see* ECF 103, Tetra Tech cannot reasonably claim surprise that the Court would construe the terms as it did.

## VI.  <u>CONCLUSION</u>

For the foregoing reasons, the Court should grant Pavemetrics' motion for summary judgment of non-infringement of the '293 patent.

/ / /

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  <u>January 10, 2022</u>          <u>/s/ Christy G. Lea</u>
                              Joseph R. Re
                              Christy G. Lea
                              Nicholas M. Zovko
                              Alan G. Laquer

*Attorneys for Plaintiff/Counterclaim Defendant*, PAVEMETRICS SYSTEMS, INC.