# EXHIBIT 2

Attorney Docket No. 06.00995.0042

CLAIMS

What is claimed is:

1.      A system for assessing a railway track bed, the system comprising:

a power source;

a light emitting apparatus powered by the power source for emitting light energy toward a railway track;

a data storage apparatus in communication with at least one processor;

at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional image data of the railway track to be stored in the data storage apparatus, wherein the plurality of sensors are in communication with the at least one processor; and

the at least one processor wherein the at least one processor is configured to run an algorithm for processing three-dimensional elevation data gathered from the plurality of sensors and saved in the data storage apparatus, the algorithm comprising the steps of:

a.      acquiring three dimensional data representative of a segment of railway track bed;

b.      generating a track elevation map based on the acquired three dimensional data;

c.      identifying a railway track bed feature from the track elevation map; and

d.      storing information corresponding to the identified railway track bed feature in the data storage apparatus.

2. The system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail head edge by detecting significant vertical gradient edges over a two dimensional area wherein such vertical gradient edges are greater than a minimum rail height threshold.

3. The system of claim 2 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail base edge by detecting significant vertical gradient edges over a two dimensional area adjacent the detected rail head edge wherein such vertical gradient edges are greater than a minimum rail base height threshold.

Page 47 of 56

EXHIBIT 2
77

Attorney Docket No. 06.00995.0042

30    4. The system of claim 2 wherein the algorithm further comprises the step of removing data corresponding to the rail head from the elevation map, thereby enhancing the detection of other smaller vertical components of the railway track bed.

35    5. The system of claim 4 wherein the algorithm step of identifying a railway track bed feature further comprises the step of detecting surfaces with surface normal values greater than a planar region surface normal value threshold and that are proximate to one another by less than a maximum proximity threshold.

40    6. The system of claim 5 wherein the algorithm step of identifying a railway track bed feature further comprises the step of defining an approximate tie surface plane based on the detected surfaces with surface normal values greater than the planar region surface normal value threshold that are proximate to one another by less than the maximum proximity threshold.

45    7. The system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of assigning a tie bounding box around the perimeter of the tie surface plane based at least on one measured parameter of the tie surface plane.

50    8. The system of claim 7 wherein the algorithm step of identifying a railway track bed feature further comprises the step of assigning an approximate tie length, an approximate tie width, and an approximate tie skew angle based on the bounding box assigned around the perimeter of the tie surface plane.

55    9. The system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying and measuring surface cracks that are deeper than a minimum crack depth threshold and that are longer than a minimum crack length threshold based on the track elevation map.

Page 48 of 56

EXHIBIT 2
78

Attorney Docket No. 06.00995.0042

60      10. The system of claim 9 wherein data corresponding to the measured surface cracks are saved
to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later
date to determine whether the measured surface cracks have changed.

65      11. The system of claim 9 wherein the algorithm step of identifying a railway track bed feature
further comprises a step of assigning a severity value to each measured crack based on at least
the measured length and measured width of the crack.

        12. The system of claim 6 wherein the algorithm step of identifying a railway track bed feature
further comprises the step of identifying and measuring a surface feature that is higher than a
minimum tie height threshold.

70      13. The system of claim 12 wherein data corresponding to the measured surface feature are saved
to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later
date to determine whether the measured surface feature has changed.

75      14. The system of claim 6 wherein the algorithm step of identifying a railway track bed feature
further comprises the step of detecting a broken tie based on an abrupt elevation shift along the
tie surface plane.

        15. The system of claim 1 wherein the algorithm step of identifying a railway track bed feature
further comprises the step of comparing at least a portion of the track elevation map to a plurality
80      of three dimensional features saved in a feature library to determine a best fit between the at least
a portion of the track elevation map and the plurality of three dimensional features to properly
identify the railway track bed feature.

        16. The system of claim 15 wherein the step of comparing further comprises the step of applying
85      a minimum correlation threshold so that a railway track bed feature will not be identified as a
particular three dimensional feature from the feature library unless the minimum correlation
threshold is met.

Page 49 of 56

EXHIBIT 2
79

Attorney Docket No. 06.00995.0042

90    17. The system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of determining a shoulder ballast volume adjacent a tie based at least in part on the approximate tie surface plane defined for the tie.

95    18. The system of claim 7 wherein the algorithm step of identifying a railway track bed feature further comprises the step of defining a surface area region adjacent the tie bounding box, measuring the surface elevation of the surface area region, and determining the difference between the surface elevation of the surface area region and the surface elevation of the approximate tie surface plane to determine whether a positive volume or negative volume is present at the surface area region.

100    19. The system of claim 15 wherein the algorithm step of identifying a railway track bed feature further comprises the step of  making a plurality of elevation measurements along and around an identified railway track bed feature and recording the measurements and the locations of the measurements in the data storage apparatus.

105    20. The system of claim 19 wherein the algorithm step of identifying a railway track bed feature further comprises the step of assigning a condition to the identified railway track bed feature based on the plurality of elevation measurements.

110    21.  The system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of measuring the length of a joint bar candidate, determining whether the length of the joint bar candidate falls between a minimum joint bar length threshold and a maximum joint bar length threshold, and identifying the joint bar candidate as a joint bar if the length measurement of the joint bar candidate falls between a minimum joint bar length threshold and a maximum joint bar length threshold.

115    22. A system for assessing a railway track bed, the system comprising:

a power source;

EXHIBIT 2
80

Attorney Docket No. 06.00995.0042

a light emitting apparatus powered by the power source for emitting light energy toward a
railway track;

120            a data storage apparatus in communication with at least one processor;

at least one sensor for sensing reflected light that was emitted from the light emitting
apparatus and acquiring three dimensional image data of the railway track to be stored in the data
storage apparatus, wherein the plurality of sensors are in communication with the at least one
processor; and

125            the at least one processor wherein the at least one processor includes an algorithm for
extracting railway track bed surface elevation data to define new railway track bed components
for a three dimensional track feature library, the algorithm comprising the steps of:

  a. acquiring three dimensional data representative of a segment of railway track bed;

  b. generating a track elevation map based on the acquired three dimensional data;

130  c. identifying a railway track feature from the track elevation map that does not match
    any previously defined track features saved in a track feature library;

  d. extracting three dimensional data from the track elevation map corresponding to the
    identified railway track feature;

  e. assigning a feature name to the extracted three dimensional data; and

135  f. saving in the data storage apparatus the extracted three dimensional data associated
    with the feature name as a new track feature to be included in the track feature
    library.

23. A method of building a virtual three dimensional railway track bed component library, the

140 method comprising the steps of:

  a. emitting a light along a track bed surface;

  b. sensing some of the emitted light after it has reflected off of the track bed surface;

  c. defining a three dimensional elevation map based on the sensed light reflected from
    the track bed surface;

145  d. storing the elevation map in a data storage apparatus;

EXHIBIT 2
81

Attorney Docket No. 06.00995.0042

    e.   identifying a railway track bed feature from the three dimensional elevation map that does not match any previously defined track bed features saved in a track component library;

    f.   extracting three dimensional data from the track elevation map corresponding to the identified railway track bed feature;

150

    g.   assigning a component name to the extracted three dimensional data; and

    h.   saving the extracted three dimensional data associated with the component name in a data storage apparatus as a new track bed feature to be included in the track component library.

