16. (Currently amended) The system of claim 15 wherein the step of comparing further comprises the step of applying a minimum correlation threshold so that a railway track bed feature other than a railroad tie will not be identified as a particular three dimensional feature from the feature library unless the minimum correlation threshold is met.

17. (Original) The system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of determining a shoulder ballast volume adjacent a tie based at least in part on the approximate tie surface plane defined for the tie.

18. (Original) The system of claim 7 wherein the algorithm step of identifying a railway track bed feature further comprises the step of defining a surface area region adjacent the tie bounding box, measuring the surface elevation of the surface area region, and determining the difference between the surface elevation of the surface area region and the surface elevation of the approximate tie surface plane to determine whether a positive volume or negative volume is present at the surface area region.

19. (Currently amended) The system of claim 15 wherein the algorithm step of identifying a railway track bed feature further comprises the step of making a plurality of elevation measurements along and around an identified railway track bed feature other than a railroad tie and recording the measurements and the locations of the measurements in the data storage apparatus.

20. (Original) The system of claim 19 wherein the algorithm step of identifying a railway track bed feature further comprises the step of assigning a condition to the identified railway track bed feature based on the plurality of elevation measurements.

21. (Original) The system of claim 1 wherein the algorithm step of identifying a railway track bed feature further comprises the step of measuring the length of a joint bar candidate, determining whether the length of the joint bar candidate falls between a minimum joint bar length threshold and a maximum joint bar length threshold, and identifying the joint bar

EXHIBIT 2
118

candidate as a joint bar if the length measurement of the joint bar candidate falls between a minimum joint bar length threshold and a maximum joint bar length threshold.

22. (Currently amended) A system for assessing a railway track bed, the system comprising:

a power source;

a light emitting apparatus powered by the power source for emitting light energy toward a railway track;

a data storage apparatus in communication with at least one processor;

at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation and intensity image data of the railway track to be stored in the data storage apparatus, wherein the plurality of sensors are in communication with the at least one processor; and

~~the at least one processor~~ wherein the at least one processor includes an algorithm for extracting railway track bed surface elevation data to define new railway track bed components for a three dimensional track feature library, the algorithm comprising the steps of:

   a. acquiring three dimensional surface elevation and intensity data representative of [[a]]an area segment of the railway track bed;

   b. generating a track elevation map based on the acquired three dimensional data;

   c. identifying a railway track feature from the track elevation map that does not match any previously defined track features saved in a track feature library;

   d. extracting three dimensional surface elevation and intensity data from the track elevation map corresponding to the identified railway track feature;

   e. assigning a feature name to the extracted three dimensional data; and

   f. saving in the data storage apparatus the extracted three dimensional data associated with the feature name as a new track feature to be included in the track feature library.

23. (Currently amended) A method of building a virtual three dimensional railway track bed component library, the method comprising the steps of:

   a. emitting a light along a track bed surface;

EXHIBIT 2
119

b.  sensing some of the emitted light after it has reflected off of the track bed surface;

c.  defining a three dimensional elevation map <u>using surface elevation and intensity data representative of an area segment of the track bed</u> based on the sensed light reflected from the track bed surface;

d.  storing the elevation map in a data storage apparatus;

e.  identifying a railway track bed feature from the three dimensional elevation map that does not match any previously defined track bed features saved in a track component library;

f.  extracting three dimensional data from the track elevation map corresponding to the identified railway track bed feature;

g.  assigning a component name to the extracted three dimensional data; and

h.  saving the extracted three dimensional data associated with the component name in a data storage apparatus as a new track bed feature to be included in the track component library.

24. (Currently amended) A method of assessing a railway track bed, the method comprising the steps of:

a.  defining a three dimensional elevation map based on <u>surface elevation and intensity data</u> representative of an area segment of the railway track bed, the data gathered by a sensor sensing reflected light from a track bed surface;

b.  storing the elevation map in a data storage apparatus;

c.  identifying a railway track bed feature from the elevation map; and

d.  storing information corresponding to the identified railway track bed feature in the data storage apparatus.

25. (Original) The method of claim 24 wherein the step of identifying a railway track bed feature further comprises the step of identifying a rail head edge by detecting significant vertical gradient edges over a two dimensional area wherein such vertical gradient edges are greater than a minimum rail height threshold.

EXHIBIT 2
120

26. (Original) The method of claim 25 wherein the step of identifying a railway track bed feature further comprises the step of identifying a rail base edge by detecting significant vertical gradient edges over a two dimensional area adjacent the detected rail head edge wherein such vertical gradient edges are greater than a minimum rail base height threshold.

27. (Original) The method of claim 26 further comprising the step of removing data corresponding to the rail head from the elevation map, thereby enhancing the detection of other smaller vertical components of the railway track bed.

28. (Original) The method of claim 24 wherein the method further comprises the step of detecting surfaces with surface normal values greater than a planar region surface normal value threshold and that are proximate to one another by less than a maximum proximity threshold.

29. (Original) The method of claim 28 wherein the method further comprises the step of defining an approximate tie surface plane based on the detected surfaces with surface normal values greater than the planar region surface normal value threshold that are proximate to one another by less than the maximum proximity threshold.

30. (Original) The method of claim 29 wherein the method further comprises the step of assigning a tie bounding box around the perimeter of the tie surface plane based at least on one measured parameter of the tie surface plane.

31. (Original) The method of claim 30 wherein the method further comprises the step of assigning an approximate tie length, an approximate tie width, and an approximate tie skew angle based on the bounding box assigned around the perimeter of the tie surface plane.

32. (Currently amended) The method of claim 31 wherein the method further comprises the step of identifying and measuring surface cracks in an identified tie that are deeper than a minimum crack depth threshold and that are longer than a minimum crack length threshold based on the track elevation map.

EXHIBIT 2
121

33. (Original) The method of claim 32 wherein the method further comprises the step of saving data corresponding to the measured surface cracks to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later date to determine whether the measured surface cracks have changed.

34. (Original) The method of claim 33 wherein the method further comprises a step of assigning a severity value to each measured crack based on at least the measured length and measured width of the crack.

35. (Currently amended) The method of claim 34 wherein the method further comprises the step of identifying and measuring a surface feature other than a rail head that is higher than a minimum tie height threshold.

36. (Original) The method of claim 35 wherein the method further comprises the step of saving data corresponding to the measured surface feature to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later date to determine whether the measured surface feature has changed.

37. (Original) The method of claim 31 wherein the method further comprises the step of detecting a broken tie based on an abrupt elevation shift along the tie surface plane.

38. (Currently amended) The method of claim 24 wherein the step of identifying a railway track bed feature further comprises the step of comparing at least a portion of the track elevation map to a plurality of three dimensional features saved in a feature library to determine a best fit to properly identify the railway track bed feature.

39. (Currently amended) The method of claim 38 wherein the step of comparing further comprises the step of applying a minimum correlation threshold so that a railway track bed

EXHIBIT 2
122

feature other than a railroad tie will not be identified as a particular three dimensional feature from the feature library unless the minimum correlation threshold is met.

