Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TETRA TECH, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | Case No. 2:21-cv-1289-MCS-MMA <br><br> **STATEMENT OF UNCONTROVERTED FACTS AND CONCLUSIONS OF LAW IN SUPPORT OF PAVEMETRICS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '293 PATENT** <br><br> Hearing Date: February 14, 2022 <br> Time: 9:00 am <br> Ctrm: 7C <br><br> Honorable Mark C. Scarsi <br> Honorable Maria A. Audero |

Pursuant to Local Rule 56-1 and Paragraph 10(c)(i) of this Court's Standing Order (ECF 11), Plaintiff and Counterclaim Defendant Pavemetrics Systems, Inc. hereby submits the following Statement of Uncontroverted Facts and Conclusions of Law in support of its Motion for Summary Judgment of Non-Infringement of U.S. Patent No. 10,362,293.

## I. STATEMENT OF UNCONTROVERTED FACTS

**No reasonable jury could find that Pavemetrics' LRAIL product infringes the asserted claims of the '293 Patent.**

| No. | UNCONTROVERTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 1. | Tetra Tech alleges that Pavemetrics' Laser Rail Inspection System ("LRAIL") infringes Claims 1, 2, 4, 15, 16, 19-23, 25, 36, 37, and 40-43 of the '293 Patent. | ECF No. 79 at ¶¶ 34-36. Ex. 3 (Tetra Tech's Second Supplemental Infringement Contentions, Ex. A). |
| 2. | Pavemetrics denies that it has infringed and that it does infringe the asserted claims of the '293 Patent. | ECF No. 82 at ¶¶ 34-36. |
| 3. | Claims 1 and 22 of the '293 Patent are independent claims. | ECF No. 79 Ex. A at 95-96, Claims 1 and 22. |
| 4. | Claim 1 recites:<br>A system for assessing a railway track bed, the system comprising:<br>    a power source;<br>    a light emitting apparatus powered by the power source for emitting light energy toward a railway track;<br>    a data storage apparatus in communication with at least one processor; | ECF No. 79 Ex. A at 95, Claim 1. |

| | | | |
|---|---|---|---|
| | | at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation *and* intensity image data of the railway track to be stored in the data storage apparatus, wherein the at least one sensor is in communication with the at least one processor; and<br>wherein the at least one processor is configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the at least one sensor and saved in the data storage apparatus, the algorithm comprising the steps of:<br>    a. acquiring three dimensional surface elevation *and* intensity data representative of an area segment of railway track bed;<br>    b. generating a track elevation map based on the acquired three dimensional data;<br>    c. identifying a railway track bed feature from the track elevation map further including the steps of:<br>        i. defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and<br>        ii. moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor; and<br>    d. storing information corresponding to the identified railway track bed feature in the data storage apparatus. | |
| 5. | Claims 2, 4, and 15 depend from Claim 1. | ECF No. 79 Ex. A at 95, Claims 2, 4, and 15. |
| 6. | Claim 22 recites: | ECF No. 79 Ex. A at 96, Claim |

| | | |
|---|---|---|
| | A method of assessing a railway track bed, the method comprising the steps of:<br>    a. defining a three dimensional elevation map based on surface elevation and intensity data representative of an area segment of the railway track bed, the data gathered by a sensor sensing reflected light from a track bed surface;<br>    b. storing the elevation map in a data storage apparatus;<br>    c. identifying a railway track bed feature from the elevation map using a processor, further comprising the sub-steps of:<br>        i. defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and<br>        ii. moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor; and<br>    d. storing information corresponding to the identified railway track bed feature in the data storage apparatus. | 22. |
| 7. | Claims 19-23, 25, 36, 37, and 40-43 depend from Claim 22. | ECF No. 79 Ex. A at 96-97, Claims 19-23, 25, 36, 37, and 40-43. |
| 8. | On December 1, 2021, the Court construed the term "track elevation map" in Claims 1, 15, and 36 and the term "three dimensional elevation map" in Claim 22 to mean "representation of both the height (elevation) and intensity of reflected laser light (intensity) at each data point within an area across the entire width of the railway track bed." | Claim Construction Order, ECF No. 103 at 32:14-16. |
| 9. | In its Claim Construction Order, the Court held that the gradient neighborhood sub-steps are a | ECF No. 103 at 27:16-19. |

| | | |
|---|---|---|
| | sub-step of identifying a feature from a track elevation map. | |
| 10. | In its Claim Construction Order, the Court construed the term "moving the gradient neighborhood like a sliding window over the 3D elevation data" to mean "sequentially and completely applying the gradient neighborhood to the 3D elevation data." | ECF No. 103 at 21:7-12. |
| 11. | In its Claim Construction Order, the Court held that "Tetra Tech disclaimed the scope of the 'map' terms by amending the claims to require the 'map' terms to be based on both 'elevation' and 'intensity' data." | ECF No. 103 at 31:17-19. |
| 12. | No LRAIL algorithm generates an image that contains intensity and elevation data. | Hébert Decl. at ¶12. |
| 13. | LRAIL processing software analyzes 2D images that contain either intensity data or range data. | Hébert Decl. at ¶12. |
| 14. | No LRAIL algorithm identifies a track bed feature from an image containing both elevation and intensity data by moving a gradient neighborhood like a sliding window over 3D elevation data. | Hébert Decl. at ¶14. |
| 15. | During prosecution of the '293 Patent, original Claim 1 did not require processing intensity data, but rather required processing only "three dimensional elevation data." | ECF No. 87 Ex. J at 2:8-15. |
| 16. | The examiner rejected all claims over a prior art reference that did "not explicitly teach capturing the intensity image data." | ECF No. 87 Ex. J at 15, 65. |
| 17. | Tetra Tech responded by amending Claim 1 to require processing "three dimensional surface elevation and intensity data." | ECF No. 87 Ex. J at 40. |
| 18. | In its Claim Construction Order, the Court | ECF No. 103 at |

