Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
Kelly S. Horn (*pro hac vice*)
kelly.horn@finnegan.com
Victor M. Palace (*pro hac vice*)
victor.palace@finnegan.com
**FINNEGAN, HENDERSON,
FARABOW, GARRETT &
DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413

Telephone:   (202) 408-4000
Facsimile:    (202) 408-4400

Jency J. Mathew (*pro hac vice*)
jency.mathew@finnegan.com
**FINNEGAN, HENDERSON,
FARABOW, GARRETT &
DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, Virginia 20190-6023
Telephone:   (571) 203-2700
Facsimile:    (571) 203-2777

*Attorneys for Defendant and
Counterclaim Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>———————————————<br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**TETRA TECH'S MEMORANDUM IN OPPOSITION TO PAVEMETRICS' MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF THE '293 PATENT**<br><br>**Honorable Mark C. Scarsi**<br><br>**Date: February 28, 2022**<br>**Time: 9:00 a.m.**<br>**Courtroom: 7C** |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ........................................................................................... 1

II.   LEGAL STANDARDS ................................................................................... 3

III.  ARGUMENT................................................................................................... 4

    A.  Pavemetrics Fails to Address Tetra Tech's Evidence of
        Infringement, and Thus Fails to Meet its Burden under Rule 56 ........ 4

    B.  Tetra Tech's Evidence Establishes a Factual Basis for its Claim of
        Infringement of the '293 Patent ........................................................... 6

        1.  Tetra Tech's Evidence Supports a Finding That
            Pavemetrics' LRAIL Generates a "Track Elevation Map" /
            "Three Dimensional Elevation Map" ....................................... 6

            a.  Fake3D Image ................................................................ 7

            b.  Mixed Image.................................................................. 12

        2.  Tetra Tech's Evidence Supports a Finding That
            Pavemetrics' LRAIL Identifies Railway Track Features
            from the "Track Elevation Map" / "Three Dimensional
            Elevation Map" ...................................................................... 15

            a.  Identifying Features from the Fake3D Images Using
               Convolutional Neural Networks..................................... 16

            b.  Identifying Features from the Fake3D Images Using
               Overlay Results ............................................................ 18

            c.  Identifying Features from the Mixed Images Using
               Convolutional Neural Networks..................................... 21

IV.   DOCTRINE OF EQUIVALENTS IS NOT AT ISSUE IN THIS
    MOTION ..................................................................................................... 23

V.    TETRA TECH NEVER REQUESTED ADDITIONAL FACT
    DISCOVERY ............................................................................................... 23

VI.   CONCLUSION ............................................................................................ 25

i

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,

5

   761 F.3d 1329 (Fed. Cir. 2014) ........................................................ 5, 8, 17

6

*Anderson v. Liberty Lobby, Inc.*,

7

   477 U.S. 242 (1986) .................................................................................. 3

8

*Avalos v. Baca*,

9

   No. 05–CV–07602–DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7,

10

   2006) ......................................................................................................... 3

11

*Bai v. L & L Wings, Inc.*,

12

   160 F.3d 1350 (Fed. Cir. 1998) ................................................................ 3

13

*Brilliant Instruments, Inc. v. GuideTech, LLC*,

14

   707 F.3d 1342 (Fed. Cir. 2013) ............................................................ 2, 3

15

*Celotex Corp. v. Catrett*,

16

   477 U.S. 317 (1986) .............................................................................. 3, 4

17

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,

18

   559 F.3d 1308 (Fed. Cir. 2009) ............................................................ 3, 4

19

*Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp.*,

20

   635 F.3d 1373, 1384 (Fed. Cir. 2011) ...................................................... 6

21

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,

22

   796 F.3d 1312 (Fed. Cir. 2015) ...................................................... 5, 8, 17

23

*Gadda v. State Bar of Cal.*,

24

   511 F.3d 933 (9th Cir. 2007) .................................................................... 8

25

*Giles v. Sardie*,

26

   191 F. Supp. 2d 1117 (C.D. Cal. 2000) .................................................... 8

27

28

*Hid Glob. Corp. v. Farpointe Data, Inc.*,
   No. SACV 10- 1954-JVS-RNBx, 2012 WL 13018341 (C.D. Cal. Apr.
   13, 2012) ................................................................................5, 6, 8, 18

*IMS Tech., Inc. v. Haas Automation, Inc.*,
   206 F.3d 1422 (Fed. Cir. 2000) ...................................................................4

*Innovention Toys, LLC v. MGA Entmn't, Inc.*,
   637 F.3d 1314 (Fed. Cir. 2011) ...................................................................3

*Leggett & Platt, Inc. v. Hickory Springs Mfg. Co.*,
   285 F.3d 1353 (Fed. Cir. 2002) ...................................................................6

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,
   182 F.3d 157 (2d Cir. 1999) .........................................................................3

*Novartis Corp. v. Ben Venue Lab'ys, Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001) ......................................................4, 13, 15

*Provenz v. Miller*,
   102 F.3d 1478 (9th Cir. 1996) .....................................................................8

*Scott v. Harris*,
   550 U.S. 372 (2007).......................................................................................3

*Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc.*,
   2018 WL 6038277 (C.D. Cal. Apr. 24, 2018).............................................6

*Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999) .....................................................................3

**Other Authorities**

Fed. R. Civ. P. Rule 56 ...............................................................................3, 4

iii

## I.    INTRODUCTION

To date, no expert reports have been exchanged in this case, and yet, Pavemetrics seeks summary judgment on infringement issues requiring technical analyses of its source code and other evidence. Pavemetrics does so without proffering any expert testimony of its own—just the self-serving declaration of one of its co-founders, Jean-François Hébert (ECF 120-1) ("Hébert Decl."), and attorney argument. Not only is Pavemetrics' motion premature, but it suffers from a fatal flaw—both its brief and supporting declaration lack any meaningful analysis and otherwise ignore critical portions of Pavemetrics' source code identified in Tetra Tech's infringement contentions. By failing to address Tetra Tech's evidence of infringement, Pavemetrics has failed to meet its burden to show an absence of a genuine issue of material fact. The Court should deny Pavemetrics' motion for this reason alone.

