Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
Raymond Lu (SBN 340,873)
raymond.lu@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TETRA TECH, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | Case No. 2:21-cv-1289-MCS-MMA <br><br> **MEMORANDUM IN SUPPORT OF PAVEMETRICS' MOTION TO STRIKE PORTIONS OF EXPERT REPORT OF DR. VASSILIOS MORELLAS** <br><br> Hearing Date: May 9, 2022 <br> Time: 9:00 am <br> Ctrm: 7C <br><br> Honorable Mark C. Scarsi |


**TABLE OF CONTENTS**

**Page No.**

I. INTRODUCTION ..................................................................................... 1

II. STANDARD FOR ADMISSIBILITY OF EXPERT OPINION .......... 2

III. FACTUAL BACKGROUND .................................................................. 2

    A. Claim 1 of the '293 patent ............................................................ 3

    B. Claim 8 of the '557 patent ............................................................ 4

    C. Dr. Morellas' Opinion Regarding Separate Procesors ................ 5

    D. Dr. Morellas' Opinion Regarding Pavemetrics' Knowledge ..................................................................................... 5

IV. DR. MORELLAS' OPINION REGARDING "THE" SHOULD BE STRICKEN ....................................................................... 7

V. DR. MORELLAS' OPINION REGARDING PAVEMETRICS' KNOWLEDGE SHOULD BE STRICKEN ........... 7

VI. CONCLUSION ......................................................................................... 8

# TABLE OF AUTHORITIES

**Page No(s).**

*Daubert v. Merrell Dow Pharms.*,
    509 U.S. 579 (1993) ..................................................................................... 2

*Commil USA, LLC v. Cisco Sys., Inc.*,
    575 U.S. 632 (2015) ..................................................................................... 7

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999) ..................................................................................... 2

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
    550 F.3d 1356 (Fed. Cir. 2008) ................................................................ 2, 8

*Tech. Consumer Prods., Inc. v. Lighting Sci. Grp. Corp.*,
    955 F.3d 16 (Fed. Cir. 2020) ....................................................................... 7

*United States v. 87.98 Acres of Land*,
    530 F.3d 899 (9th Cir. 2008) .................................................................... 2, 7

*United States v. Hankey*,
    203 F.3d 1160 (9th Cir. 2000) ..................................................................... 2

**OTHER AUTHORITIES**

Federal Rule of Evidence 702 ............................................................... 2, 7, 8

Pavemetrics submits this memorandum in support of its Motion to strike portions of the Initial Expert Report of Dr. Vassilios Morellas Regarding Infringement of U.S. Patent Nos. 10,362,293 and 10,161,557.

## I. INTRODUCTION

Pavemetrics moves to strike two portions of the infringement report of Tetra Tech's expert, Dr. Morellas. First, Pavemetrics moves to strike the portion of Dr. Morellas' report in which he presents legally incorrect claim construction opinions. He ignores the basic principle that a claim's use of words like "the" or "said" refer back to a previously introduced claim term. That is commonly called antecedent basis. For example, claim 1 of the '293 patent recites that a data storage apparatus is in communication with "at least one processor," that at least one sensor is also in communication with "the at least one processor," and that "the at least one processor is configured to run an algorithm for processing three-dimensional surface elevation and intensity data." Dr. Morellas opines that "the at least one processor" in the processing algorithm limitation may be entirely distinct from the "at least one processor" first introduced in the claim's data storage apparatus limitation. Dr. Morellas essentially seeks to improperly rewrite any occurrence of the word "the" appearing before "processor" to instead mean "any." But "the processor" is not "any processor." "The" imposes antecedent basis. Dr. Morellas should not be permitted to mislead the jury with his opinion that contradicts fundamental principles of claim construction.

Second, Pavemetrics moves to strike the portion of Dr. Morellas' report in which he opines regarding Pavemetrics' knowledge to support Tetra Tech's charge of indirect infringement. Dr. Morellas admits that he considers himself to be only a technical expert in the field of computer or machine vision, and that he is not qualified to present opinions regarding others' state of mind. He also admits that he has no firsthand knowledge regarding Pavemetrics' knowledge. He

admittedly lacks any specialized knowledge that would help the trier of fact to understand the evidence regarding what Pavemetrics knew or intended.

## II. STANDARD FOR ADMISSIBILITY OF EXPERT OPINION

Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; . . .

District courts have a "basic gatekeeping obligation" to ensure expert testimony "is not only relevant, but reliable." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999) (clarifying that the gatekeeping obligation "applies not only to testimony based on 'scientific knowledge,' but also to testimony based on 'technical' and 'other specialized' knowledge"). Assessing an expert's reliability is a "fact-specific inquiry" that depends on "the nature of the issue at hand, the witness's particular expertise, and the subject of the testimony." *United States v. Hankey*, 203 F.3d 1160, 1168 (9th Cir. 2000) (citations omitted). The proponent of the expert testimony bears the burden of proving its admissibility. *United States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008). "Admitting testimony from a person . . . with no skill in the pertinent art[] serves only to cause mischief and to confuse the factfinder." *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008).

