# EXHIBIT 39

 **ILLINOIS**

### SUBAWARD

| | |
|---|---|
| **SUBAWARD Number** | 095153-17476 |
| **Modification Number** | 00 |
| **Grant Code** | AG934 |

| **1 Prime Recipient ("ILLINOIS")** | **2 Subrecipient ("SUBRECIPIENT")** |
|---|---|
| The Board of Trustees of the University of Illinois | Pavemetrics Systems, Inc. |
| Address: Sponsored Programs Administration | Address: 150 Boulevard René Lévesque Est, Suite 1820 |
| 1901 South First Street, Suite A | Quebec City, Quebec, Canada GIR 5B1 |
| Champaign, IL 61820-7406, USA | Email: rhabel@pavemetrics.com |
| Email: spa@illinois.edu | DUNS: 244235664 |
| | Indirect Cost Rate: 40.0% |

**3 Prime Award ("PRIME AWARD")**

| | | |
|---|---|---|
| a. Awarding Agency ("AGENCY"): | Federal Railroad Administration | |
| b. Award Number: | 693JJ619C000004 | |
| c. FAIN | N/A | |
| d. Award Date: | April 25, 2019 | |
| e. Award Title: | "Use of Laser Triangulation and Deep Neural Networks (DNNs) for Railway Safety Inspections" | |
| f. CFDA Number and Title | N/A | |
| g. R&D Award | ☒ Yes   ☐ No | |

**4 Funding**

| | | | | | | |
|---|---|---|---|---|---|---|
| a. Previously Obligated: | $0 | e. Automatic Carryover: | ☐ | Yes | ☒ | No |
| b. Obligated By This Action: | $174,298.00 | f. Pre-award Costs: | ☐ | Yes | ☒ | No |
| c. Total Obligation: | $174,298.00 | | | | | |
| d. Total Estimated Award: | $174,298.00 | | | | | |

| **5 Period of Performance** | | **6 Attachments** | |
|---|---|---|---|
| a. Start Date: | April 25, 2019 | Attachment 1: General Terms | ☒ |
| b. End Date: | October 24, 2020 | Attachment 2: SOW & Budget | ☒ |
| | | Attachment 3: Prime Award Terms | ☒ |
| | | Attachment 4: FFATA | ☒ |

Each Party represents that the individuals signing this SUBAWARD on its behalf are authorized, and intend, to bind the organization in contract.

| The Board of Trustees of the University of Illinois | Pavemetrics Systems, Inc. |
|---|---|
| By: _Avijit Ghosh_  08/09/19 | By: _____ |
| Avijit Ghosh, Comptroller   Date | Richard Habel, CEO |
| _Paula Jorge_ | Date: _2 August 2019_ |
| Signature of Comptroller Delegate | |
| Paula Jorge, Assistant Director | |

Revised 20190418
Approved for legal form by Office of University Counsel [LMP.4-2019]

Page 1 of 10

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0107982
**Exhibit 39**

095153-17476

Paula Jorge, Assistant Director, Awards

| 7 ILLINOIS Administrative Representative | | 8 SUBRECIPIENT Administrative Representative | |
|---|---|---|---|
| Name: | Robin Beach | Name: | Richard Habel |
| Title: | Director, Pre-Award | Title: | CEO |
| Department: | Sponsored Programs Administration | Department: | |
| Address: | 1901 South First Street, Suite A Champaign, IL 61820, USA | Address: | Same as primary address |
| Telephone: | 217-333-2187 | Telephone: | +1 418 210 3629 |
| Facsimile: | 217-239-6830 | Facsimile: | +1 418 522 3345 |
| Email: | spa@illinois.edu | Email: | rhabel@pavemetrics.com |
| **9 ILLINOIS Authorized Representative** | | **10 SUBRECIPIENT Authorized Representative** | |
| Name: | Avijit Ghosh | Name: | Richard Habel |
| Title: | Comptroller | Title: | CEO |
| Department: | Sponsored Programs Administration | Department: | |
| Address: | 1901 South First Street, Suite A Champaign, IL 61820, USA | Address: | Same as primary address |
| Telephone: | 217-333-2187 | Telephone: | +1 418 210 3629 |
| Facsimile: | 217-239-6830 | Facsimile: | +1 418 522 3345 |
| Email: | spa@illinois.edu | Email: | rhabel@pavemetrics.com |
| **11 ILLINOIS Technical Representative** | | **12 SUBRECIPIENT Technical Representative** | |
| Name: | John Edwards | Name: | Richard Fox-Ivey |
| Title: | Senior Lecturer and Research Scientist | Title: | Principal Consultant |
| Department: | Civil and Environmental Engineering | Department: | |
| Address: | 1243 Newmark Civil Engineering Building, 205 North Matthews Street Urbana, IL 61801, USA | Address: | Same as primary address |
| Telephone: | 217-244-7417 | Telephone: | +1 519 342 6305 |
| Email: | jedward2@illinois.edu | Email: | rfoxivey@pavemetrics.com |
| **13 ILLINOIS Financial Representative** | | **14 SUBRECIPIENT Financial Representative** | |
| Name: | Linda Gregory | Name: | Maxime Beaupré |
| Title: | Director, Post-Award | Title: | Finance Director |
| Organization: | Sponsored Programs Administration | Organization: | |
| Address: | 1901 South First Street, Suite A Champaign, IL 61820-7406, USA | Address: | Same as primary address |
| Telephone: | 217-333-2186 | Telephone: | +1 418 930 2534 |
| Facsimile: | 217-239-6821 | Facsimile: | +1 418 522 3345 |
| Email: | spa@illinois.edu | Email: | mbeaupre@pavemetrics.com |
| Email (Invoices): | spasubinvoices@illinois.edu | | |
| **15 ILLINOIS Export Control Representative** | | **16 SUBRECIPIENT Export Control Representative** | |
| Title: | Export Compliance Officer | Title: | CEO |
| Telephone: | 217-333-2187 | Telephone: | +1 418 210 3629 |
| Email: | exportcontrols@illinois.edu | Email: | rhabel@pavemetrics.com |
| **17 ILLINOIS Licensing Representative** | | **18 SUBRECIPIENT Licensing Representative** | |
| Title: | Director | Title: | CEO |
| Telephone: | 217-333-7862 | Telephone: | +1 418 210 3629 |
| Email: | otm@illinois.edu | Email: | rhabel@pavemetrics.com |

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0107984

**Exhibit 39**

- 52 -

095153-17476

## ATTACHMENT 1: General Terms

**ARTICLE 1 - The Project**

1.1.   The parties to this SUBAWARD may be referred to collectively as the "Parties," or individually as a "Party."

1.2.   ILLINOIS makes this SUBAWARD to SUBRECIPIENT in support of the research activities detailed in Attachment 2 ("the Project"). Certain terms of the PRIME AWARD are incorporated into this SUBAWARD as Attachment 3.

1.3.   If SUBRECIPIENT's Technical Representative becomes unable to complete the Project, SUBRECIPIENT must notify ILLINOIS in writing as soon as practicable so that either: (a) the parties may agree on a substitute or (b) ILLINOIS may terminate this SUBAWARD in accordance with Article 15.

1.4.   SUBRECIPIENT shall notify ILLINOIS as soon as possible of any reason that might interfere with SUBRECIPIENT's ability to fully perform the Project within the Period of Performance, even if the reason is beyond the control and without fault or negligence of SUBRECIPIENT.

**ARTICLE 2 – Payment Terms**

ILLINOIS shall have no liability to SUBRECIPIENT for any unobligated portion of the Total Estimated Award unless and until ILLINOIS obligates the funds by written amendment to this SUBAWARD. Indirect costs may be assessed at the rate in effect at the time this SUBAWARD is signed and will remain fixed for the life of the Project, unless approved otherwise in accordance with Article 12.

This SUBAWARD is made on a cost-reimbursable payment basis. ILLINOIS will pay the full amount due within 30 days from its receipt of an invoice submitted in accordance with the requirements of this Article.

**Invoice Submission**: SUBRECIPIENT must submit all invoices to spasubinvoices@illinois.edu.

**Invoice Signature and Certification:** Invoices submitted in the format described below shall constitute financial reports. Each invoice must be signed by the authorized SUBRECIPIENT representative and contain a certification in a form substantially similar to the following:

*By signing this report, I certify to the best of my knowledge and belief that the report is true, complete, and accurate, and the expenditures, disbursements and cash receipts are for the purposes and objectives set forth in the terms and conditions of this SUBAWARD. I am aware that any false, fictitious, or fraudulent information, or the omission of any material fact, may subject me to criminal, civil, or administrative penalties for fraud, false statements, false claims or otherwise. (U.S. Code Title 18, Section 1001 and Title 31, Sections 3729-3730 and 3801-3812).*

**Standard Invoicing:** Not more frequently than monthly, SUBRECIPIENT shall submit invoices to ILLINOIS after incurring allowable costs. All invoices must: (a) provide a current and cumulative breakdown of costs in accordance with the budget categories (including number of hours worked in the billing period, if applicable) and any required cost-sharing in separate columns; (b) identify the SUBAWARD Number and Grant Code; and (c) be approved and signed by the authorized SUBRECIPIENT Representative. Failure to provide proper invoices may delay payment. SUBRECIPIENT will furnish to ILLINOIS supporting documentation of costs upon request.

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0107986
**Exhibit 39**

095153-17476

**Ad Hoc Invoicing**: SUBRECIPIENT must promptly furnish any ad-hoc financial reports to ILLINOIS that ILLINOIS deems reasonably necessary to meet its obligations under the PRIME AWARD.

**Final Invoice**: SUBRECIPIENT must clearly identify the final invoice as "final" and submit it no later than 30 days after either expiration or earlier termination of this SUBAWARD.  Retroactive charges will not be allowed after submission of the final invoice.

### ARTICLE 3 – Applicable Cost Principles

ILLINOIS will determine allowable cost for SUBRECIPIENT's activities in accordance with the applicable Federal Cost Principles: Uniform Administrative Requirements for Federal Awards (2 CFR 200).

### ARTICLE 4 – Technical Reports

SUBRECIPIENT shall furnish to ILLINOIS all technical reports and assistance reasonably requested by the ILLINOIS Technical Representative identified in Block 11 to meet ILLINOIS' obligations under the PRIME AWARD. SUBRECIPIENT must submit the Final Progress Report to the Technical Representative no later than 30 days after either expiration or earlier termination of this SUBAWARD.

### ARTICLE 5 – Intellectual Property

**5.1. Rights in Data**. "Data" means the recorded factual material commonly accepted in the scientific community as necessary to validate research findings. SUBRECIPIENT grants to the federal government the right to obtain, reproduce, publish and use Data first produced under this SUBAWARD for governmental purposes. SUBRECIPIENT grants to ILLINOIS an irrevocable, royalty-free, non-transferable, non-exclusive, non-commercial license to use the Data to the extent necessary for ILLINOIS to meet its obligations under the PRIME AWARD and for its own research and educational purposes.

**5.2. Copyrights**. SUBRECIPIENT may assert copyright on any original works of authorship that it creates under this SUBAWARD ("Works"). SUBRECIPIENT grants to the federal government an irrevocable, royalty-free, non-exclusive license to reproduce, make derivative works, display, distribute and perform publicly the Works (including any computer software and its documentation and databases) for governmental purposes. SUBRECIPIENT grants to ILLINOIS an irrevocable, royalty-free, non-transferable, non-exclusive, non-commercial license to reproduce, make derivatives, display, distribute  and perform the Works to the extent necessary for ILLINOIS to meet its obligations under the PRIME AWARD and for its own research and educational purposes.

**5.3. Inventions**. "Invention" means all rights in discoveries (a) protectable or protected under Title 35 of the United States Code and under similar foreign laws and (b) conceived or reduced to practice in performance of the SUBAWARD. SUBRECIPIENT may retain title to each Invention that its employees make in performance of the Project ("SUBRECIPIENT Invention")  Title to any Invention made jointly by SUBRECIPIENT and ILLINOIS employees vests in the parties as joint owners with the rights set forth at 35 U.S.C. 262. SUBRECIPIENT grants to the federal government a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on behalf of the United States the SUBRECIPIENT Invention throughout the world. SUBRECIPIENT grants to ILLINOIS an irrevocable, world-wide, royalty-free, non-exclusive license to practice each  SUBRECIPIENT Invention to the extent necessary for ILLINOIS to meet its obligations under the PRIME AWARD. SUBRECIPIENT must promptly and fully report all SUBRECIPIENT Inventions to the ILLINOIS Licensing Representative identified in Block 17.

### ARTICLE 6 – Publication

ILLINOIS encourages SUBRECIPIENT to publish or otherwise make publicly available the results of the Project. "Publish" means to make known to third parties in any format or medium. To assist ILLINOIS in complying with the PRIME AWARD

Revised 20190418                                                                                          Page 4 of 10

RESTRICTED - ATTORNEYS' EYES ONLY                                      PAVEMETRICS0107988

**Exhibit 39**

095153-17476

and AGENCY's program guidelines, the Parties agree to confer with each other prior to publishing information concerning the Project to ensure that no Confidential Information is improperly released. ILLINOIS and SUBRECIPIENT shall each provide the other Party a minimum of 30 days to review and comment on any publication prior to its submission to a third party.

### ARTICLE 7 – Confidential Information

"Confidential Information" means all proprietary, privileged or confidential information in any form furnished by the disclosing Party to the receiving Party after the effective date of this SUBAWARD and in connection with the Project that the disclosing Party intends to remain secret from third parties on the grounds that its disclosure would either cause the disclosing Party competitive harm or waive a privilege granted by law. In order to enforce this provision, the disclosing Party must mark tangible information "confidential" at the time of disclosure and, within 30 days of an oral disclosure, provide the receiving Party a written summary that sufficiently describes the information that receiving Party should protect as Confidential Information.

Each Party's obligation of confidentiality shall extend for three years from disclosure and shall not apply to information that: (a) was in receiving Party's possession on a non-confidential basis prior to receipt from disclosing Party; (b) is in the public domain or is general or public knowledge prior to disclosure, or after disclosure, enters the public domain or becomes general or public knowledge through no fault of receiving Party; (c) is properly obtained by receiving Party from a third party not known to be under a confidentiality obligation to disclosing Party; (d) is explicitly approved for release by written authorization of disclosing Party; (e) is or has been developed by receiving Party independently of receiving Party's access to disclosing Party's Confidential Information; or (f) is required by law or court order to be disclosed. In no event will either Party be in breach of this SUBAWARD for its good faith compliance with applicable law.

### ARTICLE 8 – Compliance Requirements

In performing the Project, SUBRECIPIENT shall comply with all applicable federal, state, and local laws, rules, ordinances, regulations, orders, and all license and permit requirements.

### ARTICLE 9 – Assignments and Lower-Tier Subrecipients

SUBRECIPIENT may not assign or subcontract to a third party any portion of its obligations or rights under this SUBAWARD, or pass through funds to another subrecipient, without the prior written consent of ILLINOIS. If assignment, subcontracting or pass-through is permitted, SUBRECIPIENT shall not be released from its contractual obligations to ILLINOIS.

### ARTICLE 10 – Changes and Prior Approval

SUBRECIPIENT is responsible for both notifying ILLINOIS and obtaining prior written approval of ILLINOIS in the form of an amendment to this SUBAWARD with respect to any material changes to the Project. Examples include, but are not limited to, changes in the Period of Performance, substitution of SUBRECIPIENT's Technical Representative, significant re-budgeting, and changes to the scope of work. SUBRECIPIENT should confer with ILLINOIS' Administrative Representative identified in Block 7 if uncertain about the significance of any change.

### ARTICLE 11 – Records Retention, Audits and Monitoring

**11.1 Records Retention.** SUBRECIPIENT shall retain all books and records pertinent to this SUBAWARD for a minimum of three years from the date of final payment. If ILLINOIS provides SUBRECIPIENT notice of any audits, appeals, litigation or settlement of claims arising out of performance of this SUBAWARD, then SUBRECIPIENT must retain all relevant books and records until notified by ILLINOIS of final resolution of the audits, appeals, litigation or claims.

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0107990
**Exhibit 39**

**11.2.  Audits**. Upon reasonable notice, SUBRECIPIENT shall make the books and records available to ILLINOIS and to any federal agency with authority or oversight over the SUBAWARD at SUBRECIPIENT's place of business for examination and copying during normal business hours.

**11.3.   Monitoring Requirement**. (a) SUBRECIPIENT shall cooperate fully with ILLINOIS in its reasonable efforts to monitor SUBRECIPIENT activities under this SUBAWARD in accordance with federal requirements. If SUBRECIPIENT is exempt from federal audit requirements, ILLINOIS, in its discretion, may require SUBRECIPIENT to: (i) provide ILLINOIS with its most recent audit report or statement on compliance and on internal control; (ii) permit ILLINOIS to inspect relevant facilities and operations to ensure compliance with government-wide and program requirements; (iii) interview staff to ensure they are informed of and carry out program policy and regulations; (iv) review all documentation that supports SUBRECIPIENT claims and reports; (v) perform desk reviews of relevant documentation; and (vi) conduct such other reasonable financial monitoring to enable ILLINOIS to properly account for federal funds spent.

(b) SUBRECIPIENT shall cooperate with ILLINOIS to resolve instances of SUBRECIPIENT non-compliance with federal requirements through corrective action. Failure to cooperate may lead to immediate termination of this SUBAWARD by ILLINOIS.

(c) If SUBRECIPIENT is subject to Federal audit requirements, SUBRECIPIENT shall notify ILLINOIS of completion of required audits and of any adverse findings that may impact this SUBAWARD.

## ARTICLE 12 – Termination

**12.1.   Early Termination**. (a) Either Party may terminate this SUBAWARD for any reason in its discretion by giving no less than 30 days' advance written notice to the other Party. (b) If AGENCY notifies ILLINOIS of early termination of the PRIME AWARD, then ILLINOIS may terminate this SUBAWARD upon prompt written notice to SUBRECIPIENT. (c) In the case of an alleged material breach, the aggrieved Party may terminate this SUBAWARD immediately upon notice to the other Party, or may provide a cure period, in its discretion. The termination remedy is in addition to any other remedies available at law.

**12.2.   Effect of Early Termination**. (a) Upon receipt of notice of early termination, SUBRECIPIENT shall cease incurring costs and shall take immediate action to cancel all outstanding obligations that reasonably can be cancelled. No later than 30 days after the effective date of termination, SUBRECIPIENT shall submit a termination claim to ILLINOIS. SUBRECIPIENT shall be entitled to reimbursement for allowable costs incurred to the date of termination and for all noncancellable obligations up to, but not to exceed, the obligated amount under this SUBAWARD. (b) If SUBRECIPIENT terminates this SUBAWARD, SUBRECIPIENT shall be entitled to reimbursement for all allowable costs incurred to the date of termination.

## ARTICLE 13 – Resolution of Disputes

The Parties will negotiate in good faith to resolve any disputes that arise under this SUBAWARD. This SUBAWARD shall be interpreted by application of Illinois law without regard to its conflicts provisions to the extent federal law is not dispositive. If SUBRECIPIENT is a unit of state government, including a public institution of higher education, SUBRECIPIENT does not waive any defenses or immunities afforded by federal or state law.  All suits against ILLINOIS arising out of this SUBAWARD must be filed in accordance with the Illinois Court of Claims Act.

## ARTICLE 14 – Liability

Neither Party to this SUBAWARD shall be liable for any negligent or intentional acts or omissions chargeable to the other Party, unless such liability is imposed by law.

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0107992
**Exhibit 39**

095153-17476

ARTICLE 15 – Insurance

SUBRECIPIENT will maintain sufficient insurance coverage for commercial general liability, including bodily injury and property damage, employer's liability and worker's compensation insurance, and motor vehicle liability to fulfill its obligations under this SUBAWARD.

ARTICLE 16 – Conflict of Interest

SUBRECIPIENT affirms that, to the best of its knowledge, there exists no actual or potential conflict of interest involving SUBRECIPIENT or the family, business, or financial interests of SUBRECIPIENT employees and the Project. If SUBRECIPIENT becomes aware of a change in either its private interests or activities under the Project, SUBRECIPIENT will confer with ILLINOIS so that the parties can manage or eliminate the possible conflict of interest that may arise as a result of such change.

