# EXHIBIT 2

Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
**FINNEGAN, HENDERSON, FARABOW,**
 **GARRETT & DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

*Attorneys for Defendant and Counterclaim Plaintiffs*
*TETRA TECH, INC. AND TETRA TECH TAS INC.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**TETRA TECH'S PRELIMINARY INFRINGEMENT CONTENTIONS AND IDENTIFICATION OF ASSERTED CLAIMS** |

1

Pursuant to the Court's Scheduling Order Re: Stipulated Dates (ECF 62), Defendant and Counterclaim Plaintiff Tetra Tech, Inc. and Counterclaim Plaintiff Tetra Tech TAS Inc. (collectively "Tetra Tech"), provide their Preliminary Infringement Contentions and Identification of Asserted Claims regarding the infringement of United States Patent No. 10,362,293 ("the '293 patent") by Plaintiff and Counterclaim Defendant, Pavemetrics Systems, Inc. (collectively "Pavemetrics").

These disclosures are based on Tetra Tech's present knowledge, the limited discovery provided by Pavemetrics to date, and access to publicly available information on Pavemetrics' accused railroad inspection system, its Laser Rail Inspection System ("LRAIL"). For example, Tetra Tech was only just allowed access to Pavemetrics' source code on May 24, 2021. The inspection of that source code, which contains at least 11 different versions dating back to 2012, is ongoing. There are also currently several disagreements between the parties about missing and incomplete items in the source code provided. Further, to date, Pavemetrics has only produced 48 documents, none of which contain technical documents detailing the design and function of their current LRAIL system.

Tetra Tech reserves all rights to modify and/or supplement these disclosures as necessary or appropriate based on discovery in this case as it occurs, the claim construction order, or any other circumstances that supports modifying these disclosures. Tetra Tech also reserves all rights under Fed. R. Civ. P. 15 to amend, or to seek leave of the Court to amend, these disclosures and assert additional or different claims, as circumstances warrant. Specifically, Tetra Tech reserves, among other things, the right to: (1) add additional or different support for the contentions in the attached claim chart; (2) identify additional accused products; (3) add contentions that one or more claim limitations is met under the doctrine of equivalents for the accused products or additional accused products later identified; (4) assert additional patent claims that are not included in the attached claim chart; and (5) assert additional patents that may be infringed by Pavemetrics' LRAIL.

2

Attached as Exhibit A is a chart identifying each claim of the '293 patent alleged to be infringed by Pavemetrics making, testing, using, importing, selling, offering to sell, and at least its customers using, its LRAIL. The chart identifies where each limitation of each asserted claim is found within, is performed by, or is accomplished by Pavemetrics' LRAIL. All claims identified in the exhibit are asserted claims. The disclosures set forth in the attached exhibit are preliminary and are based on current knowledge and belief.

Tetra Tech contends that Pavemetrics directly infringes the identified claims of the '293 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (e.g., through testing or demonstrations or use), bidding and contracting for, offering to sell, and/or importing into the United States certain railroad inspection systems, including but not limited to the LRAIL. As shown in Exhibit A, the LRAIL literally infringes every identified claim, including at least claims 1, 2, 4, 15, 16, 19-23, 25, 36, 37, and 40-43. In addition, the LRAIL performs the same functions in the same way to achieve the same results as the asserted claims and are not substantially different from the asserted claims.

Tetra Tech further contends that Pavemetrics induces infringement of the identified claims of the '293 patent under 35 U.S.C. § 271(b). Pavemetrics has known of the '293 patent at least since January 5, 2021, before the filing of the Complaint in this case. Pavemetrics has actively and knowingly induced at least its customers, including CSX Transportation Inc. ("CSX") and the Federal Railroad Administration ("FRA"), to use the LRAIL and thereby directly infringe the '293 patent in the United States, and Pavemetrics knew or should have known that the '293 patent was being directly infringed by customers. For example, the use by Pavemetrics' customers of the LRAIL also constitutes infringement of the asserted claims of the '293 patent. When the LRAIL is sold to and used by end users (such as employees at CSX or the FRA), those end users infringe the asserted claims of the '293 patent through the use of the LRAIL. Pavemetrics specifically intends that third parties will infringe the '293 patent.

3

For example, Pavemetrics encourages infringement by end users at least by intentionally promoting, advertising, aiding, instructing, and providing product support for the use of the infringing LRAIL.

Pavemetrics has also contributed to the direct infringement of the '293 patent under 35 U.S.C. § 271(c) by selling and/or offering to sell the LRAIL to customers who then use the LRAIL to perform railroad inspection. The LRAIL has no substantial non-infringing uses.

Tetra Tech further contends that Pavemetrics' infringement of the '293 patent is willful. Pavemetrics was made aware of the '293 patent at least as early as January 5, 2021, if not earlier. For example, Tetra Tech, through its counsel, sent Pavemetrics a letter on January 5, 2021, providing notice of the '293 patent and Pavemetrics' infringing activities and requested that Pavemetrics immediately cease its infringing activities. To date, Pavemetrics continues to willfully infringe the '293 patent. Additionally, Tetra Tech and Pavemetrics are direct competitors in the niche field of railroad track inspection and, therefore, should have been aware of the '293 patent. Pavemetrics has acted, and continues to act, in an egregious and wanton manner by infringing the '293 patent in the limited-competitor field of railroad track inspection.

Dated: June 10, 2021

**CLARK HILL LLP**

By:

_____

Donald L. Ridge

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

*Attorneys for Defendant and Counterclaim Plaintiffs*
*TETRA TECH, INC. AND TETRA TECH TAS INC.*

4

# EXHIBIT 5

**RESTRICTED CONFIDENTIAL SOURCE CODE**

1  Donald Ridge, Esq. (SBN: 132171)
2  **CLARK HILL LLP**
   555 South Flower Street, 24th Floor
3  Los Angeles, CA 90071
   Telephone: (213) 891-9100
4  Facsimile: (213) 488-1178
5  DRidge@clarkhill.com

6
   Aaron L. Parker (*pro hac vice*)
7  aaron.parker@finnegan.com
   Daniel G. Chung (*pro hac vice*)
8  daniel.chung@finnegan.com
9  Nicholas A. Cerulli (*pro hac vice*)          Jency J. Mathew (*pro hac vice*)
10 nicholas.cerulli@finnegan.com                 jency.mathew@finnegan.com
   Kelly S. Horn (*pro hac vice*)                **FINNEGAN, HENDERSON,**
11 kelly.horn@finnegan.com                       **FARABOW, GARRETT &**
   Victor M. Palace (*pro hac vice*)             **DUNNER, LLP**
12 victor.palace@finnegan.com                    1875 Explorer Street, Suite 800
13 **FINNEGAN, HENDERSON,**                      Reston, Virginia 20190-6023
   **FARABOW, GARRETT &**                        Telephone:  (571) 203-2700
14 **DUNNER, LLP**                               Facsimile:   (571) 203-2777
15 901 New York Avenue NW
   Washington, D.C. 20001-4413                   *Attorneys for Defendant and*
16 Telephone:  (202) 408-4000                    *Counterclaim Plaintiffs*
17 Facsimile:   (202) 408-4400

18
                 **UNITED STATES DISTRICT COURT**
19
                **CENTRAL DISTRICT OF CALIFORNIA**
20
21 PAVEMETRICS SYSTEMS, INC.            CASE NO. 2:21-cv-1289 MCS-MMA

22              Plaintiff,              **INITIAL EXPERT REPORT OF**
                                        **DR. VASSILIOS MORELLAS**
23     v.                              **REGARDING INFRINGEMENT**
                                        **OF U.S. PATENT NOS. 10,362,293**
24 TETRA TECH, INC.                    **AND 10,616,557**
25
               Defendant.
26
27 AND RELATED COUNTERCLAIMS.
28

**Exhibit 5**

**RESTRICTED CONFIDENTIAL SOURCE CODE**

## I.    INTRODUCTION

1.    My name is Vassilios Morellas, Ph.D. I have been retained by Tetra Tech, Inc. and Tetra Tech TAS Inc. ("Tetra Tech"), as an independent expert in the above-captioned case, to investigate and opine on certain issues related to Tetra Tech's United States Patent Nos. 10,362,293 ("the '293 patent") and U.S. Patent No. 10,616,557 ("the '557 patent") (collectively, "the Asserted Patents").

2.    I understand that Tetra Tech has accused Pavemetrics Systems, Inc. ("Pavemetrics") of infringing certain claims in the Asserted Patents. Specifically, I have been asked by counsel for Tetra Tech to consider whether Pavemetrics' Laser Rail Inspection System ("LRAIL") infringes claims 1, 2, 4, 15, 16, 19-23, 36, 37, and 40-43 of the '293 patent, and claims 8-10 and 14 of the '557 patent.

3.    This Report sets forth the opinions I have formed in this matter and the bases for those opinions through my independent evaluation and analysis. My opinions are based on the information available to me as of the date that I am submitting this Report. Any citation to evidence in this Report is intended to be exemplary, not exhaustive. If additional information becomes available to me either by production by the parties or third parties, or otherwise, I may, if permitted to do so, offer additional opinions. I may also, if requested and permitted to do so, provide further opinions to rebut any testimony, declarations, reports, or opinions offered by Pavemetrics' witnesses (expert or otherwise). I reserve my right to update my opinions in this Report through any further expert declarations, reports, and/or testimony that I may provide in this case. Further, I have previously submitted declarations in this case regarding claim construction (ECF 86-9) and in support of Tetra Tech's Opposition to Pavemetrics' Motion for Summary Judgment of Non-Infringement of the '293 Patent (ECF 134-23). I incorporate these declarations by reference in this Report.

4.    At this time, I have not created any exhibits to be used as a summary of, or support for, my opinions regarding infringement. I understand that I will have the opportunity to create additional summaries, tutorials, demonstrations, charts, drawings,

1

RESTRICTED CONFIDENTIAL SOURCE CODE

**C.     Direct, Induced, and Contributory Infringement**

**1.     Pavemetrics' LRAIL Sales**

609.    I understand Pavemetrics sold the LRAIL to customers in the United States. *See* Habel Dep. Ex. 53 (Ex. A to Pavemetrics' Second Supplemental Response to Interrogatory No. 2 (Dec. 27, 2021); ECF 120-1 (Hébert Decl.), ¶¶4, 23. Specifically, I understand Pavemetrics sold in the United States at least five (5) LRAILs to its customer, CSX, in 2020-2021 and at least one (1) LRAIL to its customer, AID, in 2021. Habel Dep. Ex. 53; ECF 120-1 (Hébert Decl.), ¶¶4, 23; PAVEMETRICS0184032 (Habel Dep. Ex. 42); PAVEMETRICS0232590 (Habel Dep. Ex. 80); CSXT0010132 (Habel Dep. Ex. 81); CSXT0008558 (Spencer Dep. Ex. 451); Spencer Tr., 25:11-19; Hafiz Tr., 33:10-34:9. I also understand that the LRAIL sales to CSX and AID "were turnkey sales that basically included (1) LRAIL hardware, (2) LRAIL acquisition software, and (3) LRAIL processing software." ECF 120-1 (Hébert Decl.), ¶¶4, 23.

610.    I also understand that Pavemetrics sold in the United States at least one (1) LRAIL for use with ongoing Federal Railroad Administration (FRA) trials. Habel Dep. Ex. 53 (Ex. A to Pavemetrics' Second Supplemental Response to Interrogatory No. 2 (Dec. 27, 2021)); PAVEMETRICS0156709; PAVEMETRICS0101974; PAVEMETRICS0102878; PAVEMETRICS0255043; PAVEMETRICS0100554.

611.    As I detailed above, the LRAILs sold by Pavemetrics in the United States meet every element of claims 1, 2, 4, 15, 16, 19-21 of the '293 patent and, thus, infringe the '293 patent.

**2.     Use of the LRAIL by Pavemetrics' Customers**

612.    As I detailed above, Pavemetrics' customers utilize the infringing LRAIL in the United States. I understand that CSX has used the infringing LRAIL numerous times since early 2020. Spencer Tr., 43:16, 31:17; *see also* Sections IX.A-B at ¶¶ 153, 182, 223, 231, 243, 278, 305, 338, 365, 390, 398, 416, 508, 517 (describing CSX output files resulting from the operation of the LRAIL); PAVEMETRICS0139960-40505; PAVEMETRICS0347401-8957;                    PAVEMETRICS0352732-4610;

321

**RESTRICTED CONFIDENTIAL SOURCE CODE**

extent that Pavemetrics should raise this defense to infringement of the '293 and '557 patents in its initial expert reports, I reserve the right to file a rebuttal report on this issue.

## XIII. NOTICE AND SUPPLEMENTATION

896. I understand that expert discovery is ongoing in this case. I therefore reserve the right to supplement my opinions after I have had the opportunity to review deposition testimony, expert reports, or in light of additional documents or things that may be brought to my attention.

897. For the purpose of this Report, I have reviewed the materials and testimony that I believe are appropriate considering the evidence available at this time. I understand that I will have the right to supplement or amend this Report in the event additional evidence or information pertinent to my opinions becomes available, and I plan to do so. I may also provide rebuttal to any opinions of other fact and expert witnesses, should I be requested to do so.

I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code.

Dated: February 18, 2022          By: _____

                                       Vassilios Morellas, Ph.D.

467

# EXHIBIT 7



February 1, 2021

Mr. Aaron L. Parker
Partner
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
United States



EXHIBIT

Habel 77

Dear Aaron,

This is in response to your email of January 25, 2021,

Pavemetrics takes allegations of patent infringement very seriously. Consequently, upon receipt of your letter of January 5, 2021, we immediately initiated a preliminary internal analysis of Tetra Tech's '293 patent, including the claims of the '293 patent. Based upon that preliminary internal analysis, we have come to the preliminary conclusion that the LRAIL system does not infringe any of the claims of the '293 patent. However, because we are not legal experts, we are now in the process of choosing a US patent attorney, who will independently assess your allegations of infringement. Once that independent assessment has been completed, then he will respond directly to you in due course.

Regards,

Richard Habel, M. Sc.
President & CEO
Pavemetrics Systems inc.
150, Boulevard René-Lévesque Est, Suite 1820
Québec (Québec) Canada G1R 5B1
Tel: +1 418 210 3629
rhabel@pavemetrics.com

# EXHIBIT 8

# FINNEGAN

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

**AARON L. PARKER**
202.408.4387
aaron.parker@finnegan.com

July 22, 2021

Joseph Re                                                                                    **VIA EMAIL**
joe.re@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Re:     *Pavemetrics Sys. v. Tetra Tech Inc. et al.*, Case No. 2:21-cv-01289-MCS-MMA (C.D. Cal.)

Counsel,

We recently discovered during our inspection of Pavemetrics' source code on July 14-16, 2021, that Pavemetrics' Laser Rail Inspection System ("LRAIL") infringes Tetra Tech, Inc.'s U.S. Patent No. 10,616,557 ("the '557 patent"). A copy of the '557 patent is attached to this letter for your convenience.

Specifically, our recent inspection of the source code demonstrates that Pavemetrics has infringed and continues to infringe at least claims 8-10 and 14 of the '557 patent by making, using (e.g., through testing or demonstrations or use), bidding and contracting for, offering to sell, importing, and/or inducing others to use the LRAIL, in the United States. For example, at least Pavemetrics' sales of its LRAIL to CSX Transportation for use in the United States and its past and ongoing field studies with the Federal Railroad Administration using the LRAIL constitute infringement of the '557 patent. This letter serves as formal notice to Pavemetrics of its infringement of the '557 patent.

