# EXHIBIT 3

[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]

Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)          Jency J. Mathew (*pro hac vice*)
nicholas.cerulli@finnegan.com                 jency.mathew@finnegan.com
**FINNEGAN, HENDERSON,**                       **FINNEGAN, HENDERSON,**
**FARABOW, GARRETT &**                         **FARABOW, GARRETT &**
**DUNNER, LLP**                                **DUNNER, LLP**
901 New York Avenue NW                        1875 Explorer Street, Suite 800
Washington, D.C. 20001-4413                   Reston, Virginia 20190-6023
Telephone:  (202) 408-4000                    Telephone:  (571) 203-2700
Facsimile:   (202) 408-4400                   Facsimile:   (571) 203-2777

*Attorneys for Defendant and Counterclaim Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**TETRA TECH'S FIRST SUPPLEMENTAL INFRINGEMENT CONTENTIONS AND IDENTIFICATION OF ASSERTED CLAIMS** |

1

Pursuant to the Court's Order (ECF 78) granting Tetra Tech's Motion to Amend and Tetra Tech's First Amended Counterclaim (ECF 79), Tetra Tech hereby supplements its Preliminary Infringement Contentions and Identification of Asserted Claims to add U.S. Patent No. 10,616,557 ("the '557 patent"). Tetra Tech also supplements its infringement contentions regarding United States Patent No. 10,362,293 ("the '293 patent") based on information discovered during its latest source code inspection on July 14-16, 2021. Tetra Tech incorporates herein its Preliminary Infringement Contentions and Identification of Asserted Claims by reference.

These supplemental disclosures are based on Tetra Tech's present knowledge, the limited discovery provided by Pavemetrics to date, and access to publicly available information on Pavemetrics' accused railroad inspection system, its Laser Rail Inspection System ("LRAIL"). Tetra Tech reserves all rights to modify and/or supplement these disclosures as necessary or appropriate based on discovery in this case as it occurs, the claim construction order, or any other circumstances that support modifying these disclosures. Tetra Tech also reserves all rights to amend, or to seek leave of the Court to amend, these disclosures and assert additional or different claims, as circumstances warrant. Specifically, Tetra Tech reserves, among other things, the right to: (1) add additional or different support for the contentions in the attached claim chart; (2) identify additional accused products; (3) add contentions that one or more claim limitations is met under the doctrine of equivalents for the accused products or additional accused products later identified; (4) assert additional patent claims that are not included in the attached claim chart; and (5) assert additional patents that may be infringed by Pavemetrics' LRAIL.

Attached as Exhibit A is an updated chart identifying each claim of the '293 patent alleged to be infringed by Pavemetrics making, testing, using, importing, selling, offering to sell, and at least its customers using, its LRAIL. Attached as Exhibit B is a chart identifying each claim of the '557 patent alleged to be infringed by Pavemetrics making, testing, using, importing, selling, offering to sell, and at least its customers

2

using, its LRAIL. Exhibits A and B identify where each limitation of each asserted claim is found within, is performed by, or is accomplished by Pavemetrics' LRAIL. All claims identified in Exhibits A and B are asserted claims. The disclosures set forth in Exhibits A and B are preliminary and are based on current knowledge and belief.

Tetra Tech further contends that Pavemetrics directly infringes the identified claims of the '557 patent under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by making, using (e.g., through testing or demonstrations or use), bidding and contracting for, offering to sell, and/or importing into the United States certain railroad inspection systems, including but not limited to the LRAIL. As shown in Exhibit B, the LRAIL literally infringes every identified claim, including at least claims 8-10 and 14. In addition, the LRAIL performs the same functions in the same way to achieve the same results as the asserted claims and are not substantially different from the asserted claims.

Tetra Tech further contends that Pavemetrics induces infringement of the identified claims of the '557 patent under 35 U.S.C. § 271(b). Pavemetrics has known of the '557 patent at least since July 22, 2021, before the Court granted Tetra Tech's Motion to Amend and Tetra Tech filed its Amended Counterclaim. Pavemetrics has actively and knowingly induced at least its customers, including CSX Transportation Inc. ("CSX") and the Federal Railroad Administration ("FRA"), to use the LRAIL and thereby directly infringe the '557 patent in the United States, and Pavemetrics knew or should have known that the '557 patent was being directly infringed by customers. For example, the use by Pavemetrics' customers of the LRAIL also constitutes infringement of the asserted claims of the '557 patent. When the LRAIL is sold to and used by end users (such as employees at CSX or the FRA), those end users infringe the asserted claims of the '557 patent through the use of the LRAIL. Pavemetrics specifically intends that third parties will infringe the '557 patent. For example, Pavemetrics encourages infringement by end users at least by intentionally promoting, advertising, aiding, instructing, and providing product support for the use of the infringing LRAIL.

1    Pavemetrics has also contributed to the direct infringement of the '557 patent

2    under 35 U.S.C. § 271(c) by selling and/or offering to sell the LRAIL to customers who

3    then use the LRAIL to perform railroad inspection. The LRAIL has no substantial non-

4    infringing uses.

5    Tetra Tech further contends that Pavemetrics' infringement of the '557 patent is

6    willful. Pavemetrics was made aware of the '557 patent at least as early as July 22,

7    2021, if not earlier. For example, Tetra Tech, through its counsel, sent Pavemetrics a

8    letter on July 22, 2021, providing notice of the '557 patent and Pavemetrics' infringing

9    activities. To date, Pavemetrics continues to willfully infringe the '557 patent.

10   Additionally, Tetra Tech and Pavemetrics are direct competitors in the niche field of

11   railroad track inspection and, therefore, should have been aware of the '557 patent.

12   Pavemetrics has acted, and continues to act, in an egregious and wanton manner by

13   infringing the '557 patent in the limited-competitor field of railroad track inspection.

14

15   Dated: August 30, 2021              **CLARK HILL LLP**

16                                       By:

17

18                                       _____
                                                 Donald L. Ridge
19                                       Aaron L. Parker (*pro hac vice*)
                                         Daniel G. Chung (*pro hac vice*)
20                                       Nicholas A. Cerulli (*pro hac vice*)
                                         Jency J. Mathew (*pro hac vice*)
21
22                                       **FINNEGAN, HENDERSON, FARABOW,
                                         GARRETT & DUNNER, LLP**
23
                                         *Attorneys for Defendant and Counterclaim
24                                       Plaintiffs*
                                         *TETRA TECH, INC. AND TETRA TECH TAS
25                                       INC.*
26
27
28

                                         4

**EXHIBIT B**

**RESTRICTED CONFIDENTIAL SOURCE CODE**

| '557 Patent Claims | Pavemetrics' LRAIL |
|---|---|
| [14.1] A method of detecting railway track bed features using a system for assessing a railway track bed, the method comprising the steps of: | Pavemetrics' Laser Rail Inspection System ("LRAIL") is a system for assessing a railway track bed. For example, the LRAIL marketing materials tout the ability to "automatically detect railway features and assess their condition." TETRATECH_0000219; *see also* TETRATECH_0002828. As shown in the annotated images below, the LRAIL may be mounted on a vehicle for inspection along a track bed. TETRATECH_0002827; TETRATECH_0000105.  Pavemetrics' LRAIL performs one or more methods of detecting railway track bed features.  For example, as shown in the image below, the detected railway track bed features include fasteners, which are detected using "a three-dimensional model." TETRATECH_0002851.  The one or more methods performed by Pavemetrics' LRAIL are discussed in more detail below. |

25

**Exhibit 3**

**EXHIBIT B**

**RESTRICTED CONFIDENTIAL SOURCE CODE**

### 3.2   Fastener Change Detection

The change detection process first detects the ties and rails, and then defines four regions of interest (ROI) at each intersection (two on the gauge side and two on the field side). Each ROI is then inspected for the presence of fasteners using a three-dimensional model. The status of each ROI was reported in three states: a) fastener present, b) ROI contained an object that resembles a fastener, and c) ROI was empty (Figure 16).



**ROI contains a fastener**

**ROI contains an object that is similar to a fastener, but it may be covered or surrounded by ballast**

**ROI is empty**

*Figure 16 – Fastener Detection Algorithm*

26

Exhibit 3



**Exhibit 3**



**Exhibit 3**



**Exhibit 3**



Exhibit 3



Exhibit 3



**Exhibit 3**



**Exhibit 3**



**Exhibit 3**



**Exhibit 3**



**Exhibit 3**



**Exhibit 3**



**Exhibit 3**



**Exhibit 3**



**Exhibit 3**



Exhibit 3

# EXHIBIT 4

[REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL]

Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
Kelly S. Horn (pro hac vice)              Jency J. Mathew (*pro hac vice*)
kelly.horn@finnegan.com                   jency.mathew@finnegan.com
**FINNEGAN, HENDERSON,**                  **FINNEGAN, HENDERSON,**
**FARABOW, GARRETT &**                    **FARABOW, GARRETT &**
**DUNNER, LLP**                           **DUNNER, LLP**
901 New York Avenue NW                    1875 Explorer Street, Suite 800
Washington, D.C. 20001-4413               Reston, Virginia 20190-6023
Telephone:  (202) 408-4000                Telephone:  (571) 203-2700
Facsimile:  (202) 408-4400                Facsimile:   (571) 203-2777

*Attorneys for Defendant and Counterclaim Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**TETRA TECH'S SECOND SUPPLEMENTAL INFRINGEMENT CONTENTIONS AND IDENTIFICATION OF ASSERTED CLAIMS** |

1

Tetra Tech hereby supplements its infringement contentions regarding United States Patent No. 10,362,293 ("the '293 patent") and U.S. Patent No. 10,616,557 ("the '557 patent") based on information discovered since service of Tetra Tech's First Supplemental Infringement Contentions and Identification of Asserted Claims on August 30, 2021, including information discovered during its latest source code inspection on December 9 and 10, 2021, documents produced by third-parties CSX and Advanced Infrastructure Design, Inc. ("AID") and Safe Traffic Operation Professionals, Inc. ("STOP"), documents recently produced by Pavemetrics, and further in light of this Court's Claim Construction Order (Dkt. 103). Tetra Tech incorporates herein by reference its Preliminary Infringement Contentions and Identification of Asserted Claims and its First Supplemental Infringement Contentions and Identification of Asserted Claims.

