1  Donald Ridge, Esq. (SBN: 132171)
2  **CLARK HILL LLP**
   555 South Flower Street, 24th Floor
3  Los Angeles, CA 90071
4  Telephone: (213) 891-9100
   Facsimile: (213) 488-1178
5  DRidge@clarkhill.com

6
7  Aaron L. Parker (*pro hac vice*)
   aaron.parker@finnegan.com                 Jency J. Mathew (*pro hac vice*)
8  Daniel G. Chung (*pro hac vice*)          jency.mathew@finnegan.com
   daniel.chung@finnegan.com                 **FINNEGAN, HENDERSON,**
9  Nicholas A. Cerulli (*pro hac vice*)      **FARABOW, GARRETT &**
10 nicholas.cerulli@finnegan.com             **DUNNER, LLP**
   Kelly S. Horn (*pro hac vice*)            1875 Explorer Street, Suite 800
11 kelly.horn@finnegan.com                   Reston, Virginia 20190-6023
   **FINNEGAN, HENDERSON,**                  Telephone:  (571) 203-2700
12 **FARABOW, GARRETT &**                    Facsimile:   (571) 203-2777
13 **DUNNER, LLP**
   901 New York Avenue NW                    *Attorneys for Defendant and*
14 Washington, D.C. 20001-4413               *Counterclaim Plaintiffs*
15 Telephone:  (202) 408-4000
   Facsimile:   (202) 408-4400
16

17                     UNITED STATES DISTRICT COURT
18                    CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 19  PAVEMETRICS SYSTEMS, INC. | CASE NO. 2:21-cv-1289 MCS-MMA |
| 20           Plaintiff, | **TETRA TECH'S MEMORANDUM IN OPPOSITION TO PAVEMETRICS' MOTION TO STRIKE PORTIONS OF EXPERT REPORT OF DR. VASSILIOS MORELLAS** |
| 21  v. | |
| 22  TETRA TECH, INC. | |
| 23           Defendant. | |
| 24 | **Honorable Mark C. Scarsi** |
| 25 | **Date: May 9, 2022** |
| 26 | **Time: 9:00 a.m.** |
| 27  AND RELATED COUNTERCLAIMS. | **Courtroom: 7C** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ...............................................................................................1

II. LEGAL STANDARDS ......................................................................................2

III. DR. MORELLAS' OPINIONS REGARDING THE "PROCESSOR" ELEMENTS ARE PROPER................................................................................2

    A. Pavemetrics Improperly Seeks a Belated Claim Construction Ruling ......................................................................................................5

    B. Dr. Morellas' Opinions are Consistent with the Applicable Law and the Plain and Ordinary Meaning of the "Processor" Elements in Accordance with the Intrinsic Evidence ...........................................6

    C. Pavemetrics' Flawed Construction Fails to Advance its Noninfringement Contentions ...............................................................9

    D. Pavemetrics' Request is Vague and Overly Broad .............................11

IV. DR. MORELLAS' TESTIMONY REGARDING PAVEMETRICS' KNOWLEDGE IS PROPER.............................................................................11

V. CONCLUSION .................................................................................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Apple, Inc. v. Motorola, Inc.*,
   757 F.3d 1286 (Fed. Cir. 2014)..................................................................2

*Apple, Inc. v. Samsung Elecs. Co.*,
   2014 WL 660857 (N.D. Cal. Feb. 20, 2014) ............................................5

*Carucel Invs., L.P. v. Novatel Wireless, Inc.*,
   2017 WL 1215838 (S.D. Cal. Apr. 3, 2017)..............................................5

*Copy Prot. LLC v. Netflix, Inc.*,
   2015 WL 4639954 (D. Del. Aug. 5, 2015).................................................6

*Daubert v. Merrell Dow Pharm., Inc.*,
   509 U.S. 579 (1993)............................................................................ 1, 2, 4, 5

*Ecolab, inc. v. FMC Corp.*,
   569 F.3d 1335 (Fed. Cir. 2009)................................................................12

