Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
Kelly S. Horn (*pro hac vice*)
kelly.horn@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413
Telephone:  (202) 408-4000
Facsimile:   (202) 408-4400

Jency J. Mathew (*pro hac vice*)
jency.mathew@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, Virginia 20190-6023
Telephone:  (571) 203-2700
Facsimile:   (571) 203-2777

*Attorneys for Defendant and Counterclaim Plaintiffs*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**[REDACTED] TETRA TECH'S MEMORANDUM IN OPPOSITION TO PAVEMETRICS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 1 OF NO INDIRECT INFRINGEMENT BASED ON LACK OF INTENT TO INFRINGE**<br><br>**Honorable Mark C. Scarsi**<br>**Date: May 9, 2022**<br>**Time: 9:00 a.m.**<br>**Courtroom: 7C** |

# TABLE OF CONTENTS

I. INTRODUCTION ...................................................................................... 1

II. LEGAL STANDARDS ............................................................................. 2

    A. Summary Judgment Standard ........................................................ 2

    B. Indirect Infringement ...................................................................... 3

III. ARGUMENT .............................................................................................. 4

    A. Pavemetrics Ignores the Overwhelming Circumstantial Evidence That It Had Pre-Suit Knowledge of or, at a Minimum, Was Willfully Blind to the Asserted Patents ............................................... 4

        1. Pavemetrics Had Pre-Suit Knowledge of Each Asserted Patent .......................................................................................... 4

        2. Pavemetrics Had Pre-Suit Knowledge of the '557 Patent .......... 8

        3. Alternatively, the Circumstantial Evidence Indicates that Pavemetrics Was, at a Minimum, Willfully Blind to the Asserted Patents ........................................................................ 9

    B. Pavemetrics Did Not and Does Not Have a Good Faith Noninfringement Belief ....................................................................... 10

IV. CONCLUSION ........................................................................................ 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986)..........................................................................................2, 4

*Aqua Shield v. Inter Pool Cover Team*,
 774 F.3d 766 (Fed. Cir. 2014) ............................................................................11

*Asia Vital Components Co. v. Asetek Danmark A/S*,
 377 F. Supp. 3d 990 (N.D. Cal. 2019) ....................................................10, 12, 13

*Avalos v. Baca*,
 No. CV.05–07602–DDP SHX, 2006 WL 2294878 (C.D. Cal. Aug. 7,
 2006) ....................................................................................................................2

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
 No. 19-CV-12533-WGY, 2020 WL 2079422 (D. Mass. Apr. 30,
 2020) ....................................................................................................................7

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
 707 F.3d 1342 (Fed. Cir. 2013) ............................................................................3

*Celotex Corp. v. Catrett*,
 477 U.S. 317 (1986)..............................................................................................2

*Commil USA, LLC v. Cisco Sys., Inc.*,
 135 S. Ct. 1920 (2015).........................................................................................3

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
 559 F.3d 1308 (Fed. Cir. 2009) ............................................................................3

*Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*,
 No. 18-CV-00939-PJH, 2020 WL 5366319 (N.D. Cal. Sept. 8, 2020) ...............3

*EveryScape, Inc. v. Adobe Sys., Inc.*,
 No. CIV.A. 10-11597-RGS, 2014 WL 4261406 (D. Mass. Aug. 27,
 2014) ..................................................................................................................10

*Genband US LLC v. Metaswitch Networks Corp.*,
 No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 37946 (E.D. Tex.
 Jan. 6, 2016).......................................................................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
　563 U.S. 754 (2011) ................................................................................................ 3

*Innovention Toys, LLC v. MGA Entmn't, Inc.*,
　637 F.3d 1314 (Fed. Cir. 2011) ............................................................................. 3

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
　475 U.S. 574 (1986) ......................................................................................... 4, 10

*Motiva Patents, LLC v. Sony Corp.*,
　408 F. Supp. 3d 819 (E.D. Tex. 2019) ................................................................... 4

*Scott v. Harris*,
　550 U.S. 372 (2007) ............................................................................................... 2

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
　396 F. Supp. 3d 323 (S.D.N.Y. 2019) ................................................................... 3

*Simplivity Corp. v. Springpath, Inc.*,
　No. 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016) .................... 6

