Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
Kelly S. Horn (*pro hac vice*)
kelly.horn@finnegan.com
**FINNEGAN, HENDERSON,
FARABOW, GARRETT &
DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413
Telephone:   (202) 408-4000
Facsimile:    (202) 408-4400

Jency J. Mathew (*pro hac vice*)
jency.mathew@finnegan.com
**FINNEGAN, HENDERSON,
FARABOW, GARRETT &
DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, Virginia 20190-6023
Telephone:   (571) 203-2700
Facsimile:    (571) 203-2777

*Attorneys for Defendant and
Counterclaim Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>——————————————<br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**[REDACTED] TETRA TECH'S MEMORANDUM IN OPPOSITION TO PAVEMETRICS' MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 2 OF (1) NO INFRINGEMENT OF CLAIM 14 OF THE '557 PATENT AND (2) NO DIRECT INFRINGEMENT OF METHOD CLAIMS BY SALES**<br><br>**Honorable Mark C. Scarsi<br>Date: May 9, 2022<br>Time: 9:00 a.m.<br>Courtroom: 7C** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................................1

II.     LEGAL STANDARDS ..................................................................................2

III.    PAVEMETRICS' UNTIMELY NEW FACTS SHOULD NOT BE
        CONSIDERED ..............................................................................................3

IV.     PAVEMETRICS FAILS TO ADDRESS TETRA TECH'S EVIDENCE
        SHOWING THE LRAIL INFRINGES CLAIM 14 OF THE '557
        PATENT..........................................................................................................7

V.      TETRA TECH'S EVIDENCE ESTABLISHES A FACTUAL BASIS
        FOR INFRINGEMENT OF CLAIM 14 OF THE '557 PATENT ................9

        A.     Tetra Tech's Evidence Supports a Finding That The LRAIL's
               Template Matching Algorithms Were Executed in the United
               States ..................................................................................................9

        B.     Tetra Tech's Evidence Supports a Finding That Execution of The
               LRAIL's Neural Network Algorithms Infringes Claim 14 ...............13

               1.     "Inputting . . . a 3D Feature Library" ......................................15

               2.     "Testing . . . In Sequence"........................................................18

               3.     "Eliminating Feature Template Matching Scores" .................21

VI.     TETRA TECH DOES NOT ARGUE PAVEMETRICS' SALES ALONE
        CONSTITUTE DIRECT INFRINGEMENT OF THE METHOD
        CLAIMS.......................................................................................................23

VII.    CONCLUSION ............................................................................................24

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
   761 F.3d 1329 (Fed. Cir. 2014) ...................................................................8

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) .....................................................................................2

*Avalos v. Baca*,
   No. 05–CV–07602–DDP, 2006 WL 2294878
   (C.D. Cal. Aug. 7, 2006) ..............................................................................2

*Bai v. L & L Wings, Inc.*,
   160 F.3d 1350 (Fed. Cir. 1998) ...................................................................3

*Black v. TIC Inv. Corp.*,
   900 F.2d 112 (7th Cir. 1990) .......................................................................7

*Brilliant Instruments, Inc. v. GuideTech, LLC*,
    707 F.3d 1342 (Fed. Cir. 2013) ...............................................................2, 3

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ..................................................................................2, 8

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
   559 F.3d 1308 (Fed. Cir. 2009) ...................................................................3

*Crown Packaging Technology, Inc. v. Ball Metal Beverage Container
   Corp.*,
   635 F.3d 1373 (Fed. Cir. 2011) ...................................................................1

*Elliott v. Google, Inc.*,
   860 F.3d 1151 (9th Cir. 2017) .....................................................................4

*Fonar Corp. v. General Elec. Co.*,
   107 F.3d 1543 (Fed. Cir. 1997) .................................................................14

*Gadda v. State Bar of Cal.*,

   511 F.3d 933 (9th Cir. 2007)......................................................................7

*GeoTag, Inc. v. Frontier Commc'ns Corp.*,

   No. 2:10-CV-00265-JRG, 2014 WL 129835 (E.D. Tex. Jan. 14, 2014) ...............14

*U.S. ex rel. Giles v. Sardie*,

   191 F. Supp. 2d 1117 (C.D. Cal. 2000) .......................................................7

*IMS Tech., Inc. v. Haas Automation, Inc.*,

   206 F.3d 1422 (Fed. Cir. 2000) ................................................................3

*Innovention Toys, LLC v. MGA Entmn't, Inc.*,

   637 F.3d 1314 (Fed. Cir. 2011) ................................................................3

*Lujan v. National Wildlife Federation*,

   497 U.S. 871 (1990).................................................................................7

*Munchkin, Inc. v. Luv N' Care, Ltd.*,

   2015 WL 774065 (C.D. Cal. 2015) ...........................................................3

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,

   182 F.3d 157 (2d Cir.1999).......................................................................3

*Nomadix, Inc. v. Hewlett-Packard Co.*,

   No. CV 09–08441 DDP, 2012 WL 682874 (C.D. Cal. Mar. 1, 2012) ................4, 6

*Novartis Corp. v. Ben Venue Lab'ys, Inc.*,

   271 F.3d 1043 (Fed. Cir. 2001) ................................................................7

*Provenz v. Miller*,

   102 F.3d 1478 (9th Cir. 1996)....................................................................7

*Scott v. Harris*,

   550 U.S. 372 (2007).................................................................................2

*Sitrick v. Dreamworks, LLC*,

   516 F.3d 993 (Fed. Cir. 2008)..................................................................15

*U.S. Water Services, Inc. v. Novozymes A/S*,

   843 F.3d 1345 (Fed. Cir. 2016)....................................................16, 17, 22

*Vaporstream, Inc. v. Snap Inc.*,
    No.: 2:17–cv–00220–MLH, 2018 WL 1116530
    (C.D. Cal. Feb. 27, 2018) ...............................................................*passim*
*Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*,
    200 F.3d 795 (Fed. Cir. 1999)....................................................2, 8, 19
*Wi-LAN USA, Inc. v. Ericsson, Inc.*,
    675 F. App'x 984 (Fed. Cir. 2017)....................................... 16, 17, 19, 22
*Yeti by Molly Ltd v. Deckers Outdoor Corp.*,
    259 F.3d 1101 (9th Cir. 2001)...................................................................6

**Rules**

Fed. R. Civ. P. 26................................................................................3, 6
Fed. R. Civ. P. 37................................................................................3, 6
Fed. R. Civ. P. 56...........................................................................2, 7, 8
Local Rule 7-3 .........................................................................................24

# I.   INTRODUCTION

Pavemetrics' second motion for partial summary judgment ("Mot.") seeks summary judgment on two issues: (1) non-infringement of claim 14 of the '557 patent, and (2) non-infringement of all method claims based on sales of its LRAIL. Mot. at 1. The second part of Pavemetrics' motion is not in dispute. Tetra Tech does not argue that Pavemetrics infringed any method claims based on sales of the LRAIL alone. Instead, Tetra Tech has shown, and will show at trial, that Pavemetrics has induced third parties to perform the asserted method claims and induced the importation of products made by the asserted method claims.

