1   Donald Ridge, Esq. (SBN: 132171)
2   **CLARK HILL LLP**
    555 South Flower Street, 24th Floor
3   Los Angeles, CA 90071
    Telephone: (213) 891-9100
4   Facsimile: (213) 488-1178
    DRidge@clarkhill.com
5

6
7   Aaron L. Parker (*pro hac vice*)
    aaron.parker@finnegan.com          Jency J. Mathew (*pro hac vice*)
8   Daniel G. Chung (*pro hac vice*)    jency.mathew@finnegan.com
    daniel.chung@finnegan.com          **FINNEGAN, HENDERSON,**
9   Nicholas A. Cerulli (*pro hac vice*) **FARABOW, GARRETT &**
    nicholas.cerulli@finnegan.com      **DUNNER, LLP**
10  Kelly S. Horn (*pro hac vice*)      1875 Explorer Street, Suite 800
    kelly.horn@finnegan.com            Reston, Virginia 20190-6023
11                                      Telephone:  (571) 203-2700
    **FINNEGAN, HENDERSON,**           Facsimile:   (571) 203-2777
12  **FARABOW, GARRETT &**
    **DUNNER, LLP**
13  901 New York Avenue NW              *Attorneys for Defendant and*
14  Washington, D.C. 20001-4413         *Counterclaim Plaintiffs*
    Telephone:  (202) 408-4000
15  Facsimile:   (202) 408-4400
16

17              **UNITED STATES DISTRICT COURT**

18              **CENTRAL DISTRICT OF CALIFORNIA**

19  PAVEMETRICS SYSTEMS, INC.        CASE NO. 2:21-cv-1289 MCS-MMA

20              Plaintiff,           **[REDACTED] TETRA TECH'S**
21                                   **MEMORANDUM IN OPPOSITION**
                                     **TO PAVEMETRICS' MOTION**
22      v.                           **FOR PARTIAL SUMMARY**
                                     **JUDGMENT NO. 4**
23  TETRA TECH, INC.

24              Defendant.           **Honorable Mark C. Scarsi**
25                                   **Date: May 9, 2022**
                                     **Time: 9:00 a.m.**
26  ─────────────────────────────   **Courtroom: 7C**
27  AND RELATED COUNTERCLAIMS.

28

# TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................... 1

II.  LEGAL STANDARDS .......................................................................... 2

III.  ARGUMENT .......................................................................................... 3

   A.  Ample Evidence Demonstrates Direct Infringement by CSX .............. 3

      1.  Direct Infringement under § 271(a) by CSX ............................. 4

      2.  Direct Infringement under § 271(g) by CSX ............................. 7

         a.  Pavemetrics Ignores the Substantial Circumstantial Evidence That Shows CSX Imported Output Files Produced by the Claimed Methods ................................. 7

         b.  The Output Files Constitute Products Made By a Patented Process Under § 271(g) ................................... 10

   B.  Pavemetrics Ignores Substantial Evidence in Its Attempt to Invoke an Affirmative Defense Under 28 U.S.C. § 1498 .............................. 12

IV.  CONCLUSION ......................................................................................... 15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*AM Int'l, Inc. v. United States*,
    227 Ct. Cl. 632 (1981) ......................................................................13

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)........................................................................2, 3

*Arlton v. Aerovironment, Inc.*,
    No. 2:20-cv-07438-AB-GJS, 2021 WL 1589302 (C.D. Cal. Apr. 22, 2021) .........12

*Avalos v. Baca*,
    No. 05–CV–07602–DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006).................3

*Bai v. L & L Wings, Inc.*,
    160 F.3d 1350 (Fed. Cir. 1998) .........................................................3

*Bayer AG v. Housey Pharms., Inc.*,
    340 F.3d 1367 (Fed. Cir. 2003) ........................................................10

*Brilliant Instruments v. GuideTech, LLC*,
    707 F.3d 1342 (Fed. Cir. 2013) .........................................................3

*Bristol-Myers Co. v. Erbamont Inc.*,
    723 F. Supp. 1038 (D. Del. 1989) ......................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)........................................................................3

*CNET Networks, Inc. v. Etilize, Inc*,
    528 F. Supp. 2d 985 (N.D. Cal. 2007)................................................12

*Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*,
    559 F.3d 1308 (Fed. Cir. 2009) .......................................................3, 4

*High Sec Labs Ltd. v. iPGARD Inc.*,
    No. 2:20-cv-01797-MMD-BNW, 2021 WL 2021998 (D. Nev. Jan. 15, 2021)......14

*IMS Tech., Inc. v. Haas Automation, Inc.*,
    206 F.3d 1422 (Fed. Cir. 2000) .........................................................4

*In re Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*,
   71 F.3d 1573 (Fed. Cir. 1995) ...............................................................13

*Lucent Techs., Inc. v. Gateway, Inc.*,
   580 F.3d 1301 (Fed. Cir. 2009) .............................................................4

*Madey v. Duke Univ.*,
   307 F.3d 1351 (Fed. Cir. 2002) ..................................................... 13, 15

*Matsushita Electric Industrial Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)............................................................................3

*Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*,
   831 F. Supp. 1354 (N.D. Ill. 1993) ........................................................13

*McRO, Inc. v. Namco Bandai Games Am., Inc.*,
   23 F. Supp. 3d 1113 (N.D. Cal. 2013) ....................................................12

*Metabolite Lab'ys, Inc. v. Lab'y Corp. of Am. Holdings*,
   370 F.3d 1354 (Fed. Cir. 2004) .............................................................5

*Moleculon Rsch. Corp. v. CBS, Inc.*,
   793 F.2d 1261 (Fed. Cir. 1986) .............................................................4

*Nasatka v. Delta Sci. Corp.*,
   58 F.3d 1578 (Fed. Cir. 1995) ..............................................................13

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,
   182 F.3d 157 (2d Cir.1999) ..................................................................3

*NTP, Inc. v. Research In Motion, Ltd.*,
   418 F.3d 1282 (Fed. Cir. 2005) ............................................................10

*Ormco Corp. v. Align Techs., Inc.*,
   609 F. Supp. 2d 1057 (C.D. Cal. 2009) ............................................11, 12

*Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.*,
   369 F. Supp. 3d 963 (C.D. Cal. 2019) ....................................................13

*Scott v. Harris*,
   550 U.S. 372 (2007)............................................................................3

*Sevenson Env'l. Servs., Inc. v. Shaw Envtl., Inc.*,
   477 F.3d 1361 (Fed. Cir. 2007) .......................................................12, 13

iii

*Toshiba Corp. v. Imation Corp.*,
   681 F.3d 1358 (Fed. Cir. 2012) ................................................................................4

*Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999) .................................................................................3

**Statutes**

28 U.S.C. § 1498 ........................................................................................................12

35 U.S.C. § 271(a) .......................................................................................................4

35 U.S.C. § 271(g) .....................................................................................................10

**Rules**

Fed. R. Civ. P. 56 .........................................................................................................2

L.R. 7-3 ........................................................................................................................1

Defendants and Counterclaim Plaintiff Tetra Tech, Inc. and Counterclaim Plaintiff Tetra Tech TAS Inc. (collectively "Tetra Tech") submit this memorandum in opposition to Plaintiff and Counterclaim Defendant Pavemetrics Systems, Inc.'s ("Pavemetrics") Motion for Partial Summary Judgment No. 4 of (1) No Indirect Infringement Based on Any Direct Infringement by CSX and FRA and (2) Immunity from Suit under 28 U.S.C. § 1498 ("Mot.").

## I.   INTRODUCTION

On the last available day to pursue summary judgment, Pavemetrics filed four such motions in addition to a *Daubert* motion. At issue here is Pavemetrics' fourth summary judgment motion seeking no indirect infringement based on direct infringement by CSX and the FRA and § 1498 immunity. This motion, like the other four motions Pavemetrics filed, fails to address the evidentiary record and the disputed issues of material fact, and should be denied.[1]

Pavemetrics contends that it is entitled to summary judgment of no indirect infringement because CSX has not directly infringed under either § 271(a) or § 271(g). For § 271(a) infringement, Pavemetrics claims that CSX never used any of the five LRAILs that it purchased for processing data. This assertion completely casts aside the fact that the LRAILs were specifically sold for track inspection, and to that end, included processing software for automated detection of track features. Pavemetrics supported CSX with the processing software so that CSX could process its data for track inspection functions, including tie detection and grading and rail detection. And Pavemetrics provided CSX with LRAIL user manuals that instruct the user to operate

