Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
Raymond Lu (SBN 340,873)
raymond.lu@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., | Case No. 2:21-cv-1289-MCS-MMA |
| Plaintiff, | **PAVEMETRICS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 1 OF NO INDIRECT INFRINGEMENT BASED ON LACK OF INTENT TO INFRINGE** |
| v. | |
| TETRA TECH, INC., | |
| Defendant. | |
| | Date:        Vacated |
| | Time:        9:00 a.m. |
| | Location:    Courtroom 7C |
| AND RELATED COUNTERCLAIMS | Honorable Mark C. Scarsi |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**TABLE OF CONTENTS**

**Page No.**

I.      INTRODUCTION ............................................................................................1

II.     NO EVIDENCE SHOWS PAVEMETRICS HAD
        KNOWLEDGE OF THE ASSERTED PATENTS BEFORE
        THE NOTICE LETTERS ..............................................................................2

        A.      No Evidence Suggests Pavemetrics Knew About the
                Asserted Patents ..............................................................................2

        B.      No Evidence Suggests Pavemetrics Knew About the
                '557 Patent .......................................................................................5

        C.      No Evidence Suggests Pavemetrics Was Willfully
                Blind to the Asserted Patents .........................................................6

III.    NO EVIDENCE SUGGESTS PAVEMETRICS EVER
        LACKED A GOOD FAITH BELIEF THAT IT DID NOT
        INFRINGE ....................................................................................................7

1

# TABLE OF AUTHORITIES

2

**Page No(s).**

3

4

*01 Communique Lab., Inc. v. Citrix Sys., Inc.*,
5
   151 F. Supp. 3d 778 (N.D. Oh. 2015) ..............................................................8

6

*Alarm.com, Inc. v. SecureNent Techs. LLC*,
   345 F. Supp. 3d 544 (D. Del. 2018) ........................................................... 3, 8
7

*Asia Vital Components Co. v. Asetek*
8
   377 F. Supp. 3d 990 (N.D. Cal. 2019) .................................................. 8, 9, 10

9

*Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*,
10
   No. 19-CV-12533-WGY, 2020 WL 2079422
11
   (D. Mass. Apr. 30, 2020) ...............................................................................5

12

*Chaffin v. Braden*,
   2018 WL 1794766 (S.D. Tex. Apr. 16, 2018) ................................................8
13

14

*Commil USA, LLC v. Cisco Sys., Inc.*,
   575 U.S. 632 (2015) .................................................................................. 3, 8
15

16

*EverScape, Inc. v. Adobe Sys., Inc.*,
   No. CIV. A. 10-11597-RGS, 2014 WL 4261406
17
   (D. Mass. Aug. 27, 2014) ...............................................................................8

18

*Genband US LLC v. Metaswitch Networks Corp.*,
19
   No. 2:14-cv-33-JRG-RSP, 2016 U.S. Dist. LEXIS 37946
   (E.D. Tex. Jan 6, 2016)...................................................................................8
20

21

*Global-Tech Appliances, Inc. v. SEB S.A.*,
   563 U.S. 754 (2011) .......................................................................................6
22

23

*Intellectual Pixels Ltd. v. Sony Interactive Entm't LLC*
   2020 WL 7872961(C.D. Cal. Nov. 20, 2020).................................................3

24

*Intellectual Ventures II LLC v. Sprint Spectrum, L.P.*,
25
   No. 2:17-cv-00662-JRG-RSP, 2019 WL 1987172
26
   (E.D. Tex. Apr. 12, 2019)...............................................................................3

27

*Longitude Licensing v. Apple Inc.*,
   2015 WL 1143071 (N.D. Cal. Mar. 13, 2015)................................................4
28

# TABLE OF AUTHORITIES

## (*cont'd*)

**Page No(s).**

*Motiva Patents, LLC v. Sony Corp.*,
    408 F. Supp. 3d 819 (E.D. Tex. 2019) ..........................................................5

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
    30 F.4th 1109 (Fed. Cir. 2022)................................................................. 1, 6

