Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
Raymond Lu (SBN 340,873)
raymond.lu@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., | Case No. 2:21-cv-1289-MCS-MMA |
| Plaintiff, | **PAVEMETRICS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 3 OF NO DAMAGES UNDER THE '293 PATENT FOR THREE SALES MADE BEFORE JANUARY 5, 2021** |
| v. | |
| TETRA TECH, INC., | |
| Defendant. | |
| | Date:       Vacated |
| | Time:       9:00 a.m. |
| | Location:   Courtroom 7C |
| AND RELATED COUNTERCLAIMS | Honorable Mark C. Scarsi |

# TABLE OF CONTENTS

**Page No.**

I.    INTRODUCTION ....................................................................................1

II.   A "SALE" DOES NOT REQUIRE DELIVERY OF GOODS ............2

III.  PRE-NOTICE SALES ARE IMMUNE FROM DAMAGES ..............4

IV.  THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT PAVEMETRICS SOLD THREE LRAILS BEFORE ANY NOTICE ..........................................................................................6

     A.   Pavemetrics Sold One LRAIL To AID Before January 5, 2021 .......................................................................6

     B.   Pavemetrics Sold and Delivered Two LRAILs To CSX Before January 5, 2021 ...............................................7

V.    CONCLUSION ......................................................................................9

1

# TABLE OF AUTHORITIES

2

**Page No(s).**

3

4

*In re Caveney*,
    761 F.2d 671 (Fed. Cir. 1985) ...................................................................3

5

6

*Enercon GmbH v. ITC*,
    151 F.3d 1376 (Fed. Cir. 1998) ............................................................2, 3

7

*ePlus, Inc. v. Lawson Software, Inc.*,
    700 F.3d 509 (Fed. Cir. 2012) ..................................................................4

8

9

*Fonar Corp. v. Gen. Elec. Co.*,
    107 F.3d 1543 (Fed. Cir. 1997) ..........................................................4, 5, 9

10

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*,
    523 F.3d 1304 (Fed. Cir. 2008) ...............................................................3

11

12

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,
    No. CIV.A. 03-927, 2005 WL 1331216 (D. Del. June 6, 2005) ...............5

13

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) .................................................................................8

14

15

*NTP, Inc. v. Research in Motion, Ltd.*,
    418 F.3d 1282 (Fed. Cir. 2005) ...............................................................3

16

*RSA Protective Techs., LLC v. Delta Sci. Corp.*,
    No. CV 19-602, 2021 WL 6104859 (C.D. Cal. Nov. 8, 2021) .................5

17

18

*Tesco Corp. v. Weatherford Int'l, Inc.*,
    722 F. Supp. 2d 755 (S.D. Tex. 2010) ..............................................2, 5, 9

19

20

*In re TransData, Inc. Smart Meters Patent Litig.*,
    No. 12-ml-2309-c, 2015 WL 5098310 (W.D. Okla. 2015) ....................3, 5

21

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
    617 F.3d 1296 (Fed. Cir. 2010) ...............................................................3

22

23

## OTHER AUTHORITIES

24

35 U.S.C. § 271 ...................................................................................................3

25

35 U.S.C. § 287 ..........................................................................................1, 3, 4

26

27

28

# I. **INTRODUCTION**

Tetra Tech concedes most material facts relevant to this motion.  For example, Tetra Tech concedes that it asserts the '293 patent covers its 3DTAS product, it did not mark 3DTAS with the '293 patent number before giving actual notice of any infringement for the first time on January 5, 2021, and Pavemetrics invoiced AID (one LRAIL) and CSX (two LRAILs) for a total of three LRAILs before January 5, 2021.  ECF 182 at 3-4 (Facts 3-8).

Tetra Tech's main arguments are two related legal arguments.  First, Tetra Tech asserts that a "sale" requires delivery of a product.  *See* Opp'n at 4-5.  But the Federal Circuit has held that a "sale" ***does not*** require delivery of a product.  Pavemetrics sold all three LRAILs at issue in this motion before January 5, 2021, and thus those sales are immune from liability under 35 U.S.C. § 287.  Even if delivery were required, the undisputed facts show that Pavemetrics delivered the two LRAILs at issue to CSX before January 5, 2021.  Thus, even under Tetra Tech's incorrect legal theory, those two sales to CSX are immune from liability under 35 U.S.C. § 287.

