Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
Raymond Lu (SBN 340,873)
raymond.lu@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TETRA TECH, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | Case No. 2:21-cv-1289-MCS-MMA <br><br> **PAVEMETRICS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 4 OF (1) NO INDIRECT INFRINGEMENT BASED ON ANY DIRECT INFRINGEMENT BY CSX AND FRA AND (2) IMMUNITY FROM SUIT UNDER 28 U.S.C. § 1498** <br><br> Date: Vacated <br> Time: 9:00 a.m. <br> Location: Courtroom 7C <br><br> Honorable Mark C. Scarsi |

**TABLE OF CONTENTS**

**Page No.**

I.  THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT CSX HAS NOT DIRECTLY INFRINGED ............................... 1

    A.  No evidence shows CSX infringed under § 271(a) ..................... 1

    B.  No evidence shows CSX infringed under § 271(g) .................... 3

II. THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT PAVEMETRICS IS IMMUNE FROM SUIT UNDER 28 U.S.C. § 1498 FOR ANY ACT PURSUANT TO AN FRA CONTRACT ....................................................................................... 7

# TABLE OF AUTHORITIES

Page No(s).

*Arlton v. Aerovironment, Inc.*,
  No. 2:20-cv-7438, 2021 WL 1589302
  (C.D. Cal. April 22, 2021) .................................................................. 8, 9

*BAE Sys. Info. & Elec. Sys. Integration Inc. v. Aeroflex Inc.*,
  No. CIV. 09-769, 2011 WL 3474344 (D. Del. 2011) ............................... 9

*Bayer AG v. Housey Pharms., Inc.*,
  340 F.3d 1367 (Fed. Cir. 2003) ....................................................... 3, 4, 6

*Chicago & N.W. Ry. Co. v. Strand*,
  300 F.2d 521 (8th Cir. 1962) ..................................................................... 2

*CNET Networks, Inc. v. Etilize, Inc.*,
  528 F. Supp. 2d 985 (N.D. Cal. 2007) ...................................................... 5

*Fujitsu Ltd. v. Netgear Inc.*,
  620 F.3d 1321 (Fed. Cir 2010) .................................................................. 1

*Lucent Techs., Inc. v. Gateway, Inc.*,
  580 F.3d 1301 (Fed. Cir. 2009) ................................................................. 2

*McRO, Inc. v. Namco Bandai Games Am., Inc.*,
  23 F. Supp. 3d 1113 (C.D. Cal. 2013) ...................................................... 5

*Metabolite Labs. Inc. v. Lab. Corp. of Am. Holdings*,
  370 F.3d 1354 (Fed. Cir. 2004) ................................................................. 2

*Moleculon Research Corp. v. CBS, Inc.*,
  594 F. Supp. 1420 (D. Del. 1984) ............................................................. 2

*Moleculon Research Corp. v. CBS, Inc.*,
  793 F.2d 1261 (Fed. Cir. 1986) ................................................................. 2

*NTP, Inc. v. Research in Motion, Ltd.*,
  418 F.3d 1282 (Fed. Cir. 2005) ............................................................. 3, 4

*Ormco Corp. v. Align Techs., Inc.*,
  609 F. Supp. 2d 1057 (C.D. Cal. 2009) .................................................... 5

*Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.*,
  369 F. Supp. 3d 963 (C.D. Cal. 2019) ...................................................... 8

*Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.*,
  477 F.3d 1361 (Fed. Cir. 2007) ................................................................. 8

**TABLE OF AUTHORITIES**
(*cont'd*)

**Page No(s).**

*SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*,
    396 F. Supp. 3d 323 (S.D.N.Y. 2019) ......................................................... 2

*Wesson v. U.S.*,
    172 F.2d 931 (8th Cir. 1949) ..................................................................... 2

**OTHER AUTHORITIES**

28 U.S.C. § 1498 ............................................................................... 6, 7, 8, 9

35 U.S.C. § 271 ................................................................................. 3, 4, 5, 6

Process Patents Amendments Act ................................................................ 3

Tetra Tech has not raised a genuine issue of material fact to defeat summary judgment on either (1) no direct infringement by CSX or the FRA, or (2) Pavemetrics' immunity from suit for any processing pursuant to an FRA contract, including of CSX's acquired data.[1]

# I. THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT CSX HAS NOT DIRECTLY INFRINGED

## A. No evidence shows CSX infringed under § 271(a)

Tetra Tech does not point to any evidence showing that CSX ever used LRAIL to perform the claimed methods. *See Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1329 (Fed. Cir 2010) (requiring patent owner to show "specific instances of direct infringement"). Instead, it contends that CSX's use of LRAIL can be inferred from its purchase of LRAIL. Opp'n at 4-5. But that argument fails for several reasons.

