Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
Raymond Lu (SBN 340,873)
raymond.lu@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA 92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TETRA TECH, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | Case No. 2:21-cv-1289-MCS-MMA <br><br> **PAVEMETRICS'S REPLY IN SUPPORT OF ITS MOTION TO STRIKE PORTIONS OF EXPERT REPORT OF DR. VASSILIOS MORELLAS** <br><br> Hearing Date: Vacated <br> Time: 9:00 am <br> Ctrm: 7C <br><br> Honorable Mark C. Scarsi |

# TABLE OF CONTENTS

Page No.

I. INTRODUCTION ................................................................................... 1

II. TETRA TECH CANNOT JUSTIFY DR. MORELLAS' LEGALLY INCORRECT DISTORTION OF THE CLAIM TERM "THE" ........................................................................................ 1

III. TETRA TECH ADMITS DR. MORELLAS' LACKS EXPERTISE OR KNOWLEDGE REGARDING PAVEMETRICS' KNOWLEDGE .......................................................... 4

IV. CONCLUSION ....................................................................................... 8

# TABLE OF AUTHORITIES

Page No(s).

*Brown v. 3M*,
  265 F.3d 1349 (Fed. Cir. 2001).................................................................................4

*Estate of Barabin v. AstenJohnson, Inc.*
  740 F.3d 457 (9th Cir. 2014).....................................................................................7

*Hangarter v. Provident Life & Accident Ins. Co.*,
  373 F.3d 998 (9th Cir. 2004).....................................................................................7

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004).................................................................................4

*United States ex rel. Kelly v. Serco, Inc.*,
  846 F.3d 325 (9th Cir. 2017).....................................................................................7

*Mukhtar v. Cal. State Univ.*,
  299 F.3d 1053 (9th Cir. 2002)...................................................................................7

*Oatey Co. v. IPS Corp.*,
  514 F.3d 1271 (Fed. Cir. 2008).................................................................................3

*Tech. Consumer Prods., Inc. v. Lighting Sci. Grp. Corp.*,
  955 F.3d 16 (Fed. Cir. 2020)................................................................................ 2, 3

*United States v. 87.98 Acres of*
  530 F.3d 899 (9th Cir. 2008).....................................................................................8

*United States v. Diaz*,
  876 F.3d 1194 (9th Cir. 2017)...................................................................................7

*United States v. Duncan*,
  42 F.3d 97 (2d Cir. 1994)..........................................................................................7

## OTHER AUTHORITIES

Fed. R. Evid. 702 ........................................................................................................7

Mills, Reiley, and Highley,
  *Patent Law Fundamentals* § 14.13 (2008).............................................................3

## I. INTRODUCTION

Tetra Tech's Opposition confirms that it and Dr. Morellas ignore the well-established meaning of the word "the" and the specification's differentiation between the words "the" and "separate." Tetra Tech claims that the dispute is irrelevant because, allegedly when LRAIL operates in real-time mode, the same processor is used for collection and analysis. But Pavemetrics' expert has explained in his non-infringement report that, even in real-time mode, the system uses *separate* computers with *separate* processors for acquiring data and processing the data. Moreover, Tetra Tech appears to advance Morellas' flawed interpretation of "the" in order to further allege that LRAIL also infringes when *not* in real-time mode—where even Tetra Tech appears to acknowledge that separate processors are used. Accordingly, Morellas should be precluded from presenting his legally flawed opinion regarding "the processor" and "the at least one processor."

Tetra Tech's Opposition also confirms that Morellas lacks expertise regarding Pavemetrics' knowledge. Accordingly, his testimony on that subject cannot help the jury and would instead risk creating confusion through cloaking disputed allegations with the veil of an "expert" opinion. Thus, Morellas' opinions regarding Pavemetrics' knowledge should also be stricken.

## II. TETRA TECH CANNOT JUSTIFY DR. MORELLAS' LEGALLY INCORRECT DISTORTION OF THE CLAIM TERM "THE"

The asserted claims recite the claim term "the" to establish antecedent basis requiring at least one processor introduced *earlier* in the claim is the *same* as at least one processor referenced later in the claim. For example, claim 1 of the '293 patent requires: (1) "a data storage apparatus in communication with **at least one processor**," (2) "at least one sensor is in communication with **the at least one processor**," and (3) "**the at least one processor** is configured to run an algorithm." (Ex. 3 at 29:22-55 (emphases added).)

-1-

Pavemetrics explained that the Federal Circuit in *Technology Consumer Products* confirmed that, when a claim limitation is specified in a claim, and then the same claim limitation appears later in the claim prefaced by the word "the," the antecedent basis for that later reference is found earlier in the claim. Mot. at 7 (citing *Tech. Consumer Prods., Inc. v. Lighting Sci. Grp. Corp.*, 955 F.3d 16, 22 (Fed. Cir. 2020)). Tetra Tech asks the Court to ignore the claim term "the" as well as *Technology Consumer Products* because the patents' specification discloses an embodiment in which different processors are used for data collection and data processing. Opp'n 6-9 (seeking to dismiss *Tech. Consumer Prods.* as "a single case . . . on general principles of antecedent basis" that should not "support a construction that is completely inconsistent with the specification.").

