Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
Raymond Lu (SBN 340,873)
raymond.lu@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TETRA TECH, INC., <br><br> Defendant. <br><br> AND RELATED COUNTERCLAIMS | Case No. 2:21-cv-1289-MCS-MMA <br><br> **PAVEMETRICS' REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT NO. 2 OF (1) NO INFRINGEMENT OF CLAIM 14 OF THE '557 PATENT AND (2) NO DIRECT INFRINGEMENT OF METHOD CLAIMS BY SALES** <br><br> Date:        Vacated <br> Time:        9:00 a.m. <br> Location:   Courtroom 7C <br><br> Honorable Mark C. Scarsi |

**[REDACTED VERSION OF DOCUMENT FILED UNDER SEAL]**

# TABLE OF CONTENTS

**Page No.**

I. INTRODUCTION ................................................................................1

II. PAVEMETRICS' MOTION IS BASED ON DISCOVERY IT PROVIDED .......................................................................................2

III. PAVEMETRICS DID NOT IGNORE ANY RELEVANT EVIDENCE .........................................................................................3

IV. NO EVIDENCE SUPPORTS THAT LRAIL EVER PERFORMED TEMPLATE MATCHING IN THE U.S. .....................4

V. TETRA TECH FAILS TO IDENTIFY EVIDENCE SHOWING INFRINGEMENT BY LRAIL'S NEURAL NETWORK .....................................................................................7

    A. Tetra Tech Has Not Shown that LRAIL's Neural Network Input a 3D Feature Library ......................................8

    B. Tetra Tech Has Not Shown that LRAIL's Neural Network Tested Features in Sequence ................................8

    C. Tetra Tech Has Not Shown that LRAIL Ever Eliminated Any Template Matching Score ......................9

VI. CONCLUSION .................................................................................10

# TABLE OF AUTHORITIES

**Page No(s).**

*Nissan Fire & Marine Ins. Co. v. Fritz Cos.*,
    210 F.3d 1099 (9th Cir. 2000) ........................................................................... 7

*Nomadix, Inc. v. Hewlett-Packard Co.*,
    No. CV 09–08441 DDP, 2012 WL 682874
    (C.D. Cal. Mar. 1, 2012) ................................................................................... 3

*Triton Energy Co. v. Square D Co.*,
    68 F.3d 1216 (9th Cir. 1995) ............................................................................. 4

# OTHER AUTHORITIES

Fed. R. Civ. P. 37 ........................................................................................................ 2

Rule 26 ........................................................................................................................ 2

## I. INTRODUCTION

Tetra Tech's Opposition ignores and contradicts the relevant evidence. For example, Tetra Tech's argument that LRAIL infringed claim 14 by performing template matching in the U.S. ignores the source code's requirements for template matching to occur. The source code shows that ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████. Instead, Tetra Tech attempts to shift its burden to Pavemetrics, arguing that it cannot show that template matching never occurred. But Pavemetrics has shown that Tetra Tech lacks sufficient evidence for that essential element of its infringement claim.

Tetra Tech's Opposition also confirms that it lacks evidence showing infringement by Pavemetrics' LRAIL neural network. For example, Tetra Tech fails to identify LRAIL ever eliminating any supposed feature template matching score as required by claim 14. Instead, Tetra Tech argues that mere thresholding is "eliminating." But Tetra Tech's CTO—the patent's sole inventor—confirmed that eliminating is distinct from thresholding. Moreover, Tetra Tech's arguments concerning LRAIL's neural network rely primarily on Dr. Morellas' hypothetical conjecture regarding neural networks in general rather than actual evidence of LRAIL's accused neural network. Tetra Tech again lacks evidence necessary to carry its burden.[1]

---

[1] Because Tetra Tech concedes that sales cannot constitute infringement

## II. PAVEMETRICS' MOTION IS BASED ON DISCOVERY IT PROVIDED

Tetra Tech first argues that Fed. R. Civ. P. 37(c)(1) precludes Pavemetrics from relying on the facts addressed in Dr. Hébert's declaration. Opp'n 3-7. But Tetra Tech acknowledges that Rule 37(c)(1) is limited to circumstances where a party failed to provide information "as required by Rule 26(a) or (e)." *Id.* at 3. Tetra Tech argues that Pavemetrics was "obligated to produce" the documents that it relies upon for summary judgment during fact discovery. *Id.* at 6. But Tetra Tech does not dispute that Pavemetrics provided in discovery the evidence that this motion is based on—LRAIL's source code and output files. Moreover, Pavemetrics also provided its contentions and identified persons knowledgeable regarding the relevant facts. For example, as Tetra Tech admits, Pavemetrics responded to Tetra Tech's December 20, 2021 supplemental infringement contentions by explaining in its January 6, 2022 non-infringement contention interrogatory response, that:

> Tetra Tech will be unable to make a showing that these algorithms have been performed in the United States because the LRAILs sold by Pavemetrics in the United States since April 7, 2020, the issue date of the '557 patent, have been configured to use a deep neural network method to identify spikes, fasteners, anchors, and other railway track bed features. They are not configured to use a conventional "template matching" method like the method that Tetra Tech contends infringes claim 14.

