Christy G. Lea (SBN 212,060)
christy.lea@knobbe.com
Joseph R. Re (SBN 134,479)
joe.re@knobbe.com
Nicholas M. Zovko (SBN 238,248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
Raymond Lu (SBN 340,873)
raymond.lu@knobbe.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Plaintiff/Counterclaim Defendant*
PAVEMETRICS SYSTEMS, INC.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.,<br><br>          Plaintiff,<br><br>     v.<br><br>TETRA TECH, INC.,<br><br>          Defendant.<br><br>AND RELATED COUNTERCLAIMS | Case No. 2:21-cv-1289-MCS-MMA<br><br>Honorable Mark C. Scarsi<br><br>**MEMORANDUM IN SUPPORT OF PAVEMETRICS' MOTION *IN LIMINE* NO. 3 TO PRECLUDE MORELLAS TESTIMONY INCONSISTENT WITH THE COURT'S ORDER ON MOTION FOR SUMMARY JUDGMENT [DKT. 189]**<br><br>Date:          July 25, 2022<br>Time:         2:00 p.m.<br>Location:   Ctrm. 7C |

## I. INTRODUCTION

Pavemetrics moves to preclude Tetra Tech's technical expert, Dr. Vassilios Morellas, from contradicting this Court's Order granting in part Pavemetrics' Motion for Summary Judgment of Non-Infringement of the '293 Patent. In its Order, the Court held that algorithms analyzing elevation data only cannot satisfy Claim 1 of the '293 patent because the claimed algorithm must analyze a 3D map that represents both elevation and intensity data. ECF 189. Claims 2, 4, and 21 all depend from Claim 1, and add additional steps to the algorithm of Claim 1.[1] Thus, this Court's ruling applies equally to those claims, which cannot be infringed by algorithms analyzing only elevation data. *See Wahpeton Canvas Co. v. Frontier Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed."). But Dr. Morellas opined in his infringement report that algorithms analyzing elevation data only satisfy dependent Claims 2, 4, and 21.

Tetra Tech initially agreed during the meet and confer that it would not argue that such algorithms infringe Claim 1, but refused to agree with respect to dependent Claims 2, 4, and 21. Ex. I. Thus Tetra Tech still intends to offer Morellas' opinions based on elevation-only algorithms at trial with respect to the dependent claims, despite this Court's summary judgment Order. Because those opinions are inconsistent with this Court's Order, Tetra Tech and Dr. Morellas should be precluded from offering them at trial.

---

[1] The parties stipulated to narrowing the asserted claims of the '293 patent to Claims 1, 2, 4, and 21 only. ECF 204.

-1-

## II. THIS COURT RULED ON SUMMARY JUDGMENT THAT ALGORITHMS ANALYZING ELEVATION DATA ONLY CANNOT INFRINGE

Prior to this Court's summary judgment ruling, Tetra Tech alleged that three different LRAIL functionalities infringed the '293 patent claims: (1) inputting a Fake3D Image into a neural network; (2) inputting a Mixed Image into a neural network; and (3) identifying features from elevation data only and overlaying those features onto a Fake3D Image ("Fake3D with Overlay"). Pavemetrics moved for summary judgment on all three functionalities and this Court granted its motion with respect to the third functionality. ECF 109; ECF 189 (Order at 9).

In its summary judgment motion, Pavemetrics explained that Claim 1 requires an algorithm that identifies a railway track bed feature "from" a track elevation map. ECF 109 at 16-17. This Court previously construed "track elevation map" to mean a 3D map that represents both elevation and intensity data. ECF 189 at 4-5. Pavemetrics presented evidence that Fake3D with Overlay could not infringe because it did not identify any features at all—it simply overlayed features previously identified by other algorithms onto the Fake3D Image. ECF 109 at 9-10. Tetra Tech's expert admitted that those overlayed features had been previously identified by algorithms analyzing elevation data only. ECF 134-23, ¶¶ 55, 77-79.[2] But, nonetheless, Dr. Morellas opined that "the analysis of elevation data meets the claims because the claims require sliding an appropriate gradient neighborhood over 'the 3D elevation data,' not the 'track