155

24. A method of assessing a railway track bed, the method comprising the steps of:

    a.   defining a three dimensional elevation map based on data gathered by a sensor sensing reflected light from a track bed surface;

    b.   storing the elevation map in a data storage apparatus;

160

    c.   identifying a railway track bed feature from the elevation map; and

    d.   storing information corresponding to the identified railway track bed feature in the data storage apparatus.

25. The method of claim 24 wherein the step of identifying a railway track bed feature further

165 comprises the step of identifying a rail head edge by detecting significant vertical gradient edges over a two dimensional area wherein such vertical gradient edges are greater than a minimum rail height threshold.

26. The method of claim 25 wherein the step of identifying a railway track bed feature further

170 comprises the step of identifying a rail base edge by detecting significant vertical gradient edges over a two dimensional area adjacent the detected rail head edge wherein such vertical gradient edges are greater than a minimum rail base height threshold.

EXHIBIT 2
82

Attorney Docket No. 06.00995.0042

27. The method of claim 26 further comprising the step of removing data corresponding to the
175   rail head from the elevation map, thereby enhancing the detection of other smaller vertical
components of the railway track bed.

28. The method of claim 24 wherein the method further comprises the step of detecting surfaces
with surface normal values greater than a planar region surface normal value threshold and that
180   are proximate to one another by less than a maximum proximity threshold.

29. The method of claim 28 wherein the method further comprises the step of defining an
approximate tie surface plane based on the detected surfaces with surface normal values greater
than the planar region surface normal value threshold that are proximate to one another by less
185   than the maximum proximity threshold.

30. The method of claim 29 wherein the method further comprises the step of assigning a tie
bounding box around the perimeter of the tie surface plane based at least on one measured
parameter of the tie surface plane.

190

31. The method of claim 30 wherein the method further comprises the step of assigning an
approximate tie length, an approximate tie width, and an approximate tie skew angle based on
the bounding box assigned around the perimeter of the tie surface plane.

195   32. The method of claim 31 wherein the method further comprises the step of identifying and
measuring surface cracks that are deeper than a minimum crack depth threshold and that are
longer than a minimum crack length threshold based on the track elevation map.

33. The method of claim 32 wherein the method further comprises the step of saving data
200   corresponding to the measured surface cracks to the data storage apparatus on a per tie basis so
that the same tie can be re-examined at a later date to determine whether the measured surface
cracks have changed.

EXHIBIT 2
83

Attorney Docket No. 06.00995.0042

205    34. The method of claim 33 wherein the method further comprises a step of assigning a severity value to each measured crack based on at least the measured length and measured width of the crack.

35. The method of claim 34 wherein the method further comprises the step of identifying and measuring a surface feature that is higher than a minimum tie height threshold.

210

36. The method of claim 35 wherein the method further comprises the step of saving data corresponding to the measured surface feature to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later date to determine whether the measured surface feature has changed.

215

37. The method of claim 31 wherein the method further comprises the step of detecting a broken tie based on an abrupt elevation shift along the tie surface plane.

38. The method of claim 24 wherein the step of identifying a railway track bed feature further
220    comprises the step of comparing at least a portion of the track elevation map to a plurality of three dimensional features saved in feature library to determine a best fit to properly identify the railway track bed feature.

39. The method of claim 38 wherein the step of comparing further comprises the step of applying
225    a minimum correlation threshold so that a railway track bed feature will not be identified as a particular three dimensional feature from the feature library unless the minimum correlation threshold is met.

40. The method of claim 31 wherein the method further comprises the step of determining a
230    shoulder ballast volume adjacent a tie based at least in part on the approximate tie surface plane defined for the tie.

EXHIBIT 2
84

Attorney Docket No. 06.00995.0042

41. The method of claim 31 wherein the method further comprises the step of defining a surface area region adjacent the tie bounding box, measuring the surface elevation of the surface area region, and determining the difference between the surface elevation of the surface area region and the surface elevation of the approximate tie surface plane to determine whether a positive volume or negative volume is present at the surface area region.

42. The method of claim 38 wherein the method further comprises the step of making a plurality of elevation measurements along and around an identified railway track bed feature and recording the measurements and the locations of the measurements in the data storage apparatus.

43. The method of claim 42 wherein the method further comprises the step of assigning a condition to the identified railway track bed feature based on the plurality of elevation measurements.

44. The method of claim 24 wherein the step of identifying a railway track bed feature further comprises the step of measuring the length of a joint bar candidate, determining whether the length of the joint bar candidate falls between a minimum joint bar length threshold and a maximum joint bar length threshold, and identifying the joint bar candidate as a joint bar if the length measurement of the joint bar candidate falls between a minimum joint bar length threshold and a maximum joint bar length threshold.

EXHIBIT 2
85

 UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/725,490 | 05/29/2015 | Darel Mesher | 06.00995.0042 | 4258 |

117642      7590      03/30/2017
Robinson IP Law, PLLC
9724 Kingston Pike
Suite 1403
Knoxville, TN 37922

| EXAMINER |
|---|
| HASAN, MAINUL |

| ART UNIT | PAPER NUMBER |
|---|---|
| 2489 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 03/30/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

rrobinson@robinsoniplaw.com
docketing@robinsoniplaw.com

PTOL-90A (Rev. 04/07)

EXHIBIT 2
86

| **Office Action Summary** | Application No. 14/725,490 | Applicant(s) MESHER, DAREL | |
|---|---|---|---|
| | Examiner MAINUL HASAN | Art Unit 2489 | AIA (First Inventor to File) Status Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE <u>3</u> MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a).  In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
  Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment.  See 37 CFR 1.704(b).

**Status**

1)☒ Responsive to communication(s) filed on <u>02/14/2017</u>.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a)☐ This action is **FINAL**.            2b)☒ This action is non-final.
3)☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4)☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5)☒ Claim(s) <u>1-44</u> is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6)☐ Claim(s) _____ is/are allowed.
7)☒ Claim(s) <u>1-44</u> is/are rejected.
8)☐ Claim(s) _____ is/are objected to.
9)☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10)☒ The specification is objected to by the Examiner.
11)☒ The drawing(s) filed on <u>05/29/2015</u> is/are:  a)☒ accepted or b)☐ objected to by the Examiner.
   Applicant may not request that any objection to the drawing(s) be held in abeyance.  See 37 CFR 1.85(a).
   Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12)☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
**Certified copies:**
   a)☐ All   b)☐ Some**  c)☐ None of the:
   1.☐ Certified copies of the priority documents have been received.
   2.☐ Certified copies of the priority documents have been received in Application No. _____.
   3.☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**
1)☒ Notice of References Cited (PTO-892)
2)☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.
3)☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .
4)☐ Other: _____.