40. (Original) The method of claim 31 wherein the method further comprises the step of determining a shoulder ballast volume adjacent a tie based at least in part on the approximate tie surface plane defined for the tie.

41. (Original) The method of claim 31 wherein the method further comprises the step of defining a surface area region adjacent the tie bounding box, measuring the surface elevation of the surface area region, and determining the difference between the surface elevation of the surface area region and the surface elevation of the approximate tie surface plane to determine whether a positive volume or negative volume is present at the surface area region.

42. (Currently amended) The method of claim 38 wherein the method further comprises the step of making a plurality of elevation measurements along and around an identified railway track bed feature other than a railroad tie and recording the measurements and the locations of the measurements in the data storage apparatus.

43. (Original) The method of claim 42 wherein the method further comprises the step of assigning a condition to the identified railway track bed feature based on the plurality of elevation measurements.

44. (Original) The method of claim 24 wherein the step of identifying a railway track bed feature further comprises the step of measuring the length of a joint bar candidate, determining whether the length of the joint bar candidate falls between a minimum joint bar length threshold and a maximum joint bar length threshold, and identifying the joint bar candidate as a joint bar if the length measurement of the joint bar candidate falls between a minimum joint bar length threshold and a maximum joint bar length threshold.

EXHIBIT 2
123

## REMARKS

Claims 1-44 are currently pending.  Claims 1 and 22-24 are the pending independent claims.  Claims 1-16, 18-21, 24-39 and 41-44 are rejected under 35 U.S.C. § 102 over U.S. Patent Application Publication Number 2013/0191070 to Kainer et al. ("Kainer").  Claims 22 and 23 are rejected under 35 U.S.C. § 103 over Kainer in view of U.S. Patent Application Publication Number 2010/0026551 to Szwilski et al. ("Szwilski"). Claims 17 and 40 are rejected under 35 U.S.C. § 103 over Kainer in view of U.S. Patent Application Publication Number 2013/0096739 to Landes et al. ("Landes"). Claims 1, 12, 19, 22, 23, 24, 32, 35, 38, 39 and 42 have been amended. No new matter has been introduced by the amendments, which are supported by the disclosure of the original claims and the specification.  Reconsideration and allowance of the claims are requested.

Each of the foregoing rejections is respectfully traversed and favorable reconsideration is requested in view of the above amendments and following remarks.

### I.   Specification Objection

Applicant has submitted an amended Abstract to obviate the objection raised in the Office Action.

### II.  Objection to Claims 1 and 22

Claims 1 and 22 have been amended in accordance with the Examiner's recommendation to obviate the objection to these claims raised in the Office Action.

### III. § 102 Rejections of claims 1-16, 18-21, 24-39 and 41-44

Claims 1-16, 18-21, 24-39 and 41-44 are rejected under 35 U.S.C. § 102 over Kainer.  "A claim is anticipated only if each and every element as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 USPQ2d 1051, 1053 (Fed. Cir. 1987).

EXHIBIT 2
124

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

### A. Claims 1-16, 18-21

Independent claim 1, as amended, claims, *inter alia*, a system for assessing a railway track bed including a processor running one or more algorithms wherein the algorithm steps include (a) acquiring three dimensional **surface elevation and intensity data representative of an area segment of railway track bed**; (b) generating a track elevation map based on the acquired three dimensional data; and (c) identifying a railway track bed feature from the track elevation map. *See, e.g.,* Applicant's Application, ⁋ [0007].

### 1. Claim 1

Applicant's system and method for generating a 3D model is very different from the approach described in Kainer. In Kainer, a very large number of slices or "frames" across the track surface are taken (about 633,600 per mile) and variations in height profile of each slice are used together to identify features of interest in each profile. *See* Kainer, ⁋ [0048]. These slices are compiled to arrive at a 3D image. *See* Kainer, ⁋ [0056]. In contrast, Applicant's system and method describes 3D surface elevation and intensity data models (the elevations for an *area* of the track surface) to identify features of interest. Kainer does not teach or suggest combining 3D slices to create a surface from which to identify true 3D features (elevations over an area). As such, Kainer does not teach or suggest each and every limitation of Applicant's claim 1. Reconsideration and allowance of claim 1 as amended are respectfully requested.

Dependent claims 2-16 and 18-21 depend from independent claim 1, and contain additional important aspects of the invention. Therefore, dependent claims 2-16 and 18-21 patentably define over Kainer. Reconsideration and allowance of dependent claims 2-16 and 18-21 are respectfully requested.

### 2. Claim 12

Applicant's claim 12 has been amended to expressly exclude rail heads. As disclosed in FIG. 13 of Applicant's Application, the prominent rail head features of a scan are purposefully removed to allow for detection of other, subtler features based on height deviations (e.g., weld artifacts). *See* Applicant's Application, ⁋ [00106]. The section relied on in the Office Action in Kainer is specifically referring to rail height and detecting rail wear. *See* Kainer, FIG. 7A. As such, because Applicant's claim 12 is not referring to rail height or rail erosion and in fact

EXHIBIT 2
125

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

removes rail heads from the calculations being performed, Kainer does not meet each and every limitation of Applicant's claim 12, as amended. Reconsideration and allowance of claim 12, as amended, are respectfully requested.

### 3.   Claim 15

The limitations from claim 15 were correlated with Kainer paragraph [0059] in the Office Action. This portion of Kainer discusses determining the angle of crossties with respect to adjacent rails. Here, Kainer is not concerned with identifying a feature. The identities of the features are already known (i.e., crossties and rails). Rather, Kainer is concerned with determining the relative positioning between crossties and rails. In contrast, Applicant's amended claim 1 describes a feature library which includes a plurality of 3D railroad track features such as, for example, plates, plate holes, spikes, anchors, and tie fasteners (e.g., fastening clips). As the track elevation map is gathered (via the three dimensional surface elevation and intensity data), the map is analyzed and features in the map are cross-referenced with the library of 3D features to help identify the features. Kainer does not teach or suggest this technology. As such, each and every element of claim 15 is not met by Kainer. Thus, claim 15 patentably defines over Kainer.  Reconsideration and allowance of claim 15 are respectfully requested.

### 4.   Claim 16

Applicant's claim 16, as amended, addresses 3D features of a railroad track that do *not* include rails or railroad ties. *See* Applicant's Application, FIGS. 27-30 and ¶¶ [00120]-[00123]. The sections in Kainer that are relied on in the Office Action deal exclusively with tie measurements. Kainer does not teach or suggest a correlation threshold for 3D objects on the railroad track other than rails and railroad ties. As such, Kainer does not disclose each and every limitation of claim 16, as amended. Therefore, Applicant's claim 16 is patentable over Kainer. Reconsideration and allowance of claim 16 are respectfully requested.