| | | | |
|---|---|---|---|
| | | found that:<br><br>"Tetra Tech also argued that 'the track elevation map is gathered []via the three dimensional surface elevation and intensity data[.]' (*See* Exhibit J at 50, 51.) Thus, Tetra Tech argued that both the '3D surface elevation and intensity data models' are necessary to analyze 'the elevations for an *area* of the track surface.' (*Id.* at 50 (emphasis in original); *see also id.* at 52 ("Kainer does not teach or suggest a step of defining a three dimensional elevation map based on ***surface elevation and intensity data representative of an area segment of the railway track bed***.") (emphasis in original), 53, 57, 65 (recognizing that prior art reference did not 'explicitly teach capturing the intensity image data'), 98, 100 (distinguishing prior art on the grounds that it did not disclose 'the use of a single sensor for obtaining surface elevation and intensity data for a given area' to define 'a three dimensional elevation map' based on both 'surface elevation ***and*** intensity data') (emphasis in original), 105)." | 32 (citing ECF No. 87 Ex. J). |
| | 19. | During prosecution of the '293 Patent, Claim 22, which corresponds to original Claim 24, required only "defining a three dimensional elevation map based on data gathered by a sensor sensing reflected light from a track bed surface." | ECF No. 87 Ex. J at 7:156-158. |
| | 20. | Tetra Tech subsequently amended the claim to require "defining a three dimensional elevation map based on surface elevation and intensity data representative of an area segment of the railway track bed." Tetra Tech argued to the examiner that the prior art "does not teach or suggest a step of defining a three dimensional elevation map based on ***surface elevation and intensity data representative of an area*** | ECF No. 87 Ex. J at 45, 52. |

| | |
|---|---|
| | ***segment of the railway track bed*** and, therefore, does not meet each and every limitation." |

## II. CONCLUSIONS OF LAW

| No. | Conclusions of Law |
|---|---|
| 1. | Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). |
| 2. | Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). |
| 3. | "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no ***genuine*** issue of ***material*** fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original). A dispute is genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. |
| 4. | "[A]n accused infringer seeking summary judgment of noninfringement may meet its initial responsibility either by providing evidence that would preclude a finding of infringement, or by showing that the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). |
| 5. | Infringement is a question of fact and therefore "amenable to summary |

|   |   |   |
|---|---|---|
|   |   | judgment when no reasonable factfinder could find that the accused product contains every claim limitation or its equivalent." *Akzo Nobel Coatings, Inc. v. Dow Chem. Co.*, 811 F.3d 1334, 1339 (Fed. Cir. 2016). |
|   | 6. | Pavemetrics' LRAIL does not infringe Claims 1, 2, 4, 15, 16, 19-21 of the '293 Patent because it does not satisfy the limitation of "generating a track elevation map based on the acquired three dimensional data." |
|   | 7. | Pavemetrics' LRAIL does not infringe Claims 1, 2, 4, 15, 16, 19-21 of the '293 Patent because it does not satisfy the limitation of "identifying a railway track bed feature from the track elevation map further including the steps of: (i) defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and (ii) moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor." |
|   | 8. | Pavemetrics' LRAIL does not infringe Claims 22-23, 25, 36, 37, and 40-43 of the '293 Patent because it does not satisfy the limitation of "defining a three dimensional elevation map based on surface elevation and intensity data." |
|   | 9. | Pavemetrics' LRAIL does not infringe Claims 22-23, 25, 36, 37, and 40-43 of the '293 Patent because it does not satisfy the limitation of "identifying a railway track bed feature from the elevation map using a processor, further comprising the sub-steps of: (i) defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and (ii) moving the gradient neighborhood like a sliding window over the 3D elevation data using the processor." |
|   | 10. | "Whether prosecution history estoppel applies to a particular argument, and thus whether the doctrine of equivalents is available for a particular |

|     |     |     |
| --- | --- | --- |
|     |     | claim limitation, is a question of law" that may be decided on summary judgment. *See EMD Millipore Corp. v. AllPure Techs., Inc.*, 768 F.3d 1196, 1201 (Fed. Cir. 2014). "Prosecution history estoppel applies when an applicant during patent prosecution narrows a claim 'to avoid the prior art, or otherwise to address a specific concern . . . that arguably would have rendered the claimed subject matter unpatentable.'" *Id.* at 1203 (quoting *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 30–31 (1997)). |
|     | 11. | "There is a presumption that prosecution history estoppel applies when a patentee has filed an amendment seeking to narrow the scope of a claim, and 'the reason for that amendment was a substantial one relating to patentability.'" *Id.* (quoting *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 344 F.3d 1359, 1366 (Fed. Cir. 2003) (en banc)). |
|     | 12. | During prosecution, Tetra Tech disclaimed the scope of the "map" terms by amending the claims to require the "map" terms to be based on both "surface elevation" and "intensity" data. Prosecution history estoppel bars Tetra Tech from asserting that LRAIL's process of identifying a railway track bed feature from a range (surface elevation) image ***or*** an intensity image is equivalent to algorithms required by the asserted claims. |

Respectfully submitted,

Knobbe, Martens, Olson & Bear, LLP

Dated: January 10, 2022

/s/ Christy G. Lea
Joseph R. Re
Christy G. Lea
Nicholas M. Zovko
Alan G. Laquer

*Attorneys for Plaintiff/Counterclaim Defendant*, PAVEMETRICS SYSTEMS, INC.