Tetra Tech has presented substantial evidence that demonstrates Pavemetrics' Laser Rail Inspection System ("LRAIL") infringes claims 1 and 22 of the '293 patent ("the claims at issue"). As confirmation, Tetra Tech submits herewith a declaration from its technical expert, Vassilios Morellas Ph.D., who has analyzed Pavemetrics' source code and other technical documents and concluded that there is a factual basis for infringement of the claims at issue. *See* Declaration of Vassilios Morellas Ph.D. ("Morellas Decl.").

Pavemetrics' motion contends that the LRAIL does not infringe the claims at issue because it does not identify a railway track bed feature from a "track elevation map" (claim 1) or "three dimensional elevation map" (claim 22). The Court construed these terms to mean a "representation of both the height (elevation) and intensity of reflected laser light (intensity) at each data point within an area across the entire width of the railway track bed." ECF 103 at 32. In particular, Pavemetrics argues that its LRAIL never generates a representation of both elevation and intensity data, and even if it did, the LRAIL does not identify a railway track bed feature from such representation. This is incorrect.

Tetra Tech's evidence, including source code, user manuals, reports, presentations, and other technical documents, as well as testimony from Pavemetrics' own witnesses and Dr. Morellas, establishes that the LRAIL includes each of these claim elements. Tetra Tech's evidence demonstrates that Pavemetrics' LRAIL generates images (including "Fake3D" and "Mixed" images) that are representations of both elevation and intensity data, and then, identifies a railway track bed feature from those images. Tetra Tech's evidence further shows that Pavemetrics' LRAIL identifies a railway track bed feature from the representations of both elevation and intensity data, which includes the steps of (1) "defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated" and (2) "moving the gradient neighborhood like a sliding window over the 3D elevation data." These documents and testimony establish an evidentiary basis for Tetra Tech's infringement claim and must be credited at the summary judgment phase. *See Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1344 (Fed. Cir. 2013) ("At the summary judgment stage, we credit all of the nonmovant's evidence and draw all justifiable inferences in its favor").

Pavemetrics relies solely on a declaration from its own witness, Dr. Hébert, to support its motion. But this declaration is rife with unsupported and conclusory statements about the operation of the LRAIL and its software. Notably, Dr. Hébert's declaration neglects any meaningful technical analysis of the LRAIL's source code that has been identified by Tetra Tech as demonstrating infringement. Dr. Hébert's declaration is also riddled with self-serving statements about the LRAIL that contradict Pavemetrics' own technical documents and the testimony of other Pavemetrics witnesses. The fact that Pavemetrics disagrees with its own technical documents and among its own witnesses about the relevant features of the LRAIL confirms the existence of genuine disputes of material fact.

Accordingly, because Pavemetrics fails to address critical portions of Tetra Tech's evidence of infringement, it cannot possibly establish the absence of triable

1  issues of fact. Moreover, Tetra Tech's evidence establishes triable issues of fact as to

2  each and every element of the claims at issue. Pavemetrics' motion should be denied.

3  ## II.    LEGAL STANDARDS

4         Federal Rule of Civil Procedure 56(a) requires "the movant show[] that there is

5  no genuine dispute as to any material fact and the movant is entitled to judgment as a

6  matter of law." A genuine issue of material fact will exist "if the evidence is such that

7  a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty*

8  *Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment,

9  the Court must view the facts and draw reasonable inferences in the light most favorable

10  to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

11         The initial burden of establishing the absence of a genuine issue of material fact

12  lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The

13  movant bears this burden even "[w]hen the moving party does not have the burden of

14  proof on the issue that is the subject of the summary judgement motion." *Vivid Techs.*

15  *Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806–07 (Fed. Cir. 1999). Because summary

16  judgment is a "drastic device" cutting off a party's right to present its case to a jury, the

17  moving party bears a "heavy burden" of demonstrating the absence of any triable issue

18  of material fact. *See Avalos v. Baca*, No. 05–CV–07602–DDP, 2006 WL 2294878 (C.D.

19  Cal. Aug. 7, 2006) (quoting *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,

20  182 F.3d 157, 160 (2d Cir.1999)).

21         At issue here is infringement, which "is a question of fact." *Brilliant Instruments*,

22  707 F.3d at 1344 (citing *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559

23  F.3d 1308, 1312 (Fed. Cir. 2009); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed.

24  Cir. 1998)). "[A] court may determine infringement on summary judgment 'when no

25  reasonable jury could find that every limitation recited in the properly construed claim

26  either is or is not found in the accused device.'" *Innovention Toys, LLC v. MGA Entmn't,*

27  *Inc.*, 637 F.3d 1314, 1319 (Fed. Cir. 2011) (quoting *Bai*, 160 F.3d at 1353). Thus, at the

28  summary judgment stage, the Court "must determine whether, after resolving

reasonable factual inferences in favor of the patentee . . . that no reasonable jury could find infringement." *Crown Packaging*, 559 F.3d at 1312 (quoting *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000)).

## III.   ARGUMENT

### A.   Pavemetrics Fails to Address Tetra Tech's Evidence of Infringement, and Thus Fails to Meet its Burden under Rule 56

As Pavemetrics acknowledges (Mot. 12), it "has the initial responsibility of identifying the legal basis of its motion, and of pointing to those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). Pavemetrics is required to either provide "evidence that would preclude a finding of infringement," or show that "the evidence on file fails to establish a material issue of fact essential to the patentee's case." *Id*. Pavemetrics fails to do either.

At its core, Pavemetrics' motion simply relies on self-serving allegations from its own witness, all while ignoring critical portions of Tetra Tech's evidence, such as the LRAIL source code. But Pavemetrics cannot point out the absence of a genuine issue of material fact by ignoring critical record evidence. *See, e.g.*, *id.*; *Celotex*, 477 U.S. at 323 ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (quoting Fed. R. Civ. P. Rule 56). Pavemetrics fails to meet its burden under Rule 56, and thus, its motion should be denied on this basis alone.