## III. FACTUAL BACKGROUND

Dr. Morellas offers his opinions supporting Tetra Tech's infringement allegations. Dr. Morellas states "I believe that I am well qualified to serve as a technical expert in this matter based upon my educational and work experience,

and specifically, in the field of computer or machine vision." Ex. 1[1] (Morellas Infringement Report ¶11). His deposition in this case was his first. Ex. 2, Morellas Tr. 8:1-2. This is his first time serving as an expert witness. *Id.,* 51:19-21. He spent around 30-40 hours working on his infringement report (*id.,* 131:6-9), which is 467 pages long. Ex. 1. Dr. Morellas admitted that he has not worked on any other patent case where the claims included the word "the." Ex. 2, Tr. 50:25-51:3.

### A. Claim 1 of the '293 patent

Claim 1 of the '293 patent recites:

1. A system for assessing a railway track bed, the system comprising:

    a power source;

    a light emitting apparatus powered by the power source for emitting light energy toward a railway track;

    a data storage apparatus in communication with **at least one processor**;

    at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation and intensity image data of the railway track to be stored in the data storage apparatus, wherein the at least one sensor is in communication with **the at least one processor**; and

    wherein **the at least one processor** is configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the at least one sensor and saved in the data storage apparatus, the algorithm comprising the steps of:

        a. acquiring three dimensional surface elevation and intensity data representative of an area segment of railway track bed;

---

[1] Exhibits 1-4 are attached to the Declaration of Alan G. Laquer filed concurrently herewith.

    b. generating a track elevation map based on the acquired three dimensional data;

    c. identifying a railway track bed feature from the track elevation map further including the steps of:

      i. defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and

      ii. moving the gradient neighborhood like a sliding window over the 3D elevation data using **the processor**; and

    d. storing information corresponding to the identified railway track bed feature in the data storage apparatus.

Ex. 3 at 29:22-55 (emphases added).

## B. **Claim 8 of the '557 patent**

Claim 8 of the '557 patent recites:

8. A method of detecting railroad tie distress using a system for assessing a railway track bed, the method comprising the steps of:

    a. inputting elevation data, longitudinal and transverse elevation map sample resolution data, rail base edge feature coordinates, detected tie bounding box data, and approximate tie surface plane data to **a processor** wherein significant elevations due to the rail heads for each rail have been removed from the elevation data;

    b. comparing ties in the elevation data with a tie surface plane model by calculating the difference between the tie surface elevation data and the tie surface plane model using **the processor**;

    c. identifying tie surface regions with elevations less than a tie surface plane minus a crack depth threshold as tie crack targets using **the processor**; and

    d. determining physical parameters of crack targets using **the processor**.

-4-

Ex. 4 at 29:64-30:16 (emphases added).

### C. **Dr. Morellas' Opinion Regarding Separate Procesors**

Dr. Morellas opines that different processors may satisfy the various claim limitations referring to "the processor" or "the at least one processor." For example, in Paragraph 120 of his report, he opines that "according to the '293 patent, and consistent with the language in claim 1, there can be a single or multiple processors that, individually or collectively, are in communication with the at least one sensor and data storage apparatus, and are configured to identify railway track bed features." Ex. 1, ¶120.

Although Dr. Morellas' report is sometimes vague regarding his interpretation of "the [at least one] processor," he confirmed in his deposition that his opinion is based on his reading of the word "the" as not referring to the same processor introduced earlier in a claim. Ex. 2, Tr. 36:2-53:9. For example, with respect to claim 8 of the '557 patent, he testified that "the processor" referenced in limitation 8(b) is "not necessarily" the same processor mentioned in limitation 8(a). *Id.*, Tr. 36:2-8. As another example, with respect to claim 1 of the '293 patent, Dr. Morellas testified that "the at least one processor" could be a different processor than the "one or more processor" introduced earlier in the claim. *Id.*, Tr. 43:23-45:19. Dr. Morellas believes that, even if the "at least one processor" first introduced by the claim comprises multiple processors, there does not need to be any of those processors in common with what is later referred to in the claim as "the at least one processor." *Id.* at 49:5-50:21. Asked whether "You don't believe that the use of the word 'the' requires that?" Dr. Morellas testified "No, I don't believe so." *Id.* at 50:22-24.

### D. **Dr. Morellas' Opinion Regarding Pavemetrics' Knowledge**

Although the majority of Dr. Morellas' report is directed to his opinions regarding whether use of LRAIL directly infringes the asserted claims, he also opines on indirect infringement.

-5-

In Paragraph 617, Dr. Morellas opines that he "also understand[s] that Tetra Tech has alleged that Pavemetrics, with knowledge of the asserted patents, actively and knowingly induced the infringing acts of its customers, including CSX and AID." Ex. 1, ¶617.

In Paragraph 618, Dr. Morellas opines that Pavemetrics had knowledge of infringement of the asserted patents by the dates of Tetra Tech's notice letters. *Id.*, ¶618.

In Paragraph 619, Dr. Morellas opines that Pavemetrics "has had knowledge or was willfully blind of the asserted patents and their infringement prior to these notice letters." *Id.*, ¶619.