ARTICLE 17 – National Policy Assurances/Certifications

By signing this SUBAWARD, SUBRECIPIENT makes the following certifications and assurances to the extent required by law:

17.1. **Certification Regarding Lobbying.** (a) No federal appropriated funds have been paid or will be paid, by or on behalf of SUBRECIPIENT to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any federal contract, the making of any federal grant, the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement.

(b) If any funds other than federal appropriated funds have been paid or will be paid to any person for influencing or intending to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this federal contract, grant, loan, or cooperative agreement, SUBRECIPIENT shall complete and submit Standard Form -LLL, "Disclosure Form to Report Lobbying," to ILLINOIS.

(c) SUBRECIPIENT shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

(d) This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

7.2. **Debarment and Suspension.** SUBRECIPIENT certifies to the best of its knowledge and belief that it and its principals:  (a) are not presently debarred, suspended, proposed for disbarment, declared ineligible, or voluntarily excluded from covered transactions by any federal department or agency; (b) have not, within a three-year period preceding this application, been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (federal, state, or local) transaction or contract under a public transaction; violation of federal or state antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property; (c) are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (federal, state, or local) with commission of any of the offenses enumerated in the

RESTRICTED - ATTORNEYS' EYES ONLY
PAVEMETRICS0107994
**Exhibit 39**

095153-17476

previous paragraph of this certification; and (d) have not within a three-year period preceding this application had one or more public transactions (federal, state, or local) terminated for cause or default.

**17.3. National Policy Requirements.** SUBRECIPIENT has read and agrees to comply with all relevant national policy requirements set forth at http://www.nsf.gov/bfa/dias/policy/rtc/appc.pdf.

**17.4. General Certification.** The information contained in the SUBAWARD is true and complete to the best of SUBRECIPIENT's knowledge.

### ARTICLE 18 – Export Control

Each Party shall comply with all relevant laws, whether United States or foreign, governing the exports and re-exports of technical data or commodities made under this SUBAWARD. Prior to providing ILLINOIS with any items subject to export control laws, SUBRECIPIENT will notify ILLINOIS and identify the items at issue and the applicable export control laws. If the items are subject to the Export Administration Regulations ("EAR"), SUBRECIPIENT will either furnish to ILLINOIS the applicable Export Control Classification Numbers or indicate that EAR 99 applies. If the items are subject to the International Traffic in Arms Regulations ("ITAR"), SUBRECIPIENT will notify ILLINOIS of the relevant ITAR categories and subcategories. ILLINOIS may decline to accept any export-controlled items. SUBRECIPIENT will direct all notices given under this section to ILLINOIS's Export Compliance Officer listed in Block 15.

### ARTICLE 19 – Counterparts

ILLINOIS and SUBRECIPIENT may sign this SUBAWARD in one or more counterparts, each of which constitutes an original and all of which together constitute the SUBAWARD. Facsimile (such as PDF) signatures shall constitute original signatures for all purposes.

### ARTICLE 20 – Use of Names

Neither Party will use the name of the other in any form of advertising or publicity without the express written permission of the other Party. SUBRECIPIENT shall seek permission from ILLINOIS by submitting the proposed use, well in advance of any deadline, to the Associate Chancellor for Public Affairs, University of Illinois via email at publicaffairs@illinois.edu.

### ARTICLE 21 – Survival

Articles 5, 11, 12 and 21 shall survive termination or expiration of this SUBAWARD.

### ARTICLE 22 – Entire Agreement

This SUBAWARD with all attachments and incorporated references is intended to be the Parties' final written expression of their agreement regarding the subject matter. Purchase orders, or similar payment instruments, issued after this SUBAWARD is signed do not amend or supplement the terms of this SUBAWARD but are accepted by ILLINOIS as a payment mechanism only. No other terms shall have effect unless specifically set forth in writing in the form of an amendment to this SUBAWARD and signed by each Party's Authorized Representative. The Parties have caused their Authorized Representatives to sign this SUBAWARD.

.

RESTRICTED - ATTORNEYS' EYES ONLY                     - 58 -                     PAVEMETRICS0107996
**Exhibit 39**

095153-17476

**ATTACHMENT 2: Statement of Work and Budget**

Revised 20190418

Page 9 of 10

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0107998

**Exhibit 39**

**Pavemetrics Detailed Costs**

| Name of Project Team Members | Role in Study | Year 1 | | | | Current Hourly Rate ($) |
|---|---|---|---|---|---|---|
| | | WP 1.1 Hours | WP 1.2 Hours | WP 1.3 Hours | Total Hours | |
| **Section A. Personnel Hours** | | | | | | |
| Mario Talbot | DNN Trainer | 1,000 | 0 | 0 | 1,000 | $65.00 |
| Richard Fox-Ivey | Project Manager | 300 | 0 | 0 | 300 | $75.00 |
| | | | | | | |
| TOTAL HOURS | | 1,300 | 0 | 0 | 1,300 | |

These figures are provided for estimating purposes only. Personnel will be reported on a percentage-of-man-month basis in accordance with University policy. For purposes of this RFP, the figure of 173.3 hours equals one month.

| Name of Project Team Members | | Year 1 | | | |
|---|---|---|---|---|---|
| | | WP 1.1 Wages | WP 1.2 Wages | WP 1.3 Wages | Total Wages |
| **Section B. Personnel Wages** | | | | | |
| Mario Talbot | | $65,000 | $0 | $0 | $65,000 |
| Richard Fox-Ivey | | $22,500 | $0 | $0 | $22,500 |
| | | $0 | $0 | $0 | $0 |
| TOTAL WAGES | | $87,500 | $0 | $0 | $87,500 |

| | | Year 1 | | | |
|---|---|---|---|---|---|
| **Section C. Fringe Benefits** | 15% | WP 1.1 | WP 1.2 | WP 1.3 | Totals |
| Fringe | | $13,125 | $0 | $0 | $13,125 |
| Total Personnel | | $100,625 | $0 | $0 | $100,625 |

| | | Year 1 | | | |
|---|---|---|---|---|---|
| **Section D. Direct Costs** | Rates | WP 1.1 | WP 1.2 | WP 1.3 | Totals |
| Materials & Supplies | | $0 | $0 | $0 | $0 |
| Services | | $24,000 | $0 | $0 | $24,000 |
| Equipment | | $0 | $0 | $0 | $0 |
| Tuition Remission | 0 | $0 | $0 | $0 | $0 |
| Subtotal Direct Costs | | $24,000 | $0 | $0 | $24,000 |

| **Section E. Travel** | | WP 1.1 | WP 1.2 | WP 1.3 | Totals |
|---|---|---|---|---|---|
| Travel | | $4,192 | $8,385 | $2,096 | $14,673 |
| | | | | | |
| **Total Direct Costs** | | $128,817 | $8,385 | $2,096 | $139,298 |

| | | Year 1 | | | |
|---|---|---|---|---|---|
| **Section F. Indirect Costs** | Rates | WP 1.1 | WP 1.2 | WP 1.3 | Totals |
| Overhead | 0.4 | $35,000 | $0 | $0 | $35,000 |
| Subtotal Indirect Costs | | $35,000 | $0 | $0 | $35,000 |

| | Year 1 | | | | Percentage Funding |
|---|---|---|---|---|---|
| **Total Funds Requested** | $163,817 | $8,385 | $2,096 | $174,298 | 68.54% |

| **Section G. Cost Share** | WP 1.1 | WP 1.2 | WP 1.3 | Totals | |
|---|---|---|---|---|---|
| LRAIL System Rental Fee (4 months) | $80,000 | $0 | $0 | $80,000 | 31.46% |
| | | | | | |
| **Total Project Cost** | $243,817 | $8,385 | $2,096 | $254,298 | |

RESTRICTED - ATTORNEYS' EYES ONLY                                          PAVEMETRICS0108000

**Exhibit 39**

*FRA IRS BAA 2018 Project Proposal*                                          *27 July 2018*

## Pavemetrics Budget Justification

The proposed budget consists of the following categories of expenditures, listed with specific justification for each category. The following figures of costs are provided for estimating purposes only. Personnel will be reported on a percentage-of-man-month basis. For this budget, 173.3 hours equals one month.

The text below describes the detailed cost budget.

Section A. Personnel Hours

**Senior Personnel**

The project manager (PM), Richard Fox-Ivey, will work a total of 300 hours on the project providing primary oversight of the project. Mario Talbot, DNN Specialist, will work a total of 1,000 hours on the project configuring and training the DNN and using it to process the Evaluation Test dataset.

Section B. Personnel Wages

Current hourly rates for each member of the project team are shown in Section A of the budget.

Section C. Fringe Benefits

The fringe benefits rate is 15% of wages paid.

Section D. Direct Costs

**Services**

A total of $24,000 are budgeted for outside services. This includes 4,000 for shipping and insurance fees associated with transporting the LRAIL technology to and from the TTCI test track. Another $10,000 is budgeted for services to create a robust and safe design to attach the LRAIL sensors to the FAST train consist. As well, $5,000 is budgeted for services related to the construction of the sensor mounting structure. A final $5,000 is budgeted for services related to internal calibration and alignment for all sensors.

Section E. Travel

Travel expenses are budgeted at $14,673 for a total of three (3) onsite trips. The first trip will be for the purposes of Project Initiation and will include a Start-up meeting. The second trip will be for the purpose of sensor installation, the initial field data collection and training of UIUC and TTCI staff in the operation of the LRAIL system. A final trip will be to perform the final data collection, some ground truth inspections and to remove the equipment and pack for shipping back to the office.  A table of the projected travel and associated costs is below.

| Purpose of Travel | Destination | Project Manager | DNN Specialist | Installation Technician | Airfare (ea.) | Lodging (daily rate) | Per Diem | Local Travel Costs (Taxi/shuttle, Rental Car and Fuel) | Number of Days | Cost Per Trip | Number of Trips | Total Cost |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Project Initiation and Kick-off Meeting | Pueblo, CO | 1 | 1 | 0 | $900 | $169 | $64 | $200 | 5 | $4,192 | 1 | $4,192 |
| Equipment Install, Training and Initial Data Collection | Pueblo, CO | 1 | 1 | 1 | $900 | $169 | $64 | $200 | 8 | $8,385 | 1 | $8,385 |
| Final Data Collection, Ground Truth Survey, Uninstallation and Shipping | Pueblo, CO | 0 | 0 | 1 | $900 | $169 | $64 | $200 | 5 | $2,096 | 1 | $2,096 |

Section F. Indirect Costs

A Facilities and Administration (F&A) multiplier of 40% was applied to all direct costs.

Section G. Cost Share

Pavemetrics will provide cost share of $80,000 to the project which will cover the fee for the four months rental of the LRAIL System.

**Total Project Cost:**
The total project cost is $254,298 prior to a reduced for an in-kind contribution of $80,000 by Pavemetrics. The resulting final project cost is $174,298.

Page 7 of 23

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0108002
**Exhibit 39**

FRA IRS BAA 2018 Project Proposal

## Statement of Work

### Work Scope

The proposed project involves the identification of key track components and defects, field data collection to capture intensity and range data, training of a DNN, and testing of the DNN's performance.

At the outset of the project, RailTEC at UIUC will draw on industry knowledge and work with Industry Partners to identify safety-oriented criteria related to poor ballast, fastening system, and crosstie conditions. Additionally, the possibility of inspecting elements of special trackwork may also be considered. These criteria will target the specific areas and parameters which the DNN will analyze.

During the field data collection phase, Pavemetrics' LRAIL 3D laser triangulation technology will be installed on the Facility for Accelerated Service Testing (FAST) train consist on the High Tonnage Loop (HTL) at the Transportation Technology Center (TTC). The LRAIL will be used to capture intensity and range data scans of the HTL over a period of approximately four (4) months [*a separate, draft scope for TTCI involvement is provided as a part of this proposal submission*]. The resulting dataset will include a number of repeat runs of HTL captured throughout the field testing period.

These scans will be manually analyzed by RailTEC researchers in order to identify locations with defects and/or degradation in order to build a condition database. This database will used by Pavemetrics to subsequently train the DNN in the automated identification of defects. The performance of the DNN will then be evaluated through the analysis of a separate set of test data and comparison of the DNN's classifications compared to that of RailTEC expert raters.

Pavemetrics will be responsible for supplying sensor hardware and software for the project, installing the sensors, configuration and training of the DNN and generating the final results using the DNN post training. RailTEC at UIUC will be responsible for operating the sensors in the field, regular field visits to manually inspect the HTL at TTC, and regular transmission of collected data to Pavemetrics, manual review of captured data in order to build a database of defects to use in the training of the DNN and the final evaluation of DNN classification performance.

The overall objective of the project is to demonstrate the technology's ability to automatically detect and isolate unsafe track conditions and/or a change in track conditions which could denote a safety concern.

Major milestones for the project include:

- Project kick-off meeting
- Identification of key components and defects that contribute most significantly to safety
- Onsite data collection
- Development of defect database
- Training of the DNN using the defect database
- Testing of the trained DNN
- Review of DNN performance
- Preparation and submission of final project report

095153-17476

## ATTACHMENT 3: Prime Award Terms

☒ The Prime Award is attached and forms a part of this SUBAWARD.

☐ The specific terms of the PRIME AWARD noted on the following pages form a part of this SUBAWARD.

In the event of any inconsistency between the terms of the SUBAWARD and the terms of the PRIME AWARD that are incorporated into this SUBAWARD, the terms of the PRIME AWARD shall take precedence.

Revised 20190418

Page 10 of 10

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0108006

**Exhibit 39**

| AWARD/CONTRACT | 1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700) | | RATING | PAGE OF PAGES |
|---|---|---|---|---|
| | | | | 1 \| 46 |

| 2. CONTRACT (Proc. Inst. Ident.) NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQUEST/PROJECT NO. |
|---|---|---|
| 693JJ619C000004 | See Block 20C | FR19RPD31000000004 |

| 6. ISSUED BY | CODE | FRA RAD-30 | 6. ADMINISTERED BY (If other than Item 5) | CODE | FRA RAD-30 |
|---|---|---|---|---|---|

Federal Railroad Administration
Office of Acquisition Services
1200 New Jersey Avenue SE
West Building, 3rd Floor, Stop-50
Washington DC 20590

FRA
Federal Railroad Administration
Office of Acquisition Services
1200 New Jersey Avenue SE
West Building, 3rd Floor, STOP-50
Washington DC 20590

SCD-C

7. NAME AND ADDRESS OF CONTRACTOR (No., street, country, State and ZIP Code)

ILLINOIS UNIVERSITY OF
ATTN LINDA G WILLIAMS
506 S WRIGHT ST
URBANA IL 61801-3620

CODE 100003365   FACILITY CODE

8. DELIVERY
☐ FOB ORIGIN   ☒ OTHER (See below)

9. DISCOUNT FOR PROMPT PAYMENT

10. SUBMIT INVOICES
(4 copies unless otherwise specified)
TO THE ADDRESS SHOWN IN    ITEM

| 11. SHIP TO/MARK FOR | CODE | FRA RPD-31 | 12. PAYMENT WILL BE MADE BY | CODE | FRA NATL ACCTG OFF |
|---|---|---|---|---|---|

Track Research Division
1200 New Jersey Ave. SE
Washington DC 20590

Enterprise Services Center
FRA, Accounts Payable Branch, AMZ-160
PO BOX 263943
Oklahoma City OK 73160

| 13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION: | 14. ACCOUNTING AND APPROPRIATION DATA |
|---|---|
| ☐ 10 U.S.C. 2304 (c) ( )    ☐ 41 U.S.C. 3304 (a) ( ) | See Schedule |

| 15A. ITEM NO | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | Continued | | | | |

| | | | | 15G. TOTAL AMOUNT OF CONTRACT | $299,990.00 |
|---|---|---|---|---|---|

**15. TABLE OF CONTENTS**

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | 1-2 | X | I | CONTRACT CLAUSES | 8-11 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 3 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| X | C | DESCRIPTION/SPECS/WORK STATEMENT | 3 | | J | LIST OF ATTACHMENTS | |
| X | D | PACKAGING AND MARKING | 3 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 3 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | 4-6 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 6-7 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 7-8 | | M | EVALUATION FACTORS FOR AWARD | |

CONTRACTING OFFICER WILL COMPLETE ITEM 17 (SEALED-BID OR NEGOTIATED PROCUREMENT) OR 18 (SEALED-BID PROCUREMENT) AS APPLICABLE

17. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT (Contractor is required to sign this document and return ___1___ copies to issuing office.) Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. (Attachments are listed herein.)

18. ☐ SEALED-BID AWARD (Contractor is not required to sign this document.) Your bid on Solicitation Number _____

including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your bid, and (b) this award/contract. No further contractual document is necessary. (Block 18 should be checked only when awarding a sealed-bid contract.)

| 19A. NAME AND TITLE OF SIGNER (Type or print) | 20A. NAME OF CONTRACTING OFFICER |
|---|---|
| Avijit Ghosh, Comptroller | MOYAH WILSON |

| 19B. NAME OF CONTRACTOR | 19C. DATE SIGNED | 20B. UNITED STATES OF AMERICA | 20C. DATE SIGNED |
|---|---|---|---|
| BY _Avijit Ghosh_ (Signature of person authorized to sign) | 4/25/19 | BY MOYAH WILSON  Digitally signed by MOYAH WILSON Date: 2019.04.26 08:07:26 -04'00' (Signature of Contracting Officer) | 4/26/19 |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

STANDARD FORM 26 (Rev. 3/2013)
Prescribed by GSA - FAR (48 CFR) 53.214(a)

_Julie Robinson_   4/25/19
Signature of Comptroller Delegate    Date
Julie Robinson, Assistant Director

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0108008
**Exhibit 39**

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED<br>693JJ619C000004 | | | | PAGE<br>2 | OF<br>46 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR

ILLINOIS UNIVERSITY OF

| ITEM NO.<br>(A) | SUPPLIES/SERVICES<br>(B) | QUANTITY<br>(C) | UNIT<br>(D) | UNIT PRICE<br>(E) | AMOUNT<br>(F) |
|---|---|---|---|---|---|
| | DUNS Number:  041544081<br>InvoiceApprover: CSTUARTFRA IT Related Pur: NO<br>Accounting Info:<br>27X0745019.2019.1602TSTIT0.9031000000.25500.610066<br>00.0000000000.0000000000.0000000000.0000000000<br>FOB: Destination<br>Period of Performance: 04/25/2019 to 10/24/2020 | | | | |
| 00001 | COR: Cam Stuart<br><br>Broad Agency Announcement (BAA) 2018, FRA-TC-001,<br>Investigating the Use of Artificial Intelligence<br>in Railway Systems.<br><br>Cost No-Fee R&D Project entitled "Use of Laser<br>Triangulation and Deep Neural Networks<br>(DNNs) for Railway Safety Inspections" dated July<br>27, 2018.<br>Obligated Amount: $299,990.00<br>Product/Service Code:  AS32<br><br>The total amount of award: $299,990.00. The<br>obligation for this award is shown in box 15G. | | | | 299,990.00 |

AUTHORIZED FOR LOCAL REPRC

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

693JJ619C000004

## SECTION B - Supplies or Services/Prices

**Base Contract**

Contract Line Item Number (CLIN) 0001        **Price: $299,990.00**

       **Total: $299,990.00**

This is a Cost-No Fee contract.

**Description**

**Project:** "Use of Laser Triangulation and Deep Neural Networks (DNNs) for Railway Safety
Inspections"

## Project Schedule



## SECTION C - Description/Specifications

### C.1    STATEMENT OF WORK

Research Project Proposal "Use of Laser Triangulation and Deep Neural Networks (DNNs) for
Railway Safety Inspections" submitted July 27, 2018 is incorporated by reference.

### SECTION D - Packaging and Marking

### D.1    PACKAGING, MARKING AND POSTAGE

(a) All information submitted to the Contracting Officer or the Contracting Officer's
Representative (COR) shall be clearly marked with the name of the contractor, as well as the
contract, task order and/or modification number as appropriate.

(b) All contract-related postage and fees shall be paid by the contractor.

### SECTION E - Inspection and Acceptance

### E.1 52.246-9 INSPECTION OF RESEARCH AND DEVELOPMENT (SHORT FORM).
APR 1984)

3

693JJ619C000004

## SECTION F - Deliveries or Performance

### F.1   PLACE OF PEFORMANCE/DELIVERY

The Contractor shall submit all required deliverables, progress reports and documents in electronic format by email, referencing the contract number, to the following email addresses.  In the event, another deliverable format is necessary for delivery, the Contractor shall use the following mailing addresses.