Tetra Tech intends to file a motion for leave to amend the pleadings in this action to add a count for infringement of the '557 patent. Given that the '557 patent is a related family member of the '293 patent, and the subject matter, accused product(s), and infringing activities overlap, Tetra Tech believes that the amendment would not prejudice Pavemetrics and is consistent with the liberality in granting leave to amend in this circuit.

July 22, 2021
Page 2

Please let us know if Pavemetrics will oppose our motion for leave, and if so, please let us know your availability on **Monday, July 26, 2021**, to meet and confer.

Sincerely,

/s/ *Aaron L. Parker*

# EXHIBIT 9

Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Payne McQueen Montgomery (*Pro Hac Vice*)
mack.montgomery@knobbe.com
1717 Pennsylvania Ave. N.W., Ste. 900
Washington D.C. 20006
Phone: (202) 640-6400
Facsimile: (202) 640-6401

Attorneys for Plaintiff/Counterclaim Defendant
PAVEMETRICS SYSTEMS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., | Case No. 2:21-cv-1289-MCS-MMA |
| Plaintiff, | **PAVEMETRICS' OBJECTIONS AND RESPONSES TO TETRA TECH'S FIRST SET OF INTERROGATORIES (NOS. 1-9)** |
| v. | |
| TETRA TECH, INC., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | Honorable Mark C. Scarsi<br>Honorable Maria A. Audero |

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff and Counterclaim Defendant Pavemetrics Systems, Inc. ("Pavemetrics") hereby objects and responds to Defendants and Counterclaim Plaintiffs Tetra Tech, Inc. and Tetra Tech TAS Inc.'s (collectively, "Tetra Tech") First Set of Interrogatories (1-9) as follows:

## PRELIMINARY STATEMENT

1.     The following responses are based upon information presently available to and located by Pavemetrics and its counsel and reflect the current state of Pavemetrics' knowledge, understanding and belief regarding the matters about which inquiry was made.  Pavemetrics has not completed its investigation of the facts relating to this litigation or preparation for trial and anticipates that as this litigation proceeds, further facts may be discovered.   Pavemetrics reserves the right to modify or supplement these responses with any such pertinent information.

2.     Pavemetrics' responses are made without waiving or intending to waive, but on the contrary, intending to preserve and preserving:

a.     The right to raise all questions of authenticity, relevancy, materiality, privilege and admissibility as evidence for any purpose of the information and the documents identified and/or produced in response to these Interrogatories, which may arise in any subsequent proceeding in, or trial of, this or any other action;

b.     The right to assert or raise, in this or any other context, attorney-client privilege, the work product doctrine, the protections afforded by Rule 26(b)(3) or Rule 26(b)(4)(B), the right of privacy, or any other applicable privilege or protective doctrine;

c.     The right to object to the use of the information and/or documents in any subsequent proceeding in, or the trial of, this or any other action on any grounds;

-1-

1  Interrogatory to the extent that it seeks information protected by the attorney-
2  client privilege, the work product doctrine, or any other applicable privilege.

3        Subject to and without waiving the foregoing objections, Pavemetrics
4  responds as follows:

5        Pavemetrics is currently unaware of any license agreements, settlement
6  agreements, or covenants not-to-sue relating to the products identified in
7  response to Interrogatory No. 1.  Pursuant to Fed. R. Civ. P. 33(d), Pavemetrics
8  will produce and identify by production number non-privileged documents from
9  which additional information relating to other agreements, including FRA
10  contracts, can be determined.

11  **INTERROGATORY NO. 5:**

12        Describe any consideration, plan, or attempt by Pavemetrics to change or
13  modify any product identified in response to Interrogatory No. 1, including the
14  circumstances of any such change or modification, the details of the features
15  that were changed or modified, the dates of any such change or modification,
16  the identity of the person(s) knowledgeable of and/or involved in such change or
17  modification, and the identity of all documents which refer to or relate to such
18  change or modification.

19  **RESPONSE TO INTERROGATORY NO. 5:**

20        Pavemetrics incorporates by reference its Preliminary Statement and
21  General Objections as if set forth fully herein.  Pavemetrics further objects to
22  this Interrogatory as overbroad, unduly burdensome and not proportional to the
23  needs of the case, particularly to the extent that it purports to require
24  Pavemetrics to identify changes or modifications of its products not relevant to
25  any claim or defense or disproportional to the needs of this litigation.
26  Pavemetrics further objects to this Interrogatory as vague and ambiguous,
27  particularly with respect to the phrase "consideration, plan, or attempt . . . to
28  change or modify" a product.  Pavemetrics further objects to this Interrogatory

-10-

to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, Pavemetrics responds as follows:

In 2018, Pavemetrics started developing AI-based deep learning algorithms using convolutional neural networks. Pavemetrics began implementing these new algorithms to gradually replace the more traditional template-based fastener and anchor detection techniques. Since at least mid-2019, Pavemetrics has used an AI-based "deep neural network" algorithm to detect fasteners and anchors for all LRAIL systems in the United States. A deep neural network develops its own operators that allow a computer to analyze images similar to how a human would. Pavemetrics described this change in connection with its Opposition to Tetra Tech's Motion for Preliminary Injunction. See Declaration of John Laurent, ECF 33, and Pavemetrics' Memorandum in Opposition to PI Motion, ECF 37.

In 2017, Pavemetrics began transitioning from using "LCMS-1" sensors to "LCMS-2" sensors in its rail inspection systems. Pavemetrics' development of this advancement in laser scanning hardware allowed an increase in sampling rate from 5,600 profiles per second to 28,000 profiles per second and an increase in depth resolution of the data collected from 0.25 mm to 0.1 mm. This improvement allows users to collect higher-resolution railway elevation data for analysis, as well as to inspect railways at a higher speed.

Pursuant to Fed. R. Civ. P. 33(d), Pavemetrics has made available for inspection logs identifying revision notes, versions, version number, dates of revision, and authors for its source code.

**INTERROGATORY NO. 6:**

Describe fully the circumstances surrounding and content of any communication sent by Pavemetrics (or on Pavemetrics' behalf) to any of

-11-

doctrine, or any other applicable privilege. Pavemetrics further objects to this Interrogatory to the extent it calls for a legal conclusion, legal contention, or expert opinion.

Subject to and without waiving the foregoing objections, Pavemetrics responds as follows:

Pavemetrics intends to supplement its response to provide additional information after Tetra Tech identifies the asserted claims and serves sufficient infringement contentions.


KNOBBE, MARTENS, OLSON & BEAR, LLP


Dated:  June 4, 2021          By:  */s/ Nicholas M. Zovko*
                                   Joseph R. Re
                                   Christy G. Lea
                                   Nicholas M. Zovko
                                   Payne McQueen Montgomery

                                   Attorneys for Plaintiff/Counterclaim Defendant,
                                   PAVEMETRICS SYSTEMS, INC.


-16-

## CERTIFICATE OF SERVICE

I am a citizen of the United States of America and I am employed in Irvine, California.  I am over the age of 18 and not a party to the within action.  My business address is 2040 Main Street, Fourteenth Floor, Irvine, California.

On June 4, 2021, I served the within **PAVEMETRICS' OBJECTIONS AND RESPONSES TO TETRA TECH'S FIRST SET OF INTERROGATORIES (NOS. 1-9)** on the parties or their counsel shown below, by transmitting it electronically to the address as follows:

Aaron L. Parker
aaron.parker@finnegan.com
Nicholas A. Cerulli
nicholas.cerulli@finnegan.com
Daniel G. Chung
daniel.chung@finnegan.com
**FINNEGAN HENDERSON**
901 New York Ave NW
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Donald L. Ridge
dridge@clarkhill.com
**Clark Hill LLC**
1055 West Seventh Street Ste 2400
Los Angeles, CA 90017-2503
Telephone: 213-891-9100
Facsimile: 213-488-117

I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on June 4, 2021 at Orange County, California.

*/s/ Scott Hobin*
Scott Hobin

-17-

# EXHIBIT 10

1  Donald Ridge, Esq. (SBN: 132171)
2  **CLARK HILL LLP**
   1055 West Seventh Street, Suite 2400
3  Los Angeles, CA 90017
   Telephone: (213) 891-9100
4  Facsimile: (213) 488-1178
5  DRidge@clarkhill.com

6
   Aaron L. Parker (*pro hac vice*)
7  aaron.parker@finnegan.com
   Daniel G. Chung (*pro hac vice*)
8  daniel.chung@finnegan.com
9  Nicholas A. Cerulli (*pro hac vice*)          Jency J. Mathew (*pro hac vice*)
   nicholas.cerulli@finnegan.com                jency.mathew@finnegan.com
10 **FINNEGAN, HENDERSON,**                       **FINNEGAN, HENDERSON,**
11 **FARABOW, GARRETT &**                         **FARABOW, GARRETT &**
   **DUNNER, LLP**                                **DUNNER, LLP**
12 901 New York Avenue NW                        1875 Explorer Street, Suite 800
13 Washington, D.C. 20001-4413                   Reston, Virginia 20190-6023
   Telephone:  (202) 408-4000                    Telephone:  (571) 203-2700
14 Facsimile:  (202) 408-4400                    Facsimile:  (571) 203-2777

15
16 *Attorneys for Defendant and Counterclaim Plaintiffs*

17
18                     **UNITED STATES DISTRICT COURT**
19                     **CENTRAL DISTRICT OF CALIFORNIA**

20 PAVEMETRICS SYSTEMS, INC.              CASE NO. 2:21-cv-1289 MCS-MMA

21              Plaintiff,                **TETRA TECH'S FIRST**
22                                        **SUPPLEMENTAL RESPONSE TO**
              v.                          **PAVEMETRICS'**
23                                        **INTERROGATORY NO. 2**
24 TETRA TECH, INC.

25              Defendant.
26 AND RELATED COUNTERCLAIMS.

27
28

                                    1

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff Tetra Tech, Inc. and Counterclaim Plaintiff Tetra Tech TAS Inc. (collectively "Tetra Tech") hereby supplement their response to Interrogatory No. 2 served by Plaintiff and Counterclaim Defendant, Pavemetrics Systems, Inc. ("Pavemetrics").

## GENERAL OBJECTIONS AND QUALIFICATIONS

Tetra Tech hereby incorporates by reference the General Objections and Qualifications set forth in Tetra Tech's Objections and Responses to Pavemetrics' First Set of Interrogatories (Nos. 1-12), which are further incorporated by reference into the following response as if set forth fully therein.

**INTERROGATORY NO. 2:**

Describe in detail how, on a limitation-by-limitation basis, You contend each product that You identified in response to Interrogatory No. 1 practices each applicable Asserted Claim.

**RESPONSE TO INTERROGATORY NO. 2:**

In addition to the General Objections set forth above, Tetra Tech objects to this interrogatory as vague at least because the term "practices" has not been defined by Pavemetrics and is not reasonably susceptible to precise definition in this context. Tetra Tech also objects to this interrogatory as premature given the early stage of this litigation and to the extent it calls for expert discovery or expert opinion.

Subject to and without waiving the foregoing General and Specific Objections, and pursuant to Fed. R. Civ. P. 33(d), Tetra Tech identifies the following document containing information responsive to this interrogatory: TETRATECH_0057255-303.

Discovery is ongoing. Tetra Tech reserves the right to modify, change, or supplement its response to this interrogatory, as necessary.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 2:**

In addition to the above response, and subject to and without waiving the foregoing General and Specific Objections, attached as Exhibit A is a claim chart

2

1  identifying each asserted claim of the '293 patent alleged to be embodied by Tetra

2  Tech's 3D Track Assessment System ("3DTAS"). Exhibit A identifies where each

3  limitation of each asserted claim is found within, is performed by, or is accomplished

4  by Tetra Tech's 3DTAS. The disclosures set forth in Exhibit A are preliminary and are

5  based on current knowledge and belief.

6      Discovery is ongoing. Tetra Tech reserves the right to modify, change, or

7  supplement its response to this interrogatory, as necessary.

8
Dated: September 2, 2021                    **CLARK HILL LLP**

9                                          By:

10

11

12                                              Donald L. Ridge

13                                          Aaron L. Parker (*pro hac vice*)
                                           Daniel G. Chung (*pro hac vice*)
14                                          Nicholas A. Cerulli (*pro hac vice*)
                                           Jency J. Mathew (*pro hac vice*)
15                                          **FINNEGAN, HENDERSON, FARABOW,**
16                                          **GARRETT & DUNNER, LLP**

17
                                           *Attorneys for Defendant and Counterclaim*
18                                          *Plaintiffs*
                                           *TETRA TECH, INC. AND TETRA TECH TAS*
19                                          *INC.*

20

21

22

23

24

25

26

27

28

3

**- 134 -**                                                    **Exhibit 10**

1

**PROOF OF SERVICE**

2   I am a citizen of the United States of America and I am employed in

3   Washington, D.C. I am over the age of 18 and not a party to the action. My business

4   address is 901 New York Avenue NW, Washington, D.C.

5   On September 2, 2021, I served **TETRA TECH'S FIRST SUPPLEMENTAL**

6   **RESPONSE TO PAVEMETRICS' INTERROGATORY NO. 2** on the parties or

7   their counsel shown below, by transmitting it electronically to the addresses as

8   follows:

9   Joseph R. Re (SBN 134,479)

10   joe.re@knobbe.com
Christy G. Lea (SBN 212,060)

11   christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)

12   nicholas.zovko@knobbe.com

13   Payne M. Montgomery (*Pro Hac Vice*)
mack.montgomery@knobbe.com

14   **KNOBBE, MARTENS, OLSON & BEAR, LLP**

15   2040 Main Street, Fourteenth Floor
Irvine, CA 92614

16   Phone: (949) 760-0404

17   Facsimile: (949) 760-9502

18

19   Executed on September 2, 2021 at Washington, D.C.

20   */s/ Nicholas A. Cerulli*

21   Nicholas A. Cerulli

22

23

24

25

26

27

28

1

# EXHIBIT 13

RESTRICTED - ATTORNEY'S EYES ONLY

Fox-Ivey, Richard December 17, 2021

1

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

-------------------------------:

PAVEMETRICS SYSTEMS, INC.,          :

     Plaintiff,                     :

         v.                        : Case No.