These supplemental disclosures are based on Tetra Tech's present knowledge, the limited discovery provided by Pavemetrics to date, and access to publicly available information on Pavemetrics' accused railroad inspection system, its Laser Rail Inspection System ("LRAIL"). Tetra Tech reserves all rights to modify and/or supplement these disclosures as necessary or appropriate based on discovery in this case as it occurs or any other circumstances that support modifying these disclosures. Tetra Tech also reserves all rights to amend, or to seek leave of the Court to amend, these disclosures and assert additional or different claims, as circumstances warrant. Specifically, Tetra Tech reserves, among other things, the right to: (1) add additional or different support for the contentions in the attached claim charts; (2) identify additional accused products; (3) add contentions that one or more claim limitations is met under the doctrine of equivalents for the accused products or additional accused products later identified; (4) assert additional patent claims that are not included in the attached claim charts; and (5) assert additional patents that may be infringed by Pavemetrics' LRAIL.

Attached as Exhibit A is an updated chart identifying each claim of the '293 patent alleged to be infringed by Pavemetrics making, testing, using, importing, selling,

2

1   offering to sell, and at least its customers using, its LRAIL. Attached as Exhibit B is an
2   updated chart identifying each claim of the '557 patent alleged to be infringed by
3   Pavemetrics making, testing, using, importing, selling, offering to sell, and at least its
4   customers using, its LRAIL. Exhibits A and B identify where each limitation of each
5   asserted claim is found within, is performed by, or is accomplished by Pavemetrics'
6   LRAIL. All claims identified in Exhibits A and B are asserted claims. The disclosures
7   set forth in Exhibits A and B are preliminary and are based on current knowledge and
8   belief.

9       Tetra Tech further contends that Pavemetrics directly infringes the identified
10  claims of the '293 and '557 patents under 35 U.S.C. § 271(g), either literally or under
11  the doctrine of equivalents, by importing, offering for sale, selling, or using within the
12  United States a product made by a process patented in the United States, including
13  certain products associated with its railroad inspection systems, including but not
14  limited to the LRAIL. As shown in Exhibits A and B, the LRAIL literally infringes
15  every identified claim, including at least claims 22, 23, 25, 36, 37, and 40-43 of the '293
16  patent and claims 8-10 and 14 of the '557 patent. Products resulting from this infringing
17  activity are made by a process patented in the United States, and Pavemetrics imports,
18  offers for sale, sells, or uses these resulting products within the United States. The
19  resulting products are not materially changed by a subsequent process, and they do not
20  become a trivial and nonessential component of another product.

21      Tetra Tech further contends that under 35 U.S.C. § 295 products resulting from
22  the operation of Pavemetrics' railroad inspection systems, including but not limited to
23  the LRAIL, must be presumed to have been made from a process patented in the United
24  States, including but not limited to the identified claims of the '293 and '557 patents.
25  As shown in Exhibits A and B, a substantial likelihood exists that certain products
26  resulting from the operation of the LRAIL were made by at least performing claims 22,
27  23, 25, 36, 37, and 40-43 of the '293 patent and claims 8-10 and 14 of the '557 patent.
28

3

Tetra Tech has made a reasonable effort to determine the process actually used in the production of the product.

Tetra Tech further contends that Pavemetrics directly infringes the identified claims of the '293 and '557 patents under 35 U.S.C. § 271(a), either literally or under the doctrine of equivalents, by selling and/or offering for sale to Advanced Infrastructure Design, Inc. ("AID") and Safe Traffic Operation Professionals, Inc. ("STOP") certain railroad inspection systems, including but not limited to the LRAIL.

Tetra Tech further contends that Pavemetrics induces infringement of the identified claims of the '293 and '557 patents under 35 U.S.C. § 271(b) as a result of infringing conduct of AID and STOP. Pavemetrics has known of the '293 patent at least since January 5, 2021, and has known of the '557 patent at least since July 22, 2021. Pavemetrics has actively and knowingly induced AID and STOP to use the LRAIL and thereby directly infringe the '293 and '557 patents in the United States, and Pavemetrics knew or should have known that the '293 and '557 patents were being directly infringed by AID and STOP. For example, the use by AID and STOP of the LRAIL also constitutes infringement of the asserted claims of the '293 and '557 patents. When the LRAIL is sold to and used by end users (such as employees at AID and STOP), those end users infringe the asserted claims of the '293 and '557 patents through the use of the LRAIL. Pavemetrics specifically intends that AID and STOP will infringe the '293 and '557 patents. For example, Pavemetrics encourages infringement by end users at AID and STOP at least by intentionally promoting, advertising, aiding, instructing, and providing product support for the use of the infringing LRAIL.

///
///
///
///
///
///

4

Pavemetrics has also contributed to the direct infringement of the '293 and '557 patents under 35 U.S.C. § 271(c) by selling and/or offering to sell the LRAIL to AID and STOP who then use the LRAIL to perform railroad inspection. The LRAIL has no substantial non-infringing uses.

Dated: December 20, 2021

By:  __/s/ Aaron L. Parker__
             Aaron L. Parker

Donald L. Ridge
**CLARK HILL LLP**

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
Kelly S. Horn (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

5

**EXHIBIT B - Tetra Tech's Second Supplemental Infringement Contentions**

**RESTRICTED CONFIDENTIAL SOURCE CODE**

| '557 Patent Claims | Pavemetrics' LRAIL |
|---|---|
| [14.1] A method of detecting railway track bed features using a system for assessing a railway track bed, the method comprising the steps of: | Pavemetrics' Laser Rail Inspection System ("LRAIL") is a system for assessing a railway track bed. For example, the LRAIL marketing materials tout the ability to "automatically detect railway features and assess their condition." TETRATECH_0000219; *see also* TETRATECH_0002828. As shown in the annotated images below, the LRAIL may be mounted on a vehicle for inspection along a track bed. TETRATECH_0002827; TETRATECH_0000105.<br><br><br><br>Pavemetrics' LRAIL performs one or more methods of detecting railway track bed features. For example, as shown in the image below, the detected railway track bed features include fasteners, which are detected using "a three-dimensional model." TETRATECH_0002851. The one or more methods performed by Pavemetrics' LRAIL are discussed in more detail below. |

33

**Exhibit 4**

**EXHIBIT B - Tetra Tech's Second Supplemental Infringement Contentions**

**RESTRICTED CONFIDENTIAL SOURCE CODE**

### 3.2   Fastener Change Detection

The change detection process first detects the ties and rails, and then defines four regions of interest (ROI) at each intersection (two on the gauge side and two on the field side). Each ROI is then inspected for the presence of fasteners using a three-dimensional model. The status of each ROI was reported in three states: a) fastener present, b) ROI contained an object that resembles a fastener, and c) ROI was empty (Figure 16).



**ROI contains a fastener**

**ROI contains an object that is similar to a fastener, but it may be covered or surrounded by ballast**

**ROI is empty**

**Figure 16 – Fastener Detection Algorithm**

34

**Exhibit 4**



**Exhibit 4**



**Exhibit 4**



**Exhibit 4**

# EXHIBIT 11

[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]

1  Donald Ridge, Esq. (SBN: 132171)
2  **CLARK HILL LLP**
   1055 West Seventh Street, Suite 2400
3  Los Angeles, CA 90017
   Telephone: (213) 891-9100
4  Facsimile: (213) 488-1178
5  DRidge@clarkhill.com

6
   Aaron L. Parker (*pro hac vice*)
7  aaron.parker@finnegan.com
   Daniel G. Chung (*pro hac vice*)
8  daniel.chung@finnegan.com
9  Nicholas A. Cerulli (*pro hac vice*)
   nicholas.cerulli@finnegan.com
10 Kelly S. Horn (*pro hac vice*)          Jency J. Mathew (*pro hac vice*)
11 kelly.horn@finnegan.com                 jency.mathew@finnegan.com
   **FINNEGAN, HENDERSON,**               **FINNEGAN, HENDERSON,**
12 **FARABOW, GARRETT &**                  **FARABOW, GARRETT &**
13 **DUNNER, LLP**                         **DUNNER, LLP**
   901 New York Avenue NW                  1875 Explorer Street, Suite 800
14 Washington, D.C. 20001-4413             Reston, Virginia 20190-6023
15 Telephone:  (202) 408-4000              Telephone:  (571) 203-2700
   Facsimile:  (202) 408-4400              Facsimile:   (571) 203-2777
16
17 *Attorneys for Defendant and Counterclaim Plaintiffs*

18
19                 **UNITED STATES DISTRICT COURT**

20                 **CENTRAL DISTRICT OF CALIFORNIA**

21 PAVEMETRICS SYSTEMS, INC.          CASE NO. 2:21-cv-1289 MCS-MMA

22                                     **TETRA TECH'S OBJECTIONS**
                Plaintiff,             **AND RESPONSES TO**
23        v.                           **PAVEMETRICS' THIRD SET OF**
                                       **INTERROGATORIES (NOS. 15-21)**
24 TETRA TECH, INC.

25              Defendant.
26 AND RELATED COUNTERCLAIMS.

27        **PAGES 7 AND 12 CONTAIN MATERIAL DESIGNATED**
28              **RESTRICTED – ATTORNEYS' EYES ONLY**

                                 1

1   October 23, 2013, October 29, 2013, and April 21, 2014, and (4) source code files
2   relating to Tetra Tech's 2-D based track inspection system.

3       Discovery is ongoing. Tetra Tech reserves the right to modify, change, or
4   supplement its response to this interrogatory, as necessary.

5   **INTERROGATORY NO. 16:**

6       Identify each specific instance in which You contend Pavemetrics or its
7   customers performed an action allegedly infringing any of the Asserted Claims,
8   specifying for each specific instance the date and location of the alleged act of
9   infringement, the persons or entities who carried out the act, which of the Asserted
10  Claims were allegedly infringed, and the identity of all documents and other evidence
11  supporting or otherwise relating to Your contention that Pavemetrics or its customer
12  infringed any of the Asserted Claims on that specific occasion.