*Finalrod IP, LLC v. Endurance Lift Sols., Inc.*,
   2021 WL 4743102 (E.D. Tex. Oct. 11, 2021) ..........................................5

*Gen-Probe Inc. v. Becton Dickinson & Co.*,
   2011 WL 7167137 (S.D. Cal. Nov. 22, 2011) ..........................................6

*GREE, Inc. v. Supercell Oy*,
   2020 WL 4288350 (E.D. Tex. July 27, 2020) ........................................12

*Howmedica Osteonics Corp. v. Wright Med. Tech., Inc.*,
   540 F.3d 1337, 1344 (Fed. Cir. 2008) .......................................................7

*KCJ Corp. v. Kinetic Concepts, Inc.*,
   223 F.3d 1351 (Fed. Cir. 2000)..................................................................5

*Morpho Detection, Inc. v. Smiths Detection Inc.*,
   2012 WL 5194076 (E.D. Va. Oct. 19, 2012).............................................7

*Oatey Co. v. IPS Corp.*,
 514 F.3d 1271 (Fed. Cir. 2008) ..................................................................................8

*Pers. Audio, LLC v. Google LLC*,
 2022 U.S. Dist. LEXIS 45668 (D. Del. Jan. 24, 2022) ............................................5

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005) (en banc) ................................................................4

*Primiano v. Cook*,
 598 F.3d 558 (9th Cir. 2010) ....................................................................................2

*Rhine v. Casio, Inc.*,
 183 F.3d 1342 (Fed. Cir. 1999) ................................................................................5

*Stanley v. Novartis Pharmaceuticals Corp.*,
 11 F.Supp.3d 987 (C.D. Cal. 2014) ..........................................................................2

*Tech. Consumer Prods., Inc. v. Lighting Sci. Grp. Corp.*,
 955 F.3d 16 (Fed. Cir. 2020) ....................................................................................9

**Rules**

Fed. R. Civ. P. 7(b)(1)(C) ................................................................................................10

Federal Rule of Evidence 702 ......................................................................................1, 2

## I. INTRODUCTION

Pavemetrics' Motion to Strike seeks to exclude portions of Dr. Morellas' infringement report that Pavemetrics characterizes as "legally incorrect claim construction opinions" and opinions on "Pavemetrics' knowledge" and "state of mind." But neither characterization is correct, and Pavemetrics otherwise fails to provide a legitimate basis for striking any of Dr. Morellas' testimony.

Pavemetrics first seeks to strike portions of Dr. Morellas' report that address the "processor" elements in the asserted claims. Pavemetrics contends that Dr. Morellas' opinions are based on a legally incorrect view of the claim scope. However, Dr. Morellas properly applies the plain and ordinary meaning for the "processor" elements in accordance with the intrinsic evidence. And Pavemetrics has already conceded that the LRAIL systems at issue meet the "processor" elements. Furthermore, Pavemetrics does not dispute that Dr. Morellas has adhered to the Court's claim construction order. Indeed, this is the first time Pavemetrics has raised this particular argument despite having known about Tetra Tech's infringement contentions well in advance of claim construction. This motion is nothing more than an attempt by Pavemetrics to belatedly request a claim construction ruling from the Court masked as a *Daubert* motion. The Court should deny this request.

Pavemetrics also seeks to strike three paragraphs of Dr. Morellas' indirect infringement opinions that relate to Pavemetrics' knowledge or willfully blindness of the asserted patents. However, nothing in the three identified paragraphs amounts to improper expert testimony, nor has Pavemetrics shown this to be the case. Rather, Dr. Morellas states his understanding of facts underlying Tetra Tech's claims of indirect infringement, many of which are undisputed. Pavemetrics ignores the language in these paragraphs and instead tries to twist Dr. Morellas' testimony to make it appear improper when it is clearly not. The Court should therefore also deny this request.

///
///

## II. LEGAL STANDARDS

Federal Rule of Evidence 702 permits the testimony of "a witness who is qualified as an expert by knowledge, skill, experience, training, or education [to] testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case."