*SynQor, Inc. v. Artesyn Techs., Inc.*,
　No. 2:07-CV-497-TJW-CE, 2011 WL 3624957 (E.D. Tex. Aug. 17,
　2011), aff'd, 709 F.3d 1365 (Fed. Cir. 2013) ........................................................ 5

*Unwired Planet, LLC v. Apple Inc.*,
　829 F.3d 1353 (Fed. Cir. 2016) ..................................................................... 10, 12

*Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*,
　200 F.3d 795 (Fed. Cir. 1999) ............................................................................... 2

*Water Techs. Corp. v. Calco, Ltd.*,
　850 F.2d 660 (Fed. Cir. 1988) ......................................................................... 3, 13

**Statutes**

35 U.S.C. § 271(b) ....................................................................................................... 3

**Other Authorities**

Federal Rule of Civil Procedure 56(a) ........................................................................ 2

## I. INTRODUCTION

Pavemetrics seeks summary judgment on an indirect infringement issue riddled with disputes of material fact. In doing so, Pavemetrics largely ignores evidence in an attempt to give this Court a one-sided view of the record. By failing to address Tetra Tech's evidence of pre-suit knowledge of the asserted patents and post-suit knowledge of Pavemetrics' continued acts of infringement, Pavemetrics failed to meet its burden to show an absence of a genuine issue of material fact. The Court should accordingly deny Pavemetrics' first motion for partial summary judgment ("Mot.").

Tetra Tech has presented abundant evidence demonstrating that Pavemetrics had pre-suit knowledge of the asserted patents or, at the very minimum, was acting with willful blindness. This evidence includes: Pavemetrics' prior dealings with Tetra Tech before this lawsuit; that the parties compete in a highly competitive market and Pavemetrics regularly conducts competitive intelligence; that Pavemetrics was knowledgeable and closely followed prior patent infringement actions involving Tetra Tech; that Pavemetrics regularly tracks competitors' patent portfolios and makes itself aware of the patent landscape in an effort to predict incoming patent infringement allegations; that Pavemetrics was only able to develop and offer its infringing system after it saw Tetra Tech's covered system, evidencing awareness of the patented product and the accompanying patents; and that Pavemetrics is a sophisticated party with the know-how and resources to conduct patent research, was notified of the named inventor's patent portfolio, and was aware of Tetra Tech's patent listing on its website.

Tetra Tech also presented abundant evidence that Pavemetrics knew its acts constituted infringement. This evidence includes: Tetra Tech's preliminary and supplemental infringement contentions; that Pavemetrics tried to use a preliminary ruling as a bludgeon that it did not infringe when the ruling merely identified a question as to infringement; that Pavemetrics deleted important algorithms from its source code in an attempt to lessen the dispute with Tetra Tech; and that Pavemetrics sought to keep

1

its customers in the dark regarding Pavemetrics' potential liability and infringement of Tetra Tech's patents.

For these and the following reasons, Tetra Tech respectfully asks this Court to deny Pavemetrics' Motion.[1]

## II. LEGAL STANDARDS

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) requires "the movant show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The initial burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant bears this burden even "[w]hen the moving party does not have the burden of proof on the issue that is the subject of the summary judgement motion." *Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806–07 (Fed. Cir. 1999). "Because summary judgment is a 'drastic device' cutting off a party's right to present its case to a jury, the moving party bears a 'heavy burden' of demonstrating the absence of any triable issue of material fact." *See Avalos v. Baca*, No. CV.05–07602–DDP SHX, 2006 WL 2294878, at *1 (C.D. Cal. Aug. 7, 2006) (quoting *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir. 1999)).

---

[1] Additionally, Pavemetrics identifies six accused sales of its LRAIL system by the invoice date and argues that each was invoiced before Tetra Tech gave notice of its '557 patent. As explained further in Tetra Tech's Opposition to Pavemetrics' Motion for Partial Summary Judgment No. 3 of No Damages Under the '293 Patent for Three Sales Made Before January 5, 2021, Tetra Tech does not agree that these sales were completed before Tetra Tech's July 22, 2021 notice date for the '557 patent.