The first part of Pavemetrics' motion, however, must be denied. Pavemetrics seeks summary judgment on fact intensive infringement issues where experts simply disagree, and the record has conflicting evidence that must be left to the trier of fact. In its motion and accompanying declarations, Pavemetrics largely ignores Tetra Tech's evidence and supporting expert testimony. *See generally* Mot. at 10-14. Instead, the thrust of Pavemetrics' motion boils down to alleging that its expert is right while Tetra Tech's expert is wrong. But a "Battle of the Experts" cannot result in summary judgment. "Where there is a material dispute as to the credibility and weight that should be afforded to conflicting expert reports, summary judgment is usually inappropriate." *Crown Packaging Technology, Inc. v. Ball Metal Beverage Container Corp.*, 635 F.3d 1373, 1384 (Fed. Cir. 2011); *see also Vaporstream, Inc. v. Snap Inc.,* No.: 2:17–cv–00220–MLH, 2018 WL 1116530, *6 (C.D. Cal. Feb. 27, 2018) ("there is competing expert testimony as to that specific question of fact . . . Accordingly, summary judgment on this issue is inappropriate").

In an attempt to prop up its non-infringement positions, Pavemetrics submits new information through a self-serving declaration of one of its co-founders. Pavemetrics' witness alleges, for the very first time in this case, that template matching models were never provided to its customers. But this new information was never disclosed during fact discovery. It is thus untimely and should not be considered. Moreover, this new

1

information conflicts with other evidence in the record, particularly XML output files that show template matching algorithms were executed. Tetra Tech's expert cites and analyzes this evidence in his report, but Pavemetrics ignores it. Pavemetrics' new conflicting information about the LRAIL operation, even if considered by the Court, cannot salvage Pavemetrics' faulty summary judgment motion.

Tetra Tech's evidence and expert testimony establishes that Pavemetrics' LRAIL was used to execute algorithms that infringe claim 14 and must be credited at the summary judgment phase. *See Brilliant Instruments, Inc. v. GuideTech, LLC*, 707 F.3d 1342, 1344 (Fed. Cir. 2013) ("At the summary judgment stage, we credit all of the nonmovant's evidence and draw all justifiable inferences in its favor"). Tetra Tech submits herewith a declaration from Dr. Vassilios Morellas ("Morellas Decl.") who has analyzed Pavemetrics' source code, and other technical documents, and concluded that there is a factual basis for infringement of claim 14 of the '557 patent. *See* Declaration of Vassilios Morellas Ph.D. ("Morellas Decl."). Thus, even if Pavemetrics' untimely allegations are accepted, they do not preclude a finding of infringement, and Pavemetrics' motion should be denied.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) requires "the movant show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The initial burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant bears this burden even "[w]hen the moving party does not have the burden of proof on the issue that is the subject of the summary judgement motion." *Vivid Techs.*

2

*Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806–07 (Fed. Cir. 1999). Because summary judgment is a "drastic device" cutting off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any triable issue of material fact. *See Avalos v. Baca*, No. 05–CV–07602–DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006) (quoting *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir.1999)).

At issue here is infringement, which "is a question of fact." *Brilliant Instruments*, 707 F.3d at 1344 (citing *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co*., 559 F.3d 1308, 1312 (Fed. Cir. 2009); *Bai v. L & L Wings, Inc*., 160 F.3d 1350, 1353 (Fed. Cir. 1998)). "[A] court may determine infringement on summary judgment 'when no reasonable jury could find that every limitation recited in the properly construed claim either is or is not found in the accused device.'" *Innovention Toys, LLC v. MGA Entmn't, Inc.*, 637 F.3d 1314, 1319 (Fed. Cir. 2011) (quoting *Bai*, 160 F.3d at 1353). Thus, at the summary judgment stage, the Court "must determine whether, after resolving reasonable factual inferences in favor of the patentee . . . that no reasonable jury could find infringement." *Crown Packaging*, 559 F.3d at 1312 (quoting *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000)).

## III.   PAVEMETRICS' UNTIMELY NEW FACTS SHOULD NOT BE CONSIDERED

Relying heavily on a new declaration from of one of its co-founders, Jean-François Hébert (ECF 166-2) ("Hébert Decl."), Pavemetrics argues that no reasonable jury could find that the LRAIL's template matching algorithms have been used to infringe claim 14 of the '557 patent. Mot. at 9-13. However, Dr. Hébert's declaration introduces brand new alleged facts that were never disclosed during fact discovery, and which Tetra Tech had no opportunity to investigate. Pursuant to Fed. R. Civ. P. 37(c)(1), the Court should not consider these new alleged facts.

Fed. R. Civ. P. 37(c)(1) states that, "[i]f a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information or

witness to supply evidence on a motion, at a hearing, or at a trial." Following Rule 37(c)(1), this Court has excluded information that is disclosed too late in the proceedings leaving the prejudiced party with "no ability to investigate the disclosed documents by deposing witnesses or by other means of discovery." *See e.g.*, *Munchkin, Inc. v. Luv N' Care, Ltd.*, 2015 WL 774065, *2 (C.D. Cal. 2015). This Court has further explained that movants cannot rely on declarations with new information not produced in response to, or as part of, its discovery obligations. *See Nomadix, Inc. v. Hewlett-Packard Co.*, No. CV 09–08441 DDP, 2012 WL 682874, *3 (C.D. Cal. Mar. 1, 2012) (excluding a declaration when it included information not previously disclosed); *see also Elliott v. Google, Inc.*, 860 F.3d 1151, 1161 (9th Cir. 2017) (affirming the district court's exclusion of evidence where the evidence was not properly disclosed during fact discovery). Here, Dr. Hébert's declaration introduces new information about the LRAIL's operation that was never previously disclosed to Tetra Tech. Tetra Tech had no opportunity to investigate or take discovery on the new alleged facts in Dr. Hébert's declaration and Tetra Tech's expert had no opportunity to address them in its infringement report.