---

[1] Tetra Tech also objects to Pavemetrics' motion as non-compliant with Local Rule 7-3. Pavemetrics did not notify Tetra Tech of its intent to "seek summary judgment of no direct infringement by CSX under 271(a)/(g) and that all FRA-related sales/uses are immune from suit under 28 U.S.C. § 1498," until two days *after* the parties met and conferred on the other motions and less than seven days from the deadline for summary judgment motions. Laquer Ex. 24 (ECF 163-2). Tetra Tech advised Pavemetrics of the Local Rule 7-3 defect, but Pavemetrics proceeded with filing the motion. *Id.*

the LRAIL in an infringing manner. Pavemetrics simply ignores this substantial circumstantial evidence demonstrating that CSX directly infringed.

With respect to § 271(g) infringement, Pavemetrics asserts two theories: (1) output files generated by Pavemetrics from processing CSX's rail data were not imported by CSX and (2) the output files are not "products" under the statute. Pavemetrics again dismisses the evidentiary record. Pavemetrics does not deny that it delivered output files to CSX. Indeed, the evidence demonstrates that CSX received from Pavemetrics output files, including, for example, XML files, LAS files, SHP files, and JPEG images. Moreover, Pavemetrics' conclusory allegation that the output files are not "products" is based on a misguided view of the applicable law. Section 271(g) does not exclude electronic files, nor are the output files merely the "production of information." Rather, as the evidence demonstrates, the output files are a creation produced by practicing the patented processes.

Finally, Pavemetrics invokes an affirmative defense under 28 U.S.C. § 1498, based on conclusory statements and two research contracts with the FRA. Yet Pavemetrics fails to consider critical evidence, namely its work and contracts with CSX, and how its data processing *for CSX* was unrelated and without the authorization or consent of the U.S. government. Pavemetrics therefore cannot demonstrate the absence of genuine issues of material fact, let alone meet its burden for § 1498 immunity.

Accordingly, because Pavemetrics does not address critical portions of the evidentiary record, it cannot possibly establish the absence of triable issues of fact. Pavemetrics' motion should be denied.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 56(a) requires "the movant show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In ruling on a motion for summary judgment,

the Court must view the facts and draw reasonable inferences in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

The initial burden of establishing the absence of a genuine issue of material fact lies with the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant bears this burden even "[w]hen the moving party does not have the burden of proof on the issue that is the subject of the summary judgement motion." *Vivid Techs. Inc. v. Am. Sci. & Eng'g, Inc.*, 200 F.3d 795, 806–07 (Fed. Cir. 1999). Because summary judgment is a "drastic device" cutting off a party's right to present its case to a jury, the moving party bears a "heavy burden" of demonstrating the absence of any triable issue of material fact. *See Avalos v. Baca*, No. 05–CV–07602–DDP, 2006 WL 2294878 (C.D. Cal. Aug. 7, 2006) (quoting *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*, 182 F.3d 157, 160 (2d Cir.1999)).

## III.   ARGUMENT

### A.   Ample Evidence Demonstrates Direct Infringement by CSX

The evidentiary record establishes that CSX directly infringed by using the infringing LRAIL systems in a manner that performs the claimed methods and/or importing into the U.S. output files that are direct products of the claimed methods. Pavemetrics attempts to ignore this evidence, but the totality of the evidence and circumstances cannot be cast aside.  The summary judgment record as a whole must be viewed in the light most favorable to Tetra Tech. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). And a "[c]redibility determination, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Infringement "is a question of fact." *Brilliant Instruments v. GuideTech, LLC*, 707 F.3d 1342, 1344 (Fed. Cir. 2013) (citing *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1312 (Fed. Cir. 2009)); *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1353 (Fed. Cir. 1998)). Thus, at the summary judgment stage, the Court "must determine whether, after resolving reasonable factual inferences in favor of the patentee . . . that no

1    reasonable jury could find infringement." *Crown Packaging*, 559 F.3d at 1312 (quoting

2    *IMS Tech., Inc. v. Haas Automation, Inc.*, 206 F.3d 1422, 1429 (Fed. Cir. 2000)).