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    396 F. Supp. 3d 323 (S.D.N.Y. 2019)...........................................................5

*Simplivity Corp. v. Springpath, Inc.*,
    No. 4:15-13345-TSH, 2016 WL 5388951
    (D. Mass. July 15, 2016) ...............................................................................5

*State Indus., Inc. v. A.O. Smith Corp.*,
    751 F.2d 1226 (Fed. Cir. 1985)............................................................... 3, 10

*SynQor v. Artesyn*,
    709 F.3d 1365 (Fed. Cir. 2013).....................................................................5

*SynQor, Inc. v. Artesyn Techs., Inc.*,
    No. 2:07-CV-497-TJW-CE, 2011 WL 3624957
    (E.D. Tex. Aug. 17, 2011)..............................................................................4

*Unwired Planet, LLC v. Apple Inc.*,
    829 F.3d 1353 (Fed. Cir. 2016).....................................................................9

*Vasudevan Software, Inc. v. TIBCO Software Inc.*,
    No. C. 11-06638 RS, 2012 WL 1831543
    (N.D. Cal. May 18, 2012)...............................................................................4

*Wrinkl, Inc. v. Facebook Inc.*,
    2021 WL 4477022 (D. Del. Sept. 30, 2021) .................................................2

## OTHER AUTHORITIES

35 U.S.C. § 298................................................................................................ 10

Fed. R. Evid. 407 ............................................................................................. 10

1    Tetra Tech has failed to raise a genuine dispute that Pavemetrics ever had

2    any intent to infringe either asserted patent.

3    ## I. INTRODUCTION

4    Tetra Tech has not pointed to any evidence showing Pavemetrics had ***any***

5    knowledge of the asserted patents before receiving its notice letters.  Despite

6    citing to 36 exhibits, Tetra Tech cannot point to a single one that mentions

7    either of the asserted patents.  Most relate only to patents owned by another

8    company (Georgetown Rail or "GREX").  But knowledge of another's patents is

9    not evidence of knowledge of Tetra Tech's patents, particularly because Tetra

10   Tech's patents did not issue until years after the GREX infringement suit against

11   Tetra Tech.  Moreover, a general awareness that other companies, including

12   Tetra Tech, may have patents is not knowledge of the ***asserted*** patents.

13   Tetra Tech also failed to point to any evidence showing a specific intent

14   to infringe by Pavemetrics.  The specific intent requirement focuses on

15   Pavemetrics' actual ***subjective*** beliefs—not what it could have or should have

16   known.  Tetra Tech repeatedly encourages this Court to apply a "reckless" or

17   "should have known" negligence standard, while overlooking that the Federal

18   Circuit recently overturned a decision applying a reckless or negligence

19   standard to the intent requirement.  *See Roche Diagnostics Corp. v. Meso Scale*

20   *Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir. 2022) (district court erred by

21   requiring only that the alleged infringer "knew or should have known" his

22   actions would induce infringement).

23   The only evidence of record on Pavemetrics' subjective beliefs as to

24   infringement is that it believed LRAIL does not infringe.  Nothing contradicts

25   that.  Tetra Tech's infringement contentions, even if ultimately shown to be

26   correct, do not address Pavemetrics' subjective beliefs.  To find that they do

27   would be to apply a "should have known" standard.  This Court should reject

28   Tetra Tech's invitation to apply an incorrect standard.

-1-

## II.  NO EVIDENCE SHOWS PAVEMETRICS HAD KNOWLEDGE OF THE ASSERTED PATENTS BEFORE THE NOTICE LETTERS

**A.    No Evidence Suggests Pavemetrics Knew About the Asserted Patents**

Tetra Tech alleges that the parties are not strangers.  Opp'n at 4.  Tetra Tech is correct.  It is a long-time customer of Pavemetrics' road inspection products, and it even reached out to Pavemetrics for LRAIL quotes and a demonstration shortly before it sent the notice letters leading to this lawsuit. *See*, *e.g.*, Parker Exs. 94, 54.  Pavemetrics thought Tetra Tech was a valued customer interested in expanding its use of Pavemetrics' products.  Laquer Ex. 14 (Laurent Tr. 158:6-15).  During those customer communications, Tetra Tech never informed Pavemetrics that it had patents that allegedly covered LRAIL. *Id.* (Tr. 160:1-17).  It never raised either asserted patent with Pavemetrics, until sending the notice letters.  None of the 35 exhibits cited by Tetra Tech shows otherwise.