Second, Tetra Tech asserts that the marking statute, 35 U.S.C. § 287, allows Tetra Tech to recover damages for "continued acts of infringement" for the three sales Pavemetrics made before any notice of infringement.  Opp'n at 3-4.  But, again, the Federal Circuit has held that a sale ***before*** notice of infringement cannot carry liability ***after*** notice of infringement because it is an authorized sale.  Thus, Tetra Tech cannot recover any damages for the three LRAIL sales at issue in this motion.  The statutory language that Tetra Tech relies upon, "and continued to infringe thereafter," relates to the three LRAIL sales that Pavemetrics made to CSX after January 5, 2021, which are not at issue in this motion.

Tetra Tech also argues that there are genuine issues of material fact precluding summary judgment.  Opp'n at 5-10.  Tetra Tech is incorrect—there

are no *genuine* issues of material fact.  Tetra Tech's arguments contradict its own damages expert.   Mr. Schoettelkotte based his damages analysis on Pavemetrics' sales of LRAIL, used the invoice dates only to establish when such sales occurred, and testified that his expert report has all information necessary to separate any sales based on any failure to mark.  Tetra Tech cannot create a genuine issue of material fact by disavowing its own expert.

Moreover, for AID, Tetra Tech argues that no evidence resolves the "critical factual question" of when AID paid Pavemetrics for LRAIL.  Opp'n at 5-6.   But Tetra Tech's own exhibit, Exhibit 102, plainly shows that AID submitted payment for LRAIL on December 23, 2020, and Pavemetrics received AID's payment the next day.  For CSX, Tetra Tech identifies no evidence contradicting the testimony from Pavemetrics and CSX that CSX purchased, and Pavemetrics delivered to CSX, two LRAIL systems in 2020. Tetra Tech's arguments about real-time processing hardware units are a red herring, as they are unsupported both factually and legally.

Thus, the Court should grant summary judgment that Tetra Tech cannot recover damages for any infringement of the '293 patent for the three accused sales that occurred before January 5, 2021.

## II.   A "SALE" DOES NOT REQUIRE DELIVERY OF GOODS

Tetra Tech asserts that a "sale" requires shipment and delivery of a product.  Opp'n at 4-5.  Tetra Tech relies on a district court case from Texas, *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755 (S.D. Tex. 2010). But *Tesco* is not binding and is inconsistent with Federal Circuit case law.

The Federal Circuit has held that a "sale" does not require delivery of goods.   In *Enercon*, the Federal Circuit analyzed the term "sale" in an ITC proceeding.  *Enercon GmbH v. ITC*, 151 F.3d 1376, 1382 (Fed. Cir. 1998).  The court gave "sale" its ordinary meaning and explained that "[i]t is common for a 'sale' to be completed even though delivery is to be made in the future."  *Id.*

The court held that the term "sale" in a particular ITC statute "does not require an immediate 'delivery' of the goods in order for the ITC to assume jurisdiction." *Id.*

The Federal Circuit has applied a similar analysis when analyzing "sale" in other contexts, including under 35 U.S.C. § 271. *In re Caveney*, 761 F.2d 671, 676 (Fed. Cir. 1985) ("It is well settled that a sale is a contract between parties to give and to pass rights of property for consideration which the buyer pays or promises to pay the seller for the thing bought or sold."); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1319 (Fed. Cir. 2005) (abrogated on other grounds) (explaining that Congress intended to give the term "sale" under Section 271(a) its ordinary meaning); *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1310-11 (Fed. Cir. 2010) ("A 'sale' is not limited to the transfer of tangible property; a sale may also be the agreement by which such a transfer takes place.").

Other district courts agree. For example, in *In re TransData*, the court analyzed the Federal Circuit's decision in *Transocean*. *In re TransData, Inc. Smart Meters Patent Litig.*, No. 12-ml-2309-c, 2015 WL 5098310, *1-2 (W.D. Okla. 2015). The court concluded that "the law is clear that under § 271 a 'sale' can be sufficient to constitute a transfer even if physical delivery of the product occurs at a later date." *Id.*; *see also Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1310 (Fed. Cir. 2008) ("The district court also held that Honeywell could not recover damages for sales entered into before to February 3, 1999, even if delivery occurred thereafter.").