First, CSX testified in its Rule 30(b)(6) deposition that it never used the LRAIL processing software. Laquer Ex. 18, Spencer Tr. 49:10-50:23, 64:21-66:10, 33:11-35:11. No output file shows any processing by CSX. CSX and Pavemetrics explained that CSX has been sending the railway data it collects to Pavemetrics in Canada for processing. *Id.*, Spencer Tr. 38:20-40:19; 80:3-86:23. Thus, direct evidence shows that CSX has never used the LRAIL processing software at all, let alone to identify railway track features pursuant to the claimed methods.[2]

---

[1] Tetra Tech objects to this Motion, because Pavemetrics raised its intent to file this motion five (rather than seven) days before filing it. Pavemetrics' repeatedly requested to meet and confer, but Tetra Tech represented that they were unavailable. Tetra Tech also cannot identify any prejudice.

[2] Tetra Tech misrepresents Mr. Spencer's emails. They do not state that he "installed the processing software," as Tetra Tech alleges. *See* Parker Ex. 110 at 839-40. Even if they did, the emails would not show that CSX used the LRAIL system to identify railway track features, let alone according to the claimed methods.

-1-

Despite this, Tetra Tech argues that a jury could infer from CSX's mere purchase of LRAIL that it used the processing software and did so in a manner that infringed the asserted method claims. But such inferences are unreasonable in the face of actual evidence of no use. *See SIMO Holdings, Inc. v. Hong Kong uCloudlink Network Tech. Ltd.*, 396 F. Supp. 3d 323, 335 (S.D.N.Y. 2019) (inference would not have been reasonable had evidence established what, in fact, happened); *Chicago & N.W. Ry. Co. v. Strand*, 300 F.2d 521, 524 (8th Cir. 1962) (inferences are unreasonable in view of uncontradicted evidence of a fact); *Wesson v. U.S.*, 172 F.2d 931, 933 (8th Cir. 1949) ("Circumstantial evidence, even in a civil case, is not sufficient to establish a conclusion where the circumstances are merely consistent with such conclusion or where they give equal support to inconsistent conclusions."). Such inferences would be akin to inferring that a homeowner had watered their lawn because they bought a water hose even though the homeowner testified that they had never used the water hose.

Tetra Tech's cases are distinguishable. *See* Opp'n at 4 (citing *Moleculon Research Corp. v. CBS, Inc.*, 793 F.2d 1261, 1272 (Fed. Cir. 1986); *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1318-19 (Fed. Cir. 2009); *Metabolite Labs. Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1364-65 (Fed. Cir. 2004)). Two cases involved popular products, i.e., the Rubik's Cube and Outlook, with extensive sales. In *Moleculon*, a witness testified that he observed people solving the Rubik's Cube at a convention. 594 F. Supp. 1420, 1440 (D. Del. 1984). In *Lucent*, the expert testified that both he and his wife used Outlook in an infringing manner. 580 F.3d at 1318-19. Neither case turned on whether a particular customer had used the product. Similarly, the issue in *Metabolite* was whether physicians perform a particular claim step—not whether a particular physician had ever run the tests. 370 F.3d at 1364. Thus, Tetra Tech's cases do not support drawing a use inference from a mere sale

when a product has been sold to only two customers and the direct evidence shows a particular customer did not use the device.

### B. No evidence shows CSX infringed under § 271(g)

No evidence shows that CSX downloaded any output files from Pavemetrics. Tetra Tech cites to emails showing that Pavemetrics sent links to output files, but Tetra Tech has no evidence to contradict CSX's testimony that it did not download the files.

Even if CSX had downloaded the output files, that would not be an infringement under § 271(g). The output files are not products made by a patented process. *See Bayer AG v. Housey Pharms., Inc.*, 340 F.3d 1367, 1368 (Fed. Cir. 2003); *NTP, Inc. v. Research in Motion, Ltd.*, 418 F.3d 1282, 1324 (Fed. Cir. 2005).