However, the specification confirms that Pavemetrics' fidelity to the claim term "the" is correct, and that Tetra Tech and Dr. Morellas' attempt to ignore the word "the" is erroneous. Tetra Tech first relies on the specification's discussion of "the" processor:

> a processor 12 in communication with a light line projector 14 (e.g., a laser) and one or more 3D sensors 16 for detecting light from the light line projector 14 that is reflected from a railway track bed. The sensors 16 detect elevation and intensity data and the data is stored in a data storage apparatus 18 in communication with the processor 12.

Opp'n at 6 (quoting '293 patent, 8:66-9:5).

But Tetra Tech argues that Morellas should be permitted to testify that, when the claim includes multiple references to "the at least one processor" or "the processor," "these processors can be the same single processor or **may be separate** processors." Opp'n at 8 (emphasis added). Tetra Tech attempts to

-2-

justify that distortion of the word "the" as covering "separate" processors based on the specification's disclosure that: "analysis can be performed by **the processor** 12 **or a separate processor** separate from the system 10 by taking the data gathered by the system 10 and analyzing it." Opp'n at 6 (quoting '293 patent 9:25-27). But that teaching from the specification confirms that "the" has a *different* meaning from the word "separate." The specification uses the word "the" to refer to the *same* processor (callout 12) that was previously introduced. When the specification seeks to refer to a *different* processor rather than *the* processor, the specification uses the term "*separate* processor." '293 patent 9:25-27. Morellas' opinion that "the" processor could be a "separate" processor contradicts the specification. *Id.*

Tetra Tech relies on *Oatey* for the proposition that a claim term should not be construed to exclude an embodiment. Opp'n at 9 (citing *Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008)). But it is Morellas' interpretation of "the processor" that is inconstant with the specification, by seeking to conflate "the" and "separate." Moreover, the Federal Circuit in *Oatey* explained that "[a]t lease where claims ***can reasonably be interpreted*** to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence on the contrary." 514 F.3d at 1277 (emphasis added). Tetra Tech and Morellas' interpretation of "the" as including "separate" is not a reasonable interpretation of the claims. *Tech. Consumer Prods.*, 955 F.3d at 22; *see also* Mills, Reiley, and Highley, *Patent Law Fundamentals* § 14.13 (2008) ("An ambiguity would exist if an element were preceded by the definite article [e.g., *the* filament] when first mentioned in the claim. The question which would naturally enter one's mind would be: 'What filament?' Accordingly, a foundation or antecedent basis must be laid for each element recited. This can be done . . . by introducing each element with the indefinite article ('a' or 'an'). Subsequent mention of the element is to be modified by the definite article . . .

thereby making later mention(s) of the element unequivocally referable to its earlier recitation.") (emphasis in original); *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004) (it is a "bedrock principle" of patent law that "the claims of a patent define the invention"); *Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001) (recitations of "or" were "not technical terms of art, and do not require elaborate interpretation" and "[t]here is no basis in the specification or prosecution history for reading 'or' as 'and.'").

Tetra Tech also argues that Morellas should be permitted to present to the jury his misinterpretation of the claim term "the" because Pavemetrics did not seek a construction of the word "the." Opp'n at 5. But the deeply flawed nature of Morellas' opinion only became clear during his deposition. Moreover, a litigant cannot reasonably be expected to seek constructions on every claim term as basic as the word "the" out of fear that its opponent might later have its expert witness attempt to distort that term.

Tetra Tech's last argument accuses Pavemetrics' motion to strike as being "vague and overly broad." Opp'n at 11. Tetra Tech complains that Morellas' discussion of "the processor" and "the at least one processor" "encompasses over 100 paragraphs." But the voluminous nature of Morellas' opinion cannot compensate for its legally erroneous nature.

Accordingly, Dr. Morellas' opinions regarding the terms "the processor" or "the at least one processor" should be stricken.

### III. <u>TETRA TECH ADMITS DR. MORELLAS' LACKS EXPERTISE OR KNOWLEDGE REGARDING PAVEMETRICS' KNOWLEDGE</u>

Pavemetrics seeks to strike Paragraphs 617-619 of Morellas' report, where he seeks to present an opinion regarding Pavemetrics' knowledge. Tetra Tech should not be permitted to present its allegations regarding Pavemetrics' supposed knowledge through the testimony of a technical expert admittedly not

qualified to opine regarding such knowledge. The contents of the three paragraphs at issue are:

- Paragraph 617:

   I also understand that Tetra Tech has alleged that Pavemetrics, with knowledge of the asserted patents, actively and knowingly induced the infringing acts of its customers, including CSX and AID."