Ex. 97 at 681. Pavemetrics also explained in its April 26, 2021 Initial Disclosures that Dr. Hébert has discoverable information regarding the

---

of method claims (Opp'n at 23-24), Pavemetrics does not further address that portion of its Motion (Mot. at 13-14).

-2-

"[d]esign and operation of the LRAIL system, including its source code," which Pavemetrics may use to support its claims or defenses. Ex. 26 at 2.

Tetra Tech relies on *Nomadix, Inc. v. Hewlett-Packard Co.*, No. CV 09–08441 DDP, 2012 WL 682874, *3 (C.D. Cal. Mar. 1, 2012) as "excluding a declaration when it included information not previously disclosed." Opp'n at 4 and 6. But the Court in *Nomadix* precluded an attorney declaration because it was based on test results that were not disclosed during fact discovery. 2012 WL 682874 at *3. In contrast, Tetra Tech does not dispute that Dr. Hébert's fact-witness declaration is based on source code and other documents that Pavemetrics provided during fact discovery. Moreover, Dr. Hébert's declaration is consistent with Pavemetrics' Initial Disclosures and non-infringement contention response. *See* Ex. 26 at 2; Ex. 97 at 681. Indeed, Tetra Tech admits that it had the opportunity to depose Dr. Hébert on January 7, 2022 regarding the fact that LRAIL never performed template matching in the U.S. Opp'n at 5. Tetra Tech cannot escape its inability to carry its burden on infringement by attempting to preclude Dr. Hébert's declaration.

### III. PAVEMETRICS DID NOT IGNORE ANY RELEVANT EVIDENCE

Tetra Tech next complains that Pavemetrics did not address all of what Tetra Tech contends is evidence supporting its infringement allegation. Opp'n at 7-8. That section of the Opposition fails to identify any specific evidence that Tetra Tech contends is relevant to the issues in dispute here. *Id.* Pavemetrics' Motion addresses specific limitations and failures of proof by Tetra Tech. Mot. at 9-13. For example, although Pavemetrics disputes that LRAIL's template-matching function performs claim 14, Pavemetrics need not address Tetra Tech's evidence on that issue because Tetra Tech cannot show that LRAIL ever performed that function in the U.S. *Id.* at 9-10. As another example, Pavemetrics need not address every opinion by Dr. Morellas regarding neural networks in general, particularly given his admission that he has not reviewed

evidence of Pavemetrics' neural network models and opines instead about neural networks in general. Ex. 20 at 95:22-96:16; *see Triton Energy Co. v. Square D Co.*, 68 F.3d 1216, 1222 (9th Cir. 1995) (expert's failure to examine the device at issue "substantially impaired his ability to express a reliable expert opinion" and thus his opinion and inferences drawn from it cannot create a genuine issue of material fact). And, it is sufficient for Pavemetrics to show that Tetra Tech lacks evidence on a single limitation, even when it also lacks evidence on other limitations. Pavemetrics responds below to the specific arguments raised in the later sections of Tetra Tech's Opposition.

## IV. NO EVIDENCE SUPPORTS THAT LRAIL EVER PERFORMED TEMPLATE MATCHING IN THE U.S.

[redacted]

-4-

-5-







Tetra Tech ignores that Pavemetrics is entitled to summary judgment of non-infringement by showing that Tetra Tech does not have sufficient evidence to show that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). Pavemetrics has carried its initial burden of showing that Tetra Tech lacks sufficient evidence for that essential element. Tetra Tech cannot avoid summary judgment by arguing merely that Dr. Morellas' disagreement precludes it.

## V. TETRA TECH FAILS TO IDENTIFY EVIDENCE SHOWING INFRINGEMENT BY LRAIL'S NEURAL NETWORK

Pavemetrics explained that it is entitled to summary judgment of non-infringement of claim 14 by LRAIL's neural network operation because Tetra Tech cannot identify evidence showing that operation satisfies at least three limitations required by the claim. Tetra Tech's Opposition confirms the absence of sufficient evidence for those limitations.

### A. **Tetra Tech Has Not Shown that LRAIL's Neural Network Input a 3D Feature Library**

Tetra Tech argues that "because the LRAIL's neural networks were trained using 3D data in its training images, its filters learn and identify 3D features which are stored in the convolutional neural network and therefore represent a 3D feature library." Opp'n at 17. Tetra Tech does not explain what it means for filters to "represent" a 3D feature library. Claim 14 requires "inputting… a 3D feature library" not "representing" a 3D feature library. Ex. 1, Claim 14.

Tetra Tech also argues that "in identifying the different railway track features, the LRAIL uses filters stored in the convolution neural network that one of ordinary skill would have understood to be a 3D feature library." Opp'n at 15. However, Tetra Tech fails to identify any LRAIL evidence supporting that conclusion. Tetra Tech never provides any example of any LRAIL filter. Tetra Tech relies on Morellas' opinion that "[h]igher-level stage filters, however, would present more recognizable shapes and figures and would more closely resemble features of the target image." Morellas ¶49. But Morellas fails to identify *any evidence* supporting that new, conclusory opinion. *Id.* To the contrary, the '557 patent's sole inventor admitted that the results of a neural network's training are *not* a library. Ex. 17 (Mesher Tr. 135:5-10).