---

[2] The three algorithms were: (1) Accused Algorithm 1: Fine tuning the rail mask, (2) Accused Algorithm 2: Identifying joint bars, and (3) Accused Algorithm 3: Calculating ballast volume. *See* ECF 134-23 (Morellas Decl. ISO Opp'n to 293MSJ ¶78); ECF 114-2 (Zovko Decl. Ex. 3, Tetra Tech's Second Supp. Infringement Contentions at 214-224).

elevation map' or the 'three dimensional elevation map.'" *Id*. ¶ 79.

In its summary judgment Order, this Court expressly rejected Dr. Morellas' opinion as contrary to the Court's claim construction:

> Morellas bases his conclusion on the fact that the 3D maps identified in claims 1 and 22 only need to contain elevation data. This conclusion is contrary to the Court's definition of the terms "track elevation map" and "three dimensional elevation map."

ECF 189 at 9. Thus, the Court held that algorithms analyzing elevation data only cannot infringe the claimed algorithm as a matter of law. Accordingly, the Court granted in part Pavemetrics' motion because Tetra Tech "puts forward no evidence creating a material dispute about whether the Fake3D Image with Overlay algorithm identifies features from a 3D map based on both elevation and intensity data." *Id*. Thus, the only accused LRAIL functionality that remains for trial are the two neural network functionalities: (1) inputting a Fake3D Image into a neural network; and (2) inputting a Mixed Image into a neural network.

## III. DR. MORELLAS' INFRINGEMENT REPORT RELIES ON ALGORITHMS ANALYZING ELEVATION DATA ONLY

Prior to this Court's summary judgment ruling, Dr. Morellas served his infringement report. Laquer Ex. E. In his report, for Claim 1, Dr. Morellas opined that Pavemetrics' LRAIL satisfied that claim in three different ways: (1) inputting a Fake3D Image into a neural network; (2) inputting a Mixed Image into a neural network; and (3) identifying features from elevation data only and overlaying those features onto a Fake3D Image. *Id*., ¶¶165-217. Dr. Morellas' opinions in his infringement report with respect to Fake3D with Overlay and identifying features from elevation data only are identical to those in his declaration opposing Pavemetrics' summary judgment motion. *Compare id*., ¶¶197-199 *with* ECF 134-23, ¶¶77-79.

/ / /

With respect to dependent Claims 2 and 4, Dr. Morellas opined that those claims were infringed solely by algorithms analyzing elevation data. Laquer Ex. E, ¶¶ 225-234. He did not opine that the neural network analyzed a Fake3D Image or a Mixed Image to perform the additional algorithm steps in those claims. *Id.* As shown below, none of the algorithms identified by Dr. Morellas are part of the neural network or operate on the Fake3D Image or the Mixed Image.

As discussed below, with respect to dependent Claim 21, Dr. Morellas opined that LRAIL satisfied that claim in two different ways: (1) "non-neural network algorithms" (i.e., algorithms that analyze elevation data only); and (2) convolutional neural networks. Laquer Ex. E, ¶¶ 375, 388. This Motion is limited to the non-neural network algorithm opinions.

## A. Dependent Claim 2

Claim 2 depends from independent Claim 1 and adds an additional step to the Claim 1 algorithm. '293 patent, 29:56–61 ("***The system of claim 1*** wherein ***the algorithm step*** of identifying a railway track bed feature ***further comprises the step of*** identifying a rail head edge . . . ." (emphases added). Claim 2 expands on the "algorithm step of identifying a railway track bed feature [from the track elevation map]" recited in Claim 1, which requires analysis of a 3D map representing both elevation and intensity data.