EXHIBIT 2
87

Application/Control Number: 14/725,490                                    Page 2
Art Unit: 2489

## DETAILED ACTION

### Notice of Pre-AIA or AIA Status

The present application, filed on or after March 16, 2013, is being examined under the

first inventor to file provisions of the AIA. There are a total of 44 claims and claims 1-44 are

pending.

### Information Disclosure Statement

The information disclosure statement filed 02/26/2016 fails to comply with the provisions

of 37 CFR 1.97, 1.98 and MPEP § 609 because the first entry under the NPL Documents

(Russian Patent and Trademark Office grant decision) and the fifth entry titled "European Patent

Office, Supplementary European Search Report" were not found attached. Also the contents of

2nd and 3rd entries of NPL Documents titled "International Searching Authority, International

search report" were not legible due to poor scanning quality. These four NPL documents of the

aforementioned IDS have not been considered and therefore have been striked out.

### Specification

Applicant is reminded of the proper language and format for an abstract of the disclosure.

The abstract should be in narrative form and generally limited to a single paragraph on a
separate sheet within the range of 50 to 150 words.  The form and legal phraseology often used
in patent claims, such as "means" and "said," should be avoided.  The abstract should describe
the disclosure sufficiently to assist readers in deciding whether there is a need for consulting the
full patent text for details.

EXHIBIT 2
88

Application/Control Number: 14/725,490                                              Page 3

Art Unit: 2489

The language should be clear and concise and should not repeat information given in the title.  It should avoid using phrases which can be implied, such as, "The disclosure concerns," "The disclosure defined by this invention," "The disclosure describes," etc.

The abstract of the disclosure is objected to because it contains a phrase that can be implied ("A 3D track assessment system is **disclosed** …").

Appropriate correction is required. Also see MPEP 608.01(b), Paragraph C – "Language and Format".

### *Claim Objections*

Claims 1, 22 are objected to because of the following informalities:

Claims 1, 22, 5th element recites " *... and **the at least one processor** wherein the at least one processor ...*". Since the "at least one processor" has already been declared in the previous limitation, reiterating it again does not put any weightage to the wherein clause. Moreover, it creates ambiguity in the limitation. The Examiner believes the claimed limitation should be recited as following " *... and wherein the at least one processor ...*".

Appropriate correction is required.

### *Claim Rejections - 35 USC § 102*

The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that form the basis for the rejections under this section made in this Office action:

A person shall be entitled to a patent unless –

(a)(1) the claimed invention was patented, described in a printed publication, or in public use, on sale or otherwise available to the public before the effective filing date of the claimed invention.

EXHIBIT 2
89

Application/Control Number: 14/725,490

Page 4

Art Unit: 2489

**Claims 1-16, 18-21, 24-39, 41-44 are rejected under AIA 35 U.S.C. 102(a)(1) as being anticipated by Kainer et al. (US PGPub 2013/0191070 A1).**

Regarding claim **1**, **Kainer et al.** disclose *a system for assessing a railway track bed* (**[0036], L5-6**)*, the system comprising:*

*a power source* (**[0046], L14-17**)*;*

*a light emitting apparatus powered by the power source for emitting light energy toward a railway track* (**[0012], L2-6; Fig. 1 and 2,** reference numeral **40**)*;*

*a data storage apparatus* (**Fig. 1,** reference numeral **62**) *in communication with at least one processor* (**Fig. 1,** reference numeral **54, 60**)*;*

*at least one sensor for sensing reflected light that was emitted from the light emitting apparatus* (**Fig. 1** and **2,** reference numeral **50**) *and acquiring three dimensional image data of the railway track* (**[0029]**) *to be stored in the data storage apparatus* (**Fig. 1** shows the communicative coupling between the camera and the storage device **62**)*, wherein the plurality of sensors* (**Fig. 2,** reference numeral **50** shows two cameras) *are in communication with the at least one processor* (**Fig. 1** shows communicative coupling between the camera **50** and the processor **54**)*; and*

*the at least one processor wherein the at least one processor is configured to run an algorithm* (**[0012], L10-13**) *for processing three-dimensional elevation data* (**Figs. 11-12** represent a 3D track elevation map) *gathered from the plurality of sensors* (**Fig. 2,** reference numeral **50** shows two cameras) *and saved in the data storage apparatus* (**Fig. 1** shows the

EXHIBIT 2

90

Application/Control Number: 14/725,490                                              Page 5

Art Unit: 2489

communicative coupling between the camera and the storage device **62**), *the algorithm*

*comprising the steps of:*

  *a. acquiring three dimensional data representative of a segment of railway track bed*

**([0047], L14-18***);*

  *b. generating a track elevation map based on the acquired three dimensional data*

**([0082], L18-20; Figs. 11-12** represent a 3D track elevation map where different parameters, e.g.

elevations, height, cracks, splits, orientations, etc. can be measured as disclosed in **[0056], L7-**

**17**)*;*

  *c. identifying a railway track bed feature from the track elevation map* (**[0083], L1-5;**

**[0087], L10-15**)*; and*

  *d. storing information corresponding to the identified railway track bed feature in the*

*data storage apparatus* (**[0046], L5-13**).


  Regarding claim **2**, **Kainer et al.** disclose *the system of claim 1 wherein the algorithm*

*step of identifying a railway track bed feature further comprises the step of identifying a rail*

*head edge by detecting significant vertical gradient edges over a two dimensional area wherein*

*such vertical gradient edges are greater than a minimum rail height threshold* (**[0059], Fig. 5;** It

discloses calculating the gradient of the rail head edge **12** with respect to the tie plate. Since the

computer analysis checks the angles of tie plates with respect to rail heads and determines either

a worn out rail head/base plate or not, it is understood that there is a threshold involved in

determining the worn condition).

EXHIBIT 2

91

Application/Control Number: 14/725,490                                    Page 6
Art Unit: 2489

Regarding claim **3**, **Kainer et al.** disclose *the system of claim 2 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail base edge by detecting significant vertical gradient edges over a two dimensional area adjacent the detected rail head edge wherein such vertical gradient edges are greater than a minimum rail base height threshold* (**[0059], Fig. 5;** It discloses calculating the gradient of the rail head edge **12** with respect to the tie plate edge **10**. Since the computer analysis checks the angles of tie plates with respect to rail heads and determines either a worn out rail head/tie plate or not, it is understood that there is a threshold involved in determining the worn condition).

Regarding claim **4**, **Kainer et al.** disclose *the system of claim 2 wherein the algorithm further comprises the step of removing data corresponding to the rail head from the elevation map, thereby enhancing the detection of other smaller vertical components of the railway track bed* (**[0091], L7-11;** It discloses filtering out non-tie surfaces while analyzing the tie condition, meaning enhancing the tie condition determination by removing/filtering out other non-essential elements from the image data. **[0052], L10-23; [0053];** It discloses discarding some of the captured image frames to achieve desired frame spacing and reduce data storage, because as disclosed in **[0095], L1-10,** identifying some of the smaller spacings, widths, lengths, etc. requires second pass of data acquiring and processing image data again thereby requiring more storage space).