### 5.   Claim 19

Applicant's claim 19, as amended, addresses 3D features of a railroad track that do *not* include rails or railroad ties. *See* Applicant's Application, FIGS. 27-30 and ¶¶ [00120]-[00123]. The sections in Kainer that are relied on in the Office Action deal exclusively with tie

EXHIBIT 2
126

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

measurements. Kainer does not teach or suggest making a plurality of elevation measurements along and around an identified railway track bed feature *other than a railroad tie* and recording the measurements and the locations of the measurements in a data storage apparatus. As such, Kainer does not disclose each and every limitation of claim 19, as amended. Therefore, Applicant's claim 19 is patentable over Kainer. Reconsideration and allowance of claim 19 are respectfully requested.

### B. Claims 24-39 and 41-44

Independent claim 24, as amended, claims a method of assessing a railway track bed including, *inter alia*, the steps of (a) defining a three dimensional elevation map based on *surface elevation and intensity data representative of an area segment of the railway track bed*, the gathered by a sensor sensing reflected light from a track bed surface; (b) storing the elevation map in a data storage apparatus; and (c) identifying a railway track bed feature from the elevation map.

#### 1. Claim 24

The arguments set forth in section III.(A.)(1.) are incorporated herein by reference. Based on such arguments, Kainer does not teach or suggest a step of defining a three dimensional elevation map based on *surface elevation and intensity data representative of an area segment of the railway track bed* and, therefore, does not meet each and every limitation of Applicant's claim 24.

Dependent claims 25-39 and 41-44 depend from independent claim 24, and contain additional important aspects of the invention. Therefore, dependent claims 25-39 and 41-44 patentably define over Kainer. Reconsideration and allowance of dependent claims 25-39 and 41-44 are respectfully requested.

#### 2. Claim 35

The arguments as set forth in section III.(A.)(2.) above are incorporated herein by reference. Because Applicant's claim 35 is not referring to rail height or rail erosion and in fact removes rail heads from the calculations being performed, Kainer does not meet each and every

EXHIBIT 2
127

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

limitation of Applicant's claim 35, as amended. Reconsideration and allowance of claim 35, as amended, are respectfully requested.

### 3.  Claim 38

The limitations from claim 38 were correlated with Kainer paragraph [0059] in the Office Action. This portion of Kainer discusses determining the angle of crossties with respect to adjacent rails. Here, Kainer is not concerned with identifying a feature. The identification of the features are already known (i.e., crossties and rails). Rather, Kainer is concerned with determining the relative positioning between crossties and rails. In contrast, Applicant's amended claim 1 describes a feature library which includes a plurality of 3D railroad track features such as, for example, plates, plate holes, spikes, anchors, and tie fasteners (e.g., fastening clips). As the track elevation map is gathered (via the three dimensional surface elevation and intensity data), the map is analyzed and features in the map are cross-referenced with the library of 3D features to help identify the features. Kainer does not teach or suggest this technology. As such, each and every element of claim 38 is not met by Kainer. Thus, claim 38 patentably defines over Kainer.  Reconsideration and allowance of claim 38 are respectfully requested.

### 4.  Claims 39

The arguments as set forth in section III.(A.)(4.) above are incorporated herein by reference. Kainer does not teach or suggest a correlation threshold for 3D objects on the railroad track other than rails and railroad ties. As such, Kainer does not disclose each and every limitation of claim 39, as amended. Therefore, Applicant's claim 39 is patentable over Kainer. Reconsideration and allowance of claim 39 are respectfully requested.

### 5.  Claim 42

The arguments as set forth in section III.(A.)(5.) above are incorporated herein by reference. Kainer does not teach or suggest making a plurality of elevation measurements along and around an identified railway track bed feature *other than a railroad tie* and recording the measurements and the locations of the measurements in a data storage apparatus. As such, Kainer does not disclose each and every limitation of claim 42, as amended. Therefore,

EXHIBIT 2
128

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

Applicant's claim 42 is patentable over Kainer. Reconsideration and allowance of claim 42 are respectfully requested.


### IV. § 103 Rejections of Claims 22 and 23

Claims 22 and 23 are rejected under 35 U.S.C. § 103 over Kainer in view Szwilski. If the sum of references cited against an application is deficient as to the same element or combination of elements required by a rejected claim, then such claim is patentable over the cited references. See *Velander v. Garner*, 348 F.3d 1359, 1363, 68 USPQ2d 1769, 1772 (Fed. Cir. 2003). This requirement is separate and distinct from the Federal Circuit's Teaching, Suggestion, Motivation (TSM) Test analyzed in *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) and remains good law. See *Abbott Laboratories v. Sandoz, Inc.*, 500 F.Supp.2d 846, 852 (N.D. Ill. 2007) (quoted with approval in *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1351 (Fed. Cir. 2008)).


### A. Claim 22

Independent claim 22, as amended, claims a system for assessing a railway track bed including a processor running one or more algorithms for extracting railway track bed surface elevation data *to define new railway track bed components for a three dimensional track feature library*, the algorithm comprising the steps of: (a) acquiring three dimensional *surface elevation and intensity data representative of an area segment of railway track bed*; (b) generating a track elevation map based on the acquired three dimensional data; (c) identifying a railway track feature from the track elevation map that does not match any previously defined track features saved in a track feature library; (d) extracting three dimensional data from the track elevation map corresponding to the identified railway track feature; (e) assigning a feature name to the extracted three dimensional data; and (f) saving in the data storage apparatus the extracted three dimensional data associated with the feature name as a new track feature to be included in the track feature library. The arguments set forth in section III.(A.)(1.) are incorporated herein by reference. Based on such arguments, Kainer does not teach or suggest each and every limitation of Applicant's claim 22. Szwilski does not compensate for the deficiencies of Kainer. As such, claim 22 is patentable over Kainer in view of Szwilski.

EXHIBIT 2
129

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

Additionally, claim 22 specifically states the 3D data is extracted "to define *new* railway track components *for a three dimensional track feature library*." The Office Action cites paragraph [0015] in Kainer which has no teaching or suggestion of such a feature whatsoever. There is nothing in Kainer regarding the system defining new, previously unknown track components and saving those newly-defined components for future reference. Paragraph [0083] in Kainer does not compensate for this deficiency. In paragraph [0083], Kainer teaches analyzing ties. Ties are a known basic feature of a railroad track. In Kainer there is no defining *new*, previously unknown railway track components and then storing those components in a feature library for future use at identifying the new feature in the future.

The Office Action places reliance on paragraph [0102] of Kainer that states the following:

Pattern matching algorithms are used to identify spikes and joint bars. Once these features have been found, the system calculates plate cut by finding the edges of tie plates and the surface of the tie, and uses this information to contribute to the tie condition assessment and grading.