Pavemetrics' motion otherwise improperly challenges Tetra Tech's reliance on Pavemetrics' own LRAIL user manuals, technical reports, presentations, and other technical documents. Pavemetrics claims, without support, that these technical documents were created to be "customer friendly." *See* Hébert Decl., ¶ 39. Regardless

of whether these technical documents purport to be "customer friendly" (whatever that term should mean), any attempt by Pavemetrics to distance itself from *its own* words and descriptions contained in these documents should be rejected. Indeed, Pavemetrics' self-serving testimony contradicting its own technical documents cannot be credited at the summary judgment phase, and merely creates a triable issue of fact for a jury. *Ethicon Endo-Surgery, Inc. v. Covidien, Inc*., 796 F.3d 1312 (Fed. Cir. 2015) ("[S]elf-serving testimony from [the accused infringer's] witnesses about the purported goal of its product design does not negate the evidence in the record … supporting the possible conclusion that the [accused devices infringed]"); *Amdocs (Israel) Ltd. v. Openet Telecom, Inc*., 761 F.3d 1329, 1341 (Fed. Cir. 2014) (finding that "documentary evidence describing the structure and operation of the accused products creates genuine factual issues" regarding infringement, and that the District Court "failed to make all reasonable inferences supported by the record" in favor of the patentee); *Hid Glob. Corp. v. Farpointe Data, Inc.,* No. SACV 10- 1954-JVS-RNBx, 2012 WL 13018341, at *4 (C.D. Cal. Apr. 13, 2012) (finding a genuine issue of material fact where declaration testimony from Farpointe's President "appear[ed] to be inconsistent" with data sheets for the accused devices).

Pavemetrics' LRAIL user manuals, for example, are specifically intended to explain to its customers how to use and understand the LRAIL software. Parker Ex. 17 at 181 ("The aim of this manual is to explain how to utilize each [function], its expected inputs as well as outputs," such that end-users (referred to as "integrators") can "build their own custom applications for field data collection as well as office processing."); Morellas Decl., ¶30. These LRAIL user manuals, among other evidence, support Tetra Tech's factual basis that the LRAIL practices the relevant claim elements. Parker Ex. 17 at 189 (referring to the Fake3D image generated by the LRAIL as "[a] mix of both the intensity and range images"); Parker Ex. 18 at 195 (Fake3D image is results "from the merging of both the intensity and range images"). The LRAIL user manuals are "inconsistent" with the testimony of Dr. Hébert, and thus "there is a genuine issue" of

fact that is not suitable for determination at the summary judgement phase. *Hid Glob*, 2012 WL 13018341, at *4.

**B.      Tetra Tech's Evidence Establishes a Factual Basis for its Claim of Infringement of the '293 Patent**

Tetra Tech has presented evidence in its infringement contentions that establishes that the LRAIL embodies all elements of the claims at issue. For the purposes of this motion, however, Tetra Tech will only address the elements challenged by Pavemetrics: (1) generating a track elevation map / three dimensional elevation map; and (2) identifying a railway track feature from the track elevation map / three dimensional elevation map. While expert reports are not due until February 7, 2022 (ECF 118 at 2), Tetra Tech's evidence and supporting expert testimony from Dr. Morellas submitted with this paper provide a factual basis that the LRAIL includes each of these claim elements. Therefore, summary judgment is inappropriate. *See, e.g.*, *Twin Rivers Eng'g, Inc. v. Fieldpiece Instruments, Inc*., 2018 WL 6038277, at *11 (C.D. Cal. Apr. 24, 2018) ("Plaintiff has provid[ed] the Court with evidence in the form of expert testimony explaining that the accused products include [the relevant claim elements], and this is sufficient to render summary judgment of this issue inappropriate) (citing *Crown Packaging Tech., Inc. v. Ball Metal Beverage Container Corp*., 635 F.3d 1373, 1384 (Fed. Cir. 2011); *Leggett & Platt, Inc. v. Hickory Springs Mfg. Co*., 285 F.3d 1353, 1362 (Fed. Cir. 2002)).

**1.      Tetra Tech's Evidence Supports a Finding That Pavemetrics' LRAIL Generates a "Track Elevation Map" / "Three Dimensional Elevation Map"**

Tetra Tech's infringement contentions[1] cite to three images generated by

---

[1] Pavemetrics does not address Tetra Tech's Third Supplemental Infringement Contentions, which were served on January 14, 2022, after Pavemetrics' motion was filed. Tetra Tech does not believe the Third Supplemental Infringement Contentions materially impacts the present motion because the evidence presented in both Tetra

6

Pavemetrics' LRAIL to demonstrate that the LRAIL meets the "track elevation map" and "three dimensional elevation map" claim elements. Those three images are (1) the "Fake3D" image evidenced in Pavemetrics' source code, (2) the "Combined Result" image described in numerous Pavemetrics materials, and (3) the "Mixed" image evidenced in Pavemetrics' source code. As the evidence shows, and Dr. Morellas confirms, all three images support Tetra Tech's factual basis that the LRAIL generates a "track elevation map" and a "three dimensional elevation map."

### a.    Fake3D Image

The Fake3D image (also referred to in Pavemetrics' materials as a "3D" image) is an image that is generated by the LRAIL source code using both elevation and intensity data. Dr. Morellas confirms this based on his detailed analysis of the LRAIL source code. Morellas Decl., ¶¶21-29. As explained by Dr. Morellas, the LRAIL source code creates the Fake3D image by combining intensity data, elevation data, and light data, such that the output image is "a representation of elevation, intensity, and light data." Morellas Decl., ¶¶28. Thus, under the Court's construction, the Fake3D image generated by the LRAIL, and evidenced by its source code, embodies a "track elevation map" and "three dimensional elevation map."

Unlike the technical analysis provided by Dr. Morellas, nowhere does Pavemetrics in its brief or supporting declaration address the relevant source code relating to Fake3D images. *See generally*, Mot. and Hébert Decl. Instead, Pavemetrics' witness summarily concludes that he has "examined the relevant source code and confirmed" that the Fake3D image does not "contain range [i.e., elevation] data." Hébert Decl., at ¶37. Pavemetrics' witness also makes self-serving and unsupported

---

Tech's Second and Third Supplemental Infringement Contentions demonstrate infringement of the claims at issue. Nonetheless, Tetra Tech submits the relevant portions of Tetra Tech's Third Supplemental Infringement Contentions as Parker Ex. 10.

statements that the Fake3D image is "an intensity image that is enhanced by artificial lighting sources to appear 3d" and that it "does not contain elevation data." Mot. 15 (citing Hébert Decl., ¶¶35-37). But self-serving and conclusory statements cannot show an absence of a genuine issue of material fact. *Ethicon Endo-Surgery*, 796 F.3d at 1312; *Amdocs*, 761 F.3d at 1341; *Hid Glob.,* 2012 WL 13018341, at *4. And, at most, this is competing testimony that raises a triable issue of material fact.