During his deposition, Dr. Morellas admitted that he "cannot answer" the question of whether Pavemetrics thinks it infringes the '293 patent. Ex. 2, Tr. 127:10-17.

When asked whether he acknowledges "that Pavemetrics does not itself believe that the use of its LRAIL product infringes," Dr. Morellas testified "I cannot say anything about that. I do not know how the other side feels about it. I'm here to give you my expert opinion about certain things that I -- that come out from the review of the code, and the different documentation that I reviewed." *Id.*, Tr. 128:10-20.

When asked "Do you have any qualifications that make you particularly skilled or knowledgeable in forming opinions about other people's state of mind?" Dr. Morellas testified "That's a difficult question. I wish I had this capability, but perhaps I don't." *Id.*, Tr. 129:4-10. For example, Dr. Morellas confirmed that he is neither a psychiatrist nor a psychologist. *Id.*, Tr. 129:11-15.

Dr. Morellas also admitted that he has no firsthand knowledge regarding what Pavemetrics or its customers believed about the use of a Pavemetrics system. *Id.* at 130:3-7. Dr. Morellas had no knowledge of either Pavemetrics or Tetra Tech until he became involved in this case. *Id.* at 130:8-14.

### IV. DR. MORELLAS' OPINION REGARDING "THE" SHOULD BE STRICKEN

When a claim limitation is specified in a claim, and then the same claim limitation appears later in the claim prefaced by the word "the," the antecedent basis for that later reference is found earlier in the claim. *Tech. Consumer Prods., Inc. v. Lighting Sci. Grp. Corp.*, 955 F.3d 16, 22 (Fed. Cir. 2020). That requires that those same instances of the claim limitation refer to the same thing. *Id.*

The limitations "the processor" and "the at least one processor" in the asserted claims find antecedent basis earlier in their recited claims. *See id.*; Ex. 3 at 29:22-55; Ex. 4 at 29:64-30:16. Dr. Morellas' opinion is premised on the false assumption that no such antecedent basis need exist. Ex. 2, Tr. 36:2-53:9. Because those portions of Dr. Morellas' opinions are based on a legally incorrect view of the claim scope, he cannot help the jury determine whether something performs those claim requirements. Because his opinion regarding those portions cannot be helpful, it should not be admitted. Fed. R. Evid. 702. Tetra Tech cannot carry its burden of showing that Dr. Morellas' opinions that ignore antecedent basis are admissible. *See United States v. 87.98 Acres of Land*, 530 F.3d 899, 904 (9th Cir. 2008).

### V. DR. MORELLAS' OPINION REGARDING PAVEMETRICS' KNOWLEDGE SHOULD BE STRICKEN

Tetra Tech accuses Pavemetrics of both direct infringement and indirect, under both induced and contributory theories. A claimant alleging indirect infringement, under either of those theories, must show evidence that the defendant had knowledge of the asserted patents and that "the defendant knew the acts were infringing," not that they "might infringe." *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015).[2] Tetra Tech seeks to present

---

[2] *Commil* concerned an induced infringement claim, but it observed that contributory infringement has the same knowledge requirement. *Id.* at 639 ("Like

Dr. Morellas' opinion to the jury regarding whether Pavemetrics had the requisite knowledge. Ex. 1, ¶¶617-619.

However, Dr. Morellas admits that he does not have knowledge, skill, experience, training, or education in evaluating others' beliefs. Ex. 2, Tr. 128:10-130:14. He does not purport to be qualified as an expert in such areas. Ex. 1, ¶11. Thus, his testimony on those subjects would serve only to confuse rather than help the jury. Fed. R. Evid. 702; *Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1362 (Fed. Cir. 2008) ("Admitting testimony from a person . . . with no skill in the pertinent art[] serves only to cause mischief and confuse the factfinder."). Accordingly, Dr. Morellas' opinions regarding Pavemetrics' knowledge should be stricken.

## VI. CONCLUSION

For the foregoing reasons, Pavemetrics respectfully requests that all portions of Dr. Morellas' report addressing the claim limitations "the processor" or "the at least one processor" should be stricken, and Paragraphs 617-619, in which he opines on Pavemetrics' knowledge, should also be stricken. Thus, Dr. Morellas should be prevented from testifying in accordance with those stricken paragraphs.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: April 4, 2022

/s/ Nicholas M. Zovko
Joseph R. Re
Christy G. Lea
Nicholas M. Zovko
Alan G. Laquer
Raymond Lu

---

induced infringement, contributory infringement requires knowledge of the patent in suit and knowledge of patent infringement.").

| | |
|---|---|
| *1* | *Attorneys for Plaintiff/Counterclaim Defendant*, PAVEMETRICS SYSTEMS, INC. |
| *2* | |
| *3* | |
| *4* | |
| *5* | |
| *6* | |
| *7* | |
| *8* | |
| *9* | |
| *10* | |
| *11* | |
| *12* | |
| *13* | |
| *14* | |
| *15* | |
| *16* | |
| *17* | |
| *18* | |
| *19* | |
| *20* | |
| *21* | |
| *22* | |
| *23* | |
| *24* | |
| *25* | |
| *26* | |
| *27* | |
| *28* | |