Contracting Officer's Representative (COR):

Cam Stuart
Federal Railroad Administration
Office of Acquisition Services
1200 New Jersey Avenue, SE
West Building, 3rd Floor
Washington, D.C. 20590
202-493-6384
cameron.stuart@dot.gov

Contracting Officer (CO):
Moyah Wilson
Federal Railroad Administration
Office of Acquisition Services
1200 New Jersey Avenue, SE
West Building, 3rd Floor
Washington, D.C. 20590
moyah.wilson@dot.gov
(202) 493-6222

### F.2   DELIVERABLES/DELIVERY SCHEDULE

The contractor shall submit via email to the COR a quarterly progress reports within fifteen (15) calendar days following the end of month.  The contractor shall submit to the designated Contracting Officer Representative two copies of each progress report describing:

The report shall contain:

1. A summary of the progress made under the contract during the reporting period, separated into logical elements of work.  This shall include pertinent data and graphs sufficient to explain any significant results achieved;

2. An explanation of any technical and/or schedule problems which may have occurred or are expected to arise.  The description of any differences between planned and actual technical progress shall include a statement of why the difference occurred or why they are expected to

4

693JJ619C000004

occur and what remedial or alternative actions are planned or recommended. This may include any recommended action by the Government to assist in resolution of a problem;

3. Actual versus planned level of effort broken down by individual tasks, including cumulative expenditures incurred and earned value management (EVM) as applicable by the FRA's direction;

4. Projected activities and costs for the next reporting period;

5. Minutes of status review meetings, if any; and

6. A cost breakdown and summary of all travel during the reporting period.

Other deliverables may include briefings, hardware and software (computer programs) and associated user manuals, drawings, photos, video tapes or some combination thereof. The type of each deliverable will be determined by the nature of the requirement as defined by the statement of work incorporated by section.

### F.3     FAR 52.242-15 STOP-WORK ORDER. (AUG 1989) ALTERNATE I (APR 1984).

(a) The Contracting Officer may, at any time, by written order to the Contractor, require the Contractor to stop all, or any part, of the work called for by this contract for a period of 30 days after the order is delivered to the Contractor, and for any further period to which the parties may agree. The order shall be specifically identified as a stop-work order issued under this clause. Upon receipt of the order, the Contractor shall immediately comply with its terms and take all reasonable steps to minimize the incurrence of costs allocable to the work covered by the order during the period of work stoppage. Within a period of 30 days after a stop-work is delivered to the Contractor, or within any extension of that period to which the parties shall have agreed, the Contracting Officer shall either --

(1) Cancel the stop-work order; or

(2) Terminate the work covered by the order as provided in the Default, or the Termination for Convenience of the Government, clause of this contract.

(b) If a stop-work order issued under this clause is canceled or the period of the order or any extension thereof expires, the Contractor shall resume work. The Contracting Officer shall make an equitable adjustment in the delivery schedule or contract price, or both, and the contract shall be modified, in writing, accordingly, if --

(1) The stop-work order results in an increase in the time required for, or in the Contractor's cost properly allocable to, the performance of any part of this contract; and

(2) The Contractor asserts its right to the adjustment within 30 days after the end of the period of work stoppage; provided, that, if the Contracting Officer decides the facts justify the action, the Contracting Officer may receive and act upon the claim submitted at any time before final payment under this contract.

5

PAVEMETRICS0108016
**Exhibit 39**

693JJ619C000004

(c) If a stop-work order is not canceled and the work covered by the order is terminated for the convenience of the Government, the Contracting Officer shall allow reasonable costs resulting from the stop-work order in arriving at the termination settlement.

(d) If a stop-work order is not canceled and the work covered by the order is terminated for default, the Contracting Officer shall allow, by equitable adjustment or otherwise, reasonable costs resulting from the stop-work order.

(End of Clause)

**SECTION G - Contract Administration Data**

**G.1     TAR 1252.242-73 CONTRACTING OFFICER'S REPRESENTATIVE. (OCT 1994)**

(a) The Contracting Officer may designate Government personnel to act as the Contracting Officer's Representative (COR) to perform functions under the contract such as review and/or inspection and acceptance of supplies, services, including construction, and other functions of a technical nature. The Contracting Officer will provide a written notice of such designation to the Contractor within five working days after contract award or for construction, not less than five working days prior to giving the contractor the notice to proceed. The designation letter will set forth the authorities and limitations of the COR under the contract.

(b) The Contracting Officer cannot authorize the COR or any other representative to sign documents (i.e., contracts, contract modifications, etc.) that require the signature of the Contracting Officer.

(c) Cam Stuart is hereby designated as the Contracting Officer's Representative (COR) for this contract. Mr. Cam Stuart can be reached by telephone at (202)-493-6384. or email at cameron.stuart@dot.gov.

**G.2     INVOICE INSTRUCTIONS**

The contractor shall submit invoices for payment utilizing Standard Form 1034 prepared in accordance with "Instructions for Preparation and Submission of Public Vouchers" available via the following link: http://www.dot.gov/assistant-secretary-administration/procurement/tar-part-1232-contract-financing

Send one original copy to the following address:

**FAA MIKE MONRONEY AERONAUTICAL CENTER**
**HQ ROOM 272/FRA**
**6500 S MACARTHUR BLVD**
**OKLAHOMA CITY, OK 73169**
or
electronically to: 9-amc-amz-fra-invoices@faa.gov

*Payment will be made by electronic funds transfer (EFT) to the contractor's bank account in accordance with the banking information to be supplied by the contractor on the SF 3881.*

6

PAVEMETRICS0108018
**Exhibit 39**

693JJ619C000004

## G.4    TRAVEL AND PER DIEM

(a) All travel reimbursable hereunder shall conform to the requirements under FAR 31.3.

(b) All travel shall be reimbursed in accordance with current Government travel regulations at economy class rates when available.  If not available, reimbursement vouchers shall be annotated that economy class was not available. The contractor shall be reimbursed for actual costs incurred for per diem/subsistence costs in accordance with current Government travel regulations.

### SECTION H - Special Contract Requirements

## H.1    ACCESSIBILITY OF MEETINGS AND CONFERENCES TO PERSONS WITH DISABILITIES

The contractor shall assure that any meeting or conference held pursuant to the contract will meet all applicable standards for accessibility to persons with disabilities in accordance with Section 504 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 794) and any implementing regulations.

## H.2    REPRODUCTION OF REPORTS

Federal printing and binding regulations require that printing or reproduction of reports, data, or other written materials produced under contracts or grants which exceed 5,000 production units of any page, or 25,000 production units in the aggregate, must be processed through the U.S. Government Printing Office (GPO).  Accordingly, unless otherwise specifically approved in advance by the Contracting Officer, any project report or other written materials produced under an order on this contract that is expected to exceed these limits must be submitted to the COTR in one camera-ready original.  The Government will reproduce copies exceeding the above limits. Any use of color in the final report that would result in color printing (black plus one or more colors) must have prior approval of the Contracting Officer. All printing funded by this contract or order hereunder must be done in conformance with Joint Committee on Printing regulations as prescribed in Title 44, U.S.C., and Section 308 of Public Law 101-163, and all applicable Government Printing Office and Department of Transportation regulations.

## H.3    CONFLICTS OF INTEREST

The contractor to promptly disclose in writing to the Contracting Officer and COR any actual or apparent conflict of interest, or an interest or interests that may give rise to the appearance of a conflict that could affect the public's confidence in Department's execution of federal laws and regulations governing its financial assistance and safety programs.

Any other matter that could represent a potential conflict of interest must be promptly brought to the attention of the Contracting Officer who, after consulting with the COR, FRA's Office of Chief Counsel, will make a final decision relative to the contract for which the Department is seeking services.

7

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0108020
**Exhibit 39**

693JJ619C000004

## H.4 LIMITED USE OF DATA AND INFORMATION

(a) Performance of this contract may require the contractor to access and use information proprietary to the Government or a Government contractor. This information may be of such a nature that its dissemination or use, other than in performance of this contract, would be adverse to the interests of the Government and/or others.

## H.5 OTHER PERTINENT INFORMATION OR SPECIAL CONSIDERATIONS

**a. Restrictions on Use, Disclosure, and Duplication of Confidential and Non- Public Information.**

Reserved.

**b. Non-Disclosure Agreement for Confidential and Non-Public Information.**

Reserved.

**c. Patent rights – Reporting and Disclosures to Government**

Reserved.

**H.6    1252.242-70 DISSEMINATION OF INFORMATION-EDUCATIONAL INSTITUTIONS (OCT 1994)**

**H.7    1252.223-73 SEAT BELT USE POLICIES AND PROGRAMS. (APR 2005)**

**H.8    1252.235-70 RESEARCH MISCONDUCT. (APR 2005)**

**SECTION I - Contract Clauses**

52.202-1  DEFINITIONS. (NOV 2013)

52.203-3  GRATUITIES. (APR 1984)

52.203-5  COVENANT AGAINST CONTINGENT FEES. (MAY 2014)

 52.203-7  ANTI-KICKBACK PROCEDURES. (MAY 2014)

52.203-8  CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY. (MAY 2014)

52.203-10  PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY. (MAY 2014)

52.203-12  LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (OCT 2010)

8

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0108022
**Exhibit 39**

693JJ619C000004

52. 203-17 CONTRACTOR EMPLOYEE WHISTLEBLOWERS RIGHTS AND REQUIREMENT TO INFORM EMPLOYEES OF WHISTLEBLOWER RIGHTS. (APR 2014)

52.203-18 PROHIBITION ON CONTRACTING WITH ENTITIES THAT REQUIRE CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS OR STATEMENTS REPRESENT (JAN 2017)

52.204-4 PRINTED OR COPIED DOUBLE-SIDED ON POSTCONSUMER FIBER CONTENT PAPER. (MAY 2011)

52.204-10 REPORTING EXECUTIVE COMPENSATION AND FIRST-TIER SUBCONTRACT AWARDS. (OCT 2016)

52.204-13 SYSTEM FOR AWARD MANAGEMENT MAINTENANCE. (OCT 2016)

52.204-19 INCORPORATION BY REFERENCE OF REPRESENTATIONS AND CERTIFICATIONS. (DEC 2014)

52.209-6 PROTECTING THE GOVERNMENT INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENED OR PROPSED FOR DEBARMENT (OCT 2015).

52.209-10 PROHIBITION ON CONTRACTING WITH INVERTED DOMESTIC CORPORATIONS. (NOV 2015)

52.215-2 AUDIT AND RECORDS—NEGOTIATION. (OCT 2010) -ALTERNATE I1 (AUG 2016)

52.215-8 ORDER OF PRECEDENCE - UNIFORM CONTRACT FORMAT. (OCT 1997)

52.215-23 LIMITATIONS ON PASS-THROUGH CHARGES (OCT 2009)

52.216-7 ALLOWABLE COST AND PAYMENT. (AUG 2018) -ALTERNATE II (AUG 2012)

52.216-11 COST CONTRACT—NO FEE. (APR 1984) -ALTERNATE 1 (APR1984)

52.216-15 PREDETERMINED INDIRECT COST RATES (APR 1998)

52.216-24 LIMITATION OF GOVERNMENT LIABILITY (APR 1984)

52.219-28 POST-AWARD SMALL BUSINESS PROGRAM REPRESENTATION. (JUL 2013)

52.222-3 CONVICT LABOR. (JUN 2003)

52.222-21 PROHIBITION OF SEGREGATED FACILITIES (APR 2015)

52.222-26 EQUAL OPPORTUNITY. (SEPT 2016)

52.222-35 EQUAL OPPORTUNITY FOR VETERANS (OCT 2015)

52.222-36 EQUAL OPPORTUNITY FOR WORKERS WITH DISABILITIES. (JUL 2014)

52.222-37 EMPLOYMENT REPORTS ON VETERANS (FEB 2016)

9

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0108024
**Exhibit 39**

693JJ619C000004

52.222-50 COMBATING TRAFFICKING IN PERSONS (MAR 2015)

52.222-54 EMPLOYMENT ELIGIBILITY VERIFICATION (OCT 2015)

52.223-6 DRUG-FREE WORKPLACE (MAY 2001)

52.223-18 ENCOURAGING CONTRACTOR POLICIES TO BAN TEXT MESSAGING WHILE DRIVING. (AUG 2011)

52.225-13 RESTRICTIONS ON CERTAIN FOREIGN PURCHASES. (JUN 2008)

52.227-1 AUTHORIZATION AND CONSENT. (DEC 2007)- ALTERNATE I (DEC 2007)

52.227-11 PATENT RIGHTS--OWNERSHIP BY THE CONTRACTOR. (MAY 2014)

52.227-14 RIGHTS IN DATA--GENERAL. (MAY 2014) ALTERNATE IV (MAY 2014)

52.228-7 INSURANCE – LIABILITY TO THIRD PERSONS (MAR 1996)

52.232-20 LIMITATION OF COST (APR 1984)

52.232-23 ASSIGNMENT OF CLAIMS. (MAY 2014)

52.232-25 PROMPT PAYMENT. (JAN 2017)

52.232-33 PAYMENT BY ELECTRONIC FUNDS TRANSFER –SYSTEM FOR AWARD MANAGEMNT (JUL 2013)

52.232-39 UNENFORCEABILITY OF UNAUTHORIZED OBLIGATIONS.(JUN 2013)

52.232-40 PROVIDING ACCELERATED PAYMENTS TO SMALL BUSINESS SUBCONTRACTORS. (DEC 2013)

52.233-1 DISPUTES (MAY 2014) - ALTERNATE I (DEC 1991)

52.233-3 PROTEST AFTER AWARD. (AUG 1996) - ALTERNATE I (JUN 1985)

52.233-4 APPLICABLE LAW FOR BREACH OF CONTRACT CLAIM. (OCT 2004)

52.242-1 NOTICE OF INTENT TO DISALLOW COSTS. (APR 1984)

52.242-13 BANKRUPTCY (JULY 1995)

52.243-2 CHANGES – COST REIMBURSEMENT (AUG 1987) – ALTERNATE V (APR 1984)

52.244-2 SUBCONTRACTS.(OCT 2010) -ALTERNATE I (JUN 2007)

52.244-6 SUBCONTRACTS FOR COMMERCIAL ITEMS (AUG 2018)

52.249-5 TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (EDUCATIONAL AND OTHER NONPROFIT INSTITUTIONS) (AUG 2016)

10

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0108026
**Exhibit 39**

693JJ619C000004

**52.252-2  CLAUSES INCORPORATED BY REFERENCE. (FEB 1998)**

SECTION J- LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS

| | |
|---|---|
| Attachment 1 | Contractor's Technical Proposal |
| Attachment 2 | DD 882 |
| Attachment 3 | Quarterly Report Model |

11

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0108028
**Exhibit 39**

# EXHIBIT 40

 **ILLINOIS**

## SUBAWARD

|  |  |
|---|---|
| **SUBAWARD Number** | 101810-18290 |
| **Modification Number** | 00 |
| **Grant Code** | AH699 |

| **1 Prime Recipient ("ILLINOIS")** | **2 Subrecipient ("SUBRECIPIENT")** |
|---|---|
| The Board of Trustees of the University of Illinois<br>Address: Sponsored Programs Administration<br>　　　　　 1901 S. First Street, Suite A<br>　　　　　 Champaign, IL 61820-7406<br>Email: spa@illinois.edu | Systemes Pavemetrics Inc.<br>Address: 150 blv René-Lévesque Est, Suite 1820<br>　　　　　 Quebec City, Quebec, Canada, G1R 5B1<br>Email: jlaurent@pavemetrics.com<br>DUNS: 244235664<br>Indirect Cost Rate: 10% de minimus |

| **3 Prime Award ("PRIME AWARD")** | |
|---|---|
| a. Awarding Agency ("AGENCY"): | Federal Railroad Administration (US DOT) |
| b. Award Number: | 693JJ620C000035 |
| c. FAIN | 693JJ620C000035 |
| d. Award Date: | 10/01/2020 |
| e. Award Title: | Use of Laser Triangulation and Deep Neural Networks (DNNs) for Railway Safety Inspections Phase 2: Framework for Isolating and Reporting Relevant Track Changes to Decision Makers |
| f. CFDA Number and Title | N/A |
| g. R&D Award | ☒ Yes　　☐ No |

| **4 Funding** | | | |
|---|---|---|---|
| a. Previously Obligated: | $0 | e. Automatic Carryover: | ☐ Yes　☒ No |
| b. Obligated By This Action: | $99,856.00 | f. Pre-award Costs: | ☐ Yes　☒ No |
| c. Total Obligation: | $99,856.00 | | |
| d. Total Estimated Award: | $99,856.00 | | |

| **5 Period of Performance** | | **6 Attachments** | |
|---|---|---|---|
| a. Start Date: | October 1, 2020 | Attachment 1: General Terms | ☒ |
| b. End Date: | March 31, 2022 | Attachment 2: SOW & Budget | ☒ |
| | | Attachment 3: Prime Award Terms | ☒ |
| | | Attachment 4: FFATA | ☒ |
| | | Attachment 5: Sample Invoice | ☒ |

Each Party represents that the individuals signing this SUBAWARD on its behalf are authorized, and intend, to bind the organization in contract.

| **The Board of Trustees of the University of Illinois** | **Systemes Pavemetrics Inc.** |
|---|---|
| By: _Avijit Ghosh_ | By: _[signature]_ |
| Avijit Ghosh, Comptroller　　　　Date | John Laurent, CTO and VP Business Development |
| _[signature]_ | Date: March 12th 2021 |
| Julie Robinson, Associate Director &　03/19/2021<br>Comptroller Delegate | |

**Revised 20190418**

Approved for legal form by Office of University Counsel [LMP.4-2019]

Page 1 of 13

101810-18290

| 7 ILLINOIS Administrative Representative | | 8 SUBRECIPIENT Administrative Representative | |
|---|---|---|---|
| Name: | Robin Beach | Name: | John Laurent |
| Title: | Director, Pre-Award | Title: | CTO and VP Business Development |
| Department: | Sponsored Programs Administration | Department: | |
| Address | 1901 S. First Street, Suite A Champaign, IL 61820 | Address | Same as primary address |
| Telephone: | 217-333-2187 | Telephone: | +1 418-262-8707 |
| Facsimile: | 217-239-6830 | Facsimile: | +1 418-522-3345 |
| Email: | spa@illinois.edu | Email: | jlaurent@pavemetrics.com |
| **9 ILLINOIS Authorized Representative** | | **10 SUBRECIPIENT Authorized Representative** | |
| Name: | Avijit Ghosh | Name: | John Laurent |
| Title: | Comptroller | Title: | CTO and VP Business Development |
| Department: | Sponsored Programs Administration | Department: | |
| Address | 1901 S. First Street, Suite A Champaign, IL 61820 | Address | Same as primary address |
| Telephone: | 217-333-2187 | Telephone: | +1 418-262-8707 |
| Facsimile: | 217-239-6830 | Facsimile: | +1 418-522-3345 |
| Email: | spa@illinois.edu | Email: | jlaurent@pavemetrics.com |
| **11 ILLINOIS Technical Representative** | | **12 SUBRECIPIENT Technical Representative** | |
| Name: | J. Riley Edwards | Name: | Richard Fox-Ivey |
| Title: | Sr. Research Scientist | Title: | Principal Consultant |
| Department: | Civil & Environmental Engineering | Department: | |
| Address | 1243 Newmark Civil Eng. Lab 205 N. Mathews Ave. Urbana, IL 61801 | Address | Same as primary address |
| Telephone: | 217-244-7417 | Telephone: | +1 519-342-6305 |
| Email: | jedward2@illinois.edu | Email: | rfoxivey@pavemetrics.com |
| **13 ILLINOIS Financial Representative** | | **14 SUBRECIPIENT Financial Representative** | |
| Name: | Linda Gregory | Name: | Maxime Beaupré |
| Title: | Director, Post-Award | Title: | Financial Director |
| Organization: | Sponsored Programs Administration | Organization: | |
| Address | 1901 S. First Street, Suite A Champaign, IL 61820-7406 | Address | Same as primary address |
| Telephone: | 217-333-2187 | Telephone: | +1 418-930-2534 |
| Facsimile: | 217-239-6830 | Facsimile: | +1 418-522-3345 |
| Email: | spa@illinois.edu | Email: | mbeaupre@pavemetrics.com |
| Email (Invoices): | spasubinvoices@illinois.edu | | |
| **15 ILLINOIS Export Control Representative** | | **16 SUBRECIPIENT Export Control Representative** | |
| Title: | Export Compliance Officer | Title: | CTO and VP Business Development |
| Telephone: | 217-333-2187 | Telephone: | +1 418-262-8707 |
| Email: | exportcontrols@illinois.edu | Email: | jlaurent@pavemetrics.com |
| **17 ILLINOIS Licensing Representative** | | **18 SUBRECIPIENT Licensing Representative** | |
| Title: | Director | Title: | CTO and VP Business Development |
| Telephone: | 217-333-7862 | Telephone: | +1 418-262-8707 |
| Email: | otm@illinois.edu | Email: | jlaurent@pavemetrics.com |

RESTRICTED - ATTORNEYS' EYES ONLY                                    PAVEMETRICS0115433

**Exhibit 40**

101810-18290

## ATTACHMENT 1: General Terms

### ARTICLE 1 - The Project

**1.1.**     The parties to this SUBAWARD may be referred to collectively as the "Parties," or individually as a "Party."