TETRA TECH, INC.,                   : 2:21-cv-1289 MCS-MMA

     Defendant.                     :

AND RELATED COUNTERCLAIMS           :

-------------------------------:

**RESTRICTED - ATTORNEY'S EYES ONLY**

VIRTUAL VIA ZOOM

Friday, December 17, 2021

VIDEOTAPED DEPOSITION OF

RICHARD FOX-IVEY

RESTRICTED - ATTORNEY'S EYES ONLY

Fox-Ivey, Richard                                      December 17, 2021

3 (Pages 6 to 9)

---

**6**

| | | |
|---|---|---|
| 1 | EXHIBITS CONTINUED | 15:53:10 |
| 2 | Exhibit 19 PAVEMETRICS0201341 | 16:09:46 |
| 3 |       Email chain 9/21/20          214 | 16:09:46 |
| 4 | Exhibit 20 PAVEMETRICS0114279 | 16:19:17 |
| 5 |       Email 3/11/21              220 | 16:19:17 |

---

**8**

1 Martens for the witness and Pavemetrics Systems,                09:06:44
2 Inc.
3          THE VIDEOGRAPHER: Will the court                       09:06:48
4 reporter please swear in the witness.                           09:06:49
5 Whereupon,                                                      09:07:05
6          RICHARD FOX-IVEY,                                      09:07:05
7 was called as a witness, and having been duly sworn,            09:07:05
8 was examined and testified as follows:
9          THE VIDEOGRAPHER: We may proceed.                      09:07:06
10         EXAMINATION BY COUNSEL FOR                              09:07:09
11 DEFENDANT/COUNTERCLAIM PLAINTIFFS
12    BY MS. HORN:                                                09:07:09
13    Q.   Good morning. Could you please state                   09:07:09
14 your full name and address for the record?                     09:07:11
15    A.   Richard Fox-Ivey, ███████████  ████
16 ████████████████████.                                          09:07:17
17    Q.   And do you understand that you're under                09:07:23
18 oath this morning?                                             09:07:25
19    A.   Yes.                                                   09:07:26
20    Q.   And do you understand that that means you               09:07:26
21 are sworn to tell the truth as if you were in a                09:07:28
22 courtroom with a judge and jury?                               09:07:30

---

**7**

1          P R O C E E D I N G S                                  09:04:21
2          THE VIDEOGRAPHER: Here begins volume I                 09:05:16
3 in the video deposition of Richard Fox-Ivey, taken             09:05:24
4 in the matter of Pavemetrics Systems, Incorporated             09:05:28
5 v. Tetra Tech, Incorporated, in the United States             09:05:33
6 District Court, Central District of California, Case            09:05:36
7 Number 2:21-CV-1289MCS-MMA. Today's date is                    09:05:39
8 December 17th, 2021. The time on the video monitor             09:05:51
9 is 9:05 a.m.                                                    09:05:56
10         This deposition is being held remotely.                09:05:59
11 The witness is located in Waterloo, Ontario, Canada.           09:06:02
12 The court reporter is Sue Ciminelli, on behalf of             09:06:06
13 Henderson Legal Services. And I'm the videographer,           09:06:08
14 Dewey Nelson, also on behalf of Henderson Legal               09:06:12
15 Services. Will counsel and others please introduce            09:06:15
16 themselves and state whom they represent, beginning           09:06:18
17 with the party noticing the deposition.                        09:06:21
18         MS. HORN: Hi, my name is Kelly Horn. I                 09:06:23
19 represent Tetra Tech, and I'm from Finnegan. And              09:06:28
20 with me in the room today is Nick Cerulli and Connor          09:06:30
21 McGregor, also from Finnegan.                                  09:06:35
22         MR. ZOVKO: This is Nick Zovko of Knobbe                09:06:38

---

**9**

1    A.   Yes.                                                   09:07:31
2    Q.   Is there anything that would prevent you              09:07:32
3 from giving complete and truthful answers today?              09:07:35
4    A.   No.                                                   09:07:38
5    Q.   Are you taking any medications or other               09:07:38
6 substances that would prevent from you telling the            09:07:41
7 truth today?                                                  09:07:43
8    A.   No.                                                   09:07:44
9    Q.   Have you ever been deposed before?                    09:07:44
10   A.   No.                                                   09:07:48
11   Q.   Have you ever been deposed via electronic            09:07:48
12 remote means before?                                          09:07:51
13   A.   I've never been deposed.                              09:07:56
14   Q.   During this remote deposition, you aren't            09:07:59
15 permitted to communicate with any third parties. Do          09:08:03
16 you understand that?                                           09:08:06
17   A.   Yes.                                                   09:08:06
18   Q.   Other than the Zoom interface that we're             09:08:06
19 using to conduct the deposition, do you have any             09:08:11
20 other documents with you today?                               09:08:13
21   A.   No.                                                   09:08:14
22   Q.   Have you ever testified at trial before?             09:08:14

---

RESTRICTED - ATTORNEY'S EYES ONLY

Fox-Ivey, Richard

December 17, 2021

37 (Pages 142 to 145)

---

**142**

1  questions whatsoever, which they had not, is    13:48:38
2  impossible in my mind.    13:48:44
3      Q.   Is it possible that they logged in on    13:48:46
4  their own and tried to use it?    13:48:50
5      MR. ZOVKO:  Objection, calls for    13:48:54
6  speculation, lack of foundation.    13:48:56
7      THE WITNESS:  I won't speculate on that.    13:48:58
8      BY MS. HORN:    13:49:00
9      Q.   Did you ask someone at CSX if they had    13:49:00
10  logged in on their own and tried to use it before    13:49:04
11  you made this statement?    13:49:06
12      A.   No.    13:49:07
13      Q.   Did you ask anyone at CSX if they had    13:49:10
14  used the software before you made this statement?    13:49:15
15      A.   No.    13:49:16
16      Q.   Did you check with any of your contacts    13:49:18
17  at CSX to see if they had used the software before    13:49:24
18  you made this statement?    13:49:28
19      A.   I already answered that question.    13:49:30
20      Q.   Did you check with any of your contacts    13:49:31
21  at CSX to ask if they had used the software before    13:49:37
22  you made that statement?    13:49:41

---

**143**

1      A.   You just repeated the same question.    13:49:42
2      Q.   You haven't answered my question.  I    13:49:45
3  didn't ask that question before.  You have to answer    13:49:47
4  each question that I ask you.  Did you check with    13:49:50
5  any of your contacts at CSX to ask if they had used    13:49:52
6  the software before you made that statement?    13:49:56
7      MR. ZOVKO:  Objection, asked and    13:49:58
8  answered.    13:49:59
9      THE WITNESS:  My answer remains the same.    13:50:00
10  No, I did not.    13:50:02
11      BY MS. HORN:    13:50:03
12      Q.   Is the Federal Railroad Administration a    13:50:04
13  customer of CSX?    13:50:31
14      A.   No.    13:50:35
15      Q.   Does Pavemetrics have a relationship with    13:50:42
16  the Federal Railroad Administration?    13:50:45
17      A.   Can you define what you mean by    13:50:47
18  "relationship," please?    13:50:50
19      Q.   What do you think "relationship" means?    13:50:52
20      A.   I think there are many different    13:50:54
21  definitions, depending on the context.  Personal,    13:50:59
22  professional.    13:51:05

---

**144**

1      Q.   Does Pavemetrics have a professional    13:51:06
2  relationship with the Federal Railroad    13:51:09
3  Administration?    13:51:11
4      A.   Yes.    13:51:12
5      Q.   What is the nature of that professional    13:51:12
6  relationship?    13:51:15
7      A.   We are working on some FRA-funded    13:51:16
8  projects.    13:51:23
9      Q.   Do the FRA-funded projects involve the    13:51:24
10  LRAIL?    13:51:29
11      A.   Yes.    13:51:30
12      Q.   And how is the LRAIL involved in those    13:51:30
13  FRA-funded projects?    13:51:35
14      A.   Well, it's being used to scan railroad    13:51:38
15  tracks.  And we're processing the data from those    13:51:47
16  scans in Canada.    13:51:55
17      Q.   After Pavemetrics processes the data from    13:51:57
18  the scans in Canada, do they send anything back to    13:52:12
19  the Federal Railroad Administration?    13:52:17
20      MR. ZOVKO:  Objection, calls for    13:52:21
21  speculation.    13:52:23
22      THE WITNESS:  When you said, do we send    13:52:27

---

**145**

1  anything back to the Federal Railroad, what do you    13:52:29
2  mean by "anything"?    13:52:32
3      BY MS. HORN:    13:52:34
4      Q.   After Pavemetrics processes the data from    13:52:34
5  the scans in Canada, do you send any file types    13:52:37
6  back --    13:52:42
7      A.   No.    13:52:43
8      Q.   -- reflecting the processed data.    13:52:43
9      A.   I'm sorry for interrupting you.  The    13:52:46
10  answer is no.    13:52:48
11      Q.   Did the Federal Railroad Administration    13:52:48
12  purchase the LRAIL system that it's using to scan    13:52:57
13  the railroad tracks?    13:53:02
14      A.   No.    13:53:03
15      Q.   Did the Federal Railroad Administration    13:53:03
16  lease the LRAIL system that it's using to scan the    13:53:09
17  railroad tracks from Pavemetrics?    13:53:12
18      A.   No.    13:53:14
19      Q.   Does the Federal Railroad Administration    13:53:14
20  have an agreement with Pavemetrics to use the    13:53:28
21  Pavemetrics LRAIL for scanning the railroad tracks?    13:53:31
22      A.   No.    13:53:36

---

RESTRICTED - ATTORNEY'S EYES ONLY

Fox-Ivey, Richard                                    December 17, 2021

58 (Pages 226 to 227)

---

226

ACKNOWLEDGMENT OF DEPONENT

I, _____, do hereby
acknowledge that I have read and examined the
foregoing testimony, and the same is a true, correct
and complete transcription of the testimony given by
me, and any corrections appear on the attached Errata
Sheet signed by me.

_____    _____
(DATE)              (SIGNATURE)

NOTARIZATION  (If Required)

State of _____
County of _____
Subscribed and sworn to (or affirmed) before me on
this _____ day of _____, 20_____, by
_____, proved to me on the
basis of satisfactory evidence to be the person who
appeared before me.
Signature: _____
            (Seal)

---

227

CERTIFICATE OF NOTARY PUBLIC & REPORTER

I, SUSAN L. CIMINELLI, the officer before whom
the foregoing deposition was taken, do hereby
certify that the witness whose testimony appears in
the foregoing deposition was duly sworn; that the
testimony of said witness was taken in shorthand and
thereafter reduced to typewriting by me or under my
direction; that said deposition is a true record of
the testimony given by said witness; that I am
neither counsel for, related to, nor employed by any
of the parties to the action in which this
deposition was taken; and, further, that I am not a
relative or employee of any attorney or counsel
employed by the parties hereto, nor financially or
otherwise interested in the outcome of this action.

SUSAN L. CIMINELLI
Notary Public in and for the
District of Columbia
My Commission Expires November 30, 2026.

---

# EXHIBIT 14

RESTRICTED - ATTORNEYS' EYES ONLY

Laurent, John                                        December 21, 2021

1

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASE NO. 2:21-CV-1289 MCS-MMA

- - - - - - - - - - - - - - - -x

PAVEMETRICS SYSTEMS INC.,              :

Plaintiff,              :

v.                                    :

TETRA TECH INC.,                       :

Defendant.             :

- - - - - - - - - - - - - - - - -x

** Restricted - Attorneys' Eyes Only **

VIDEO-RECORDED DEPOSITION OF JOHN LAURENT

Tuesday, December 21, 2021

commencing at 9:07 a.m. (EST)

(This proceeding was conducted via Zoom.

All participants appeared remotely.)

---------------------------------------------

REPORTED BY:  Deanna J. Dean, RDR, CRR

RESTRICTED - ATTORNEYS' EYES ONLY

Laurent, John                                          December 21, 2021

3 (Pages 6 to 9)

---

**6**

E X H I B I T S (cont'd.)

| Laurent | Description | Page |
|---|---|---|
| Exhibit 38 | Attachment to Exhibit 37, Bates Nos. PAVEMETRICS0104603 to 604 | 169 |
| Exhibit 39 | Email Chain, Bates No. PAVEMETRICS0206199 to 201 | 171 |
| Exhibit 40 | 4/7/20 Pavemetrics Quotation, Bates Nos. PAVEMETRICS0199996 to 001 | 173 |
| Exhibit 41 | 12/23/20 Invoice from Pavemetrics to AID, Bates No. PAVEMETRICS0015581 | 175 |
| Exhibit 42 | 3/15/21 Goods Agreement between CSX and Pavemetrics, Bates Nos. PAVEMETRICS0184032 to 061 | 176 |
| Exhibit 43 | 6/16/21 Email from B. Petitclerc to R. Fox-Ivey, Bates No. PAVEMETRICS0199267 | 182 |
| Exhibit 44 | Email Chain, Bates Nos. PAVEMETRICS0231580 to 582 | 184 |
| Exhibit 45 | Email Chain, Bates Nos. PAVEMETRICS0138030 to 031 | 192 |

---

**7**

E X H I B I T S (cont'd.)

| Laurent | Description | Page |
|---|---|---|
| Exhibit 46 | 2016 LRAIL Market Review and 2017 Plan, Bates Nos. PAVEMETRICS0284521 to 536 | 193 |
| Exhibit 47 | Pavemetrics' First Supplemental Response to Tetra Tech's First Set of Interrogatories (Nos. 7 and 9) | 196 |
| Exhibit 48 | Email Chain, Bates Nos. PAVEMETRICS0145407 to 409 | 210 |
| Exhibit 49 | Email Chain, Bates No. PAVEMETRICS0269464 | 215 |
| Exhibit 50 | Email Chain, Bates No. PAVEMETRICS0269589 to 590 | 216 |
| Exhibit 51 | 1/5/21 Letter from Finnegan to Pavemetrics Systems Inc., Bates Nos. PAVEMETRICS0097997 to 998 | 220 |

---

**8**

P R O C E E D I N G S

THE VIDEOGRAPHER:  Here begins Disk 1 in the video deposition of John Laurent, taken in the matter of Pavemetrics Systems Inc. v. Tetra Tech Inc. in the United States District Court, Central District of California, Case No. 2:21-CV-1289 MCS-MMA.

Today's date is December 21, 2021.  The time on the video monitor is 9:07 a.m. Eastern.

This deposition is being held remotely via zoom 52 conference.  The court reporter is Deanna Dean on behalf of Henderson Legal Services.  The video camera operator is Eric Vavrasek, also on behalf of Henderson Legal Services.

Will counsel please introduce themselves and state whom they represent, beginning with the party noticing the deposition.

ATTORNEY CHUNG:  Good morning.  Daniel Chung of Finnegan on behalf of defendant and counterclaim plaintiffs, Tetra Tech Inc. and Tetra Tech TAS Inc.

With me today are my colleagues, Nicholas Cerulli and Christopher Howes, also of Finnegan.

ATTORNEY ZOVKO:  Good morning.  I'm Nick

---

**9**

Zovko of Knobbe Martens for Pavemetrics Systems Inc. and the witness.

THE VIDEOGRAPHER:  Will the court reporter please swear in the witness.

THE STENOGRAPHER:  My name is Deanna Dean.  I am a NH licensed court reporter.

At this time, do all parties agree to waive any objection, now or in the future, to me swearing in the witness remotely?

ATTORNEY CHUNG:  Yes.

ATTORNEY ZOVKO:  Yes.

JOHN LAURENT

a witness called for examination, having been first duly sworn according to law, was deposed and testified as follows:

EXAMINATION

BY ATTORNEY CHUNG:

Q.  Good morning.  Would you please state your name and address for the record.

A.  So my name is John Laurent, and my address -- are you talking about my home address?

Q.  Yes.

A.  Okay.  So the home address would be ███████

■  ███████████████████████

---

RESTRICTED - ATTORNEYS' EYES ONLY

Laurent, John                                                    December 21, 2021

15 (Pages 54 to 57)

---

54

1   averaging the number of -- the average running over
2   100 meters. Right? And instead of just giving him
3   all the raw red values, he would give you a report,
4   and then you would position those red values in a
5   GIS environment.
6       So the same can be done for rail. So if
7   you want to know the average rail wear over
8   100 meters, you would have to sift through all the
9   raw data extracted from the -- in the XML files,
10  and those XML files are produced by the -- by the
11  processing software. So it would be -- it would
12  take those data and would give the person, okay,
13  this is the average rail wear over 100 meters, and
14  the GPS position of that 100 meters is whatever it
15  is, and then that way you could have a nice map in
16  a GIS or the Google world-type environment where
17  you would see in red or green or yellow what the
18  color of the track would be in terms of wear.
19      But the -- that is, you know -- that kind
20  of reporting is something that would be different
21  for different customers and their own needs. So
22  it's not a one -- there's no one reporting
23  software. And most of the time we would not be
24  doing that job. It would be the integrator.
25      Q.  What is an integrator?