13  **RESPONSE TO INTERROGATORY NO. 16:**

14      In addition to the General Objections set forth above, Tetra Tech objects to this
15  interrogatory to the extent it calls for any legal conclusion, including a legal conclusion
16  regarding "infringing." Tetra Tech also objects to this interrogatory as premature to
17  the extent it calls for expert discovery or expert opinion. Tetra Tech also objects to this
18  interrogatory as overly broad and unduly burdensome to the extent it requests that
19  Tetra Tech identify "each specific instance," all "persons or entities who carried out
20  the act," and "all documents and other evidence supporting or otherwise relating to
21  Your contention." Tetra Tech also objects to this interrogatory as compound, in that it
22  includes multiple separate interrogatories.

23      Subject to and without waiving the foregoing General and Specific Objections,
24  Tetra Tech incorporates by reference its Preliminary Infringement Contentions and
25  Identification of Asserted Claims served on June 10, 2021,  its First Supplemental
26  Infringement Contentions and Identification of Asserted Claims served on August 30,
27  2021, and its Second Supplemental Infringement Contentions and Identification of
28  Asserted Claims served on December 20, 2021.

1    **BEGIN RESTRICTED—ATTORNEYS' EYES ONLY MATERIAL**

19   **END RESTRICTED—ATTORNEYS' EYES ONLY MATERIAL**

20           Further, Tetra Tech identifies the following documents as being responsive to

21   this      interrogatory:      PAVEMETRICS0015569      -      PAVEMETRICS0015572,

22   PAVEMETRICS0015580,      PAVEMETRICS0015587,      PAVEMETRICS0015617,

23   PAVEMETRICS0015618,      PAVEMETRICS0015581,      PAVEMETRICS0015582,

24   PAVEMETRICS0015523,      PAVEMETRICS0100554,      PAVEMETRICS0145316,

25   PAVEMETRICS0207546,          CSXT0004761,          PAVEMETRICS0181501,

26   PAVEMETRICS0005981,      PAVEMETRICS0006661,      PAVEMETRICS0004479,

27   PAVEMETRICS0001953,      PAVEMETRICS0343982,      PAVEMETRICS0154686,

28   PAVEMETRICS0002032,      PAVEMETRICS0319248,      PAVEMETRICS0200345,

7

1   PAVEMETRICS0231580,     PAVEMETRICS0138030,     PAVEMETRICS0145407,

2   PAVEMETRICS0199996, PAVEMETRICS0015581, and PAVEMETRICS0184032.

3       Discovery is ongoing. Tetra Tech reserves the right to modify, change, or

4   supplement its response to this interrogatory, as necessary.

5   **INTERROGATORY NO. 17:**

6       For each instance that You identified in response to Interrogatory No. 16,

7   specify the amount of damages Tetra Tech contends to be attributable to that alleged

8   instance of infringement, the theory of damages You contend correspond to that

9   amount (e.g., lost profits or reasonable royalty), the method You used to calculate that

10  amount, and the identity of all documents and other evidence supporting or otherwise

11  relating to Your calculation of that amount.

12  **RESPONSE TO INTERROGATORY NO. 17:**

13      In addition to the General Objections set forth above, Tetra Tech objects to this

14  interrogatory to the extent it calls for any legal conclusion, including a legal conclusion

15  regarding "infringement," "lost profits," and "reasonable royalty." Tetra Tech further

16  objects to the term "instance of infringement" as vague and ambiguous. Tetra Tech

17  also objects to this interrogatory as premature to the extent it calls for expert discovery

18  or expert opinion. Tetra Tech also objects to this interrogatory as overly broad and

19  unduly burdensome to the extent it requests that Tetra Tech identify "all documents

20  and other evidence." Tetra Tech also objects to this interrogatory as compound, in that

21  it includes multiple separate interrogatories.

22      Subject to and without waiving the foregoing General and Specific Objections,

23  Tetra Tech responds to this interrogatory as follows:

24      Pavemetrics has not yet provided sufficient detail or clarity as to the scope of its

25  infringement, and therefore the actual amount of lost profits and reasonable royalties

26  to compensate for Pavemetrics' infringement cannot be calculated without further

27  discovery. Tetra Tech will rely on a damages expert to compute damages, based, at

28  least in part, on financial information produced by Pavemetrics, including documents

Discovery is ongoing. Tetra Tech reserves the right to modify, change, or supplement its response to this interrogatory, as necessary.

**INTERROGATORY NO. 21:**

State individually for each document You produced as TETRATECH_0078650–64, TETRATECH_0090735–47, and TETRATECH_0098859–971, the date that each such document came into Your possession, custody, or control.

**RESPONSE TO INTERROGATORY NO. 21:**

In addition to the General Objections set forth above, Tetra Tech objects to this interrogatory as compound, in that it includes multiple separate interrogatories.

Subject to and without waiving the foregoing General and Specific Objections, Tetra Tech responds as follows:

At this time, Tetra Tech is not aware of the specific dates that each of TETRATECH_0078650–64, TETRATECH_0090735–47, and TETRATECH_0098859–971 came into its possession, custody, or control.

Discovery is ongoing. Tetra Tech reserves the right to modify, change, or supplement its response to this interrogatory, as necessary.


Dated: December 22, 2021

By:     */s/ Aaron L. Parker*
_____
Aaron L. Parker

Donald L. Ridge
**CLARK HILL LLP**

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Kelly S. Horn (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**

15

# EXHIBIT 12

[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]

1

Donald Ridge, Esq. (SBN: 132171)

2

**CLARK HILL LLP**
1055 West Seventh Street, Suite 2400

3

Los Angeles, CA 90017
Telephone: (213) 891-9100

4

Facsimile: (213) 488-1178

5

DRidge@clarkhill.com

6

Aaron L. Parker (*pro hac vice*)

7

aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)

8

daniel.chung@finnegan.com

9

Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com

10

Kelly S. Horn (*pro hac vice*)            Jency J. Mathew (*pro hac vice*)

11

kelly.horn@finnegan.com                jency.mathew@finnegan.com

12

Victor M. Palace (*pro hac vice*)       **FINNEGAN, HENDERSON,**
victor.palace@finnegan.com             **FARABOW, GARRETT &**

13

**FINNEGAN, HENDERSON,**          **DUNNER, LLP**

14

**FARABOW, GARRETT &**            1875 Explorer Street, Suite 800
**DUNNER, LLP**                       Reston, Virginia 20190-6023

15

901 New York Avenue NW             Telephone:   (571) 203-2700

16

Washington, D.C. 20001-4413         Facsimile:    (571) 203-2777
Telephone:   (202) 408-4000

17

Facsimile:    (202) 408-4400

18

*Attorneys for Defendant and Counterclaim Plaintiffs*

19

20

**UNITED STATES DISTRICT COURT**

21

**CENTRAL DISTRICT OF CALIFORNIA**

22

PAVEMETRICS SYSTEMS, INC.        CASE NO. 2:21-cv-1289 MCS-MMA

23

            Plaintiff,              **TETRA TECH'S SUPPLEMENTAL**

24

                                  **RESPONSES TO PAVEMETRICS'**
      v.                          **FIRST SET OF**

25

                                  **INTERROGATORIES (NOS. 5 AND**

26

TETRA TECH, INC.                  **8)**

27

            Defendant.

28

AND RELATED COUNTERCLAIMS.

1

**PAGES 3-4 AND 7 CONTAIN MATERIAL DESIGNATED
RESTRICTED – ATTORNEYS' EYES ONLY**

Pursuant to Rules 26 and 33 of the Federal Rules of Civil Procedure, Defendant and Counterclaim Plaintiff Tetra Tech, Inc. and Counterclaim Plaintiff Tetra Tech TAS Inc. (collectively "Tetra Tech") hereby supplement their responses to Interrogatory Nos. 5 and 8 served by Plaintiff and Counterclaim Defendant, Pavemetrics Systems, Inc. ("Pavemetrics").

## GENERAL OBJECTIONS AND QUALIFICATIONS

Tetra Tech hereby incorporates by reference the General Objections and Qualifications set forth in Tetra Tech's Objections and Responses to Pavemetrics' First Set of Interrogatories (Nos. 1-12) (as supplemented), which are further incorporated by reference into the following response as if set forth fully therein.

## INTERROGATORY NO. 5:

Describe in detail the legal and factual bases for Your contention that Pavemetrics received actual or constructive notice of infringement; if Your contention relies on actual notice, describe with specificity all factual bases for such contention, including the date on which You contend that Pavemetrics received actual notice of infringement of the Asserted Patent, how such notice occurred, the persons who provided such notice, to whom such notice was provided, and what products were identified in such notice; or, if Your contention relies on constructive notice, for each product that You identified in response to Interrogatory No. 1, describe with specificity all factual bases for such contention including whether You marked any such product with the number of the Asserted Patent, the first date on which You marked each such product, and how, when, and where such marking occurred.

## RESPONSE TO INTERROGATORY NO. 5:

In addition to the General Objections set forth above, Tetra Tech objects to this interrogatory as unduly burdensome to the extent that the information is already within the possession, custody, and control of Pavemetrics. Tetra Tech also objects to this

2

interrogatory to the extent it calls for any legal conclusion, including a legal conclusion regarding "infringement," "actual notice," "constructive notice," or "marked." Tetra Tech also objects to this interrogatory as premature given the early stage of this litigation and to the extent it calls for discovery from Pavemetrics. Tetra Tech also objects to this interrogatory as overly broad and unduly burdensome to the extent it requests that Tetra Tech identify "all factual bases for such contention," rather than just documents or evidence that Tetra Tech intends to rely on with regard to notice of infringement. Tetra Tech also objects to this interrogatory as compound, in that it includes multiple separate interrogatories.

Subject to and without waiving the foregoing General and Specific Objections, Tetra Tech states that Pavemetrics received actual notice of its LRAIL's infringement of the '293 patent at least as early as January 5, 2021, when Tetra Tech sent a letter, through its counsel, to Pavemetrics' President and CEO, Richard Habel. ECF 1, Exhibit B. Tetra Tech also incorporates by reference its contentions from its Counterclaim regarding actual notice of infringement of the '293 patent. At the time of this response, Tetra Tech is not aware of any marking of the '293 patent on its 3DTAS products occurring prior to the January 5, 2021 notice.