"Rule 702 should be applied consistent with the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to opinion testimony.'" *Stanley v. Novartis Pharmaceuticals Corp.*, 11 F.Supp.3d 987 (C.D. Cal. 2014) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588 (1993)). When considering expert testimony, "[a] judge must be cautious not to overstep its gatekeeping role and weigh facts, evaluate the correctness of conclusions, impose its own preferred methodology, or judge credibility, including the credibility of one expert over another. These tasks are solely reserved for the fact finder." *Apple, Inc. v. Motorola, Inc.*, 757 F.3d 1286, 1314 (Fed. Cir. 2014). The Court's duty is to evaluate the soundness of the expert's methodology, not the correctness of the expert's conclusions. *Primiano v. Cook*, 598 F.3d 558, 564 (9th Cir. 2010). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." *Id.*

## III. DR. MORELLAS' OPINIONS REGARDING THE "PROCESSOR" ELEMENTS ARE PROPER

Both the '293 and '557 patents recite claims that include "processor" elements. For example, claim 1 of the '293 patent recites:

> 1. A system for assessing a railway track bed, the system comprising:
>
> a power source;

2

a light emitting apparatus powered by the power source for emitting light energy toward a railway track;

a data storage apparatus in communication with **at least one processor**;

at least one sensor for sensing reflected light that was emitted from the light emitting apparatus and acquiring three dimensional surface elevation and intensity image data of the railway track to be stored in the data storage apparatus, wherein the at least one sensor is in communication with **the at least one processor**; and

wherein **the at least one processor** is configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the at least one sensor and saved in the data storage apparatus, the algorithm comprising the steps of:

a. acquiring three dimensional surface elevation and intensity data representative of an area segment of railway track bed;

b. generating a track elevation map based on the acquired three dimensional data;

c. identifying a railway track bed feature from the track elevation map further including the steps of:

i. defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and

ii. moving the gradient neighborhood like a sliding window over the 3D elevation data using **the processor**; and

          d. storing information corresponding to the identified railway track bed feature in the data storage apparatus.

Claim 8 of the '557 patent recites:

> 8. A method of detecting railroad tie distress using a system for assessing a railway track bed, the method comprising the steps of:
>
> a. inputting elevation data, longitudinal and transverse elevation map sample resolution data, rail base edge feature coordinates, detected tie bounding box data, and approximate tie surface plane data to **a processor** wherein significant elevations due to the rail heads for each rail have been removed from the elevation data;
>
> b. comparing ties in the elevation data with a tie surface plane model by calculating the difference between the tie surface elevation data and the tie surface plane model using **the processor**;
>
> c. identifying tie surface regions with elevations less than a tie surface plane minus a crack depth threshold as tie crack targets using **the processor**; and
>
> d. determining physical parameters of crack targets using **the processor**.

The Court has not construed, nor did Pavemetrics ever propose construing, any of the "processor" elements during claim construction. *See generally,* ECF 103. Thus, these elements should be given their plain and ordinary meaning in accordance with the intrinsic evidence. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005) (en banc).