2

At issue here is infringement, which "is a question of fact." *Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1344 (Fed. Cir. 2013) (citing *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)). "[A] court may determine infringement on summary judgment 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" *Innovention Toys, LLC v. MGA Entmn't, Inc.*, 637 F.3d 1314, 1319 (Fed. Cir. 2011) (quoting *Bai*, 160 F.3d at 1353). Thus, at the summary judgment stage, the Court "must determine whether, after resolving reasonable factual inferences in favor of the patentee . . . that no reasonable jury could find infringement." *Crown Packaging*, 559 F.3d at 1312 (quoting *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000)).

### B.     Indirect Infringement

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). "[L]iability for inducing infringement attaches only if the defendant knew of the patent and that 'the induced acts constitute patent infringement.'" *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).

Direct evidence for each element is not required; "rather, circumstantial evidence may suffice." *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988); *see also Cyntec Co., Ltd. v. Chilisin Elecs. Corp.*, No. 18-CV-00939-PJH, 2020 WL 5366319, at *4 (N.D. Cal. Sept. 8, 2020). Indeed, an alleged infringer's knowledge of the patent or knowledge of the infringing acts may be inferred based on indicia of knowledge or, alternatively, under a theory of willful blindness. *Global–Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 768 (2011); *SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 334 (S.D.N.Y. 2019) (stating that evidence of knowledge to show willful infringement need not be "direct" so long as it is "evidence from which a jury could reasonably infer . . . knowledge.");

*Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 830 (E.D. Tex. 2019) (finding that the "requisite knowledge" may be "circumstantially inferred").

### III. ARGUMENT

#### A. Pavemetrics Ignores the Overwhelming Circumstantial Evidence That It Had Pre-Suit Knowledge of or, at a Minimum, Was Willfully Blind to the Asserted Patents

An overwhelming amount of evidence establishes (or at least provides ample reason for a jury to infer) Pavemetrics' knowledge of Tetra Tech, its technology, and the asserted patents well before this suit commenced. And if Pavemetrics did not know of the asserted patents, the jury would certainly be able to infer that Pavemetrics deliberately avoided knowledge of the asserted patents.[2] Pavemetrics attempts to ignore this evidence, but the totality of the evidence and circumstances cannot be cast aside. Instead, the summary judgment record as a whole must be viewed in the light most favorable to the non-moving party, here Tetra Tech. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And "[c]redibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The evidence raises genuine issues of material fact that preclude summary judgment of no pre-suit indirect infringement.

#### 1. Pavemetrics Had Pre-Suit Knowledge of Each Asserted Patent

The parties are not strangers. Tetra Tech and Pavemetrics have communicated and worked together well before this lawsuit. Parker Ex. 53; Parker Ex. 54. The parties' prior cooperation has involved railroad inspection equipment in the same field of endeavor as the asserted patents. *Id.* Pavemetrics was intimately familiar with Tetra

---

[2] Pavemetrics' motion only raised whether Pavemetrics had the requisite knowledge of, or willful blindness to, the asserted patent, and whether Pavemetrics held a good faith belief that its acts were noninfringing. Thus, for purposes of this opposition, Tetra Tech does not address any other aspects of Pavemetrics' indirect infringement.

4

1  Tech's technology and products and ███████████████
2  ██████████████████████████████████████. Parker Ex. 66.
3  Pavemetrics was also aware, as of at least December 2020, that ████
4  ████████████ and that there may be "█████████████████████
5  ████████████." Parker Ex. 84. Indeed, the evidence shows that ████
6  █████████████████████████████████████████████████
7  █████████████████████████. Parker Ex. 55; Parker Ex. 53; Parker
8  Ex. 66; Parker Ex. 76; Parker Ex. 77; Parker Ex. 78; Parker Ex. 79 (translated at Parker
9  Ex. 44, Laurent Tr., 172:6–15); Parker Ex. 68 (translated at Parker 42, Habel Tr.,
10 178:13–179:15); Parker Ex. 67.

11     What's more is that the parties compete in a highly competitive industry. *See*
12 *SynQor, Inc. v. Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2011 WL 3624957, at
13 *6 (E.D. Tex. Aug. 17, 2011), aff'd, 709 F.3d 1365 (Fed. Cir. 2013) (inferring
14 knowledge, in part, because patentee and accused infringer were both in a "highly
15 competitive industry in which each of the [defendants] closely followed [patentee's]
16 technology"). Companies in this industry, including Pavemetrics, conduct competitive
17 intelligence and frequently monitor their competitors. Parker Ex. 81 at 507. Indeed,
18 █████████████████████ ██ ████████████████████████████████.
19 *See* Parker Ex. 83. Its investigative nature was no different towards Tetra Tech.