In his declaration, Dr. Hébert alleges for the first time, and months after the close of fact discovery, that Pavemetrics ███████████████████████████████ ████████████████████████████████████████████ ████████████ Hébert Decl. at ¶5. Dr. Hébert also alleges that ███████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██ And that ████████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████ ████████████ ██████ ████ ███████ ██████████ ████ ███ █████ ██████

This is the first time Dr. Hébert and Pavemetrics make these allegations—despite

having notice of Tetra Tech's infringement contentions relating to the '557 patent since August 6, 2021. Parker Ex. 96 at 658-675. In its August 2021 contentions, Tetra Tech specifically pointed to the "DetectFastener" function as performing certain steps of claim 14. Parker Ex. 96 at 661, 665, 666. Yet, Pavemetrics failed to disclose what appears to be central elements of its non-infringement position—that templates used in template matching were never provided to its customers, that the "DetectFastener" function requires at least one loaded fastener template, and that the output file shows that no templates were loaded. *See* Mot. at 9-10 (citing Hébert Decl., ¶¶5-9). This information was never disclosed in response to interrogatories, in expert reports, or during depositions. Further, this information is not disclosed in any documents produced in this case.

For example, in response to interrogatory no. 14, Pavemetrics only alleged that the LRAILs sold in the United States were "not configured to use a conventional 'template matching'" and that Tetra Tech misunderstood the "DetectFastener" algorithm. Parker Ex. 97 at 681, 683. These statements are not only vague, they are also incorrect. And regardless of whether template models were provided, the LRAILs are still "configured to" use conventional template matching algorithms because the template matching source code was provided to its customers, something that Pavemetrics does not dispute. Importantly here, Pavemetrics never argued that templates were never provided to its customers or that executing template matching algorithms required customer loaded fastener templates. *See id.* Throughout discovery, the closest statement that Pavemetrics made to its present allegation was during Dr. Hébert's deposition, where Dr. Hébert stated that Pavemetrics ███████████ ████████████████████████ Parker Ex. 43, Hébert Tr. at 125:18-23. But Dr. Hébert's testimony plainly contradicted the source code delivered to AID. As Dr. Morellas noted in his report, ██████████████████████████████████████████ ███████████████████████████████████ Parker Ex. 98 at ¶¶495.

Furthermore, neither Pavemetrics nor Dr. Hébert ever argued that

5

1  ████████████████████████████████████████████████████████

2  ███████████████████████████████████████████████. The first time

3  Pavemetrics' raised issues about ██████████████████████████ was in

4  Dr. David Frakes' rebuttal expert report. There, Dr. Frakes opined that ████████

5  ███████████████████████████████████████████████████████████

6  ██████████████████████ Parker Ex. 99 at ¶322. He also stated he

7  understood that ████████████████████████████████████. *Id.* at ¶323.

8  But Dr. Frakes never alleged that ████████████████████████████████

9  ████████████ Further, Pavemetrics never supported its non-infringement positions

10  based on the ██████████████████████████. The very first time this header

11  is raised to allegedly show no infringement is in Dr. Hébert's declaration supporting the

12  present summary judgment motion.

13  But it is too late for Pavemetrics to be disclosing new information to support its

14  non-infringement theories. Indeed, "[w]ith fact discovery now closed, [Tetra Tech]

15  reasonably relied on the facts set forth in the contentions and [Pavemetrics'] discovery

16  responses, and had no opportunity to investigate the validity of the . . . explanations set

17  forth in the declaration." *Nomadix,* 2012 WL 682874, at *3. Pavemetrics was obligated

18  to produce information about the LRAIL operation under Rule 26(a)(1)(A)(ii), which

19  requires the initial disclosure of any documents that a party may use to support its

20  claims. Pavemetrics was also obligated to produce these documents under Rule 26(e),

21  based on Tetra Tech's discovery requests and its continuing initial disclosure

22  obligations. Pavemetrics' failure to comply with these obligations renders the new

23  information inadmissible under Rule 37(c)(1). *See Yeti by Molly Ltd v. Deckers Outdoor

24  Corp.,* 259 F.3d 1101, 1106 (9th Cir. 2001) (describing Rule 37(c)(1) as a "'self-

25  executing,' 'automatic' sanction to 'provide[] a strong inducement for disclosure of

26  material' . . . . even when a litigant's entire cause of action or defense has been

27  precluded" (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)).

28  Accordingly, Pavemetrics cannot rely on the new information in paragraphs 5-9

6

of Dr. Hébert's declaration or the corresponding testimony in Dr. Frakes' declaration. And Pavemetrics' arguments based on the new information (Mot. at 9-10) should not be considered. Pavemetrics' motion does not otherwise argue that its template matching algorithms do not meet the limitations of claim 14 of the '557 patent, and thus, this part of Pavemetrics' motion should be denied.

## IV.   PAVEMETRICS FAILS TO ADDRESS TETRA TECH'S EVIDENCE SHOWING THE LRAIL INFRINGES CLAIM 14 OF THE '557 PATENT

Pavemetrics fails to meet its burden under Rule 56 because it does not address Tetra Tech's evidence showing that the LRAIL system infringes claim 14.[1] As Pavemetrics acknowledges, it "has the initial responsibility of identifying the legal basis of its motion, and of pointing to those portions of the record that it believes demonstrate the absence of a genuine issue of material fact." *Novartis Corp. v. Ben Venue Lab'ys, Inc.*, 271 F.3d 1043, 1046 (Fed. Cir. 2001). In its motion, however, Pavemetrics does not address Tetra Tech's evidence and supporting expert testimony that show infringement.

Tetra Tech and Dr. Morellas provided a detailed analysis of how the LRAIL practices each limitation of claim 14 when it operates algorithms utilizing either template matching or convolution neural networks. *See* Parker Ex. 85 at 521-560; Parker Ex. 98 at ¶¶491-608. For both sets of algorithms, Tetra Tech and Dr. Morellas pointed to source code, technical manuals, output files, reports, and user manuals that

---

[1] Any attempt by Pavemetrics to cure this defect in its Reply should likewise be rejected and stricken. *See Provenz v. Miller*, 102 F.3d 1478, 1483 (9th Cir. 1996) ("'[W]here new evidence is presented in a reply to a motion for summary judgment, the district court should not consider the new evidence without giving the [non-] movant an opportunity to respond.'") (Quoting *Black v. TIC Inv. Corp.*, 900 F.2d 112, 116 (7th Cir. 1990)). *See also Gadda v. State Bar of Cal.*, 511 F.3d 933, 937 n.2 (9th Cir. 2007) ("It is well established that issues cannot be raised for the first time in a reply brief."). " It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers." *U.S. ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000)(citing *Lujan v. National Wildlife Federation*, 497 U.S. 871, 894–95 (1990)).

illustrate how the LRAIL practices claim 14. *See id.*

Pavemetrics ignores Tetra Tech's evidence and Dr. Morellas' opinions, however. In fact, Pavemetrics does not even submit Dr. Morellas' infringement analysis on claim 14 to the Court. Instead, Pavemetrics summarily argues that Dr. Morellas' opinions are wrong and that Tetra Tech's evidence is insufficient. *See generally* Mot. at 9-13. But such conclusory allegations, divorced from the evidence of record, do not carry Pavemetrics' burden under Rule 56. Further, Pavemetrics does not present any evidence that would preclude a finding of infringement. Pavemetrics cannot assert absence of a genuine issue of material fact by ignoring record evidence and expert opinion. *See, e.g.*, *id.*; *Celotex*, 477 U.S. at 323 ("Of course, a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.") (quoting Fed. R. Civ. P. Rule 56); *Vivid Techs.*, 200 F.3d at 806 (Fed. Cir. 1999) ("the movant nonetheless bears the initial burden of coming forward with sufficient evidence to demonstrate that there is no material issue of fact that would preclude summary judgment").