3           In its motion, Pavemetrics implausibly contends that while CSX purchased five

4    LRAIL systems for over ███████████████████████, CSX never processed

5    any data with these systems or received any output files or reports resulting from

6    Pavemetrics' admitted processing of railway data that CSX collected with the LRAIL

7    systems. But Pavemetrics ignores the overwhelming circumstantial evidence that

8    demonstrates direct infringement. *See Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358,

9    1364 (Fed. Cir. 2012) ("There is sufficient evidence to create a genuine issue of material

10   fact. Direct infringement can be proven by circumstantial evidence. Circumstantial

11   evidence must show that at least one person directly infringed an asserted claim during

12   the relevant time period") (internal citations and quotation marks omitted); *Moleculon*

13   *Rsch. Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986) ("It is hornbook law

14   that direct evidence of a fact is not necessary. Circumstantial evidence is not only

15   sufficient, but may also be more certain, satisfying and persuasive than direct

16   evidence") (internal quotation marks omitted). The evidence raises genuine issues of

17   material fact that preclude summary judgment of no direct infringement by CSX.

18                    1.    **Direct Infringement under § 271(a) by CSX**

19          Contrary to Pavemetrics' contentions, there are genuine issues of material fact as

20   to whether CSX directly infringed under § 271(a). Pavemetrics simply ignores the

21   substantial circumstantial evidence demonstrating that a reasonable jury could find that

22   CSX operated the LRAIL systems in a manner that infringes the asserted claims. *See*

23   *Moleculon*, 793 F.2d at 1272  (affirming a jury verdict of induced infringement of a

24   method for solving a puzzle based on "circumstantial evidence of extensive puzzle

25   sales, dissemination of an instruction sheet teaching the method of restoring the

26   preselected pattern with each puzzle, and the availability of a solution booklet on how

27   to solve the puzzle"); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318-19

28   (Fed. Cir. 2009) (affirming a jury verdict of indirect infringement based on

1    circumstantial evidence of direct infringement of a method claim where the accused

2    product was designed to practice the claimed invention, and the accused infringer

3    instructed its customers to use the accused product in an infringing way); *see also*

4    *Metabolite Lab'ys, Inc. v. Lab'y Corp. of Am. Holdings*, 370 F.3d 1354, 1364–65 (Fed.

5    Cir. 2004) ("[T]he record contains sufficient circumstantial evidence to permit the jury

6    to imply that physicians directly infringe").

7        All five of the LRAILs sold to CSX ███████████████████████

8    ████████████████████████████████████████████████████████

9    ████████ ECF 114-1 at 1; *see also* ECF 162 at 2 (the first two LRAIL systems sold to

10   CSX "included LRAIL sensors, acquisition software, and processing software").  The

11   LRAIL processing software included ████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ██████████████████████████████ ECF 166-4, Laurent Ex. 33 at 23. Nothing

14   prevented or limited CSX from using the LRAIL system that it purchased, including the

15   processing software. ████████████████████████████████

16   ████████████████████████████████████████████████████████

17   ███████████████

18        Not only did Pavemetrics sell and provide CSX with the means for directly

19   infringing the asserted patents by implementing the LRAIL systems, Pavemetrics

20   specifically intended for CSX to do so. Pavemetrics instructed CSX on ███████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████████████████████████

24   ████████████████████████████████████████████████████████

25   ██████████████████████████ The evidence also demonstrates that

26   Pavemetrics provided CSX with user manuals that instruct how to use the LRAIL

27   systems in an infringing manner. *See, e.g.*, ECF 166-4, Laurent Ex. 33 at 23 ███

28   ████████████████████████████████████████████████████████

1 ███████████████████████████████████████████████

2 ███████████████████████████████████████████████

3 ███████████████████████████████████████████████

4 ███████████████████████████████████████████████

5 ███████████████████████████████████████████████

6 ███████████████████████████████████████████████

7 ███████████████████████████████████████████████

8 ██████████████████████████  Dr. Morellas has reviewed these manuals and

9 has opined that they instruct a user to operate the LRAIL to, among other things, detect

10 and identify the rail and other rail features, including fasteners, joint and joint bars ties,

11 and ballasts, and detect and identify tie cracks. *See* ECF 166, Laquer Exhibit 1 at

12 paragraph 620.