Tetra Tech's allegations that Pavemetrics monitored Tetra Tech's patents "going back to at least 2015" do not show knowledge of the two patents asserted in this lawsuit.  *See* Opp'n at 5.  The '293 patent did not issue until July 2019, and the '557 patent did not issue until April 2020.  ECF 1-1, Ex. A ('293 patent); Laquer Ex. 1 ('557 patent).  Email exchanges years before the patent-in-suit issued do not show knowledge of that patent.  *Wrinkl, Inc. v. Facebook Inc.*, 2021 WL 4477022, at *6 (D. Del. Sept. 30, 2021).

Moreover, none of the exhibits cited by Tetra Tech shows any monitoring of Tetra Tech patents, particularly not after those dates.  *See* Parker Ex. 53 (2016 emails); 55, 66, 76 (2017 emails); 67 (2018 emails); 77-78 (no mention of patents); 79, 68 (references Tetra Tech invalidating GREX patents).  Tetra Tech cites its own internal emails to purportedly show that Pavemetrics knew about its patents in general.  *See* Opp'n at 5 (citing Parker Ex. 84).  But those emails are inadmissible hearsay and, in any event, do not even mention the asserted

1    patents.  *See Intellectual Pixels Ltd. v. Sony Interactive Entm't LLC*, SAVC 20-

2    1422 JVS (KESx), 2020 WL 7872961, at *2-3 (C.D. Cal. Nov. 20, 2020)

3    (allegations regarding monitoring of patents or applications in general are

4    insufficient to support knowledge of the asserted patents).

5          Tetra Tech claims that "the chronology of Pavemetrics' product

6    development" strongly suggests that Pavemetrics was aware of Tetra Tech's

7    patented technology and innovations in the industry.  Opp'n at 6.  But Tetra

8    Tech's "chronology" ignores the relevant time period.  It admits that

9    Pavemetrics developed and sold LRAIL before the patents issued in 2019 and

10   2020.  *Id.* at 6-7 (acknowledging LRAIL sold abroad in 2017 and citing Parker

11   Ex. 90, which shows an LCMS sale for rail inspection in the United States in

12   2012 with ongoing use with the University of Massachusetts Lowell and the

13   FRA); *see Alarm.com, Inc. v. SecureNent Techs. LLC*, 345 F. Supp. 3d 544, 554

14   (D. Del. 2018) ("access to a product two to three years before the patent issued

15   cannot create an inference of willful blindness").

16         Tetra Tech alleges that there is "no dispute that Pavemetrics had pre-suit

17   knowledge of Dr. Mesher," the inventor on Tetra Tech's patents.  Opp'n at 8

18   (citing Parker Exs. 55, 94, 95, 91).  But knowledge of a person is not knowledge

19   of their patents.  Moreover, every exhibit that Tetra Tech cites regarding

20   interactions with Dr. Mesher or his patents is dated well before the asserted

21   patents even issued.  *See* Parker Ex. 94 (2012 emails); Parker Exs. 91, 95 (2015

22   emails); Parker Ex. 55 (2017 email).  Thus, none identify the asserted patents.

23         Moreover, general statements regarding patents provides "no knowledge

24   whatsoever."  *State Indus., Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1236 (Fed.