Accordingly, a "sale" does not require delivery of a product. Pavemetrics sold all three LRAILs at issue in this motion before January 5, 2021. Thus, those sales are immune from liability under 35 U.S.C. § 287.

Even if delivery were required (which it is not), the undisputed facts show that Pavemetrics delivered the two LRAILs at issue to CSX before January 5,

-3-

2021.   John Laurent of Pavemetrics explained: "In 2020, we leased and delivered an LRAIL system to CSX with an option to purchase it.  We then sold that LRAIL system and a second LRAIL system to CSX in late-2020.  We shipped the second LRAIL system to CSX in October 2020."  ECF 162 ¶ 4. Brad Spencer of CSX also testified that CSX purchased two LRAILs in 2020, including one LRAIL that CSX had in its possession in early 2020, thus corroborating Mr. Laurent's declaration.  Laquer Ex. 18 at 25, 31-32; *see also* Parker Ex. 122 (discussing CSX keeping the leased LRAIL after purchasing it). Even under Tetra Tech's incorrect legal theory, the two LRAIL sales to CSX at issue in this motion are immune from liability under 35 U.S.C. § 287.

### III.   PRE-NOTICE SALES ARE IMMUNE FROM DAMAGES

Tetra Tech asserts that the marking statute, 35 U.S.C. § 287, allows Tetra Tech to recover damages for "continued acts of infringement" or "post-notice infringing sales activity" for the three LRAIL sales Pavemetrics made before any notice of infringement.  Opp'n at 3-4.  But courts have rejected such a theory.  Accused sales before notice of infringement cannot carry liability after notice of infringement because they are authorized sales.

The patentee in *Fonar* made a similar argument as Tetra Tech.  *Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1554-55 (Fed. Cir. 1997).  There, the patentee argued that the defendants infringed by continuing to service products sold before receiving notice of the patent.  *Id.* at 1554.  The Federal Circuit analyzed the marking statute and rejected the patentee's argument.  The court explained that "[i]f a machine was sold under circumstances that did not subject its seller to damages, then the subsequent repair cannot subject it to damages." *Id.* at 1555.  "One is entitled to repair that which is sold free of liability for infringement."  *Id.*; *see also ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 522 (Fed. Cir. 2012) ("Our holding in [*Fonar*] was based on the fact that the sale was authorized and free of liability.").

District courts, including this Court, have also rejected arguments that damages are recoverable for "continued" infringement based on sales before notice of any infringement. *E.g.*, *RSA Protective Techs., LLC v. Delta Sci. Corp.*, No. CV 19-602, 2021 WL 6104859, at *3 (C.D. Cal. Nov. 8, 2021) (concluding that plaintiff "has not established with any clear precedent" that it can "recover damages from third parties who continue to use the products that were manufactured and sold before marking took place"); *In re TransData*, 2015 WL 5098310, at *1-2 ("Plaintiff's argument that it may recover damages based on Oncor's continued infringement is contrary to the determination of the Federal Circuit in *Fonar*. . . ."); *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, No. CIV.A. 03-927, 2005 WL 1331216, at *3-5 (D. Del. June 6, 2005) (analyzing *Fonar* and concluding the accused infringer cannot be liable for post-notice acts for products sold before notice).

Indeed, the main case that Tetra Tech relies on, *Tesco*, rejected Tetra Tech's "continued" infringement theory. In *Tesco*, for 68 of 89 accused products, both the purchase order and delivery of the product occurred before the defendant received actual notice of the patent. 722 F. Supp. 2d at 770-71. The court explained that "the continued use of the [products] that were clearly sold prior to notice does not give rise to direct infringement." *Id.* at 776. The court concluded that the defendant cannot be liable for any infringement of the 68 accused products sold before notice. *Id.* at 770-71, 776-77 (noting that it is "somewhat troubled by the result it has reached," but explaining "that *Fonar* can logically be read in no other way").

Similarly, as a matter of law, Tetra Tech cannot recover damages for alleged "continued acts of infringement" or "post-notice infringing sales activity" for the three LRAIL sales Pavemetrics made before any notice of infringement.