Tetra Tech incorrectly attempts to distinguish the *Bayer* and *NTP* cases, in which the Federal Circuit held that data information cannot satisfy the product requirement of § 271(g). Opp'n at 10-11. The claimed methods in both of those cases were similar to the methods claimed in this case, all of which were directed toward generating information, not manufacturing physical goods.

In *Bayer*, the Federal Circuit held that "infringement under 35 U.S.C. § 271(g) is limited to physical goods that were manufactured and does not include information generated by a patented process." 340 F.3d at 1368. To come to this conclusion, the Federal Circuit analyzed the statutory language: "a product which is made by a process patented in the United States" and determined that "made by" means "manufactured" and limits the statute's applicability to methods of manufacturing physical products. *Id.* at 1371-73. The Federal Circuit also analyzed the legislative history of the Process Patents Amendments Act and determined that "Congress was concerned solely with physical goods that had undergone manufacture." *Id.* 1373-76.

/ / /

Applying this interpretation of the statute, the Federal Circuit analyzed the two "products" alleged to be made by the patented process: (1) data or information produced using the patented processes, and (2) drugs produced using information created by the patented processes. In *Bayer*, the patents claimed a "method of determining whether a substance is an inhibitor or activator of a protein." *Id.* at 1369, n2. The Federal Circuit held that neither the data generated from the methods or the drugs made using that data could satisfy the statutory requirement of a product made by a patented process.

In *NTP*, the claimed methods were directed to "the transmission of information in the form of email messages." 418 F.3d at 1323. In finding infringement under § 271(g), the district court held that "wireless electronic mail" specially formatted by a patented process can be a "product" under 271(g). *Id.* The Federal Circuit reversed, holding that the "transmission of information" does not entail the manufacturing of a physical product. *Id.* at 1307. In doing so, the Federal Circuit advised that "section 271(g) does not cover every patented process and its purported result." *Id.* at 1324. Relying upon its holding in *Bayer*, it concluded that "research data is not a physical product" under § 271(g). *Id.*

Tetra Tech attempts to distinguish *Bayer* and *NTP*, arguing that methods of "detecting" or "assessing" features are not directed to the identification or transmission of "information in the abstract." Opp'n at 10. But Tetra Tech never explains its reasoning or offers any support for its argument. Methods of detecting or assessing features, like methods of determining or transmitting, merely generate data or information—they do not generate physical, manufactured articles as required by the statute. That the data or information can be collected or organized in an output file does not change the data to a manufactured good.

/ / /

Tetra Tech cites to three district court cases to argue that an electronic file may be a product under § 271(g). Opp'n at 11-12 (citing *Ormco Corp. v. Align Techs., Inc.*, 609 F. Supp. 2d 1057, 1076-77 (C.D. Cal. 2009); *CNET Networks, Inc. v. Etilize, Inc.*, 528 F. Supp. 2d 985, 994 (N.D. Cal. 2007); *McRO, Inc. v. Namco Bandai Games Am., Inc.*, 23 F. Supp. 3d 1113, 1121-23 (C.D. Cal. 2013)). At most, these cases stand for the proposition that an electronic version of a manufactured product can satisfy the statute, but they do not hold that output files of data information do so. For example, the claimed methods in *Ormco* required generating "digital 3D models of a patient's teeth" and the district court held that the generated digital 3D models were an electronic product manufactured by the claimed process.[3] *Ormco*, 609 F. Supp. 2d at 1061, 1075-76. Similarly in *CNET*, the claimed methods required "creating a product catalog stored on computer readable media" and the court held that resulting electronic catalog was a product made by a patented process under § 271(g). 528 F. Supp. 2d at 988, 994-95. Similarly, in *McRO*, the claimed methods required "animating lip synchronization and facial expressions of animated characters" and the court held that the resulting animated scenes in video games were a product made by a patented process. 23 F. Supp. 3d at 1121-23.