- Paragraph 618:

   I understand that Pavemetrics had knowledge of the '293 patent and its infringement at least as early as January 5, 2021, when Tetra Tech, through its counsel, sent a letter to Pavemetrics' President and CEO, Richard Habel. PAVEMETRICS0097997 (Laurent Dep. Ex. 51). I also understand that Pavemetrics had knowledge of the '557 patent and its infringement at least as early as July 22, 2021, when Tetra Tech, through its counsel, sent a notice letter to Pavemetrics' counsel in this lawsuit. TETRATECH_0396498 (Keyes Dep. Ex. 256).

- Paragraph 619:

   I also understand that Tetra Tech has alleged that Pavemetrics has had knowledge or was willfully blind of the asserted patents and their infringement prior to these notice letters. For example, I understand from documents produced in this case that Pavemetrics discussed Tetra Tech's patents and any infringement risks with CSX at least as early as December 2020. TETRATECH_0138332. I also understand from

documents produced in this case that Pavemetrics has been actively tracking and monitoring Tetra Tech's business activities, Tetra Tech's 3DTAS product, Tetra Tech's litigation activities, and Tetra Tech's patents since at least 2015. PAVEMETRICS0204782 (Fox-Ivey Dep. Ex. 14); PAVEMETRICS0208687 (Fox-Ivey Dep. Ex. 10); PAVEMETRICS0221951; PAVEMETRICS0139711 (Habel Dep. Ex. 70); PAVEMETRICS0198379 (Laurent Dep. Ex. 36); PAVEMETRICS0104601 (Laurent Dep. Ex. 37); PAVEMETRICS0104603 (Laurent Dep. Ex. 38); PAVEMETRICS0206199 (Laurent Dep. Ex. 39); PAVEMETRICS0287917 (Habel Dep. Ex. 75); PAVEMETRICS0197714 (Habel Dep. Ex. 71); PAVEMETRICS0287919; PAVEMETRICS0197711; PAVEMETRICS0287928. In addition, I understand that since February 2021, Tetra Tech has listed its patents on its website (https://railai.tetratech.com/patents/), including the '293 and '557 patents. Tetra Tech's Supp. Resp. to First Set of Interrogs. (No. 5) at 4; TETRATECH_0396598; Fox-Ivey Dep. Ex. 16; Fox-Ivey Dep. Ex. 17. I also understand from documents produced in this case that in February 2021, after receiving the notice letter concerning the '293 patent and its infringement, Pavemetrics received an e-mail from the Federal Railroad Administration notifying Pavemetrics the patents section on Tetra Tech's

website, which as discussed, identified the '557 patent (a continuation patent of the already asserted '293 patent). PAVEMETRICS0232072 (Fox-Ivey Dep. Ex. 15).

Ex. 1.

As shown, the paragraphs at issue contain detailed opinions regarding Pavemetrics' supposed knowledge at various points in time. But Tetra Tech concedes that Dr. Morellas is not qualified to opine regarding Pavemetrics' knowledge or mental state. Opp'n at 11. Instead, Tetra Tech argues that Dr. Morellas' testimony regarding Pavemetrics' knowledge of the asserted patents merely "addresses his understanding of Tetra Tech's allegations and his understanding of certain facts underlying those claims." *Id.* But an expert witness may not testify regarding his understanding outside of his area of expertise because that cannot be helpful to the jury. Fed. R. Evid. 702. Morellas' opinions in those paragraphs goes beyond presenting his "understanding" as Tetra Tech argues, and instead presents the legal conclusion that Pavemetrics had knowledge sufficient for indirect infringement. But, "[w]hen an expert undertakes to tell the jury what result to reach, this does not aid the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury's." *United States v. Diaz*, 876 F.3d 1194, 1197 (9th Cir. 2017) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)). Accordingly, "an expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1016 (9th Cir. 2004) (quoting *Mukhtar v. Cal. State Univ.*, 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002)), *overruled on other grounds by Estate of Barabin v. AstenJohnson, Inc.*, 740 F.3d 457 (9th Cir. 2014) (en banc)); *see United States ex rel. Kelly v. Serco, Inc.*, 846 F.3d 325, 337 (9th Cir. 2017)

Tetra Tech fails to offer sufficient justification for Morellas' opinions in those three paragraphs.  As the proponent of that expert testimony, Tetra Tech bears the burden of proving its admissibility.  *United States v. 87.98 Acres of Land,* 530 F.3d 899, 904 (9th Cir. 2008).  Because Tetra Tech has not carried its burden, Morellas' Paragraphs 617-619 should be stricken.

## IV. CONCLUSION

For the reasons discussed above and in Pavemetrics' Opening Brief, Morellas' opinions regarding "the processor" and "the at least one processor" should be stricken, and Paragraphs 617-619 in his report should also be stricken.

Respectfully Submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  May 2, 2022    By:  /s/ *Nicholas M. Zovko*
          Joseph R. Re
          Christy G. Lea
          Nicholas M. Zovko
          Alan G. Laquer
          Raymond Lu

*Attorneys for Plaintiff/Counterclaim Defendant,*
PAVEMETRICS SYSTEMS, INC.

55516904