### B. **Tetra Tech Has Not Shown that LRAIL's Neural Network Tested Features in Sequence**

Pavemetrics explained that LRAIL executes neural networks in parallel threads simultaneously, while claim 14 requires "testing each of a plurality of railway track bed features in the 3D feature library against feature targets in the elevation data in sequence." Mot. at 12. Tetra Tech responds that LRAIL only performs such multithreading when its multiread parameter is enabled. Opp'n at 19. Tetra Tech then argues that "nothing in the record shows that this

-8-

variable would always be enabled during the execution of the accused methods." *Id.* However, Tetra Tech fails to carry its burden of showing that the multithreading parameter was *disabled* when LRAIL executed a neural network in the United States.

### C. Tetra Tech Has Not Shown that LRAIL Ever Eliminated Any Template Matching Score

Pavemetrics explained that LRAIL's neural network does not perform "eliminating feature template matching scores" as required by claim 14. Mot. at 13. In its Opposition, Tetra Tech never identifies *any* template matching score—let alone any supposed *elimination* of any such score. Opp'n at 21-23. Tetra Tech does not identify any source code performing any supposed elimination of any supposed score. *Id.* Instead, Tetra Tech cites to Paragraph 76 of Morellas' Declaration and Paragraph 589 of Morellas' report (Exhibit 98). Opp'n at 21. Paragraph 589 of Moralles' report is his conclusion paragraph under the "Convolutional Neural Networks" heading of the "eliminating feature template matching scores" limitation. Ex. 98 at 745-48. The first time that Morellas mentions any "eliminating" is in his conclusion that "[a]ccordingly, it is my opinion that the LRAIL eliminates feature template matching scores…." Ex. 98 ¶589. The report section that paragraph concludes also does not identify any supposed elimination of any supposed score. *Id.* ¶¶586-588. Instead, Morellas opines merely that LRAIL "applies a minimum correlation threshold so that a railway track bed feature will not be identified as a particular three-dimensional feature unless the minimum correlation threshold is met." *Id.* ¶586. Similarly, Paragraph 76 of Morellas' Declaration opines merely that "the result of the convolution corresponds to a template matching score, and the filter's threshold corresponds to a 3D feature correlation threshold, consistent with the language of the claims." Morellas ¶76. Neither Tetra Tech nor Morellas identify any evidence of any supposed "elimination" of any score.

Instead, Tetra Tech appears to argue that merely applying a threshold to a set of scores qualifies as "eliminating" scores below the threshold. However, the '557 patent's sole inventor—Tetra Tech's CTO Dr. Mesher—testified that thresholding values is distinct from eliminating them:

> If -- and again, getting back to the context of what we're talking about here, if I had a three-dimensional model that I gave to a template matching routine, to then go through and determine whether or not that feature exists in an elevation map, I would generate a correlation matrix. And **you wouldn't eliminate values**. **You might threshold the values** in order to determine whether or not something matches to a level that's high enough to be worthy of consideration, **but you would never eliminate them**.

Ex. 17 at 192:10-20. (emphasis added)

The remainder of Tetra Tech's Opposition and Morellas' declaration are similarly irrelevant. For example, Morellas presents conclusory opinions regarding the Softmax function, but concludes that "[t]he Softmax function effectively provides an adaptable threshold based on identifying a singular match with the highest probability and eliminating the rest." Morellas ¶83 Again, Tetra Tech conflates thresholding with elimination. Morellas also relies upon the testimony of Thanh Nguyen. *Id.* ¶¶85-86. However, Mr. Nguyen confirmed merely that LRAIL's system performs thresholding. Ex. 46 at 78:18-22. He did not discuss eliminating any score. *Id*. Summary judgment of non-infringement should be granted because Tetra Tech has no evidence that LRAIL's neural network has ever eliminated any score.

## VI.  CONCLUSION

For the reasons explained above and in Pavemetrics' opening brief, Pavemetrics respectfully requests that the Court grant summary judgment that no use of LRAIL has infringed claim 14 of the '557 patent.

-10-

|    |                        |                                                                 |
|----|------------------------|-----------------------------------------------------------------|
| 1  |                        | Respectfully Submitted,                                         |
| 2  |                        | KNOBBE, MARTENS, OLSON & BEAR, LLP                              |
| 4  | Dated: May 2, 2022     | By: /s/ *Nicholas M. Zovko*                                     |
| 5  |                        | Joseph R. Re                                                    |
|    |                        | Christy G. Lea                                                  |
| 6  |                        | Nicholas M. Zovko                                               |
|    |                        | Alan G. Laquer                                                  |
| 7  |                        | Raymond Lu                                                      |
| 8  |                        | *Attorneys for Plaintiff/Counterclaim Defendant,*               |
|    |                        | PAVEMETRICS SYSTEMS, INC.                                       |

55516829