For Claim 2, Dr. Morellas identified in his expert report two different algorithms that allegedly infringe Claim 2: (1) Detect Rail; and (2) Fine tuning the rail mask. Laquer Ex. E, ¶¶ 225-226. Both algorithms analyze elevation data only, and Dr. Morellas did not opine otherwise. Indeed, the second algorithm is the same "Fine tuning the rail mask" algorithm that this Court held on summary judgment cannot infringe Claim 1 as a matter of law because it analyzed elevation data only. *Compare* ECF 114-2 (Zovko MSJ Decl. Ex. 3 at 214-217 citing PAVE-SRC-051) *with* Laquer Ex. E, ¶¶ 225-226 (citing PAVE-SRC-051). Dr. Morellas acknowledged in his expert report that his opinion that the algorithm infringes

Claim 2 is premised on an interpretation of the claims that does not require identifying a feature from the 3D Map. *See id.* ¶ 229 ("I disagree that . . . the edge must be in a 'track elevation map.'").

### B. Dependent Claim 4

Claim 4 depends from Claim 2, which depends from Claim 1. '293 patent, 30:1–5 ("The system of claim 2 wherein ***the algorithm further comprises the step of removing data*** corresponding to the rail head ***from the elevation map*** . . . .") (emphasis added). Like Claim 2, Claim 4 expands on the "algorithm step of identifying a railway track bed feature [from the track elevation map]" recited in Claim 1, which requires analysis of a 3D map representing both elevation and intensity data. Furthermore, Claim 4 recites "removing data . . . ***from the elevation map***," which must represent both elevation and intensity data.

For Claim 4, Dr. Morellas identified two different algorithms that allegedly infringe Claim 4, which he labels: (1) "Rail Head Removal During Tie Detection"; and (2) "Rail Head Removal During Fastener Detection." Laquer Ex. E ¶¶ 235, 247. Both algorithms analyze elevation data only. *See id.* ¶ 241 ("***This algorithm receives elevation data as input***. . . . because elevations due to the rail heads are removed ***from the elevation data*** . . . the processor receives as input ***elevation data*** wherein significant elevations due to the rail heads have been removed.") (emphases added); *see also id.* ¶ 239 (displaying a Fake3D Image with Overlay); Laquer Ex. E ¶ 248 ("The LRAIL ***copies elevation data***… into a variable . . . . Next, it computes the mean elevation . . . . because elevation due to the rail heads are removed ***from the elevation data*** . . . the processor receives as input ***elevation data*** where significant elevations due to the rail heads have been removed.") (emphases added).

Moreover, as Dr. Morellas correctly states, the fastener detection algorithm discussed in this section of his report can only run when the neural network option has been disabled. *Id.* ¶ 250 ("The processes have been executed by the LRAIL

when . . . the neural network option has been disabled."). Thus, the algorithm cannot relate to either of the two neural network algorithms that Tetra Tech accuses of infringing the '293 patent.

### C. Dependent Claim 21

Claim 21 depends from independent Claim 1. '293 patent, 31:33–42 ("The system of claim 1 wherein ***the algorithm step of*** identifying a railway track bed feature ***further comprises the step of*** measuring the length of a joint bar candidate . . . .") (emphases added). Claim 21 expands on the "algorithm step of identifying a railway track bed feature [from the track elevation map]" recited in Claim 1, which requires analysis of a 3D map representing both elevation and intensity data.

For Claim 21, Dr. Morellas identified a joint bar algorithm as allegedly infringing Claim 21. Laquer Ex. E, ¶ 375-387 (section entitled "Non-Neural Network Algorithms"). That joint bar algorithm analyzes elevation data and is the same joint bar algorithm that Pavemetrics successfully challenged on summary judgment as analyzing elevation data only. *Compare* Laquer Ex. E, ¶ 200 (citing PAVE-SRC-030, 31) *with* ECF 114-2 (Zovko MSJ Decl. Ex. 3, Tetra Tech's Second Supp. Infringement Contentions at 218-220 citing PAVE-SRC-030, 031) *and* ECF 134-23 (Morellas Decl. ISO 293MSJ ¶80, citing Parker Ex. 11 at 65-66 (PAVE-SRC-030, 031) and Parker Ex. 11 at 84 (PAVE-SRC-301)). It is also the same joint bar algorithm that Dr. Morellas accuses of infringing Claim 1 in the Fake3D "Overlay Results" section of his report. *Compare* Ex. E, ¶ 200 (citing PAVE-SRC-301) *with* ¶375 (citing PAVE-SRC-301). In that Overlay Results section, Dr. Morellas acknowledges that the algorithm identifies "a joint bar without the use of convolutional neural networks," which again confirms that Dr. Morellas is relying on a non-neural network algorithm. Laquer Ex. E, ¶ 208.