Regarding claim **5**, **Kainer et al.** disclose *the system of claim 4 wherein the algorithm step of identifying a railway track bed feature further comprises the step of detecting surfaces*

EXHIBIT 2
92

Application/Control Number: 14/725,490                                    Page 7
Art Unit: 2489

*with surface normal values greater than a planar region surface normal value threshold and that*

*are proximate to one another by less than a maximum proximity threshold* (**[0092], L15-20;** It

discloses determining the tie surface based on some threshold value with respect to the ballast

level to determine whether accurate condition can be measured or not. In **[0093], L1-6,** it also

discloses a proximity threshold by disclosing an expected tie-to-tie distance).


Regarding claim **6**, **Kainer et al.** disclose *the system of claim 5 wherein the algorithm*

*step of identifying a railway track bed feature further comprises the step of defining an*

*approximate tie surface plane based on the detected surfaces with surface normal values greater*

*than the planar region surface normal value threshold that are proximate to one another by less*

*than the maximum proximity threshold* (**[0092], L15-20;** It discloses determining the tie surface

based on some threshold value with respect to the ballast level to determine whether accurate

condition can be measured or not. In **[0093], L1-6,** it also discloses a proximity threshold by

disclosing an expected tie-to-tie distance).


Regarding claim **7**, **Kainer et al.** disclose *the system of claim 6 wherein the algorithm*

*step of identifying a railway track bed feature further comprises the step of assigning a tie*

*bounding box around the perimeter of the tie surface plane based at least on one measured*

*parameter of the tie surface plane* (**[0012], L10-13;** Also **Fig. 14** shows the flowchart of finding

the 4 edges of the tie boundaries which is equivalent of finding the bounding box around a tie

surface plane).

EXHIBIT 2
93

Application/Control Number: 14/725,490                                             Page 8
Art Unit: 2489

     Regarding claim **8**, **Kainer et al.** disclose *the system of claim 7 wherein the algorithm step of identifying a railway track bed feature further comprises the step of assigning an approximate tie length, an approximate tie width, and an approximate tie skew angle based on the bounding box assigned around the perimeter of the tie surface plane* (**[0101]**, **L1-5**).

     Regarding claim **9**, **Kainer et al.** disclose *the system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying and measuring surface cracks that are deeper than a minimum crack depth threshold and that are longer than a minimum crack length threshold based on the track elevation map* (**[0063]**; It discloses determining width, length and depth of cracks based on whether the defective portions **D, D'** fall within or outside a region of interest, meaning certain threshold values).

     Regarding claim **10**, **Kainer et al.** disclose *the system of claim 9 wherein data corresponding to the measured surface cracks are saved to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later date to determine whether the measured surface cracks have changed* (**[0062]**, **L22-25;** It discloses determining rail wears by comparing image frames taken at different times but in the same location of the track bed, meaning the storage device **62** is capable of storing data for the same track bed features for the same location at different times so that the wear and tear can be compared over a time).

     Regarding claim **11**, **Kainer et al.** disclose *the system of claim 9 wherein the algorithm step of identifying a railway track bed feature further comprises a step of assigning a severity*

EXHIBIT 2
94

Application/Control Number: 14/725,490                                          Page 9
Art Unit: 2489

*value to each measured crack based on at least the measured length and measured width of the*

*crack* (**[0083]; Fig. 13,** step **212** shows assigning a tie conditioning score after measuring

different features associated with the ties to create a tie replacement plan, meaning the score will

tell one how severe the condition of the tie is and if it needs immediate replacement or not. The

same severity matrix is also described in **[0114]**).

 

Regarding claim **12**, **Kainer et al.** disclose *the system of claim 6 wherein the algorithm*

*step of identifying a railway track bed feature further comprises the step of identifying and*

*measuring a surface feature that is higher than a minimum tie height threshold* (**[0062], L12-21,**

**Fig. 7A-B;** It discloses a height **LD** of the surface of the rail **12** with respect to the tie plate for

successive frames where the height **LD** is showing smaller in the later frame than the earlier

frame indicating a wear and tear of the surface).

 

Regarding claim **13**, **Kainer et al.** disclose *the system of claim 12 wherein data*

*corresponding to the measured surface feature are saved to the data storage apparatus on a per*

*tie basis so that the same tie can be re-examined at a later date to determine whether the*

*measured surface feature has changed* (**[0062], L22-25;** It discloses determining rail wears by

comparing image frames taken at different times but in the same location of the track bed,

meaning the storage device **62** is capable of storing data for the same track bed features for the

same location at different times so that the wear and tear can be compared over a time).

EXHIBIT 2
95

Application/Control Number: 14/725,490                                    Page 10
Art Unit: 2489

     Regarding claim **14**, **Kainer et al.** disclose *the system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of detecting a broken tie based on an abrupt elevation shift along the tie surface plane* (**[0099]**).

     Regarding claim **15**, **Kainer et al.** disclose *the system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of comparing at least a portion of the track elevation map to a plurality of three dimensional features saved in a feature library to determine a best fit between the at least a portion of the track elevation map and the plurality of three dimensional features to properly identify the railway track bed feature* (**[0059], Fig. 5;** It discloses a best fit curve determination of two feature lines **L1** and **L2** corresponding to rail head **12** and the crosstie **10** which are then averaged over a several of the previously stored image frames so that the computer can analyze and determine the angular relationship between these lines **L1-L2** to determine the tie angle with respect to the rail, where the tie angle is the feature being identified after averaging over plurality of previously stored image frames).

     Regarding claim **16**, **Kainer et al.** disclose *the system of claim 15 wherein the step of comparing further comprises the step of applying a minimum correlation threshold so that a railway track bed feature will not be identified as a particular three dimensional feature from the feature library unless the minimum correlation threshold is met* (**[0014];** It discloses applying a correlation between the tie features, e.g. spacing and the tie condition grading above/below a threshold to determine the tie replacement plan, meaning if the correlation is not met the tie grading will not be identified as needing replacement).

EXHIBIT 2
96

Application/Control Number: 14/725,490                                        Page 11
Art Unit: 2489

Regarding claim **18**, **Kainer et al.** disclose *the system of claim 7 wherein the algorithm step of identifying a railway track bed feature further comprises the step of defining a surface area region adjacent the tie bounding box, measuring the surface elevation of the surface area region, and determining the difference between the surface elevation of the surface area region and the surface elevation of the approximate tie surface plane to determine whether a positive volume or negative volume is present at the surface area region* (**[0092];** It discloses the system identifying the tie surface area with respect to the non-tie surface area and how much of the tie area surface is covered by the ballast and therefore cannot be scored, which is equivalent of positive volume (60%) and negative volume (40%)).

Regarding claim **19**, **Kainer et al.** disclose *the system of claim 15 wherein the algorithm step of identifying a railway track bed feature further comprises the step of making a plurality of elevation measurements along and around an identified railway track bed feature and recording the measurements and the locations of the measurements in the data storage apparatus* (**[0056];** **Fig. 11** and **12** show plurality of compiled image data showing the track bed features. Also **Figs. 4A-C** show three consecutive image frames **Z1-Z3** meaning the system is taking multiple elevation measurements. Since the system is equipped with a storage device **62,** it is understood that the plurality of elevation measurements are stored in the storage device).