No mention is made here of identifying a railway track feature from the track elevation map that *does not* match any previously defined track features saved in a track feature library. In Kainer, any matches are made based on what is previously defined in the system (i.e., "Pattern matching algorithms are used . . ."). In order to use a pattern matching algorithm, the pattern must already be known to the system. Therefore, Kainer does not teach or suggest a system that locates and defines new track features that were previously unknown to the system and assigns a feature name to the new feature. Thus, Kainer is deficient as to the same element or combination of elements required by claim 22. As such, claim 22 is patentable over Kainer.

As for Szwilski, it appears to teach tagging data related to known rail components. However, it does not compensate for the limitations of claim 22 wherein new, previously unknown track features are found and such features are assigned a new feature name. Therefore, the combination of Kainer and Szwilski is deficient as to the same element or combination of elements required by claim 22. As such, claim 22 is patentable over Kainer in view of Szwilski. Reconsideration and allowance of claim 22 are respectfully requested.

EXHIBIT 2
130

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

**B.  Claim 23**

Independent claim 23 claims a method of building a virtual three dimensional railway
track bed component library including the steps of: defining a three dimensional elevation map
***using surface elevation and intensity data representative of an area segment of the track bed***
based on the sensed light reflected from the track bed surface; storing the elevation map in a data
storage apparatus; identifying a railway track bed feature from the three dimensional elevation
map that does not match any previously defined track bed features saved in a track component
library; extracting three dimensional data from the track elevation map corresponding to the
identified railway track bed feature; assigning a component name to the extracted three
dimensional data; and ***saving the extracted three dimensional data associated with the
component name in a data storage apparatus as a new track bed feature to be included in the
track component library***.

The arguments set forth above in section IV.(A.) regarding claim 22 are incorporated
herein by reference. To summarize, neither Kainer nor Szwilski teach a method including the
step of defining a three dimensional elevation map ***using surface elevation and intensity data
representative of an area segment of the track bed*** based on the sensed light reflected from the
track bed surface. Additionally, neither Kainer nor Szwilski teach a method of ***building*** a virtual
three dimensional railway track bed component library. The teachings of both of these prior art
references cover a system that relies solely on prior-defined data and associated features. No new
features are located, identified and assigned a name. Therefore, the combination of Kainer and
Szwilski is deficient as to the same element or combination of elements required by claim 23. As
such, claim 23 is patentable over Kainer in view of Szwilski. Reconsideration and allowance of
claim 23 are respectfully requested.

**V. 103 Rejections of Claims 17 and 40**

Claims 17 and 40 are rejected under 35 U.S.C. § 103 over Kainer in view Landes. If the
sum of references cited against an application is deficient as to the same element or combination
of elements required by a rejected claim, then such claim is patentable over the cited references.
See *Velander v. Garner*, 348 F.3d 1359, 1363, 68 USPQ2d 1769, 1772 (Fed. Cir. 2003).  This
requirement is separate and distinct from the Federal Circuit's Teaching, Suggestion, Motivation
(TSM) Test analyzed in *KSR Intern. Co. v. Teleflex Inc.*, 550 U.S. 398 (2007) and remains good

EXHIBIT 2
131

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

law.  See *Abbott Laboratories v. Sandoz, Inc.*, 500 F.Supp.2d 846, 852 (N.D. Ill. 2007) (quoted with approval in *Abbott Laboratories v. Sandoz, Inc.*, 544 F.3d 1341, 1351 (Fed. Cir. 2008)).

### A.  Claim 17

Certain important elements of claim 1 are discussed above in section III.(A.) and III.(A.)(1.). Kainer does not teach or suggest an algorithm step of acquiring three dimensional ***surface elevation and intensity data representative of an area segment of railway track bed***. Landes does not compensate for the deficiencies of Kainer as it does not teach or suggest such feature either. Therefore, claim 1, as amended, is patentable over Kainer in view of Landes. "If an independent claim is nonobvious under 35 U.S.C. 103, then any claim depending therefrom is nonobvious."  M.P.E.P. § 2143.03 (citing *In re Fine*, 837 F.2d 1071, 5 U.S.P.Q.2d 1596 (Fed. Cir. 1988)).  Dependent claim 17 depends from independent claim 1, and contains additional important aspects of the invention.  Therefore, dependent claim 17 patentably defines over Kainer in view of Landes.  Reconsideration and allowance of dependent claim 17 are respectfully requested.

### B.  Claim 40

Certain important elements of claim 24 are discussed above in section III.(B.). Kainer does not teach or suggest defining a three dimensional elevation map based on ***surface elevation and intensity data representative of an area segment of the railway track bed***. Landes does not compensate for the deficiencies of Kainer as it does not teach or suggest such feature either. Therefore, claim 24, as amended, is patentable over Kainer in view of Landes. "If an independent claim is nonobvious under 35 U.S.C. 103, then any claim depending therefrom is nonobvious."  M.P.E.P. § 2143.03 (citing *In re Fine*, 837 F.2d 1071, 5 U.S.P.Q.2d 1596 (Fed. Cir. 1988)).  Dependent claim 40 depends from independent claim 24, and contains additional important aspects of the invention.  Therefore, dependent claim 40 patentably defines over Kainer in view of Landes.  Reconsideration and allowance of dependent claim 40 are respectfully requested.

EXHIBIT 2
132

Application No. 14/725,490
July 31, 2017
Reply to Office Action of March 30, 2017

In light of the foregoing, Applicant respectfully requests the Examiner reconsider the application, withdraw the rejections, and issue a notice of allowance at the earliest possible convenience.

In the event this response is not timely filed, Applicant hereby petitions for the appropriate extension of time and requests that the fee for the extension along with any other fees which may be due with respect to this paper be charged to our **Deposit Account No. 506209.**


Respectfully submitted,

ROBINSON IP LAW, PLLC

By: *Michael E. Robinson*

Michael E. Robinson
Registration No. 58,947

Date: July 31, 2017
9724 Kingston Pike, Suite 1403
Knoxville, TN 37922
(865) 978-6480

EXHIBIT 2
133

 UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 14/725,490 | 05/29/2015 | Darel Mesher | 06.00995.0042 | 4258 |

| | | |
|---|---|---|
| 117642 7590 08/16/2017 | | EXAMINER |
| Robinson IP Law, PLLC | | HASAN, MAINUL |
| 9724 Kingston Pike | | |
| Suite 1403 | | ART UNIT / PAPER NUMBER |
| Knoxville, TN 37922 | | 2489 |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 08/16/2017 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

rrobinson@robinsoniplaw.com
docketing@robinsoniplaw.com

PTOL-90A (Rev. 04/07)

EXHIBIT 2
134

| | Application No. | Applicant(s) |
|---|---|---|
| ***Office Action Summary*** | 14/725,490 | MESHER, DAREL |
| | Examiner | Art Unit | AIA (First Inventor to File) Status |
| | MAINUL HASAN | 2489 | Yes |

*-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address --*

**Period for Reply**

   A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE *3* MONTHS FROM THE MAILING DATE OF THIS COMMUNICATION.

- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed after SIX (6) MONTHS from the mailing date of this communication.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133). Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☒ Responsive to communication(s) filed on *07/31/2017*.
   ☐ A declaration(s)/affidavit(s) under **37 CFR 1.130(b)** was/were filed on _____.
2a) ☒ This action is **FINAL.**     2b) ☐ This action is non-final.
3) ☐ An election was made by the applicant in response to a restriction requirement set forth during the interview on _____; the restriction requirement and election have been incorporated into this action.
4) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims***

5) ☒ Claim(s) *1-44* is/are pending in the application.
   5a) Of the above claim(s) _____ is/are withdrawn from consideration.
6) ☐ Claim(s) _____ is/are allowed.
7) ☒ Claim(s) *1-44* is/are rejected.
8) ☐ Claim(s) _____ is/are objected to.
9) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

* If any claims have been determined <u>allowable</u>, you may be eligible to benefit from the **Patent Prosecution Highway** program at a participating intellectual property office for the corresponding application. For more information, please see http://www.uspto.gov/patents/init_events/pph/index.jsp or send an inquiry to PPHfeedback@uspto.gov.

**Application Papers**

10) ☐ The specification is objected to by the Examiner.
11) ☐ The drawing(s) filed on _____ is/are: a) ☐ accepted or b) ☐ objected to by the Examiner.
    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).
    Replacement drawing sheet(s) including the correction is required if the drawing(s) is objected to. See 37 CFR 1.121(d).

**Priority under 35 U.S.C. § 119**

12) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).
    **Certified copies:**
    a) ☐ All   b) ☐ Some** c) ☐ None of the:
       1. ☐ Certified copies of the priority documents have been received.
       2. ☐ Certified copies of the priority documents have been received in Application No. _____.
       3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage application from the International Bureau (PCT Rule 17.2(a)).
** See the attached detailed Office action for a list of the certified copies not received.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)

2) ☒ Information Disclosure Statement(s) (PTO/SB/08a and/or PTO/SB/08b) Paper No(s)/Mail Date _____.

3) ☐ Interview Summary (PTO-413) Paper No(s)/Mail Date. _____ .

4) ☐ Other: _____.

**EXHIBIT 2**

Application/Control Number: 14/725,490                                      Page 2
Art Unit: 2489

## DETAILED ACTION

### *Response to Amendment*

The amendment filed on 07/31/2017 has been entered. Claims 1-44 remain pending in the

application. Applicant's amendments are in response to the Non-Final Office Action mailed on

03/30/2017.

### *Information Disclosure Statement*

The information disclosure statement filed 02/26/2016 fails to comply with the provisions

of 37 CFR 1.97, 1.98 and MPEP § 609 because the first entry under the NPL Documents

(Russian Patent and Trademark Office grant decision) and the fifth entry titled "European Patent

Office, Supplementary European Search Report" were not found attached. Also the contents of

2nd and 3rd entries of NPL Documents titled "International Searching Authority, International

search report" were not legible due to poor scanning quality. These four NPL documents of the

aforementioned IDS have not been considered and therefore have been stroked out.

### *Claim Rejections - 35 USC § 112*

The following is a quotation of the first paragraph of 35 U.S.C. 112(a):

    (a)  IN GENERAL.—The specification shall contain a written description of the invention,
    and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to
    enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to
    make and use the same,  and shall set forth the best mode contemplated by the inventor or joint inventor
    of carrying out the invention.

The following is a quotation of the first paragraph of pre-AIA 35 U.S.C. 112:

    The specification shall contain a written description of the invention, and of the manner and
    process of making and using it, in such full, clear, concise, and exact terms as to enable any person

EXHIBIT 2
136

Application/Control Number: 14/725,490                                    Page 3
Art Unit: 2489

> skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the
> same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

Claims 12-13, 16, 19-20, 35-36, 39, 42-43 are rejected under 35 U.S.C. 112(a) or

35 U.S.C. 112 (pre-AIA), first paragraph, as failing to comply with the written description

requirement.  The claim(s) contains subject matter which was not described in the specification

in such a way as to reasonably convey to one skilled in the relevant art that the inventor or a joint

inventor, or for pre-AIA the inventor(s), at the time the application was filed, had possession of

the claimed invention.

The aforementioned claims recite "*measuring a surface feature **other than a rail head***

...". The claimed limitation now includes measurement of each and every other features of a rail

track "other than a rail head" with respect to a tie height. The claim limitation has broadened the

scope of the invention by including the measurement process of each and every other features of

a rail track "other than a rail head" with respect to a tie height. However, the originally filed

specification lacks the written description of how each and every features of a rail track is being

measured against a tie height. For written description, the specification as filed must describe the

claimed invention in sufficient detail so that one of ordinary skill in the art can reasonably

conclude that the inventor had possession of the claimed invention. A claim may lack written

description when the claim defines the invention in functional language specifying a desired

result but the specification does not sufficiently identify **how** the inventor has devised the

function to be performed or result achieved. For software, this can occur when the algorithm or

steps/procedure for performing the computer function are not explained at all or are not

explained in sufficient detail.

EXHIBIT 2
137

Application/Control Number: 14/725,490                                        Page 4

Art Unit: 2489

### *Claim Rejections - 35 USC § 103*

The following is a quotation of AIA 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

**Claims 1-16, 18-21, 24-39, 41-44 are rejected under AIA 35 U.S.C. 103(a) as being**

**unpatentable over Kainer et al. (US PGPub 2013/0191070 A1) in view of Farritor (US**

**PGPub 2012/0300060 A1).**

Regarding claim **1** (Currently Amended), **Kainer et al.** teach *a system for assessing a*

*railway track bed* (**[0036], L5-6**)*, the system comprising:*

*a power source* (**[0046], L14-17**)*;*

*a light emitting apparatus powered by the power source for emitting light energy toward*

*a railway track* (**[0012], L2-6; Fig. 1** and **2,** reference numeral **40**)*;*

*a data storage apparatus* (**Fig. 1,** reference numeral **62**) *in communication with at least*

*one processor* (**Fig. 1,** reference numeral **54, 60**)*;*

*at least one sensor for sensing reflected light that was emitted from the light emitting*

*apparatus* (**Fig. 1** and **2,** reference numeral **50**) *and acquiring three dimensional* <u>*surface*</u>

<u>*elevation and intensity*</u> *image data of the railway track* (**[0029]. Figs. 11** and **12** show the

perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc.

In **[0105]** it describes how the elevation of different rail track features are measured using the

EXHIBIT 2
138

Application/Control Number: 14/725,490                                    Page 5
Art Unit: 2489

image. On the other hand, in **[0071]**, it teaches illuminating the rail track with certain light

intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or

more camera, which means the captured images contain intensity of light) *to be stored in the*

*data storage apparatus* (**Fig. 1** shows the communicative coupling between the camera and the

storage device **62**)*, wherein the plurality of sensors* (**Fig. 2,** reference numeral **50** shows two

cameras) *are in communication with the at least one processor* (**Fig. 1** shows communicative

coupling between the camera **50** and the processor **54**)*; and*

    *wherein the at least one processor is configured to run an algorithm* (**[0012], L10-13**) *for*

*processing three-dimensional <u>surface</u> elevation <u>and intensity</u> data* (**Figs. 11** and **12** show the

perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc.