Furthermore, any attempt by Pavemetrics to cure this defect in its Reply should be rejected and stricken. *See Gadda v. State Bar of Cal*., 511 F.3d 933, 937 n.2 (9th Cir. 2007) ("It is well established that issues cannot be raised for the first time in a reply brief"); *Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers"); *see also Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996). Pavemetrics had the opportunity to meaningfully address and analyze its own LRAIL source code that was identified in Tetra Tech's infringement contentions. Pavemetrics declined to do so.

Dr. Morellas' interpretation of the LRAIL source code is further supported by Pavemetrics' own technical documents that describe the operation of the LRAIL. Morellas Decl., ¶¶30-32. For example, Pavemetrics' LRAIL Analyser Library User Manual describes the Fake3D image as "[a] ***mix*** of both the intensity and range images." Parker Ex. 17 at 189 (emphasis added). Likewise, Pavemetrics' LCMS Hardware & Software Installation Manual describes the Fake3D image as resulting "from the ***merging*** of both the intensity and range images." Parker Ex. 18 at 195 (emphasis added). As confirmed by Pavemetrics' witnesses, these user manuals are provided to customers to instruct them on how to operate the LRAIL and its functions. *See* Parker Ex. 13, Laurent Tr., 98:17-24 (explaining that an integrator could use the information in the LRAIL Analyser Library User Manual "to access the code"), 111:17-21 (stating that the purpose of the LCMS Hardware & Software Installation Manual is "to tell people how to install the sensors for integrators, if they want to take the system and

install them and use the sensors and software"); Parker Ex. 15, Talbot Tr., 164:11-14 (stating that everything on how to use the LRAIL acquisition system is "explained in the manual"), 176:21-177:3 (explaining that the LRAIL Analyser Library User Manual "[e]xplain[s] how to use the different parameters and modules").

In addition, Pavemetrics' technical reports from its ongoing projects with the Federal Railroad Administration (FRA) describe the LRAIL's ability to "combine" captured elevation and intensity data. Parker Ex. 19 at 207.



**Figure 6. Colorized Combination of Intensity and Range Imaging (LAS file)**

Moreover, various Pavemetrics presentations describe the LRAIL's ability to combine elevation and intensity data into a single representation for analysis. One such presentation was prepared for the American Railway Engineering and Maintenance-of-Way Association ("AREMA") 2021 Conference. *See* Parker Ex. 20 at 210-21. Pavemetrics expected that "potential customers" of the LRAIL, including "Class I railroads" and "integrators" would attend the AREMA 2021 Conference. *See* Parker Ex. 13, Laurent Tr., 77:3-24. As shown below, in that presentation, Pavemetrics highlights the LRAIL technology's "unique" ability to "combine[] ***for analysis***" a 2D intensity scan (which "[m]eaures the intensity of laser light reflected by surface") and a 3D range scan (which measures "[e]levation/depth"). *See* Parker Ex. 20 at 214-15 (emphasis and annotations added); ); *see also* Parker Ex. 30 at 341; Parker Ex. 29 at 327 (touting the combined elevation and intensity image in other Pavemetrics

9

presentations, which likewise characterize it as a "Combined Result").





Pavemetrics, however, criticizes Tetra Tech's reliance on the LRAIL's Combined Result images. Pavemetrics asserts that Combined Result images are generated by its 3D Viewer Software, which purportedly is not part of the LRAIL processing software and is otherwise not provided to customers for railway applications.

10

*See* Hébert Decl., ¶¶25–31. Even if this were true, the Combined Result image further confirms that the Fake3D images—which, as evidenced by the source code, combine intensity data, elevation data, and light data—are representations of both elevation and intensity data. Specifically, Pavemetrics' user manuals describe the Fake3D images as "similar to the 3D images created by the LcmsDataViewer3D software." Parker Ex. 18 at 195. And, Pavemetrics does not dispute that the Combined Result images created by the 3D Viewer software, like the image above, is a combination of elevation and intensity data. Thus, it logically follows that the Fake3D images are "similar" to the 3D images in that they utilize and include elevation and intensity data (by merging, mixing, or combining elevation and intensity images) to generate representations of both elevation and intensity data. Morellas Decl., ¶36; Parker Ex. 18 at 195; Parker Ex. 17 at 189; Parker Ex. 20 at 214.

Dr. Morellas' interpretation of the source code is also consistent with testimony from Pavemetrics' witnesses. For example, Mr. Thanh Nguyen, one of Pavemetrics' software developers, testified that elevation data is used to create the "shadows" shown in the Fake3D images. *See* Parker Ex. 14, Nguyen Tr., 39:6-7 ("[W]e use the information from the range data to create the shadow"), 95:21-22 ("The shadow is create[d] based on the range information that we have"). In addition, Mr. Laurent, Pavemetrics' CTO and Vice President for Business Development, testified that the Fake3D image is "a mix" and is "an intensity image that's overlaid on a 3D -- on 3D data." Parker Ex. 13, Laurent Tr., 103:24–104:6. Accordingly, by Pavemetrics' own witness testimony, the Fake3D images are created from a "mix" of elevation (3D) data and intensity data, and the "shadows," which contain elevation data, create a 3D effect. This is consistent with Dr. Morellas' analysis of the LRAIL source code that demonstrates that such "shadows" are the combination of the elevation and light source vectors, which are then multiplied with the intensity data to generate the three-dimensional elevation and intensity representation. Morellas Decl., ¶39.

Moreover, Dr. Hébert also acknowledges in his declaration that elevation data is

11

used to generate Fake3D images. *See* Hébert Decl., ¶40 ("[T]he source code uses range data to determine where to create shadows with artificial light sources on the intensity image"). Thus, even based on Dr. Hébert's own interpretation, the Fake3D images include and are representations of both elevation and intensity data.