**1.2.**     ILLINOIS makes this SUBAWARD to SUBRECIPIENT in support of the research activities detailed in Attachment 2 ("the Project"). Certain terms of the PRIME AWARD are incorporated into this SUBAWARD as Attachment 3.

**1.3.**     If SUBRECIPIENT's Technical Representative becomes unable to complete the Project, SUBRECIPIENT must notify ILLINOIS in writing as soon as practicable so that either: (a) the parties may agree on a substitute or (b) ILLINOIS may terminate this SUBAWARD in accordance with Article 15.

**1.4.**     SUBRECIPIENT shall notify ILLINOIS as soon as possible of any reason that might interfere with SUBRECIPIENT's ability to fully perform the Project within the Period of Performance, even if the reason is beyond the control and without fault or negligence of SUBRECIPIENT.

### ARTICLE 2 – Payment Terms

ILLINOIS shall have no liability to SUBRECIPIENT for any unobligated portion of the Total Estimated Award unless and until ILLINOIS obligates the funds by written amendment to this SUBAWARD. The funding for this SUBAWARD is subject to and contingent upon the continuing availability of PRIME AWARD funds for this purpose. Indirect costs may be assessed at the rate in effect at the time this SUBAWARD is signed and will remain fixed for the life of the Project, unless approved otherwise in accordance with Article 10.

This SUBAWARD is made on a cost-reimbursable payment basis. ILLINOIS will pay the full amount due within 30 days from its receipt of an invoice submitted in accordance with the requirements of this Article.

**Invoice Submission**: SUBRECIPIENT must submit all invoices to spasubinvoices@illinois.edu.

**Invoice Signature and Certification:** Invoices submitted in the format described below shall constitute financial reports. Each invoice must be signed by the authorized SUBRECIPIENT representative and contain a certification in a form substantially similar to the following:

*By signing this report, I certify to the best of my knowledge and belief that the report is true, complete, and accurate, and the expenditures, disbursements and cash receipts are for the purposes and objectives set forth in the terms and conditions of this SUBAWARD. I am aware that any false, fictitious, or fraudulent information, or the omission of any material fact, may subject me to criminal, civil, or administrative penalties for fraud, false statements, false claims or otherwise. (U.S. Code Title 18, Section 1001 and Title 31, Sections 3729-3730 and 3801-3812).*

**Standard Invoicing:** Not more frequently than monthly, SUBRECIPIENT shall submit invoices to ILLINOIS after incurring allowable costs. All invoices must: (a) provide a current and cumulative breakdown of costs in accordance with the budget categories (including number of hours worked in15 the billing period, F&A broken out into its own line item rather than being incorporated into wages, etc.), and should reflect the line-item Budget; (b) identify the SUBAWARD Number and Grant Code; and (c) be approved and signed by the authorized SUBRECIPIENT Representative. Failure to provide proper invoices may delay payment. SUBRECIPIENT will furnish to ILLINOIS

**Revised 20190418**

RESTRICTED - ATTORNEYS' EYES ONLY                                         PAVEMETRICS0115434

supporting documentation of costs upon request.  A sample Invoice is provided as Attachment 5 to this Subaward,
for use or reference in order to meet the above invoicing requirements.

**Ad Hoc Invoicing**: SUBRECIPIENT must promptly furnish any ad-hoc financial reports to ILLINOIS that ILLINOIS
deems reasonably necessary to meet its obligations under the PRIME AWARD.

**Final Invoice**: SUBRECIPIENT must clearly identify the final invoice as "final" and submit it no later than 30 days
after either expiration or earlier termination of this SUBAWARD.  Retroactive charges will not be allowed after
submission of the final invoice.

## ARTICLE 3 – Applicable Cost Principles

ILLINOIS will determine allowable cost for SUBRECIPIENT's activities in accordance with the applicable cost principles:
Uniform Administrative Requirements for Federal Awards (2 CFR 200).

## ARTICLE 4 – Technical Reports

SUBRECIPIENT shall furnish to ILLINOIS all technical reports and assistance reasonably requested by the ILLINOIS
Technical Representative identified in Block 11 to meet ILLINOIS' obligations under the PRIME AWARD. SUBRECIPIENT
must submit the Final Progress Report to the Technical Representative no later than 15 days after either expiration or
earlier termination of this SUBAWARD.

## ARTICLE 5 – Intellectual Property

**5.1. Rights in Data**. "Data" means the recorded factual material commonly accepted in the scientific community as
necessary to validate research findings. SUBRECIPIENT grants to the federal government the right to obtain,
reproduce, publish and use Data first produced under this SUBAWARD for governmental purposes. SUBRECIPIENT
grants to ILLINOIS an irrevocable, royalty-free, non-transferable, non-exclusive, non-commercial license to use the
Data to the extent necessary for ILLINOIS to meet its obligations under the PRIME AWARD and for its own research
and educational purposes.

**5.2. Copyrights**. SUBRECIPIENT may assert copyright on any original works of authorship that it creates under this
SUBAWARD ("Works"). SUBRECIPIENT grants to the federal government an irrevocable, royalty-free, non-exclusive
license to reproduce, make derivative works, display, distribute and perform publicly the Works (including any
computer software and its documentation and databases) for governmental purposes. SUBRECIPIENT grants to
ILLINOIS an irrevocable, royalty-free, non-transferable, non-exclusive, non-commercial license to reproduce, make
derivatives, display, distribute  and perform the Works to the extent necessary for ILLINOIS to meet its obligations
under the PRIME AWARD and for its own research and educational purposes.

**5.3. Inventions**. "Invention" means all rights in discoveries (a) protectable or protected under Title 35 of the United
States Code and under similar foreign laws and (b) conceived or reduced to practice in performance of the
SUBAWARD. SUBRECIPIENT may retain title to each Invention that its employees make in performance of the
Project ("SUBRECIPIENT Invention")  Title to any Invention made jointly by SUBRECIPIENT and ILLINOIS employees
vests in the parties as joint owners with the rights set forth at 35 U.S.C. 262. SUBRECIPIENT grants to the federal
government a nonexclusive, nontransferable, irrevocable, paid-up license to practice or have practiced for or on
behalf of the United States the SUBRECIPIENT Invention throughout the world. SUBRECIPIENT grants to ILLINOIS an
irrevocable, world-wide, royalty-free, non-exclusive license to practice each  SUBRECIPIENT Invention to the extent
necessary for ILLINOIS to meet its obligations under the PRIME AWARD. SUBRECIPIENT must promptly and fully
report all SUBRECIPIENT Inventions to the ILLINOIS Licensing Representative identified in Block 17.

RESTRICTED - ATTORNEYS' EYES ONLY                                    PAVEMETRICS0115435
**Exhibit 40**

101810-18290

**ARTICLE 6 – Publication**

ILLINOIS encourages SUBRECIPIENT to publish or otherwise make publicly available the results of the Project. "Publish" means to make known to third parties in any format or medium. To assist ILLINOIS in complying with the PRIME AWARD and AGENCY's program guidelines, the Parties agree to confer with each other prior to publishing information concerning the Project to ensure that no Confidential Information is improperly released. ILLINOIS AND SUBRECIPIENT shall each provide the other party a minimum of 30 days to review and comment on any publication prior to its submission to a third party.

SUBRECIPIENT shall include the following acknowledgement and disclaimer in any publication arising from the Project:

Acknowledgment:  Funding for this research was supported by the U.S. Department pf Transportation.
Disclaimer:  The published material represents the position of the author(s) and not necessarily that of the U.S. Department of Transportation.

**ARTICLE 7 – Confidential Information**

"Confidential Information" means all proprietary, privileged or confidential information in any form furnished by the disclosing Party to the receiving Party after the effective date of this SUBAWARD and in connection with the Project that the disclosing Party intends to remain secret from third parties on the grounds that its disclosure would either cause the disclosing Party competitive harm or waive a privilege granted by law. In order to enforce this provision, the disclosing Party must mark tangible information "confidential" at the time of disclosure and, within 30 days of an oral disclosure, provide the receiving Party a written summary that sufficiently describes the information that receiving Party should protect as Confidential Information.

Each Party's obligation of confidentiality shall extend for three years from disclosure and shall not apply to information that: (a) was in receiving Party's  possession on a non-confidential basis prior to receipt from disclosing Party; (b) is in the public domain or is general or public knowledge prior to disclosure, or after disclosure, enters the public domain or becomes general or public knowledge through no fault of receiving Party; (c) is properly obtained by receiving Party from a third party not known to be under a confidentiality obligation to disclosing Party; (d) is explicitly approved for release by written authorization of disclosing Party; (e) is or has been developed by receiving Party independently of receiving Party's access to disclosing Party's Confidential Information; or (f) is required by law or court order to be disclosed. In no event will either Party be in breach of this SUBAWARD for its good faith compliance with applicable law.

**ARTICLE 8 – Compliance Requirements**

In performing the Project, SUBRECIPIENT shall comply with all applicable federal, state, and local laws, rules, ordinances, regulations, orders, and all license and permit requirements.

**ARTICLE 9 – Assignments and Lower-Tier Subrecipients**

SUBRECIPIENT may not assign or subcontract to a third party any portion of its obligations or rights under this SUBAWARD, or pass through funds to another subrecipient, without the prior written consent of ILLINOIS. If assignment, subcontracting or pass-through is permitted, SUBRECIPIENT shall not be released from its contractual obligations to ILLINOIS.

**ARTICLE 10 – Changes and Prior Approval**

SUBRECIPIENT is responsible for both notifying ILLINOIS and obtaining prior written approval of ILLINOIS in the form of an amendment to this SUBAWARD with respect to any material changes to the Project. Examples include, but are not limited to, changes in the Period of Performance, substitution of SUBRECIPIENT's Technical Representative, significant

**Revised 20190418**                                                   Page 5 of 13

101810-18290

re-budgeting, and changes to the scope of work. SUBRECIPIENT should confer with ILLINOIS' Administrative Representative identified in Block 7 if uncertain about the significance of any change

**ARTICLE 11 – Records Retention, Audits and Monitoring**

**11.1   Records Retention.** SUBRECIPIENT shall retain all books and records pertinent to this SUBAWARD for a minimum of three years from the date of final payment.  If ILLINOIS provides SUBRECIPIENT notice of any  audits, appeals, litigation or  settlement of claims arising out of performance of this SUBAWARD, then SUBRECIPIENT must retain all relevant books and records until notified by ILLINOIS of final resolution of the audits, appeals, litigation or claims.

**11.2.   Audits.** Upon reasonable notice, SUBRECIPIENT shall make the books and records available to ILLINOIS and to any federal agency with authority or oversight over the SUBAWARD at SUBRECIPIENT's place of business for examination and copying during normal business hours.

**11.3.   Monitoring Requirement**. (a) SUBRECIPIENT shall cooperate fully with ILLINOIS in its reasonable efforts to monitor SUBRECIPIENT activities under this SUBAWARD in accordance with federal requirements. If SUBRECIPIENT is exempt from federal audit requirements, ILLINOIS, in its discretion, may require SUBRECIPIENT to: (i) provide ILLINOIS with its most recent audit report or statement on compliance and on internal control; (ii) permit ILLINOIS to inspect relevant facilities and operations to ensure compliance with government-wide and program requirements; (iii) interview staff to ensure they are informed of and carry out program policy and regulations; (iv) review all documentation that supports SUBRECIPIENT claims and reports; (v) perform desk reviews of relevant documentation; and (vi) conduct such other reasonable financial monitoring to enable ILLINOIS to properly account for federal funds spent.

(b) SUBRECIPIENT shall cooperate with ILLINOIS to resolve instances of SUBRECIPIENT non-compliance with federal requirements through corrective action. Failure to cooperate may lead to immediate termination of this SUBAWARD by ILLINOIS.

(c) If SUBRECIPIENT is subject to Federal audit requirements, SUBRECIPIENT shall notify ILLINOIS of completion of required audits and of any adverse findings that may impact this SUBAWARD.

**ARTICLE 12 – Termination**

**12.1.   Early Termination.** (a) Either Party may terminate this SUBAWARD for any reason in its discretion by giving no less than 30 days' advance written notice to the other Party. (b) If AGENCY notifies ILLINOIS of early termination of the PRIME AWARD, then ILLINOIS may terminate this SUBAWARD upon prompt written notice to SUBRECIPIENT. (c) In the case of an alleged material breach, the aggrieved Party may terminate this SUBAWARD immediately upon notice to the other Party, or may provide a cure period, in its discretion. The termination remedy is in addition to any other remedies available at law.

**12.2.   Effect of Early Termination**. (a) Upon receipt of notice of early termination, SUBRECIPIENT shall cease incurring costs and shall take immediate action to cancel all outstanding obligations that reasonably can be cancelled. No later than 30 days after the effective date of termination, SUBRECIPIENT shall submit a termination claim to ILLINOIS. SUBRECIPIENT shall be entitled to reimbursement for allowable costs incurred to the date of termination and for all noncancellable obligations up to, but not to exceed, the obligated amount under this SUBAWARD. (b) If SUBRECIPIENT terminates this SUBAWARD, SUBRECIPIENT shall be entitled to reimbursement for all allowable costs incurred to the date of termination.

RESTRICTED - ATTORNEYS' EYES ONLY                                PAVEMETRICS0115437

**Exhibit 40**

**ARTICLE 13 – Resolution of Disputes**

The Parties will negotiate in good faith to resolve any disputes that arise under this SUBAWARD. This SUBAWARD shall be interpreted by application of Illinois law without regard to its conflicts provisions to the extent federal law is not dispositive. If SUBRECIPIENT is a unit of state government, including a public institution of higher education, SUBRECIPIENT does not waive any defenses or immunities afforded by federal or state law.  All suits against ILLINOIS arising out of this SUBAWARD must be filed in accordance with the Illinois Court of Claims Act.

**ARTICLE 14 – Liability**

Neither Party to this SUBAWARD shall be liable for any negligent or intentional acts or omissions chargeable to the other Party, unless such liability is imposed by law.

**ARTICLE 15 – Insurance**

SUBRECIPIENT will maintain sufficient insurance coverage for commercial general liability, including bodily injury and property damage, employer's liability and worker's compensation insurance, and motor vehicle liability to fulfill its obligations under this SUBAWARD.

**ARTICLE 16 – Conflict of Interest**

SUBRECIPIENT affirms that, to the best of its knowledge, there exists no actual or potential conflict of interest involving SUBRECIPIENT or the family, business, or financial interests of SUBRECIPIENT employees and the Project. If SUBRECIPIENT becomes aware of a change in either its private interests or activities under the Project, SUBRECIPIENT will confer with ILLINOIS so that the parties can manage or eliminate the possible conflict of interest that may arise as a result of such change.

**ARTICLE 17 – National Policy Assurances/Certifications**

By signing this SUBAWARD, SUBRECIPIENT makes the following certifications and assurances to the extent required by law:

**17.1. Certification Regarding Lobbying.** (a) No federal appropriated funds have been paid or will be paid, by or on behalf of SUBRECIPIENT to any person for influencing or attempting to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with the awarding of any federal contract, the making of any federal grant, the making of any federal loan, the entering into of any cooperative agreement, and the extension, continuation, renewal, amendment, or modification of any federal contract, grant, loan, or cooperative agreement.

(b) If any funds other than federal appropriated funds have been paid or will be paid to any person for influencing or intending to influence an officer or employee of any agency, a Member of Congress, an officer or employee of Congress, or an employee of a Member of Congress in connection with this federal contract, grant, loan, or cooperative agreement, SUBRECIPIENT shall complete and submit Standard Form -LLL, "Disclosure Form to Report Lobbying," to ILLINOIS.

(c)  SUBRECIPIENT shall require that the language of this certification be included in the award documents for all subawards at all tiers (including subcontracts, subgrants, and contracts under grants, loans, and cooperative agreements) and that all subrecipients shall certify and disclose accordingly.

(d) This certification is a material representation of fact upon which reliance was placed when this transaction was made or entered into. Submission of this certification is a prerequisite for making or entering into this transaction

**Revised 20190418**                                                                                           Page 7 of 13

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115438
**Exhibit 40**

101810-18290

imposed by Section 1352, Title 31, U.S. Code. Any person who fails to file the required certification shall be subject to a civil penalty of not less than $10,000 and not more than $100,000 for each such failure.

**7.2. Debarment and Suspension.** SUBRECIPIENT certifies to the best of its knowledge and belief that it and its principals:  (a) are not presently debarred, suspended, proposed for disbarment, declared ineligible, or voluntarily excluded from covered transactions by any federal department or agency; (b) have not, within a three-year period preceding this application, been convicted of or had a civil judgment rendered against them for commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (federal, state, or local) transaction or contract under a public transaction; violation of federal or state antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property; (c) are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (federal, state, or local) with commission of any of the offenses enumerated in the previous paragraph of this certification; and (d) have not within a three-year period preceding this application had one or more public transactions (federal, state, or local) terminated for cause or default.

**17.3. National Policy Requirements.** SUBRECIPIENT has read and agrees to comply with all relevant national policy requirements set forth at http://www.nsf.gov/bfa/dias/policy/rtc/appc.pdf.

**17.4. General Certification.** The information contained in the SUBAWARD is true and complete to the best of SUBRECIPIENT's knowledge.

## ARTICLE 18 – Export Control

Each Party shall comply with all relevant laws, whether United States or foreign, governing the exports and re-exports of technical data or commodities made under this SUBAWARD. Prior to providing ILLINOIS with any items subject to export control laws, SUBRECIPIENT will notify ILLINOIS and identify the items at issue and the applicable export control laws.  If the items are subject to the Export Administration Regulations ("EAR"), SUBRECIPIENT will either furnish to ILLINOIS the applicable Export Control Classification Numbers or indicate that EAR 99 applies. If the items are subject to the International Traffic in Arms Regulations ("ITAR"), SUBRECIPIENT will notify ILLINOIS of the relevant ITAR categories and subcategories.  ILLINOIS may decline to accept any export-controlled items.  SUBRECIPIENT will direct all notices given under this section to ILLINOIS's Export Compliance Officer listed in Block 15.

## ARTICLE 19 – Counterparts

ILLINOIS and SUBRECIPIENT may sign this SUBAWARD in one or more counterparts, each of which constitutes an original and all of which together constitute the SUBAWARD. Facsimile (such as PDF) signatures shall constitute original signatures for all purposes.

## ARTICLE 20 – Use of Names

Neither Party will use the name of the other in any form of advertising or publicity without the express written permission of the other Party. SUBRECIPIENT shall seek permission from ILLINOIS by submitting the proposed use, well in advance of any deadline, to the Associate Chancellor for Public Affairs, University of Illinois via email at publicaffairs@illinois.edu.

## ARTICLE 21 – Survival

Articles 5, 11, 12 and 21 shall survive termination or expiration of this SUBAWARD.

RESTRICTED - ATTORNEYS' EYES ONLY                                        PAVEMETRICS0115439

**ARTICLE 22 – Entire Agreement**

This SUBAWARD with all attachments and incorporated references is intended to be the Parties' final written expression of their agreement regarding the subject matter. Purchase orders, or similar payment instruments, issued after this SUBAWARD is signed do not amend or supplement the terms of this SUBAWARD but are accepted by ILLINOIS as a payment mechanism only. No other terms shall have effect unless specifically set forth in writing in the form of an amendment to this SUBAWARD and signed by each Party's Authorized Representative. The Parties have caused their Authorized Representatives to sign this SUBAWARD.