---

55

1       A.  Well, an integrator is someone who
2   would -- it's our -- the majority of our customers
3   are integrators. They would buy our system, our
4   sensors, and our software, and they would install
5   them on vehicles and add GPS, add DMI, add the
6   computers, and add the other instruments that are
7   needed for inspection tasks. And they would
8   bundle, package all of that, and either offer
9   services using that equipment -- by that, I mean
10  data collection services or inspection services --
11  or they would resell the vehicle to someone who
12  wants to make measurements and do the data. So
13  they would normally talk to their customers and
14  what their needs are, and then they would generate
15  the reports needed for those customers.
16      Q.  Who is an integrator in the US that is a
17  Pavemetrics customer?
18      A.  We have several. So ICC is one. Mandli
19  Communications is one. Dynatest. I think they
20  have US offices. And there's a small one: AAID
21  would be an integrator. And -- who else is there?
22      There's a -- there's a Fugro Roadware
23  which operates a lot in the US.
24      Q.  AID is Advanced Infrastructure Design?
25      A.  Yeah.

---

56

1       Q.  What is the LRAIL turnkey system?
2       A.  So the LRAIL turnkey system is a -- it
3   would be the LRAIL that also has a GPS, encoder,
4   and acquisition computer and a processing computer,
5   potentially -- not everybody would want that -- in
6   one box. And that box would be -- is something
7   that you could -- and also would mount. So it's
8   something you could mount on a hi-rail vehicle, and
9   then go out and use it to scan rail.
10      Q.  The LRAIL turnkey system also includes the
11  sensors?
12      A.  Yes.
13      Q.  The LRAIL turnkey system has been sold in
14  the US?
15      A.  Yeah, I would -- I would say yes. Yes.
16      Q.  What is the LRAIL hi-rail pod system?
17      A.  That's the same, I think.
18      Q.  And that LRAIL hi-rail pod system has been
19  sold in the US?
20      ATTORNEY ZOVKO:  Objection. Calls for a
21  legal conclusion.
22      Go ahead.
23      A.  I would say yes.
24      Q.  What is the ATAC LRAIL system?
25      A.  I don't think we call -- I don't think

---

57

1   that's a term that we use for our -- our system --
2   our own products.
3       Q.  Are you familiar with the acronym ATAC,
4   A-T-A-C?
5       A.  Automatic track something? Autonomous --
6   ATAC, isn't that an FRA thing? No, I'm not quite
7   sure what that acronym is for.
8       Q.  Has Pavemetrics sold an autonomous LRAIL
9   system in the US?
10      ATTORNEY ZOVKO:  Objection. Calls for a
11  legal conclusion.
12      A.  Could -- sorry. Could you repeat the
13  question? An autonomous --
14      Q.  Has Pavemetrics sold an autonomous LRAIL
15  system in the US?
16      ATTORNEY ZOVKO:  Same objection.
17      A.  So the autonomous is not something -- is
18  not a -- is not -- we don't have a product that's
19  called autonomous anything right now.
20      Q.  My question wasn't whether you've sold an
21  LRAIL that's called an autonomous LRAIL, but have
22  you sold an LRAIL in the US that's autonomous?
23      ATTORNEY ZOVKO:  Same objection.
24      A.  Yeah. Same answer. What do you mean by
25  "autonomous"? What would that be? That would

---

Henderson Legal Services, Inc.

RESTRICTED - ATTORNEYS' EYES ONLY

Laurent, John                                    December 21, 2021

37 (Pages 142 to 145)

142

1    Another important feature we have on the
2  hardware side is we have integrated IMUs, inertial
3  measurement units.  So an IMU is a 3-axis gyro and
4  a 3-axis accelerometer.  So there's one in each of
5  our sensors, and that allows us to measure the
6  motion of each of the sensors.  They measure the
7  accelerations and the angles.  So as the system
8  moves forward, and you're going to have suspension
9  motions and vibrations caused by the vehicle, when
10 it shakes over tracks or going over crossings or
11 when the track is just rough, if you don't do the
12 inertial corrections, then your 3D data is going to
13 look like all wavy and going up and down and
14 everything.
15    So you have to correct for the vehicle
16 motion.  So, to do that, we -- we analyze all the
17 inertial data coming from the IMUs, and then we
18 correct for that motion so you get the real 3D
19 shape of the track, once everything is calibrated,
20 to get the real 3D shape of the track to get the
21 real geometry of the track, so you get the actual
22 curves, the actual cants, and you remove any
23 vibrations that are happening during the
24 acquisition process.
25    Q.  Has Pavemetrics patented the integrated

143

1  IMU feature?
2    A.  That's a -- that's more of a -- kind of a
3  trade secret how we do these things.  It's not a --
4  haven't -- we don't have a patent on this
5  particular aspect of our system.
6    Q.  What are the disadvantages of the LRAIL
7  compared to competitors' products?
8    A.  The disadvantages?  So I'm focusing more
9  on the advantages, but the disadvantages?  So there
10 aren't really very many.  Not that I'm aware of.
11    So, typically, we're less expensive, we do
12 more, and we're more accurate than most other
13 technologies.  So I don't know what our
14 disadvantages would be.
15    Q.  You're not aware of any disadvantages of
16 the LRAIL compared to other competitor products on
17 the market?
18    A.  Well, some people will prefer certain
19 features rather than others, depending on their
20 own -- what they want.  But we don't feel that our
21 technology is -- is not as good as anything else on
22 the market, if not better.
23    Q.  And what are those other features that
24 certain people would prefer over others?
25    A.  If someone wants to have the sensors below

144

1  the rail, then they might prefer that than having
2  them up higher.
3    Q.  Anything else?
4    A.  Not that I can think of.
5    Q.  Does Pavemetrics respect the intellectual
6  property of other companies?
7    A.  Yes, we do.  Of course.
8    Q.  And how -- what efforts does Pavemetrics
9  take to respect the IP of other companies?
10    A.  What effort --
11    ATTORNEY ZOVKO:  Objection.
12    THE WITNESS:  Yeah.  Go ahead.
13    ATTORNEY ZOVKO:  Go ahead.
14    A.  What efforts?  Just normal efforts.  If
15 someone were to -- to point out that -- for
16 example, sending a letter of notification that we
17 might be infringing, we would take it seriously,
18 and we would look at the claims to see if they're
19 valid.
20    Q.  Does Pavemetrics do anything else to
21 respect the IP of other companies?
22    ATTORNEY ZOVKO:  Objection.  Vague.
23    A.  Well, we certainly don't try to
24 reverse-engineer or -- or try to copy other people
25 in any way.

145

1    Q.  Does Pavemetrics monitor the patents of
2  other companies?
3    A.  No.  No.  Not on their -- not that I --
4  not normally, we wouldn't do that, no.
5    Q.  Does Pavemetrics search for patents of
6  other companies?
7    ATTORNEY ZOVKO:  Objection.  Vague.
8    A.  Generally not -- not in our normal
9  day-to-day operations.
10    Q.  Does Pavemetrics analyze the patents of
11 other companies?
12    ATTORNEY ZOVKO:  Same objection.
13    A.  We would only do that if we had been
14 served a notice.
15    Q.  Mr. Laurent, if you could open up the
16 document that's been previously marked Exhibit 18.
17 It's PAVEMETRICS0200898.
18    A.  Okay.  Hold on.  PAVEMETRICS0200898.
19    Okay.  That's not one that I downloaded,
20 and I don't know that I started at the right spot.
21    These are in numerical order; yes?
22    ATTORNEY ZOVKO:  It should have "Exhibit
23 18" in the title of the file.
24    A.  On the legal services thing, which one
25 would it be?

RESTRICTED - ATTORNEYS' EYES ONLY

Laurent, John                                    December 21, 2021

38 (Pages 146 to 149)

---

146

1  Q.  It starts with "Exhibit 18" in the title.
2  A.  Oh, oh, oh.  Okay.  Okay.  Sorry.
3     No.  Exhibit 18.
4     Okay.  There it is.
5  Q.  Do you have it open, Mr. Laurent?
6  A.  Yeah.
7  Q.  Do you see that you are an email recipient
8  on the first email on the top of the page, page
9  898?
10 A.  Yeah, I can see that.
11 Q.  And the second email, on October 13th at
12 3:03 p.m., do you see that you are the author?
13 You're on the "from" line?
14 A.  Okay.  That's another one, a different
15 one?
16 Q.  It's on the same page, on page 898, the
17 front -- first page.
18 A.  Okay.
19 Q.  It starts with "The GREX patents
20 expire..."
21 A.  Yeah.
22 Q.  Do you see your name on the "from" line?
23 A.  Yeah.
24 Q.  What was the purpose of sending your email
25 concerning the GREX patents expiring in June 2024?

---

147

1  A.  I think we were looking at just an example
2  of how much time could be liable for if a GREX
3  patent would be against us.
4  Q.  And then above that, when you're the
5  recipient of the email from Mr. Habel, it states
6  that "There could be other patents out there that
7  we have not seen, and not necessarily from GREX."
8     Do you see that?
9  A.  Yeah.
10 Q.  Did Pavemetrics search for other patents
11 aside from GREX?
12 A.  No.  I don't --
13    ATTORNEY ZOVKO:  Wait, wait, wait.
14    Objection.  Outside the scope of this
15    witness's 30(b)(6) topics.
16    THE WITNESS:  Okay.
17    ATTORNEY ZOVKO:  Calls for speculation.
18    You can answer in your personal capacity
19    to the extent you know.
20 A.  Okay.  So I did not do any extra searches
21 for that.
22 Q.  Do you know if anybody else at Pavemetrics
23 did extra searching for patents other than GREX's
24 patents?
25    ATTORNEY ZOVKO:  Same objections.

---

148

1  A.  I'm not aware other people did any
2  searches for that.
3  Q.  Would it have been Pavemetrics' custom and
4  practice to search for other patents aside from
5  GREX's patents?
6     ATTORNEY ZOVKO:  Objection.  Outside the
7  scope of this witness's 30(b)(6) topics.  Calls
8  for speculation.  Lack of foundation.
9     You can answer to the extent you know in
10 your personal capacity.
11 A.  I am not aware anybody would have done
12 that.
13 Q.  And after receiving this email from
14 Mr. Habel, did you choose not to search for other
15 patents aside from GREX's patents?
16    ATTORNEY ZOVKO:  Okay.  Objection.
17    Clarify you're answering in your personal
18    capacity, but also lack of foundation and vague.
19 A.  So I don't think I made a choice about it
20 or not, so I didn't proceed with any kind of patent
21 search.
22 Q.  Does Pavemetrics monitor intellectual
23 property lawsuits of its competitors?
24    ATTORNEY ZOVKO:  Objection.  Outside the
25    scope of this witness's 30(b)(6) topics.

---

149

1  You can answer in your personal capacity.
2  A.  We don't normally do that, no.  We -- we
3  looked at a bit of the GREX -- the GREX issues.  We
4  were following those because we have been put on
5  notice, but we certainly weren't systematically
6  looking for that kind of information.
7  Q.  And why were you monitoring the GREX
8  litigation?
9     ATTORNEY ZOVKO:  Objection.
10 A.  Because --
11    ATTORNEY ZOVKO:  Wait.
12    Objection.  Mischaracterizes testimony.
13    Lack of foundation.
14 A.  So when we had received a letter from GREX
15 notifying us about some of their patents, that we
16 answered.  And so that's why we were more concerned
17 about those.
18 Q.  I'm going to mark as Exhibit 33
19 PAVEMETRICS0244114.
20 A.  Is there another document?
21 Q.  Yes, please.  It's PAVEMETRICS0244114.
22    (Laurent Exhibit 33 marked for
23    identification.)
24 A.  Yeah.
25 Q.  Do you see it?

---

RESTRICTED - ATTORNEYS' EYES ONLY

Laurent, John                                    December 21, 2021

41 (Pages 158 to 161)

---

158

1    ATTORNEY ZOVKO:  Objection.  Vague, based
2  on what you mean by "others."
3    Go ahead.
4    A.  I could not confirm if anyone had clicked
5  on that link or not.
6    Q.  Why were you not concerned with Tetra
7  Tech's patents?
8    A.  Because Tetra Tech was a customer of ours
9  and they were using our sensors to do different
10  applications from them -- with them.  So we always
11  were under the impression that they were customers
12  of ours.  So whatever success in whatever IP Tetra
13  Tech had and developed, it would -- you know, it
14  would not be a problem for us because they were
15  using -- they were users of our technology.
16    Q.  Do you know if any other recipients of
17  this email from Mr. Fox-Ivey ignored the link to
18  Mr. Mesher's list of patents?
19    ATTORNEY ZOVKO:  Objection.  Vague.
20    Mischaracterizes testimony.  Lack of foundation.
21    A.  I don't know one way or the other.
22    Q.  Would it have been Pavemetrics' general
23  custom and practice to review this list of
24  Mr. Mesher's patents?
25    ATTORNEY ZOVKO:  Objection.  Lack of

---

159

1  foundation.  Outside the scope of this witness's
2  topics.
3    You can answer in your personal capacity.
4    A.  We don't have a -- we wouldn't -- we
5  wouldn't have a systematic way -- we wouldn't
6  systematically look for patents or anything like
7  that.  It would not necessarily be something that
8  we would do.
9    Q.  Would it have been Pavemetrics' general
10  custom and practice to deliberately ignore this
11  list of Mr. Mesher's patents?
12    ATTORNEY ZOVKO:  Same objections.
13    Also, object; vague.
14    A.  No.
15    Q.  Did you deliberately ignore Mr. Mesher's
16  list of patents that would have been identified
17  through this link in the email?
18    ATTORNEY ZOVKO:  Objection.  Lack of
19  foundation.
20    A.  So I'll answer no to that one as well.
21    Q.  Did you click on the link?
22    A.  No recollection whether I clicked or did
23  not click on the link.  I would assume that I
24  probably didn't, because I -- like I said, I didn't
25  think Tetra Tech was a threat for us in any way.

---

160

1    Q.  Okay.  Since 2017 did Pavemetrics monitor
2  Mr. Mesher's patents?
3    A.  No, we didn't monitor his patents.
4    Q.  Why not?
5    A.  For the same reason I probably didn't
6  click on the link.  There was no reason for us to
7  think that we could have an issue with Tetra Tech.
8    Q.  Are you familiar with -- strike that.
9    You're aware that Tetra Tech has asserted
10  US Patent No. 10,362,293, also known as the '293
11  patent in this litigation against Pavemetrics?
12    A.  Yes, I'm aware of that.
13    Q.  When was the first time you had knowledge
14  of this patent?
15    A.  So that would be after we received the
16  letter, the notice of infringement letter from
17  Finnegan.
18    Q.  Did you investigate any other Pavemetrics
19  patents after receiving the notice of infringement
20  for the '293 patent?
21    A.  Pavemetrics patents?
22    Q.  Sorry.
23    Did you investigate any other Tetra Tech
24  patents after receiving the notice of infringement
25  of the '293 patent?