Discovery is ongoing. Tetra Tech reserves the right to modify, change, or supplement its response to this interrogatory, as necessary.

**FIRST SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 5:**

**BEGIN RESTRICTED—ATTORNEYS' EYES ONLY MATERIAL**

3

**END RESTRICTED—ATTORNEYS' EYES ONLY MATERIAL**

Tetra Tech identifies the following documents containing information responsive to this interrogatory pursuant to Fed. R. Civ. P. 33(d): PAVEMETRICS0097995; PAVEMETRICS0097997-99; PAVEMETRICS0232072-74; PAVEMETRICS0171678-79; TETRATECH_0138627-30; TETRATECH_0396498-567.

Discovery is ongoing. Tetra Tech reserves the right to modify, change, or supplement its response to this interrogatory, as necessary.

4

1   Tetra Tech incorporates by reference its response to Interrogatory No. 4 and the

2   Deposition Transcript of Bill Larson.

3   Tetra Tech also identifies the following documents containing information

4   responsive to this interrogatory pursuant to Fed. R. Civ. P. 33(d):

5   PAVEMETRICS0319248; PAVEMETRICS0236744; CSXT0010558.

6   Discovery is ongoing. Tetra Tech reserves the right to modify, change, or

7   supplement its response to this interrogatory, as necessary.

8

9

10

11   Dated: January 19, 2022

12   By:   _/s/ Aaron L. Parker_____
              Aaron L. Parker

13

14   Donald L. Ridge

15   **CLARK HILL LLP**

16   Aaron L. Parker (*pro hac vice*)
     Daniel G. Chung (*pro hac vice*)

17   Nicholas A. Cerulli (*pro hac vice*)
     Kelly S. Horn (*pro hac vice*)

18   Jency J. Mathew (*pro hac vice*)

19   Victor M. Palace (*pro hac vice*)

20   **FINNEGAN, HENDERSON, FARABOW,**
     **GARRETT & DUNNER, LLP**

21

22   *Attorneys for Defendant and Counterclaim*
     *Plaintiffs*

23   *TETRA TECH, INC. AND TETRA TECH TAS*
     *INC.*

24

25

26

27

28

8

# EXHIBIT 15

[REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL]

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                    December 29, 2021

1

```
                              VOLUME:   I
                              PAGES:    1-227
                              EXHIBITS: 52-90

              UNITED STATES DISTRICT COURT

           CENTRAL DISTRICT OF CALIFORNIA

           CASE NO. 2:21-cv-1289 MCS-MMA


    _____

PAVEMETRICS SYSTEMS, INC.,           )

                  Plaintiff,         )

            vs.                      )

TETRA TECH, INC.,                    )

                  Defendant.         )

    _____)

AND RELATED COUNTERCLAIMS            )

    _____)

       ** RESTRICTED - ATTORNEYS' EYES ONLY **

               REMOTE VIDEOTAPED DEPOSITION OF

PAVEMETRICS SYSTEMS, INC., BY RICHARD HABEL, called

as a witness by and on behalf of the Defendant,

pursuant to the applicable provisions of the

Federal Rules of Civil Procedure, Rule 30(b)(6),

before P. Jodi Ohnemus (remotely), RPR, RMR, CRR,

CA-CSR #13192, NH-LSR #91, and MA-CSR #123193, at

Quebec City, Quebec, Canada, on Wednesday, December

29, 2021, commencing at 9:06 a.m. (EST).
```

Henderson Legal Services, Inc.

202-220-4158                    www.hendersonlegalservices.com

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                December 29, 2021

3 (Pages 6 to 9)

**6**

| | | |
|---|---|---|
| Exhibit 61 | email 9/11/2017, | 118 |
| | PAVEMETRICS0245314 | |
| Exhibit 62 | PowerPoint, | 118 |
| | PAVEMETRICS0245315-377 | |
| Exhibit 63 | Excel spreadsheet, | 122 |
| | PAVEMETRICS02848734 | |
| Exhibit 64 | PowerPoint, | 127 |
| | PAVEMETRICS0287456-482 | |
| Exhibit 65 | PowerPoint, | 127 |
| | PAVEMETRICS0287322-348 | |
| Exhibit 66 | email, 7/5/2016, | 129 |
| | PAVEMETRICS0269614-615 | |
| Exhibit 14 | previously marked | 136 |
| Exhibit 18 | previously marked | 141 |
| Exhibit 15 | previously marked | 147 |
| Exhibit 21 | previously marked | 153 |
| Exhibit 67 | email, 4/18/2017, | 156 |
| | PAVEMETRICS0198376-378 | |
| Exhibit 68 | email, 4/18/2017, | 162 |
| | PAVEMETRICS0204898-900 | |
| Exhibit 69 | email, 5/16/2017, | 164 |
| | PAVEMETRICS098245-251 | |
| Exhibit 70 | email, 5/29/2017, | 166 |
| | PAVEMETRICS0139711-717 | |
| Exhibit 71 | email 2/15/2018, | 168 |

**8**

| | | |
|---|---|---|
| Exhibit 83 | email 11/10/2020, | 204 |
| | PAVEMETRICS0200274-278 | |
| Exhibit 84 | email, 11/11/2020, | 205 |
| | PAVEMETRICS0200365-367 | |
| Exhibit 85 | email 5/19/2021, | 207 |
| | PAVEMETRICS0413313-314 | |
| Exhibit 87 | email, 9/25/2019, | 215 |
| | PAVEMETRICS0265931-932 | |
| Exhibit 88 | email, 5/9/2018, | 217 |
| | PAVEMETRICS0242131-132 | |
| Exhibit 89 | email, 1/27/2017, | 218 |
| | PAVEMETRICS0265186-191 | |
| Exhibit 90 | email, 1/27/2017, | 220 |
| | PAVEMETRICS0265186-191 | |

(There was no Exhibit 72.)

**7**

| | | |
|---|---|---|
| | PAVEMETRICS0197714-716 | |
| Exhibit 72 | email, 5/25/2021, | 172 |
| | PAVEMETRICS0206907-910 | |
| Exhibit 72 | clawed back | 173 |
| Exhibit 73 | PowerPoint, | 174 |
| | PAVEMETRICS0128615-641 | |
| Exhibit 74 | email, 1/18/2018, | 175 |
| | PAVEMETRICS0197841 | |
| Exhibit 75 | email, 9/8/2020, | 178 |
| | PAVEMETRICS0287917-918 | |
| Exhibit 76 | PAVEMETRICS0284736-741 | 180 |
| Exhibit 77 | letter 2/1/2021 | 183 |
| | PAVEMTRICS0139608 | |
| Exhibit 12 | previously marked | 187 |
| Exhibit 78 | email 1/6/2021, | 188 |
| | PAVEMETRICS0206186-188 | |
| Exhibit 79 | email, 1/6/2021, | 191 |
| | PAVEMETRICS0199348-351 | |
| Exhibit 80 | Goods Agreement, | 194 |
| | PAVEMETRICS0232590-619 | |
| Exhibit 42 | previously marked | 197 |
| Exhibit 81 | Goods Agreement, | 198 |
| | CSXT0010132-162 | |
| Exhibit 82 | email 11/12/2020, | 202 |
| | PAVEMETRICS0232960-963 | |

**9**

```
        VIDEO OPERATOR:  Here begins disk 1 in the
video deposition of Richard Habel, taken in the
matter of Pavemetrics Systems, Inc., v. Tetra Tech,
Inc., in the United States District Court Central
District of California, Case No. 2:21-cv-1289
MCS-MMA.
        Today's date is December 29th, 2021.  The
time on the video monitor is 9:06 a.m. Eastern.
This deposition is being held remotely via Zoom
videoconference.  The court reporter is Jodi
Ohnemus on behalf of Henderson Legal Services.  The
video camera operator is Eric Vavrasek, also on
behalf of Henderson Legal Services.
        Will counsel please introduce themselves
and state whom they represent, beginning with the
party noticing the deposition.
        MR. CHUNG:  Daniel Chung of Finnegan on
behalf of the Tetra Tech entities.
        With me today are my colleagues Nicholas
Cerulli and Victor Palace, also of Finnegan.
        MR. ZOVKO:  Good morning.  Nick Zovko of
Knobbe Martens for Pavemetrics Systems Inc. and the
witness.
        VIDEO OPERATOR:  Will the court reporter
please swear in the witness.
```

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                              December 29, 2021

4 (Pages 10 to 13)

---

**10**

1    RICHARD HABEL, having
2    first been duly sworn, was
3    examined and testified as
4    follows to interrogatories
5  BY MR CHUNG:
6    Q.  Good morning.
7    **A.  Good morning.**
8    Q.  Would you please state your name and
9  address for the record.
10   **A.  First name is Richard.  My last name is**
11   **Habel, and my address is** ████████████
     ████████████████████████████
     ████████████████████
14   Q.  Mr. Habel, have you ever been deposed
15  before?
16   **A.  No.**
17   Q.  I'd like to go over the ground rules for
18  today's deposition.  I'm going to be asking some
19  questions today, and I ask that you answer my
20  questions truthfully and accurately.
21    Is that fair?
22   **A.  Yes.**
23   Q.  Okay.  And the court reporter mentioned
24  this, but if we talk over each other -- especially
25  over the -- the Zoom interface -- it will be

**11**

1  difficult for her; so I ask that you please wait
2  till I finish my question before answering.
3    Is that fair?
4    **A.  Yes.**
5    Q.  And if a question is not clear or you do
6  not understand, please let me know so I can ask a
7  better question.
8    Is that fair?
9    **A.  Yes.**
10   Q.  Okay.  And if you answer the question, I
11  will assume that you understood that question.
12    Is that fair?
13   **A.  My mother's tongue is French, so might**
14   **happen that I don't understand the subtleties in**
15   **English.**
16    **So is that fair?  To some level in the**
17   **sense that I do my best to make sure I properly**
18   **understand your question.  But you have to**
19   **understand that my -- it's a second language for**
20   **me.**
21   Q.  Right.  I understand and appreciate that.
22  So if you don't understand a question or if it's
23  not clear to you, please let me know and I'll --
24  I'll try to ask a better question.  Okay?
25   **A.  Yes.  Thanks.**