///

///

### A. Pavemetrics Improperly Seeks a Belated Claim Construction Ruling

Pavemetrics does not contend that Dr. Morellas has contradicted the Court's claim constructions. Rather, through the guise of a *Daubert* motion, Pavemetrics seeks a claim construction ruling from the Court because it disagrees with Dr. Morellas' analysis of the "processor" elements. This is despite Pavemetrics having Tetra Tech's infringement contentions since June 10, 2021, several months before claim construction was briefed and decided. This belated request does not, however, entitle Pavemetrics to relief from the Court in the form of striking entire portions of Dr. Morellas' testimony. *Finalrod IP, LLC v. Endurance Lift Sols., Inc.*, 2021 WL 4743102, at *1 (E.D. Tex. Oct. 11, 2021) (Denying accused infringer's *Daubert* motion because the "Court's construction is sufficient to resolve the claim construction dispute, and any remaining dispute presents infringement issues for the finder of fact rather than any legal question for claim construction" and noting that the motion was a claim construction issue, not a *Daubert* issue); *see also Pers. Audio, LLC v. Google LLC*, 2022 U.S. Dist. LEXIS 45668, at *5 (D. Del. Jan. 24, 2022) ("Moreover, this is not a summary judgment motion. So on this record (i.e., where the back and forth regarding these infringement theories occurred in answering and reply briefs relating to a Daubert motion), it is not appropriate for the Court to do what Defendant wants it to do—to make a finding of non-infringement"). Indeed, "[a]t trial, parties may 'introduc[e] evidence as to the plain and ordinary meaning of terms not construed by the Court to one skilled in the art,' so long as the evidence does not amount to 'argu[ing] claim construction to the jury.'" *Carucel Invs., L.P. v. Novatel Wireless, Inc.*, 2017 WL 1215838, at *16–17 (S.D. Cal. Apr. 3, 2017) (quoting *Apple, Inc. v. Samsung Elecs. Co.*, 2014 WL 660857, at *3 (N.D. Cal. Feb. 20, 2014)). As explained below, Dr. Morellas' opinions are precisely that—evidence.

///

///

///

## B. Dr. Morellas' Opinions are Consistent with the Applicable Law and the Plain and Ordinary Meaning of the "Processor" Elements in Accordance with the Intrinsic Evidence

The plain and ordinary meaning of "at least one" and "a" is "one or more." *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999) ("[U]se of the phrase 'at least one' means that there could be only one *or* more than one."); *KCJ Corp. v. Kinetic Concepts, Inc.*, 223 F.3d 1351, 1356 (Fed. Cir. 2000) ("This court has repeatedly emphasized that an indefinite article 'a' or 'an' in patent parlance carries the meaning of 'one or more' in open-ended claims containing the transitional phrase 'comprising.'"). Thus, here, when the claims state "at least one processor" and "a processor," they mean "one or more processors." Pavemetrics does not dispute this. *See* Mot. 5 and 7.

Consistent with the plain and ordinary meaning of the "processor" elements, the specifications of the '293 and '557 patents specifically contemplate a single processor or multiple, separate processors in communication with a data storage device and a sensor and used for data processing. For example, the specifications describe "a processor 12 in communication with a light line projector 14 (e.g., a laser) and one or more 3D sensors 16 for detecting light from the light line projector 14 that is reflected from a railway track bed. The sensors 16 detect elevation and intensity data and the data is stored in a data storage apparatus 18 in communication with the processor 12." *See e.g.*, '293 patent, 8:66-9:5. The specifications then disclose that data "analysis can be performed by ***the processor 12 or a separate processor separate from the system 10*** by taking the data gathered by the system 10 and analyzing it." *See e.g.*, *id.*, 9:25-27 (emphasis added). Thus, in accordance with the specification, "at least one processor" and "a processor" encompass a single processor or multiple, separate processors, one of which is configured to run the recited algorithm steps.

Notably, neither the claims nor the specifications mandate that all of the one or more processors are configured to run the recited algorithm steps. Instead, in accordance with the intrinsic evidence, all that the claims require is that at least one of the one or