20     As part of its covert behavior, Pavemetrics learned of and monitored prior patent
21 infringement lawsuits naming Tetra Tech, including a patent infringement suit brought
22 against Tetra Tech Canada in 2018 by Georgetown Rail Equipment Company
23 ("GREX"). *See* C.A. No. 6-18-cv-00377 (E.D. Tex. Jul. 27, 2018); Parker Ex. 66.
24 Pavemetrics argues that its active tracking of the patent dispute between GREX and
25 Tetra Tech was insufficient to show that it had knowledge of the asserted patents
26 because Tetra Tech's patents were not at issue in the lawsuit. Mot. at 11. But
27 Pavemetrics argument is misguided. The jury is entitled to consider the overwhelming
28 circumstantial evidence that Pavemetrics knew or willfully blinded itself to Tetra

1  Tech's asserted patents. And the undisputed fact that Pavemetrics was concerned with
2  competitors' patent portfolios and assertions of infringement is directly applicable to
3  this assessment.
4        Pavemetrics has stated time and again that it is respectful of competitors'
5  intellectual property and takes patent infringement allegations very seriously. Mot. at 7.
6  Indeed, Pavemetrics took concerted efforts to apprise itself of patent infringement
7  allegations in the industry. Parker Ex. 74; Parker Ex. 59. ▮▮▮▮▮▮▮▮▮▮
8  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
9  ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Parker Ex.
10 42, Habel Tr., 130:15–131:10; Parker Ex. 65 (translated at Parker Ex. 42, Habel Tr.,
11 165:1–3). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
12 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *See id.*;
13 *see generally* Parker Ex. 62; Parker Ex. 63; Parker Ex. 64; Parker Ex. 75; Parker Ex.
14 87.
15       Pavemetrics then became aware with Tetra Tech's patent portfolio but expects
16 this Court and the jury to believe that it did not conduct similar due diligence regarding
17 Tetra Tech's technology or innovations. Parker Ex. 42, Habel Tr., 130:19–131:10.
18 Regardless, Pavemetrics' pre-suit knowledge can be inferred from the competitive
19 nature of the industry and its history of conducting competitive intelligence alone.
20       Moreover, the chronology of Pavemetrics' product development strongly
21 suggests that Pavemetrics was aware of Tetra Tech's patented technology and its
22 innovations in the industry. Indeed, courts have recognized that "it is difficult to
23 envision . . . a sophisticated party, after allegedly investigating . . . a competitor's
24 technology, being oblivious to the patent reflecting that technology." *Simplivity Corp.*
25 *v. Springpath, Inc.*, No. 4:15-13345-TSH, 2016 WL 5388951, at *10 (D. Mass. July 15,
26 2016). Tetra Tech released its covered 3DTAS system in 2015. *See* Parker Ex. 88.
27 Pavemetrics subsequently developed and started offering for sale its infringing LRAIL
28 system ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ after gaining

6

knowledge of Tetra Tech's covered 3DTAS system. *See* Parker Ex. 52; Parker Ex. 89; Parker Ex. 90. A jury could reasonably infer from this chronology that Pavemetrics discovered and copied Tetra Tech's technology and that it could not have been oblivious to Tetra Tech's patents reflecting that same technology.

Indeed, Pavemetrics is a sophisticated party with the foresight to inform itself of relevant patents and patent applications in the field in which it competes. In prior engagements, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Parker Ex. 60 (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮). And Pavemetrics was well equipped with the necessary resources and experience to conduct patent searches. Parker Ex. 42, Habel Tr., 28:14–17, 180:5–11.

Today's digital age provides straightforward online patent research, and courts have acknowledged the simplicity of online research as a factor supporting pre-suit knowledge or willful blindness. *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 19-CV-12533-WGY, 2020 WL 2079422, at *5 (D. Mass. Apr. 30, 2020) (finding that "the ease of online patent research" was a factor evidencing defendant's pre-suit knowledge). Mr. Habel, Pavemetrics' President and CEO, touted familiarity and experience with conducting searches on the United States Patent and Trademark Office's website. Parker Ex. 42, Habel Tr., 180:5–11; Parker Ex. 42, Habel Tr., 28:14–17 (advertising his experience with patent searching). He was well furnished to conduct due diligence on Tetra Tech's patent portfolio. Further, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Parker Ex. 42, Habel Tr., 180:5–11. Thus, Pavemetrics was capable of and had a history of conducting patent research, and it had no logical reason to disregard Tetra Tech's asserted patents.