Dr. Morellas' opinions and testimony, along with the evidence regarding operation of the LRAIL, at a minimum raise an issue of material fact. *Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 761 F.3d 1329, 1341 (Fed. Cir. 2014) (finding that "documentary evidence describing the structure and operation of the accused products creates genuine factual issues" regarding infringement, and that the District Court "failed to make all reasonable inferences supported by the record" in favor of the patentee). And, because Pavemetrics did not address Tetra Tech's evidence or Dr. Morellas opinions, Pavemetrics has not carried its initial burden to "demonstrate that there is no material issue of fact that would preclude summary judgment, and that it is entitled to judgment as a matter of law." *Vivid Techs., Inc.* at 806–07, (Fed. Cir. 1999). For this reason alone, Pavemetrics motion on non-infringement of claim 14 fails.

## V.     TETRA TECH'S EVIDENCE ESTABLISHES A FACTUAL BASIS FOR INFRINGEMENT OF CLAIM 14 OF THE '557 PATENT

Pavemetrics' LRAIL utilizes both template matching algorithms and neural network algorithms for image processing. Morellas Decl. ¶¶15, 18, 25-28; Parker Ex. 98 at ¶493. Tetra Tech has presented evidence and supporting expert testimony that show both sets of algorithms infringe claim 14 of the '557 patent. Parker Ex. 85 at 521-560; Parker Ex. 98 at ¶¶491-608. Tetra Tech has also presented evidence that shows that both sets of algorithms were executed in the United States during the infringement period. *See id.* And while part of Pavemetrics' motion relies on untimely new alleged facts, as discussed above, even if this new information is accepted, there are still genuine disputes of material fact related to those new alleged facts.

### A. Tetra Tech's Evidence Supports a Finding That The LRAIL's Template Matching Algorithms Were Executed in the United States

Pavemetrics argues that "[n]o evidence supports Tetra Tech's argument that LRAIL's template matching algorithm was ever executed in the United States." Mot. at 9. This is not correct. Tetra Tech and Dr. Morellas presented evidence that show the LRAIL's template matching algorithms were indeed executed in the United States. *See* Morellas Decl. ¶¶18-27; Parker Ex. 85 at 523-527; Parker Ex. 98 at ¶¶494-498.

For example, in his infringement report, Dr. Morellas explained how parameters in the output XML files, along with Pavemetrics' own user manuals, indicate the template matching algorithms found in Pavemetrics' LRAIL source code were executed on or around, at least, June of 2021. Morellas Decl. ¶¶19-22; Parker Ex. 98 at ¶498-500. Pavemetrics alleges Dr. Morellas' opinions are "unsupported." Mot at. 8. But Dr. Morellas' analyses find ample support in output files, deposition testimony, and Pavemetrics' technical documents. Morellas Decl. ¶¶19-25; Parker Ex. 98 at ¶¶498-506. Particularly, Dr. Morellas noted that neural networks were disabled in the output XML files, and thus, the only other alternative (template matching algorithms) was enabled by default. Morellas Decl. ¶¶18, 24-26, 32. And, based on his expert opinion,

9

Dr. Morellas concluded that "LRAIL operated using the 'DetectFastener' function." Morellas Decl. ¶29. Pavemetrics cannot genuinely argue that Dr. Morellas failed to "identify supporting evidence" (Mot. at 8) when Dr. Morellas cited source code, output files, technical publications, and testimony from Pavemetrics' own witnesses. Morellas Dec., ¶¶19-29; Parker Ex. 98 at ¶¶494-506.

In reality, Pavemetrics simply disagrees with Dr. Morellas' conclusion and is attempting to introduce new information concerning the actual execution of particular algorithms within its LRAIL source code. Specifically, relying only on new information provided in Dr. Hébert's declaration, Pavemetrics argues that the LRAIL's template matching models were never provided to its customers in the U.S. so the template matching algorithms in its source code were never executed. Mot. at 9 (citing Hébert Decl., ¶5). Based on Dr. Hébert's opinions, Pavemetrics also alleges that output files show "DetectFastener" did not run. Mot. at 9-10 (citing Hébert Decl. ¶6-9). But far from demonstrating there is no material issue of fact, Pavemetrics' new non-infringement theories conflict with other evidence in the record and cannot form the basis for summary judgment.

For example, based on new information in Dr. Hébert's declaration, Pavemetrics argues that "[b]ecause there were no fastener templates, 'DetectFastener' did not run." Mot. at 10 (citing Hébert Decl., ¶6-9). Dr. Morellas disagrees, however. He explains that the output files indicate the "DetectFastener" function did run. Based on the source code, manuals, and output files, Dr. Morellas concludes that the LRAIL operated using "DetectFastener" because, among other things, the output file shows the LRAIL enabled fastener detection while neural networks had been disabled. Morellas Decl. ¶¶26-29. Further, as Dr. Morellas explains, nothing in the record supports Dr. Hébert's new allegations that conditional statements were not met and the "DetectFastener" function did not run. Morellas Decl., ¶¶30-38.

As another example, Pavemetrics alleges that certain parameters in the output XML files indicate the template matching algorithms were never executed in the United

States. Mot. at 9. Pavemetrics argues that "the output file shows that no templates were loaded." *Id.* at 10. Dr. Morellas, however, reaches the opposite conclusion. Dr. Morellas analyzes the output files, guided with Pavemetrics' manual and source code, and concludes that the output file indicates template matching algorithms were executed. Morellas Decl., ¶¶18-29. Further, as Dr. Morellas explains, other than Dr. Hébert's self-serving declaration, Pavemetrics cites to nothing in the record that supports its interpretation of the output file. There is nothing in the record that supports Dr. Hébert's allegations that the absence of elements in the output file indicate the template matching algorithm did not run. Morellas Decl. ¶¶30-40.