13       Pavemetrics relies on testimony from Brad Spencer of CSX claiming that "CSX

14 has never used the LRAIL software to process any data." Mot. at 4. This self-serving

15 testimony, however, conflicts with other evidence that shows CSX installed the

16 processing software and worked with Pavemetrics for the express purpose of using the

17 LRAIL systems and processing CSX's data. For example, Mr. Spencer himself installed

18 the processing software and expressed his eagerness and intention ███████████████

19 ██████████████████████████████  Parker Ex. 110 at 839-40.

20 And others at CSX also had installed the LRAIL software with the aim of processing

21 CSX's data. Parker Ex. 111 at 842 ████████████████████████████

22 ███████████████████████████████████████████████

23 ███████████████████████████████████████████████

24 ███████████████████████████████████████████████

25 ████████████████  Accordingly, the circumstantial evidence demonstrates genuine

26 issues of material fact as to whether CSX operated the LRAIL software to process its

27 rail data.

28

2.      **Direct Infringement under § 271(g) by CSX**

      a.      **Pavemetrics Ignores the Substantial Circumstantial Evidence That Shows CSX Imported Output Files Produced by the Claimed Methods**

Pavemetrics concedes that it has processed data acquired by CSX and generated output files in the form of XML files. Mot. at 4; ECF 166-2 at ¶¶ 17-20.  Pavemetrics also acknowledges that the output files have been delivered to entities in the United States, including the University of Illinois, but notably, does not deny that they were also sent to CSX. Mot. at 7; ECF 166-2 at ¶20. Nonetheless, Pavemetrics contends that "[n]o evidence suggests that CSX imported any output files or reports." Mot. at 5. Pavemetrics fails to address, however, the evidence presented by Tetra Tech that establishes, or at a minimum, leads to a reasonable factual inference, that CSX imported output files.

Pavemetrics selectively cites to general statements by Mr. Spencer and characterizes certain of Tetra Tech's evidence as a "hodgepodge of emails and a PowerPoint presentation from Pavemetrics to CSX." Mot. at 5. Notwithstanding its flawed characterizations, Pavemetrics cannot simply dismiss the significant evidence that demonstrates CSX receiving from Pavemetrics output files resulting from Pavemetrics processing CSX's railway data, including XML files, JPEG images, LAS files, and SHP files.



[2] Parker Ex. 114. While Pavemetrics claims

---

[2] According to Dropbox's website, "[a]ll files stored online by Dropbox are . . . kept in secure storage servers. Storage servers are located in data centers across the United States." *See Where is My Data Stored?*, Dropbox,

7

1   that "CSX never downloaded any output files from Pavemetrics," the evidence
2   demonstrates that this is a genuine dispute of material fact. ████████████████

3   ████████████████████████████████████████████████████████████████

4   ████████████████████████████████████████████████████████████████

5   ████████████████████████████████████████████████████████████████

6   ████████████████████████████████████████████████████

7       In addition, Pavemetrics ignores evidence of CSX receiving numerous other
8   output files and data processing results from Pavemetrics. ██████████████████

9   ████████████████████████████████████████████████████████████████

10  ████████████████████████████████████████████████████████████████

11  ████████████████████████████████████████████████████████████████

12  ████████████████████████████████████████████████████████████████

13  ████████████████████████████████████████████████████████████████

14  ████████████████████████████████████████████████████████████████

15  ████████████████████████████████████████████████████████████████

16  ████████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████████

18  ████████████████████████████████████████████████████████████████

19  ████████████████████████████████████████████████████████████████

20  ████████████████████████████████████████████████████████████████

21  ████████████████████████████████████████████████████████████████

22  ████████████████████████████████████████████████████████████████

23  ████████████████████████████████████████████████████████████████

24  ████████████████████████████████████████████████████████████████

25  ████████████████████████████████████████████████████

26

27  https://help.dropbox.com/accounts-billing/security/physical-location-data-
28  storage#:~:text=All%20files%20stored%20online%20by,for%20eligible%20Dropbox%20business%20users.