25   Cir. 1985); *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015)

26   (inducement requires "knowledge of the patent in suit"); *Intellectual Ventures II*

27   *LLC v. Sprint Spectrum, L.P.*, No. 2:17-cv-00662-JRG-RSP, 2019 WL 1987172,

28   at *2 (E.D. Tex. Apr. 12, 2019) (notice of related patents or other patents by the

1  same inventor is insufficient to show knowledge of an asserted patent);

2  *Vasudevan Software, Inc. v. TIBCO Software Inc.*, No. C. 11-06638 RS, 2012

3  WL 1831543, at *3 (N.D. Cal. May 18, 2012) (knowledge cannot be inferred

4  from knowledge of portfolio generally); *Longitude Licensing v. Apple Inc.*, 2015

5  WL 1143071, at *2 (N.D. Cal. Mar. 13, 2015) (knowledge of portfolio

6  insufficient to establish "knowledge of the specific patents-in-suit").

7        Tetra Tech argues that Pavemetrics' knowledge of its patents can be

8  inferred from Pavemetrics' knowledge of GREX's patent infringement suit

9  against Tetra Tech.  Opp'n at 6.  But that non-sequitur is unsupported by the

10  record.  The GREX lawsuit had nothing to do with any Tetra Tech patents.

11  Indeed, that lawsuit was filed years before Tetra Tech's patents issued.  Laquer

12  Ex. 14 (Laurent Tr. 165:9-16).  Tetra Tech cites to 14 exhibits referring to the

13  Georgetown Rail (GREX) patents or patent lawsuit against Tetra Tech.  *See*

14  Parker Exs. 59, 63-68, 74-76, 79, 81, 83, 87.  Not surprisingly, none of those

15  exhibits mention Tetra Tech's patents asserted in this case.  Tetra Tech's

16  reference to a 2016 email in which Pavemetrics joked about "spying" on GREX

17  at a conference cannot show knowledge of Tetra Tech's asserted patents,

18  particularly when those patents did not issue until years later.  *See* Opp'n at 5

19  (citing Parker Ex. 83).

20        The caselaw cited by Tetra Tech does not support its broad claims that

21  knowledge of the asserted patents can be inferred from competing in an

22  allegedly highly competitive industry, monitoring competitors, or conducting

23  other common business activities.  *See* Opp'n at 5 (citing *SynQor, Inc. v.*

24  *Artesyn Techs., Inc.*, No. 2:07-CV-497-TJW-CE, 2011 WL 3624957, at *3-4

25  (E.D. Tex. Aug. 17, 2011)).  In the *SynQor* case, the district court did not rest its

26  denial of JMOL on such evidence, but, rather, found evidence of actual

27  knowledge of each patent sufficient to support the jury verdict.  *See id.* at *3-4.

28  Indeed, the Federal Circuit affirmed the indirect-infringement judgment

because, despite an erroneous jury instruction that defendant could be liable based on a mere "reason to be aware of the existence of the patent," it found that the jury was informed in the context of the trial that "actual knowledge was required." *SynQor v. Artesyn*, 709 F.3d 1365, 1379 (Fed. Cir. 2013).

Tetra Tech's other inference cases are all at the pleading stage, before any discovery has taken place.[1]  In those cases, the courts denied a motion to dismiss because it was "entirely plausible that discovery will reveal" actual knowledge of the asserted patent.  *Simplivity*, 2016 WL 5388951, at *10; *Bio-Rad*, 2020 WL 2079422, at *5; *Motiva*, 408 F. Supp. 3d at 832-34 (finding knowledge may be circumstantially inferred **at the pleading stage** because the allegations "will necessarily be informed by the discovery process").

In contrast, on summary judgment or at trial, an inference is not reasonable in the face of actual evidence to the contrary.  *See SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 335 (S.D.N.Y. 2019) (inference of knowledge of the asserted patent would not have been reasonable had the defendant "adduced evidence establishing when, in fact, it learned of the patent").  Here, Pavemetrics has submitted ample evidence showing that it first learned of the asserted patents when Tetra Tech sent letters informing Pavemetrics about them.  Mot. at 2, 6.  Tetra Tech has presented no evidence showing otherwise and, thus, would have none to present at trial.