/ / /

-5-

## IV.  THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT PAVEMETRICS SOLD THREE LRAILS BEFORE ANY NOTICE

Tetra Tech raises no genuine issues of material fact that would preclude summary judgment.  Importantly, Tetra Tech's arguments contradict its own expert.  Mr. Schoettelkotte based his damages analysis on Pavemetrics' sales of LRAIL, used the invoice dates to establish when such sales occurred, and testified that his expert report has all information necessary to separate any sales based on a failure to mark and compute the resulting damages.  Mot. at 2, 3 (citing expert report and deposition testimony); *see also* Laquer Ex. 6 at 28 (stating that "Pavemetrics entered into its first agreement with CSX to sell an accused LRAIL system" in November 2020); *id.* at 37-38 ("According to Pavemetrics' invoices made available as part of this case (summarized in Schedule 6B), the company has sold six allegedly infringing LRAIL systems in the United States . . . .").  Tetra Tech's disavowal of its own expert does not create a genuine issue of material fact.

Tetra Tech's remaining arguments do not create a genuine issue of material fact, as explained below.

### A.  Pavemetrics Sold One LRAIL To AID Before January 5, 2021

For the one LRAIL sale to AID, Tetra Tech argues that no evidence resolves the "critical factual question" of whether "AID … accepted the pricing terms" or "remitted payment" for the LRAIL invoices dated December 23, 2020.  Opp'n at 5-6.  Tetra Tech also argues that there is insufficient evidence as to "whether a sales contract occurred between Pavemetrics and AID on December 23, 2020."  *Id.* at 6.  Tetra Tech is incorrect.  Its own exhibit refutes its weak assertions.

Exhibit 102 is an email exchange between AID and Pavemetrics.  That exhibits shows that Pavemetrics sent AID invoices for LRAIL on December 23, 2020.  Parker Ex. 102 at 812.  On the same day, AID confirmed receipt of the

invoices and scheduled a wire transfer for full payment of the invoices. *Id.* at 811. The next day, on December 24, Pavemetrics confirmed that it received full payment from AID. *Id.* at 810. Thus, there is no genuine issue of material fact that Pavemetrics sold AID one LRAIL system before January 5, 2021.

Tetra Tech also argues that Pavemetrics' discovery responses create "an issue of fact" regarding "whether Pavemetrics' post-notice actions with respect to the LRAIL provided to AID constituted a continuing act of infringement." Opp'n at 6. Pavemetrics does not dispute that, in January and February 2021, it delivered to AID the LRAIL system that it sold in December 2020. Parker Ex. 101 at 803. However, as explained above, a "sale" does not require delivery of a product. *See supra* Section II. Moreover, Tetra Tech cannot recover damages for alleged "continued acts of infringement" or "post-notice infringing sales activity" for the sale that Pavemetrics made to AID before any notice of infringement. *See supra* Section III. Thus, Pavemetrics' discovery responses do not create a genuine issue of material fact.

**B.** **Pavemetrics Sold and Delivered Two LRAILs To CSX Before January 5, 2021**

For the two LRAIL sales to CSX, Tetra Tech argues that there are "serious factual questions as to when a sales contract was entered into and what continuing infringing activities (e.g., delivery) might have occurred post-notice." Opp'n 7-8. Tetra Tech is incorrect.

All relevant facts relating to the sale and delivery of the two CSX LRAIL systems at issue in this motion occurred before January 5, 2021. The two CSX invoices are dated October 23, 2020. Laurent Ex. 32. Tetra Tech's damages expert relied on those invoice dates in his damages analysis to determine when the accused sales occurred. Laquer Ex. 6 at Schedule 6B. The "Goods Agreement" between Pavemetrics and CSX for these two LRAILs incorporates the October 23, 2020 invoices, and has an effective date of November 5, 2020.

Laurent Ex. 33 at 6, 22, 26.  Mr. Laurent declared that Pavemetrics leased, delivered, and sold one LRAIL system to CSX in 2020.  ECF 162 ¶ 4. Mr. Laurent also declared that Pavemetrics sold and shipped a second LRAIL system to CSX in October 2020.  *Id.*  Mr. Spencer testified that CSX purchased two LRAIL systems in 2020.  Laquer Ex. 18 at 25.  Mr. Spencer also testified that CSX had "budget expenditures" in 2020 for two LRAIL systems.  *Id.* at 31.