Here, the claims simply recite methods for generating information, including "assessing a railway track bed" (Claim 22 of the '293 patent), "detecting railroad tie distress" (Claim 8 of the '557 patent), and "detecting railway track bed features" (Claim 14 of the '557 patent). The method results in

---

[3] *See* U.S. Patent No. 6,616,444, Claim 37: "A method of processing digital data for use in facilitating the orthodontic treatment of a patient, comprising . . . producing separate digital representations of the shapes of each of a plurality of individual teeth of the patient"; Claim 45 (same); Claim 69: "A computer-implemented method for use in generating digital models of a patient's teeth."

the identification of railway track bed features and that data may be stored in a processor, but it does not generate or create an output file of any type. Generating an XML file or creating a PowerPoint presentation with the data or typing the data into an email is an extra step that does not result from the claimed method. None of the data in those formats is a physical (or electronic) good manufactured by the patented method. To hold that an XML file, PowerPoint presentation, or an email containing LRAIL data is a "product," would mean that "a person possessing the allegedly infringing information could . . . possibly infringe by merely entering the country." *See Bayer*, 340 F.3d at 1376. But the Federal Circuit has rejected applying § 271(g) to such data or information. *Id.*

Moreover, Tetra Tech relies on emails discussing data that Pavemetrics processed for the benefit of the FRA under FRA contracts. Parker Ex. 108 (discussing processing CSX data used for the FRA); Parker Ex. 110 ("I am working on a presentation right now that includes results from our FRA TTCI testing."). But, as explained below, Pavemetrics is immune from suit under 28 U.S.C. § 1498 for any act done pursuant to any FRA contract, including the processing of CSX data. See *infra* Section II.

Thus, the Court should grant summary judgment that CSX (nor the FRA) has not directly infringed any claim of the asserted patent.[4]

/ / /

---

[4] Tetra Tech did not oppose Pavemetrics' motion that the FRA has never used LRAIL to process any data and did not dispute that fact. *See* Opp'n at 3-11; ECF 184 at 4 (Fact 5).

## II. THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT PAVEMETRICS IS IMMUNE FROM SUIT UNDER 28 U.S.C. § 1498 FOR ANY ACT PURSUANT TO AN FRA CONTRACT[5]

Tetra Tech does not dispute most facts material to Pavemetrics' affirmative defense under 28 U.S.C. § 1498. For example, Tetra Tech concedes that Pavemetrics is a contractor or subcontractor to the FRA, Pavemetrics partners with others, including CSX, under FRA contracts to conduct testing using the accused LRAIL, and Pavemetrics has processed LRAIL data under an FRA contract. ECF 184 at 4-5 (Facts 1-4). Tetra Tech also does not dispute that Mr. Spencer of CSX, Dr. Hébert of Pavemetrics, and Mr. Laurent of Pavemetrics all testified or declared that Pavemetrics has processed CSX's LRAIL data for the FRA under an FRA project. *See* Opp'n at 12-15.

The crux of Tetra Tech's opposition is that "[p]rocessing data for the FRA does not . . . confer immunity for the infringing sales and processing data *for CSX* . . . pursuant to the contracts between Pavemetrics and CSX." Opp'n at 13. Tetra Tech misses the mark. Pavemetrics' motion establishes that it is immune from liability for **certain uses** of LRAIL, not **all sales** of LRAIL. Namely, Pavemetrics is immune from suit for any processing of data by Pavemetrics for CSX or FRA that was performed pursuant to contracts with the FRA. Mot. at 1, 7.

Tetra Tech's remaining arguments also fail. Tetra Tech suggests that summary judgment is improper because Section 1498 involves a "highly factual" inquiry. Opp'n at 12. But the two cases Tetra Tech relies on from this

---

[5] Tetra Tech hopes to strike a properly pled affirmative defense with a four-line footnote. Opp'n at 12, n.4. Tetra Tech ignores that it deposed Pavemetrics' fact witnesses and questioned them extensively about its relationship with the FRA. Also, Pavemetrics' expert, Dr. Frakes, addressed immunity under Section 1498 in his expert report.

Court, *Arlton* and *Saint-Gobain*, granted summary judgment of immunity under Section 1498 despite acknowledging that the defense is highly factual. *Arlton v. Aerovironment, Inc.*, No. 2:20-cv-7438, 2021 WL 1589302, at *5-10 (C.D. Cal. April 22, 2021); *Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.*, 369 F. Supp. 3d 963, 970-983 (C.D. Cal. 2019). And Tetra Tech raised no genuine issues of material fact for either element of Pavemetrics' Section 1498 defense.