## IV. DR. MORELLAS SHOULD BE PRECLUDED FROM CONTRADICTING THIS COURT'S MSJ ORDER

Dr. Morellas should not be allowed to contradict this Court's summary judgment ruling, which applied the Court's claim construction. Claim construction is a legal question within the province of the court. *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372 (1996). "No party may contradict the court's construction to a jury." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009). "As expert testimony inconsistent with the Court's claim construction is unreliable and unhelpful to the finder of fact," it should be excluded under the *Daubert* standard. *Personalized User Model, L.L.P. v. Google, Inc.*, No. CV 09-525, 2014 WL 807736, at *1 (D. Del. Feb. 27, 2014); *see also Exergen*, 575 F.3d at 1321. Expert testimony based on an impermissible claim construction is properly excluded as irrelevant and on the basis that the evidence could confuse the jury. *Liquid Dynamics Corp. v. Vaughan Co.*, 449 F.3d 1209, 1224 n.2 (Fed. Cir. 2006).

The Court construed the claimed "track elevation map" to represent both elevation and intensity data. *See* ECF 189 at 4-5 (citing Claim Construction Order [ECF 103] at 32). Applying that construction, this Court held that algorithms analyzing elevation data alone cannot infringe the Claim 1 algorithm. ECF 189 at 9. If such algorithms cannot infringe Claim 1, then they cannot infringe its dependent claims either. *See* Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020), Infringement B.3.1a ("For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim."). Allowing Tetra Tech to put Dr. Morellas' testimony and arguments before the jury with respect to Claims 2, 4, and 21 would contradict the Court's claim construction and risk a verdict inconsistent with the summary judgment ruling, one where the jury finds a dependent claim infringed by an algorithm that has been held not to infringe Claim 1.

Expert testimony "can be both powerful and quite misleading because of the difficulty in evaluating it." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993) (discussing F.R.E. 702, 703, 706, and 403; quoting Weinstein, 138 F.R.D. at 632). Due to this unique risk, "the judge in weighing possible prejudice against probative force… exercises more control over experts than over lay witnesses." *Id.* As the proponent of Dr. Morellas' testimony, Tetra Tech bears the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence, pursuant to Federal Rule of Evidence 104(a). *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987).

Tetra Tech cannot carry its burden on this Motion. To meet is burden, Tetra Tech would have to show that Dr. Morellas' opinions are consistent with this Court's claim construction ruling and its ruling on summary judgment. It cannot do that because the opinions are based on algorithms analyzing only elevation data, not on the neural network functionality that remains an issue for trial. Accordingly, Dr. Morellas' opinions that algorithms analyzing elevation data only infringe Claims 1, 2, 4, and 21 of the '293 patent, including paragraphs 66, 192-208, 225-254, 375–387 of his report, contradict this Court's Summary Judgment Order, are unreliable and unhelpful to the jury, and should thus be excluded.

## V. CONCLUSION

For the foregoing reasons, this Court should preclude Dr. Morellas from opining at trial that algorithms analyzing only elevation data infringe the '293 patent.

Respectfully submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated: July 11, 2022

/s/ Christy G. Lea
Christy G. Lea
Joseph R. Re
Nicholas M. Zovko

-8-

| | |
|---|---|
| 1 | Alan G. Laquer |
| 2 | Raymond Lu |
| 3 | *Attorneys for Plaintiff/Counterclaim Defendant*, PAVEMETRICS SYSTEMS, INC. |
| 4 | 55865766 |