Regarding claim **20**, **Kainer et al.** disclose *the system of claim 19 wherein the algorithm step of identifying a railway track bed feature further comprises the step of assigning a condition*

EXHIBIT 2
97

Application/Control Number: 14/725,490                                         Page 12
Art Unit: 2489

*to the identified railway track bed feature based on the plurality of elevation measurements* (In
**[0114],** it discloses assigning four conditions based on the determination of the rail track
features, e.g. good (1), marginal (2), bad (3), or failed (4)).

Regarding claim **21**, **Kainer et al.** disclose *the system of claim 1 wherein the algorithm
step of identifying a railway track bed feature further comprises the step of measuring the length
of a joint bar candidate, determining whether the length of the joint bar candidate falls between
a minimum joint bar length threshold and a maximum joint bar length threshold, and identifying
the joint bar candidate as a joint bar if the length measurement of the joint bar candidate falls
between a minimum joint bar length threshold and a maximum joint bar length threshold*
(**[0122], L6-10;** It discloses determining the edge outlines of the joint bar from two consecutive
rail top edges and then comparing the shape against a standard joint bar shape, meaning
thresholding different edges to determine whether it is a joint bar or not).

Regarding claim **24**, **Kainer et al.** disclose *a method of assessing a railway track bed*
(**[0036], L5-6**)*, the method comprising the steps of:*

a. *defining a three dimensional elevation map* (**[0047], L14-18**) *based on data gathered
by a sensor* (**Fig. 1** and **2,** reference numeral **50**) *sensing reflected light from a track bed surface*
(**[0012], L2-6; Fig. 1** and **2,** reference numeral **40**)*;*

b. *storing the elevation map in a data storage apparatus* (**[0046], L5-13**)*;*

c. *identifying a railway track bed feature from the elevation map* (**[0083], L1-5; [0087],**
**L10-15**)*; and*

EXHIBIT 2
98

Application/Control Number: 14/725,490                                           Page 13
Art Unit: 2489

    *d. storing information corresponding to the identified railway track bed feature in the*
*data storage apparatus* (**[0046], L5-13**).


    Regarding claim **25**, **Kainer et al.** disclose *the method of claim 24 wherein the step of
identifying a railway track bed feature further comprises the step of identifying a rail head edge
by detecting significant vertical gradient edges over a two dimensional area wherein such
vertical gradient edges are greater than a minimum rail height threshold* (**[0059], Fig. 5;** It
discloses calculating the gradient of the rail head edge **12** with respect to the tie plate. Since the
computer analysis checks the angles of tie plates with respect to rail heads and determines either
a worn out rail head/base plate or not, it is understood that there is a threshold involved in
determining the worn condition).


    Regarding claim **26**, **Kainer et al.** disclose *the method of claim 25 wherein the step of
identifying a railway track bed feature further comprises the step of identifying a rail base edge
by detecting significant vertical gradient edges over a two dimensional area adjacent the
detected rail head edge wherein such vertical gradient edges are greater than a minimum rail
base height threshold* (**[0059], Fig. 5;** It discloses calculating the gradient of the rail head edge
**12** with respect to the tie plate edge **10**. Since the computer analysis checks the angles of tie
plates with respect to rail heads and determines either a worn out rail head/tie plate or not, it is
understood that there is a threshold involved in determining the worn condition).

EXHIBIT 2
99

Application/Control Number: 14/725,490                                              Page 14

Art Unit: 2489

Regarding claim **27**, **Kainer et al.** disclose *the method of claim 26 further comprising the step of removing data corresponding to the rail head from the elevation map, thereby enhancing the detection of other smaller vertical components of the railway track bed* **([0091], L7-11;** It discloses filtering out non-tie surfaces while analyzing the tie condition, meaning enhancing the tie condition determination by removing/filtering out other non-essential elements from the image data. **[0052], L10-23; [0053];** It discloses discarding some of the captured image frames to achieve desired frame spacing and reduce data storage, because as disclosed in **[0095], L1-10,** identifying some of the smaller spacings, widths, lengths, etc. requires second pass of data acquiring and processing image data again thereby requiring more storage space).

Regarding claim **28**, **Kainer et al.** disclose *the method of claim 24 wherein the method further comprises the step of detecting surfaces with surface normal values greater than a planar region surface normal value threshold and that are proximate to one another by less than a maximum proximity threshold* **([0092], L15-20;** It discloses determining the tie surface based on some threshold value with respect to the ballast level to determine whether accurate condition can be measured or not. In **[0093], L1-6,** it also discloses a proximity threshold by disclosing an expected tie-to-tie distance).

Regarding claim **29**, **Kainer et al.** disclose *the method of claim 28 wherein the method further comprises the step of defining an approximate tie surface plane based on the detected surfaces with surface normal values greater than the planar region surface normal value threshold that are proximate to one another by less than the maximum proximity threshold*

EXHIBIT 2
100

Application/Control Number: 14/725,490                                    Page 15
Art Unit: 2489

(**[0092], L15-20;** It discloses determining the tie surface based on some threshold value with
respect to the ballast level to determine whether accurate condition can be measured or not. In
**[0093], L1-6,** it also discloses a proximity threshold by disclosing an expected tie-to-tie
distance).


Regarding claim **30**, **Kainer et al.** disclose *the method of claim 29 wherein the method*
*further comprises the step of assigning a tie bounding box around the perimeter of the tie surface*
*plane based at least on one measured parameter of the tie surface plane* (**[0012], L10-13;** Also
**Fig. 14** shows the flowchart of finding the 4 edges of the tie boundaries which is equivalent of
finding the bounding box around a tie surface plane).


Regarding claim **31**, **Kainer et al.** disclose *the method of claim 30 wherein the method*
*further comprises the step of assigning an approximate tie length, an approximate tie width, and*
*an approximate tie skew angle based on the bounding box assigned around the perimeter of the*
*tie surface plane* (**[0101], L1-5**).


Regarding claim **32**, **Kainer et al.** disclose *the method of claim 31 wherein the method*
*further comprises the step of identifying and measuring surface cracks that are deeper than a*
*minimum crack depth threshold and that are longer than a minimum crack length threshold*
*based on the track elevation map* (**[0063];** It discloses determining width, length and depth of
cracks based on whether the defective portions **D, D'** fall within or outside a region of interest,
meaning certain threshold values).

EXHIBIT 2
101

Application/Control Number: 14/725,490                                    Page 16
Art Unit: 2489

Regarding claim **33**, **Kainer et al.** disclose *the method of claim 32 wherein the method further comprises the step of saving data corresponding to the measured surface cracks to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later date to determine whether the measured surface cracks have changed* (**[0062], L22-25;** It discloses determining rail wears by comparing image frames taken at different times but in the same location of the track bed, meaning the storage device **62** is capable of storing data for the same track bed features for the same location at different times so that the wear and tear can be compared over a time).