In **[0105]** it describes how the elevation of different rail track features are measured using the

image. On the other hand, in **[0071],** it teaches illuminating the rail track with certain light

intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or

more camera, which means the captured images contain intensity of light) *gathered from the*

*plurality of sensors* (**Fig. 2,** reference numeral **50** shows two cameras) *and saved in the data*

*storage apparatus* (**Fig. 1** shows the communicative coupling between the camera and the

storage device **62**)*, the algorithm comprising the steps of:*

    *a. acquiring three dimensional <u>surface elevation and intensity</u>* (**Figs. 11** and **12** show the

perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc.

In **[0105]** it describes how the elevation of different rail track features are measured using the

image. On the other hand, in **[0071],** it teaches illuminating the rail track with certain light

intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or

<u>EXHIBIT 2</u>
139

Application/Control Number: 14/725,490                                              Page 6

Art Unit: 2489

more camera, which means the captured images contain intensity of light) *data representative of*

*<u>an area</u> segment of railway track bed* (**[0047], L14-18**)*;*

      *b. generating a track elevation map based on the acquired three dimensional data*

(**[0082], L18-20; Figs. 11-12** represent a 3D track elevation map where different parameters, e.g.

elevations, height, cracks, splits, orientations, etc. can be measured as disclosed in **[0056], L7-**

**17**)*;*

      *c. identifying a railway track bed feature from the track elevation map* (**[0083], L1-5;**

**[0087], L10-15**)*; and*

      *d. storing information corresponding to the identified railway track bed feature in the*

*data storage apparatus* (**[0046], L5-13**).

      Although, **Kainer et al.** teach capturing perspective three-dimensional image showing

the elevation of rail head, tie plate, tie surface etc. as shown in **Figs. 11, 12** and also illuminating

the rail track with certain light intensity, e.g. 0.15 watts/in and receiving the reflected light from

the track surface using one or more camera as described in **[0071]**, which means the captured

images contain intensity of light, but it does not explicitly teach capturing the intensity image

data.

      However, **Farritor** teaches a system of rail road deflection measurement using visioning

means which is in the same field of endeavor, where it teaches calculating image intensities from

the captured image data as described in **[0043]**.

      It would have been obvious for one of ordinary skill in the art at the time the invention

was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Farritor's**

<u>EXHIBIT 2</u>

140

Application/Control Number: 14/725,490                                                    Page 7
Art Unit: 2489

usage of image intensity data capturing, because this technique can be used in identifying the

edges of the rail, and thereby the slope of the rail in the image (**Farritor; [0043]**).

Regarding claim **2** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 1*

*wherein the algorithm step of identifying a railway track bed feature further comprises the step*

*of identifying a rail head edge by detecting significant vertical gradient edges over a two*

*dimensional area wherein such vertical gradient edges are greater than a minimum rail height*

*threshold* (**Kainer et al.; [0059], Fig. 5;** It teaches calculating the gradient of the rail head edge

**12** with respect to the tie plate. Since the computer analysis checks the angles of tie plates with

respect to rail heads and determines either a worn out rail head/base plate or not, it is understood

that there is a threshold involved in determining the worn condition).

Regarding claim **3** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 2*

*wherein the algorithm step of identifying a railway track bed feature further comprises the step*

*of identifying a rail base edge by detecting significant vertical gradient edges over a two*

*dimensional area adjacent the detected rail head edge wherein such vertical gradient edges are*

*greater than a minimum rail base height threshold* (**Kainer et al.; [0059], Fig. 5;** It teaches

calculating the gradient of the rail head edge **12** with respect to the tie plate edge **10**. Since the

computer analysis checks the angles of tie plates with respect to rail heads and determines either

a worn out rail head/tie plate or not, it is understood that there is a threshold involved in

determining the worn condition).

EXHIBIT 2
141

Application/Control Number: 14/725,490                                      Page 8
Art Unit: 2489

Regarding claim **4** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 2 wherein the algorithm further comprises the step of removing data corresponding to the rail head from the elevation map, thereby enhancing the detection of other smaller vertical components of the railway track bed* (**Kainer et al.; [0091], L7-11;** It teaches filtering out non-tie surfaces while analyzing the tie condition, meaning enhancing the tie condition determination by removing/filtering out other non-essential elements from the image data. **[0052], L10-23; [0053];** It teaches discarding some of the captured image frames to achieve desired frame spacing and reduce data storage, because as disclosed in **[0095], L1-10,** identifying some of the smaller spacings, widths, lengths, etc. requires second pass of data acquiring and processing image data again thereby requiring more storage space).

Regarding claim **5** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 4 wherein the algorithm step of identifying a railway track bed feature further comprises the step of detecting surfaces with surface normal values greater than a planar region surface normal value threshold and that are proximate to one another by less than a maximum proximity threshold* (**Kainer et al.; [0092], L15-20;** It teaches determining the tie surface based on some threshold value with respect to the ballast level to determine whether accurate condition can be measured or not. In **[0093], L1-6,** it also teaches a proximity threshold by disclosing an expected tie-to-tie distance).

Regarding claim **6** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 5 wherein the algorithm step of identifying a railway track bed feature further comprises the step*

EXHIBIT 2
142

Application/Control Number: 14/725,490                                    Page 9

Art Unit: 2489

*of defining an approximate tie surface plane based on the detected surfaces with surface normal*

*values greater than the planar region surface normal value threshold that are proximate to one*

*another by less than the maximum proximity threshold* (**Kainer et al.; [0092], L15-20;** It teaches

determining the tie surface based on some threshold value with respect to the ballast level to

determine whether accurate condition can be measured or not. In **[0093], L1-6,** it also teaches a

proximity threshold by disclosing an expected tie-to-tie distance).

Regarding claim **7** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 6*

*wherein the algorithm step of identifying a railway track bed feature further comprises the step*

*of assigning a tie bounding box around the perimeter of the tie surface plane based at least on*

*one measured parameter of the tie surface plane* (**Kainer et al.; [0012], L10-13;** Also **Fig. 14**

shows the flowchart of finding the 4 edges of the tie boundaries which is equivalent of finding

the bounding box around a tie surface plane).

Regarding claim **8** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 7*

*wherein the algorithm step of identifying a railway track bed feature further comprises the step*

*of assigning an approximate tie length, an approximate tie width, and an approximate tie skew*

*angle based on the bounding box assigned around the perimeter of the tie surface plane* (**Kainer**

**et al.; [0101], L1-5**).

Regarding claim **9** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 6*

*wherein the algorithm step of identifying a railway track bed feature further comprises the step*

EXHIBIT 2

143

Application/Control Number: 14/725,490                                      Page 10

Art Unit: 2489

*of identifying and measuring surface cracks that are deeper than a minimum crack depth*

*threshold and that are longer than a minimum crack length threshold based on the track*

*elevation map* (**Kainer et al.; [0063];** It teaches determining width, length and depth of cracks

based on whether the defective portions **D, D'** fall within or outside a region of interest, meaning

certain threshold values).