Finally, other Pavemetrics materials describing the LRAIL's convolutional neural networks further support Dr. Morellas' interpretation and the factual basis demonstrating that the LRAIL embodies the "track elevation map" and "three dimensional elevation map" claim elements. For example, Pavemetrics routinely refers to the training of Fake3D images for its convolutional neural networks as "blend[ing]" and "including both intensity and range" data. Parker Ex. 21 at 222 ("The training sets consist of synthesized 3D images which blend intensity and range data"); *Id*. at 226 (same); *Id*. at 227 (same); *Id*. at 231 ("We synthesis a kind of 3D image that including both intensity and range information to use for training").

For these reasons, Pavemetrics cannot show the absence of a genuine issue of material fact regarding the LRAIL's generation of Fake3D images. Tetra Tech's evidence, including Pavemetrics' own source code, technical materials, admissions by its own witnesses, and the expert testimony of Dr. Morellas, supports a finding that the Fake3D images generated by the LRAIL source code constitute a "track elevation map" / "three dimensional elevation map," as construed by the Court.

### b.    Mixed Image

Like the Fake3D image, the Mixed image is an image that is generated by the LRAIL source code using both elevation and intensity data. Morellas Decl., ¶¶42-45. Pavemetrics does not dispute this. *See* Mot. 16; Hébert Decl., ¶¶42-43. Nor does Pavemetrics dispute that the Mixed image embodies a "track elevation map" and "three dimensional elevation map." *Id*.

Instead, Pavemetrics again relies on unsupported witness testimony that it "never used a Mixed image to process any data for its customers." Hébert Decl., ¶42. However, whether or not Pavemetrics itself used the Mixed image to process data for its customers

is not dispositive of Tetra Tech's claims of infringement. *See* ECF 79 (alleging both system and method claims, as well as direct and induced infringement). In addition, contrary to Pavemetrics' allegations, Tetra Tech's evidence demonstrates that the Mixed image functions are present in LRAIL software versions that Pavemetrics delivered to its U.S. customers. Morellas Decl., ¶46.

Pavemetrics does not even address one of the source code versions delivered to a U.S. customer, CSX. Morellas Decl., ¶47. As discussed above, Pavemetrics' failure to address this relevant evidence supporting Tetra Tech's infringement claims is reason alone to deny Pavemetrics' motion on this issue. *Novartis*, 271 F.3d at 1046. For the LRAIL software version delivered to its other U.S. customer, Pavemetrics alleges it "was not configured to generate" a Mixed image. Hébert Decl., ¶43. But neither Pavemetrics nor its witness addresses the relevant LRAIL source code to reach this conclusion. Instead, Pavemetrics alleges, without support, that Pavemetrics would need to make "multiple modifications to its software" and "provide a neural network model trained with Mixed images" to identify features from the Mixed images. Mot. 16; Hébert Decl., ¶43. But, as evidenced by the LRAIL source code and supporting testimony from Dr. Morellas, who, unlike Pavemetrics, actually analyzed the LRAIL source code, the LRAIL system that was delivered to Pavemetrics' customers "is configured to run an algorithm" including the step of generating the Mixed image in accordance with claim 1 of the '293 patent. Morellas Decl., ¶47. Indeed, according to Dr. Morellas' analysis, and contrary to Pavemetrics' assertions, the LRAIL generates the Mixed image independent of the deep neural network, as the source code itself evidences that the Mixed image is generated without reference to "a neural network model" or a deep neural network. Morellas Decl., ¶48.

The Court construed "is configured to run an algorithm" to mean "is programmed to run an algorithm without the need to rebuild, rewrite or recompile the code for, or redesign any of that hardware or software." ECF 103 at 26. And, as explained by Dr. Morellas, because the source code used for the Mixed image feature discussed above

was part of the LRAIL software versions that Pavemetrics provided to its customers, there would have been no need to rebuild, rewrite, recompile, or redesign the software to generate the Mixed images using the algorithms identified in the source code. Morellas Decl., ¶49. For example, Pavemetrics describes its sales of LRAIL systems in the U.S. as "turnkey sales," including "(1) LRAIL hardware, (2) LRAIL acquisition software, and (3) LRAIL processing software." Hébert Decl., ¶4. Thus, as Dr. Morellas explains, that the LRAIL systems sold in the U.S. were "turnkey" denotes that the LRAIL systems and their software were ready for immediate use "without the need to rebuild, rewrite or recompile the code for, or redesign any of that hardware or software." Morellas Decl., ¶49.

Furthermore, Dr. Morellas explains that the LRAIL could execute the source code identified in Tetra Tech's infringement contentions, and that nothing would need to be rebuilt, rewritten, recompiled, or redesigned in the source code for the LRAIL to run the algorithms to generate the Mixed image. Morellas Decl., ¶50. This is supported by Pavemetrics' own representations concerning the LRAIL source code versions delivered to its U.S. customers as being "made *available for execution* by the processor of a Pavemetrics railway inspection product (i.e., LRAIL)." Parker Ex. 36 at 399-401 (emphasis added); Morellas Decl., ¶50. As explained above, the LRAIL software versions at issue include the source code for generating Mixed images. Morellas Decl., ¶50. Moreover, in response to discovery requests seeking a description of any "restriction to the execution or use of" the software versions at issue, Pavemetrics did not identify or describe any such restrictions, let alone specify any restrictions to the Mixed image feature. Parker Ex. 36 at 401-02; Morellas Decl., ¶50.

The self-serving and conclusory statements made by Pavemetrics witness cannot negate the evidence in Pavemetrics' own source code or its previous representations regarding this issue. Therefore, Pavemetrics also cannot show the absence of a genuine issue of material fact regarding the LRAIL's generation of Mixed images. Tetra Tech's evidence, including Pavemetrics' own source code and the testimony of Dr. Morellas,

1  establishes that the Mixed images generated by the LRAIL source code also embody a

2  "track elevation map" / "three dimensional elevation map," as construed by the Court.

3      **2.**    **Tetra Tech's Evidence Supports a Finding That Pavemetrics'**

4             **LRAIL Identifies Railway Track Features from the "Track**

5             **Elevation Map" / "Three Dimensional Elevation Map"**

6        Pavemetrics' motion addresses some, *but not all*, of the LRAIL algorithms cited

7  in Tetra Tech's infringement contentions for the claimed step of identifying a railway

8  track bed feature from a "track elevation map" or "three dimensional elevation map."