**Revised 20190418**

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115440
**Exhibit 40**

101810-18290

**ATTACHMENT 2: Statement of Work and Budget**

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115441

**Exhibit 40**

# Pavemetrics Statement of Work (Phase 2)

Pavemetrics will be responsible for processing and supplying change data for the project as well any refinement of the change detection output files type and additional training of the DNN that is required. Specifically, Pavemetrics tasks will include the following:

**Phase 2 Project Initiation**

- Participate in a Phase 2 kick-off web-meeting with FRA project leadership
- Review available data collected by LRAIL on the HTL at TTCI during Fall 2019 FAST operations (Phase 1), including geometry data collected by LRAIL

### Provision of Change Detection Data for Track Lateral Strength

Provide change detection data that includes the location of anchors to satisfy the FRA's request that track lateral strength be a primary area of focus for this project. Pavemetrics will produce these change detection output files in XML format for the use of Illinois in developing a more comprehensive Condition Change Index for this critical railway track strength condition.

**Development of a "Condition Change Index" for Quantification of the Influence of Change on Safe Train Operations**

Pavemetrics will refine the format and content of the change detection output (XML) in order to inform the development of, and maximize the utility of, the CCI. This task will include as-needed reprocessing of 3D scan data from Phase 1 in order to revise the content and structure of XML change data to best match the research team's requirements. Summary and reporting intervals will be adjusted as needed in order to best quantify key changes identified by the research team. Structure of the XML files will also be updated as needed in order to present XML change data in the most useful manner for analysis. Refinement of linear and spatial location referencing for XML change data will be performed in order to assist the research team's alignment of change data with traditional data sources.

**Case Study: Use of CCI Framework and Change Detection to Evaluate Items of Interest**

Change detection analysis will be performed by Pavemetrics for RailTEC-identified locations of interest. RailTEC will perform a deep investigation at failure points working back in time in order to identify key moments of change which foreshadowed eventual failure or reaching of a maintenance or safety threshold. As RailTEC performs deep analysis using LRAIL data, it is expected that algorithm enhancement will be required in order to mine additional data from the LRAIL 3D scans. For example, an algorithm to detect change in rail anchors may be required to aid in understanding rail breaks.

**Establish Remaining Development Needs and Path Forward**

After the CCI is evaluated (and refined) using data from Fall 2019, discuss any remaining research and development that should be completed in order to maximize the system's efficiency and the accuracy of the CCI metric. This list will include components in need of further change detection algorithm development. Note differences (and any limitations) between the new 3D laser -based track condition change index and traditional methods and metrics, and identify benefits achievable through the combined use of the new CCI metric and track geometry readings.

**Final Reporting and Results Dissemination**

Work with RailTEC to develop a formal project report detailing the work tasks completed under Phase 2, the performance and usefulness of the CCI either 1) in isolation or 2) in conjunction with other traditional track geometry measurements, recommendations for further improvement and consideration in the future, and discussion of any remaining improvements needed for widespread system adoption in revenue service.

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115442
Exhibit 40

**Solicitation: BAA 2018-1 Intelligent Railroad Systems**
**Field Deployment and Validation of Railway Track Inspection Using Deep Neural Networks (DNNs) - Phase 2**

| Name of Project Team Members | Role in Study | Year 1 WBS 4 Hours | Year 1 WBS 5 Hours | Year 1 Total Hours | Year 2 WBS 5 Hours | Year 2 Total Hours | All Years WBS 4 Hours | All Years WBS 5 Hours | All Years Total Hours |
|---|---|---|---|---|---|---|---|---|---|
| **Section A. Personnel Hours** | | | | | | | | | |
| Thanh Nguyen | Algorithm Specialist | 890 | 260 | **1,150** | 0 | **0** | 890 | 260 | **1,150** |
| John Laurent | Contract Manager | 55 | 10 | **65** | 0 | **0** | 55 | 10 | **65** |
| Richard Fox-Ivey | Project Manager | 150 | 52 | **202** | 0 | **0** | 150 | 52 | **202** |
| TOTAL HOURS | | 1,095 | 322 | **1,417** | 0 | **0** | 1,095 | 322 | **1,417** |

| Name of Project Team Members | | Year 1 WBS 4 Wages | Year 1 WBS 5 Wages | Year 1 Total Wages | Year 2 WBS 5 Wages | Year 2 Total Wages | All Years WBS 4 Wages | All Years WBS 5 Wages | All Years Total Wages |
|---|---|---|---|---|---|---|---|---|---|
| **Section B. Personnel Wages** | | | | | | | | | |
| Thanh Nguyen | | $39,531 | $11,549 | **$51,080** | $0 | **$0** | $39,531 | $11,549 | **$51,080** |
| John Laurent | | $7,329 | $1,346 | **$8,675** | $0 | **$0** | $7,329 | $1,346 | **$8,675** |
| Richard Fox-Ivey | | $14,250 | $4,933 | **$19,183** | $0 | **$0** | $14,250 | $4,933 | **$19,183** |
| | | $0 | $0 | **$0** | $0 | **$0** | $0 | $0 | **$0** |
| **TOTAL WAGES** | | $61,110 | $17,828 | **$78,938** | $0 | **$0** | $61,110 | $17,828 | **$78,938** |

| Section C. Fringe Benefits | 15% | Year 1 WBS 4 | Year 1 WBS 5 | Year 1 Totals | Year 2 WBS 5 | Year 2 Totals | All Years WBS 4 | All Years WBS 5 | All Years Totals |
|---|---|---|---|---|---|---|---|---|---|
| Fringe | | $9,167 | $2,674 | $11,841 | $0 | $0 | $9,167 | $2,674 | $11,841 |
| Total Personnel | | $70,277 | $20,502 | $90,779 | $0 | $0 | $70,277 | $20,502 | $90,779 |

| Section D. Direct Costs | Rates | Year 1 WBS 4 | Year 1 WBS 5 | Year 1 Totals | Year 2 WBS 5 | Year 2 Totals | All Years WBS 4 | All Years WBS 5 | All Years Totals |
|---|---|---|---|---|---|---|---|---|---|
| Materials & Supplies | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Equipment | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Services | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Subtotal Direct Costs | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| Section E. Travel | | WBS 4 | WBS 5 | Totals | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
|---|---|---|---|---|---|---|---|---|---|
| Travel | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Total Direct Costs | | $70,277 | $20,502 | $90,779 | $0 | $0 | $70,277 | $20,502 | $90,779 |

| Section F. Indirect Costs | Rates | Year 1 WBS 4 | Year 1 WBS 5 | Year 1 Totals | Year 2 WBS 5 | Year 2 Totals | All Years WBS 4 | All Years WBS 5 | All Years Totals |
|---|---|---|---|---|---|---|---|---|---|
| F&A | 0.1 | $7,028 | $2,050 | $9,078 | $0 | $0 | $7,028 | $2,050 | $9,078 |
| Subtotal Indirect Costs | | $7,028 | $2,050 | $9,078 | $0 | $0 | $7,028 | $2,050 | $9,078 |

| | Year 1 WBS 4 | Year 1 WBS 5 | Year 1 Totals | Year 2 WBS 5 | Year 2 Totals | All Years WBS 4 | All Years WBS 5 | All Years Totals |
|---|---|---|---|---|---|---|---|---|
| Total Funds Requested | $77,304 | $22,552 | $99,856 | $0 | $0 | $77,304 | $22,552 | $99,856 |

| Section G. Cost Share | WBS 4 | WBS 5 | Totals | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
|---|---|---|---|---|---|---|---|---|
| | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| | WBS 4 | WBS 5 | Totals | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
|---|---|---|---|---|---|---|---|---|
| Total Project Cost | $77,304 | $22,552 | $99,856 | $0 | $0 | $77,304 | $22,552 | $99,856 |

RESTRICTED - ATTORNEYS' EYES ONLY
PAVEMETRICS0115443
**Exhibit 40**

## Budget Justification

The proposed budget consists of the following categories of expenditures, listed with specific justification for each category. The following figures of costs are provided for estimating purposes only

The text below describes the detailed cost budget.

Section A. Personnel Hours

**Senior Personnel**

The Project Manager (PM), Richard Fox-Ivey, will work a total of 202 hours on the project providing primary oversight of the project. Contract Manager, John Laurent, will work a total of 65 hours on the project. Thanh Nguyen, Algorithm Specialist, will work a total of 1,150 hours on the project processing and reporting data and optimizing railway inspection algorithms.

Section B. Personnel Wages

Current hourly rates for each member of the project team are shown in Section A of the budget.

Section C. Fringe Benefits

The fringe benefits rate is 15% of wages paid.

Section D. Direct Costs

**Services**

Not applicable.

Section E. Travel

Not applicable.

Section F. Indirect Costs

A Facilities and Administration (F&A) multiplier of 10% was applied to all direct costs.

**Total Project Cost:**
The total project cost is $99,856.

**Exhibit 40**

## ATTACHMENT 3: Prime Award Terms

☒ The Prime Award is attached and forms a part of this SUBAWARD.

☐ The specific terms of the PRIME AWARD noted on the following pages form a part of this SUBAWARD.

In the event of any inconsistency between the terms of the SUBAWARD and the terms of the PRIME AWARD that are incorporated into this SUBAWARD, the terms of the PRIME AWARD shall take precedence.

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115445
**Exhibit 40**

| **AWARD/CONTRACT** | | **1. THIS CONTRACT IS A RATED ORDER UNDER DPAS (15 CFR 700)** | | **RATING** | | **PAGE  OF PAGES** 1    30 | |
|---|---|---|---|---|---|---|---|

| 2. CONTRACT *(Proc. Inst. Ident.) NO.* | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQUEST/PROJECT NO. |
|---|---|---|
| 693JJ620C000035 | See Block 20C | FR20RPD31000000046 |

| 5. ISSUED BY | CODE | 693JJ6 | 6. ADMINISTERED BY *(If other than Item 5)* | CODE | |
|---|---|---|---|---|---|

Federal Railroad Administration
Office of Acquisitions
1200 New Jersey Avenue SE
Washington DC 20590

SCD-C

| 7. NAME AND ADDRESS OF CONTRACTOR *(No., street, country, State and ZIP Code)* | 8. DELIVERY |
|---|---|

ILLINOIS UNIVERSITY OF
506 S WRIGHT ST
URBANA IL 61801-3620

8. DELIVERY
☐ FOB ORIGIN      ☒ OTHER *(See below)*

9. DISCOUNT FOR PROMPT PAYMENT

10. SUBMIT INVOICES      ITEM
(4 copies unless otherwise specified)
TO THE ADDRESS SHOWN IN

| CODE  100003365 | FACILITY CODE | |
|---|---|---|

| 11. SHIP TO/MARK FOR | CODE | FRA RPD-31 | 12. PAYMENT WILL BE MADE BY | CODE | FR DELPHI EINVOICIN |
|---|---|---|---|---|---|

Track Research Division
1200 New Jersey Ave. SE
Washington DC 20590

FRA Delphi eInvoicing System
https://einvoice.esc.gov

| 13. AUTHORITY FOR USING OTHER THAN FULL AND OPEN COMPETITION: | 14. ACCOUNTING AND APPROPRIATION DATA |
|---|---|
| ☐ 10 U.S.C. 2304 (c) (        )     ☒ 41 U.S.C. 3304 (a) (        ) | See Schedule |

| 15A. ITEM NO | 15B. SUPPLIES/SERVICES | 15C. QUANTITY | 15D. UNIT | 15E. UNIT PRICE | 15F. AMOUNT |
|---|---|---|---|---|---|
| | Continued | | | | |

15G. TOTAL AMOUNT OF CONTRACT ▶

**16. TABLE OF CONTENTS**

| (X) | SEC. | DESCRIPTION | PAGE(S) | (X) | SEC. | DESCRIPTION | PAGE(S) |
|---|---|---|---|---|---|---|---|
| | | PART I - THE SCHEDULE | | | | PART II - CONTRACT CLAUSES | |
| X | A | SOLICITATION/CONTRACT FORM | 1-2 | X | I | CONTRACT CLAUSES | 10-12 |
| X | B | SUPPLIES OR SERVICES AND PRICES/COSTS | 3 | | | PART III - LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACH. | |
| X | C | DESCRIPTION/SPECS./WORK STATEMENT | 3 | X | J | LIST OF ATTACHMENTS | 12 |
| X | D | PACKAGING AND MARKING | 3 | | | PART IV - REPRESENTATIONS AND INSTRUCTIONS | |
| X | E | INSPECTION AND ACCEPTANCE | 3 | | K | REPRESENTATIONS, CERTIFICATIONS AND OTHER STATEMENTS OF OFFERORS | |
| X | F | DELIVERIES OR PERFORMANCE | 4-6 | | | | |
| X | G | CONTRACT ADMINISTRATION DATA | 6-8 | | L | INSTRS., CONDS., AND NOTICES TO OFFERORS | |
| X | H | SPECIAL CONTRACT REQUIREMENTS | 8-9 | | M | EVALUATION FACTORS FOR AWARD | |

CONTRACTING OFFICER WILL COMPLETE ITEM 17 (SEALED-BID OR NEGOTIATED PROCUREMENT) OR 18 (SEALED-BID PROCUREMENT) AS APPLICABLE

17. ☒ CONTRACTOR'S NEGOTIATED AGREEMENT *(Contractor is required to sign this document and return* ____1____ *copies to issuing office.)* Contractor agrees to furnish and deliver all items or perform all the services set forth or otherwise identified above and on any continuation sheets for the consideration stated herein. The rights and obligations of the parties to this contract shall be subject to and governed by the following documents: (a) this award/contract, (b) the solicitation, if any, and (c) such provisions, representations, certifications, and specifications, as are attached or incorporated by reference herein. *(Attachments are listed herein.)*

18. ☐ SEALED-BID AWARD *(Contractor is not required to sign this document.)* Your bid on Solicitation Number _____ , including the additions or changes made by you which additions or changes are set forth in full above, is hereby accepted as to the items listed above and on any continuation sheets. This award consummates the contract which consists of the following documents: (a) the Government's solicitation and your bid, and (b) this award/contract. No further contractual document is necessary. (Block 18 should be checked only when awarding a sealed-bid contract.)

| 19A. NAME AND TITLE OF SIGNER *(Type or print)* | 20A. NAME OF CONTRACTING OFFICER |
|---|---|
| | MOYAH WILSON |

| 19B. NAME OF CONTRACTOR | 19C. DATE SIGNED | 20B. UNITED STATES OF AMERICA | 20C. DATE SIGNED |
|---|---|---|---|
| BOARD OF TRUSTEES OF THE UNIVERSITY OF ILLINOIS BY *Avijit Ghosh* Avijit Ghosh, Comptroller | 10/15/2020 | B *MOYAH WILSON*  Digitally signed by MOYAH WILSON Date: 2020.09.20 22:48:13 -04'00' *(Signature of the Contracting Officer)* | 9/20/2020 |

AUTHORIZED FOR LOCAL REPRODUCTION
Previous edition is NOT usable

*[signature]*

Paula Jorge, Assoc. Director – Negotiations
and Comptroller Delegate

STANDARD FORM 26 (Rev. 3/2013)
Prescribed by GSA - FAR (48 CFR) 53,214(a)

PAVEMETRICS0115446

**Exhibit 40**

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED 693JJ620C000035 | | | PAGE 2 | OF 30 |
|---|---|---|---|---|---|

**NAME OF OFFEROR OR CONTRACTOR**
ILLINOIS UNIVERSITY OF

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
|  | DUNS Number:  041544081<br>Accounting Info:<br>27X0745020.2020.1602TSTIT0.9031000000.25500.610066<br>00.0000000000.0000000000.0000000000.0000000000<br>Period of Performance: 10/01/2020 to 03/31/2022 | | | | |
| 00001 | Cost No-Fee R&D Project entitled "Phase 2: Framework for Isolating and Reporting Relevant Track Changes to Decision Makers" dated September 9, 2020.<br><br>COR: Cam Stuart<br>Obligated Amount:<br>Product/Service Code:  AS32<br><br><br>The total amount of award:          The obligation for this award is shown in box 15G. | | | | |

AUTHORIZED FOR LOCAL REPRO

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115447
**Exhibit 40**

693JJ620C000035

**SECTION B - Supplies or Services/Prices**

**Base Contract**

| **Contract Line Item Number (CLIN) 00001** | **Price:** | _ |
|---|---|---|
| | **Total:** | _ |

This is a Cost-No Fee contract.

**Description**

**Project:** **"**Phase 2: Framework for Isolating and Reporting Relevant Track Changes to Decision Makers**"**

## Schedule of Deliverables

| Deliverables | Description of Deliverables | Delivery Date |
|---|---|---|
| D4.1 | Conduct a Phase 2 kick-off web-meeting with FRA project leadership. | Month 1 |
| D4.2 | Summary review of available track strength / health indices used in the industry. | Month 4 |
| D4.3 | Prototype reporting method that considers rate of change and encroachment on relevant failure thresholds. | Month 10 |
| D4.4 | Project update Presentation (PPT) suitable for presentation at a conference. | Month 10 |
| D5.1 | Summary of CCI performance and method for track change exception reporting. | Month 12 |
| D5.2 | Formal project final report | Month 18 |
| D5.3 | Monthly project update calls with FRA | Monthly |
| D5.4 | Quarterly project reports | Quarterly |

**SECTION C - Description/Specifications**

**C.1    STATEMENT OF WORK**

Research Project Proposal "Use of Laser Triangulation and Deep Neural Networks (DNNs) for Railway Safety Inspections" submitted July 27, 2018 is incorporated by reference.

**SECTION D - Packaging and Marking**

**D.1    PACKAGING, MARKING AND POSTAGE**

(a) All information submitted to the Contracting Officer or the Contracting Officer's Representative (COR) shall be clearly marked with the name of the contractor, as well as the contract, task order and/or modification number as appropriate.

(b) All contract-related postage and fees shall be paid by the contractor.

**SECTION E - Inspection and Acceptance**

**E.1 52.246-9 INSPECTION OF RESEARCH AND DEVELOPMENT (SHORT FORM). APR 1984)**

3

693JJ620C000035

## SECTION F - Deliveries or Performance

### F.1    PLACE OF PEFORMANCE/DELIVERY

The Contractor shall submit all required deliverables, progress reports and documents in electronic format by email, referencing the contract number, to the following email addresses. In the event, another deliverable format is necessary for delivery, the Contractor shall use the following mailing addresses.

**Contracting Officer's Representative (COR):**

Cam Stuart
Federal Railroad Administration
Office of Acquisition Services
1200 New Jersey Avenue, SE
West Building, 3rd Floor
Washington, D.C. 20590
202-493-6384
cameron.stuart@dot.gov

Contracting Officer (CO):
Moyah Wilson
Federal Railroad Administration
Office of Acquisition Services
1200 New Jersey Avenue, SE
West Building, 3rd Floor
Washington, D.C. 20590
moyah.wilson@dot.gov
(202) 493-6222

### F.2    DELIVERABLES/DELIVERY SCHEDULE

The contractor shall submit via email to the COR a quarterly progress reports within fifteen (15) calendar days following the end of month.  The contractor shall submit to the designated Contracting Officer Representative two copies of each progress report describing:

The report shall contain:

1. A summary of the progress made under the contract during the reporting period, separated into logical elements of work.  This shall include pertinent data and graphs sufficient to explain any significant results achieved;

2. An explanation of any technical and/or schedule problems which may have occurred or are expected to arise.  The description of any differences between planned and actual technical progress shall include a statement of why the difference occurred or why they are expected to occur and what remedial or alternative actions are planned or recommended.  This may include any recommended action by the Government to assist in resolution of a problem;

4

693JJ620C000035

3. Actual versus planned level of effort broken down by individual tasks, including cumulative
expenditures incurred and earned value management (EVM) as applicable by the FRA's
direction;

4. Projected activities and costs for the next reporting period;

5. Minutes of status review meetings, if any; and

6. A cost breakdown and summary of all travel during the reporting period.

Other deliverables may include briefings, hardware and software (computer programs) and
associated user manuals, drawings, photos, video tapes or some combination thereof.   The type
of each deliverable will be determined by the nature of the requirement as defined by the
statement of work incorporated by section.