---

161

1    A.  We were focusing on that one.  I don't --
2    Q.  Did you --
3    A.  -- recall having looked at any other.
4    Q.  Would it have been Pavemetrics' general
5  custom and practice to investigate other related
6  patents to that that has asserted against it?
7    ATTORNEY ZOVKO:  Objection.  Vague, and
8  outside the scope of this witness's designated
9  topics.
10    You can answer in your personal capacity.
11    A.  We don't spend -- we don't spend time
12  looking at patents.  We don't have an internal
13  legal team and so on that does that.  So, no.
14    Q.  Did you believe that there was a good
15  chance that there were other Tetra Tech patents out
16  there?
17    ATTORNEY ZOVKO:  Objection.  Vague.  Lack
18  of foundation.
19    A.  I would have no reason of assuming there
20  were or weren't any other patents.  We were focused
21  on that particular patent at the time.  And --
22  yeah.  So . . .
23    Q.  And you're aware that Tetra Tech has
24  asserted the US Patent 10,616,557, also known as
25  the '557 patent, against Pavemetrics in this

---

RESTRICTED - ATTORNEYS' EYES ONLY

Laurent, John                                              December 21, 2021

42 (Pages 162 to 165)

---

162

1   litigation?
2       A.  Yes, I am aware of that.
3       Q.  When was the first time you had knowledge
4   of this patent?
5       A.  Again, that would have been when our
6   lawyers told us that Tetra Tech was asserting
7   another patent against us.
8       ATTORNEY ZOVKO:  Mr. Laurent, just to
9   caution you, he asked when.  That's a fair
10  question.  Just don't get into substance of
11  communications with your attorneys.
12      A.  Oh.  So I don't know what the date would
13  have been.
14      Q.  Mr. Laurent, would you please open Exhibit
15  15, previously marked as Exhibit 15.
16      So in the top email where it says "We are
17  100 percent confident in our position, so might as
18  well just deal with it head-on," do you see that?
19      A.  Yeah, I can see that.
20      Q.  Okay.  Did you tell Mr. Fox-Ivey to write
21  that?
22      A.  No, I didn't tell him to write that.  I
23  actually wasn't aware of this exchange.
24      Q.  At the last page, 074 --
25      A.  Yeah.

---

163

1       Q.  -- do you see the Tetra Tech website and
2   the reference to section on patents?
3       A.  Yeah, I can see that.
4       Q.  Did Mr. Fox-Ivey report to you the Tetra
5   Tech website and the section on patents?
6       ATTORNEY ZOVKO:  Objection.  Lack of
7   foundation.
8       A.  Yeah.  He did not -- I don't -- he did
9   not.  No recollection that he might have.
10      Q.  Would you have expected him to?
11      ATTORNEY ZOVKO:  Objection.  Lack of
12  foundation.
13      A.  No.  No.  Well, from the date of
14  February 22nd, he already knew we had an IP
15  litigation case with Tetra Tech.  So I can't see
16  why he would have told us that since he knew we
17  were already, you know, dealing with the issues.
18      Q.  Have you ever seen the Tetra Tech website?
19      A.  Have I seen the Tetra Tech website?
20      Q.  Yes.
21      A.  I haven't spent a lot of time looking at
22  that website, no.  I've probably seen it maybe
23  once.  I don't actually recall having went on their
24  website.
25      Q.  Was it in February 2021?

---

164

1       A.  That I would have went to their website?
2       Q.  Yes.
3       A.  No.
4       ATTORNEY ZOVKO:  Wait.  Wait.  Wait.
5   Wait.  Wait.
6       Objection.  Mischaracterizes testimony.
7   Lack of foundation.
8       Go ahead.
9       A.  No.  It would have been probably before,
10  because we were trying to see what the -- what
11  might have been the Tetra Tech brother that we were
12  infringing.  So we did some searches, but we didn't
13  find anything.
14      Q.  And did you review the Tetra Tech website
15  after February 2021?
16      A.  I don't even think I did before, to tell
17  you the truth.  I don't know.  I don't recall.
18      Q.  When did Pavemetrics first learn about
19  Tetra Tech's 3DTAS product?
20      A.  We learned about it that letter,
21  mostly.  We knew there was something going on
22  with -- because there were, you know, they were
23  interested in our rail product.  They were
24  interested in our sensors.  And they were -- they
25  were in some kind of a rail litigation suit with

---

165

1   the GREX and Holland -- the GREX/Loram people.  But
2   there was nothing -- there was no information to be
3   found anywhere on the web when you googled
4   anything.  So we didn't know anything, really.
5       Q.  What's the letter that you're referring
6   to?
7       A.  The notice of infringement letter.  I
8   believe that's where they mentioned it.
9       Q.  And in early 2015, you assisted Tetra Tech
10  in a patent infringement suit against GREX.
11  Correct?
12      A.  Yeah.  I tried to help.
13      Q.  Okay.  And that patent infringement suit,
14  GREX accused Tetra Tech of infringing its patents?
15      A.  Yes.
16      Q.  And it involved Tetra Tech's rail
17  inspection system or 3DTAS as the accused product?
18      ATTORNEY ZOVKO:  Objection.  Lack of
19  foundation.
20      A.  Well, I -- yeah, I wouldn't have been able
21  to tell exactly what product was being accused.
22  The only information I had was by reading some of
23  the GREX patents, what was involved.  So that's --
24  I only knew the information on the GREX patents.  I
25  didn't know anything about what Tetra Tech was or

---

RESTRICTED - ATTORNEYS' EYES ONLY

Laurent, John                                    December 21, 2021

46 (Pages 178 to 181)

---

178

1    ATTORNEY CHUNG:  Let's take a 10-minute
2  break so I can get my notes together.
3    THE VIDEOGRAPHER:  We are going off the
4  record at 5:12 p.m.
5    (Recess taken from 5:12 p.m. to 5:32 p.m.
6  EST.)
7    THE VIDEOGRAPHER:  We are going back on
8  the record at 5:32 p.m.
9  BY ATTORNEY CHUNG:
10    Q.  What consulting services does Pavemetrics
11  provide its US customers with respect to the LRAIL?
12    A.  We don't normally provide any kind of
13  consulting services.  What we -- what we provided
14  in the case of the consulting services for the US
15  were R&D-type projects.  So they were -- they were
16  FRA projects that we were participating in to
17  demonstrate the -- namely to demonstrate the
18  technology for the LRAIL for change detection.
19    Q.  Does Pavemetrics provide training services
20  for its US customers with respect to LRAIL?
21    A.  Typically we would train people when -- we
22  would just train people if they purchased an LRAIL
23  and we would train them to use the LRAIL.  It could
24  be a training on-site or it could be more of a
25  web-based thing.  Most of the time we go on-site

---

179

1  and we do the trainings for the customers who
2  purchase systems.
3    Q.  And that training has been provided to
4  CSX?
5    A.  We recently did a training as more -- when
6  we delivered the system in December, we went to CSX
7  and we gave an overview of the system to -- to
8  them.
9    Q.  And training services are provided to AID?
10    A.  I don't recall that we did any training
11  for AID.  They were already using our technology,
12  so they were pretty -- they were pretty already
13  aware of how the system works.
14    Q.  Does Pavemetrics provide technical support
15  services for using the LRAIL to US customers?
16    A.  Technical support services?  So we would
17  support the systems that we have delivered to
18  clients, yes.
19    Q.  And that include -- the clients include
20  CSX?
21    A.  Well, yes.  They haven't actually started
22  using the recent -- the system that we recently
23  delivered, but we would support -- we would support
24  them on an ongoing basis, yes.  That would be
25  normal operation.

---

180

1    Q.  That's -- technical support services were
2  provided to CSX for products other than the LRAIL
3  product that was recently delivered.  Is that
4  right?
5    A.  To CSX?
6    Q.  Yes.
7    A.  Technical support services?
8    So, yeah, we would help them if they had
9  any questions about the use of the system.
10    Q.  And technical support services were
11  provided to AID for using the LRAIL?
12    A.  You mean answering questions?
13    Q.  Yes.  Questions relating to --
14    A.  About how -- I would -- I don't -- we
15  didn't go on-site for AID or anything like that.
16  But if they were to ask questions, we would answer
17  them.
18    Q.  Does Pavemetrics provide any data
19  processing services for its LRAIL customers?
20    A.  Typically it's not something we would do.
21  It's something we did for the FRA contract.  We did
22  processing of data for the FRA contract.  But it's
23  not -- like it's not a service that we offer
24  people.  It's just, you know, what we'll do for R&D
25  work or for special projects.  It's not a typical

---

181

1  service we offer.
2    Q.  Did Pavemetrics provide data processing
3  services for CSX for LRAIL?
4    A.  We did process some of their data because
5  we used that data for the FRA work.
6    Q.  And what -- did you deliver, or did --
7  strike that.
8    Did Pavemetrics deliver any output files
9  to CSX as a result of that data processing?
10    A.  I can't say for sure.  We may have done
11  that or given overview of some example results or
12  things like that.  But it's certainly not something
13  that we would do on a regular basis or, you know,
14  or like a -- for a large amount of kilometers or --
15  you know.  We mostly process that data so we could
16  use it for the FRA project.
17    Q.  Who would know whether Pavemetrics
18  provided output results from data processing
19  services for CSX?
20    A.  The link would probably have been through
21  Richard Fox-Ivey or Benoit, maybe.  We would have
22  to -- I would have to check that in more detail.
23    Q.  I'm going to try to put an exhibit on the
24  chat box.  It's smaller so hopefully it will work.
25    Are you able to download that document?

---

RESTRICTED - ATTORNEYS' EYES ONLY

Laurent, John                                      December 21, 2021

60 (Pages 234 to 236)

234

1  like a rough?
2       ATTORNEY ZOVKO:  Yeah.  Just a rough and
3  whatever we did last time.
4       THE STENOGRAPHER:  I didn't do last time,
5  so I'm not sure.  Do you need regular turnaround
6  or quicker than regular?
7       ATTORNEY ZOVKO:  Whatever the other side
8  wants is fine for us.
9       ATTORNEY CERULLI:  This is Nick.  I think
10  we requested three business days for final, and
11  a rough today whenever you get a chance.
12       THE STENOGRAPHER:  Yes.  You got it.
13       (Witness excused and deposition concluded
14  at p.m.)
15
16
17
18
19
20
21
22
23
24
25

235

1       ACKNOWLEDGMENT OF DEPONENT
2
3       I, _____, do hereby
4  acknowledge that I have read and examined the
5  foregoing testimony, and the same is a true, correct
6  and complete transcription of the testimony given by
7  me, and any corrections appear on the attached Errata
8  Sheet signed by me.
9
10  _____    _____
11   (DATE)            (SIGNATURE)
12
13       NOTARIZATION  (If Required)
14
15  State of _____
16  County of _____
17
18  Subscribed and sworn to (or affirmed) before me on
19  this _____ day of _____, 20_____, by
20  _____, proved to me on the
21  basis of satisfactory evidence to be the person who
22  appeared before me.
23
24  Signature: _____
25            (Seal)

236

1       C E R T I F I C A T E
2
3       I, Deanna J. Dean, a licensed court
4  reporter, Registered Diplomate Reporter, and
5  Certified Realtime Reporter, do hereby certify:
6       That JOHN LAURENT, in the foregoing
7  deposition named, was present and by me sworn as a
8  witness in the matter of Pavemetrics Systems Inc.,
9  et al. v. Tetra Tech Inc., et al., at the time and
10  place therein specified;
11       That said deposition was taken before me
12  at said time and place, and was taken down in
13  shorthand by me, and was thereafter transcribed
14  into typewriting, and that the foregoing transcript
15  constitutes a full, true and correct report of said
16  deposition and of the proceedings that took place;
17       That before completion of the proceedings,
18  review of the transcript was requested.
19       IN WITNESS WHEREOF, I have hereunder
20  subscribed my hand this 27th day of
21  December, 2021.
22
23
24  _____
25  Deanna J. Dean, LCR, RDR, CRR

Henderson Legal Services, Inc.

# EXHIBIT 16

RESTRICTED - ATTORNEYS' EYES ONLY

Hebert, Jean-Francois                                    January 7, 2022

1

```
            IN THE UNITED STATES DISTRICT COURT

             CENTRAL DISTRICT OF CALIFORNIA

             CASE NO. 2:21-CV-1289 MCS-MMA

- - - - - - - - - - - - - - - - - x

 PAVEMETRICS SYSTEMS INC.,              :

              Plaintiff,                :

      v.                                :

 TETRA TECH INC.,                       :

              Defendant.                :

- - - - - - - - - - - - - - - - - x


        ** Restricted - Attorneys' Eyes Only **


  VIDEO-RECORDED DEPOSITION OF JEAN-FRANCOIS HEBERT


             Friday, January 7, 2022

           commencing at 9:06 a.m. (EST)


    (This proceeding was conducted via Zoom.

      All participants appeared remotely.)




    ---------------------------------------------

       REPORTED BY:  Deanna J. Dean, RDR, CRR
```

RESTRICTED - ATTORNEYS' EYES ONLY

Hebert, Jean-Francois                                              January 7, 2022

3 (Pages 6 to 9)

---

**6**

1  also here for Pavemetrics.
2      THE VIDEOGRAPHER:  Will the court reporter
3  please swear in the witness.
4      THE REPORTER:  My name is Deanna Dean.  I
5  am a licensed court reporter.
6      At this time, do all parties agree to
7  waive any objection, now or in the future, to me
8  swearing in the witness remotely?
9      ATTORNEY CERULLI:  Yes.
10      ATTORNEY LAQUER:  Agreed.
11          JEAN-FRANCOIS HEBERT
12  a witness called for examination, having been first
13  duly sworn according to law, was deposed and
14  testified as follows:
15      THE VIDEOGRAPHER:  You may proceed.
16          EXAMINATION
17  BY ATTORNEY CERULLI:
18      Q.  Good morning.
19      Could you please state your name and
20  address for the record.
21      A.  Jean-Francois Hebert, ████████████
22  ████████████████████████████████
23  ████████████████
24      Q.  Thank you.
25      Have you ever been deposed before,

---

**7**

1  Mr. Hebert?
2      A.  No.
3      Q.  You understand you're under oath today?
4      A.  Yes.
5      Q.  And if called before the court, you
6  understand it's the same oath you would be giving
7  before the court?
8      A.  Yes.
9      Q.  To be -- sorry.  You would be under before
10  the court.  Do you understand?
11      A.  Yes, I understand.
12      Q.  And you understand you must answer
13  truthfully and completely?
14      A.  I understand.
15      Q.  And if you don't understand a question,
16  please ask me to rephrase.
17      Is that fair?
18      A.  Yes, that's fair.
19      Q.  And if you answer the question, I'll
20  assume that you understood the question.
21      Is that fair?
22      A.  Yes.
23      Q.  And at times your counsel may object, but
24  I would ask you to please still answer the question
25  unless your counsel specifically instructs you

---

**8**

1  otherwise.
2      Is that fair?
3      A.  Yes.
4      Q.  And as we have a court reporter here
5  transcribing our conversation, we need a verbal
6  response.
7      Do you understand that?
8      A.  Yes.
9      Q.  And if at any point you need a break, let
10  me know and we can take one.  We'll take periodic
11  breaks every hour or so.
12      Is there any reason you cannot testify
13  truthfully here today?
14      A.  No.
15      Q.  Are you on any medications that would
16  prevent you from giving truthful testimony?
17      A.  No.
18      Q.  Is there anyone in the room with you
19  today?
20      A.  No.
21      Q.  Mr. Hebert, are you a native French
22  speaker?
23      A.  Yes.
24      Q.  Are you comfortable speaking, reading, and
25  writing in English, though?

---

**9**

1      A.  Yes.  If you accept that I will make some
2  grammatical errors.
3      Q.  Yeah.  I guess -- but you're comfortable
4  speaking in English.  Correct?
5      A.  Yes.  Correct.
6      Q.  Okay.  I'm going to upload a document I'm
7  going to mark as Exhibit 126.  Can you let me know
8  once you've opened that.
9      Apologies.  I'm going to rename it in the
10  share file to Exhibit 126.
11      (Hebert Exhibit 126 marked for
12  identification.)
13      A.  Okay.  So I opened the document.
14      Q.  Have you seen this document before?
15      A.  I don't remember if I have seen this
16  document.
17      Q.  You see on the front page where it says
18  the caption on the lower left says "Pavemetrics
19  Systems Inc., Plaintiff, v Tetra Tech Inc.,
20  Defendant"?
21      A.  Yes.
22      Q.  You understand you're testifying today
23  pursuant to that -- the lawsuit between Pavemetrics
24  and Tetra Tech.  Correct?
25      A.  Correct.