**12**

1    Q.  And there may be times where your counsel
2  will object to one of my questions.  I ask that you
3  still answer my question unless counsel instructs
4  you otherwise.
5    Is that fair?
6    **A.  Yes.**
7    Q.  If you need a break at any time, let me
8  know and I can see about taking a break.  But I ask
9  that if we have a -- a line of questioning pending,
10  we -- we finish that line of questioning before we
11  take that break.
12    Is that fair?
13    MR. ZOVKO:  Well, that's -- that's his
14  request, but you as a witness are entitled to break
15  any time a question -- any time you have answered a
16  question; a question is not pending.
17    And, Dan, the lower part of your face is
18  cut off on the screen.  So I think, to help the
19  communication, it would be -- help if you'd lower
20  your -- no.  No.  No.  No.  Not you, Mr. Habel.
21  Mr. Chung.  Yeah.  Thank you.
22    MR. CHUNG:  Okay.  Is that better?
23    MR. ZOVKO:  Yes.
24   Q.  Is there anyone in the room with you?
25   **A.  No.  My wife just left.**

**13**

1    Q.  Okay.  Do you have any documents with you?
2    **A.  No.**
3    Q.  And you understand that you're testifying
4  under oath today?
5    **A.  Yes.**
6    Q.  Okay.  And you understand that you are
7  under the same oath as if you were testifying in
8  court?
9    **A.  Yes.**
10   Q.  Okay.  Is there anything today that
11  prevents you from providing complete, accurate, and
12  truthful testimony?
13   **A.  I take lots of medications.  Sometimes it**
14   **can cause -- I might -- sometimes it causes, like,**
15   **kind of brain fogs, but should be fine.**
16   Q.  Are you under any of those medications
17  currently?
18   **A.  Yes.  All the time.**
19   Q.  And -- and what are those medications?
20   **A.  Okay.  There is a -- something called**
21   **gabapentin or Neurontin.  It's -- it's something**
22   **for neuropathic pain.  I take Cortisone.  I take --**
23   **it's kind of a chemotherapy, but it's in pills**
24   **format.  So...**
25    **What else do I take?  Tramadol.  It's kind**

---

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                    December 29, 2021

30 (Pages 114 to 117)

---

**114**

1  Q.  Is it --
2  A.  So -- so many people would not understand
3  what the difference is between an independent claim
4  and a -- a dependent claim.  They would not know
5  exactly how to know that it's important -- it's
6  important to respect the IP of others.  So I -- I
7  guess that's what I meant by "Pavemetrics is
8  well-versed in the topic of patents."
9     Q.  Is the same true today; that Pavemetrics
10  is well-versed in the topic of patents?
11    A.  I would say that still today Pavemetrics
12  takes intellectual property very seriously, and we
13  can read a claim and compare it to the operation of
14  our system, and we can -- we can have interesting
15  discussions with our attorneys regarding claim --
16  claims.
17        So we're versed enough to -- to have a
18  discussion with our attorneys, like Nick.
19        So in that context, it meant -- and I
20  repeat -- that we took IP extremely seriously; that
21  we had conducted an analysis of those claims, and
22  that there were significant differences between
23  these claims and the operation of the LRAIL and
24  the -- so that took care of the independent claims.
25  And because the dependent claims, in order to

**115**

1  infringe them -- on them, you also need to infringe
2  on the independent claim where there was no
3  infringement.
4        That's essentially the process that we
5  follow.  That's the process that I explained to
6  Mr. Shell, and I guess he was quite happy with it.
7     Q.  Just -- just for the -- just to clarify,
8  is it Pavemetrics' position that today it's versed
9  enough on the topic of patents?
10       MR. ZOVKO:  Objection.  Vague.
11    A.  The position of the -- Pavemetrics today
12  is that we need an attorney, a US patent attorney,
13  to review the -- the patents of Tetra Tech and --
14  versus the operation of the LRAIL.
15       So we needed advices.  Was -- it's not as
16  clear-cut as it was -- well, no, it is clear-cut,
17  but -- it is clear-cut, but I think it's -- it's an
18  adjective, right, well-versed?  Just -- I just
19  wanted to show that I -- that we had taken the time
20  to read the claims and compare them to our systems
21  and that we were taking IP very seriously.  That's
22  what it meant by "well-versed."
23       So if you're asking me today have I read
24  the claims of the project -- of the patent that
25  Tetra Tech claims that we infringe and compared it

**116**

1  with the system operation, yes, I've done the same
2  thing, but I felt that here I also needed the
3  advice of the US patent attorney.
4     Q.  Okay.  So in -- in response to the GREX
5  notice letter, Pavemetrics analyzed the patents and
6  specifically compared the claims to the process of
7  the LRAIL; is that correct?
8     A.  Right.
9     Q.  Is that consistent with Pavemetrics --
10       (Court Reporter comment.)
11       THE WITNESS:  I didn't add anything.
12    Q.  So I'll -- I'll restate my question.
13       Is that consistent with Pavemetrics'
14  practice when it receives a notice letter?
15    A.  Oh, we received one notice letter in --
16  during the entire life of the company before Tetra
17  Tech.  And it was the letter from GREX.  So I take
18  intellectual property very seriously.  If I
19  received -- when I received a letter from Tetra
20  Tech, I took it also very seriously.  So it was the
21  second letter that we received in 12 years.
22    Q.  Okay.  So you did the same type of
23  analysis when you received the Tetra Tech letter?
24  You compared the claims to the process of the
25  LRAIL?

**117**

1     A.  That's correct.
2     Q.  Okay.  Did Pavemetrics analyze any other
3  GREX patents after receiving the notice letter?
4     A.  I know we did look at these five.  I don't
5  know if we did look at other GREX patents.  I don't
6  remember.  It's been five years.
7     Q.  Do you have any reason to believe
8  Pavemetrics did not look at any other GREX patents?
9     A.  Do I have any reason to believe that?
10  Sorry?
11    Q.  Do you have any reason to believe that
12  Pavemetrics did not look at any other GREX patents
13  in response to the notice letter?
14    A.  We -- we might have looked at -- we might
15  have conducted a search at the time.  But it's been
16  five years, and I don't remember -- I just don't
17  remember.  Maybe we did look.  Maybe we didn't.
18       I -- I can say that in the industry, GREX
19  was well known because it did bully many other
20  companies with their patents, including Tetra Tech.
21  So we were quite concerned about GREX at that time
22  because the word on the street was that GREX had
23  patented everything regarding laser triangulation
24  on -- for railroad inspection.  So that looked like
25  a very broad claim to me.

---

Henderson Legal Services, Inc.

**Exhibit 15**

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                    December 29, 2021

34 (Pages 130 to 133)

---

**130**

recipient?

A.  Yes, I see my name that I'm -- I see that I'm the recipient.

Q.  That's your email address; correct?

A.  Yes.

Q.  Okay.  And the email below that, you are the author to Richard Fox-Ivey and John Laurent; is that correct?

A.  My email address, and it's got my signature at the bottom, my electronic signature that I use.

Q.  Have you seen this document before?

A.  I guess if it's got my name on it, I saw it before, but...

Q.  Do you see in your email where it states "We need to make sure that our algos respect the IP from others"?

A.  Yes.

Q.  What does that mean?

A.  In 2016 we were highly concerned about GREX, so that might be the context for it.  I'm just speculating.

Q.  Is it Pavemetrics' policy today to respect the IP of others?

A.  Yes.

---

**131**

Q.  Who would those others be?

A.  GREX.

Q.  Anybody else?

A.  Definitely nobody on the radar in 2016 other than GREX.

Q.  I guess today who would those others be?

A.  In 2016 it was probably GREX.  Today, I am aware of patents from Tetra Tech; so I -- I have to make sure that we respect the IP of Tetra Tech's also.

Q.  Are there any other entities that you're aware of that has IP that Pavemetrics would need to respect?

A.  You know, any IP needs to be respected; right?  Like sometimes there is open source code.  So we've got to make sure that -- so this is IP that we need to respect.  We need to respect IP that -- you know, when we become aware of it.

Q.  What does Pavemetrics do to make sure that it respects the IP of others?

A.  At that time I have no context about this.  We had already read the -- July 15, 2016.  So that was after we received the notice of infringement letter.  So that was probably the context.

Q.  And today what does Pavemetrics do to make

---

**132**

sure that it respects the IP of others?

A.  Well, the only other IP that we are aware of today is the IP of Tetra Tech.  So we're aware of the -- of the patents that -- for which Finnegan sent us a letter, and we definitely intend to respect that IP.

Q.  So what does Pavemetrics do to respect the IP?

A.  We -- we did -- when we became aware of GREX patents, we did compare the claim to the operation of the system, and we made sure that there were significant -- significant differences between the two.

So today what do -- what do we do?  Well, when I received the letter from Finnegan, did the same thing.

Q.  Is there anything else that Pavemetrics does to respect the IP of others?

MR. ZOVKO:  Objection.  Vague.  Asked and answered.

A.  I've answered to the best of my knowledge.

Q.  Does Pavemetrics search for patents in its efforts to respect the IP of others?

A.  No.  No, it's not -- no.

Q.  Does Pavemetrics -- aside from the Tetra

---

**133**

Tech patent and the GREX patents, does Pavemetrics analyze other entities' patents in efforts to respect the IP of others?

THE WITNESS:  Oh.

MR. ZOVKO:  Objection.  Vague.

Go ahead.  You can answer.

A.  No.

Q.  Does Pavemetrics conduct any other investigations in its efforts to respect the IP of others?

MR. ZOVKO:  Objection.  Vague.

A.  To my knowledge, we don't do anything else.

Q.  And why is that?

A.  Pavemetrics is a small company.  It has 23 people.  We don't have a legal department, so we cannot -- we -- we do not monitor patents.

Q.  Just so the record's clear, the reason why Pavemetrics does not monitor patents is because it's a small company with 23 people?