6

more processors is configured to perform the recited algorithm steps. *See, e.g.*, *Gen-Probe Inc. v. Becton Dickinson & Co.*, 2011 WL 7167137, at *4–5 (S.D. Cal. Nov. 22, 2011) (where the "parties essentially dispute whether 'the' means 'at least one' or 'all (substantially all),'" the Court construing "the" to mean "at least one" because the construction "results from carrying through the same general plurality from the first use of the term with 'a' to the later use of the term with 'the'"); *Copy Prot. LLC v. Netflix, Inc.*, 2015 WL 4639954, at *6 (D. Del. Aug. 5, 2015) ("[T]he Court concludes that there is no limitation in the claims that requires each device that forms a 'server' or 'server computer' to be capable of performing all of the recited server-side steps"); *Howmedica Osteonics Corp. v. Wright Med. Tech.*, Inc., 540 F.3d 1337, 1344 (Fed. Cir. 2008) ("The femoral component must include 'at least one condylar element,' which the district court correctly understood to mean 'one or more.' The claim then requires that 'the condylar element' meet the specified geometric limitations. . . . If the patentee had intended both condyles in a bicondylar prosthesis to meet these limitations, he could have drafted claim 15 to require that 'both condylar elements' do so. The more natural way of drafting the claim language to achieve that result would be to require 'each condylar element,' rather than 'the condylar element'"); *Morpho Detection, Inc. v. Smiths Detection Inc.*, 2012 WL 5194076, at *14 (E.D. Va. Oct. 19, 2012) (Rejecting accused infringer's argument that the claim term "at least one valve in communication with the dryers" should require "at least one valve in communication with both dryers" because "at least one" means "one or more" and the plain language of the claim term "permits the use of a single valve that communicates with both dryers (a preferred embodiment), [and] also permits using multiple valves to achieve the exact same result.").

Contrary to Pavemetrics' contentions, Dr. Morellas does not "present[] legally incorrect claim construction opinions." Mot. 1. Rather, Dr. Morellas' opinions concerning the "processor" elements are consistent with the term's plain and ordinary meaning in view of the specification. Specifically, Dr. Morellas opines that "the claims

7

do not require 'a single processor'" but instead "can include multiple processors, each of which may alone or collectively be in communication with the data storage apparatus and the at least one sensor, and be configured to identify railway track bed features." Laquer Ex. 1, ¶ 120. Dr. Morellas analyzes the '293 patent's specification and further opines that, "according to the '293 patent, and consistent with the language in claim 1, there can be a single or multiple processors that, individually or collectively, are in communication with the at least one sensor and data storage apparatus, and are configured to identify railway track bed features." *Id.* This testimony is entirely consistent with the plain and ordinary meaning of the "processor" elements and their corresponding descriptions in the specification.

Pavemetrics' citations to Dr. Morellas' deposition testimony are also unavailing. Regarding claim 8 of the '557 patent, Dr. Morellas confirms that the LRAIL's processing computer performs step 8(b) (*see* Laquer Ex. 2, Tr. 41:3-42:6), which is the same processing computer that receives input data. Laquer Ex. 1, ¶¶437-440. Dr. Morellas further testifies that these processors can be the same single processor or may be separate processors in the case where multiple processors are used. Laquer Ex. 2, Tr. 42:7-43:2. This is again consistent with the specification's multiple disclosed embodiments. *See e.g.*, '293 patent, 9:25-27. Regarding claim 1 of the '293 patent, Dr. Morellas confirms that a processor that processes data can be in communication with another processor that is responsible for retrieving data from a sensor. Laquer Ex. 2, Tr. 45:10-15. This is consistent with the claims, which require "at least one processor" in communication with at least one sensor (either directly or indirectly). *See e.g.*, '293 patent, 8:60-63, 29:34-35. This is also consistent with the specification, as discussed above. Dr. Morellas' testimony is thus consistent with the claims and specification which do not specifically require that the same processor or processors be in communication with a sensor and a data storage device and also be used for data processing. *See* Laquer Ex. 2, Tr. 49:5-50:24.

8

Pavemetrics criticizes Dr. Morellas for allegedly opining "that 'the at least one processor' in the processing algorithm limitation may be entirely distinct from the 'at least one processor' first introduced in the claim's data storage apparatus limitation." Mot. 1. Yet Pavemetrics' criticisms do not address any intrinsic evidence and otherwise ignore the teachings from the specifications that expressly describe a processor in communication with a data storage apparatus and "a separate processor" configured to run the algorithm steps. In failing to do so, Pavemetrics seeks to impermissibly exclude an embodiment disclosed in the specification. *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008) ("We normally do not interpret claim terms in a way that excludes embodiments disclosed in the specification"). Nor does Pavemetrics' reliance on a single case, *Tech. Consumer Prods., Inc. v. Lighting Sci. Grp. Corp.*, 955 F.3d 16 (Fed. Cir. 2020), on general principles of antecedent basis, support a construction that is completely inconsistent with the specification.