Pavemetrics was also aware that Dr. Darel Mesher, the named inventor on the asserted patents, was protecting relevant technology in the industry. Indeed, well before this litigation, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Parker Ex. 55. There is no dispute that Pavemetrics had pre-suit knowledge of Dr. Mesher. Indeed, Pavemetrics cooperated with Dr. Mesher years before this lawsuit on work relating to road inspections and rail inspections. *See generally* Parker Ex. 94; *see, e.g.*, Parker Ex. 95 (Pavemetrics inquiring what Tetra Tech has planned for the rail sector); Parker Ex. 91 (Pavemetrics asking Dr. Mesher if he is available to discuss the "IP in the rail inspection market"). Further, Pavemetrics does not dispute that it reviewed Dr. Mesher's patents in the rail inspection industry before this action. Parker Ex. 42, Habel Tr., 138:4–139:2; Parker Ex. 55. Pavemetrics merely contends that it did not have pre-suit knowledge of the specific asserted patents. But Tetra Tech provides abundant circumstantial evidence that supports the fact that Pavemetrics either did know about the asserted patents before this litigation or turned a blind eye to them in order to escape liability for its indirect infringement. Nevertheless, this material dispute is one for the fact finder to analyze and Pavemetrics' motion should be denied.

### 2. Pavemetrics Had Pre-Suit Knowledge of the '557 Patent

Pavemetrics also contends that despite receiving notice of the '293 patent and commencing this action in January 2021, it was unaware of the related '557 patent until it received the notice letter six months later. *See* Mot. at 4. The '557 patent is a continuation of the asserted '293 patent. It bears almost an identical title and names the same sole inventor. *See* ECF 75-5. It also shares the same specification as the '293 patent. *See id*. Thus, Pavemetrics could have, and should have, performed due diligence to discover Tetra Tech's related continuation application at least as of its filing of this lawsuit.

8

Nevertheless, Tetra Tech launched a patent section on its website in February 2021, listing Tetra Tech's patents, including the '293 and '557 patents, and alerting the industry that "Tetra Tech has multiple patents pending." Parker Ex. 92; Parker Ex. 93 at 640; Parker Ex. 57; Parker Ex. 58. Later that same month, Pavemetrics was notified of Tetra Tech's public patent listing, specifically identifying the '557 patent. Parker Ex. 56 at 201. Thus, Pavemetrics was informed of the '557 patent five months before Tetra Tech's notice letter on July 22, 2021. *Id.* And any testimony that Pavemetrics did not open or pay attention to Tetra Tech's patent listing after receiving the link to Tetra Tech's website (Parker Ex. 42, Habel Tr., 150:12–151:21) is nothing short of a purposeful act to willfully blind itself to Tetra Tech's innovations.

### 3. Alternatively, the Circumstantial Evidence Indicates that Pavemetrics Was, at a Minimum, Willfully Blind to the Asserted Patents

Even if the facts detailed above are not enough alone for a jury to infer that Pavemetrics had pre-suit knowledge of the asserted patents (they are), these same facts provide insurmountable evidence for a jury to conclude that Pavemetrics, at the very minimum, had the requisite willful blindness. Pavemetrics attempts to ignore this evidence and present a fiction that no evidence exists to suggest Pavemetrics was willfully blind to the existence of the asserted patents. But this is not so. Tetra Tech has shown that Pavemetrics was familiar with Tetra Tech, its technology, the inventor of the asserted patents, and the asserted patents themselves well before this suit commenced. It has shown that the parties compete in a highly competitive, litigious industry, that ███████ ██████████, and that Pavemetrics had monitored previous lawsuits involving Tetra Tech. Tetra Tech has also shown that Pavemetrics tracks competitors' patent portfolios and that Pavemetrics only developed and offered for sale its infringing system after Tetra Tech released its covered system. Tetra Tech has also presented evidence that Pavemetrics was well equipped with knowledge and resources to conduct patent searches and was not only notified of the

9

named inventor's patent portfolio, but was also notified of Tetra Tech's patent listing on its website.