For example, contrary to Pavemetrics' and Dr. Hébert's allegations, the absence of detected fasteners does not indicate the template matching algorithm did not run. Pavemetrics argues that because "the output files show zero (0) detected fasteners" the template matching algorithm did not run. Mot. at 10 (citing Hébert Decl., ¶¶8-9). But, as Dr. Morellas explains, the absence of detected fasteners in the output file do not indicate a lack of execution of the relevant algorithms. Morellas Decl. ¶¶39-40. It simply indicates that no fasteners were detected in a particular section of a railway track bed. *Id.*

As yet another example, Pavemetrics alleges that it provided "LRAIL using only its more advanced neural network" and that it "never sent any fastener template model to AID." Mot., 7, 10 (citing Hébert Decl. ¶¶5-9). But the output files indicate the LRAIL ran without using the neural network and that templates were indeed provided and stored in a "Default" location. Morellas Decl., ¶¶21-27, 29, 32 37-38. While Pavemetrics argues that its U.S. customers only used neural networks, the output files show that at least some of the LRAILs used in the U.S. did not use neural networks. *See* Morellas Decl., ¶¶18, 24, 37. Indeed, some of the output files specifically show the LRAIL was configured for fastener detection while neural networks were disabled. Morellas Decl., ¶¶23-24. The output files, thus, contradict Pavemetrics' statements that it provided customers "LRAIL using only its more advanced neural network" (Mot. at

11

7) because they show U.S. customers *did not* only use neural networks for fastener detection. Morellas Decl. ¶¶18, 24, 37. The output files also contradict Pavemetrics' statement that it "never sent any fastener template model" (Mot. at 10) because the output files show templates were available in a "Default" location. Morellas Decl. ¶¶21-27, 29, 32 37-38. The fact that the LRAIL called and used templates from a "Default" location suggests Pavemetrics provided template models for fasteners that had been stored in the "Default" location. Morellas Decl. ¶¶32, 37-40.

At a minimum, whether the "DetectFastener" function ran, whether the XML output files indicate the template matching algorithms were executed, and whether Pavemetrics provided templates to U.S. customers are issues of material fact for the fact finder after making determinations of credibility, reliability, and weight of the relevant evidence and testimonies from lay and expert witnesses.

Moreover, contrary to Pavemetrics' suggestions, Tetra Tech and its expert have provided sufficient evidence and testimony to support a finding that the template matching algorithms were executed. First, the output files themselves indicate the LRAIL executed the template matching algorithms and used fastener templates from a "Default" location. Morellas Decl. ¶¶18-27, 32, 37-38. As Dr. Morellas explains, the output files listed a path name that, according to the LRAIL's manual, identifies the path name of the templates used for fastener detection in a conventional mode (i.e., using template matching algorithms). Morellas Decl. ¶27. The output files thus indicate that the LRAIL used default templates in executing the template matching algorithms (i.e., with the conventional mode). Morellas Decl. ¶¶18-27, 32, 37-38.

Further, the output files also show that the LRAIL ran (1) with convolutional neural networks disabled, (2) having fastener detection enabled, and (3) without any errors being detected. Morellas Decl., ¶¶25-27. As Dr. Morellas explains, such a configuration in the output files indicates the LRAIL used template matching algorithms for fastener detection. Morellas Decl., ¶¶29, 32. When detecting fasteners, the LRAIL either performs neural networks or it defaults to conventional mode of

1   template matching. *Id.* Thus, when the LRAIL operates with fastener detection enabled,

2   at least one of the feature identification functions must be employed. *See id.* Otherwise,

3   as Dr. Morellas explains, if the LRAIL was not capable of completing the fastener

4   detection because neural networks were disabled and no templates were provided, the

5   output files would indicate execution errors. *Id.*, ¶26. But no errors are present in the

6   output files, indicating the LRAIL executed fastener detection functions using the

7   template matching algorithms in the United States. *Id.*

8        This analysis, based on the output files, the source code, and Pavemetrics'

9   manuals, shows that Tetra Tech's evidence sufficiently supports a finding that the

10   LRAIL's template matching algorithms were executed in the United States. And

11   Pavemetrics' new allegations, to the extent they can be properly introduced now, do not

12   preclude a finding of infringement. Therefore, Pavemetrics cannot show an absence of

13   a genuine issue of material fact on this issue.

14   **B. Tetra Tech's Evidence Supports a Finding That Execution of The LRAIL's**

15       **Neural Network Algorithms Infringes Claim 14**

16        Tetra Tech and its expert also presented ample evidence that that the LRAIL

17   practices claim 14 when executing neural network algorithms. Parker Ex. 85 at 544-560;

18   Parker Ex. 98 at ¶¶507-608. As mentioned above in Section IV, Pavemetrics' motion

19   does not address any of Tetra Tech's evidence and summarily dismisses Dr. Morellas'

20   opinions. *See* Mot. at 10-13. Specifically, Pavemetrics alleges that "Tetra Tech fails to

21   cite any LRAIL source code to support its allegation" and that it "relies on only user

22   manuals, external sources, and the conclusory opinion of its expert." *Id.* at 10. But that

23   is not the case. Tetra Tech and Dr. Morellas did in fact rely on Pavemetrics' source code

24   to support their infringement positions. *See* Parker Ex. 85 at 544-560; Parker Ex. 98 at

25   ¶¶507-608 (mapping source code to the limitations of claim 14). Furthermore, contrary

26   to Pavemetrics' suggestions, non-source code evidence cannot be summarily dismissed.

27   *See GeoTag, Inc. v. Frontier Commc'ns Corp.,* No. 2:10-CV-00265-JRG, 2014 WL

28   129835, at *3 (E.D. Tex. Jan. 14, 2014) (denying summary judgement of non-

infringement even though the patentee did not provide infringement contentions referencing to source code); *see also Fonar Corp. v. General Elec. Co.*, 107 F.3d 1543, 1549 (Fed. Cir. 1997) ("flow charts or source code listings are not a requirement for adequately disclosing the functions of software").

First, Pavemetrics cannot genuinely argue that "Tetra Tech fails to cite any LRAIL source code to support its allegation" (Mot. at 10) when Tetra Tech and Dr. Morellas clearly cites source code throughout their infringement mappings. *See* Morellas Decl., ¶¶43, 55, 59-64; Parker Ex. 85 at 544-560; Parker Ex. 98 at ¶¶507, 517, 524, 529-534, 563, 576, 600-605. For example, to support his opinions, Dr. Morellas points to multiple versions of the LRAIL source code delivered to CSX and AID. Morellas Decl., ¶43; Parker Ex. 98 at ¶495. Dr. Morellas also cites source code to show that the LRAIL performs the very limitations Pavemetrics now argues he failed to properly support. *See* Morellas Decl., ¶¶43, 55, 59-64; Parker Ex. 98 at ¶¶ 507, 517, 524, 529-534, 563, 576, 600-605 (mapping LRAIL source code to steps a, b, and c of claim 14).