8

1    The evidence further illustrates the expectation that CSX receive output files of
2    processed data from Pavemetrics in furtherance of its working relationship with
3    Pavemetrics on the infringing LRAIL systems.

15    Pavemetrics contends that "CSX has never received data reports from
16    Pavemetrics identifying defective or missing features in order to repair or replace those
17    features." Mot. at 2. Pavemetrics relies on a portion of Mr. Spencer's testimony where
18    he states that CSX has not
19                                                               Parker Ex. 48 at
20    81:3-6. However, what CSX planned to do after importing the data reports or output
21    files resulting from processed track data is of no consequence to the § 271(g) analysis.
22    *See Bristol-Myers Co. v. Erbamont Inc.*, 723 F. Supp. 1038, 1044 (D. Del. 1989)
23    (holding "the terms 'importation' and 'import' in § 271(g) . . . are to have their plain
24    ordinary meaning of bringing goods into the United States from another country. This
25    term does not depend on or require an analysis of the intent of the person in bringing
26    the goods into the United States").

27    Accordingly, the circumstantial evidence demonstrates genuine issues of material
28    fact as to whether CSX imported output files produced by the claimed methods.

9

      **b.**    **The Output Files Constitute Products Made By a Patented Process Under § 271(g)**

Pavemetrics contends that the output files generated by the LRAIL software do not constitute "products" under § 271(g)."[3] Mot. at 5. In making this argument, Pavemetrics relies on *Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367 (Fed. Cir. 2003) and *NTP, Inc. v. Research In Motion, Ltd.*, 418 F.3d 1282, 1324 (Fed. Cir. 2005), for the notion that § 271(g) "is limited to physical goods that were manufactured and does not include information generated by a patented process" and "research data is not a physical product." *Id.*; *Bayer*, 340 F.3d at 1368; *NTP*, 418 F.3d at 1324. Pavemetrics' reliance on *Bayer* and *NTP*, however, is misplaced.

Unlike the claimed methods in *Bayer* and *NTP*, Tetra Tech's claimed "method of detecting railroad tie distress," "method of detecting railway track bed features," and "method of assessing a railway trackbed" are not directed to the identification or transmission of "information in the abstract." *Bayer*, 340 F.3d at 1376. Nor are any of these methods merely "a predicate process to identify the product to be manufactured." *Id.* at 1378.

Rather, Tetra Tech's claimed methods directly result in the creation of processed data in the form of output files and other reports containing the processed data that are imported by CSX. *See* Parker Ex. 43 at 34:5-35:7 ██████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████ As evidenced by Pavemetrics' own user manuals, the output files generated by the LRAIL are the result of processing a given section of the railway. ECF 134-8 at 184; ████████████████

---

[3] In its motion, Pavemetrics' only dispute is whether the output files are "products." Pavemetrics does not contend that the output files are "made by" the patented process or that the output files are "materially changed" or a "trivial and nonessential component of another product." As such, Tetra Tech does not address those elements of § 271(g) here.

1

2

3

4

5

6

7

8

9

10

11

12

13    . As the evidence demonstrates,

14 the output files, including XML files, JPEG images, and LAS files, are the results of

15 processing and analyzing railway track data according to the claimed methods and are

16 not "information in the abstract." *Bayer*'s analysis is inapposite here because the result

17 of Tetra Tech's claimed methods is not information that one could merely possess in

18 their mind but the creation of digital files of processed data.

19       Indeed, Pavemetrics' contentions fail to recognize that courts have routinely held

20 that a product made by a patented process under § 271(g) includes products such as

21 electronic files. *See Ormco Corp. v. Align Techs., Inc.*, 609 F. Supp. 2d 1057, 1076-77

22 (C.D. Cal. 2009) (finding a digital 3D model to be a "product" within the meaning of

23 § 271(g)); *CNET Networks, Inc. v. Etilize, Inc*, 528 F. Supp. 2d 985, 994 (N.D. Cal.