**B.** **No Evidence Suggests Pavemetrics Knew About the '557 Patent**

Tetra Tech submits no evidence showing that Pavemetrics' knew about the '557 patent before receiving Tetra Tech's notice letter on July 22, 2021. Having no such evidence, Tetra Tech argues that "Pavemetrics could have, and

---

[1] *See* Opp'n at 3-4 (citing *Motiva Patents, LLC v. Sony Corp.*, 408 F. Supp. 3d 819, 830 (E.D. Tex. 2019)); Opp'n at 6 (citing *Simplicity Corp. v. Springpath, Inc.*, No. 4:15-13345-TSH, 2016 WL 5388951, at *10 (D. Mass. July 15, 2016)); Opp'n at 7 (citing *Bio-Rad Labs., Inc. v. 10X Genomics, Inc.*, No. 19-CV-12533-WGY, 2020 WL 2079422, at *5 (D. Mass. Apr. 30, 2020)).

should have, performed due diligence to discover" the '557 patent.  Opp'n at 8.  That, however, is not the standard for showing actual knowledge of an asserted patent.  *See Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011) ("deliberate indifference to a known risk that a patent exists is not the appropriate standard under § 271(b)").  As addressed below, willful blindness requires more than deliberate indifference to a known risk.  It requires an actual ***belief*** in a high probability.  No evidence suggests that Pavemetrics was willfully blind to the either patent.

Tetra Tech also claims that Pavemetrics had actual knowledge of the '557 patent, because Tetra Tech launched a patent section on its website in February 2021.  Opp'n at 9.  But even if Pavemetrics had learned of the website, its knowledge of the '557 patent cannot be inferred from an online posting of a list of 27 U.S. and Canadian patents "relating to railroad track and vehicle inspection."  *See* Parker Exs. 57-58.  This is particularly true where Tetra Tech itself had written to Pavemetrics accusing it of infringing only the '293 patent, never mentioning any other patent.  ECF 1-1, Exs. B, D, F.  And where Tetra Tech initially asserted only the '293 patent in this litigation.  ECF 12; Laquer Ex. 8.  As Pavemetrics' CEO testified, it focused on the '293 patent because that is the patent Tetra Tech accused Pavemetrics of infringing in Tetra Tech's letters in early 2021.  Parker Ex. 42, Habel Tr. 150:12-151:21.

**C.**     **No Evidence Suggests Pavemetrics Was Willfully Blind to the Asserted Patents**

Willful blindness requires two basic elements: (1) a subjective belief that there is a high probability that a fact exists and (2) deliberate actions to avoid learning of that fact.  *Global-Tech*, 563 U.S. at 769.  Recklessness or negligence cannot satisfy the willful blindness standard.  *Id.*; *Roche Diagnostics*, 30 F.4th at 1118 (reversing induced-infringement judgment where the district court applied an intent standard that required only that the alleged infringer "knew or should

1  have known" his actions would induce infringement).  Tetra Tech has offered no

2  evidence showing Pavemetrics actual state of mind.

3  Tetra Tech fails to raise a genuine issue for trial on willful blindness.  It

4  has identified no evidence showing any subjective belief by Pavemetrics of a

5  high probability that the '293 or the '557 patent *existed*.  Almost all of the

6  evidence submitted by Tetra Tech predates the issuance of those patents.  At the

7  time of the pre-issuance emails, Pavemetrics could not "almost be said to have

8  actually known" about those patents, because there were no such patents.

9  Indeed, nothing suggests Pavemetrics ever believed that there was a high

10  probability that Tetra Tech had patents covering LRAIL, let alone the two

11  specific patents asserted in this suit.  It viewed Tetra Tech as a road-inspection

12  customer, a potential LRAIL customer, and a company that it helped to defend

13  against GREX's patent infringement claims.  Laquer Ex. 14 (Laurent Tr. 158:6-

14  15).  Moreover, Tetra Tech identifies no evidence that Pavemetrics took

15  "deliberate actions" to avoid learning of the asserted patents.

16  With respect to the '557 patent, it never had any reason to believe that

17  there was a high probability that another Tetra Tech patent—not raised by Tetra

18  Tech's own lawyers in its infringement letters—existed that covered its LRAIL

19  system.  Indeed, as discussed below, the evidence shows that Pavemetrics never

20  believed LRAIL infringed the '293 patent, let alone any other Tetra Tech patent.