Tetra Tech argues that the invoices "suggest[] that CSX had not yet remitted payment for the order or accepted the pricing terms."  Opp'n at 7.  But, as explained above, both Mr. Spencer's and Mr. Laurent's testimony flatly contradicts Tetra Tech's unsupported assertion.  Tetra Tech also argues the CSX/Pavemetrics "Goods Agreement" raises factual questions.  Opp'n at 8. But that agreement, which Mr. Spencer calls a "[p]urchase agreement," is dated November 5, 2020 and only confirms that CSX purchased two LRAILs in 2020. *See* Laquer Ex. 18 at 25-26; Laurent Ex. 33 at 6.  Tetra Tech's unsupported arguments do not create a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to material facts.").

Tetra Tech also argues at length that Pavemetrics "upgraded" the two LRAILs sold to CSX in 2020 with "real-time processing hardware."  Opp'n at 7-10.  Tetra Tech contends that "the subsequent outfitting of those systems with the subsequent sale of the real-time hardware constitutes a post-notice continuing act of infringement by Pavemetrics."  *Id.* at 10.  Tetra Tech is wrong, both factually and legally.

As Pavemetrics explained in its opening brief, Tetra Tech's infringement allegations do not rely on any real-time capability and thus such capability is irrelevant to whether an accused sale occurred.  Mot. at 2-4 (citing Dr. Morellas' report).  Pavemetrics' LRAIL sales to CSX in 2020 were "turnkey sales" that

included LRAIL hardware, data acquisition software, and processing software. *Id.* at 2; Laurent Ex. 32 ("Turnkey LRAIL Inspection System"). Tetra Tech never disputes this fact. *See* Opp'n at 7-10. Indeed, in opposing MSJ No. 4, Tetra Tech explicitly concedes this fact. ECF 183, 186-05 at 5.

Moreover, Tetra Tech identifies nothing that changes the fact that Pavemetrics never sold any real-time data processing hardware for the two CSX sales at issue in this motion. For example, Tetra Tech relies on Exhibit 103, which is an October 2021 email from Pavemetrics to CSX. Opp'n at 9. In that email, Pavemetrics proposed "upgrading the first two sets of LRAIL sensors." Parker Ex. 103. The email never mentions providing real-time processing hardware to CSX. *Id.* Pavemetrics merely proposed "tuning" its standard LRAIL sensors so that "they are compatible" with CSX's "custom" setup, and explained that "there is no charge for this" service. *Id.* This is analogous to *Fonar*, where the Federal Circuit held that "[o]ne is entitled to repair that which is sold free of liability for infringement." *Fonar*, 107 F.3d at 1555; *see also Tesco*, 722 F. Supp. 2d at 776-77 (rejecting argument that *Fonar*'s holding is inapplicable because defendant "engaged not merely in servicing the [accused] devices, but also reconfiguration and retrofitting infringing elements of these devices").

As explained above, Tetra Tech cannot recover damages for alleged "continued acts of infringement" or "post-notice infringing sales activity" for the two sales that Pavemetrics made to CSX before any notice of infringement. *See supra* Section III. Thus, there are no genuine issues of material fact and summary judgment is appropriate for the two pre-notice sales to CSX.

## V. **CONCLUSION**

Tetra Tech has raised no genuine issues of material fact. Thus, this Court should grant summary judgment that Tetra Tech cannot recover damages for

/ / /

1 | any infringement of the '293 patent for the three accused sales that occurred
2 | before January 5, 2021.

3 |                                             Respectfully Submitted,

4 |                                             KNOBBE, MARTENS, OLSON & BEAR, LLP

5 |
6 | Dated:  May 2, 2022             By:  /s/ *Nicholas M. Zovko*
7 |                                             Joseph R. Re
8 |                                             Christy G. Lea
|                                             Nicholas M. Zovko
|                                             Alan G. Laquer
9 |                                             Raymond Lu

10 |                                             *Attorneys for Plaintiff/Counterclaim Defendant*, PAVEMETRICS SYSTEMS, INC.

11 |
12 | 55516851

-10-