Regarding the first element, there are no genuine issues of material fact that any use of LRAIL under the FRA contracts is "for the Government." The litany of cases Tetra Tech relies on are inapposite, as there is no dispute that LRAIL uses not performed under an FRA contract may be adjudicated in this Court. *See* Opp'n at 13. Moreover, the Federal Circuit has explained that "use for the Government" has a broad definition and does not require that the primary purpose of the use be for a governmental purpose. *Sevenson Envtl. Servs., Inc. v. Shaw Envtl., Inc.*, 477 F.3d 1361, 1365-66, (Fed. Cir. 2007) (affirming summary judgment of immunity from suit under Section 1498). It only requires use by the contractor for a benefit to the Government, which Pavemetrics has established here. *Id.*; Mot. at 3, 6.

Tetra Tech cites three emails, Exhibits 122-124, but they are irrelevant and do not create a genuine issue of material fact. Opp'n at 14. Those emails are from 2020, and merely discuss ideas for CSX's potential use of LRAIL. *See* Parker Exs. 122-124. But, for CSX, the actual uses at issue in this motion relate to Pavemetrics' processing CSX data for the FRA during or after June 2021. Mot. at 3; ECF 159-1 at 3 (Fact 6). Tetra Tech also cites three "Goods Agreements" between CSX and Pavemetrics. Opp'n at 14 (Parker Exs. 61, 69, 70). But nothing in those agreements negates the fact that Pavemetrics processed LRAIL data, including data collected by CSX, under the FRA contracts.

/ / /

Regarding the second element, there are no genuine issues of material fact that the use is "with the authorization and consent" of the Government. Importantly, Tetra Tech does not dispute that the FRA contracts include the broad language of the Government's Alternate Authorization and Consent clause, FAR 52.227-1, Alternate I. *See* Opp'n at 14-15. Nor can it. As this Court recently explained, that specific clause "***broadly states***, 'The Government authorizes and consents to ***all use and manufacture***  of any invention described in and covered by a United States patent ***in the performance of this contract*** or any subcontract at any tier.'" *Arlton*, 2021 WL 1589302, at *9 (emphases added); *see also BAE Sys. Info. & Elec. Sys. Integration Inc. v. Aeroflex Inc.*, No. CIV. 09-769, 2011 WL 3474344, at *3, 13-14 (D. Del. 2011) (granting summary judgment and explaining that FAR § 52.227-1, Alternate I is "the broadest authorization and consent clause available"). Thus, the Government expressly authorized all "use" of LRAIL pursuant to an FRA contract, including Pavemetrics' processing of data collected by CSX as part of its joint R&D project with the FRA. It also authorized all "manufacture" of any alleged "product" from that use, including output files or other data results.

Tetra Tech argues that "the FRA contracts do not mention Pavemetrics' contracts with CSX" or "the scope of work under those contracts." Opp'n at 15. But that is irrelevant. As Tetra Tech concedes, Pavemetrics has partnered with CSX under an FRA contract, with the broadest available authorization and consent clause, to conduct testing using the accused LRAIL systems. *See id.*; ECF 184 at 5 (Fact 3). Any such use of LRAIL is "with the authorization and consent" of the Government, as expressly stated in the FRA contracts.

Thus, the Court should grant summary judgment that Pavemetrics is immune from suit under 28 U.S.C. § 1498 for any act done pursuant to any FRA contract, including the processing of CSX data.

/ / /

|    |                        |                                                                                  |
|----|------------------------|----------------------------------------------------------------------------------|
| 1  |                        | Respectfully Submitted,                                                          |
| 2  |                        |                                                                                  |
| 3  |                        | KNOBBE, MARTENS, OLSON & BEAR, LLP                                               |
| 4  | Dated: May 2, 2022     | By: /s/ *Nicholas M. Zovko*                                                      |
| 5  |                        |     Joseph R. Re                                                                 |
|    |                        |     Christy G. Lea                                                               |
| 6  |                        |     Nicholas M. Zovko                                                            |
|    |                        |     Alan G. Laquer                                                               |
| 7  |                        |     Raymond Lu                                                                   |
| 8  |                        | *Attorneys for Plaintiff/Counterclaim Defendant,* PAVEMETRICS SYSTEMS, INC.      |

55516878