Regarding claim **34**, **Kainer et al.** disclose *the method of claim 33 wherein the method further comprises a step of assigning a severity value to each measured crack based on at least the measured length and measured width of the crack* (**[0083]; Fig. 13,** step **212** shows assigning a tie conditioning score after measuring different features associated with the ties to create a tie replacement plan, meaning the score will tell one how severe the condition of the tie is and if it needs immediate replacement or not. The same severity matrix is also described in **[0114]**).

Regarding claim **35**, **Kainer et al.** disclose *the method of claim 34 wherein the method further comprises the step of identifying and measuring a surface feature that is higher than a minimum tie height threshold* (**[0062], L12-21, Fig. 7A-B;** It discloses a height **LD** of the surface of the rail **12** with respect to the tie plate for successive frames where the height **LD** is showing smaller in the later frame than the earlier frame indicating a wear and tear of the surface).

EXHIBIT 2
102

Application/Control Number: 14/725,490                                      Page 17
Art Unit: 2489

Regarding claim **36**, **Kainer et al.** disclose *the method of claim 35 wherein the method*
*further comprises the step of saving data corresponding to the measured surface feature to the*
*data storage apparatus on a per tie basis so that the same tie can be re-examined at a later date*
*to determine whether the measured surface feature has changed* (**[0062], L22-25;** It discloses
determining rail wears by comparing image frames taken at different times but in the same
location of the track bed, meaning the storage device **62** is capable of storing data for the same
track bed features for the same location at different times so that the wear and tear can be
compared over a time).

Regarding claim **37**, **Kainer et al.** disclose *the method of claim 31 wherein the method*
*further comprises the step of detecting a broken tie based on an abrupt elevation shift along the*
*tie surface plane* (**[0099]**).

Regarding claim **38**, **Kainer et al.** disclose *the method of claim 24 wherein the step of*
*identifying a railway track bed feature further comprises the step of comparing at least a portion*
*of the track elevation map to a plurality of three dimensional features saved in feature library to*
*determine a best fit to properly identify the railway track bed feature* (**[0059], Fig. 5;** It discloses
a best fit curve determination of two feature lines **L1** and **L2** corresponding to rail head **12** and
the crosstie **10** which are then averaged over a several of the previously stored image frames so
that the computer can analyze and determine the angular relationship between these lines **L1-L2**

EXHIBIT 2
103

Application/Control Number: 14/725,490                                   Page 18
Art Unit: 2489

to determine the tie angle with respect to the rail, where the tie angle is the feature being

identified after averaging over plurality of previously stored image frames).


Regarding claim **39**, **Kainer et al.** disclose *the method of claim 38 wherein the step of*

*comparing further comprises the step of applying a minimum correlation threshold so that a*

*railway track bed feature will not be identified as a particular three dimensional feature from the*

*feature library unless the minimum correlation threshold is met* (**[0014];** It discloses applying a

correlation between the tie features, e.g. spacing and the tie condition grading above/below a

threshold to determine the tie replacement plan, meaning if the correlation is not met the tie

grading will not be identified as needing replacement).


Regarding claim **41**, **Kainer et al.** disclose *the method of claim 31 wherein the method*

*further comprises the step of defining a surface area region adjacent the tie bounding box,*

*measuring the surface elevation of the surface area region, and determining the difference*

*between the surface elevation of the surface area region and the surface elevation of the*

*approximate tie surface plane to determine whether a positive volume or negative volume is*

*present at the surface area region* (**[0092];** It discloses the system identifying the tie surface area

with respect to the non-tie surface area and how much of the tie area surface is covered by the

ballast and therefore cannot be scored, which is equivalent of positive volume (60%) and

negative volume (40%)).

EXHIBIT 2
104

Application/Control Number: 14/725,490                                      Page 19

Art Unit: 2489

Regarding claim **42**, **Kainer et al.** disclose *the method of claim 38 wherein the method*

*further comprises the step of making a plurality of elevation measurements along and around an*

*identified railway track bed feature and recording the measurements and the locations of the*

*measurements in the data storage apparatus* (**[0056]; Fig. 11** and **12** show plurality of compiled

image data showing the track bed features. Also **Figs. 4A-C** show three consecutive image

frames **Z1-Z3** meaning the system is taking multiple elevation measurements. Since the system

is equipped with a storage device **62,** it is understood that the plurality of elevation

measurements are stored in the storage device).


Regarding claim **43**, **Kainer et al.** disclose *the method of claim 42 wherein the method*

*further comprises the step of assigning a condition to the identified railway track bed feature*

*based on the plurality of elevation measurements* (In **[0114],** it discloses assigning four

conditions based on the determination of the rail track features, e.g. good (1), marginal (2), bad

(3), or failed (4)).


Regarding claim **44**, **Kainer et al.** disclose *the method of claim 24 wherein the step of*

*identifying a railway track bed feature further comprises the step of measuring the length of a*

*joint bar candidate, determining whether the length of the joint bar candidate falls between a*

*minimum joint bar length threshold and a maximum joint bar length threshold, and identifying*

*the joint bar candidate as a joint bar if the length measurement of the joint bar candidate falls*

*between a minimum joint bar length threshold and a maximum joint bar length threshold*

(**[0122], L6-10;** It discloses determining the edge outlines of the joint bar from two consecutive

EXHIBIT 2
105

Application/Control Number: 14/725,490                                      Page 20

Art Unit: 2489

rail top edges and then comparing the shape against a standard joint bar shape, meaning

thresholding different edges to determine whether it is a joint bar or not).


### *Claim Rejections - 35 USC § 103*

The following is a quotation of AIA 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negated by the manner in which the invention was made.

**Claims 22-23 are rejected under AIA 35 U.S.C. 103(a) as being unpatentable over**

**Kainer et al. (US PGPub 2013/0191070 A1) in view of Szwilski et al. (US PGPub**

**2010/0026551 A1).**


Regarding claim **22**, **Kainer et al.** teach *a system for assessing a railway track bed*

*(*[**0036**], **L5-6**)*, the system comprising:*

*a power source (*[**0046**], **L14-17**)*;*

*a light emitting apparatus powered by the power source for emitting light energy toward*

*a railway track (*[**0012**], **L2-6; Fig. 1** and **2,** reference numeral **40**)*;*

*a data storage apparatus (***Fig. 1,** reference numeral **62**) *in communication with at least*

*one processor (***Fig. 1,** reference numeral **54, 60**)*;*

*at least one sensor for sensing reflected light that was emitted from the light emitting*

*apparatus (***Fig. 1** and **2,** reference numeral **50**) *and acquiring three dimensional image data of*

*the railway track (*[**0029**]) *to be stored in the data storage apparatus (***Fig. 1** shows the

EXHIBIT 2
106

Application/Control Number: 14/725,490                                                   Page 21

Art Unit: 2489

communicative coupling between the camera and the storage device **62**), *wherein the plurality of*

*sensors are in communication with the at least one processor* (**Fig. 1** shows communicative

coupling between the camera **50** and the processor **54**)*; and*

      *the at least one processor wherein the at least one processor includes an algorithm*

(**[0012], L10-13**) *for extracting railway track bed surface elevation data to define new railway*