Regarding claim **10** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 9*

*wherein data corresponding to the measured surface cracks are saved to the data storage*

*apparatus on a per tie basis so that the same tie can be re-examined at a later date to determine*

*whether the measured surface cracks have changed* (**Kainer et al.; [0062], L22-25;** It teaches

determining rail wears by comparing image frames taken at different times but in the same

location of the track bed, meaning the storage device **62** is capable of storing data for the same

track bed features for the same location at different times so that the wear and tear can be

compared over a time).


Regarding claim **11** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 9*

*wherein the algorithm step of identifying a railway track bed feature further comprises a step of*

*assigning a severity value to each measured crack based on at least the measured length and*

*measured width of the crack* (**Kainer et al.; [0083]; Fig. 13,** step **212** shows assigning a tie

conditioning score after measuring different features associated with the ties to create a tie

replacement plan, meaning the score will tell one how severe the condition of the tie is and if it

needs immediate replacement or not. The same severity matrix is also described in **[0114]**).

EXHIBIT 2
144

Application/Control Number: 14/725,490                                      Page 11

Art Unit: 2489

Regarding claim **12** (Currently Amended), **Kainer et al.** and **Farritor** teach *the system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step of identifying and measuring a surface feature* <u>*other than a rail head*</u> *that is higher than a minimum tie height threshold* (**Kainer et al.; [0062], L12-21, Fig. 7A-B;** It teaches a height **LD** of the surface of the rail **12** with respect to the tie plate for successive frames where the height **LD** is showing smaller in the later frame than the earlier frame indicating a wear and tear of the surface. Additionally, in **[0065], L1-6,** in view of **Fig. 8,** it teaches that a height of ballast **18**, which is a surface feature other than the rail head, can be measured with respect to the crosstie **10**).

Regarding claim **13** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 12 wherein data corresponding to the measured surface feature are saved to the data storage apparatus on a per tie basis so that the same tie can be re-examined at a later date to determine whether the measured surface feature has changed* (**Kainer et al.; [0062], L22-25;** It teaches determining rail wears by comparing image frames taken at different times but in the same location of the track bed, meaning the storage device **62** is capable of storing data for the same track bed features for the same location at different times so that the wear and tear can be compared over a time).

Regarding claim **14** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 6 wherein the algorithm step of identifying a railway track bed feature further comprises the step*

EXHIBIT 2

145

Application/Control Number: 14/725,490                                          Page 12
Art Unit: 2489

*of detecting a broken tie based on an abrupt elevation shift along the tie surface plane* (**Kainer**

**et al.; [0099]**).


Regarding claim **15** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 1*

*wherein the algorithm step of identifying a railway track bed feature further comprises the step*

*of comparing at least a portion of the track elevation map to a plurality of three dimensional*

*features saved in a feature library to determine a best fit between the at least a portion of the*

*track elevation map and the plurality of three dimensional features to properly identify the*

*railway track bed feature* (**Kainer et al.; [0059], Fig. 5;** It teaches a best fit curve determination

of two feature lines **L1** and **L2** corresponding to rail head **12** and the crosstie **10** which are then

averaged over a several of the previously stored image frames so that the computer can analyze

and determine the angular relationship between these lines **L1-L2** to determine the tie angle with

respect to the rail, where the tie angle is the feature being identified after averaging over plurality

of previously stored image frames*)*.


Regarding claim **16** (Currently Amended), **Kainer et al.** and **Farritor** teach *the system of*

*claim 15 wherein the step of comparing further comprises the step of applying a minimum*

*correlation threshold so that a railway track bed feature* <u>*other than a railroad tie*</u> *will not be*

*identified as a particular three dimensional feature from the feature library unless the minimum*

*correlation threshold is met* (**Kainer et al.; [0014];** It teaches applying a correlation between the

tie features, e.g. spacing and the tie condition grading above/below a threshold to determine the

tie replacement plan, meaning if the correlation is not met the tie grading will not be identified as

<u>EXHIBIT 2</u>
146

Application/Control Number: 14/725,490                                      Page 13
Art Unit: 2489

needing replacement. As cited earlier in **[0065], L1-6,** in view of **Fig. 8,** it teaches that a height

of ballast **18**, which is a surface feature other than the rail head, can be measured with respect to

the crosstie **10**).

Regarding claim **18** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 7*

*wherein the algorithm step of identifying a railway track bed feature further comprises the step*

*of defining a surface area region adjacent the tie bounding box, measuring the surface elevation*

*of the surface area region, and determining the difference between the surface elevation of the*

*surface area region and the surface elevation of the approximate tie surface plane to determine*

*whether a positive volume or negative volume is present at the surface area region* (**Kainer et**

**al.; [0092];** It teaches the system identifying the tie surface area with respect to the non-tie

surface area and how much of the tie area surface is covered by the ballast and therefore cannot

be scored, which is equivalent of positive volume (60%) and negative volume (40%)).

Regarding claim **19** (Currently Amended), **Kainer et al.** and **Farritor** teach *the system of*

*claim 15 wherein the algorithm step of identifying a railway track bed feature further comprises*

*the step of making a plurality of elevation measurements along and around an identified railway*

*track bed feature* <u>*other than a railroad tie*</u> *and recording the measurements and the locations of*

*the measurements in the data storage apparatus* (**Kainer et al.; [0056]; Fig. 11** and **12** show

plurality of compiled image data showing the track bed features. Also **Figs. 4A-C** show three

consecutive image frames **Z1-Z3** meaning the system is taking multiple elevation measurements.

Since the system is equipped with a storage device **62,** it is understood that the plurality of

EXHIBIT 2
147

Application/Control Number: 14/725,490                                    Page 14
Art Unit: 2489

elevation measurements are stored in the storage device. As cited earlier in **[0065], L1-6,** in view

of **Fig. 8,** it teaches that a height of ballast **18,** which is a surface feature other than the rail head,

can be measured with respect to the crosstie **10**).


Regarding claim **20** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 19*

*wherein the algorithm step of identifying a railway track bed feature further comprises the step*

*of assigning a condition to the identified railway track bed feature based on the plurality of*

*elevation measurements* (**Kainer et al.;** In **[0114],** it teaches assigning four conditions based on

the determination of the rail track features, e.g. good (1), marginal (2), bad (3), or failed (4)).