9  As discussed above, Pavemetrics cannot meet its burden to show an absence of a

10  genuine issue of material fact by ignoring or summarily dismissing evidence cited by

11  Tetra Tech to support its claims of infringement. *Novartis*, 271 F.3d at 1046. Even based

12  on the LRAIL algorithms that Pavemetrics does address in its motion, it cannot show

13  that "the evidence on file fails to establish a material issue of fact essential to the

14  patentee's case." *Id.*

15        Tetra Tech's infringement contentions point to multiple algorithms used by

16  Pavemetrics' LRAIL to identify a railway track bed feature from a "track elevation

17  map" and "three dimensional elevation map," including: (1) identifying features by

18  processing the Fake3D images using convolutional neural networks, (2) identifying

19  features from the Fake3D images by overlaying on the Fake3D images identifiers

20  detected from the analysis of elevation data, and (3) identifying features by processing

21  the Mixed images using convolutional neural networks. Each of these LRAIL

22  algorithms includes the steps of "defining an appropriate gradient neighborhood

23  representing a small 2D track section over which differential vertical measurements are

24  calculated" and "moving the gradient neighborhood like a sliding window over the 3D

25  elevation data."

26  ///

27  ///

28  ///

1
2

### a.   Identifying Features from the Fake3D Images Using Convolutional Neural Networks

3   One LRAIL algorithm cited in Tetra Tech's infringement contentions identifies
4   railway track bed features from the generated Fake3D images by using convolutional
5   neural networks ("CNN"), which Pavemetrics has implemented in its source code since
6   2018. Morellas Decl., ¶58; Parker Ex. 19 at 200; Parker Ex. 20 at 212; Parker Ex. 22 at
7   232; Parker Ex. 23 at 237; Parker Ex. 24 at 264-65; Parker Ex. 25 at 272; Parker Ex. 26
8   at 293-94; Parker Ex. 19 at 209; Parker Ex. 20 at 213. According to Dr. Morellas, the
9   LRAIL source code inputs the Fake3D image into convolutional neural networks that
10  are specialized to identify a type of railway track bed feature, including fasteners,
11  spikes, and tie plates. Morellas Decl., ¶59.

12  Dr. Morellas explains that the LRAIL's convolutional neural network comprises
13  a convolutional layer that performs a convolution over an input image. Morellas Decl.,
14  ¶¶58-69. This input image includes, for example, the Fake3D image that is a
15  representation of elevation and intensity data. *Id*. Pavemetrics' technical materials
16  describe its convolutional neural network as using a "5x5 convolution layer," or may
17  use a convolutional layer of a different size. Parker Ex. 24 at 264; Parker Ex. 23 at 252.
18  Furthermore, Pavemetrics' technical documents describe its convolutional neural
19  network as defining an appropriate gradient neighborhood having a zone of limited area
20  of "35x35" in some applications (and a zone of limited area of "151x151" in other
21  applications). *See* Parker Ex. 25 at 279-80; Parker Ex. 23 at 252; Parker Ex. 24 at 264-
22  65. According to Dr. Morellas, these 5x5, 35x35, or 151x151 filters slide or convolve,
23  and thus move like a sliding window over the Fake3D image. Morellas Decl., ¶69.
24  Specifically, the filters are applied sequentially and completely to the Fake3D image,
25  which includes, among other things, elevation and intensity data, to label "[e]ach 35 x
26  35" track section (or "151 x 151") as a track bed feature such as a "fastener," "ballast,"
27  "wood," or "concrete." Morellas Decl., ¶69; Parker Ex. 25 at 280; Parker Ex. 23 at 252;
28  Parker Ex. 24 at 264. The image below summarizes this process, showing the generation

16

1  of "sub-image[s]" from the "capture[d]" track, which are then analyzed sequentially

2  and completely to identify railway track bed features. Parker Ex. 25 at 280; Parker Ex.

3  23 at 252; Parker Ex. 24 at 265.



*Figure 13 - Illustration of Processing Steps*

4

5

6

7

8

9      The operation of the LRAIL's convolutional layer also computes differential

10 vertical measurements by the convolutions performed over the filter. Morellas Decl.,

11 ¶70. This is further supported by Pavemetrics' witness, who concedes that "[a] gradient

12 operator is a weighted convolution operator using the neighboring pixels for the

13 operation." Hébert Decl., ¶¶ 58, 72.

14      Pavemetrics fails to address this convolutional neural network algorithm or the

15 related source code cited in Tetra Tech's infringement contentions. Instead,

16 Pavemetrics' witness summarily dismisses this evidence by claiming that the Fake3D

17 images do not "contain elevation data," and thus, the neural network algorithm cannot

18 identify a feature "by moving a gradient neighborhood over 3D elevation data." Hébert

19 Decl., ¶48. As established above, however, this is incorrect. Tetra Tech's evidence,

20 including the LRAIL source code, Pavemetrics' technical documents, and testimony

21 from Pavemetrics' own witnesses and Dr. Morellas, demonstrate that the Fake3D

22 images do in fact contain elevation data. *Supra*, III.B.1.a. Accordingly, the

23 convolutional neural networks that the LRAIL uses on the Fake3D images identify track

24 bed features "by moving a gradient neighborhood over 3D elevation data." Morellas

25 Decl., ¶¶59-71. Pavemetrics cannot rely solely on the self-serving statements from its

26 witness, while ignoring the relevant source code and technical documents that

27 contradict those statements, to meet its burden to show the absence of a genuine issue

28 of material fact. *Ethicon Endo-Surgery*, 796 F.3d at 1312; *Amdocs*, 761 F.3d at 1341;

See, *Hid Glob.,* 2012 WL 13018341, at *4.