### F.3    FAR 52.242-15 STOP-WORK ORDER. (AUG 1989) ALTERNATE I (APR 1984).

(a) The Contracting Officer may, at any time, by written order to the Contractor, require the
Contractor to stop all, or any part, of the work called for by this contract for a period of 30 days
after the order is delivered to the Contractor, and for any further period to which the parties may
agree. The order shall be specifically identified as a stop-work order issued under this clause.
Upon receipt of the order, the Contractor shall immediately comply with its terms and take all
reasonable steps to minimize the incurrence of costs allocable to the work covered by the order
during the period of work stoppage. Within a period of 30 days after a stop-work is delivered to
the Contractor, or within any extension of that period to which the parties shall have agreed, the
Contracting Officer shall either --

(1) Cancel the stop-work order; or

(2) Terminate the work covered by the order as provided in the Default, or the Termination for
Convenience of the Government, clause of this contract.

(b) If a stop-work order issued under this clause is canceled or the period of the order or any
extension thereof expires, the Contractor shall resume work. The Contracting Officer shall make
an equitable adjustment in the delivery schedule or contract price, or both, and the contract shall
be modified, in writing, accordingly, if --

(1) The stop-work order results in an increase in the time required for, or in the Contractor's cost
properly allocable to, the performance of any part of this contract; and

(2) The Contractor asserts its right to the adjustment within 30 days after the end of the period of
work stoppage; provided, that, if the Contracting Officer decides the facts justify the action, the
Contracting Officer may receive and act upon the claim submitted at any time before final
payment under this contract.

(c) If a stop-work order is not canceled and the work covered by the order is terminated for the
convenience of the Government, the Contracting Officer shall allow reasonable costs resulting

5

693JJ620C000035

from the stop-work order in arriving at the termination settlement.

(d) If a stop-work order is not canceled and the work covered by the order is terminated for
default, the Contracting Officer shall allow, by equitable adjustment or otherwise, reasonable
costs resulting from the stop-work order.

(End of Clause)

## SECTION G - Contract Administration Data

### G.1     TAR 1252.242-73 CONTRACTING OFFICER'S REPRESENTATIVE. (OCT 1994)

(a) The Contracting Officer may designate Government personnel to act as the Contracting
Officer's Representative (COR) to perform functions under the contract such as review and/or
inspection and acceptance of supplies, services, including construction, and other functions of a
technical nature. The Contracting Officer will provide a written notice of such designation to the
Contractor within five working days after contract award or for construction, not less than five
working days prior to giving the contractor the notice to proceed. The designation letter will set
forth the authorities and limitations of the COR under the contract.

(b) The Contracting Officer cannot authorize the COR or any other representative to sign
documents (i.e., contracts, contract modifications, etc.) that require the signature of the
Contracting Officer.

**(c) Cam Stuart is hereby designated as the Contracting Officer's Representative (COR) for this**
contract. Mr. Cam Stuart can be reached by telephone at (202)-493-6384.
or email at cameron.stuart@dot.gov.

### G.2     INVOICE INSTRUCTIONS

**(a) Definitions. As used in this clause—**
(1) Contract financing payment has the meaning given in FAR 32.001.
(2) Payment request means a bill, voucher, invoice, or request for contract financing payment
or invoice payment with associated supporting documentation. The payment request must
comply with the requirements identified in FAR 32.905(b), "Content of Invoices," this
clause, and the applicable Payment clause included in this contract.
(3) Electronic form means an automated system transmitting information electronically
according to the accepted electronic data transmission methods and formats identified in
paragraph (c) of this clause. Facsimile, email, and scanned documents are not acceptable
electronic forms for submission of payment requests.
(4) Invoice payment has the meaning given in FAR 32.001.
(b) Electronic payment requests. Except as provided in paragraph (e) of this clause, the
contractor shall submit payment requests in electronic form. Purchases paid with a
Governmentwide commercial purchase card are considered to be an electronic transaction for
purposes of this rule, and therefore no additional electronic invoice submission is required.
(c) The Department of Transportation utilizes the Delphi eInvoicing web-portal for
processing invoices. For vendors submitting invoices, and certain grantees submitting

6

693JJ620C000035

payment requests, they will be required to submit invoices to the Operating Agency (OA) electronically via the Delphi eInvoicing web-portal which is accessed via https://einvoice.esc.gov, and is authenticated via www.login.gov. All persons accessing the Delphi eInvoicing web-portal will be required to have their own unique user Delphi eInvoicing ID and be credentialed through login.gov. See www.login.gov for instructions. (d) In order to receive payment and in accordance with the Prompt Payment Act, all invoices submitted as attachments in the Delphi eInvoicing web-portal shall contain the following:
(1) Invoice number and invoice date.
(2) Period of performance covered by invoice.
(3) Contract number and title.
(4) Task/Delivery Order number and title (if applicable).
(5) Amount billed (by CLIN), current and cumulative.
(6) Total ($) of billing.
(7) Cumulative total billed for all contract work to date.
(8) Name, title, phone number, and mailing address of person to be contacted in the event of a defective invoice.
If the contract includes allowances for travel, all invoices which include charges pertaining to travel expenses will catalog a breakdown of reimbursable expenses with the appropriate receipts to substantiate the travel expenses.

(1) Electronic authentication. See www.login.gov for instructions. Click on the following link for assistance https://login.gov/help/

(2) To create a login.gov account, the user will need a valid email address and a working phone number. The user will create a password and then login.gov will reply with an email confirming the email address.

(3) Agency POCs will be responsible for communicating with vendor POCs to initiate the Delphi eInvoicing account creation process. Vendor POCs who will require access to the eInvoicing web-portal for invoice submission and payment tracking purposes will be required to provide their full name, valid email address, and current phone number to the agency POC to initiate the Delphi eInvoicing web-portal account. Vendor users and the agency POC will be notified via e-mail when the account is created. The vendor user will be provided detailed instructions for logging into their Delphi eInvoicing account.

(4) Training on Delphi. To facilitate use of DELPHI, comprehensive user information is available at http://einvoice.esc.gov

(5) Account Management. Vendors are responsible to contact the Delphi Help Desk when **their firm's points of contacts will no longer be** submitting invoices so they can be removed from the system. Instructions for contacting the Delphi Help Desk can be found at http://einvoice.esc.gov

FRA vendors shall submit invoices to FRA electronically via the Delphi eInvoicing web-portal. To initiate this process, you are requested to provide FRA with information (company

7

693JJ620C000035

name, contract/task order number/purchase order (PO) number, and up to two Point of
Contact (POC) full names and their email addresses) as shown on the table below.

| Company Name | FRA Contract #/ Task Order # | Primary POC First Name | Primary POC Last Name | Primary POC email | Secondary POC First Name | Secondary POC Last Name | Secondary POC email |
|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |

Email the above information to the following email address: FRAEInvoicing@dot.gov.
Please note that the POCs you provide are the individuals you authorize to submit invoices to
FRA on behalf of your company. Your POCs will then receive a welcome letter from Delphi
eInvoicing processing center with instructions on creating a Login.gov user account. This
account can then be used to access the eInvoicing web-portal.

## G.4   TRAVEL AND PER DIEM

(a) All travel reimbursable hereunder shall conform to the requirements under FAR 31.3.

(b) All travel shall be reimbursed in accordance with current Government travel regulations at
economy class rates when available. If not available, reimbursement vouchers shall be annotated
that economy class was not available. The contractor shall be reimbursed for actual costs incurred
for per diem/subsistence costs in accordance with current Government travel regulations.

### SECTION H - Special Contract Requirements

## H.1   ACCESSIBILITY OF MEETINGS AND CONFERENCES TO PERSONS WITH DISABILITIES

The contractor shall assure that any meeting or conference held pursuant to the contract will meet
all applicable standards for accessibility to persons with disabilities in accordance with Section
504 of the Rehabilitation Act of 1973, as amended (29 U.S.C. 794) and any implementing
regulations.

## H.2   REPRODUCTION OF REPORTS

Federal printing and binding regulations require that printing or reproduction of reports, data, or
other written materials produced under contracts or grants which exceed 5,000 production units of
any page, or 25,000 production units in the aggregate, must be processed through the U.S.
Government Printing Office (GPO). Accordingly, unless otherwise specifically approved in
advance by the Contracting Officer, any project report or other written materials produced under
an order on this contract that is expected to exceed these limits must be submitted to the COTR in
one camera-ready original. The Government will reproduce copies exceeding the above limits.
Any use of color in the final report that would result in color printing (black plus one or more
colors) must have prior approval of the Contracting Officer. All printing funded by this contract

8

693JJ620C000035

or order hereunder must be done in conformance with Joint Committee on Printing regulations as prescribed in Title 44, U.S.C., and Section 308 of Public Law 101-163, and all applicable Government Printing Office and Department of Transportation regulations.

## H.3    CONFLICTS OF INTEREST

The contractor to promptly disclose in writing to the Contracting Officer and COR any actual or apparent conflict of interest, or an interest or interests that may give rise to the appearance of a conflict that could affect the public's confidence in Department's execution of federal laws and regulations governing its financial assistance and safety programs.

Any other matter that could represent a potential conflict of interest must be promptly brought to the attention of the Contracting Officer who, after **consulting with the COR, FRA's Office of** Chief Counsel, will make a final decision relative to the contract for which the Department is seeking services.

## H.4     LIMITED USE OF DATA AND INFORMATION

(a) Performance of this contract may require the contractor to access and use information proprietary to the Government or a Government contractor.  This information may be of such a nature that its dissemination or use, other than in performance of this contract, would be adverse to the interests of the Government and/or others.

## H.5 OTHER PERTINENT INFORMATION OR SPECIAL CONSIDERATIONS

**a. Restrictions on Use, Disclosure, and Duplication of Confidential and Non- Public Information.**

**Reserved.**

**b. Non-Disclosure Agreement for Confidential and Non-Public Information**.

**Reserved.**

**c. Patent rights – Reporting and Disclosures to Government**

**Reserved.**

## H.6     1252.242-70 DISSEMINATION OF INFORMATION-EDUCATIONAL INSTITUTIONS (OCT 1994)

## H.7     1252.223-73 SEAT BELT USE POLICIES AND PROGRAMS. (APR 2005)

## H.8     1252.235-70 RESEARCH MISCONDUCT. (APR 2005)

9

693JJ620C000035

## SECTION I - Contract Clauses

**52.202-1  DEFINITIONS. (NOV 2013)**

**52.203-3  GRATUITIES. (APR 1984)**

**52.203-5  COVENANT AGAINST CONTINGENT FEES. (MAY 2014)**

 **52.203-7  ANTI-KICKBACK PROCEDURES. (MAY 2014)**

**52.203-8  CANCELLATION, RESCISSION, AND RECOVERY OF FUNDS FOR ILLEGAL OR IMPROPER ACTIVITY. (MAY 2014)**

**52.203-10  PRICE OR FEE ADJUSTMENT FOR ILLEGAL OR IMPROPER ACTIVITY. (MAY 2014)**

**52.203-12  LIMITATION ON PAYMENTS TO INFLUENCE CERTAIN FEDERAL TRANSACTIONS (OCT 2010)**

**52. 203-17 CONTRACTOR EMPLOYEE WHISTLEBLOWERS RIGHTS AND REQUIREMENT TO INFORM EMPLOYEES OF WHISTLEBLOWER RIGHTS. (APR 2014)**

**52.203-18 PROHIBITION ON CONTRACTING WITH ENTITIES THAT REQUIRE CERTAIN INTERNAL CONFIDENTIALITY AGREEMENTS OR STATEMENTS REPRESENT (JAN 2017)**

**52.204-4  PRINTED OR COPIED DOUBLE-SIDED ON POSTCONSUMER FIBER CONTENT PAPER. (MAY 2011)**

**52.204-10   REPORTING EXECUTIVE COMPENSATION AND FIRST-TIER SUBCONTRACT AWARDS. (OCT 2016)**

**52.204-13  SYSTEM FOR AWARD MANAGEMENT MAINTENANCE. (OCT 2016)**

**52.204-19  INCORPORATION BY REFERENCE OF REPRESENTATIONS AND CERTIFICATIONS. (DEC 2014)**

**52.209-6   PROTECTING THE GOVERNMENT INTEREST WHEN SUBCONTRACTING WITH CONTRACTORS DEBARRED, SUSPENED OR PROPSED FOR DEBARMENT (OCT 2015).**

**52.209-10 PROHIBITION ON CONTRACTING WITH INVERTED DOMESTIC CORPORATIONS. (NOV 2015)**

**52.215-2  AUDIT AND RECORDS—NEGOTIATION. (OCT 2010)** -ALTERNATE II (AUG 2016)

**52.215-8  ORDER OF PRECEDENCE - UNIFORM CONTRACT FORMAT. (OCT 1997)**

**52.215-23 LIMITATIONS ON PASS-THROUGH CHARGES (OCT 2009)**

**52.216-7   ALLOWABLE COST AND PAYMENT. (AUG 2018)** -ALTERNATE II (AUG 2012)

**52.216-11   COST CONTRACT—NO FEE. (APR 1984) -ALTERNATE  I (APR1984)**

10

693JJ620C000035

**52.216-15  PREDETERMINED INDIRECT COST RATES (APR 1998)**

**52.216-24 LIMITATION OF GOVERNMENT LIABILITY (APR 1984)**

**52.219-28  POST-AWARD SMALL BUSINESS PROGRAM REPRESENTATION.  (JUL 2013)**

**52.222-3   CONVICT LABOR. (JUN 2003)**

**52.222-21  PROHIBITION OF SEGREGATED FACILITIES (APR 2015)**

**52.222-26  EQUAL OPPORTUNITY. (SEPT 2016)**

**52.222-35 EQUAL OPPORTUNITY FOR VETERANS (OCT 2015)**

**52.222-36  EQUAL OPPORTUNITY FOR WORKERS WITH DISABILITIES.
          (JUL 2014)**

**52.222-37  EMPLOYMENT REPORTS ON VETERANS (FEB 2016)**

**52.222-50  COMBATING TRAFFICKING IN PERSONS (MAR 2015)**

**52.222-54  EMPLOYMENT ELIGIBILITY VERIFICATION (OCT 2015)**

**52.223-6   DRUG-FREE WORKPLACE (MAY 2001)**

**52.223-18  ENCOURAGING CONTRACTOR POLICIES TO BAN TEXT MESSAGING WHILE
DRIVING. (AUG 2011)**

**52.225-13  RESTRICTIONS ON CERTAIN FOREIGN PURCHASES. (JUN 2008)**

**52.227-1  AUTHORIZATION AND CONSENT. (DEC 2007)- ALTERNATE I
 (DEC 2007)**

**52.227-11  PATENT RIGHTS--OWNERSHIP BY THE CONTRACTOR. (MAY 2014)**

**52.227-14  RIGHTS IN DATA--GENERAL. (MAY 2014)  ALTERNATE IV (MAY 2014)**

**52.228-7  INSURANCE – LIABILITY TO THIRD PERSONS (MAR 1996)**

**52.232-20  LIMITATION OF COST (APR 1984)**

**52.232-23  ASSIGNMENT OF CLAIMS. (MAY 2014)**

**52.232-25  PROMPT PAYMENT. (JAN 2017)**

 **52.232-33  PAYMENT BY ELECTRONIC FUNDS TRANSFER –SYSTEM FOR AWARD
MANAGEMNT (JUL 2013)**

**52.232-39  UNENFORCEABILITY OF UNAUTHORIZED OBLIGATIONS.(JUN 2013)**

**52.232-40  PROVIDING ACCELERATED PAYMENTS TO SMALL BUSINESS
SUBCONTRACTORS. (DEC 2013)**

11

     PAVEMETRICS0115456
**Exhibit 40**

693JJ620C000035

**52.233-1 DISPUTES (MAY 2014) - ALTERNATE I (DEC 1991)**

**52.233-3 PROTEST AFTER AWARD. (AUG 1996) - ALTERNATE I (JUN 1985)**

**52.233-4  APPLICABLE LAW FOR BREACH OF CONTRACT CLAIM. (OCT 2004)**

**52.242-1  NOTICE OF INTENT TO DISALLOW COSTS. (APR 1984)**

**52.242-13 BANKRUPTCY (JULY 1995)**

**52.243-2  CHANGES – COST REIMBURSEMENT (AUG 1987) – ALTERNATE V (APR 1984)**

**52.244-2  SUBCONTRACTS.(OCT 2010) -ALTERNATE I (JUN 2007)**

**52.244-6  SUBCONTRACTS FOR COMMERCIAL ITEMS (AUG 2018)**

**52.249-5  TERMINATION FOR CONVENIENCE OF THE GOVERNMENT (EDUCATIONAL AND OTHER NONPROFIT INSTITUTIONS) (AUG 2016)**

**52.252-2  CLAUSES INCORPORATED BY REFERENCE. (FEB 1998)**

12

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115457
**Exhibit 40**

101810-18290

## ATTACHMENT 4: FFATA

| | |
|---|---|
| Please provide a brief project description: | Use of Laser Triangulation and Deep Neural Networks (DNNs) for Railway Safety Inspections |

| | | |
|---|---|---|
| What is the Performance Site? | Street Address: | 150 Boulevard René-Lévesque Est, Suite 1820 |
| | City, State, Country, 9-digit Zip Code: | Quebec City, Quebec, Canada, G1R 5B1 |
| | Congressional District: | N/A |

The names and total compensation of the five most highly compensated officers of the SUBRECIPIENT must be listed if:

(i)     the entity in the preceding fiscal year received— (I) Eighty (80) percent or more of its annual gross revenues in Federal awards (federal contracts (and subcontracts), loans, grants (and subgrants) and cooperative agreements); AND

(ii)    Twenty-five million dollars ($25,000,000) or more in annual gross revenues from Federal awards; AND

(iii)   the public does not have access to information about the compensation of the senior executives of the entity through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986.

Is Subrecipient exempt from reporting compensation?     ☒ Yes   ☐ No

| | Name | Compensation |
|---|---|---|
| **Officer 1** | Click here to enter text. | Click here to enter text. |
| **Officer 2** | Click here to enter text. | Click here to enter text. |
| **Officer 3** | Click here to enter text. | Click here to enter text. |
| **Officer 4** | Click here to enter text. | Click here to enter text. |
| **Officer 5** | Click here to enter text. | Click here to enter text. |

RESTRICTED - ATTORNEYS' EYES ONLY                                  PAVEMETRICS0115458

**Exhibit 40**

101810-18290

## ATTACHMENT 5: SAMPLE INVOICE



Subaward Invoice
Example Template_Co

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115459
**Exhibit 40**

**- 102 -**

# EXHIBIT 41

| AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT | | 1. CONTRACT ID CODE | | PAGE OF PAGES | |
|---|---|---|---|---|---|
| | | | | 1 | 17 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO. (If applicable) |
|---|---|---|---|
| P00001 | See Block 16C | FR21RPD31000000016 | |

| 6. ISSUED BY | CODE | 693JJ6 | 7. ADMINISTERED BY (If other than Item 6) | CODE | |
|---|---|---|---|---|---|

Federal Railroad Administration
Office of Acquisitions
1200 New Jersey Avenue SE
Washington DC 20590

| 8. NAME AND ADDRESS OF CONTRACTOR (No., street, county, State and ZIP Code) | (x) | 9A. AMENDMENT OF SOLICITATION NO. |
|---|---|---|
| UNIVERSITY OF ILLINOIS
352 HENRY ADMINISTRATION BLDG
URBANA IL 61801 | | 9B. DATED (SEE ITEM 11) |
| | X | 10A. MODIFICATION OF CONTRACT/ORDER NO.
693JJ620C000035 |
| | | 10B. DATED (SEE ITEM 13) |
| CODE   S041544081 | FACILITY CODE | 09/20/2020 |

**11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS**

☐ The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offers ☐ is extended. ☐ is not extended.
Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended , by one of the following methods: (a) By completing
Items 8 and 15, and returning _____ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted ; or (c) By
separate letter or electronic communication which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGEMENT TO BE
RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR
OFFER. If by virtue of this amendment you desire to change an offer already submitted , such change may be made by letter or electronic communication, provided
each letter or electronic communication makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

| 12. ACCOUNTING AND APPROPRIATION DATA (If required) | Net Increase: | $284,210.00 |
|---|---|---|
| See Schedule | | |

**13. THIS ITEM ONLY APPLIES TO MODIFICATION OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.**

| CHECK ONE | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
|---|---|
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation data, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b). |
| | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: |
| | D. OTHER (Specify type of modification and authority) |
| X | FAR 52.243-1 Changes Fixed Price |

E. IMPORTANT:   Contractor   ☐ is not   ☒ is required to sign this document and return _____ 1 _____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)
DUNS Number:   041544081

LIST OF CHANGES:
Reason for Modification: Additional Work (New Agreement, Justification Required)
Period Of Performance End Date changed from 31-MAR-22 to 31-MAY-23
Total Amount for this Modification: $804,210.00
New Total Amount for this Version: $804,210.00
New Total Amount for this Award: $1,076,941.00
Obligated Amount for this Modification: $284,210.00
New Total Obligated Amount for this Award: $556,941.00

Continued ...