---

RESTRICTED - ATTORNEYS' EYES ONLY

Hebert, Jean-Francois

January 7, 2022

16 (Pages 58 to 61)

---

**58**

1  Q.  Do you know if all LRAIL Analyzer Library
2  user manuals in Pavemetrics' possession were
3  produced other than in -- with respect to
4  Pavemetrics' repository?
5      A.  I don't understand the question.
6      ATTORNEY CERULLI:  Counsel, we'd just ask
7  that if there's any other LRAIL Analyzer Library
8  user manuals in Pavemetrics' possession that
9  they be produced.  You know, if -- to the extent
10  they're contained in, you know, a Git
11  repository, that's not source code and they
12  should be produced in the regular course.
13      ATTORNEY LAQUER:  I believe the parties
14  have had correspondence already on this subject.
15      ATTORNEY CERULLI:  Yeah, and I believe
16  that Pavemetrics had agreed to produce all
17  manuals through normal course and not just make
18  them available for inspection.
19      ATTORNEY LAQUER:  I believe that we did
20  that, and you've also spent nine days
21  inspecting.
22      So to the extent that there was something
23  in the Git repository that was not part of the
24  production, that information would have been
25  available to you.  But I'm not aware of any such

---

**59**

1  manual that is in the repository and not in the
2  production.  If you've noticed any during the
3  inspection, I'd be happy to address that.
4      Q.  Mr. Hebert, what is the purpose of
5  Exhibit 27?
6      A.  Let me find the exhibit again.  I think
7  that I accidentally disconnect -- oh, no, it's
8  here.
9      Can I have a look at the exhibit?
10      Q.  Yeah.
11      A.  The purpose of this manual is to help our
12  customers to understand how the processing is
13  working with the LRAIL system.
14      Q.  And Pavemetrics provides these LRAIL
15  Analyzer Library user manuals to all of its
16  customers?
17      A.  Not necessarily.
18      Q.  Why would Pavemetrics not provide the
19  LRAIL Analyzer Library user manuals to its
20  customers?
21      A.  Some customers do not need to process any
22  data.
23      Q.  Why would the customer not need to process
24  any data?
25      A.  In some cases, the customer needs only to

---

**60**

1  collect some data.
2      Q.  And then what would the customer do with
3  that data that it collected?
4      A.  It could send it to us so that it can be
5  processed at our office.
6      Q.  Are there any US customers of Pavemetrics'
7  LRAIL system that ask Pavemetrics to process their
8  data?
9      A.  Could you repeat the question?
10      Q.  Yeah.
11      Are there any US customers of Pavemetrics'
12  LRAIL system that ask Pavemetrics to process their
13  data?
14      A.  We did some data processing for FRA
15  project.
16      Q.  Is that the only US customer that you're
17  aware of?
18      A.  We also did some data processing for
19  Massachusetts Lowell.
20      Q.  Any other customers that Pavemetrics did
21  data processing for?
22      A.  Not that I am aware.
23      Q.  Has Pavemetrics done data processing for
24  CSX?
25      A.  Could you repeat the question?

---

**61**

1      Q.  Has Pavemetrics done data processing for
2  CSX?
3      A.  Not that I am aware.
4      Q.  Did you investigate, as part of your
5  preparation for today's deposition, the data
6  processing that Pavemetrics does for its LRAIL
7  customers?
8      A.  For the FRA project?
9      Q.  No.  With respect to all customers in the
10  US.
11      A.  What is your question again?
12      Q.  Did you investigate as part of your
13  preparation for today's deposition the data
14  processing that Pavemetrics does for its LRAIL
15  customers?
16      A.  No.
17      Q.  Can you please turn to page 12 of
18  Exhibit 27.
19      A.  Yes.
20      Q.  And Section 7 at the bottom is entitled
21  "Processing Parameters and Processing Modules."
22  And if you turn to page 13, Section 7.1.1 is
23  entitled "General Processing Parameters."
24      Do you see that?
25      A.  Yes.

---

RESTRICTED - ATTORNEYS' EYES ONLY

Hebert, Jean-Francois

January 7, 2022

53 (Pages 206 to 209)

---

**206**

Did I translate that correctly?

A.  That is correct.

Q.  And what did you mean by this?

A.  I was looking for a discussion with them on how we should proceed with respect to sending a new software version to Tetra Tech.

Q.  But what did you mean by "the pandemic card"?

A.  I'm not sure.

Q.  You also mention in this email, or you suggest in this email that you tell him "I forgot."

Is that a correct translation?

A.  I'm saying that if I should wait that he contacts me again.

Q.  Were you suggesting delaying service to a customer, in this case, Tetra Tech?

A.  So at this time we were having issues with Tetra Tech as a customer.  So we were discussing these different options.

Q.  And what issues were you having with Tetra Tech as a customer?

A.  Tetra Tech sent us a letter on January 2021 saying that we were infringing one of their patent.

Q.  But you had existing contracts with Tetra

---

**207**

Tech.  Correct?

A.  Correct.

Q.  Were you suggesting breaking the contracts with Tetra Tech in January 2021?

A.  No.

Q.  Were you suggesting providing poor service to Tetra Tech as a customer?

A.  Could be.

ATTORNEY CERULLI:  Can we go off the record.

THE VIDEOGRAPHER:  Going off the record at 5:44 p.m.

(Recess taken from 5:44 p.m. to 5:48 p.m.)

THE VIDEOGRAPHER:  We are going back on the record at 5:49 p.m.

ATTORNEY CERULLI:  I have no further questions at this time.

ATTORNEY LAQUER:  I have no questions.

THE VIDEOGRAPHER:  Okay.  This concludes today's deposition of Mr. Jean-Francois Hebert.

We are going off the record at 5:49 p.m.

(Witness excused and deposition concluded at 5:49 p.m.)

---

**208**

C E R T I F I C A T E

I, Deanna J. Dean, a licensed court reporter, Registered Diplomate Reporter, and Certified Realtime Reporter, do hereby certify:

That JEAN-FRANCOIS HEBERT, in the foregoing deposition named, was present and by me sworn as a witness in the matter of Pavemetrics Systems Inc. v. Tetra Tech Inc., at the time and place therein specified;

That said deposition was taken before me at said time and place, and was taken down in shorthand by me, and was thereafter transcribed into typewriting, and that the foregoing transcript constitutes a full, true and correct report of said deposition and of the proceedings that took place;

That before completion of the proceedings, review of the transcript was not requested.

IN WITNESS WHEREOF, I have hereunder subscribed my hand this 12th day of January, 2022.

_____

Deanna J. Dean, LCR, RDR, CRR

---

**209**

ACKNOWLEDGMENT OF DEPONENT

I, _____, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me, and any corrections appear on the attached Errata Sheet signed by me.

_____         _____

(DATE)              (SIGNATURE)

NOTARIZATION  (If Required)

State of _____
County of _____

Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20____, by _____, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____
            (Seal)

---

# EXHIBIT 20

RESTRICTED - CONFIDENTIAL SOURCE CODE
Morellas, Vassilios                                     March 23, 2022

1

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

-----------------------------------x

PAVEMETRICS SYSTEMS, INC.,

        Plaintiff,        Civil Action No.

    v.                   2:21-cv-1289-MCS-MMA

TETRA TECH, INC.,

        Defendant.

-----------------------------------x

AND RELATED COUNTERCLAIMS

-----------------------------------x


** RESTRICTED - CONFIDENTIAL SOURCE CODE **


REMOTE VIDEOCONFERENCE

DEPOSITION OF VASSILIOS MORELLAS, Ph.D.

Wednesday, March 23, 2022

Plymouth, Minnesota




Reporter: Michael D. O'Connor, RMR, CRC, CRR

Job No. 51716

RESTRICTED - CONFIDENTIAL SOURCE CODE

Morellas, Vassilios                                                            March 23, 2022

3 (Pages 6 to 9)

---

**6**

1    P R O C E E D I N G S

3    (Document marked as Exhibit 516
4    for identification)                              09:20:05
5    THE VIDEOGRAPHER:  Here begins         09:20:05
6    Volume I in the video deposition of Dr.          10:01:52
7    Vassilios Morellas taken in the matter           10:01:58
8    of Pavemetrics Systems Incorporated v.           10:01:58
9    Tetra Tech Incorporated in the United            10:02:01
10   States District Court, Central District          10:02:04
11   of California, Case No.                           10:02:06
12   2:21-cv-1289-MCS-MMA.                             10:02:17
13   Today's date is March 23, 2022.          10:02:18
14   The time on the video monitor is 9:02            10:02:21
15   a.m.                                              10:02:25
16   This deposition is being held            10:02:25
17   remotely.  The witness is located in             10:02:26
18   Plymouth, Minnesota.  The court reporter         10:02:29
19   is Michael O'Connor on behalf of                 10:02:31
20   Henderson Legal Services, and I'm the            10:02:33
21   videographer, Dewey Nelson, also on              10:02:36
22   behalf of Henderson Legal Services.              10:02:38
23   Will counsel and others please           10:02:41
24   introduce themselves and state whom they         10:02:44
25   represent, beginning with the party              10:02:46

---

**7**

1    noticing the deposition.                          10:02:48
2    MR. LAQUER:  Good morning.  My           10:02:51
3    name is Alan Laquer.  I'm with Knobbe            10:02:55
4    Martens and I'm representing                     10:02:55
5    Pavemetrics.                                      10:02:57
6    MR. CERULLI:  Good morning.  Nick        10:02:57
7    Cerulli from Finnegan on behalf of Tetra         10:02:58
8    Tech, Inc. and Tetra Tech TAS, Inc., and         10:03:01
9    also on behalf of the witness, Dr.               10:03:04
10   Morellas, and joining me is my                   10:03:09
11   colleague, Victor Palace, also from              10:03:11
12   Finnegan.                                         10:03:15
13   THE VIDEOGRAPHER:  Will the court        10:03:17
14   reporter please swear in the witness.            10:03:20

16   VASSILIOS MORELLAS, Ph.D.

18   having been duly sworn by the Notary Public,
19   was examined and testified as follows:

21   EXAMINATION
22   BY MR. LAQUER:
23   Q.   Good morning, Dr. Morellas.  As I   10:03:32
24   mentioned, I'm Alan Laquer and I will be taking  10:03:35
25   your deposition today.                           10:03:37

---

**8**

1    Have you ever been deposed before?       10:03:38
2    A.   No, I have not.                              10:03:40
3    Q.   Okay.  And I'll go over some basic   10:03:41
4    ground rules, then, of how depositions are       10:03:43
5    conducted.  The deposition will consist of me    10:03:46
6    asking questions for you to answer.  And we      10:03:49
7    have a court reporter here typing down           10:03:51
8    everything that gets said.                       10:03:53
9    So as the court reporter                  10:03:54
10   mentioned, we should try to avoid speaking over  10:03:56
11   each other.  I'll work on waiting until you      10:03:58
12   complete your answer before I begin asking my    10:04:01
13   next question, and I would ask that you wait     10:04:04
14   until I finish asking my question before you     10:04:06
15   begin answering.                                 10:04:09
16   Does that sound fair?                     10:04:10
17   A.   That's fair.                                 10:04:11
18   Q.   And it's also helpful to use clear   10:04:12
19   yes or no type responses rather than uh-huhs or  10:04:16
20   ah-has or head nods, again, so we have a clear   10:04:24
21   written record of our deposition here.           10:04:26
22   Does that also sound fair?                10:04:28
23   A.   That's very fair.                            10:04:30
24   Q.   You're doing a good job with it so    10:04:31
25   far.                                              10:04:33

---

**9**

1    Let's see, your counsel may object        10:04:35
2    from time to time during the deposition.  The    10:04:37
3    objections serve as a legal formality to         10:04:39
4    preserve an argument for later on.               10:04:41
5    So it's important that even if            10:04:44
6    your counsel does object, that you still answer  10:04:46
7    to the best of your ability, unless you're       10:04:48
8    specifically instructed not to answer.           10:04:51
9    Do you understand that?                   10:04:53
10   A.   I do.                                        10:04:54
11   Q.   Excellent.  And we're taking this    10:04:55
12   deposition and conducting it over Zoom of        10:05:00
13   course.  I see it looks like you're in an        10:05:02
14   office and you have some binders behind you.     10:05:05
15   Could you let me know where you're        10:05:07
16   located right now?                               10:05:09
17   A.   I'm located in Plymouth,             10:05:10
18   Minnesota.  Should I give you my address?        10:05:14
19   Q.   No need for that.  Is there anyone   10:05:14
20   else in the room with you?                       10:05:18
21   A.   No one else.                                 10:05:19
22   Q.   Okay.  And are you at home right     10:05:21
23   now?                                              10:05:23
24   A.   I am.                                        10:05:23
25   Q.   Okay.  And, let's see.  Could you    10:05:23

---

RESTRICTED - CONFIDENTIAL SOURCE CODE

Morellas, Vassilios                                        March 23, 2022

17 (Pages 62 to 65)

---

**62**

1   networks was when I was a student in '93, '94,   11:31:58
2   and my Ph.D. was using neural networks for   11:32:01
3   identifying locations when the sensors that   11:32:06
4   were used on -- were embedded on the mobile   11:32:10
5   robot.  So that was my first encounter with   11:32:16
6   neural networks.   11:32:18
7       Q.   Do you know when Tetra Tech   11:32:19
8   changed from using traditional computer vision   11:32:21
9   recognition systems to a neural network vision   11:32:28
10  recognition system?   11:32:31
11      A.   I believe a few years ago.   11:32:41
12      Q.   So that was years after Tetra Tech   11:32:41
13  filed for the asserted patents in this case,   11:32:43
14  correct?   11:32:45
15      A.   I think a few years after, yeah.   11:32:45
16      Q.   And the patents here, the '293   11:32:48
17  patent and the '557 patent, never used the   11:32:51
18  phrase "neural network," correct?   11:32:56
19      A.   That is correct.   11:32:58
20      Q.   And so, there's no disclosure in   11:32:59
21  either of these patents of any neural network   11:33:02
22  of any type, correct?   11:33:06
23          MR. CERULLI:  Objection.   11:33:08
24      A.   Correct.   11:33:10
25      Q.   How does a neural network differ   11:33:10

---

**63**

1   from a template matching system?   11:33:15
2       A.   There are some similarities that   11:33:17
3   the neural network uses to do template   11:33:30
4   matching.   11:33:35
5       Q.   What do you mean the neural   11:33:35
6   network uses to do template matching?   11:33:41
7       A.   So the neural network incorporates   11:33:44
8   template matching in some form.   11:33:47
9       Q.   Maybe it would help to understand   11:33:53
10  what you mean when you say "template matching."   11:33:55
11  Could you let me know what that term means to   11:34:00
12  you?   11:34:03
13      A.   Template matching, in my -- in the   11:34:03
14  general definition of the phrase "template   11:34:07
15  matching," means how similar to things that you   11:34:13
16  compare are.   11:34:21
17      Q.   And so, what is a template?   11:34:21
18      A.   A template in the context of what?   11:34:25
19  Again, it's a very vague term, so it may have   11:34:34
20  different meanings, depending on the   11:34:42
21  application that you're applying it.   11:34:44
22      Q.   So the word "template" does appear   11:34:46
23  in the asserted patents.  For example, in Claim   11:34:49
24  14 of the '557 patent, limitation (c) mentions   11:34:57
25  "eliminating feature template matching scores."   11:35:06