MR. ZOVKO:  Objection.  Mischaracterizes the testimony.  And asked --

A.  We -- we don't have the resources and the skill set we would have had to.

Q.  And you assisted Tetra Tech in a lawsuit

---

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                                    December 29, 2021

35 (Pages 134 to 137)

134

1  against GREX; correct?
2       A.  Tetra Tech asked for my help in the
3  lawsuit for GREX.
4       Q.  Did you assist Tetra Tech in a lawsuit
5  against GREX?
6       A.  What do you mean by "assist"?
7       Q.  Did you help Tetra Tech in a lawsuit
8  against GREX?
9       A.  I did provide some information that I was
10  hoping would help Tetra Tech in its lawsuit against
11  GREX.
12      Q.  And the lawsuit against GREX, that
13  involved allegations of infringement of Tetra
14  Tech's 3DTAS; right?
15      MR. ZOVKO:  Objection.  Lack of
16  foundation.  Calls for speculation.
17      A.  I just didn't know that -- I didn't know
18  at that time that -- I was not aware of the 3DTAS
19  at that time.
20      Q.  Do you know what -- do you recall what the
21  allegations in the GREX suit against Tetra Tech
22  were?
23      A.  I -- I remember that it was an allegation
24  of infringement.
25      Q.  Against who?

135

1       A.  GREX accused Tetra Techs -- Tetra Tech of
2  infringing its IP.  That's what I knew.
3       Q.  And when did you provide information to
4  Tetra Tech for its lawsuit against GREX?
5       A.  I -- I -- the law firm representing Tetra
6  Tech in Canada -- the name of the law firm is
7  ROBIC, one of its patent agent or lawyer, first
8  name is Bob, last name --
9       MR. ZOVKO:  It was when.  When.  When.
10  You may not have heard of it.
11      THE WITNESS:  When.
12      MR. ZOVKO:  It was when.
13      A.  It's when the lawyer of Tetra Tech
14  contacted me.
15      Q.  Do you recall what date that was -- what
16  year that was?
17      A.  I think it was 2016, somewhere probably
18  early or in the first half of 2016.  I vaguely
19  remember.
20      Q.  What information did you provide Tetra
21  Tech for its lawsuit against GREX?
22      A.  I didn't provide the information directly
23  to Tetra Tech.  I did provide some information to
24  ROBIC, although Darel Mesher might have been cc'd
25  on some email.  And the information that -- the

136

1  type of information that I provided were name of
2  potential expert witnesses and prior art that could
3  be used to invalidate the patents of GREX.
4       So prior art and names of potential
5  witness.  That's the short answer.
6       Q.  Anything else?
7       A.  Coffee.
8       Q.  And did you help Tetra Tech or its
9  attorneys in any other way in its lawsuit against
10  GREX?
11      A.  Not that I can recall.
12      Q.  Could you please take a look at the
13  document that's been previously marked Exhibit 14.
14      (Exhibit 14, previously marked.)
15      A.  Yes.
16      Q.  Okay.  Do you see that you are a recipient
17  of this email?
18      A.  Yes.
19      Q.  That's your email address?
20      A.  Correct.
21      Q.  The subject line -- have you seen this
22  document before?
23      A.  Yes.
24      Q.  The subject line says "Tetra Tech Court
25  Case."

137

1       Is this the lawsuit in which you assisted
2  Tetra Tech against GREX?
3       A.  Yeah, the title is "Tetra Tech Court
4  Case."  Was that your question?
5       Q.  Is the "Tetra Tech Court Case" in the
6  subject line, does that refer to the --
7       A.  Yeah.
8       Q.  -- litigation --
9       A.  Yeah.  Yeah.  Tetra Tech court case.
10      Q.  Sorry.  I just have to -- I'm going to ask
11  the question again just for clarity of the record.
12      The subject line states "Tetra Tech Court
13  Case"; is that right?
14      A.  That's correct.
15      Q.  Is the Tetra Tech court case the
16  litigation Tetra Tech was in against GREX and the
17  one that you helped Tetra Tech in?
18      MR. ZOVKO:  Feel free to review the whole
19  email for context, as with all documents.
20      A.  So, yes, the title is "Tetra Tech Court
21  Case"; and, yes, it's about the -- it's about Tetra
22  Tech's court case.
23      Q.  Against GREX?
24      A.  Oh, sorry.  I apologize.  I lost track of
25  the -- of the original question.

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                           December 29, 2021

36 (Pages 138 to 141)

---

138

1    Yes.  Yes --
2    Q.  Thank you.
3    A.  -- it was.
4    Q.  At the top of the document there's a link
5    provided by Mr. Fox-Ivey.  He says "Also you might
6    be interested to see Darel's list of patents."
7        Did I read that correctly?
8    A.  Yes, you read it correctly.
9    Q.  And the link itself has "Darel+Mesher."
10       Did I read that correctly?
11   A.  Yes.
12   Q.  Is it fair to say that as of October
13   2017th [verbatim] Pavemetrics knew that Darel
14   Mesher had patents?
15   A.  Yes.
16   Q.  Did Pavemetrics review Darel Mesher's
17   patents?
18       MR. ZOVKO:  Objection.  Vague.
19   A.  Can you be more specific?
20   Q.  Did Pavemetrics review Mr. Mesher's
21   patents?
22       MR. ZOVKO:  Same objections -- or
23   objection.
24   A.  I vaguely remember looking at some of
25   Darel's patents during the GREX lawsuit.  Probably

---

139

1    because ROBIC's attorney brought them to my
2    attention.
3    Q.  Do you know if anybody else at Pavemetrics
4    reviewed Mr. Mesher's patents around the time of
5    this email, this Exhibit 14?
6    A.  I don't think anybody at Pavemetrics spent
7    time reviewing patents of Darel Mesher.
8    Q.  Since October 2017, did Pavemetrics review
9    Mr. Mesher's patents?
10   A.  No.
11   Q.  Why not?
12   A.  Well --
13       MR. ZOVKO:  I'll object as vague.
14       Go ahead.
15   A.  We had no reason.  Tetra Tech had been a
16   long-time customer.  We sided with them during the
17   GREX -- during their conflict with GREX.  So we
18   didn't have any reasons to review Darel Mesher's
19   patents.
20       So I'd be really surprised if John or
21   Jean-Francois or Richard Fox-Ivey himself reviewed
22   these patents.
23   Q.  Did you ask Mr. Laurent or Mr. Fox-Ivey if
24   they reviewed Mr. Mesher's patents since October
25   2017 in preparing for today's deposition as

---

140

1    Pavemetrics' Rule 30(b)(6) designee?
2        MR. ZOVKO:  Objection.  Vague.
3        THE WITNESS:  What did say?  Objection?
4        MR. ZOVKO:  We couldn't hear you.  Can
5    you -- can you answer?
6        THE WITNESS:  What -- what did you say --
7    okay.  I'm sorry.  I just focused on what you said,
8    Nick.
9    A.  Can you repeat, Mr. Chung.
10   Q.  Did you ask Mr. Laurent or Mr. Fox-Ivey if
11   they reviewed Mr. Mesher's patents since October
12   2017 in preparing for today's deposition as --
13   A.  No.
14   Q.  -- Pavemetrics' Rule 30(b)(6) designee?
15       MR. ZOVKO:  Same objection.
16   A.  No.
17   Q.  And why not?
18   A.  Didn't think of it.
19   Q.  Did you attempt to investigate or ask
20   Mr. Laurent or Mr. Fox-Ivey?
21   A.  No.
22   Q.  Since October 2017, has Pavemetrics
23   searched for Mr. Mesher's patents?
24   A.  Not to my knowledge or -- or nothing that
25   I can recall.

---

141

1    Q.  Did you investigate, in preparing for
2    today's deposition as Pavemetrics' Rule 30(b)(6)
3    designee, if Pavemetrics searched for Mr. Mesher's
4    patents since October 2017?
5    A.  I'm not aware that anybody searched for
6    Darel Mesher's patents.
7    Q.  Did you investigate as part of your
8    preparation today?
9    A.  No, I didn't perform a -- a specific
10   investigation of it, but coming to this meeting, I
11   was not aware -- and I'm still not aware of -- of
12   anybody who -- who investigated Darel Mesher's
13   patents.
14   Q.  Did you -- did you attempt to investigate
15   as part of your preparation today?
16   A.  No.
17   Q.  Since October 2017, have you searched for
18   Mr. Mesher's patents?
19   A.  I think I answered this question.  No, I
20   didn't search for Darel Mesher's patents -- nothing
21   that I can recall definitely.
22   Q.  You can put that aside.
23       Could you please pull up the document
24   that's been previously marked Exhibit 18.
25       (Exhibit 18, previously marked.)

---

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                    December 29, 2021

37 (Pages 142 to 145)



142

1    A.  Yes.
2    Q.  At the top of the document do you see that
you are the author of the email, Mr. Habel?
4    A.  Yes.
5    Q.  And that is your email address?
6    A.  Correct.
7    Q.  Have you reviewed -- strike that.
8        Have you seen Exhibit 18 before?
9    A.  Yes.
10   Q.  What was the purpose of Exhibit 18?
11   A.  Let me take a look at the email; okay?
12   Q.  Yeah.
13   A.  I can...a long email.  (Witness reviews
14   document.)
15       Okay.  So what is you -- you know, I
16   browsed through it.  I got the general sense of it.
17       What's your question?
18   Q.  What was the purpose behind the email
19   exchanges in Exhibit 18?