### C. Pavemetrics' Flawed Construction Fails to Advance its Noninfringement Contentions

Effectively, Pavemetrics seeks to construe "the at least one processor" and "the processor" to require that the same processor mentioned earlier in the claim must perform the recited functions. For example, in claim 1 of the '293 patent, Pavemetrics argues that the same processor needs to be (1) in communication with the at least one sensor, (2) in communication with the data storage apparatus, and (3) configured to run the recited algorithm. *See* Mot. 1, 5, 7. While this interpretation is incorrect and contradicts the plain and ordinary meaning of the claim terms and the teachings of the specifications, Pavemetrics argues this claim construction to advance its noninfringement contentions. But even under this faulty construction, Pavemetrics cannot avoid infringement.

As Pavemetrics previously conceded, real-time LRAIL systems include a processor in communication with both a sensor and a data storage apparatus and that is configured for data processing. Parker Ex. 126 at 920 (Pavemetrics' Response to Tetra

Tech's Integratory No. 9) (Pavemetrics admitting "except in circumstances in which Pavemetrics' LRAIL is configured for real-time data processing, Pavemetrics' LRAIL does not include 'at least one processor' that is in communication with both the data storage apparatus and the at least one sensor and is configured to identify a railway track bed feature"). As Dr. Morellas' explains, and Pavemetrics confirms, the LRAIL systems sold in this case are "turnkey" systems configured for real-time data processing. *See* Laquer Ex. 1, ¶116-121 ("I also understand that the LRAIL sales to CSX and AID 'were turnkey sales that basically included (1) LRAIL hardware, (2) LRAIL acquisition software, and (3) LRAIL processing software.'"); ECF 120-1 (Hébert Decl.), ¶¶4, 23. Moreover, Dr. Morellas' analysis of the "processor" elements takes into account the real-time data processing feature of the accused LRAIL systems. Laquer Ex. 1, ¶121 (Dr. Morellas explaining that, in real-time processing, "it is my understanding that those LRAILs would have been equipped with at least one processor configured to run an algorithm for processing three-dimensional surface elevation and intensity data gathered from the at least one sensor and saved in the data storage apparatus."). Dr. Morellas also confirmed that, during real-time processing, the data processor is in communication with the sensor and data storage apparatus via the data acquisition processor. *See* Laquer Ex. 1, ¶116-121; Laquer Ex. 2, Tr. 45:10-14. Thus, regardless of Pavemetrics' faulty claim construction argument, the LRAIL systems at issue in this case would still meet the "processor" elements of the asserted claims.

Pavemetrics ignores these significant facts and case law and asks the Court to strike entire portions of Dr. Morellas' testimony, many of which are completely unrelated to Pavemetrics' flawed claim construction argument. Pavemetrics' goal is clear. It wants to prevent Dr. Morellas from testifying altogether on the "processor" elements. But there is simply no basis to exclude any of Dr. Morellas' opinions, and Pavemetrics' request should be denied.

///

///

### D. Pavemetrics' Request is Vague and Overly Broad

Pavemetrics asks the Court to strike "all portions of Dr. Morellas' report addressing the claim limitations 'the processor' or 'the least one processor.'" Mot. 8. Even if the Court were to entertain Pavemetrics' request, Pavemetrics' vague and overbroad request encompasses over 100 paragraphs, all of which have some mention of "the processor" and "the at least one processor." But striking all of those paragraphs would mean striking testimony which is completely unrelated to Pavemetrics' claim construction argument. Thus, the Court should deny Pavemetrics' request for the additional reason that it has failed to set forth with particularity the requested relief. *See* Fed. R. Civ. P. 7(b)(1)(C).