The summary judgment record as a whole must be viewed in light most favorable to Tetra Tech. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The record here indisputably raises genuine issues of material fact that preclude Pavemetrics' requested summary judgment of no pre-suit indirect infringement.

### B. Pavemetrics Did Not and Does Not Have a Good Faith Noninfringement Belief

Contrary to Pavemetrics' assertions, the "mere fact that [Pavemetrics] has raised and maintained non-infringement defenses in this litigation does not suffice to entitle it to summary judgment, else indirect infringement claims would never be tried to a jury." *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 37946, at *13–*14 (E.D. Tex. Jan. 6, 2016); *see also Asia Vital Components Co. v. Asetek Danmark A/S*, 377 F. Supp. 3d 990, 1018 (N.D. Cal. 2019) (denying summary judgment of no indirect infringement because "even if the Court were to conclude that [declaratory plaintiff's] non-infringement defenses were 'strong,' that would at most 'create a factual question as to [declaratory plaintiff's] own subjective beliefs'"); *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353, 1363 (Fed. Cir. 2016) (same). Indeed, "[g]ood faith, . . . is, of course, a quintessential issue of fact and does nothing to advance [Pavemetrics'] position on summary judgment." *EveryScape, Inc. v. Adobe Sys., Inc.*, No. CIV.A. 10-11597-RGS, 2014 WL 4261406, at *2 (D. Mass. Aug. 27, 2014). There is ample evidence in the record upon which "a reasonable jury could conclude that [Pavemetrics] possessed the requisite 'knowledge of the patent[s] in suit and knowledge of patent infringement' (or possessed the requisite willful blindness)." *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 37946, at *14–*15 (E.D. Tex. Jan. 6, 2016).

There is no dispute that Pavemetrics knew of the '293 patent after notice on

January 5, 2021, and of the '557 patent after notice on July 22, 2021. Mot. at 7–8. It is further undisputed that Pavemetrics received Tetra Tech's infringement contentions, mapping Tetra Tech's infringement theories, on June 10, 2021. *See* ECF 110, ¶ 3. As the case progressed, Tetra Tech served supplemental contentions, further detailing its infringement theories. *See* ECF 110, ¶¶ 4–5; ECF 110-5; ECF 125-3. Drawing all reasonable inferences in Tetra Tech's favor, a reasonable jury could readily believe that Tetra Tech's infringement theories are correct, that they were communicated to Pavemetrics, and thus, Pavemetrics either knew its acts would induce or contribute to infringement or should have believed that there was a high probability that they would. This alone supports denial of Pavemetrics' motion.

Additionally, Pavemetrics presents no reliable evidence supporting a reasonable belief that its acts did not constitute infringement. Pavemetrics relies heavily on a preliminary injunction ruling from this Court. But this order cannot establish a reasonable belief or negate the high probability that Pavemetrics' acts are not infringing. *Aqua Shield v. Inter Pool Cover Team*, 774 F.3d 766, 774 (Fed. Cir. 2014) (rejecting defendant's argument that it had a reasonable noninfringement belief based on an early preliminary injunction denial because the preliminary injunction was denied at a time when plaintiff lacked sufficient knowledge of defendant's product and thus could not make the required showing of likelihood of success on the merits). Similar to the facts in *Aqua Shield*, the preliminary injunction here was adjudicated early in this case, before any claims were construed, and before any fact or expert discovery had taken place. Neither the Court nor Tetra Tech had the complete knowledge of Pavemetrics' system, including its source code. *Aqua Shield*, 774 F.3d at 774. Thus, Pavemetrics' reliance on the Court's preliminary injunction Order (ECF 51) is unfounded to support a reasonable non-infringement belief.