Moreover, substantial evidence other than source code also supports Tetra Tech's infringement positions. Specifically, the LRAIL manuals, output files, and other technical documents cited by Tetra Tech corroborate Dr. Morellas' interpretation of the source code and sufficiently support a finding of infringement. Morellas Decl., ¶¶44-46, 56-58, 75-77; Parker Ex. 98 at ¶¶508-518. Pavemetrics summarily dismisses Tetra Tech's non-source code evidence, but source code need not be the sole basis of infringement and other evidence must be considered. *See GeoTag, Inc.* at *3; *see also Fonar Corp.* at 1549.

Pavemetrics cites *Sitrick v. Dreamworks, LLC*, 516 F.3d 993, 1001 (Fed. Cir. 2008) to argue Dr. Morellas' opinions are invalid for "rel[ying] on only user manuals, external sources, and the conclusory opinion of its expert." Mot. at 20. But *Sitrick* does not stand for such proposition. In *Sitrick*, the Federal Circuit agreed with the district court's conclusion that the expert testimony "did not raise a triable issue of fact because

it was: (1) 'conclusory' and 'unsupported by any actual information,' and (2) presented by a person who 'admitted to not being skilled in the art.'" *Sitrick,* 516 F.3d at 1001. None of that is the case here. Dr. Morellas' opinions find support in multiple sources of "actual information," including source code, output files, and other technical documentation. *See* Parker Ex. 98 at ¶¶507-608. Dr. Morellas is also—undoubtedly—an expert in the machine learning field, particularly with respect to the operation of neural networks. *Sitrick* does not cast any doubt on Dr. Morellas' analysis. Rather, *Sitrick* confirms Dr. Morellas' analysis is non-conclusory expert testimony that must be credited.

Moreover, for at least the reasons discussed in more detail below, Pavemetrics fails to meet its burden to demonstrate the absence of material issues of fact related to infringement of the elements in claim 14 that Pavemetrics identified.

### 1.   "Inputting . . . a 3D Feature Library"

Tetra Tech presented evidence and expert testimony that shows Pavemetrics' LRAIL receives as an input a 3D feature library when using convolutional neural networks. Morellas Decl. ¶¶42-46; Parker Ex. 85 at 534-545; Parker Ex. 98 at ¶¶519-567. Tetra Tech and Dr. Morellas pointed to source code and technical publications that show the LRAIL identifies railway track bed features from Fake3D and Mixed images. *See id.* And, as Dr. Morellas explains, in identifying the different railway track features, the LRAIL uses filters stored in the convolution neural network that one of ordinary skill would have understood to be a 3D feature library. Morellas Decl. ¶¶44-46.

Relying on the declarations of Dr. David Frakes  ("Frakes Decl.", ECF 166-5) and Dr. Hébert ("Frakes Decl.", ECF 166-2), Pavemetrics alleges that the LRAIL's neural network algorithms do not perform the step of "inputting . . . a 3D feature library." Mot. at 10-11 (citing Hébert Decl. ¶11; Frakes Decl. ¶¶44-48.). Specifically, Pavemetrics argues that the LRAIL's neural network algorithms do not input a 3D feature library because "LRAIL's neural network algorithms do not include any templates of railway track bed features, and, thus does not include a '3D feature

library.'" *Id.* at 11. But Pavemetrics' arguments simply amount to a disagreement of fact. They do not preclude Dr. Morellas' opinions, nor do they demonstrate that Dr. Morellas' opinions are insufficient. By merely challenging Dr. Morellas opinions, Pavemetrics does not negate a material issue of fact, it actually highlights one, because the disagreements between parties' experts "demonstrate that there is a dispute as to which interpretation is correct. Such ambiguity is best left for determination by a factfinder." *Wi-LAN USA, Inc. v. Ericsson, Inc*., 675 F. App'x 984, 991 (Fed. Cir. 2017); *see also U.S. Water Services, Inc. v. Novozymes A/S*, 843 F.3d 1345, 1351-52 (Fed. Cir. 2016) (finding that conflicting expert testimony "demonstrates that a genuine dispute as to a material fact remained"); *Vaporstream,* 2018 WL 1116530 at *6 ("there is competing expert testimony as to that specific question of fact. . . . Accordingly, summary judgment on this issue is inappropriate").

For example, Pavemetrics argues that "neural network algorithms do not include any templates of railway track bed features, and, thus does not include a '3D feature library.'" Mot. at 11 (citing Hébert Decl. ¶11; Frakes Decl. ¶¶44-48). Pavemetrics also alleges that a "convolution filter is a matrix of numbers used by a neural network to process and classify an image . . . . It does not represent railway track bed features." *Id.* But, as Dr. Morellas explains, the LRAIL is "inputting . . . a 3D feature library" when it inputs filters of the neural network that are used to identify railway track bed features from the Fake3D and Mixed Images. Morellas Decl. ¶¶42-46, 48, 51. At a minimum, the conflicting expert testimony of whether the filters represent a "3D feature library" highlight material issues that should be decided by the fact trier.

Pavemetrics also relies on Dr. Frakes' opinion that the trained filters of the neural networks would not be "3D" as required by claim 14. Mot. at 11. Based on Dr. Frakes' declaration, Pavemetrics alleges that "[f]ilters do not resemble any recognizable thing" and that "convolutional neural networks are two-dimensional and thus cannot constitute a '*3D* feature library.'" Mot. at 11 (emphasis original). But, as Dr. Morellas explains, the claims do not require a library of three-dimensional structures or the filters to

16

resemble recognizable things. Dr. Morellas opines that one of ordinary skill would understand a library of 2D data structures storing values to represent a 3D feature library because each value represents a new dimension. Morellas Decl., ¶¶44, 48, 50. The claim does not require  three-dimensional structures or ones that resemble recognizable things; it only calls for a "3D feature library." *Id.*

Further, Dr. Morellas disagrees with Dr. Frakes' opinions about the representation of the filters. Contradicting Dr. Frakes, Dr. Morellas opines that the neural network filters do resemble recognizable things. Morellas Decl., ¶49. As Dr. Morellas explains, while low-level stage filters may not resemble the target features, higher-level stage filters do. *Id.* Further, Dr. Morellas also disagrees with Dr. Frakes' interpretation of filters as only representing 2D features. As Dr. Morellas explains, even if the filters are within a two-dimensional structure, they represent three-dimensional features and create a 3D feature library. Morellas Decl., ¶50. Dr. Morellas further opines that, because the LRAIL's neural networks were trained using 3D data in its training images, its filters learn and identify 3D features which are stored in the convolutional neural network and therefore represent a 3D feature library. *Id.* ¶51. Again, these expert disputes do not demonstrate an absence of trainable facts; instead, they show summary judgment is inappropriate. *See Wi-LAN USA,* 675 F. App'x at 991; *U.S. Water Services,* 843 F.3d at 1351; *Vaporstream,* 2018 WL 1116530 at *6.