24 2007) (ruling that an electronic catalog was a "product" within the meaning of

25 § 271(g)); *McRO, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1121-

26 23 (N.D. Cal. 2013) (finding the holding in *Bayer* did not preclude § 271(g) from

27 applying to a patented process for automatically animating lip synchronization and

28 facial expressions of animated characters, where the process was used to make the

accused games, not deciding which games to make). Indeed, the facts and circumstances here are analogous to those of *Ormco*. In *Ormco*, the district court found that a 3D digital model was a "product" under § 271(g) because the data file of "the 3D digital model [was] not a mere package of information, but a 'creation' produced by 'practicing each step' of a patented process." 609 F. Supp. 2d at 1076. Likewise, the output files imported by CSX are not merely "package[s] of information" but are digital files of railway analysis that are created from practicing the patented processes.

### B. Pavemetrics Ignores Substantial Evidence in Its Attempt to Invoke an Affirmative Defense Under 28 U.S.C. § 1498[4]

"A § 1498 affirmative defense is a highly factual determination, whereby [the asserting party] must establish that '(1) the [infringing] use is 'for the Government'; and (2) the [infringing] use is 'with the authorization and consent of the Government.' *Arlton v. Aerovironment, Inc.*, No. 2:20-cv-07438-AB-GJS, 2021 WL 1589302, at *5 (C.D. Cal. Apr. 22, 2021) (citing *Sevenson Env'l. Servs., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1365 (Fed. Cir. 2007)). Despite this "highly factual" inquiry, Pavemetrics flatly ignores substantial facts and evidence (including its projects and contracts with CSX) and relies on conclusory statements to claim immunity under § 1498. Accordingly, Pavemetrics fails to meet its burden of establishing the absence of a genuine issue of material fact regarding its affirmative defense under § 1498.

First, Pavemetrics does not, and cannot, show the absence of a genuine issue of material fact that its infringing acts are for the government. "This prong is satisfied where 'the use or manufacture of a patented method or apparatus occur pursuant to a contract with the government and for the benefit of the government.'" *Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.*, 369 F. Supp. 3d 963, 977 (C.D. Cal. 2019)

---

[4] As an initial matter, Pavemetrics did not disclose the factual basis for its affirmative defense under 28 U.S.C. § 1498 during discovery, and only now, for the first time, addresses the issue. *See* Parker Ex. 119 at 893-94. Thus, the affirmative defense should be stricken or given no consideration at this stage.

(quoting *Sevenson*, 477 F.3d at 1365). However, "if the [accused infringer] makes, uses, or sells an invention for both the United States and others, a district court may adjudicate a claim of infringement as to the latter." *Id.* at 981; *see also Madey v. Duke Univ.*, 307 F.3d 1351, 1360 (Fed. Cir. 2002), *cert. denied*, 539 U.S. 958 (2003) (finding that the district court erred in granting partial summary judgement under § 1498 because "it has not yet determined which uses fall within the scope of the ONR grant and which uses are outside that scope"); *Nasatka v. Delta Sci. Corp.*, 58 F.3d 1578, 1580 n. 1 (Fed. Cir. 1995), *cert. denied*, 516 U.S. 1112 (Fed. Cir. 1996) ("When a manufacturer sells a product to both the government and a third party, the normal course of events is parallel patent infringement proceedings in the Court of Federal Claims for sales to the government in accordance with 28 U.S.C. § 1498 and in the district court for the nongovernmental sales"); *AM Int'l, Inc. v. United States*, 227 Ct. Cl. 632, 632 (1981) (finding that infringement claims regarding sales to the Government were properly before the Court of Claims under § 1498, and the infringement claims regarding sales to private parties were properly before the district court); *Matter of Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 831 F. Supp. 1354, 1393 (N.D. Ill. 1993), *aff'd sub nom. In re Mahurkar Double Lumen Hemodialysis Catheter Pat. Litig.*, 71 F.3d 1573 (Fed. Cir. 1995) (awarding damages for patent infringement but excluding any sales to the United States from the damages award since patentee had to pursue the government in the claims court to recover those damages).