21  **III.  <u>NO EVIDENCE SUGGESTS PAVEMETRICS EVER LACKED A</u>**

22  **<u>GOOD FAITH BELIEF THAT IT DID NOT INFRINGE</u>**

23  Tetra Tech argues that its infringement contentions alone raise a genuine

24  issue as to Pavemetrics' good faith belief of non-infringement.  Opp'n at 11.  In

25  Tetra Tech's view, a jury could believe that Tetra Tech's infringement

26  contentions are "correct," and infer from that finding that Pavemetrics knew or

27  "should have believed" that its acts would induce infringement.  *Id.*  But Tetra

28  Tech incorrectly applies a reckless or negligence standard.

1    Whether Tetra Tech's contentions are "correct" is irrelevant to

2 Pavemetrics' subjective belief on non-infringement.  "[A] defendant is not

3 willfully blind if it merely "should have known" of the risk of infringement.

4 *Alarm.com*, 345 F. Supp. 3d at 553.  Here, Pavemetrics' good faith belief in its

5 own non-infringement positions precludes a finding of indirect infringement,

6 regardless of whether Tetra Tech ultimately prevails on any direct infringement.

7 *Commil*, 575 U.S. at 642 (a defendant does not have knowledge of infringement

8 if it "reads the patent's claims differently from the plaintiff, and that reading is

9 reasonable").  As a matter of law, knowledge that Pavemetrics' acts "might"

10 cause infringement is insufficient for claims of indirect infringement. *Id.*

11    Tetra Tech cites a district court case that incorrectly held infringement

12 accusations alone are sufficient to raise a genuine issue as to an accused

13 infringer's good faith belief of non-infringement. *See* Opp'n at 10.[2]  If that were

14 true, no court could ever grant summary judgment of no intent to induce

15 infringement.   But, of course, courts do grant summary judgment of no

16 inducement due to lack of intent.  *See, e.g.*, *01 Communique Lab., Inc. v. Citrix*

17 *Sys., Inc.*, 151 F. Supp. 3d 778, 808 (N.D. Oh. 2015); *Chaffin v. Braden*, 2018

18 WL 1794766, at *5 (S.D. Tex. Apr. 16, 2018) ("A defendant's belief in non-

19 infringement, based on its reasonable claim construction argument, negates the

20 knowledge requirement of indirect infringement.").

21    Moreover, the *Asia Vital* case cited by Tetra Tech is distinguishable

22 because that case involved both a pre-suit attempt to license the asserted patents

23 and prior litigation involving the same asserted patents where the jury found

24 infringement of a similar product. *See Asia Vital Components Co. v. Asetek*

25 / / /

---

26    [2] Citing *Genband US LLC v. Metaswitch Networks Corp.*, No. 2:14-cv-
27 33-JRG-RSP, 2016 U.S. Dist. LEXIS 37946, at *13-14 (E.D. Tex. Jan 6, 2016);
*see also EverScape, Inc. v. Adobe Sys., Inc.*, No. CIV. A. 10-11597-RGS, 2014
28 WL 4261406, at *2 (D. Mass. Aug. 27, 2014) (no analysis).

1     *Danmark A/S*, 377 F. Supp. 3d 990, 1018 (N.D. Cal. 2019).  Nothing even close

2     to those facts exists here.

3          Similarly, Tetra Tech's reliance on *Unwired Planet* does not help its

4     position.  There, the Federal Circuit held that the ***objective*** strength of a party's

5     non-infringement argument alone is not sufficient to support summary judgment

6     of no indirect infringement.  *Unwired Planet, LLC v. Apple Inc.*, 829 F.3d 1353,

7     1364 (Fed. Cir. 2016).  Rather, the district court must analyze evidence relating

8     to the accused infringer's ***subjective*** beliefs about infringement.  *Id.*  Because

9     the district court had not done so, the Federal Circuit remanded for the district

10    court to reconsider the motion for summary judgment of no indirect

11    infringement on that basis.  *Id.*  Here, Pavemetrics does not seek summary

12    judgment based on the objective strength of its non-infringement arguments

13    alone.  Rather, it seeks summary judgment because the evidence shows that it

14    always held the subjective belief that it did not infringe.  See Mot. at 3-5, 8.