*track bed components for a three dimensional track feature library* (**[0015], L12-15.** The

Examiner interprets the track feature library as the database for storing track features, which is

being done by storing the track features into the storage device as disclosed in **[0046], L5-13**),

*the algorithm comprising the steps of:*

      *a. acquiring three dimensional data representative of a segment of railway track bed*

(**[0047], L14-18**)*;*

      *b. generating a track elevation map based on the acquired three dimensional data*

(**[0082], L18-20; Figs. 11-12** represent a 3D track elevation map where different parameters, e.g.

elevations, height, cracks, splits, orientations, etc. can be measured as disclosed in **[0056], L7-**

**17**)*;*

      *c. identifying a railway track feature from the track elevation map that does not match*

*any previously defined track features saved in a track feature library* (**[0083], L1-5;** It teaches

identifying tie plate features to compute different condition metrics of the tie plates. Now in

**[0102], [0087], L10-15,** it teaches different tie plate features, e.g. widths, slope, spikes, etc.

where it states "Once these features have been found, the system calculates plate cut by finding

the edges …". Which means as the features are being found, that were not defined or used

previously, are being used now to locate tie plates)*;*

EXHIBIT 2

107

Application/Control Number: 14/725,490                                               Page 22
Art Unit: 2489

    *d. extracting three dimensional data from the track elevation map corresponding to the identified railway track feature* (**[0047], L14-18**)*;*

    *e. assigning a feature name to the extracted three dimensional data* (Since the system is storing all the 3D information data into storage device **62** for retrieving the data at a later time (**[0046], L7-9;** It teaches both read/write operation), it is imperative that each data is tagged with unique identifier for later reading and analysis)*; and*

    *f. saving in the data storage apparatus the extracted three dimensional data associated with the feature name as a new track feature to be included in the track feature library* (**[0046], L5-13**).

    Although, **Kainer et al.** teach storing 3D information into storage device for both read/write purpose, but it does not explicitly teach tagging each feature with a unique name/ID/tag.

    However, **Szwilski et al.** teach a railroad surveying and monitoring system where it tags all the acquired data about the rail track including the camera data with a position location and stores it in the storage device (**Szwilski et al.; [0065], L6-12**).

    It would have been obvious for one of ordinary skill in the art at the time the invention was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Szwilski et al**'s usage of data tagging and storing, because in doing so one can carry out comparative analysis of the acquired data for a subsequent track inspection data with respect to the previously tagged track inspection data (**Szwilski et al.; [0066], L1-17**).

EXHIBIT 2
108

Application/Control Number: 14/725,490                                                    Page 23
Art Unit: 2489

Regarding claim **23**, **Kainer et al.** teach *a method of building a virtual three dimensional railway track bed component library* (**[0047], L14-18**)*, the method comprising the steps of:*

*a. emitting a light along a track bed surface* (**[0012], L2-6; Fig. 1** and **2,** reference numeral **40**)*;*

*b. sensing some of the emitted light after it has reflected off of the track bed surface* (**Fig. 1** and **2,** reference numeral **50**)*;*

*c. defining a three dimensional elevation map based on the sensed light reflected from the track bed surface* (**[0082], L18-20; Figs. 11-12** represent a 3D track elevation map where different parameters, e.g. elevations, height, cracks, splits, orientations, etc. can be measured as disclosed in **[0056], L7-17**)*;*

*d. storing the elevation map in a data storage apparatus* (**Fig. 1** shows the communicative coupling between the camera and the storage device **62**)*;*

*e. identifying a railway track bed feature from the three dimensional elevation map that does not match any previously defined track bed features saved in a track component library* (**[0083], L1-5;** It teaches identifying tie plate features to compute different condition metrics of the tie plates. Now in **[0102], [0087], L10-15,** it teaches different tie plate features, e.g. widths, slope, spikes, etc. where it states "Once these features have been found, the system calculates plate cut by finding the edges …". Which means as the features are being found, that were not defined or used previously, are being used now to locate tie plates)*;*

*f. extracting three dimensional data from the track elevation map corresponding to the identified railway track bed feature* (**[0047], L14-18**)*;*

EXHIBIT 2
109

Application/Control Number: 14/725,490                                        Page 24
Art Unit: 2489

   *g. assigning a component name to the extracted three dimensional data* (Since the system

is storing all the 3D information data into storage device **62** for retrieving the data at a later time

(**[0046], L7-9;** It teaches both read/write operation), it is imperative that each data is tagged with

unique identifier for later reading and analysis)*; and*

   *h. saving the extracted three dimensional data associated with the component name in a*

*data storage apparatus as a new track bed feature to be included in the track component library*

(**[0046], L5-13**).

   Although, **Kainer et al.** teach storing 3D information into storage device for both

read/write purpose, but it does not explicitly teach tagging each feature with a unique

name/ID/tag.

   However, **Szwilski et al.** teach a railroad surveying and monitoring system where it tags

all the acquired data about the rail track including the camera data with a position location and

stores it in the storage device (**Szwilski et al.; [0065], L6-12**).

   It would have been obvious for one of ordinary skill in the art at the time the invention

was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Szwilski et**

**al**'s usage of data tagging and storing, because in doing so one can carry out comparative

analysis of the acquired data for a subsequent track inspection data with respect to the previously

tagged track inspection data (**Szwilski et al.; [0066], L1-17**).


   **Claims 17, 40 are rejected under AIA 35 U.S.C. 103(a) as being unpatentable over**

**Kainer et al. (US PGPub 2013/0191070 A1) in view of Landes et al. (US PGPub**

**2013/0096739 A1).**

EXHIBIT 2
110

Application/Control Number: 14/725,490                                                    Page 25
Art Unit: 2489

Regarding claim **17**, **Kainer et al.** teach *the system of claim 6.*

Although **Kainer et al.** teach determining the ballast height from the difference in levels

of the ballast and the crosstie and ballast stone size as described in **[0065],** but it does not

exclusively teach determining the ballast volume.

However, **Landes et al.** teach a system for automatic rail track surveying using camera

and laser lights which determines the ballast volume from the acquired data **(Landes et al.;**

**[0009], L1-5)**.

It would have been obvious for one of ordinary skill in the art at the time the invention

was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Landes et**

**al**'s determination of ballast volume from the acquired data by the system, because since ballast

beneath and between the ties stabilizes the positions of the ties, keeps the rails level, and

provides some cushioning of the composite structure for loads imposed by rail traffic, any

dislodging of the ballast over time could cause rail track deterioration and safety hazards.

Therefore, periodic monitoring of ballast volume and replacement thereof will ensure rail track

safety and integrity **(Landes et al.; [0005], L6-15)**.


Regarding claim **40**, **Kainer et al.** teach *the method of claim 31.*

Although **Kainer et al.** teach determining the ballast height from the difference in levels

of the ballast and the crosstie and ballast stone size as described in **[0065],** but it does not

exclusively teach determining the ballast volume.