Regarding claim **21** (Original), **Kainer et al.** and **Farritor** teach *the system of claim 1*

*wherein the algorithm step of identifying a railway track bed feature further comprises the step*

*of measuring the length of a joint bar candidate, determining whether the length of the joint bar*

*candidate falls between a minimum joint bar length threshold and a maximum joint bar length*

*threshold, and identifying the joint bar candidate as a joint bar if the length measurement of the*

*joint bar candidate falls between a minimum joint bar length threshold and a maximum joint bar*

*length threshold* (**Kainer et al.; [0122], L6-10;** It teaches determining the edge outlines of the

joint bar from two consecutive rail top edges and then comparing the shape against a standard

joint bar shape, meaning thresholding different edges to determine whether it is a joint bar or

not).

EXHIBIT 2
148

Application/Control Number: 14/725,490                                    Page 15
Art Unit: 2489

Regarding claim **24** (Currently Amended), **Kainer et al.** teach *a method of assessing a railway track bed* (**[0036], L5-6**)*, the method comprising the steps of:*

*a. defining a three dimensional elevation map* (**[0047], L14-18**) *based on <u>surface elevation and intensity</u> data* (**Figs. 11** and **12** show the perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc. In **[0105]** it describes how the elevation of different rail track features are measured using the image. On the other hand, in **[0071],** it teaches illuminating the rail track with certain light intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or more camera, which means the captured images contain intensity of light) *<u>representative of an area segment of the railway track bed</u>* (**[0047], L14-18**)*, <u>the data</u> gathered by a sensor* (**Fig. 1** and **2,** reference numeral **50**) *sensing reflected light from a track bed surface* (**[0012], L2-6; Fig. 1** and **2,** reference numeral **40**)*;*

*b. storing the elevation map in a data storage apparatus* (**[0046], L5-13**)*;*

*c. identifying a railway track bed feature from the elevation map* (**[0083], L1-5; [0087], L10-15**)*; and*

*d. storing information corresponding to the identified railway track bed feature in the data storage apparatus* (**[0046], L5-13**)*.*

Although, **Kainer et al.** teach capturing perspective three-dimensional image showing the elevation of rail head, tie plate, tie surface etc. as shown in **Figs. 11, 12** and also illuminating the rail track with certain light intensity, e.g. 0.15 watts/in and receiving the reflected light from the track surface using one or more camera as described in **[0071]**, which means the captured images contain intensity of light, but it does not explicitly teach capturing the intensity image data.

EXHIBIT 2
149

Application/Control Number: 14/725,490                                   Page 16
Art Unit: 2489

However, **Farritor** teaches a system of rail road deflection measurement using visioning means which is in the same field of endeavor, where it teaches calculating image intensities from the captured image data as described in **[0043]**.

It would have been obvious for one of ordinary skill in the art at the time the invention was made to combine **Kainer et al**'s invention of inspecting railroad ties to include **Farritor**'s usage of image intensity data capturing, because this technique can be used in identifying the edges of the rail, and thereby the slope of the rail in the image **(Farritor; [0043])**.

Regarding claim **25** (Original), **Kainer et al.** and **Farritor** teach *the method of claim 24 wherein the step of identifying a railway track bed feature further comprises the step of identifying a rail head edge by detecting significant vertical gradient edges over a two dimensional area wherein such vertical gradient edges are greater than a minimum rail height threshold* **(Kainer et al.; [0059], Fig. 5;** It teaches calculating the gradient of the rail head edge **12** with respect to the tie plate. Since the computer analysis checks the angles of tie plates with respect to rail heads and determines either a worn out rail head/base plate or not, it is understood that there is a threshold involved in determining the worn condition**)**.

Regarding claim **26** (Original), **Kainer et al.** and **Farritor** teach *the method of claim 25 wherein the step of identifying a railway track bed feature further comprises the step of identifying a rail base edge by detecting significant vertical gradient edges over a two dimensional area adjacent the detected rail head edge wherein such vertical gradient edges are greater than a minimum rail base height threshold* **(Kainer et al.; [0059], Fig. 5;** It teaches

EXHIBIT 2
150

Application/Control Number: 14/725,490                                    Page 17

Art Unit: 2489

calculating the gradient of the rail head edge **12** with respect to the tie plate edge **10**. Since the computer analysis checks the angles of tie plates with respect to rail heads and determines either a worn out rail head/tie plate or not, it is understood that there is a threshold involved in determining the worn condition).

Regarding claim **27** (Original), **Kainer et al.** and **Farritor** teach *the method of claim 26 further comprising the step of removing data corresponding to the rail head from the elevation map, thereby enhancing the detection of other smaller vertical components of the railway track bed* (**Kainer et al.; [0091], L7-11;** It teaches filtering out non-tie surfaces while analyzing the tie condition, meaning enhancing the tie condition determination by removing/filtering out other non-essential elements from the image data. **[0052], L10-23; [0053];** It teaches discarding some of the captured image frames to achieve desired frame spacing and reduce data storage, because as disclosed in **[0095], L1-10,** identifying some of the smaller spacings, widths, lengths, etc. requires second pass of data acquiring and processing image data again thereby requiring more storage space).

Regarding claim **28** (Original), **Kainer et al.** and **Farritor** teach *the method of claim 24 wherein the method further comprises the step of detecting surfaces with surface normal values greater than a planar region surface normal value threshold and that are proximate to one another by less than a maximum proximity threshold* (**Kainer et al.; [0092], L15-20;** It teaches determining the tie surface based on some threshold value with respect to the ballast level to

EXHIBIT 2
151

Application/Control Number: 14/725,490                                    Page 18
Art Unit: 2489

determine whether accurate condition can be measured or not. In **[0093], L1-6,** it also discloses a

proximity threshold by disclosing an expected tie-to-tie distance).


Regarding claim **29** (Original), **Kainer et al.** and **Farritor** teach *the method of claim 28*

*wherein the method further comprises the step of defining an approximate tie surface plane*

*based on the detected surfaces with surface normal values greater than the planar region surface*

*normal value threshold that are proximate to one another by less than the maximum proximity*

*threshold* (**Kainer et al.; [0092], L15-20;** It teaches determining the tie surface based on some

threshold value with respect to the ballast level to determine whether accurate condition can be

measured or not. In **[0093], L1-6,** it also teaches a proximity threshold by disclosing an expected

tie-to-tie distance).


Regarding claim **30** (Original), **Kainer et al.** and **Farritor** teach *the method of claim 29*

*wherein the method further comprises the step of assigning a tie bounding box around the*

*perimeter of the tie surface plane based at least on one measured parameter of the tie surface*

*plane* (**Kainer et al.; [0012], L10-13;** Also **Fig. 14** shows the flowchart of finding the 4 edges of

the tie boundaries which is equivalent of finding the bounding box around a tie surface plane).


Regarding claim **31** (Original), **Kainer et al.** and **Farritor** teach *the method of claim 30*

*wherein the method further comprises the step of assigning an approximate tie length, an*

*approximate tie width, and an approximate tie skew angle based on the bounding box assigned*

*around the perimeter of the tie surface plane* (**Kainer et al.; [0101], L1-5**).

EXHIBIT 2
152