Pavemetrics does not dispute in its brief that the LRAIL uses a convolutional neural network to identify track bed features. Nor does Pavemetrics dispute in its brief that the LRAIL uses the convolutional neural network to identify features from the Fake3D image. Instead, Pavemetrics' witness, Dr. Hébert, makes an unsupported claim—which is not even addressed in Pavemetrics' brief—that Pavemetrics "never implemented" in the LRAIL source code the deep neural network described in one of the many Pavemetrics' technical papers Tetra Tech cited in its infringement contentions. Hébert Decl., ¶73. Another Pavemetrics witness, Mr. Laurent, however, previously testified that the neural network algorithms used by Pavemetrics "[s]ince at least mid-2019" and "for all LRAIL systems in the United States" are described in other Pavemetrics technical materials with much of the same descriptions of the LRAIL convolutional neural network as the document that Dr. Hébert now attempts to discard. ECF 33 at ¶54 (citing to ECF 17-12 and 17-13); Parker Ex. 13, Laurent Tr., 40:1-6; Parker Ex. 15, Talbot Tr., 111:22-112:6; *see also* Morellas Decl., ¶¶60-64. Regardless, the totality of Tetra Tech's evidence, including the LRAIL source code, Pavemetrics' technical materials, and Dr. Morellas' testimony, demonstrates that the LRAIL embodies the claimed "identifying" element by utilizing the Fake3D image with the convolutional neural network. *See* Morellas Decl., ¶¶59-71.

Because Pavemetrics has not addressed any of the convolutional neural network algorithms presented in Tetra Tech's infringement contentions, it cannot show an absence of a genuine issue of material fact on this issue. Further, even if Pavemetrics had addressed the convolutional neural network algorithms, it would be unable to show that Tetra Tech's evidence fails to support a factual basis for infringement.

**b.** **Identifying Features from the Fake3D Images Using Overlay Results**

Another way that Pavemetrics' LRAIL identifies a railway track bed feature from the Fake3D image is by overlaying identifiers on features, such as rails, ties, tie cracks,

18

1  fasteners, and ballasts, in the Fake3D image. This is depicted in the images below,

2  which demonstrate that a user may choose to overlay detected railway track bed features

3  onto the Fake3D ("3D") images by using the "Save Overlay Image – 3D" option. Hébert

4  Decl. ¶¶33, 38 (annotations added); Parker Ex. 32 at 353; Parker Ex. 33 at 354.



Original "3D" Map                "3D" Map with Overlays

21      Pavemetrics argues that features are not identified from a Fake3D image because

22  "[o]nly after LRAIL identified the features does it create a result image and overlay the

23  features identified." Hébert Decl., ¶47. However, Pavemetrics overlooks the fact that

24  Fake3D images are generated prior to any processing. According to Dr. Morellas, this

25  is clear from the interface of the LRAIL processing software, which generates the

26  Fake3D ("3D") image immediately upon loading a raw data file (called a "FIS" file)

27  and prior to any processing of that FIS file to identify railway track bed features.

28  Morellas Decl., ¶¶73-76.

Pavemetrics also argues that features are not identified from a Fake3D image because the features are identified "from either an intensity image or a range image." Hébert Decl., ¶47. However, Pavemetrics misinterprets the language of the claims. Independent claims 1 and 22 of the '293 patent recite moving the appropriate gradient neighborhood like a sliding window over "the 3D elevation data," not the "track elevation map" or the "three dimensional elevation map." Accordingly, the LRAIL's identification of features from the Fake3D images, which includes the step of sliding an appropriate gradient neighborhood over the elevation data, meets the contested claim element. Morellas Decl., ¶77.

Moreover, Tetra Tech's infringement contentions point to certain LRAIL algorithms where features are identified by defining an appropriate gradient neighborhood over which differential vertical measurements are calculated and moving the gradient neighborhood like a sliding window over the 3D elevation data (i.e., range data). Pavemetrics refers to these as: (1) Accused Algorithm 1: Fine tuning the "rail mask," (2) Accused Algorithm 2: Identifying joint bars, and (3) Accused Algorithm 3: Calculating ballast volume. Hébert Decl., ¶¶51-72.

Pavemetrics' primary criticism is that these algorithms "analyze only elevation data," and not "both elevation and intensity data." Hébert Decl., ¶50. Again, however, the claims recite sliding an appropriate gradient neighborhood over "the 3D elevation data," not the "track elevation map" or the "three dimensional elevation map." The LRAIL does so and therefore embodies this claimed feature.

For example, Dr. Morellas explains with respect to Accused Algorithm 2 that the LRAIL defines an appropriate gradient neighborhood representing a small 2D track section having a width and a height, which represents a zone of limited area. Morellas Decl., ¶80. According to Dr. Morellas, the appropriate gradient neighborhood is moved like a sliding window over the 3D elevation data, as it is applied sequentially and completely to the 3D elevation data using a "for" loop, which slides in the y-axis. Morellas Decl., ¶80. The algorithm computes the mean elevation value at each position

of the appropriate gradient neighborhood and compares it to a particular elevation value from the top of the rail (i.e., a differential vertical measurement) to identify a joint bar candidate. Morellas Decl., ¶80.

Pavemetrics further argues that this algorithm does not map to the claims because it "never measures a gradient within ippRoiSize." Hébert Decl., ¶64. However, independent claims 1 and 22 recite "an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated," which is consistent with the description of the "gradient neighborhood" in the specification. ECF 103 at 13. Further, Pavemetrics agrees that the algorithm computes the average elevation value within ippRoiSize plus an elevation threshold. Hébert Decl., ¶64. Thus, according to Dr. Morellas, this is a differential vertical measurement because it constitutes differences in elevation within the neighborhood, and therefore embodies the disputed claim element. Morellas Decl., ¶82.

Pavemetrics' misinterpretation of the claims cannot establish an absence of a genuine issue of material fact on this issue. Rather, Tetra Tech's evidence, supported by the expert testimony of Dr. Morellas, demonstrates that Pavemetrics' overlay algorithms embody the identifying step of the claims at issue.

### c. Identifying Features from the Mixed Images Using Convolutional Neural Networks

Pavemetrics' LRAIL also identifies railway track bed features from the Mixed images by processing the Mixed images using its convolutional neural networks. Like with Fake3D images, the LRAIL source code also identifies features from the Mixed images by inputting a Mixed image into the convolutional neural network specialized to identify a type of feature, including fasteners, spikes, and tie plates. Morellas Decl., ¶¶84-85. Thus, similar to Dr. Morellas' analysis discussed above with respect to Fake3D images, Pavemetrics' use of convolutional neural networks to process Mixed images results in the identification of railway track bed features from the Mixed image by performing steps including defining an appropriate gradient neighborhood over

which differential vertical measurements are calculated and moving the gradient neighborhood like a sliding window over the Mixed image that represents and contains both elevation and intensity. Morellas Decl., ¶86. The same analysis discussed above applies to the Mixed images. *Id*. Therefore, the LRAIL's convolutional neural network algorithms utilizing the Mixed images also meet the "identifying" step and the included sub-steps. *Id*.