Except as provided herein, all terms and conditions of the document referenced in Item 9 A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print) | |
|---|---|---|---|
| Avijit Ghosh, Comptroller | | MOYAH WILSON | |
| 15B. CONTRACTOR/OFFEROR | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA | 16C. DATE SIGNED |
| *(Signature of person authorized to sign)* Avijit Ghosh | 06/18/2021 | MOYAH WILSON Digitally signed by MOYAH WILSON *(Signature of Contracting Officer)* | 6/23/2021 |

| Previous edition unusable | STANDARD FORM 30 (REV. 11/2016) |
|---|---|
| | Prescribed by GSA FAR (48 CFR) 53.243 |

Julie Robinson, Assoc. Director & Comptroller Delegate

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115236
**Exhibit 41**

# Summary of Comments on 101810_ Partially Executed Amendment for Signature - signed.pdf

## Page: 1

| Number: 1 | Author: moyah.wilson | Subject: Typewritten Text | Date: 6/23/2021 9:00:58 AM |

6/23/2021

PAVEMETRICS0115237

Exhibit 41

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED 693JJ620C000035/P00001 | | | | PAGE 2 | OF 17 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
UNIVERSITY OF ILLINOIS

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | Payment:<br>      FRA Delphi eInvoicing System<br>      https://einvoice.esc.gov<br>Accounting Info:<br>27X0745021.2021.1602TSTIT0.9031000000.25500.610066<br>00.0000000000.0000000000.0000000000.0000000000<br>Period of Performance: 10/01/2020 to 09/30/2025<br><br>Add Item 00002 as follows: | | | | |
| 00002 | Funding and time extension<br><br>Ref#: 4<br>Program Area: Track and Structures<br>Research Area: Track Stability<br>TAS: 69-X-0745<br>COR: Cam Stuart<br>Acquisition Description: The objective of this<br>contract modification is to provide additional<br>datasets for researcher use in developing and<br>refining the automated change detection<br>technology.  This modification allows for the<br>incorporation of a new industry partner, and its<br>associated data, in the research effort, CSX<br>Transportation.  FRA anticipates that the quality<br>of the project outputs will be significantly<br>enhanced by leveraging data sourced from revenue<br>service tracks, in addition to the data obtained<br>from TTC test tracks in 2019.<br>Product/Service Code:  AS32<br><br><br>Add Item 00003 as follows: | | | | 284,210.00 |
| 00003 | Contract Option 1: Additional Class I Railroad<br>Revenue Service LRAIL Deployment and CCI<br>Evaluation<br>The total firm fixed price is $180,000.00<br>THE CONTRACTOR SHALL NOT PROCEED TO PHASE 3<br>WITHOUT WRITTEN AUTHORIZATION FROM THE COR AND<br>ADEQUATE FUND IN THE AMOUNT OF $180,000.00.<br>Amount: $180,000.00(Option Line Item)<br>10/31/2022<br>Product/Service Code:  AS32<br><br>Add Item 00004 as follows: | | | | 0.00 |
| 00004 | Contract Option 2: Turnout Condition Change<br>Detection Using 3D Laser Data<br>THE CONTRACTOR SHALL NOT PROCEED TO PHASE WITHOUT<br>Continued ... | | | | 0.00 |

NSN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115238
Exhibit 41

| CONTINUATION SHEET | REFERENCE NO. OF DOCUMENT BEING CONTINUED 693JJ620C000035/P00001 | | | | PAGE 3 | OF 17 |
|---|---|---|---|---|---|---|

NAME OF OFFEROR OR CONTRACTOR
UNIVERSITY OF ILLINOIS

| ITEM NO. (A) | SUPPLIES/SERVICES (B) | QUANTITY (C) | UNIT (D) | UNIT PRICE (E) | AMOUNT (F) |
|---|---|---|---|---|---|
| | WRITTEN AUTHORIZATION FROM THE COR AND ADEQUATE FUND IN THE AMOUNT OF $340,000.00. Amount: $340,000.00 (Option Line Item) Amount: $340,000.00 (Option Line Item) 10/31/2023 Product/Service Code:  AS32 | | | | |

NSN 7540-01-152-8067

OPTIONAL FORM 336 (4-86)
Sponsored by GSA
FAR (48 CFR) 53.110

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115239
Exhibit 41

# Use of Laser Triangulation and Deep Neural Networks (DNNs) for Railway Safety Inspections Phase 2: Framework for Isolating and Reporting Relevant Track Changes to Decision Makers

## TECHNICAL PROPOSAL
### (Modification to Contract No. 693JJ620C000035)

Submitted by:
University of Illinois at Urbana-Champaign (UIUC)
Grainger College of Engineering (GCoE)
Rail Transportation and Engineering Center (RailTEC)

Submitted to FRA: 2 June 2021

**PROJECT TEAM:**

| J. Riley Edwards, Ph.D., P.E. | Marcus S. Dersch, P.E. | Richard Fox-Ivey | Thanh Nguyen |
|---|---|---|---|
| *Principal Investigator and Project Manager* | *Co-Principal Investigator* | *Railmetrics Project Manager* | *Railway Inspection Algorithm Specialist* |
| Sr. Research Scientist and Sr. Lecturer | Senior Research Engineer | Principal Consultant | Scientist |
| University of Illinois at Urbana-Champaign | University of Illinois at Urbana-Champaign | Railmetrics Systems Inc. | Railmetrics Systems Inc. |
| (217) 244-7417 | (217) 333-6232 | (519) 342-6304 | (418) 456-7497 |
| jedward2@illinois.edu | mdersch2@illinois.edu | rfoxivey@pavemetrics.com | thanh@pavemetrics.com |

**INDUSTRY PARTNER:**

**Brad Spencer**
Director of Track Testing
CSX
(814) 932-1117 (Cell)
Brad_Spencer@CSX.com

**CONTRACTUAL CONTACT at UNIVERSITY OF ILLINOIS:**

Avijit Ghosh, Comptroller, Sponsored Programs Administration
1901 S. First Street, Suite A, Champaign, Illinois 61820-7406
Tel: 217-333-2187, Email: spapreaward@illinois.edu

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115240
**Exhibit 41**

## Objective

Conduct a Class I revenue service data collection demonstration of change detection technology to report relevant changes in track condition in a manner that is useful to key decision makers.  This allows for incorporation of a new industry partner (CSX) and collection of additional data to improve the training of change detection algorithms.

## Background

As a part of Phase 1 of this project (and other prior FRA-funded projects), 3D laser triangulation and change detection technology has been developed and is currently being proven out at a conceptual level using data from TTC as a part of Phase 2 (current contract 693JJ620C000035).

There is now a need to extend the analysis to a revenue service data set to validate and refine a methodology for isolating and reporting the specific track changes which can be directly associated with track safety and derailment risk (i.e., track conditions changes).  This modification will allow for additional datasets to be captured and utilized to develop and refine the automated change detection technology.

## Approach

This in-scope modification will be accomplished through the collection of revenue service field data, adaptation of algorithms to recognize additional components not seen on the HTL at TTC, processing of change detection data, and the application of additional levels of data analytics to extract critical track health data from the broader set of LRAIL data.  This, like the prior phases, will include the frequent engagement of rail industry experts including the primary partner CSX that has provided access to a critical single-track high tonnage subdivision in south Georgia.

A summary of the four (4) project tasks and the proposed approach is as follows:

1.  **Field Data Collection using LRAIL (CSX Fitzgerald Subdivision – Georgia)**
    a.  Collection of data using a hi-rail truck equipped with a CSX LRAIL system.
    b.  When requested by CSX, provision of RailTEC personnel to assist with operation of the LRAIL system to collect and transfer data.
    c.  Monthly data collection for three months, and at least quarterly beyond that for a total period of one year from the NTP (approximately 90 MGT expected).
    d.  Conduct hi-rail ride-along with current track inspectors to learn more about the subject territory and the current methods of manual human inspections.
    e.  Co-locate and vertically integrate LRAIL / change data with ATAC data collected at the (approximate) same time intervals as a part of the FRA waiver.
    f.  Develop user interface for prototype data viewing.

2.  **Modify LRAIL Output Based on Revenue Service Data**
    a.  Review LRAIL data collected on CSX and use expert evaluators (RailTEC) to ensure that all features of interest are being correctly identified.
    b.  Modify the method by which LRAIL data are processed and XML files are output for further processing and use in Tasks 3 and 4.

3.  **Change Detection Results and Condition Change Index (CCI) Values**
    a.  Apply the CCI framework developed using data on HTL at TTC to the CSX dataset.
    b.  Demonstrate change detection results on two levels:
        i.  **General component condition change results** – Report on change occurring as a function of time and tonnage.  Provide demonstrations of

RESTRICTED - ATTORNEYS' EYES ONLY                                   PAVEMETRICS0115241
**Exhibit 41**

locations in which wear, deterioration, and/or change out of components has taken place. Example components and conditions include ballast level, fastener condition, etc.

    ii. **Specific track health results (higher level questions)** – Identify and address at least two questions of interest to CSX that are relevant to safe train operations. For example, questions could relate to lateral track strength and longitudinal force transfer.

  c. Produce final report content demonstrating change detection results.

**4. Predictive Analytics**

  a. Further refine the user interface for prototype data viewing, refining the format based on the development of CCI values (and their format).

  b. Revisit ATAC and change detection data from LRAIL to extract additional trends and features from the rich dataset with the objective of relating change detection data to other geometry variables.

  c. Example topic area for consideration: compare LRAIL data to maintenance records, to evaluate the potential for use of change detection data for deterioration prediction and maintenance planning.

  d. Review the data for signs that would inform the correct wavelength for consumption of LRAIL data and optimize the consumption of change detection data (similar to what has been done for track health indices).

  e. Produce final report content demonstrating results from predictive analytics.

### Mapping of Modification Tasks to Base Contract

| Original Task | Task Description | Related Modification Task(s) |
|---|---|---|
| 9 | Development of a "Condition Change Index" for Quantification of the Influence of Change on Safe Train Operations | 1,2 |
| 10 | Reporting of Relevant Change through Predictive Analytics (Forward-Looking Analysis) | 2,4 |
| 11 | Case Study: Use of CCI Framework and Change Detection to Evaluate Items of Interest | 3 |
| 12 | Establish Remaining Development Needs and Path Forward | 3,4 |

### Work Breakdown Structure

Modifications to Project Schedule or Scope (WBS Items) are Shown in **RED**.

Schedule and WBS Modifications Assume a Month 9 Start (July 2021).

This is based on original contract starting month of November 2020.

RESTRICTED - ATTORNEYS' EYES ONLY
Exhibit 41

## Work Package 4

| Task Descriptions: Quantification of the Influence of Change on Safe Train Operations and Development of Metric for Reporting Relevant Change | | Work Package Leader: |
|---|---|---|
| **Organizations:** University of Illinois, Pavemetrics, CSX | | J. Riley Edwards Start Date: Month 1 End Date: Month 20 |

| Objectives |
|---|
| • Obtain and review available data from Fast 2019 FAST operations (geometry and maintenance data). |
| • Obtain and review available data from CSX revenue service operations (geometry and LRAIL). |
| • Conduct a literature review of other track strength / health indices from other forms of geometry data, to obtain relevant metrics that could be applied to WBS 5 tasks. |
| • Develop initial version of a track Condition Change Index (CCI) to evaluate track strength and health. |
| • Develop method to report **relevant** changes to end users through Predictive Analytics |

| WBS ID # | Description of Work | Start Date | End Date |
|---|---|---|---|
| 4.1 | Obtain and review track geometry data and maintenance records from TTCI for Fall 2019 FAST operations. Additionally, obtain and process similar revenue service data from CSX. | Month 1 | ~~Month 3~~ Month 12 |
| 4.2 | Establish an Industry Partners and Class I stakeholder steering group – including Phase 1 industry partners (BNSF and CN) and additional Class 1 and Amtrak representatives (including CSX). | Month 1 | ~~Month 2~~ Month 10 |
| 4.3 | Conduct a literature review of other track strength / health indices from other forms of geometry data, to obtain relevant metrics that could be applied to WBS 9 tasks. | Month 1 | Month 2 |
| 4.4 | Develop an initial version of a vision- and laser-based approach at evaluating track strength through the use of a Condition Change Index (CCI) metric that takes into consideration track and component conditions identified using LRAIL. | Month 4 | ~~Month 7~~ Month 12 |
| 4.5 | Use CCI and develop prototype reporting method that considers rate of change and encroachment on relevant failure thresholds. | Month 4 | ~~Month 7~~ Month 13 |
| 4.6 | Objectively evaluate the CCI Metric, and develop a plan to revise said metrics by considering types of adverse track conditions that were not adequately identified with the initial metric. | Month 6 | ~~Month 10~~ Month 18 |
| 4.7 | Use LRAIL system to collect data on CSX's Fitzgerald Subdivision - at least 4 separate data collection efforts. | Month 8 | Month 20 |

| Deliverables | Description of Deliverables | Delivery Date |
|---|---|---|
| D4.1 | Conduct a Phase 2 kick-off web-meeting with FRA project leadership. | Month 1 |
| D4.2 | Summary review of available track strength / health indices used in the industry. | Month 4 |
| D4.3 | Prototype reporting method that considers rate of change and encroachment on relevant failure thresholds. | Mo. ~~10~~ 18 |
| D4.4 | Project update Presentation (PPT) suitable for presentation at a conference. | Month 10 |
| D4.5 | Project update Presentation (PPT) suitable for presentation at a conference. | Month 18 |

| Researchers Involved |
|---|
| **University of Illinois:** Riley Edwards, Marcus Dersch, Arthur Lima, Graduate Research Assistants, and Undergraduate Research Assistants |
| **Pavemetrics:** Richard Fox-Ivey, John Laurent, Mario Talbot |
| **Industry Partners:** BNSF, CN, UP, Amtrak, and CSX |

Page 3

**Proposal - Modification to Contract No. 693JJ620C000035**　　　　　**27 May 2021**

## Work Package 5

| Task Descriptions: | | | |
|---|---|---|---|
| **Application and Case Study: Use of CCI Framework and Change Detection to Evaluate Items of Interest** | | **Work Package Leader:** | |
| **Organizations:** University of Illinois, Pavemetrics, CSX. | | J. Riley Edwards Start Date: Month 7 End Date: Month 18 | |
| **Objectives** | | | |
| • Test and evaluate the initial version of the CCI metric developed by evaluating change detection output from LRAIL data collected during the Fall 2019 FAST operating season (Phase 1). | | | |
| • Utilize LRAIL data to investigate root causes of track failures (individual case studies of failures) | | | |
| • Establish remaining development needs and path forward | | | |
| • Final report developmeng (draft and final) and results dissemination via papers, presentations, and meeitngs with Industry Partner working group. | | | |
| **WBS ID #** | **Description of Work** | **Start Date** | **End Date** |
| 5.1 | Use data stemming from the newly developed approach and compare to Fall 2019 track geometry and maintenance data provided by TTCI. Apply a similar approach to newly obtained data from CSX. | Month 7 | ~~Month 9~~ Month 16 |
| 5.2 | RailTEC will perform a deep investigation at failure points working back in time in order to identify key moments of change which foreshadowed eventual failure. | Month 7 | ~~Month 12~~ Month 18 |
| 5.3 | Document any remaining research and development that should be completed in order to maximize the systems efficiency and the accuracy of CCI metric | Month 13 | ~~Month 15~~ Month 24 |
| 5.4 | Review the project in its entirety (Phases 1 and 2) and provide quantified performance metrics that evaluate the adequacy of the CCI methodology | Month 14 | ~~Month 18~~ Month 24 |
| **Deliverables** | **Description of Deliverables** | | **Delivery Date** |
| D5.1 | Summary of CCI performance and method for track change exception reporting. | | Mo. ~~12~~ 18 |
| D5.2 | Formal project final report (including revenue service CSX content) | | Mo. ~~18~~ 24 |
| D5.3 | Monthly project update calls with FRA | | Monthly |
| D5.4 | Quarterly project reports | | Quarterly |
| **Researchers Involved** | | | |
| **University of Illinois:** Riley Edwards, Marcus Dersch, Arthur Lima, Graduate Research Assistants, and Undergraduate Research Assistants | | | |
| **Pavemetrics:** Richard Fox-Ivey, John Laurent, Mario Talbot | | | |
| **Industry Partners:** BNSF, CN, UP, Amtrak, and CSX | | | |

RESTRICTED - ATTORNEYS' EYES ONLY　　　　　PAVEMETRICS0115244

　　　**Exhibit 41**

Proposal - Modification to Contract No. 693JJ620C000035                    27 May 2021

## Project Schedule

| Month | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Year | 2020 | | 2021 | | | | | | | | | | | | 2022 | | | | | | | | | |
| Act. Month | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Jun | Jul | Aug | Sep | Oct |
| 4.1 | | | | NEW | NEW | NEW | NEW | NEW | NEW | NEW | NEW | NEW | | | | | | | | | | | | |
| 4.2 | | | NEW | NEW | NEW | NEW | NEW | NEW | NEW | | | | | | | | | | | | | | | |
| 4.3 | | | | | | | | | | | | | | | | | | | | | | | | |
| 4.4 | | | | | | | | NEW | NEW | NEW | NEW | NEW | | | | | | | | | | | | |
| 4.5 | | | | | | | | NEW | NEW | NEW | NEW | NEW | NEW | | | | | | | | | | | |
| 4.6 | | | | | | | | | | | NEW | NEW | NEW | NEW | NEW | NEW | NEW | NEW | | | | | | |
| 4.7 | | | | | | | | | NEW | NEW | NEW | NEW | NEW | NEW | NEW | NEW | NEW | NEW | NEW | NEW | | | | |
| D4.1 | | | | | | | | | | | | | | | | | | | | | | | | |
| D4.2 | | | | | | | | | | | | | | | | | | | | | | | | |
| D4.3 | | | | | | | | | | | | | | | | | NEW | | | | | | | |
| D4.4 | | | | | | | | | | | | | | | | | | | | | | | | |
| D4.5 | | | | | | | | | | | | | | | | | NEW | | | | | | | |
| 5.1 | | | | | | | | | | NEW | NEW | NEW | NEW | NEW | NEW | NEW | | | | | | | | |
| 5.2 | | | | | | | | | | | | | NEW | NEW | NEW | NEW | NEW | NEW | | | | | | |
| 5.3 | | | | | | | | | | | | | | | | | NEW | NEW | NEW | NEW | NEW | NEW | NEW | NEW |
| 5.4 | | | | | | | | | | | | | | | | | | | NEW | NEW | NEW | NEW | NEW | NEW |
| D5.1 | | | | | | | | | | | | | | | | | NEW | | | | | | | |
| D5.2 | | | | | | | | | | | | | | | | | | | | | | | | NEW |
| D5.3 | | | | | | | | | | | | | | | | | | | NEW | NEW | NEW | NEW | NEW | NEW |
| D5.4 | | | | | | | | | | | | | | | | | NEW | | | NEW | | | | NEW |