---

**64**

1       Do you see that?   11:35:10
2       A.   Yes, I do.   11:35:11
3       Q.   In the context of the asserted   11:35:13
4   patents, what is a template?   11:35:19
5       A.   Give me a second.   11:35:19
6       Q.   Are you turning to a particular   11:35:51
7   page of your report?   11:35:54
8       A.   No.  I'm just looking at the --   11:35:54
9   I'm just looking at the patent claim.  So in   11:35:57
10  the context of patent '557, a template is where   11:36:13
11  one of the plurality, as it says in 14(b), is   11:36:25
12  "a plurality of railway track bed features in   11:36:32
13  the 3D feature library."   11:36:38
14      Q.   So a template is one of the items   11:36:39
15  in a 3D feature library?   11:36:41
16      A.   That is correct.   11:36:46
17      Q.   What does it mean for a library to   11:36:47
18  be a 3D feature library?  What is a 3D feature?   11:36:49
19      A.   It might contain some   11:36:57
20  characteristics of the three-dimensional   11:37:00
21  presentation.   11:37:05
22      Q.   Is that a data object that serves   11:37:05
23  as a model of some three-dimensional feature?   11:37:08
24      A.   I believe so.   11:37:11
25      Q.   What does it mean for a feature to   11:37:13

---

**65**

1   be three dimensional?   11:37:19
2       A.   Again, this is a very general -- a   11:37:21
3   general term.  It can be -- have a different   11:37:32
4   meaning in different contexts.   11:37:36
5       For example, I can have three-   11:37:36
6   dimensional data that can be, let's say, the   11:37:41
7   color information that exists in an image.   11:37:45
8       It can be if you are trying to   11:37:49
9   identify or to sort of visualize particular   11:37:52
10  population of -- in an area, maybe height,   11:37:57
11  weight and color of the hair, for example,   11:38:02
12  might be three dimensional.  And there may be   11:38:06
13  different situations where you can use   11:38:08
14  different features to be able to present   11:38:10
15  three-dimensional features.   11:38:12
16      Q.   In the context of the asserted   11:38:14
17  patents, what does it mean for a feature to be   11:38:15
18  three dimensional?   11:38:19
19      A.   It must have some three-   11:38:19
20  dimensional elevation data information.   11:38:24
21      Q.   So three-dimensional data in the   11:38:27
22  context of the asserted patents includes   11:38:32
23  dimensions on the transverse axis, the   11:38:36
24  longitudinal axis, and then the elevation axis;   11:38:40
25  is that correct?   11:38:45

---

RESTRICTED - CONFIDENTIAL SOURCE CODE

Morellas, Vassilios                                    March 23, 2022

25 (Pages 94 to 97)

---

94

1  item; is that right?                                12:22:04
2         MR. CERULLI:  Objection.                     12:22:05
3  Mischaracterizes.                                   12:22:06
4     A.    That's not right.                          12:22:07
5     Q.    Could you explain and clarify?             12:22:11
6     A.    That is not right, because you are         12:22:14
7  missing the step that I know I can store my         12:22:14
8  data, okay?  If I want to go back, I know where     12:22:17
9  the data came from.                                 12:22:20
10    Q.    So in the analogy of the number            12:22:26
11 16, 16 represents 10 and 6, in your opinion,        12:22:30
12 only if you stored those values that you used       12:22:36
13 in order to create 16; is that right?               12:22:39
14    A.    If you can store it, that's fine.          12:22:42
15 If your task is to know how this -- where this      12:22:43
16 number came from, then we might have a need to      12:22:47
17 store the number 10 and the number 6, if there      12:22:49
18 is a need for you to go back, if there is a         12:22:55
19 need, which I do not know.                          12:22:58
20    Q.    In that case, the number 10                12:22:59
21 represents the number 10, correct?                  12:23:01
22    A.    That's correct.                            12:23:02
23    Q.    And the number 6 represents the            12:23:05
24 number 6, correct?                                  12:23:07
25    A.    If that's how I started from, yes.         12:23:08

---

95

1     Q.    And the number 16 represents the           12:23:12
2  number 16, correct?                                 12:23:14
3     A.    If they came from 10 and 6, yes.           12:23:15
4     Q.    And the number 16 only represents          12:23:18
5  the number 16, correct?                             12:23:20
6     A.    In that case, yes.                         12:23:21
7     Q.    Do you know what the number of             12:23:27
8  pixels used by Fake3D is in terms of how many       12:23:41
9  data points are analyzed -- let me rephrase         12:23:44
10 that.                                               12:23:47
11        In your opinion, you've stated               12:23:51
12 that Fake3D has been used with a Pavemetrics        12:23:52
13 neural network, correct?                            12:23:56
14    A.    Yes.                                        12:23:57
15    Q.    And when the Pavemetrics neural            12:23:57
16 network is being applied to a particular image,     12:24:07
17 do you know what percentage of the pixels in        12:24:10
18 that image the neural network filters are           12:24:12
19 applied to?                                         12:24:14
20    A.    It depends on how -- how you                12:24:15
21 configured your neural network.                     12:24:29
22    Q.    Are you familiar with how                  12:24:31
23 Pavemetrics has configured its neural network       12:24:34
24 that you've accused of infringement?                12:24:36
25    A.    I know that there was some                 12:24:38

---

96

1  information that was provided lately, but I         12:24:42
2  didn't have the time to fully review that.          12:24:48
3         But during my visits, the data of            12:24:52
4  source code, this information was not               12:25:00
5  available.                                          12:25:02
6     Q.    Do you know what information                12:25:02
7  you're referring to?                                12:25:03
8     A.    Yeah.  I remember the time where           12:25:04
9  we asked for the particular source code so we       12:25:13
10 can visualize or see the graph of the neural        12:25:13
11 network, but this was not available.                12:25:16
12    Q.    Did you have some visualization,           12:25:18
13 though, during your review of Pavemetrics's         12:25:20
14 source code of its neural network?                  12:25:24
15    A.    No.  This came only late at the            12:25:26
16 rebuttal of Dr. Frakes.                             12:25:31
17    Q.    And so when reviewing Dr. Frakes's         12:25:32
18 non-infringement rebuttal report, did you see       12:25:37
19 his discussion of the stride values used by         12:25:40
20 Pavemetrics's LRAIL system?                         12:25:45
21    A.    Yeah, I saw that.                           12:25:47
22    Q.    So having considered the stride           12:25:48
23 value information, is it your opinion that          12:25:54
24 every other pixel within the LRAIL neural          12:25:56
25 network system is a representation of elevation     12:26:02

---

97

1  and intensity data?                                 12:26:09
2     A.    I cannot tell from that.                   12:26:10
3     Q.    If it would be helpful, do you             12:26:12
4  have a copy of Dr. Frakes's non-infringement        12:26:13
5  report with you?                                    12:26:17
6     A.    Yes, I do.                                  12:26:17
7     Q.    So if you could turn to Page 49 of         12:26:18
8  Dr. Frakes's report.  There is a discussion of      12:26:27
9  stride values of two?                               12:26:34
10    A.    Right.                                      12:26:49
11    Q.    And then Dr. Frakes provides an            12:26:18
12 illustration on Page 50 of what stride value of     12:26:39
13 two represents within an image matrix, correct?     12:26:46
14    A.    That is correct.                            12:26:49
15    Q.    And the orange boxes on Page 50            12:26:50
16 show the pixels that are analyzed in the            12:26:55
17 convolutional neural network with a stride          12:27:02
18 value of two, correct?                              12:27:05
19    A.    That is correct.                            12:27:06
20    Q.    So with the stride value of two,           12:27:13
21 every other pixel in the X axis and in the Y        12:27:18
22 axis is analyzed, correct?                          12:27:21
23    A.    Well, that's not entirely correct,         12:27:25
24 simply because every pixel in the initial image     12:27:25
25 is contributing to the final values of the          12:27:31

---

RESTRICTED - CONFIDENTIAL SOURCE CODE

Morellas, Vassilios                                    March 23, 2022

70 (Pages 274 to 277)

### 274

1    A.    -- yeah, again, in the context, a          06:28:57
2  single pixel of what?                              06:29:01
3    Q.    So, say within a two-dimensional           06:29:03
4  matrix.                                            06:29:07
5    A.    Yeah.                                       06:29:08
6    Q.    You have a window that is a single         06:29:09
7  pixel?                                             06:29:10
8    A.    Yes.  So you're asking me if               06:29:14
9  that's the neighborhood, a gradient               06:29:15
10 neighborhood?                                      06:29:18
11   Q.    No.  I asked whether it could be a         06:29:18
12 window?                                            06:29:21
13   A.    A window of just one point?                06:29:21
14   Q.    Yes.                                        06:29:24
15   A.    I wouldn't consider this in the           06:29:25
16 context of all the subjects we have been          06:29:30
17 discussing today.                                  06:29:36
18        MR. LAQUER:  I don't have any               06:29:37
19 further questions.                                 06:29:37
20        MR. CERULLI:  Okay.  I have a               06:29:39
21 couple quick questions.                            06:29:40
22 EXAMINATION BY                                     06:29:46
23 MR. CERULLI:                                       06:29:46
24   Q.    Dr. Morellas, earlier in response         06:29:46
25 to a question, I believe you said something       06:29:49

### 276

1    Q.    -- on those output files?                  06:31:16
2        MR. CERULLI:  Okay.  I have no               06:31:18
3  further questions.                                 06:31:18
4        MR. LAQUER:  I don't have any                06:31:19
5  follow-ups either.  Thank you for your            06:31:20
6  time.                                              06:31:21
7        THE VIDEOGRAPHER:  We are off the           06:31:22
8  record.  The time is 5:31 p.m.                     06:31:23
9        (Whereupon the deposition                    06:31:27
10 concluded at 5:31 p.m.)                            06:31:29
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

### 275

1  like you didn't know what -- which LRAIL          06:29:51
2  version was sold to which Pavemetrics's           06:29:54
3  customer.                                          06:29:59
4        Do you recall that?                          06:30:00
5    A.    I think I recall that, yes.                06:30:00
6    Q.    Can you look at Paragraph 67 of           06:30:02
7  your opening infringement report.  It's on Page   06:30:08
8  26.  I just want to know if you want to clarify   06:30:31
9  your answer from earlier?                          06:30:22
10   A.    Yes.  I'm on Page 26, yes.                 06:30:24
11   Q.    Look at Paragraph 67, and let me          06:30:27
12 know if you still believe you do not know which   06:30:41
13 LRAIL versions were sold to which Pavemetrics's   06:30:44
14 customers?                                         06:30:49
15   A.    Yeah, now that you're pointing me         06:30:50
16 to this particular paragraph, I stand by that I   06:30:52
17 said on the 67.  Yeah, I missed that in my        06:30:58
18 answer earlier.                                    06:31:01
19   Q.    And you have seen output files           06:31:01
20 demonstrating the use of at least some of these  06:31:06
21 versions?                                          06:31:09
22   A.    Yes.                                       06:31:09
23   Q.    And you've included discussions in       06:31:10
24 your report --                                     06:31:11
25   A.    That is correct.                          06:31:15

### 277

1        ACKNOWLEDGMENT OF DEPONENT
2
3        I, _____, do hereby
4  acknowledge that I have read and examined the
5  foregoing testimony, and the same is a true, correct
6  and complete transcription of the testimony given by
7  me, and any corrections appear on the attached Errata
8  Sheet signed by me.
9
10 _____      _____
11  (DATE)            (SIGNATURE)
12
13       NOTARIZATION  (If Required)
14
15 State of _____
16 County of _____
17
18 Subscribed and sworn to (or affirmed) before me on
19 this _____ day of _____, 20_____, by
20 _____, proved to me on the
21 basis of satisfactory evidence to be the person who
22 appeared before me.
23
24 Signature: _____
25       (Seal)

RESTRICTED - CONFIDENTIAL SOURCE CODE

Morellas, Vassilios                                    March 23, 2022

71 (Page 278)

278

1          C E R T I F I C A T E

2

3          I, Michael O'Connor, Registered

4      Merit Reporter/Certified Realtime Reporter,

5      do hereby certify:

6          That VASSILIOS MORELLAS, Ph.D., the

7      witness whose testimony is hereinbefore set

8      forth, was duly sworn by me and that such

9      testimony is a true and accurate record of

10     my stenotype notes taken in the foregoing

11     matter to the best of my knowledge, skill

12     and ability.

13         IN WITNESS WHEREOF, I have hereunto

14     set my hand and Notarial Seal this 23rd day

15     of March 2022.

16

17

18

19

20         MICHAEL O'CONNOR, RMR, CRR, CRC

21             Notary Public

22

23     My Commission expires:

24     November 22, 2022

25

EXHIBIT 21

| | |
|---|---|
| **From:** | Raymond.Lu |
| **Sent:** | Thursday, March 24, 2022 8:21 PM |
| **To:** | Cerulli, Nicholas; Parker, Aaron; Chung, Daniel; Horn, Kelly; Mathew, Jency; Palace, Victor; Ridge, Donald L. |
| **Cc:** | Christy.Lea; Alan.Laquer; Nicholas.Zovko; Joe.Re; Lit PAVEL.001L |
| **Subject:** | Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA |

Dear Counsel,

Pavemetrics intends to move for summary judgment on the following issues:

(1) No indirect infringement.  Pavemetrics cannot be liable for indirect infringement of the '293 patent or '557 patent before Tetra Tech provided notice of alleged infringement for that patent.  It also cannot be liable for indirect infringement after notice because Pavemetrics maintained a good faith belief that it did not infringe.  Also, Pavemetrics never had a specific intent to induce infringements, and it could not have contributed to infringements because LRAIL is capable of substantial non-infringing use.

(2) Non-infringement of the '557 patent.  Tetra Tech cannot show that LRAIL has been used to identify cracks from wooden ties using the claimed methods.  Nor can it show that LRAIL has been used to perform template matching as claimed.

(3) No damages.  Tetra Tech is not entitled to damages prior to notice of alleged infringement pursuant to 35 U.S.C. § 287.  Tetra Tech also is not entitled to lost profits because it cannot show an absence of acceptable non-infringing alternatives.

Pavemetrics also intends to file a Daubert motion to exclude portions of Dr. Morellas' testimony, namely:

(1) Any testimony outside his areas of expertise, including testimony relating to Pavemetrics' intent or knowledge.

(2) Any testimony regarding alleged infringement that are based on non-source code materials.

Please let us know when you are available tomorrow, March 25 or Monday, March 28 to meet and confer pursuant to Local Rule 7-3 on Pavemetrics' contemplated motions.

Best,
Ray

**Raymond Lu**
Associate
Raymond.Lu@knobbe.com

(949) 721-2852 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/

# EXHIBIT 22

| | |
|---|---|
| **From:** | Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com> |
| **Sent:** | Monday, March 28, 2022 8:57 AM |
| **To:** | Raymond.Lu; Parker, Aaron; Chung, Daniel; Horn, Kelly; Mathew, Jency; Palace, Victor; Ridge, Donald L. |
| **Cc:** | Christy.Lea; Alan.Laquer; Nicholas.Zovko; Joe.Re; Lit PAVEL.001L |
| **Subject:** | RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA |

Ray,

Tetra Tech plans to oppose Pavemetrics' contemplated motions below.  We are available at 3 PM EST today to meet and confer.