144

8    Q.  Did Pavemetrics search for other patents?
9    A.  You asked this question before, I think,
10   and the answer is no.
11   Q.  Did you investigate whether Pavemetrics
12   searched for other patents in preparation for your
13   deposition today?
14       MR. ZOVKO:  What -- what topic is this,
15   Dan?
16       MR. CHUNG:  I'm asking in both his
17   personal capacity and under topics 18, 24, 25,
18   but --
19       MR. ZOVKO:  18, "Any investigations or
20   activities relating to the asserted patents."
21       "For each asserted patent" is 24, and then
22   25, Tetra Tech's 3DTAS, knowledge of Tetra Tech's
23   3DTAS.
24       So the witness had no obligation to
25   investigate relating to monitoring or searching for

143

145

1    any patents.  These are all specific to the
2    asserted patents.  And this goes for that previous
3    line of questioning related to so-called Darel
4    Mesher's patents.
5        So you can answer the question, but this
6    is in your personal capacity.
7    A.  I didn't -- in preparation for this
8    meeting, I didn't ask my colleagues if they have
9    searched for patents from Darel Mesher.
10   Q.  After sending this email, did you expect
11   that a search be conducted for other patents aside
12   from GREX patents?
13   A.  Not at all.
14   Q.  Why not?
15   A.  Because we don't have the resources to do
16   that.  That's the main reason.
17       I could also say that it's not part of our
18   process to search for patents.  We don't search for
19   patents from others.  We -- we looked at patents,
20   at GREX patents, when we were asked to, and we -- I
21   vaguely remember being shown some patents by ROBIC,
22   law firm representing Tetra Tech, but it's not part
23   of our process to search for patents.
24   Q.  So you said that -- let me just...
25       You said that it just made good business

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                         December 29, 2021

47 (Pages 182 to 185)

---

182

1    MR. ZOVKO:  Yeah, Dan, I don't think he
2  understands, kind of, what you mean here.  So I'm
3  worried he's going to cross over into privileged
4  stuff.  I just don't think he understands the
5  context for this question.
6    MR. CHUNG:  Why don't we get off the
7  record right now and -- can we get off the record,
8  please.
9    VIDEO OPERATOR:  Yeah.  We are going off
10  the record at 4:38 p.m.
11    (Recess was taken.)
12    VIDEO OPERATOR:  We are going back on the
13  record at 4:40 p.m.
14    Q.  Okay.  Mr. Habel, is Pavemetrics relying
15  on an opinion of counsel as part of any of its
16  defenses in this case?
17    A.  No, not to my knowledge.
18    MR. CHUNG:  Okay.  Let's -- let's take a
19  ten-minute break, please.
20    VIDEO OPERATOR:  We are going off the
21  record at 4:41 p.m.
22    (Recess was taken.)
23    VIDEO OPERATOR:  We are going back on the
24  record at 4:59 p.m.
25    Q.  I'm going to mark as Exhibit 77 to your

---

183

1  deposition document Bates No. PAVEMETRICS0139608.
2  Mr. Habel, please let me know when you've opened up
3  Exhibit 77.
4    (Exhibit 77, letter 2/1/2021
5    PAVEMTRICS0139608.)
6    A.  9608 you said?  Yeah.
7    Q.  Yes.  Exhibit 77.
8    A.  I have it.
9    Q.  Are you familiar with Exhibit 77?
10    A.  Yes.
11    Q.  Is this the response letter to Tetra
12  Tech's letter notifying it of infringement --
13  strike that.
14    Is Exhibit 77 Pavemetrics' response to
15  Tetra Tech's notice letter of infringement?
16    MR. ZOVKO:  Objection.  Mischaracterizes
17  the document.
18    Go ahead.
19    A.  There were multiple responses to
20  Mr. Parker, and this obviously seems to be one of
21  them with my signature at the bottom.
22    Q.  Thank you.
23    In the middle of the second paragraph you
24  state that "...we have come to the preliminary
25  conclusion that the LRAIL system does not infringe

---

184

1  any of the claims of the '293 patent.  However,
2  because we are not legal experts, we are now in the
3  process of choosing a US patent attorney."
4    At the time of this letter, Pavemetrics
5  had not yet engaged an attorney to assist it with
6  its allegations of infringement?
7    A.  That is correct.
8    Q.  What is the basis for the "preliminary
9  conclusion that the LRAIL system does not
10  infringe"?
11    A.  I explained earlier we -- we took patent
12  '293, we read the independent claim, and we
13  compared it with the operation of the LRAIL, and
14  there were significant differences between what the
15  claim -- what was recited in the claim and -- and
16  the operation of the LRAIL.
17    Q.  Was this analysis documented at all?
18    A.  I -- I don't think that on February 1 we
19  had anything in writing about it.  I...
20    Q.  Did you investigate in preparation for
21  your deposition today whether or not there were
22  documents regarding the preliminary conclusion that
23  the LRAIL system does not infringe?
24    A.  We recited the claim in -- in the -- and
25  we reviewed the step in the order that they -- that

---

185

1  they appeared in the patent.  We looked at the
2  independent claim.  There are two independent
3  claims, if I remember well, claim 1 and claim 22,
4  where we wanted it as a system, claimed the other
5  one is a method claim, and we reached a conclusion
6  that we -- there were significant differences; and
7  our preliminary conclusion was that the LRAIL
8  doesn't infringe patent '293, but we're not -- as
9  it's written there, we're not legal experts; so I
10  wanted to get a US patent attorney to look at it.
11    Q.  Are there any documents reflecting this
12  preliminary -- preliminary conclusion?
13    MR. ZOVKO:  Objection.
14    A.  No, I just remembered the outcome.  Maybe
15  they are, but I just remembered the outcome.
16    Q.  Did you investigate whether there are any
17  concerning this preliminary conclusion that the
18  LRAIL system does not infringe?
19    MR. ZOVKO:  And just to clarify:  He's
20  talking about in preparing for this deposition.
21    THE WITNESS:  Yeah.
22    MR. ZOVKO:  You looked to see whether
23  there are documents.  I think he's getting thrown
24  off with "investigate."  And feel free to rephrase
25  it, but that's just my understanding of the

---

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                    December 29, 2021

48 (Pages 186 to 189)



186

1  question.
2      **A.   Just read the patent and compared it with**
3  **the operation.  What I remember is getting the**
4  **technical people in a conference room and we**
5  **verbally debated, and we reached a conclusion**
6  **that -- preliminary conclusion that there was no**
7  **infringement, but because we're not patent lawyers,**
8  **we hired a US patent attorney.**
9      Q.   Did you search for any documents in
10  preparing for this deposition regarding the
11  preliminary conclusion of no infringement?
12      **A.   No.**
13      Q.   What were the significant differences
14  between the LRAIL system and the independent claims
15  of the '293 patent that made you arrive at the
16  conclusion that there was no infringement?
17      **A.   Could you put the claim on the chat or --**
18  **or point me at one of the exhibit that -- that**
19  **shows claim 1?**
20      Q.   Do you recall what the significant
21  differences were?
22      **A.   Yes.  When I see the claim, I will be able**
23  **to tell you.**
24      Q.   I'm going to introduce as exhibit --
25  previously marked as Exhibit 12 in the chat box,

187

1  '293 patent.
2          (Exhibit 12, previously marked.)
3      **A.   Not there yet.**
4      MR. ZOVKO:  This time it's in the chat
5  box, not on the ShareFile.
6      THE WITNESS:  Oh, I apologize.  I was
7  reading at the wrong place.
8      **A.   (Witness reviews document.)  Now it**
9  **opened.  Okay.  Claim 1.  It's -- it's mainly claim**
10  **1c.  So Pavemetrics on the LRAIL doesn't identify a**
11  **railway track bed feature from the track elevation**
12  **map, including the steps following it.  So we don't**
13  **identify railway track bed features from track**
14  **elevation map.**
15      Q.   What does it do that's significantly
16  different from claim element C -- 1c?  Sorry.
17      **A.   The track elevation map as defined -- in**
18  **order to -- to have a track elevation map, you need**
19  **to acquire 3D surface elevation and intensity data,**
20  **and you've got to generate the track elevation map**
21  **based on this 3D data.  So the LRAIL doesn't**
22  **identify railway fragment features from a track**
23  **elevation map.**
24      Q.   Is that the only significant difference
25  that form the basis of your preliminary conclusion

188

1  of noninfringement?
2      **A.   Quite significant, sir.**
3      Q.   Is that the only significant difference?
4      **A.   Quite significant to me.**
5      Q.   Are there any other differences that form
6  the basis for your preliminary conclusion of
7  noninfringement?
8      **A.   That's what we identified as our prior**
9  **preliminary conclusion from the investigation we**
10  **conducted.**
11      Q.   Okay.  Put Exhibit 77 aside.
12          Mark as Exhibit 78 document with Bates No.
13  PAVEMETRICS0206186.
14      **A.   Yes.**
15      Q.   Do you have Exhibit 78 open, Mr. Habel?
16          (Exhibit 78, email 1/6/2021,
17          PAVEMETRICS0206186-188.)
18      Q.   I don't think it picked up.
19      **A.   Yes, it's open.**
20      Q.   Okay.  Do you see that on the top email
21  you are a recipient of the email?
22      **A.   Yes.**
23      Q.   That's your email address?
24      **A.   Right.**
25      Q.   Have you seen Exhibit 78 before?

189

RESTRICTED - ATTORNEYS' EYES ONLY

Habel, Richard                                    December 29, 2021

58 (Pages 226 to 227)

---

226

ACKNOWLEDGMENT OF DEPONENT

I, _____, do hereby acknowledge that I have read and examined the foregoing testimony, and the same is a true, correct and complete transcription of the testimony given by me, and any corrections appear on the attached Errata Sheet signed by me.

_____   _____
(DATE)          (SIGNATURE)

NOTARIZATION  (If Required)

State of _____
County of _____

Subscribed and sworn to (or affirmed) before me on this _____ day of _____, 20____, by _____, proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature: _____
            (Seal)

---

227

STATE OF CALIFORNIA  )  ss:
COUNTY OF SAN DIEGO  )
        I, PATRICIA JODI OHNEMUS, CSR No. 13192, do hereby certify:
        That the foregoing deposition testimony of RICHARD HABEL was taken before me (remotely) at the time and place therein set forth, at which time the witness was placed under oath and was sworn by me to tell the truth, the whole truth, and nothing but the truth;
        That the testimony of the witness and all objections made by counsel at the time of the examination were recorded stenographically by me, and were thereafter transcribed under my direction and supervision, and that the foregoing pages contain a full, true, and accurate record of all proceedings and testimony to the best of my skill and ability.
        I further certify that I am neither counsel for any party in said action, nor am I related to any party to said action, nor am I in any way interested in the outcome thereof.
        IN WITNESS WHEREOF, I have subscribed my name this  day of  , 2022.