## IV. DR. MORELLAS' TESTIMONY REGARDING PAVEMETRICS' KNOWLEDGE IS PROPER

Pavemetrics seeks to strike three paragraphs from Dr. Morellas' indirect infringement analysis. Mot. at 8 (requesting that "Paragraphs 617-619" of Dr. Morellas' infringement report be stricken). But, contrary to Pavemetrics' contentions, those paragraphs are not Dr. Morellas' opinions on Pavemetrics' knowledge or mental state. *See* Laquer Ex. 1, ¶¶617-619. Nor has Dr. Morellas held himself out as an expert in assessing the state of mind of individuals. The testimony found in paragraphs 617-619 of Dr. Morellas' infringement report addresses his understanding of Tetra Tech's allegations and his understanding of certain facts underlying those claims.

Specifically, paragraph 617 of Dr. Morellas is one sentence long, stating "I also understand that Tetra Tech has alleged that Pavemetrics, with knowledge of the asserted patents, actively and knowingly induced the infringing acts of its customers, including CSX and AID." Laquer Ex. 1, ¶617. Contrary to Pavemetrics' suggestion, nowhere in paragraph 617 does Dr. Morellas express an opinion. Rather, Dr. Morellas states his understanding of what Tetra Tech has alleged in this case to lay the foundation for his analysis and opinions that follow in later paragraphs. There is simply no basis to strike paragraph 617.

Like paragraph 617, Dr. Morellas also does not provide any opinions in paragraph 618. Rather, Dr. Morellas states that he "understand[s] that Pavemetrics had knowledge of the '293 patent and its infringement at least as early as January 5, 2021, when Tetra Tech, through its counsel, sent a letter to Pavemetrics' President and CEO, Richard Habel," and that he "understand[s] that Pavemetrics had knowledge of the '557 patent and its infringement at least as early as July 22, 2021, when Tetra Tech, through its counsel, sent a notice letter to Pavemetrics' counsel in this lawsuit." Laquer Ex. 1, ¶618. Again, Dr. Morellas states his understanding of facts about Pavemetrics' knowledge to lay foundation for his analysis and opinions that follow in later paragraphs.[1]

Finally, in paragraph 619, Dr. Morellas states "I also understand that Tetra Tech has alleged that Pavemetrics has had knowledge or was willfully blind of the asserted patents and their infringement prior to these notice letters." Laquer Ex. 1, ¶619. As with the statements in paragraphs 617 and 618, Dr. Morellas states his understanding of what Tetra Tech has alleged in this case. In the rest of paragraph 619, Dr. Morellas does not provide any express opinions as to whether Pavemetrics "had knowledge or was willfully blind." Instead, Dr. Morellas provides his understanding of Pavemetrics' activities related to Tetra Tech's business and patents based on several documents and emails produced in this case. *See id*. And while "it is improper for an expert to opine as to the subjective belief or intent of a corporate entity," "[e]xperts can opine, however, on the underlying facts that may show a party's state of mind." *GREE, Inc. v. Supercell Oy*, No. 2020 WL 4288350, at *1-2 (E.D. Tex. July 27, 2020) (quoting *Ecolab, inc. v. FMC Corp.*, 569 F.3d 1335, 1351 (Fed. Cir. 2009)). Therefore, there is nothing improper about Dr. Morellas' testimony in paragraphs 617-619, and the Court should deny this part of Pavemetrics' motion as well.

---

[1] Notably, here, Pavemetrics has not disputed these facts. ECF 149 (Pavemetrics' Motion for Summary Judgment of No Indirect Infringement) at 2-4. Thus, it is unclear why Pavemetrics moves to strike a paragraph that only states undisputed facts.

12

## V. CONCLUSION

For the foregoing reasons, Tetra Tech respectfully requests that the Court deny Pavemetrics' motion.

Dated: April 25, 2022

**CLARK HILL LLP**

By: _____
Donald L. Ridge

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Kelly S. Horn (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

*Attorneys for Defendant and Counterclaim Plaintiffs*
TETRA TECH, INC. AND TETRA TECH TAS INC.