To make matters worse, Pavemetrics' current motion is another attempt to play fast and loose with the Court's preliminary injunction ruling. Shortly after the Court's preliminary injunction ruling, Mr. Habel, ▮

1
2   ██████████████. Parker Ex. 86 (certified translation) ("█████████
3   ████████████████████████████████████████████████████████████████
4   ███████████████████████████"). This was not the Court's ruling.
5   Instead, the Court made clear that, at this early juncture, before the completion of fact
6   or expert discovery, Pavemetrics had merely created a substantial question regarding
7   infringement. ECF 51 at 16. Indeed, a preliminary decision from the Court without the
8   discovery of any facts or review and analysis of relevant source code cannot possibly
9   mean that there is no chance that Tetra Tech will prevail on the merits. The fact that
10  Pavemetrics flaunted this ruling as an adjudication that Tetra Tech had no probability
11  of proving infringement continues to show Pavemetrics' reckless disregard for the
12  asserted patents or, at a minimum, its ignorance towards the high probability that
13  Pavemetrics' acts constitute indirect infringement. And, nonetheless, the strength of
14  Pavemetrics' noninfringement defense does nothing to entitle it to summary judgment
15  on this issue. *Unwired Planet*, 829 F.3d at 1363; *Asia Vital Components*, 377 F. Supp.
16  3d at 1018.

17          In reality, Pavemetrics lacked a good faith belief of noninfringement and knew
18  there was a high probability that its accused acts were infringing. Mere months after
19  Tetra Tech served its preliminary infringement contentions for the asserted patents,
20  ████████████████████████████████████████████████████████████████
21  ████████████████████████████████████████████. Parker Ex. 43, Hébert
22  Tr., 132:1–11, 134:12–22. Thus, Pavemetrics, well after the preliminary injunction
23  proceedings, continued to worry that its ongoing acts constituted infringement and
24  understood that there was a high likelihood that its system and code infringed Tetra
25  Tech's technology.

26          Moreover, ████████████████████████████████████████████████
27  ████████████████████████████████████████████████████████████████
28  ████████████████████████████. Parker Ex. 82 (stating that Pavemetrics "███

12

██████████████████████████████████████. Thus, contrary to Pavemetrics assertions, the evidence shows that Pavemetrics was aware of its infringing acts and recognized a high probability that it could be liable for indirect infringement.

Despite this understanding, Pavemetrics did not seek an opinion of counsel to support its alleged non-infringement beliefs. It instead attempts to support its motion with self-serving testimony of its CEO and President, which similarly falls flat. *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668–69 (Fed. Cir. 1988) (finding that defendant's subjective belief was not enough to avoid liability for inducing infringement because without an opinion of counsel, defendant had no way of knowing whether or not its acts would lead to infringement). In the absence of a legal opinion, Pavemetrics appears to rely on the partisan beliefs of Mr. Habel that Pavemetrics does not infringe. But Mr. Habel is not a legal expert and stated that he would not be able to perform an infringement analysis without a U.S. patent attorney. Mot. at 7; Parker Ex. 42, Habel Tr., 26:6–13; 115:7–116:3. Indeed, Mr. Habel testified that he is "████████████████████████████████████████████████████████████████████████████████████████." Parker Ex. 42, Habel Tr., 171:17–19. Despite acknowledging this, Pavemetrics continues to rely solely on the partisan opinions of Mr. Habel and fails to provide any reliable evidence of noninfringement. Parker Ex. 42, Habel Tr., 182:14–17 (confirming that Pavemetrics is not relying on an opinion of counsel for noninfringement). Thus, without an opinion of counsel or other reliable evidence of noninfringement, Pavemetrics has no way of knowing whether or not its acts throughout this litigation would lead to infringement.

In sum, Pavemetrics was aware of Tetra Tech's asserted patents and infringement contentions. Despite this, Pavemetrics played fast and loose with a preliminary ruling from this Court, made before the initiation of discovery, while it worked behind the scenes to delete controversial aspects of its source code and shield its customers from the ongoing litigation. Thus, at a minimum, there is a factual question as to Pavemetrics' knowledge regarding its infringing acts, and Pavemetrics' motion for summary

judgment should be denied. *Asia Vital Components Co.*, 377 F. Supp. 3d at 1018; *Water Techs. Corp. v. Calco, Ltd.*, 850 F.2d 660, 668–69 (Fed. Cir. 1988).

## IV. CONCLUSION

For the foregoing reasons, Tetra Tech respectfully requests that the Court deny Pavemetrics' motion.

Dated: April 25, 2022

**CLARK HILL LLP**

By: _____
Donald L. Ridge

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Kelly S. Horn (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

*Attorneys for Defendant and Counterclaim Plaintiffs*
TETRA TECH, INC. AND TETRA TECH TAS INC.