In fact, during Dr. Fakes' deposition, he agreed that a two-dimensional data structure, such as an image, can represent three-dimensional features, such as elevation data. Dr. Frakes explained that "elevation data is just -- it's one data point. It could be in a two-dimensional matrix. It could be in a three-dimensional array. It could be represented in practically any data structure, just like intensity data." Parker Ex. 51, Frakes Tr. at 23:21-24:4. Dr. Frakes also agreed that a 2D structure could represent a 3D feature because "[y]ou can populate a two-dimensional image with elevation data," further stating that "[w]e refer to that specifically as a range image." *Id.* at 24:7-9. This testimony from Dr. Frakes plainly contradicts the opinions in his declaration in support

of the present motion, and thus, further highlight that there is a genuine dispute of material fact.

Accordingly, Pavemetrics has failed to demonstrate why a reasonable jury could not find that the LRAIL performed the step of "inputting . . . a 3D feature library" in view of Tetra Tech's evidence and Dr. Morellas' analysis. Thus, Pavemetrics cannot show an absence of a genuine issue of material fact on this issue.

### 2. "Testing . . . In Sequence"

Tetra Tech and Dr. Morellas also presented evidence showing Pavemetrics' LRAIL tests each feature in the 3D feature library in a sequence when utilizing convolutional neural networks. Morellas Decl., ¶¶52-57; Parker Ex. 85 at 546-551; Parker Ex. 98 at ¶¶574-579. For example, relying on the source code, user manuals, and other technical publications describing the operation of convolutional neural networks, Dr. Morellas explained that Pavemetrics' convolutional neural network tests features in a sequence. Morellas Decl. ¶¶53-57; Parker Ex. 98 at ¶¶574-579. Dr. Morellas also pointed out how the source code shows that the LRAIL applies different types of convolutional neural networks in a sequence, following an order of ████████ ████████████████████████████████████████████████████████████ *Id*. Dr. Morellas also explains that Pavemetrics' technical publications show that the LRAIL's convolutional neural networks identify components by testing features in a sequence and at different stages. *Id.*

Ignoring all this evidence and analysis, Pavemetrics argues that "Tetra Tech fails to cite any LRAIL source code to support its allegation," and that "[n]o evidence indicates that LRAIL's neural network algorithms perform this claimed step." Mot. at 10, 12. Pavemetrics then summarily concludes that the LRAIL's neural network algorithms do not perform the step of "testing each of a plurality of railway track bed features in [a] 3D feature library against feature targets in the elevation data in sequence." *Id.* at 12. As noted in Section IV, however, Pavemetrics cannot meet its burden of showing an absence of material fact by ignoring the evidence Tetra Tech has

presented. *See Vivid Techs* 200 F.3d at 812 (denying summary judgment when the movant "did not meet its initial burden of coming forward with evidence to establish the factual premise"); *see also Wi-LAN USA,* 675 F. App'x at 995 (reversing summary judgement when conflicting evidence in the record had been ignored). And Pavemetrics has not presented any evidence that would preclude a reasonable jury from finding the LRAIL's convolution neural network "test[s] . . . in sequence."

For example, a reasonable jury could find the LRAIL tests in sequence because nothing in the record limits the LRAIL to execute functions through multithreads, as Pavemetrics suggests. Morellas Decl. ¶¶58-63. Relying on Dr. Hébert, Pavemetrics alleges that each neural network is executed in separate threads that run "simultaneously (in parallel)" and thus do not run "in sequence." Mot. at 12 (citing Hébert Decl., ¶13; Frakes Decl. ¶51). The source code, however, shows that multithreads are only executed if they are enabled through an activation parameter. Morellas Decl. ¶¶59. And nothing in the record shows that this variable would always be enabled during the execution of the accused methods. Morellas Decl., ¶60. For example, the output files do not show that this parameter has been enabled. *Id.* And, as Dr. Morellas explains, the source code shows that the LRAIL defaults to operate without multithreads because the multithread operations are only executed if non-multithread operations are disabled. Morellas Decl., ¶¶61-63. Thus, a reasonable jury could find at least some executions of the LRAILs network operate without multithreads being enabled.

Moreover, even if multithreads had been enabled, a material issue of fact exists as to whether the LRAIL would still apply each neural network in sequence. As Dr. Morellas explains, the source code shows that—even during multithread operation— the LRAIL applies each neural network model in a sequence. Morellas Decl. ¶64. As shown in the source code, the LRAIL follows a sequence of neural network models

████████████████████████████████████████████████████████

████████████████████  *Id.* Pavemetrics alleges that "different types of a particular feature are detected in parallel" (Mot. at 12), but the source code itself shows

that the LRAIL's neural networks are applied in a sequential order. Morellas Decl. ¶¶64-65

Further, even if the use of multiple threads altered the order of execution described in the source code, the multiple threads would be expected to complete their respective analysis one after the other, meaning they would still complete their testing of 3D features in sequence. Morellas Decl. ¶¶66-67. Pavemetrics argues that "[w]hen an image is inputted into the neural network for fastener detection, the network will look for each of these features in the image data simultaneously." Mot. at 12. As Dr. Morellas explains, however, Dr. Hébert and Dr. Frakes confuse parallel with multithread execution. Morellas Decl. ¶65. According to Dr. Morellas, in a multithread execution, data to be processed gets loaded in a single memory space and the processor sequentially access the memory space as resources become available for computation. *Id,* ¶66. In multithread operations, processors do not execute operations all at once because they cannot parallelize all tasks at the same time. *Id.* When a processor performs concurrent operations, it is executing them in a sequence, not "simultaneously" or "at once," as Pavemetrics suggest. *Id.* ¶¶66-67.

Finally, Pavemetrics argues that the LRAIL's convolutional neural networks use a parallel convolution algorithm. Relying on Dr. Hébert and Dr. Frakes, Pavemetrics argues that "within LRAIL's CNN model, filters are applied over each channel of the image data in parallel." Mot. at 12 (citing Hébert Decl. ¶15; Frakes Decl. ¶53). There is nothing in the record, however, that demonstrates that the LRAIL employs a parallel operation. Morellas Decl., ¶¶68-69. None of the source code, technical publications, or output files demonstrate that the LRAIL performs operations the algorithm Dr. Frakes and Dr. Hébert cite. *Id.* And an image showing three independent channels does not require parallel processing, let alone demonstrate such implementation. Morellas Decl., ¶70.