Here, Pavemetrics contends it "processed data using LRAIL in its capacity as a U.S. Government contractor and subcontractor under the FRA contracts." Mot. at 1. Processing data for the FRA does not, however, confer immunity for the infringing sales and processing of data *for CSX* (and CSX's importation of the processed data in the form of output files) pursuant to the contracts between Pavemetrics and CSX. *See, e.g.*, *High Sec Labs Ltd. v. iPGARD Inc.*, No. 2:20-cv-01797-MMD-BNW, 2021 WL 2021998, at *5 (D. Nev. Jan. 15, 2021) (noting that defendant cannot simply point to a government contract and assert that the government has assumed liability for patent

13

1  infringement committed by its contractors without also demonstrating it has met its
2  burden to establish entitlement to a Section 1498 affirmative defense). As Pavemetrics
3  acknowledges, "Tetra Tech has accused … six Pavemetrics sales of infringement" and
4  "five of those were to CSX." Mot. at 1; Parker Ex. 61; Parker Ex. 69; Parker Ex. 70.
5  However, Pavemetrics noticeably ignores these contracts and the work performed under
6  them in its attempt to invoke § 1498.

7       Indeed, Pavemetrics' work *for CSX*, both before and after the purported FRA
8  contract amendment in June 2021, was unrelated to the FRA contract. ██████████████

9  ████████████████████████████████████████████████████████████████████████

10 ████████████████████████████████████████████████████████████████████████

11 ████████████████████████████████████████████████████████████████████████

12 ████████████████████████████████████████████████████████████████████████

13 ████████████████████████████████████████████████████████████████████████

14 ████████████████████████████████████████████████████████████████████████

15 ████████████████████████████████████████████████████████████████████████

16 ████████████████████████████████████████. Pavemetrics' LRAIL sales to CSX, and
17 the work done for the Autonomous Boxcar Project, establish genuine issues of material
18 fact as to whether any of Pavemetrics' processing of CSX data was for the government.

19      Second, Pavemetrics does not meet its burden of demonstrating that its accused
20 infringing activity is "with the authorization or consent" of the FRA. Pavemetrics
21 merely cites two "Subaward" contracts (between Pavemetrics and the University of
22 Illinois) which purportedly incorporates by attachment two "Prime Award" research
23 contracts (between the FRA and the University of Illinois) that purportedly contains an
24 authorization and consent clause (only by reference). Pavemetrics then concludes that
25 "[t]he Government authorized and consented to *all* use and manufacture of LRAIL,
26 regardless of whether that infringed." Mot. at 7. Pavemetrics makes no attempt to
27 explain how the FRA authorized or consented to all uses of the LRAIL system for CSX,
28 including processing of CSX's data for work on CSX's Autonomous Boxcar Project.

14

*See*, *e.g.*, *Madey v. Duke Univ.*, 307 F.3d 1351, 1360 (Fed. Cir. 2002) (reversing summary judgment because the district court failed to explain "how the [Government] grant authorizes the government's consent to suit or authorizes Duke to use or manufacture the patented articles for the government").

Furthermore, the FRA contracts do not mention Pavemetrics' contracts with CSX, let alone the scope of work under those contracts. As stated in the Amendment to the FRA contract, "[t]he objective of this contract modification is to provide additional datasets for researcher use in developing and refining the automated change detection technology. This modification allows for the incorporation of a new industry partner, and its associated data, in the research effort, CSX Transportation. FRA anticipates that the quality of the project outputs will be significantly enhanced by leveraging data sourced from revenue service tracks, in addition to the data obtained from TTC test tracks in 2019." ECF 162-1, Laurent Ex. 41 at 105. CSX was identified as an industry partner in the FRA contract so more data could be analyzed for the FRA, not for CSX's ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See, e.g.*, Parker Ex. 70 at 407; Parker Ex. 104; Parker Ex. 105; ECF 166-4, Laurent Ex. 35. Thus, there are genuine issues of material fact as to whether Pavemetrics' data processing for CSX was with the authorization or consent of the FRA.

## IV.   CONCLUSION

For the foregoing reasons, Tetra Tech respectfully requests that the Court deny Pavemetrics' motion.

Dated: April 25, 2022                         **CLARK HILL LLP**

                                             By:

                                             _____
                                                       Donald L. Ridge

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Kelly S. Horn (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**

*Attorneys for Defendant and Counterclaim
Plaintiffs
TETRA TECH, INC. AND TETRA TECH TAS
INC.*

16