15          Tetra Tech accuses Pavemetrics of relying "heavily" on this Court's

16    preliminary injunction ruling.  Opp'n at 10-11.  But Pavemetrics formed a good

17    faith belief of non-infringement before that ruling.  *E.g.*, Laquer Ex. 7.  While

18    the PI ruling supports the reasonableness of Pavemetrics' good faith belief, it is

19    not the only support.  Pavemetrics has submitted letters, non-infringement

20    contentions, deposition and declaration testimony, and an expert report that

21    evidence its good faith belief of non-infringement.  Mot. at 3-5.

22          Tetra Tech's bizarre allegations that Pavemetrics played "fast and loose"

23    with or "flaunted" the PI ruling make no sense.  Opp'n at 11-12.  There is

24    nothing nefarious about Pavemetrics giving a history of this legal dispute,

25    including the PI ruling in its favor, to a potential buyer.  *See* Parker Ex. 86.

26    Once again, Tetra Tech improperly applies a "reckless disregard" standard to

27    the intent inquiry.  Opp'n at 12.  Even Tetra Tech admits that Pavemetrics'

28    / / /

1   reliance on the preliminary injunction ruling shows an "ignorance," i.e., ***a lack***

2   ***of knowledge***, of any probability that its acts constitute patent infringement.  *Id.*

3        Tetra Tech also improperly relies on Pavemetrics removing the accused

4   functionality from its source code as evidence that it lacked a good faith belief

5   of non-infringement.  Opp'n at 12.  But subsequent remedial measures are not

6   admissible to prove culpable conduct.  Fed. R. Evid. 407.  Moreover, the record

7   shows that Pavemetrics removed the functionality because (1) it had been

8   replaced by neural network algorithms that perform better and (2) it wanted to

9   avoid a dispute.  Parker Ex. 43, Hebert Tr. 132:1-11, 134:12-22.

10       Tetra Tech also improperly relies on Pavemetrics not seeking "an opinion

11  of counsel" to show a lack of good faith belief.  Opp'n at 13.  But Tetra Tech's

12  argument is barred by 35 U.S.C. § 298 (2011) ("The failure of an infringer to

13  obtain the advice of counsel with respect to any allegedly infringed patent . . .

14  may not be used to prove that the accused infringer willfully infringed the patent

15  ***or that the infringer intended to induce infringement of the patent.***")  The

16  *Asia Vital* case ***cited by Tetra Tech*** rejected a similar argument as barred by

17  § 298.  377 F. Supp. 3d at 1018, n.14.  Tetra Tech's arguments also ignore the

18  fact that, after receiving its first notice letter, Pavemetrics hired counsel and

19  commenced this suit, which presents substantial questions on non-infringement.

20  *See State Indus.*, 751 F.2d at 1236 (calling an argument that the defendant never

21  sought an opinion of counsel "totally unpersuasive" and "incomprehensible"

22  where "once suit was commenced [the defendant] took counsel and this suit

23  manifests substantial and close questions on both validity and infringement.").

24       Finally, Tetra Tech concedes that "Pavemetrics has ***no way of knowing***

25  whether or not its acts throughout this litigation would lead to infringement."

26  Opp'n at 13 (emphasis added).  Thus, Tetra Tech cannot, under any scenario,

27  show Pavemetrics ***knew*** its acts would cause infringement.  This Court should

28  grant summary judgment.

-10-

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 2, 2022

By:  /s/ *Nicholas M. Zovko*
   Joseph R. Re
   Christy G. Lea
   Nicholas M. Zovko
   Alan G. Laquer
   Raymond Lu

*Attorneys for Plaintiff/Counterclaim Defendant*,
PAVEMETRICS SYSTEMS, INC.

55516748

-11-