EXHIBIT 2
111

Application/Control Number: 14/725,490                                             Page 26
Art Unit: 2489

However, **Landes et al.** teach a system for automatic rail track surveying using camera

and laser lights which determines the ballast volume from the acquired data (**Landes et al.;**

**[0009], L1-5**).

It would have been obvious for one of ordinary skill in the art at the time the invention

was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Landes et**

**al**'s determination of ballast volume from the acquired data by the system, because since ballast

beneath and between the ties stabilizes the positions of the ties, keeps the rails level, and

provides some cushioning of the composite structure for loads imposed by rail traffic, any

dislodging of the ballast over time could cause rail track deterioration and safety hazards.

Therefore, periodic monitoring of ballast volume and replacement thereof will ensure rail track

safety and integrity (**Landes et al.; [0005], L6-15**).


*Conclusion*

The prior art made of record and not relied upon is considered pertinent to applicant's

disclosure.

1. "TILT CORRECTION SYSTEM AND METHOD FOR RAIL SEAT ABRASION" –

Villar et al., US PGPub 2009/0319197 A1.

2. "RAIL STRESS DETECTION SYSTEM AND METHOD" – Snead, US PGPub

2013/0070083 A1.

3. "VIDEO INSPECTION SYSTEM FOR INSPECTION OF RAIL COMPONENTS

AND METHOD THEREOF" – Nejikovsky et al., US PGPub 2004/0263624 A1.

EXHIBIT 2
112

Application/Control Number: 14/725,490                                           Page 27
Art Unit: 2489

    4. "SYSTEMS AND METHODS FOR OBTAINING IMPROVED ACCURACY

MEASUREMENTS OF MOVING ROLLING STOCK COMPONENTS" – Kilian et al., US

PGPub 2007/0211145 A1.

    5. "OPTICAL RAIL GAGE/WEAR SYSTEM" – Thurston, US Pat 4,915,504.

    6. "APPARATUS FOR MONITORING THE RAILS OF A RAILWAY OR

TRAMWAY LINE" – Casagrande, US PGPub 2003/0140509 A1.

    7. "RAIL VEHICLE MOUNTED RAIL MEASUREMENT SYSTEM" – Chung, US

PGPub 2008/0007724 A1.

    8. "DISTANCE IMAGE OBTAINING SYSTEM FOR TRACK" – Enomoto et al., US

PGPub 2012/0062731 A1.


    Any inquiry concerning this communication or earlier communications from the

examiner should be directed to MAINUL HASAN whose telephone number is (571)272-0422.

The examiner can normally be reached on MON-FRI: 8AM-5PM, Alternate FRIDAYS, EST.

    If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, JORGE L. ORTIZ-CRIADO can be reached on (571)272-7624.  The fax phone

number for the organization where this application or proceeding is assigned is 571-273-8300.

    Information regarding the status of an application may be obtained from the Patent

Application Information Retrieval (PAIR) system.  Status information for published applications

may be obtained from either Private PAIR or Public PAIR.  Status information for unpublished

applications is available through Private PAIR only.  For more information about the PAIR

system, see http://pair-direct.uspto.gov. Should you have questions on access to the Private PAIR

EXHIBIT 2
113

Application/Control Number: 14/725,490                                              Page 28

Art Unit: 2489

system, contact the Electronic Business Center (EBC) at 866-217-9197 (toll-free). If you would

like assistance from a USPTO Customer Service Representative or access to the automated

information system, call 800-786-9199 (IN USA OR CANADA) or 571-272-1000.

/M. H./
Examiner, Art Unit 2489

/JORGE L ORTIZ CRIADO/
Supervisory Patent Examiner, Art Unit 2489

EXHIBIT 2
114

**AMENDMENTS TO THE CLAIMS:**

This listing of claims will replace all prior versions and listings of claims in the application:

**Listing of Claims:**

1.     (Currently Amended) A system for assessing a railway track bed, the system comprising:

a power source;

a light emitting apparatus powered by the power source for emitting light energy toward a railway track;

a data storage apparatus in communication with at least one processor;

at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation and intensity image data of the railway track to be stored in the data storage apparatus, wherein the plurality of sensors are in communication with the at least one processor; and

~~the at least one processor~~ wherein the at least one processor is configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the plurality of sensors and saved in the data storage apparatus, the algorithm comprising the steps of:

  a.  acquiring three dimensional surface elevation and intensity data representative of [[a]]an area segment of railway track bed;

  b.  generating a track elevation map based on the acquired three dimensional data;

  c.  identifying a railway track bed feature from the track elevation map; and

  d.  storing information corresponding to the identified railway track bed feature in the data storage apparatus.

2. (Original) The system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail head edge by detecting significant vertical gradient edges over a two dimensional area wherein such vertical gradient edges are greater than a minimum rail height threshold.

EXHIBIT 2

115

3. (Original) The system of claim 2 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying a rail base edge by detecting significant vertical gradient edges over a two dimensional area adjacent the detected rail head edge wherein such vertical gradient edges are greater than a minimum rail base height threshold.

4. (Original) The system of claim 2 wherein the algorithm further comprises the step of removing data corresponding to the rail head from the elevation map, thereby enhancing the detection of other smaller vertical components of the railway track bed.

5. (Original) The system of claim 4 wherein the algorithm step of identifying a railway track bed feature further comprises the step of detecting surfaces with surface normal values greater than a planar region surface normal value threshold and that are proximate to one another by less than a maximum proximity threshold.

6. (Original) The system of claim 5 wherein the algorithm step of identifying a railway track bed feature further comprises the step of defining an approximate tie surface plane based on the detected surfaces with surface normal values greater than the planar region surface normal value threshold that are proximate to one another by less than the maximum proximity threshold.

7. (Original) The system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of assigning a tie bounding box around the perimeter of the tie surface plane based at least on one measured parameter of the tie surface plane.

8. (Original) The system of claim 7 wherein the algorithm step of identifying a railway track bed feature further comprises the step of assigning an approximate tie length, an approximate tie width, and an approximate tie skew angle based on the bounding box assigned around the perimeter of the tie surface plane.

9. (Original) The system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying and measuring surface cracks that are deeper

EXHIBIT 2
116

than a minimum crack depth threshold and that are longer than a minimum crack length threshold based on the track elevation map.

10. (Original) The system of claim 9 wherein data corresponding to the measured surface cracks are saved to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later date to determine whether the measured surface cracks have changed.

11. (Original) The system of claim 9 wherein the algorithm step of identifying a railway track bed feature further comprises a step of assigning a severity value to each measured crack based on at least the measured length and measured width of the crack.

12. (Currently amended) The system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying and measuring a surface feature other than a rail head that is higher than a minimum tie height threshold.

13. (Original) The system of claim 12 wherein data corresponding to the measured surface feature are saved to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later date to determine whether the measured surface feature has changed.

14. (Original) The system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of detecting a broken tie based on an abrupt elevation shift along the tie surface plane.

15. (Original) The system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of comparing at least a portion of the track elevation map to a plurality of three dimensional features saved in a feature library to determine a best fit between the at least a portion of the track elevation map and the plurality of three dimensional features to properly identify the railway track bed feature.

EXHIBIT 2
117