Rather than address the evidence cited in Tetra Tech's infringement contentions, Pavemetrics again relies on unsupported statements from its own witness to argue that, in order for the algorithms in Pavemetrics' source code to function properly, "Pavemetrics would have had to provide a neural network model trained with Mixed images," and that "[s]uch a neural network model does not exist." Mot. 16; Hébert Decl., ¶¶43, 49. However, as discussed above, Pavemetrics' argument is limited to one particular version of LRAIL source code. *Supra*, III.B.1.b; Morellas Decl., ¶¶87-88. Pavemetrics ignores the other relevant version of LRAIL source code delivered to another U.S. customer.

Further, according to Dr. Morellas, both source code versions that were delivered to Pavemetrics' customers are "configured to run an algorithm" including the step of identifying features from the Mixed image in accordance with claim 1 of the '293 patent. Morellas Decl., ¶89. And, because the source code used for the Mixed image feature discussed above was part of the LRAIL software versions that Pavemetrics provided to its customers, there would have been no need to rebuild, rewrite, recompile, or redesign the software to identify features from the Mixed images using the algorithms identified in the source code. *Id*. This is supported by the fact that the LRAIL sales were "turnkey," which denotes that the LRAIL systems and their software were ready for immediate use "without the need to rebuild, rewrite or recompile the code for, or redesign any of that hardware or software." *Id*; Hébert Decl., ¶4. This is further supported by the fact that the LRAIL source code delivered to its U.S. customers were made "available for execution" and did not have any identified restriction to its

1   execution or use. Parker Ex. 36 at 399–402.

2       Finally, according to Dr. Morellas, even if there is no model trained specifically

3   with Mixed images, the LRAIL system is still configured to perform the claimed

4   elements based on the source code that is present in the LRAIL software. Morellas

5   Decl., ¶90. As Dr. Morellas demonstrates, the LRAIL does not differentiate between

6   models trained using different types of images (e.g., Fake3D vs. Mixed images).

7   Morellas Decl., ¶90. Indeed, Pavemetrics' technical manuals explain that there is a

8   single path for the location of the model when a user utilizes convolutional neural

9   networks. Morellas Decl., ¶91. Moreover, the LRAIL source code itself shows that it

10   uses the same convolutional neural network to identify a feature with both the Fake3D

11   images and the Mixed images. Morellas Decl., ¶90.

12      Accordingly, because Pavemetrics again has failed to address the convolutional

13   neural network algorithms presented in Tetra Tech's infringement contentions, and has

14   presented no evidence that would preclude a finding of infringement, it cannot show an

15   absence of a genuine issue of material fact on this issue.

16   **IV.   DOCTRINE OF EQUIVALENTS IS NOT AT ISSUE IN THIS MOTION**

17      Pavemetrics' motion spends substantial space addressing doctrine of equivalents

18   arguments which have not been made by Tetra Tech at this time. Mot. 18-20. While

19   Tetra Tech disagrees with Pavemetrics' contentions and characterizations concerning

20   the doctrine of equivalents, that issue is moot and not relevant for purposes of this

21   motion. Tetra Tech's evidence at issue in the present motion supports a finding that the

22   LRAIL literally infringes the '293 patent claims.

23   **V.   TETRA TECH NEVER REQUESTED ADDITIONAL FACT DISCOVERY**

24      Despite Pavemetrics' suggestion that Tetra Tech requires additional fact

25   discovery to establish a factual basis for infringement (Mot. 20-21), Tetra Tech has

26   never made such a request. Indeed, fact discovery was completed as of January 20,

27   2022, and no request for additional fact discovery was made by Tetra Tech. This is

28   because Tetra Tech has already presented a detailed factual basis for infringement of

23

the '293 patent and does not need further fact discovery to show infringement. Pavemetrics' complaints about additional fact discovery are moot.

Pavemetrics incorrectly states that Tetra Tech requested additional fact discovery as its basis to oppose the present motion. Mot. 20. Instead, when Pavemetrics approached Tetra Tech in early December about its plans to file a summary judgment motion of noninfringement of the '293 patent, Tetra Tech stated that such a motion was premature given that discovery was ongoing and expert discovery had not yet begun. Laquer Ex. 9. At that time, no depositions had been taken, and Pavemetrics was still making additional versions of source code available for inspection that had not previously been made available. *Id*. Tetra Tech had also informed Pavemetrics of its plans to amend its infringement contentions in light of the Court's recent claim construction order. *Id*. Tetra Tech reiterated this to Pavemetrics during the meet and confer on December 14, 2021, along with its general disagreement with Pavemetrics' contentions that there was no factual basis for infringement of the '293 patent. Those disagreements are reflected in the present Opposition and supporting papers, including the declaration of Dr. Morellas.

After waiting several weeks, and until fact discovery was nearly closed, and only after all Pavemetrics' witnesses (including Dr. Hébert) were deposed, Pavemetrics filed the present motion and a declaration from Dr. Hébert alleging new, unsupported details about its noninfringement positions. Indeed, Dr. Hébert was deposed on Friday, January 7, and the present motion along with Dr. Hébert's supporting declaration were filed on Monday, January 10. Yet, despite these questionable tactics, Dr. Hébert's declaration amounts to nothing more than self-serving and conclusory testimony from one of Pavemetrics' own witnesses and therefore carries little weight. Importantly, Dr. Hébert's declaration cannot outweigh Tetra Tech's substantial evidence supporting infringement, including Pavemetrics' source code, technical documents, Pavemetrics' witness testimony, and independent expert testimony, and it certainly cannot show an absence of a genuine dispute of material fact for purposes of summary judgment.

## VI.    CONCLUSION

For the foregoing reasons, Tetra Tech respectfully requests that the Court deny Pavemetrics' motion.

Dated: January 31, 2022

**CLARK HILL LLP**

By: _____

                                Donald L. Ridge

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Kelly S. Horn (*pro hac vice*)
Victor M. Palace (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

*Attorneys for Defendant and Counterclaim Plaintiffs*
*TETRA TECH, INC. AND TETRA TECH TAS INC.*