*(Project Task)*

## Schedule of Deliverables

| Deliverables | Description of Deliverables | Delivery Date |
|---|---|---|
| D4.1 | Conduct a Phase 2 kick-off web-meeting with FRA project leadership. | Month 1 |
| D4.2 | Summary review of available track strength / health indices used in the industry. | Month 4 |
| D4.3 | Prototype reporting method that considers rate of change and encroachment on relevant failure thresholds. | Mo. ~~10~~ 18 |
| D4.4 | Project update Presentation (PPT) suitable for presentation at a conference. | Month 10 |
| D4.4 | Project update Presentation (PPT) suitable for presentation at a conference. | Month 18 |
| D5.1 | Summary of CCI performance and method for track change exception reporting. | Mo. ~~12~~ 18 |
| D5.2 | Formal project final report (including revenue service CSX content) | Mo. ~~18~~ 24 |
| D5.3 | Monthly project update calls with FRA | Monthly |
| D5.4 | Quarterly project reports | Quarterly |

## Cost Summary

| Organization | Funding |
|---|---|
| UIUC-RailTEC | $159,069 |
| Railmetrics | $125,141 |
| **TOTAL** | $284,210 |

RESTRICTED - ATTORNEYS' EYES ONLY                    PAVEMETRICS0115245

**- 112 -**                    **Exhibit 41**

Proposal - Modification to Contract No. 693JJ620C000035

27 May 2021

# VOLUME 2: COST AND PRICING PROPOSAL

## Cost Summary (Year 2)

| COST ELEMENT | Rate (Hourly) | Quantity (No. Hours) | Total Amount |
|---|---|---|---|
| **Year 2** | | | |
| *Direct Labor* | | | |
| Riley Edwards | $ 70.83 | 260 | $ 18,417 |
| Marcus Dersch | $ 44.76 | 40 | $ 1,790 |
| Arthur de Oliveira Lima | $ 30.65 | 270 | $ 8,277 |
| Research Assistant - Post BS | $ 25.83 | 300 | $ 7,748 |
| **TOTAL DIRECT LABOR** | | **870** | **$ 36,232** |
| *Labor Burden* | Labor Burden Rate | Labor Burden Applied To: (direct labor $$) | Total Amount |
| Fringe Benefits (Academic) | 46.91% | $ 28,484 | $ 13,362 |
| Fringe Benefits (RA) | 9.91% | $ 7,748 | $ 768 |
| **TOTAL LABOR BURDEN** | | | **$ 14,130** |
| *Tuition Remission* | Tuition Remission Rate | Tuition Remission Rate Applied To:(Research Assistant labor $$) | Total Amount |
| TOTAL TUITION REMISSION | 64% | $ 7,748 | $ 4,959 |
| *Other Direct Costs* | | | |
| TOTAL MATERIALS & SUPPLIES | | | $ - |
| TOTAL SUBCONTRACTOR COSTS | | | $ 125,141 |
| **TOTAL DIRECT COSTS** | | | **$ 180,462** |
| *F&A* | F&A Rate | F&A Rate Applied to:(Total Direct Costs Less: Tuition Remission, Subaward, & Equipment) | Total Amount |
| F&A ON UIUC COSTS | 58.60% | $ 50,362 | $ 29,512 |
| F&A ON FIRST $25,000 SUBAWARD | 58.60% | $ - | $ - |
| **TOTAL PROJECT COST** | | | **$ 209,974** |

Page 6

RESTRICTED - ATTORNEYS' EYES ONLY

- 113 -

PAVEMETRICS0115246
Exhibit 41

Proposal - Modification to Contract No. 693JJ620C000035

27 May 2021

## Cost Summary (Year 3 and Total)

| COST ELEMENT | Rate (Hourly) | Year 3 Quantity (No. Hours) | Total Amount | All Years Total Amount |
|---|---|---|---|---|
| *Direct Labor* | | | | |
| Riley Edwards | $ 72.96 | 200 | $ 14,592 | $ 33,008 |
| Marcus Dersch | $ 46.10 | 40 | $ 1,844 | $ 3,634 |
| Arthur de Oliveira Lima | $ 31.57 | 230 | $ 7,262 | $ 15,539 |
| Research Assistant - Post BS | $ 26.60 | 300 | $ 7,981 | $ 15,729 |
| **TOTAL DIRECT LABOR** | | **770** | **$ 31,679** | **$ 67,911** |
| *Labor Burden* | Labor Burden Rate | Labor Burden Applied To: (direct labor $$) | Total Amount | Total Amount |
| Fringe Benefits (Academic) | 46.91% | $ 23,698 | $ 11,117 | $ 24,478 |
| Fringe Benefits (RA) | 9.91% | $ 7,981 | $ 791 | $ 1,559 |
| **TOTAL LABOR BURDEN** | | | **$ 11,908** | **$ 26,037** |
| *Tuition Remission* | Tuition Remission Rate | Tuition Remission Rate Applied To: (Research Assistant labor $$) | Total Amount | Total Amount |
| TOTAL TUITION REMISSION | 64% | $ 7,981 | $ 5,108 | $ 10,067 |
| *Other Direct Costs* | | | | |
| TOTAL MATERIALS & SUPPLIES | | | $ - | $ - |
| TOTAL SUBCONTRACTOR COSTS | | | $ - | $ 125,141 |
| **TOTAL DIRECT COSTS** | | | **$ 48,694** | **$ 229,156** |
| *F&A* | F&A Rate | F&A Rate Applied to:(Total Direct Costs Less: Tuition Remission, Subaward, & Equipment) | Total Amount | Total Amount |
| F&A ON UIUC COSTS | 58.60% | $ 43,586 | $ 25,542 | $ 55,054 |
| **TOTAL PROJECT COST** | | | **$ 74,236** | **$ 284,210** |

Page 7

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115247
Exhibit 41

Proposal - Modification to Contract No. 693JJ620C000035                    27 May 2021

## UIUC Detailed Cost

| Name of Project Team Members | Role in Study | Year 2 | | Year 3 | | All Years | |
|---|---|---|---|---|---|---|---|
| | | WBS 4 Hours | WBS 5 Hours | Total Hours | WBS 4 Hours | WBS 5 Hours | Total Hours | WBS 4 Hours | WBS 5 Hours | Total Hours |

**Section A. Personnel Hours**

| Name of Project Team Members | Role in Study | WBS 4 Hours | WBS 5 Hours | Total Hours | WBS 4 Hours | WBS 5 Hours | Total Hours | WBS 4 Hours | WBS 5 Hours | Total Hours |
|---|---|---|---|---|---|---|---|---|---|---|
| Riley Edwards | PI | 180 | 80 | 260 | 80 | 120 | 200 | 260 | 200 | 460 |
| Marcus Dersch | Co-PI | 20 | 20 | 40 | 20 | 20 | 40 | 40 | 40 | 80 |
| Arthur de Oliveira Lima | Research Engineer | 190 | 80 | 270 | 80 | 150 | 230 | 270 | 230 | 500 |
| Research Assistant - Post BS | Grad Student Res. | 200 | 100 | 300 | 100 | 200 | 300 | 300 | 300 | 600 |
| **TOTAL HOURS** | | 590 | 280 | 870 | 280 | 490 | 770 | 870 | 770 | 1,640 |

These figures are provided for estimating purposes only. Personnel will be reported on a percentage-of-man-month basis in accordance with University policy. For purposes of this RFP, the figure of 173.3 hours equals one month.

**Section B. Personnel Wages**

| Name of Project Team Members | | WBS 4 Wages | WBS 5 Wages | Total Wages | WBS 4 Wages | WBS 5 Wages | Total Wages | WBS 4 Wages | WBS 5 Wages | Total Wages |
|---|---|---|---|---|---|---|---|---|---|---|
| Riley Edwards | | $12,750 | $5,667 | $18,417 | $5,837 | $8,755 | $14,592 | $18,587 | $14,422 | $33,008 |
| Marcus Dersch | | $895 | $895 | $1,790 | $922 | $922 | $1,844 | $1,817 | $1,817 | $3,634 |
| Arthur de Oliveira Lima | | $5,824 | $2,452 | $8,277 | $2,526 | $4,736 | $7,262 | $8,350 | $7,189 | $15,639 |
| Research Assistant - Post BS | | $5,166 | $2,583 | $7,748 | $2,660 | $5,321 | $7,981 | $7,826 | $7,903 | $15,729 |
| **TOTAL WAGES** | | $24,635 | $11,597 | $36,232 | $11,945 | $19,734 | $31,679 | $36,580 | $31,331 | $67,911 |

| Section C. Fringe Benefits | Academic 46.81% RA 9.91% Hourly 7.66% | Year 2 | | | Year 3 | | | All Years | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
| Fringe | | $9,645 | $4,485 | $14,130 | $4,619 | $7,289 | $11,908 | $14,264 | $11,773 | $26,037 |
| Total Personnel | | $34,280 | $16,082 | $50,362 | $16,564 | $27,022 | $43,586 | $50,844 | $43,104 | $93,948 |

| Section D. Other Direct Costs | Rates | Year 2 | | | Year 3 | | | All Years | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
| Materials & Supplies | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Equipment | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Subaward Pavemetrics (see detail budget below) | | $102,589 | $22,552 | $125,141 | $0 | $0 | $0 | $102,589 | $22,552 | $125,141 |
| Tuition Remission | 0.64 | $3,306 | $1,653 | $4,959 | $1,703 | $3,405 | $5,108 | $5,009 | $5,058 | $10,067 |
| Subtotal Other Direct Costs | | $105,895 | $24,205 | $130,100 | $1,703 | $3,405 | $5,108 | $107,598 | $27,610 | $135,208 |

| Section E. Total Direct Costs | | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|
| **Total Direct Costs** | | $140,175 | $40,287 | $180,462 | $18,267 | $30,427 | $48,694 | $158,442 | $70,714 | $229,156 |

| Section F. Indirect Costs | Rates | Year 2 | | | Year 3 | | | All Years | | |
|---|---|---|---|---|---|---|---|---|---|---|
| | | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
| F&A on UIUC Costs | 0.586 | $20,088 | $9,424 | $29,512 | $9,707 | $15,835 | $25,542 | $29,795 | $25,259 | $55,054 |
| F&A on first $25,000 of Pavemetrics subaward | 0.586 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Subtotal Indirect Costs | | $20,088 | $9,424 | $29,512 | $9,707 | $15,835 | $25,542 | $29,795 | $25,259 | $55,054 |

| | | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
|---|---|---|---|---|---|---|---|---|---|---|
| **Total Funds Requested** | | $160,264 | $49,710 | $209,974 | $27,973 | $46,263 | $74,236 | $188,237 | $95,973 | $284,210 |

Page 8

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115248
Exhibit 41

## UIUC Budget Justification

The proposed budget consists of the following categories of expenditures, listed with specific justification for each category. The following figures of costs are provided for estimating purposes only. Personnel will be reported on a percentage-of-man-month basis in accordance with University policy. For purposes of this budget, the figure of 173.3 hours equals one month.

The text below describes the detailed cost budget.

Section A. Personnel Hours

**Senior Personnel**

The principal investigator (PI), Riley Edwards will work a total of 460 hours on the project providing primary oversight of the project as the PI. Marcus Dersch, Co-PI, will work 80 hours on the project.

**Other Personnel**

*Graduate Research Assistant:*

The requested budget will support 1 Post BS, RA student on a 50% appointment. This RA will work 600 hours over the period of the project.

*Research Engineer:*

The research engineer, Arthur de Oliveira Lima, will work a total of 500 hours on the project providing engineering support.

Section B. Personnel Wages

Current hourly rates for each member of the project team are shown in Section A of the budget.

Section C. Fringe Benefits

The fringe benefits rate is 46.91% of wages paid to senior research personnel. The graduate research assistant's health and worker's compensation insurance is covered by a rate of 9.91% of wages.

Section D. Other Direct Costs

**Tuition Remission**

Tuition remission is directly charged at 64% of graduate research assistant salary.

**Subaward**

A subaward of $125,141 will be given to Railmetrics for processing and supplying change data for the project as well any refinement of the change detection output files type and additional training of the DNN that is required.

Section F. Indirect Costs

Indirect costs are calculated at 58.6% of total direct costs less tuition, equipment, and subawards costs in excess of $25,000. UIUC's F&A rates were finalized on January 25, 2021 and approved by our cognizant Federal Agency, the Office of Naval Research (ONR). ONR's Point of Contact (POC) is Beth Snyder. Indirect costs of $55,054 will be assessed to the project.

**Total Project Cost:**
The total project cost is $284,210

RESTRICTED - ATTORNEYS' EYES ONLY

**Exhibit 41**

**Proposal - Modification to Contract No. 693JJ620C000035**      **27 May 2021**

## Railmetrics Detailed Costs

| Name of | | Year 1 | | | Year 2 | | All Years | | |
|---|---|---|---|---|---|---|---|---|---|
| Project | | WBS 4 | WBS 5 | Total | WBS 5 | Total | WBS 4 | WBS 5 | Total |
| Team Members | Role in Study | Hours | Hours | Hours | Hours | Hours | Hours | Hours | Hours |
| *Section A. Personnel Hours* | | | | | | | | | |
| Thanh Nguyen | Algorithm Specialist | 1,340 | 260 | 1,600 | 0 | 0 | 1,340 | 260 | 1,600 |
| John Laurent | Contract Manager | 55 | 10 | 65 | 0 | 0 | 55 | 10 | 65 |
| Richard Fox-Ivey | Project Manager | 150 | 52 | 202 | 0 | 0 | 150 | 52 | 202 |
| TOTAL HOURS | | 1,545 | 322 | 1,867 | 0 | 0 | 1,545 | 322 | 1,867 |

| Name of | | Year 1 | | | Year 2 | | All Years | | |
|---|---|---|---|---|---|---|---|---|---|
| Project | | WBS 4 | WBS 5 | Total | WBS 5 | Total | WBS 4 | WBS 5 | Total |
| Team Members | | Wages | Wages | Wages | Wages | Wages | Wages | Wages | Wages |
| *Section B. Personnel Wages* | | | | | | | | | |
| Thanh Nguyen | | $59,519 | $11,549 | $71,068 | $0 | $0 | $59,519 | $11,549 | $71,068 |
| John Laurent | | $7,329 | $1,346 | $8,675 | $0 | $0 | $7,329 | $1,346 | $8,675 |
| Richard Fox-Ivey | | $14,250 | $4,933 | $19,183 | $0 | $0 | $14,250 | $4,933 | $19,183 |
| | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| TOTAL WAGES | | $81,098 | $17,828 | $98,926 | $0 | $0 | $81,098 | $17,828 | $98,926 |

| | | Year 1 | | | Year 2 | | All Years | | |
|---|---|---|---|---|---|---|---|---|---|
| *Section C. Fringe Benefits* | 15% | WBS 4 | WBS 5 | Totals | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
| Fringe | | $12,165 | $2,674 | $14,839 | $0 | $0 | $12,165 | $2,674 | $14,839 |
| Total Personnel | | $93,263 | $20,502 | $113,765 | $0 | $0 | $93,263 | $20,502 | $113,765 |

| | | Year 1 | | | Year 2 | | All Years | | |
|---|---|---|---|---|---|---|---|---|---|
| **Section D. Direct Costs** | **Rates** | WBS 4 | WBS 5 | Totals | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
| Materials & Supplies | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Equipment | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Services | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| Subtotal Direct Costs | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | | | | |
| **Section E. Travel** | | WBS 4 | WBS 5 | Totals | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
| Travel | | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| | | | | | | | | | |
| **Total Direct Costs** | | $93,263 | $20,502 | $113,765 | $0 | $0 | $93,263 | $20,502 | $113,765 |

| | | Year 1 | | | Year 2 | | All Years | | |
|---|---|---|---|---|---|---|---|---|---|
| **Section F. Indirect Costs** | **Rates** | WBS 4 | WBS 5 | Totals | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
| F&A | 0.1 | $9,326 | $2,050 | $11,376 | $0 | $0 | $9,326 | $2,050 | $11,376 |
| Subtotal Indirect Costs | | $9,326 | $2,050 | $11,376 | $0 | $0 | $9,326 | $2,050 | $11,376 |

| | Year 1 | | | Year 2 | | All Years | | |
|---|---|---|---|---|---|---|---|---|
| **Total Funds Requested** | $102,589 | $22,552 | $125,141 | $0 | $0 | $102,589 | $22,552 | $125,141 |

| **Section G. Cost Share** | WBS 4 | WBS 5 | Totals | WBS 5 | Totals | WBS 4 | WBS 5 | Totals |
|---|---|---|---|---|---|---|---|---|
| | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |

| **Total Project Cost** | $102,589 | $22,552 | $125,141 | $0 | $0 | $102,589 | $22,552 | $125,141 |

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115250

**Exhibit 41**

- 117 -

## Railmetrics Budget Justification

The proposed budget consists of the following categories of expenditures, listed with specific justification for each category. The following figures of costs are provided for estimating purposes only.

The text below describes the detailed cost budget.

Section A. Personnel Hours

*Senior Personnel*

The Project Manager (PM), Richard Fox-Ivey, will work a total of 202 hours on the project providing primary oversight of the project. Contract Manager, John Laurent, will work a total of 65 hours on the project. Thanh Nguyen, Algorithm Specialist, will work a total of 1,600 hours on the project processing and reporting data and optimizing railway inspection algorithms.

Section B. Personnel Wages

Current hourly rates for each member of the project team are shown in Section A of the budget.

Section C. Fringe Benefits

The fringe benefits rate is 15% of wages paid.

Section D. Direct Costs

Not applicable.

Section E. Travel

Not applicable.

Section F. Indirect Costs

A Facilities and Administration (F&A) multiplier of 10% was applied to all direct costs.

**Total Project Cost:**
The total project cost is $125,141.

RESTRICTED - ATTORNEYS' EYES ONLY          PAVEMETRICS0115251
**Exhibit 41**

# Contract Option 1

## Additional Class I Railroad Revenue Service LRAIL Deployment and CCI Evaluation

### Objective

Conduct a second revenue service demonstration of change detection technology to report relevant changes in track condition in a manner that is useful to key decision makers.

### Note Regarding Industry Partner

This revenue service demonstration has been discussed and pre-approved with the partner (UPRR) – with a tentative location picked as southern Illinois on a moderate tonnage line with Chicago to Texas traffic of various types.

### Approach

Phase 3 will be accomplished through the collection of revenue service field data, adaptation of algorithms to recognize additional components not seen on the HTL at TTC, processing of change detection data, and the application of additional levels of data analytics to extract critical track health data from the broader set of LRAIL data. This, like the prior phases, will include the frequent engagement of rail industry experts including the primary partner CSX.

A summary of the five (5) project tasks and the proposed approach is as follows:

1. **Field Data Collection using LRAIL (UPRR)**
2. **Modify LRAIL Output Based on Revenue Service Data (Build on CSX data)**
3. **Change Detection Results and Condition Change Index (CCI) Values**
4. **Predictive Analytics**
5. **Monitor Other Track Related Experiments (e.g. spikes, interspersed ties, etc.)**

**Project Schedule Estimate:** 12-18 Months

**ROM Cost Estimate**

| Organization | ROM Funding |
|---|---|
| UIUC-RailTEC | $120,000 |
| Railmetrics | $60,000 |
| **TOTAL** | $180,000 |

RESTRICTED - ATTORNEYS' EYES ONLY                          PAVEMETRICS0115252

**Exhibit 41**

## Contract Option 2

# Turnout Condition Change Detection Using 3D Laser Data and Deep Neural Network (DNN) Technology

### Objective

Expand the scope to include additional training for the identification of conditions and features of interest in turnout locations to provide value-added guidance as to the identification of changes in turnout condition.

### Approach

This will be accomplished by collecting new and leveraging existing LR*AI*L 3D laser scans of turnout locations to train DNNs in the identification of features at these complex locations. Features of interest will be determined based on FRA CFR 213 and engagement of project industry partners.

Subsequently, data will be analyzed, and run-over-run change detection results generated. Lastly, the research team will work to develop methods for reporting relevant changes at turnouts – for interpretation and use by railroads. This, like the prior phases, will include the frequent engagement of rail industry experts including the primary partner CSX.

A summary of the three (3) project tasks and the proposed approach is as follows:

1. **Collect LR*AI*L Data & Train Algorithms for Turnout Component Recognition**
2. **Demonstration of Recognition of Turnout Components and Change**
3. **Establish Turnout Change Condition Metrics**

**Project Schedule Estimate:** 18-24 Months

**ROM Cost Estimate**

| Organization | ROM Funding |
|---|---|
| UIUC-RailTEC | $190,000 |
| Railmetrics | $150,000 |
| **TOTAL** | $340,000 |

RESTRICTED - ATTORNEYS' EYES ONLY

PAVEMETRICS0115253
**Exhibit 41**