Best regards,
Nick

**Nicholas Cerulli**
Associate
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4248 | fax: 202.408.4400 | nicholas.cerulli@finnegan.com | www.finnegan.com

# FINNEGAN

**From:** Raymond.Lu <Raymond.Lu@knobbe.com>
**Sent:** Thursday, March 24, 2022 11:21 PM
**To:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Alan.Laquer <Alan.Laquer@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; EXT- joe.re@knobbe.com <joe.re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

<mark>**EXTERNAL** Email:</mark>

Dear Counsel,

Pavemetrics intends to move for summary judgment on the following issues:

(1)  No indirect infringement.  Pavemetrics cannot be liable for indirect infringement of the '293 patent or '557 patent before Tetra Tech provided notice of alleged infringement for that patent.  It also cannot be liable for indirect infringement after notice because Pavemetrics maintained a good faith belief that it did not infringe.  Also, Pavemetrics never had a specific intent to induce infringements, and it could not have contributed to infringements because LRAIL is capable of substantial non-infringing use.

(2)  Non-infringement of the '557 patent.  Tetra Tech cannot show that LRAIL has been used to identify cracks ~~from wooden ties~~ using the claimed methods.  Nor can it show that LRAIL has been used to perform template matching as claimed.

(3)  No damages.  Tetra Tech is not entitled to damages prior to notice of alleged infringement pursuant to 35 U.S.C. § 287.  Tetra Tech also is not entitled to lost profits because it cannot show an absence of acceptable non-infringing alternatives.

Pavemetrics also intends to file a Daubert motion to exclude portions of Dr. Morellas' testimony, namely:

(1)  Any testimony outside his areas of expertise, including testimony relating to Pavemetrics' intent or knowledge.

(2)  Any testimony regarding alleged infringement that are based on non-source code materials.

Please let us know when you are available tomorrow, March 25 or Monday, March 28 to meet and confer pursuant to Local Rule 7-3 on Pavemetrics' contemplated motions.

Best,
Ray

**Raymond Lu**
Associate
Raymond.Lu@knobbe.com

(949) 721-2852 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

**Exhibit 22**

# EXHIBIT 23

| | |
|---|---|
| **From:** | Raymond.Lu |
| **Sent:** | Tuesday, March 29, 2022 9:04 PM |
| **To:** | Cerulli, Nicholas; Alan.Laquer; Parker, Aaron; Chung, Daniel; Horn, Kelly; Mathew, Jency; Palace, Victor; Ridge, Donald L. |
| **Cc:** | Christy.Lea; Nicholas.Zovko; Joe.Re; Lit PAVEL.001L |
| **Subject:** | RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA |

Dear Nick,

Pavemetrics also intends to seek summary judgment of no direct infringement by CSX under 271(a)/(g) and that all FRA-related sales/uses are immune from suit under 28 U.S.C. § 1498.  We understand from our meet and confer on Monday that Tetra Tech will oppose all summary judgment motions, including this one.  But please let us know if you would like to discuss and we'd be happy to do so.

Thanks,
Ray

**Raymond Lu**
Associate

(949) 721-2852 **Direct**

**Knobbe Martens**

---

**From:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>
**Sent:** Monday, March 28, 2022 12:04 PM
**To:** Alan.Laquer <Alan.Laquer@knobbe.com>; Raymond.Lu <Raymond.Lu@knobbe.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

Will do.

---

**From:** Alan.Laquer <Alan.Laquer@knobbe.com>
**Sent:** Monday, March 28, 2022 3:03 PM
**To:** Raymond.Lu <Raymond.Lu@knobbe.com>; Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; EXT-joe.re@knobbe.com <joe.re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

**EXTERNAL Email:**

Hi Nick,

**Exhibit 23**

We're having trouble with the below call-in.  Let's use this instead:

US toll-free: 877-678-4585
Conference room number: 522-300-829

Thanks,
Alan

---

**From:** Raymond.Lu <Raymond.Lu@knobbe.com>
**Sent:** Monday, March 28, 2022 10:25 AM
**To:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Alan.Laquer <Alan.Laquer@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

Thanks, Nick, that time works for us.  Please use the following call-in number.

(888) 475 4499 US Toll-free
Meeting ID: 914 9633 7613
Meeting Password: 498884

-Ray

**Raymond Lu**
Associate
(949) 721-2852 **Direct**
**Knobbe Martens**

---

**From:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>
**Sent:** Monday, March 28, 2022 8:57 AM
**To:** Raymond.Lu <Raymond.Lu@knobbe.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Alan.Laquer <Alan.Laquer@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

Ray,

**Exhibit 23**

Tetra Tech plans to oppose Pavemetrics' contemplated motions below.  We are available at 3 PM EST today to meet and confer.

Best regards,
Nick

**Nicholas Cerulli**
Associate
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4248 | fax: 202.408.4400 | nicholas.cerulli@finnegan.com | www.finnegan.com

FINNEGAN

**From:** Raymond Lu <Raymond.Lu@knobbe.com>
**Sent:** Thursday, March 24, 2022 11:21 PM
**To:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Alan.Laquer <Alan.Laquer@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; EXT- joe.re@knobbe.com <joe.re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

*EXTERNAL* Email:

Dear Counsel,

Pavemetrics intends to move for summary judgment on the following issues:

(1) No indirect infringement.  Pavemetrics cannot be liable for indirect infringement of the '293 patent or '557 patent before Tetra Tech provided notice of alleged infringement for that patent.  It also cannot be liable for indirect infringement after notice because Pavemetrics maintained a good faith belief that it did not infringe.  Also, Pavemetrics never had a specific intent to induce infringements, and it could not have contributed to infringements because LRAIL is capable of substantial non-infringing use.

(2) Non-infringement of the '557 patent.  Tetra Tech cannot show that LRAIL has been used to identify cracks ~~from wooden ties~~ using the claimed methods.  Nor can it show that LRAIL has been used to perform template matching as claimed.

(3) No damages.  Tetra Tech is not entitled to damages prior to notice of alleged infringement pursuant to 35 U.S.C. § 287.  Tetra Tech also is not entitled to lost profits because it cannot show an absence of acceptable non-infringing alternatives.

Pavemetrics also intends to file a Daubert motion to exclude portions of Dr. Morellas' testimony, namely:

(1)  Any testimony outside his areas of expertise, including testimony relating to Pavemetrics' intent or knowledge.

(2)  Any testimony regarding alleged infringement that are based on non-source code materials.

Please let us know when you are available tomorrow, March 25 or Monday, March 28 to meet and confer pursuant to Local Rule 7-3 on Pavemetrics' contemplated motions.

Best,
Ray

**Raymond Lu**
Associate
Raymond.Lu@knobbe.com

(949) 721-2852 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

**Exhibit 23**

# EXHIBIT 24

| From: | Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com> |
|---|---|
| Sent: | Friday, April 1, 2022 1:21 PM |
| To: | Raymond.Lu; Alan.Laquer; Parker, Aaron; Chung, Daniel; Horn, Kelly; Mathew, Jency; Palace, Victor; Ridge, Donald L. |
| Cc: | Christy.Lea; Nicholas.Zovko; Joe.Re; Lit PAVEL.001L |
| Subject: | RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA |

Ray,

We are not available today, and regardless, a meet-and-confer at this stage would not cure the Local Rule 7-3 defect.

Best regards,
Nick

**Nicholas Cerulli**
Associate
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4248 | fax: 202.408.4400 | nicholas.cerulli@finnegan.com | www.finnegan.com

FINNEGAN

**From:** Raymond.Lu <Raymond.Lu@knobbe.com>
**Sent:** Friday, April 1, 2022 11:05 AM
**To:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>; Alan.Laquer <Alan.Laquer@knobbe.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; EXT-joe.re@knobbe.com <joe.re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

**EXTERNAL Email:**

Nick,

We are available to discuss at any time today. Please let us know what time works for you.

-Ray

**Raymond Lu**
Associate

(949) 721-2852 Direct

**Knobbe Martens**

**From:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>
**Sent:** Friday, April 1, 2022 6:59 AM
**To:** Raymond.Lu <Raymond.Lu@knobbe.com>; Alan.Laquer <Alan.Laquer@knobbe.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

Ray,

As you know, we did not discuss either of these additional issues during Monday's meet and confer.  Should Pavemetrics proceed to move for summary judgment on these issues, we reserve our right to object to such a motion under Local Rule 7-3.

Best regards,

Nick

**Nicholas Cerulli**
Associate
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4248 | fax: 202.408.4400 | nicholas.cerulli@finnegan.com | www.finnegan.com

# FINNEGAN

**From:** Raymond.Lu <Raymond.Lu@knobbe.com>
**Sent:** Wednesday, March 30, 2022 12:04 AM
**To:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>; Alan.Laquer <Alan.Laquer@knobbe.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; EXT-joe.re@knobbe.com <joe.re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

**EXTERNAL Email:**

Dear Nick,

Pavemetrics also intends to seek summary judgment of no direct infringement by CSX under 271(a)/(g) and that all FRA-related sales/uses are immune from suit under 28 U.S.C. § 1498.  We understand from our meet and confer on Monday that Tetra Tech will oppose all summary judgment motions, including this one.  But please let us know if you would like to discuss and we'd be happy to do so.

**Exhibit 24**

Thanks,
Ray

**Raymond Lu**
Associate

(949) 721-2852 **Direct**

**Knobbe Martens**

**From:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>
**Sent:** Monday, March 28, 2022 12:04 PM
**To:** Alan.Laquer <Alan.Laquer@knobbe.com>; Raymond Lu <Raymond.Lu@knobbe.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; Joe.Re <Joe.Re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

Will do.

**From:** Alan.Laquer <Alan.Laquer@knobbe.com>
**Sent:** Monday, March 28, 2022 3:03 PM
**To:** Raymond.Lu <Raymond.Lu@knobbe.com>; Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; EXT-joe.re@knobbe.com <joe.re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

*EXTERNAL* Email:

Hi Nick,

We're having trouble with the below call-in.  Let's use this instead:

US toll-free: 877-678-4585
Conference room number: 522-300-829

Thanks,
Alan

**From:** Raymond Lu <Raymond.Lu@knobbe.com>
**Sent:** Monday, March 28, 2022 10:25 AM
**To:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency

**Exhibit 24**

<[Jency.Mathew@finnegan.com](mailto:Jency.Mathew@finnegan.com)>; Palace, Victor <[Victor.Palace@finnegan.com](mailto:Victor.Palace@finnegan.com)>; Ridge, Donald L.
<[dridge@clarkhill.com](mailto:dridge@clarkhill.com)>
**Cc:** Christy.Lea <[Christy.Lea@knobbe.com](mailto:Christy.Lea@knobbe.com)>; Alan.Laquer <[Alan.Laquer@knobbe.com](mailto:Alan.Laquer@knobbe.com)>; Nicholas.Zovko
<[Nicholas.Zovko@knobbe.com](mailto:Nicholas.Zovko@knobbe.com)>; Joe.Re <[Joe.Re@knobbe.com](mailto:Joe.Re@knobbe.com)>; Lit PAVEL.001L
<[LitPAVEL.001L@knobbe.com](mailto:LitPAVEL.001L@knobbe.com)>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

Thanks, Nick, that time works for us.  Please use the following call-in number.

(888) 475 4499 US Toll-free
Meeting ID: 914 9633 7613
Meeting Password: 498884

-Ray

**Raymond Lu**
Associate

(949) 721-2852 **Direct**

## Knobbe Martens

---

**From:** Cerulli, Nicholas <[Nicholas.Cerulli@finnegan.com](mailto:Nicholas.Cerulli@finnegan.com)>
**Sent:** Monday, March 28, 2022 8:57 AM
**To:** [Raymond.Lu](mailto:Raymond.Lu) <[Raymond.Lu@knobbe.com](mailto:Raymond.Lu@knobbe.com)>; Parker, Aaron <[Aaron.Parker@finnegan.com](mailto:Aaron.Parker@finnegan.com)>; Chung,
Daniel <[Daniel.Chung@finnegan.com](mailto:Daniel.Chung@finnegan.com)>; Horn, Kelly <[Kelly.Horn@finnegan.com](mailto:Kelly.Horn@finnegan.com)>; Mathew, Jency
<[Jency.Mathew@finnegan.com](mailto:Jency.Mathew@finnegan.com)>; Palace, Victor <[Victor.Palace@finnegan.com](mailto:Victor.Palace@finnegan.com)>; Ridge, Donald L.
<[dridge@clarkhill.com](mailto:dridge@clarkhill.com)>
**Cc:** Christy.Lea <[Christy.Lea@knobbe.com](mailto:Christy.Lea@knobbe.com)>; Alan.Laquer <[Alan.Laquer@knobbe.com](mailto:Alan.Laquer@knobbe.com)>; Nicholas.Zovko
<[Nicholas.Zovko@knobbe.com](mailto:Nicholas.Zovko@knobbe.com)>; Joe.Re <[Joe.Re@knobbe.com](mailto:Joe.Re@knobbe.com)>; Lit PAVEL.001L
<[LitPAVEL.001L@knobbe.com](mailto:LitPAVEL.001L@knobbe.com)>
**Subject:** RE: Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

Ray,

Tetra Tech plans to oppose Pavemetrics' contemplated motions below.  We are available at 3 PM EST
today to meet and confer.

Best regards,
Nick

**Nicholas Cerulli**
Associate
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4248 | fax: 202.408.4400 | [nicholas.cerulli@finnegan.com](mailto:nicholas.cerulli@finnegan.com) | [www.finnegan.com](http://www.finnegan.com)

---

## FINNEGAN

**From:** Raymond.Lu <Raymond.Lu@knobbe.com>
**Sent:** Thursday, March 24, 2022 11:21 PM
**To:** Cerulli, Nicholas <Nicholas.Cerulli@finnegan.com>; Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Palace, Victor <Victor.Palace@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>
**Cc:** Christy.Lea <Christy.Lea@knobbe.com>; Alan.Laquer <Alan.Laquer@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; EXT- joe.re@knobbe.com <joe.re@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Subject:** Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

**EXTERNAL Email:**

Dear Counsel,

Pavemetrics intends to move for summary judgment on the following issues:

(1) No indirect infringement.  Pavemetrics cannot be liable for indirect infringement of the '293 patent or '557 patent before Tetra Tech provided notice of alleged infringement for that patent.  It also cannot be liable for indirect infringement after notice because Pavemetrics maintained a good faith belief that it did not infringe.  Also, Pavemetrics never had a specific intent to induce infringements, and it could not have contributed to infringements because LRAIL is capable of substantial non-infringing use.

(2) Non-infringement of the '557 patent.  Tetra Tech cannot show that LRAIL has been used to identify cracks ~~from wooden ties~~ using the claimed methods.  Nor can it show that LRAIL has been used to perform template matching as claimed.

(3) No damages.  Tetra Tech is not entitled to damages prior to notice of alleged infringement pursuant to 35 U.S.C. § 287.  Tetra Tech also is not entitled to lost profits because it cannot show an absence of acceptable non-infringing alternatives.

Pavemetrics also intends to file a Daubert motion to exclude portions of Dr. Morellas' testimony, namely:

(1) Any testimony outside his areas of expertise, including testimony relating to Pavemetrics' intent or knowledge.

(2) Any testimony regarding alleged infringement that are based on non-source code materials.

Please let us know when you are available tomorrow, March 25 or Monday, March 28 to meet and confer pursuant to Local Rule 7-3 on Pavemetrics' contemplated motions.

Best,
Ray

**Raymond Lu**
Associate

**Exhibit 24**

Raymond.Lu@knobbe.com

(949) 721-2852 **Direct**

**Knobbe Martens**
2040 Main St., 14th Fl.
Irvine, CA 92614
www.knobbe.com/

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

NOTICE: This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.