_____
        PATRICIA JODI OHNEMUS, CSR No. 13192

---

# EXHIBIT 25

[REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL]

Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

Payne McQueen Montgomery (*Pro Hac Vice*)
mack.montgomery@knobbe.com
1717 Pennsylvania Ave. N.W., Ste. 900
Washington D.C. 20006
Phone: (202) 640-6400
Facsimile: (202) 640-6401

Attorneys for Plaintiff/Counterclaim Defendant
PAVEMETRICS SYSTEMS, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., | Case No. 2:21-cv-1289-MCS-MMA |
| Plaintiff, | **PAVEMETRICS' OBJECTIONS AND RESPONSES TO TETRA TECH'S SECOND SET OF INTERROGATORIES (NOS. 10-14)** |
| v. | |
| TETRA TECH, INC., | |
| Defendant. | |
| AND RELATED COUNTERCLAIMS | Honorable Mark C. Scarsi Honorable Maria A. Audero |

**PAGES 11–16 CONTAIN MATERIAL DESIGNATED RESTRICTED – ATTORNEYS' EYES ONLY UNDER THE PROTECTIVE ORDER IN THIS CASE**

Pursuant to Rule 33 of the Federal Rules of Civil Procedure, Plaintiff and Counterclaim Defendant Pavemetrics Systems, Inc. ("Pavemetrics") hereby

objects and responds to Defendants and Counterclaim Plaintiffs Tetra Tech, Inc. and Tetra Tech TAS Inc.'s (collectively, "Tetra Tech") Second Set of Interrogatories (Nos. 10-14) as follows:

**PRELIMINARY STATEMENT**

1.     The following responses are based upon information presently available to and located by Pavemetrics and its counsel and reflect the current state of Pavemetrics' knowledge, understanding and belief regarding the matters about which inquiry was made.  Pavemetrics has not completed its investigation of the facts relating to this litigation or preparation for trial and anticipates that as this litigation proceeds, further facts may be discovered.   Pavemetrics reserves the right to modify or supplement these responses with any such pertinent information.

2.     Pavemetrics' responses are made without waiving or intending to waive, but on the contrary, intending to preserve and preserving:

a.     The right to raise all questions of authenticity, relevancy, materiality, privilege and admissibility as evidence for any purpose of the information and the documents identified and/or produced in response to these Interrogatories, which may arise in any subsequent proceeding in, or trial of, this or any other action;

b.     The right to assert or raise, in this or any other context, attorney-client privilege, the work product doctrine, the protections afforded by Rule 26(b)(3) or Rule 26(b)(4)(B), the right of privacy, or any other applicable privilege or protective doctrine;

c.     The right to object to the use of the information and/or documents in any subsequent proceeding in, or the trial of, this or any other action on any grounds;

- 1 -

prior use defense under Section 273.  If use of the LRAIL system includes the subject matter of claim 14, Pavemetrics has commercially used the claimed subject matter since at least 2012.

Tetra Tech contends that "the LRAIL's processor tests each 3D template against the fastener target to 'compute the correlation of the data with the full shape reference templates.' . . . The retrieved 3D template for the current fastener type is compared to the elevation data for the fastener candidate . . . [and] [t]he correlation between the 3D template and the elevation data is computed" which, in Tetra Tech's view, would infringe these claims.  *See, e.g.*, Ex. B to Tetra Tech's First Supplemental Infringement Contentions at 37.  A person of ordinary skill in the art would recognize such an algorithm as a "template matching" method.  *See, e.g.*, Declaration of David Frakes, PhD, in Support of Pavemetrics' Opposition to Motion for Preliminary Injunction (ECF 32), ¶ 101.  Pavemetrics has commercially used "template matching" methods involving "computation of cross-correlation . . . between templates and rail data" since 2012.  *See, e.g.*, PAVEMETRICS0000567, PAVEMETRICS0000420–21, PAVEMETRICS0000607–608, PAVEMETRICS000645–46, PAVEMETRICS0005181, PAVEMETRICS0005396.  Accordingly, if Tetra Tech maintains that such template matching algorithms infringe claim 14, Pavemetrics commercially used those algorithms before February 20, 2014, and has a complete defense to infringement under § 273.

Discovery and claim construction proceedings are ongoing.  Pavemetrics reserves the right to modify, change, or supplement its response to this interrogatory, as necessary.

/ / /

/ / /

/ / /

- 9 -

**INTERROGATORY NO. 13:**

State the facts and circumstances, including how, when, where, from whom and to whom, Pavemetrics first possessed any knowledge or awareness of the '557 Patent at any time prior to Tetra Tech's notice letter of July 22, 2021, and identify the persons knowledgeable about the foregoing and documents relating to the foregoing.

**RESPONSE TO INTERROGATORY NO. 13:**

Pavemetrics incorporates by reference its Preliminary Statement and General Objections as if set forth fully herein.  Pavemetrics further objects to this Interrogatory to the extent that it seeks information protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

Subject to and without waiving the foregoing objections, Pavemetrics responds as follows:

Pavemetrics is currently unaware of having knowledge or awareness of the '557 patent at any time prior to receiving Tetra Tech's letter dated July 22, 2021.  Richard Habel is knowledgeable about this topic.

**INTERROGATORY NO. 14:**

Aside from Pavemetrics' alleged defense under 35 U.S.C. § 273, identify and describe the complete legal and factual basis for Pavemetrics' contention that it does not infringe the '557 patent, and for each asserted claim of the '557 patent, identify and describe in detail each claim element that Pavemetrics asserts is not present in its Laser Rail Inspection System (LRAIL) and an explanation of why the LRAIL does not meet those claim elements.

**RESPONSE TO INTERROGATORY NO. 14:**

Pavemetrics incorporates by reference its Preliminary Statement and General Objections as if set forth fully herein.  Pavemetrics objects to this Interrogatory as premature to the extent it calls for expert discovery.

- 10 -

**RESTRICTED—ATTORNEYS' EYES ONLY MATERIAL**

1       Pavemetrics further objects to this Interrogatory as premature because the

2  parties dispute the scope of the asserted claims of the '557 patent, and the Court

3  has not yet issued an order construing the claims.  Pavemetrics further objects to

4  this Interrogatory to the extent that it seeks information protected by the

5  attorney-client privilege, the work product doctrine, or any other applicable

6  privilege. Pavemetrics further objects to this Interrogatory to the extent it calls

7  for a legal conclusion, legal contention, or expert opinion.

8       Subject to and without waiving the foregoing objections, Pavemetrics

9  responds as follows:

10    **BEGIN RESTRICTED—ATTORNEYS' EYES ONLY MATERIAL**

11      Pavemetrics does not directly or indirectly infringe claims 8–10 and 14 of

12  the '557 patent.

13      Pavemetrics does not infringe claims 8–10 because, to Pavemetrics'

14  knowledge, an LRAIL system located in the United States has never executed

15  the relevant source code Tetra Tech contends infringes these claims.   Method

16  claims cannot be infringed unless all steps of the method are performed in the

17  United States.  *NTP, Inc. v. Rsch. In Motion, Ltd.*, 418 F.3d 1282, 1318 (Fed.

18  Cir. 2005) ("[A] process cannot be used 'within' the United States as required

19  by section 271(a) unless each of the steps is performed within this country."),

20  *abrogated in irrelevant part by Zoltek Corp. v. United States*, 672 F.3d 1309,

21  1323 (Fed. Cir. 2012) (en banc).

22      For  example,  Pavemetrics  has  not  delivered  tie  crack  detection

23  functionality to CSX for use in CSX's LRAILs.  When Pavemetrics does deliver

24  this functionality to CSX, the tie crack detection will be performed by different

25  algorithms.  These different algorithms rely on deep neural networks to detect

26  cracks.  Tetra Tech has not made a showing that the LRAIL's deep neural

27  network method for crack detection infringes this claim, nor can it make such a

28  showing.

- 11 -

RESTRICTED—ATTORNEYS' EYES ONLY MATERIAL

Without showing that the allegedly infringing algorithms have been performed in the United States, Tetra Tech cannot establish the requisite direct infringement required to establish liability for induced infringement.  "Direct infringement is a required element to establish induced infringement." *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1364 (Fed. Cir. 2012).  In addition, Tetra Tech has failed to concretely and specifically allege even a single affirmative act by Pavemetrics "to encourage infringement with the knowledge that the induced acts constitute patent infringement." *Microsoft Corp. v. DataTern, Inc.*, 755 F.3d 899, 904 (Fed. Cir. 2014).  Contrary to Tetra Tech's conclusory allegations, CSX, for example, was provided with LRAIL software disabled from using the algorithms Tetra Tech alleges to infringe claims 8–10 of the '557 patent  Pavemetrics therefore has prevented CSX from using the allegedly infringing algorithms, not encouraged it to do so.

Similarly, without showing that the allegedly infringing algorithms have been performed in the United States, Tetra Tech cannot establish the requisite direct infringement required to establish liability for contributory infringement. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355 (Fed. Cir. 2018).  Nor can Tetra Tech show the other required elements of contributory infringement. Any LRAIL sales in the United States made to date were made without knowledge of the '557 patent.  Also, LRAIL has numerous substantial non-infringing uses.  For example, it contains numerous commercially valuable capabilities that Tetra Tech has not accused of infringement.  "For purposes of contributory infringement, the [infringement] inquiry focuses on whether the accused products can be used for purposes *other than* infringement." *Nalco*, 883 F.3d at 1357.  Tetra Tech has not even alleged any facts showing that LRAIL cannot be used for purposes other than infringement, and it cannot meet this burden.

Furthermore, even if Pavemetrics or its customers had used the

- 12 -

**Exhibit 25**

**Exhibit 25**

**Exhibit 25**

**RESTRICTED—ATTORNEYS' EYES ONLY MATERIAL**



19      **END RESTRICTED—ATTORNEYS' EYES ONLY MATERIAL**

20          Discovery and claim construction proceedings are ongoing.  Pavemetrics

21   reserves the right to modify, change, or supplement its response to this

22   interrogatory, as necessary.

23

24

25

26

27

28

- 16 -

1

2
                                      KNOBBE, MARTENS, OLSON & BEAR, LLP

3
Dated:  October 25, 2021     By:  */s/ Payne McQueen Montgomery*

4
                                      Joseph R. Re

5
                                      Christy G. Lea

6
                                      Nicholas M. Zovko

7
                                      Payne McQueen Montgomery

8
                   Attorneys for Plaintiff/Counterclaim Defendant,
                   PAVEMETRICS SYSTEMS, INC.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

- 17 -