Further, as Dr. Morellas explains, even assuming the LRAIL uses the algorithm identified in Dr. Frakes and Dr. Hébert's declarations, the LRAIL would still be

performing the sequential testing recited in the patent claim. Specifically, as Dr. Morellas explains, the convolution algorithm that Dr. Frakes and Dr. Hébert cite is performing serial testing, both within each one of the channels and also when re-merging the channels. Morellas Decl., ¶71. Moreover, the operation within the CNN model does not preclude other testing in sequence, like the execution of different neural models in a sequence, as shown in the source code. *Id.* ¶72.

In view of Dr. Morellas' opinions on multithread operations, the different sections of the source code, and the implementation of the LRAIL's convolutional neural network, a reasonable jury could find that the LRAIL performs tests in a sequence and meets the limitation of "testing . . . in sequence." Accordingly, Pavemetrics cannot show an absence of a genuine issue of material fact on this issue.

### 3. "Eliminating Feature Template Matching Scores"

Tetra Tech has also presented evidence and expert testimony to show that Pavemetrics' LRAIL eliminates certain feature matching scores when it applies a minimum correlation threshold. Morellas Decl., ¶¶74-76; Parker Ex. 85 at 550-552; Parker Ex. 98 at ¶¶586-589. Based on Pavemetrics' technical manuals and other technical publications, Dr. Morellas opines that the LRAIL computes feature template matching scores at the end of each neural network and eliminates feature targets that are less than a 3D feature correlation threshold. Morellas Decl. ¶76; Parker Ex. 98 at ¶589.

In its motion, Pavemetrics alleges that the LRAIL's neural network algorithms do not perform the step of "eliminating feature template matching scores for feature targets which are less than a 3D feature correlation threshold." Mot. at 13. Pavemetrics does not address Tetra Tech's evidence, however. *See id*. Instead, Pavemetrics simply argues that the LRAIL does not compute template matching scores and that it does not use a threshold because it uses an activation function called "Softmax." Mot. at 13 (citing Frakes Decl., ¶58). But Pavemetrics' arguments do not demonstrate that Tetra

Tech's evidence is insufficient or preclude a finding that the LRAIL eliminates feature template matching scores.

For example, relying on Dr. Hébert and Dr. Frakes, Pavemetrics argues that "the neural network does not perform a template matching operation and thus does not compute template matching scores." Mot. at 13 (citing Hébert Decl. ¶16; Frakes Decl. ¶55). The opinion of Dr. Hébert and Dr. Frakes, however, does not preclude Dr. Morellas' interpretations that the LRAIL does compute template matching scores. Based on Pavemetrics' manuals, technical publications, and his understanding of the neural networks, Dr. Morellas concluded that "the result of the convolution corresponds to a template matching score." Morellas Decl. ¶74-78. Pavemetrics can challenge Dr. Morellas' interpretation of Pavemetrics' manuals, technical publications, and the operation of the neural networks, but expert disagreements as to how the convolutional neural network operates do not establish the absence of a genuine issue of material fact. Such disagreement, instead, demonstrates that a triable fact remains. *See Wi-LAN USA,* 675 F. App'x at 991; *U.S. Water Services,* 843 F.3d at 1351; *Vaporstream* 2018 WL 1116530 at *6.

Further, Pavemetrics alleges that "LRAIL's neural networks do not compare that result with a '3D feature correlation threshold'" because they use Softmax activation function. Mot. at 13 (citing Hébert ¶16; Frakes ¶58). As Dr. Morellas explains, however, nothing in the record demonstrates Pavemetrics' LRAIL executes Softmax as the final layer, or how it implements Softmax. Morellas Decl., ¶80. And, even if the LRAIL uses a Softmax function as the final layer in its neural network, the LRAIL is still "eliminating feature template matching scores," according to Dr. Morellas. Morellas Decl. ¶¶81-86. As Dr. Morellas explains, the Softmax function is a "winner-take-all" operator that generates a probability distribution from match results and eliminates all but the match with the highest probability. Morellas Decl. ¶82. When applying the Softmax activation layer, the computer processor assigns probabilities to the different convolution results. Morellas Decl., ¶83. Softmax would then identify a result with the

highest probability in the distribution and eliminate other results. *Id*. Therefore, when LRAIL applies Softmax in its neural network, it is "eliminating feature template matching scores," and contrary to Dr. Frakes' assertions, the Softmax function can be characterized as a threshold. Morellas Decl. ¶¶82-84. Indeed, as Dr. Morellas notes, testimony of one of Pavemetrics' own software developers corroborates this understanding and confirms the LRAIL is "eliminating feature template matching scores," as recited in claim 14. *Id.* ¶83-87.

At a minimum, the conflicting expert testimony shows that there are genuine disputes as to whether the LRAIL generates template matching scores, whether the Softmax is the last layer in the LRAIL neural network, and, if so, whether the Softmax function eliminates feature template matching scores. Accordingly, Pavemetrics has failed to show the absence of a genuine issue of material fact regarding whether the LRAIL performed the step of "eliminating feature template matching scores."

For at least the reasons above, Pavemetrics has failed to show the absence of a genuine issue of material fact regarding the LRAIL's infringement of claim 14, both under template matching and neural network operation. Pavemetrics has not demonstrated that it deserves summary judgment as a matter of law. Therefore, Pavemetrics' motion of non-infringement of claim 14 of the 557 patent should be denied.

## VI.   TETRA TECH DOES NOT ARGUE PAVEMETRICS' SALES ALONE CONSTITUTE DIRECT INFRINGEMENT OF THE METHOD CLAIMS

Pavemetrics seeks summary judgment "of no direct infringement based on sales of the method." Mot. at 14. As a preliminary matter, Pavemetrics did not meet and confer regarding this issue, and thus, it should not be considered by the Court pursuant to Local Rule 7-3. Further, had Pavemetrics complied with the Local Rules, Pavemetrics would have realized that this section of its motion is moot because Tetra Tech does not argue direct infringement of any method claims based on sales of the LRAIL systems alone. Instead, Tetra Tech has shown, and will show at trial, that Pavemetrics has

induced third parties to perform the asserted method claims and induced the importation of products made by the asserted method claims. Therefore, Pavemetrics' request for "summary judgment of no direct infringement based on sales of the method claims," is moot.

## VII.    CONCLUSION

For the foregoing reasons, Tetra Tech respectfully requests that the Court deny Pavemetrics' motion.

Dated: April 25, 2022

**CLARK HILL LLP**

By:

_____
Donald L. Ridge

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Kelly S. Horn (*pro hac vice*)
Victor M. Palace (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

*Attorneys for Defendant and Counterclaim Plaintiffs*
*TETRA TECH, INC. AND TETRA TECH TAS INC.*

24