Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

James R. Barney (*pro hac vice*)
james.barney@finnegan.com
Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
Kelly S. Horn (*pro hac vice*)
kelly.horn@finnegan.com
**FINNEGAN, HENDERSON,**
**FARABOW, GARRETT &**
**DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413

Telephone:   (202) 408-4000
Facsimile:   (202) 408-4400

Jency J. Mathew (*pro hac vice*)
jency.mathew@finnegan.com
**FINNEGAN, HENDERSON,**
**FARABOW, GARRETT &**
**DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, Virginia 20190-6023
Telephone:   (571) 203-2700
Facsimile:   (571) 203-2777

*Attorneys for Defendant and*
*Counterclaim Plaintiffs*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC. | CASE NO. 2:21-cv-1289 MCS-MMA |
| Plaintiff, | **TETRA TECH'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW PURSUANT TO L.R. 16-4** |
| v. | |
| TETRA TECH, INC. | **Trial Date: August 9, 2022** |
| Defendant. | **Time: 8:30 a.m.** |
| | **Place: Courtroom 7C** |
| AND RELATED COUNTERCLAIMS. | **Honorable Mark C. Scarsi** |

# **TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................1

II. L.R. 16-4.1 CLAIMS AND DEFENSES ..................................................2

    A. Tetra Tech's Infringement Claims .................................................2

        1. Direct Infringement by Pavemetrics ...........................2

            a. Summary......................................................2

            b. Elements Required to Establish Direct Infringement by Pavemetrics ...................2

            c. Key Evidence In Support of Tetra Tech's Direct Infringement Claim .........................2

        2. Induced Infringement by Pavemetrics .........................4

            a. Summary......................................................4

             b. Elements Required to Establish Induced Infringement by Pavemetrics ..................4

            c. Key Evidence In Support of Tetra Tech's Induced Infringement Claim ........................5

        3. Contributory Infringement by Pavemetrics ................7

            a. Summary......................................................7

             b. Elements Required to Establish Contributory Infringement by Pavemetrics.............7

            c. Key Evidence In Support of Tetra Tech's Contributory Infringement Claim................8

        4. Willful Infringement by Pavemetrics ..........................9

            a. Summary......................................................9

             b. Elements Required to Establish Tetra Tech's Willful Infringement Claim .................9

|     |     |     |     |                                                                  |     |
|-----|-----|-----|-----|------------------------------------------------------------------|-----|
|     |     |     | c.  | Key Evidence In Support of Tetra Tech's Willful Infringement Claim | 10  |
|     |     | 5.  |     | Tetra Tech's Damages Claims                                      | 11  |
|     |     |     | a.  | Summary                                                          | 11  |
|     |     |     | b.  | Elements Required to Establish Tetra Tech's Claim for Damages    | 11  |
|     |     |     | c.  | Key Evidence In Support of Tetra Tech's Damages Claim            | 14  |
|     |     | 6.  |     | Tetra Tech's Claim for Injunctive Relief                         | 15  |
|     |     |     | a.  | Summary                                                          | 15  |
|     |     |     | b.  | Elements Required to Establish Tetra Tech's Permanent Injunction Claim | 15  |
|     |     |     | c.  | Key Evidence In Support of Tetra Tech's Permanent Injunction Claim | 16  |
|     | B.  |     |     | Pavemetrics' Declaratory Judgment Claims and Affirmative Defenses | 16  |
|     |     | 1.  |     | Summary                                                          | 16  |
|     |     | 2.  |     | Elements Required to Establish Pavemetrics' Declaratory Judgment Claims and Affirmative Defenses | 18  |
|     |     |     | a.  | Noninfringement                                                  | 18  |
|     |     |     | b.  | Invalidity                                                       | 18  |
|     |     |     | c.  | Prosecution History Estoppel                                     | 19  |
|     |     |     | d.  | Estoppel                                                         | 20  |
|     |     |     | e.  | Notice Under 35 U.S.C. § 287                                     | 20  |
|     |     |     | f.  | Immunity Under 28 U.S.C. § 1498                                  | 21  |
|     |     | 3.  |     | Brief Description of Key Evidence In Opposition to Pavemetrics' Declaratory Judgment Claims and Affirmative Defenses | 22  |

|   |   | a. | Noninfringement | 22 |
|   |   | b. | Invalidity | 22 |
|   |   | c. | Prosecution History Estoppel | 23 |
|   |   | d. | Equitable and Legal Estoppel | 23 |
|   |   | e. | Notice Under 35 U.S.C. § 287 | 23 |
|   |   | f. | Immunity Under 28 U.S.C. § 1498 | 23 |
|   | C. | Anticipated Evidentiary Issues | | 24 |
|   | D. | Issues of Law | | 24 |
| III. | L.R. 16-4.3 BIFURCATION OF ISSUES | | | 25 |
| IV. | L.R. 16-4.4 JURY TRIAL | | | 25 |
| V. | L.R. 16-4.5 ATTORNEYS' FEES | | | 25 |
| VI. | L.R. 16-4.6 ABANDONMENT OF ISSUES | | | 26 |

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Const. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) ........................................................ 20

*Aero Prod. Int'l, Inc. v. Intex Recreation Corp.*,
   466 F.3d 1000 (Fed. Cir. 2006) ................................................. 19, 24

*AM Int'l, Inc. v. United States*,
   227 Ct. Cl. 632 (1981) .................................................................. 22

*Arlton v. Aerovironment, Inc.*,
   No. 2:20-cv-07438-AB-GJS, 2021 WL 1589302 (C.D. Cal. Apr. 22,
   2021) .......................................................................................... 21

*BJ Servs. Co. v. Halliburton Energy Servs., Inc.*,
   338 F.3d 1368 (Fed. Cir. 2003) ...................................................... 24

*Broadcom Corp. v. Qualcomm, Inc.*,
   543 F.3d 683 (Fed. Cir. 2008) .................................................. 2, 5, 8

*eBay Inc. v. MercExchange, LLC*,
   547 U.S. 388 (2006) ................................................................ 16, 25

*Fromson v. Advance Offset Plate, Inc.*,
   720 F.2d 1565 (Fed. Cir. 1983) ...................................................... 20

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   579 U.S. 93 (2016) ........................................................................ 25

*Madey v. Duke Univ.*,
   307 F.3d 1351 (Fed. Cir. 2002) ...................................................... 22

*Microsoft Corp. v. i4i Ltd. P'ship*,
   564 U.S. 91 (2011) ........................................................................ 18

*Nasatka v. Delta Sci. Corp.*,
   58 F.3d 1578, 1580 (Fed. Cir. 1995) .............................................. 22

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014) ...................................................................... 19

iv

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    572 U.S. 545 (2014) ........................................................................................... 25

*Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.*,
    369 F. Supp. 3d 963 (C.D. Cal. 2019) ............................................................ 21

*Sevenson Env'l. Servs., Inc. v. Shaw Envtl., Inc.*,
    477 F.3d 1361 (Fed. Cir. 2007) ...................................................................... 21

*Vanderlande Indus. Nederland BV v. ITC*,
    366 F.3d 1311 (Fed. Cir. 2004) ...................................................................... 20

**Federal Statutes**

28 U.S.C. § 1498 ........................................................................ 17, 21, 22, 24

28 U.S.C. § 1927 ........................................................................................... 26

35 U.S.C. § 102 ............................................................................................. 18

35 U.S.C. § 102(a) ......................................................................................... 18

35 U.S.C. § 102(b)(1) .................................................................................... 18

35 U.S.C. § 103 ....................................................................................... 18, 19

35 U.S.C. § 112 ................................................................................... 18, 23, 24

35 U.S.C. § 112(b) ......................................................................................... 17

35 U.S.C. § 271(a) ........................................................................................... 2

35 U.S.C. § 271(b) ........................................................................................... 4

35 U.S.C. § 271(c) ........................................................................................... 7

35 U.S.C. § 282 ............................................................................................. 18

35 U.S.C. § 283 ............................................................................................. 15

35 U.S.C. § 284 ....................................................................................... 1, 10, 11, 25

35 U.S.C. § 285 ............................................................................................. 25

35 U.S.C. § 287 ................................................................................... 17, 20, 23

**Other Authorities**

O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed.) .................................... 18

2019 AIPLA Model Patent Jury Instructions ......................................................... *passim*

Fed. Cir. Model Patent Jury Instructions ............................................................. *passim*

Fed. Civ. Jury Instr. 7th Cir. 11.3.2.4 (2010) ....................................................... 19, 24

N.D. Cal. Model Patent Jury Instruction ................................................................ 5, 10

# I.    INTRODUCTION

Pursuant to L.R. 16-4, Defendant and Counterclaim Plaintiff Tetra Tech, Inc. and Counterclaim Plaintiff Tetra Tech TAS Inc. (collectively "Tetra Tech") hereby provides its Memorandum of Contentions of Fact and Law.

This is an action for patent infringement involving two Tetra Tech patents: U.S. Patent Nos. 10,362,293 ("the '293 patent") and 10,616,557 ("the '557 patent") (collectively, the "Asserted Patents"). The '293 patent issued on July 23, 2019, for an invention entitled "3D Track Assessment System and Method." It is directed to improved systems and methods that automatically process full width track surface elevation and intensity data to identify features and extract physical parameters of interest. Surface elevation data refers to the measured elevation at each location, and intensity data refers to the measured intensity of reflected laser light at each location. Using both elevation and intensity data, 3D elevation maps may be created and used to identify railway track features using the algorithms described and claimed in the '293 patent. The '557 patent issued on April 7, 2020, for an invention entitled "3D Track Assessment Method." It is directed to other improved methods implemented by the track inspection system, including methods for detecting railroad tie distress and detecting railway track bed features. Like the '293 patent, these methods help to improve the speed and accuracy in which track features are identified. One way that the methods described in the '557 patent achieve improved speed and accuracy is by removing rail head data from the acquired elevation data. By removing rail head data, the system can more easily detect and identify smaller features along the railway track bed. For example, by eliminating significant vertical components like the rail head, smaller features, such as fasteners, anchors, tie plates, etc., may be enhanced. And therefore, the overall 3D feature detection capabilities are improved.

Tetra Tech seeks damages and injunctive relief for infringement of the Asserted Patents by Pavemetrics Systems, Inc. ("Pavemetrics"). Tetra Tech also seeks enhanced damages under 35 U.S.C. § 284 in light of Pavemetrics' willful infringement.

1

Pavemetrics seeks declaratory judgment of non-infringement and invalidity of the Asserted Patents and asserts various affirmative defenses, as detailed below.

## II.   L.R. 16-4.1 CLAIMS AND DEFENSES

### A.   Tetra Tech's Infringement Claims

Tetra Tech plans to pursue its claims that Pavemetrics infringes, directly and/or indirectly, Claims 1, 2, 4 and 21 of the '293 patent and Claim 8 of the '557 patent (collectively, the "Asserted Claims").

#### 1.   Direct Infringement by Pavemetrics

##### a.   Summary

Pavemetrics directly infringes the '293 patent. Specifically, Pavemetrics directly infringes Claims 1, 2, 4, and 21 of the '293 patent by offering for sale or selling in the United States Pavemetrics' Laser Rail Inspection System ("LRAIL").

##### b.   Elements Required to Establish Direct Infringement by Pavemetrics

Tetra Tech will prove by a preponderance of the evidence that Pavemetrics has infringed Claims 1, 2, 4, and 21, of the '293 patent by establishing that Pavemetrics offered to sell and sold the accused LRAILs within the United States without the authority of Tetra Tech. 35 U.S.C. § 271(a). Tetra Tech will also prove by a preponderance of the evidence that the accused LRAILs meet all of the elements of each of Claims 1, 2, 4, and 21 of the '293 patent, as construed by the Court. *See* Fed. Cir. Model Patent B.3.la. Tetra Tech can prove infringement by both direct and circumstantial evidence. *Broadcom Corp. v. Qualcomm, Inc*., 543 F.3d 683, 700 (Fed. Cir. 2008).

##### c.   Key Evidence In Support of Tetra Tech's Direct Infringement Claim

Tetra Tech's evidence of infringement is summarized below and is explained in more detail in the expert report and declarations of Tetra Tech's technical expert Dr. Vassilios Morellas and Tetra Tech's opposition to Pavemetrics' motion for partial

summary judgment of non-infringement of the '293 patent (Dkt. 125), each of which is incorporated herein by reference. Moreover, as the Court may recall, the Court denied Pavemetrics' motion for partial summary judgment. Among other things, the Court rejected Pavemetrics' argument that the claimed "track elevation map" requires that each data point of the map "include two separate values for elevation and intensity data." Dkt. 189 at 5. The Court found that the claimed "track elevation map" may "either merge or blend or separately represent elevation and intensity data." *Id.* at 6. Furthermore, the Court in its recent summary judgment order of July 6, 2022, rejected Pavemetrics' contention that the processor connected to the sensors and the processor running the algorithm need to be the same processor. Dkt. 209 at 24-25. Instead, the Court found that "a different processor may meet each different claim limitation, so long as at least one processor meets each claim limitation." *Id.* at 25.

1. The '293 patent;

2. The Court's claim construction of the disputed claims of the '293 patent;

3. Evidence of Pavemetrics' offer for sale and sale of the accused LRAILs within the United States, including, but not limited to, Pavemetrics' admissions, communications, invoices, sales records, and sales contracts;

4. Evidence of Pavemetrics' marketing of the accused LRAILs;

5. Pavemetrics' source code and output files for the accused LRAILs;

6. Product specifications for the accused LRAILs, including, but not limited to, LRAIL user and operator manuals, LRAIL installation and assembly instructions and manuals, LRAIL real time acquisition and processing software manuals, LRAIL data acquisition user manuals, LRAIL analyzer library user manuals, LRAIL technical reports, pictures, or documents, and LRAIL presentations on commissioning steps and calibration runs;

7. Pavemetrics' technical papers, describing the accused LRAILs or its features;

8. Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

9.  Testimony and declarations of Mr. Laurent;

10. Testimony of Mr. Talbot;

11. Testimony of Mr. Nguyen;

12. Testimony of Mr. Fox-Ivey;

13. Testimony of Mr. Hafiz;

14. Testimony of Mr. Spencer;

15. Testimony and declarations of Dr. Hébert; and

16. Testimony of Mr. Habel.

### 2.    Induced Infringement by Pavemetrics

#### a.    Summary

Tetra Tech alleges that Pavemetrics induced its customers to infringe the Asserted Patents.

#### b.    Elements Required to Establish Induced Infringement by Pavemetrics

Tetra Tech will prove by a preponderance of the evidence that Pavemetrics induced infringement of the Asserted Claims of the '293 and '557 patents by its customers. 35 U.S.C. § 271(b).

Tetra Tech will establish that:

1. Pavemetrics sold the accused LRAILs to customers, who made and used within the United States, and/or imported into the United States the accused LRAILs to directly infringe at least one of the Asserted Claims;

2. Pavemetrics intentionally took action that actually led to direct infringement by Pavemetrics' customers; and

3. Pavemetrics was aware of the Asserted Patents and knew that the acts it was causing would constitute infringement of the Asserted Patents, or that Pavemetrics believed there was a high probability that the acts by Pavemetrics' customers would infringe an Asserted Patent and it took deliberate steps to avoid learning of that infringement, in other words,

4

willfully blinded itself to the infringing nature of the direct infringer's acts. *See* N.D. Cal. Model Patent 3.7. Tetra Tech can prove infringement by both direct and circumstantial evidence. *Broadcom*, 543 F.3d at 700.

c.      **Key Evidence In Support of Tetra Tech's Induced Infringement Claim**

Tetra Tech's evidence of induced infringement is summarized below and is explained in more detail in the expert report and declarations of Tetra Tech's technical expert Dr. Morellas and Tetra Tech's opposition to Pavemetrics' motion for partial summary judgment (Dkts. 176, 178-1, 178-4, and 183) each of which is incorporated herein by reference.

1. Evidence of direct infringement of Claims 1, 2, 4, and 21 of the '293 patent, including evidence establishing that the accused LRAILs meet the elements of the asserted claims, as described above;

2. Evidence of direct infringement of Claim 8 of the '557 patent, including evidence establishing that Pavemetrics' customers used the accused LRAILs in a manner that meets the elements of the asserted claim;

3. Evidence showing Pavemetrics had knowledge of the Asserted Patents, including letters from Tetra Tech's counsel notifying Pavemetrics of the '293 patent and its infringement claims on January 5, 2021, and notifying Pavemetrics of the '557 patent and its infringement claims on July 22, 2021;

4. Evidence demonstrating that since at least 2015, Pavemetrics has been actively tracking and monitoring Tetra Tech's business activities, including rail inspection efforts, Tetra Tech's 3DTAS product, Tetra Tech's litigation activities, and Tetra Tech's intellectual property, including its patents;

5. Evidence demonstrating that at least as early as December 2020, Pavemetrics was on notice of infringement risks concerning Tetra Tech's

patents;

6. Evidence demonstrating that at least as early as February 2021, Pavemetrics was notified of Tetra Tech's identification of its patents on Tetra Tech's website, which listed, among other patents, the '557 patent;

7. Evidence showing Pavemetrics sold the accused LRAIL to customers;

8. Evidence showing Pavemetrics' customers imported the accused LRAILs into the United States;

9. Evidence showing that Pavemetrics encouraged its customers to import into the United States the accused LRAILs;

10. Evidence showing Pavemetrics' customers assembled and installed the accused LRAILs within the United States;

11. Evidence showing Pavemetrics' customers using the accused LRAILs within the United States in a manner that directly infringes the Asserted Patents, including, but not limited to, testimony and documents concerning data acquisition files and data processing files generated by the accused LRAILs;

12. Evidence showing Pavemetrics' customers exchanging with Pavemetrics information generated by the accused LRAILs and its components, including data acquisition files and data processing files, and benefiting from such exchanges;

13. Evidence showing Pavemetrics provided instructions to its customer to assemble, install, and use the accused LRAILs in a manner that directly infringes the Asserted Patents, including, but not limited to, LRAIL user and operator manuals, LRAIL installation and assembly instructions and manuals, LRAIL real time acquisition and processing software manuals, LRAIL data acquisition user manuals, LRAIL analyzer library user manuals, LRAIL technical reports, pictures, or documents, and LRAIL presentations on commissioning steps and calibration runs;

14. Evidence of Pavemetrics' ongoing technical support, training, and troubleshooting provided to its customers on the use of the accused LRAILs;

15. Product specifications for the accused LRAILs;

16. Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

17. Testimony of Dr. Mesher;

18. Testimony of Mr. Larson;

19. Testimony and declarations of Mr. Laurent;

20. Testimony of Mr. Talbot;

21. Testimony of Mr. Nguyen;

22. Testimony of Mr. Fox-Ivey;

23. Testimony of Mr. Hafiz;

24. Testimony of Mr. Spencer;

25. Testimony and declarations of Dr. Hébert; and

26. Testimony of Mr. Habel.

### 3.   Contributory Infringement by Pavemetrics

#### a.   Summary

Tetra Tech alleges that Pavemetrics contributed to infringement of the Asserted Patents by Pavemetrics' customers.

#### b.   Elements Required to Establish Contributory Infringement by Pavemetrics

Tetra Tech will prove by a preponderance of the evidence that Pavemetrics contributed to the direct infringement of the Asserted Claims of the '293 and '557 patents by Pavemetrics' customers. 35 U.S.C. § 271(c).

Tetra Tech will establish that:

1. Pavemetrics' customers directly infringed at least one of the Asserted Claims;

2. Pavemetrics sold or offered for sale within the United States a component

7

of the accused LRAIL that infringes claims 1, 2, 4, and 21 of the '293 patent or for use in performing the method of claim 8 of the '557 patent;

3.   The component is not a staple article or commodity of commerce suitable for substantial noninfringing use;

4.   The component constitutes a material part of the claimed invention; and

5.   Pavemetrics knew, or was willfully blinded itself, that the component was especially made or adapted for use in the accused LRAILs that infringe claims 1, 2, 4, and 21 of the '293 patent or to perform the method of claim 8 of the '557 patent.

*See* 2019 AIPLA Model Patent Jury Instructions 3.10. Tetra Tech can prove infringement by both direct and circumstantial evidence. *Broadcom*, 543 F.3d at 700.

### c.   Key Evidence In Support of Tetra Tech's Contributory Infringement Claim

Tetra Tech's evidence of infringement is summarized below and is explained in more detail in the expert report and declarations of Tetra Tech's technical expert Dr. Morellas and Tetra Tech's opposition to Pavemetrics' motion for partial summary judgment (Dkts. 176, 178-1, 178-4, and 183), each of which is incorporated herein by reference.

1.   Evidence of direct infringement of Claims 1, 2, 4, and 21 of the '293 patent, including evidence establishing that the accused LRAILs meet the elements of the asserted claims, as described above;

2.   Evidence of direct infringement of Claim 8 of the '557 patent, including evidence establishing that Pavemetrics' customers used the accused LRAILs in a manner that meets the elements of the asserted claim;

3.   Evidence of induced infringement of the Asserted Claims, as described above;

4.   Evidence of direct infringement of the Asserted Claims by Pavemetrics' customers, as described above;

8

5.  Evidence that Pavemetrics sold or offered for sale within the United States hardware and software components of the accused LRAIL;

6.  Evidence that the hardware and software components of the accused LRAIL sold or offered for sale within the United States by Pavemetrics have no use other than as parts of the accused LRAILs that infringe Claims 1, 2, 4, and 21 of the '293 patent;

7.  Evidence that the hardware and software components sold or offered for sale within the United States by Pavemetrics have no use other than in performing the method of claim 8 of the '557 patent;

8.  Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

9.  Testimony of Dr. Mesher;

10. Testimony of Mr. Larson;

11. Testimony and declarations of Mr. Laurent;

12. Testimony of Mr. Talbot;

13. Testimony of Mr. Nguyen;

14. Testimony of Mr. Fox-Ivey;

15. Testimony of Mr. Hafiz;

16. Testimony of Mr. Spencer;

17. Testimony and declarations of Dr. Hébert; and

18. Testimony of Mr. Habel.

**4.    Willful Infringement by Pavemetrics**

**a.    Summary**

Tetra Tech alleges that Pavemetrics willfully infringed the Asserted Claims of the '293 and '557 patents.

**b.    Elements Required to Establish Tetra Tech's Willful Infringement Claim**

Tetra Tech will prove by a preponderance of the evidence that:

1.  The Asserted Patents are valid and were infringed by Pavemetrics;

9

2. Pavemetrics acted despite a high likelihood that its actions would constitute infringement of at least one valid and enforceable patent claim;

3. Pavemetrics actually knew or was reckless of the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent claim because of the following considerations, which include, but are not limited to:

    a. Pavemetrics did not act in accordance with the standards of behavior in the industry;

    b. Pavemetrics did not have a reasonable basis to believe that it did not infringe the Asserted Patents or that the Asserted Patents were invalid, nor did Pavemetrics have a reasonable defense to infringement;

    c. Pavemetrics did not make a good-faith effort to avoid infringing the Asserted Patents;

    d. Pavemetrics intentionally copied Tetra Tech's patented technology; and

    e. Pavemetrics tried to cover up its infringement.

*See* 35 U.S.C. § 284; N.D. Cal. Model Patent Jury Instruction B.3.8; Fed. Cir. Model Patent B.3.10.

### c. Key Evidence In Support of Tetra Tech's Willful Infringement Claim

Tetra Tech's evidence in support of willful infringement is summarized below.

1. Evidence showing Pavemetrics had knowledge of the Asserted Patents, as described above;

2. Evidence of direct infringement, as described above;

3. Evidence of indirect infringement, as described above;

4. Evidence demonstrating that Pavemetrics deleted specific algorithms from the LRAIL source code to avoid disputes about features in light of this

10

lawsuit;

5.  Evidence showing that Pavemetrics attempted to remove an infringing functionality from the LRAIL software only to add another functionality that also infringed at least one Asserted Claim;

6.  Evidence showing Pavemetrics deliberately hiding the direct infringement of one of its customers;

7.  Evidence showing that Pavemetrics acted despite a high likelihood that its actions would constitute infringement of the Asserted Claims; and

8.  Evidence showing Pavemetrics knew or was reckless of the fact that its actions constituted an unjustifiably high risk of infringement of the Asserted Claims.

### 5.  Tetra Tech's Damages Claims

#### a.  Summary

If infringement is established, Tetra Tech is entitled to lost profits or no less than a reasonable royalty under 35 U.S.C. § 284.

#### b.  Elements Required to Establish Tetra Tech's Claim for Damages

Tetra Tech will prove by a preponderance of the evidence that it is entitled to lost profits by establishing that "but for" Pavemetrics' infringement, there is a reasonable probability that Tetra Tech would have made sales that Pavemetrics made of the infringing LRAIL. *See* Fed. Cir. Model Patent B.5.1; Fed. Cir. Model Patent B.5.2. This can be established by demonstrating that:

1.  There was demand for the patented product;

2.  There were no available, acceptable, noninfringing substitute products, or, if there were, Tetra Tech's market share of the number of the sales made by Pavemetrics that Tetra Tech would have made, despite the availability of other acceptable noninfringing substitutes;

3.  Tetra Tech had the manufacturing and marketing capacity to make any

infringing sales actually made by Pavemetrics and for which Tetra Tech seeks an award of lost profits—in other words, that Tetra Tech was capable of satisfying the demand;

4. The amount of product that Tetra Tech would have made if Pavemetrics had not infringed.

*See* Fed. Cir. Model Patent B.5.2; Fed. Cir. Model Patent B.5.2. Tetra Tech need not prove the amount of lost profits with mathematical precision but only with reasonable certainty. *See* Fed. Cir. Model Patent B.5.1.

If Tetra Tech does not prove its claim for lost profits or has proved its claim for lost profits for only a portion of the infringing sales, then Tetra Tech should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages. *See* Fed. Cir. Model Patent B.5.5.

A reasonable royalty is the amount of royalty payment that Tetra Tech and Pavemetrics would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. *See* Fed. Cir. Model Patent B.5.5. Tetra Tech will prove by a preponderance of the evidence that it is entitled to a reasonable royalty based on the following factors, in addition to any other evidence on the economic value of the Asserted Patents:

1. The royalties received for the licensing of the Asserted Patents, proving or tending to prove an established royalty (and terms thereof);

2. The rates paid by licensees for the use of other patents comparable to the Asserted Patents;

3. The nature and scope of the license, as exclusive or nonexclusive, or as restricted or unrestricted in terms of territory or with respect to whom the manufactured product may be sold for the Asserted Patents;

4. Tetra Tech's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

12

5.  The commercial relationship between Tetra Tech and its licensee(s), such as whether they are competitors in the same territory in the same line of business, or whether they are an inventor or promoter;

6.  The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to Tetra Tech;

7.  The duration of the Asserted Patents and the term of the license;

8.  The established profitability of the products made under the Asserted Patents, their commercial success, and their current popularity;

9.  The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10. The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Tetra Tech, and the benefits to those who have used the invention.

11. The extent to which Pavemetrics has made use of the invention and any evidence probative of the value of that use;

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

13. The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Pavemetrics;

14. The opinion and testimony of qualified experts;

15. The amount that Tetra Tech and Pavemetrics would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented

invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*See* 2019 AIPLA Model Jury Instructions 10.2.5.3. Tetra Tech need not prove the amount of reasonable royalties with mathematical precision but only with reasonable certainty. *See* Fed. Cir. Model Patent B.5.1.

### c.    Key Evidence In Support of Tetra Tech's Damages Claim

Tetra Tech's evidence of infringement is summarized below and is explained in more detail in the expert report and declarations of Tetra Tech's damages expert Mr. Schoettelkotte and Tetra Tech's opposition to Pavemetrics' motion for partial summary judgment (Dkt. 178-3), each of which is incorporated herein by reference.

1. Evidence of sales of the Accused Products;

2. Evidence of sales of Tetra Tech's 3DTAS;

3. Evidence showing the demand and industry need for the patented product;

4. Evidence of costs and profitability of the Accused Products;

5. Evidence of costs and profitability of Tetra Tech's 3DTAS;

6. Evidence of lack of acceptable noninfringing alternatives;

7. Evidence that Tetra Tech had the manufacturing and marketing capacity to satisfy demand;

8. Evidence supporting a reasonable royalty, including

   a. evidence that the parties are competitors in the same territory in the same line of business;

   b. evidence of the effect of selling the patented specialty in promoting sales of other products of the licensee;

   c. evidence regarding the duration of the patent and the term of the license;

   d. evidence regarding the established profitability of the product made under the patent, its commercial success, and its current popularity,

14

as well as the extent to which Pavemetrics has made use of the invention and any evidence probative of the value of that use;

 e. evidence regarding the utility and advantages of the patented property over the old modes or devices and the nature of the patented invention, the character of the commercial embodiment, and the benefits to those who have used the invention;

 f. evidence regarding the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Pavemetrics;

 g. evidence regarding the amount that a licensor and licensee would have agreed upon if both had been reasonably and voluntarily trying to reach an agreement;

9. Testimony of Mr. W. Todd Schoettelkotte and exhibits to Mr. Schoettelkotte's expert report;

10. Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

11. Testimony of Mr. Teufele;

12. Testimony of Mr. Keyes;

13. Testimony of Dr. Mesher;

14. Testimony of Mr. Larson; and

15. Testimony of Mr. Spencer.

### 6. Tetra Tech's Claim for Injunctive Relief

#### a. Summary

Tetra Tech seeks injunctive relief under 35 U.S.C. § 283 to prohibit continued infringement of the Asserted Patents.

#### b. Elements Required to Establish Tetra Tech's Permanent Injunction Claim

Whether to grant injunctive relief rests within the equitable discretion of the

15

Court. To establish that Tetra Tech is entitled to a permanent injunction, Tetra Tech will demonstrate that:

1. Tetra Tech has suffered an irreparable injury;

2. Remedies available at law are inadequate to compensate for that injury;

3. Considering the balance of hardships between Tetra Tech and Pavemetrics, remedy in equity is warranted; and

4. The public interest would not be disserved by a permanent injunction.

*See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006).

### c.   Key Evidence In Support of Tetra Tech's Permanent Injunction Claim

Tetra Tech's evidence in support of its claim for a permanent injunction includes:

1. Evidence of infringement and irreparable harm, including the nature of the automated railway track assessment market, assessment of damages, Tetra Tech's policy not to license to competitors, Tetra Tech's goodwill and reputation, price erosion, and other factors;

2. Testimony of Mr. Schoettelkotte and exhibits to Mr. Schoettelkotte's expert report;

3. Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

4. Testimony of Mr. Teufele;

5. Testimony of Mr. Keyes;

6. Testimony of Dr. Mesher; and

7. Testimony of Mr. Larson.

### B.   Pavemetrics' Declaratory Judgment Claims and Affirmative Defenses

#### 1.   Summary

Tetra Tech understands that Pavemetrics intends to pursue the following declaratory judgment claims and affirmative defenses:

- Declaration of Noninfringement of Claims 1, 2, 4, and 21 of the '293 Patent;

16

- Declaration of Noninfringement of Claim 8 of the '557 Patent;
- Declaration of Invalidity of Claims 1, 2, 4, and 21 of the '293 Patent:
  - Claims 1, 2, 4, and 21 of the '293 patent would have been obvious in view of the alleged UML Sale and Support and/or UML-TRB2014, either alone or in combination with EC-TRB2014;
  - Claim 21 of the '293 patent would have been obvious in view of the combinations above and when combined with Gibert-Serra;
  - Claims 1, 2, 4, and 21 of the '293 patent are anticipated by or would have been obvious in view of Tetra Tech's alleged prior use, sale, offer for sale of Tetra Tech's IRAP Prototype system, 3DTAS, and/or 3D tie assessment system ("Alleged Tetra Tech Prior Use/Sale");
  - Claims 1, 2, 4, and 21 of the '293 patent are indefinite under 35 U.S.C. § 112(b);
- Declaration of Invalidity of Claim 8 of the '557 Patent:
  - Claim 8 of the '557 patent is anticipated by or would have been obvious in view of the alleged UML Sale and Support and/or UML-TRB2014;
  - Claim 8 of the '557 patent is anticipated or would have been obvious by the Alleged Tetra Tech Prior Use/Sale;
- Affirmative Defense – Invalidity of the '293 Patent and the '557 Patent;
- Affirmative Defense – Prosecution History Estoppel;
- Affirmative Defense – Tetra Tech is Estopped from Asserting Its Infringement Claims;
- Affirmative Defense – Failure to Give Notice Under 35 U.S.C. § 287; and
- Affirmative Defense – Immunity Under 28 U.S.C. § 1498

### 2.     Elements Required to Establish Pavemetrics' Declaratory Judgment Claims and Affirmative Defenses

#### a.     Noninfringement

Tetra Tech incorporates by reference Section II.A above concerning the elements required to establish infringement of the Asserted Patents.

#### b.     Invalidity

Tetra Tech's patents are entitled to a presumption of validity. 35 U.S.C. § 282. To overcome this presumption, Pavemetrics must prove by clear and convincing evidence that an asserted claim of the '293 patent or the '557 patent is anticipated under 35 U.S.C. § 102, obvious under 35 U.S.C. § 103, or indefinite under 35 U.S.C. § 112. *See Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91, 95 (2011); O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed.).

#### (1)     Anticipation

To prove anticipation, Pavemetrics must prove by clear and convincing evidence that all of the requirements of an asserted claim of the '293 patent or the '557 patent are present in a single piece of prior art. *See* Fed. Cir. Model Patent B.4.3b-1. With respect to the on-sale bar under 35 U.S.C. § 102(a), Pavemetrics must prove by clear and convincing evidence the claimed invention was sold or offered for sale and ready for patenting, more than one year before the effective filing date of the patent. 35 U.S.C. § 102(b)(1); Fed. Cir. Model Patent B.4.3a-3. A prior public use of the claimed invention that is the inventor's own work, describes the inventor's own work, or was directly or indirectly obtained from the inventor must also be made public more than one year before the effective filing date of the patent to be anticipatory. *Id.* Experimental use of the claimed invention does not constitute a prior public use or sale of the invention. *See* 2019 AIPLA Model Jury Instructions 6.4.

#### (2)     Obviousness

To prove obviousness, Pavemetrics must prove by clear and convincing evidence that an asserted claim of the '293 patent or the '557 patent would have been obvious to

18

a person of ordinary skill in the art as of the effective filing date of the claimed invention. 35 U.S.C. § 103. A determination of whether a claim is obvious or not obvious turns on the scope and content of the prior art, the differences, if any, between the claimed invention and the prior art, the level of ordinary skill in the art as of the effective filing date of the claimed invention, and secondary considerations, if any, that indicate that the invention was obvious or not obvious. *See* 2019 AIPLA Model Jury Instructions 7.0-7.4.

Pavemetrics cannot meet its burden of proof on obviousness merely by demonstrating that each element of the claims was independently known in the prior art. 2019 AIPLA Model Jury Instructions 7.2. Pavemetrics must also prove by clear and convincing evidence that a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art to combine the teachings to achieve the claimed invention with a reasonable expectation of success. *Id.* Secondary considerations including, but not limited to, commercial success, long-felt but unsolved needs, copying, unexpected results, failure of others, and praise from others in the field, must be considered if presented. 2019 AIPLA Model Jury Instructions 7.4.

### (3)   Indefiniteness

To prove indefiniteness, Pavemetrics must establish by clear and convincing evidence that a claim "read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). Generally, indefiniteness is a question of law to be determined by the Court, not the jury. *See Aero Prod. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1015 (Fed. Cir. 2006); Fed. Civ. Jury Instr. 7th Cir. 11.3.2.4 (2010).

### c.   Prosecution History Estoppel

The doctrine of prosecution history estoppel is a matter of law that is determined by the Court. 2019 AIPLA Model Jury Instructions 3.7.1. Prosecution history estoppel is applicable only to an analysis of infringement under the doctrine of equivalents. *Id.*;

*see also Fromson v. Advance Offset Plate, Inc.*, 720 F.2d 1565, 1571 (Fed. Cir. 1983). As Tetra Tech's infringement claims are based on literal infringement, not the doctrine of equivalents, the prosecution history estoppel defense that Pavemetrics intends to pursue is moot.

### d.   Estoppel

"A party raising equitable estoppel as a defense must prove, by a preponderance of the evidence, three elements: (1) The patentee, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. (2) The accused infringer relies upon that communication. (3) And the accused infringer would be harmed materially if the patentee is later permitted to assert any claim inconsistent with his earlier conduct." *Vanderlande Indus. Nederland BV v. ITC*, 366 F.3d 1311, 1324 (Fed. Cir. 2004) (internal quotation marks omitted). As an equitable defense, estoppel is a matter committed to the sound discretion of the trial judge. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992), *abrogated on other grounds by SCA Hygiene Prod. Aktiebolag v. First Quality Baby Prod., LLC*, 137 S. Ct. 954 (2017).

"The first element of equitable estoppel requires conduct by the patentee that misleadingly suggests that the patent holder will not assert its rights." *Vanderlande*, 366 F.3d at 1324. Further, for equitable estoppel, "the alleged infringer cannot be unaware . . . of the patentee and/or its patent," and the alleged infringer "must know or reasonably be able to infer that the patentee has known of the former's activities for some time." *A.C. Aukerman*, 960 F.2d at 1042.

### e.   Notice Under 35 U.S.C. § 287

If a product has been sold or licensed, by the patent holder or a third party, that includes the claimed invention, and the product has been "marked" with the patent number, damages are calculated as of the date that the infringement began. *See* Fed. Cir. Model Patent B.5.10 "Marking" is placing either the word "patent" or the abbreviation "pat." with the patent's number on substantially all of the products that include the

1  patented invention. *See id.*

2      If the patent holder, its licensees, or any prior owner of the patent has not marked

3  practicing products with the patent number, damages are calculated as of the date that

4  the alleged infringer received actual notice of the asserted patent and of the specific

5  product alleged to infringe. *See id.* Actual notice means that the patent holder

6  communicated to the alleged infringer a specific charge of infringement of the asserted

7  patent by a specific accused product or device. *See id.* The filing of the complaint

8  qualifies as actual notice, so the damages period begins no later than the date the

9  complaint was filed. *See id.*

10      In determining when damages begin with regard to method claims, there is no

11  notice requirement. *See id.* Accordingly, the calculation of damages for infringement of

12  method claims should begin as of the date the patent issued or the date the infringement

13  began, whichever was first. *See id.*

14                    **f.      Immunity Under 28 U.S.C. § 1498**

15      Under 28 U.S.C. § 1498, whenever a claimed invention "is used or manufactured

16  by or for the United States without license of the [patent] owner thereof or lawful right

17  to use or manufacture the same, the [patent] owner's remedy shall be by action against

18  the United States in the United States Court of Federal Claims." "A § 1498 affirmative

19  defense is a highly factual determination, whereby [the asserting party] must establish

20  that (1) the infringing use is for the Government; and (2) the infringing use is with the

21  authorization and consent of the Government." *Arlton v. Aerovironment, Inc.*, No. 2:20-

22  cv-07438-AB-GJS, 2021 WL 1589302, at *5 (C.D. Cal. Apr. 22, 2021) (internal

23  quotation marks omitted) (citing *Sevenson Env'l. Servs., Inc. v. Shaw Envtl., Inc.*, 477

24  F.3d 1361, 1365 (Fed. Cir. 2007)).

25      However, "if the [accused infringer] makes, uses, or sells an invention for both

26  the United States and others, a district court may adjudicate a claim of infringement as

27  to the latter." *Saint-Gobain Ceramics & Plastics, Inc. v. II-VI Inc.*, 369 F. Supp. 3d 963,

28  981 (C.D. Cal. 2019); *see also Madey v. Duke Univ.*, 307 F.3d 1351, 1360 (Fed. Cir.

2002) (finding that the district court erred in granting partial summary judgement under § 1498 because "it has not yet determined which uses fall within the scope of the ONR grant and which uses are outside that scope"); *Nasatka v. Delta Sci. Corp.*, 58 F.3d 1578, 1580 n. 1 (Fed. Cir. 1995) ("When a manufacturer sells a product to both the government and a third party, the normal course of events is parallel patent infringement proceedings in the Court of Federal Claims for sales to the government in accordance with 28 U.S.C. § 1498 and in the district court for the nongovernmental sales"); *AM Int'l, Inc. v. United States*, 227 Ct. Cl. 632, 632 (1981) (finding that infringement claims regarding sales to the Government were properly before the Court of Claims under § 1498, and the infringement claims regarding sales to private parties were properly before the district court).

### 3. Brief Description of Key Evidence In Opposition to Pavemetrics' Declaratory Judgment Claims and Affirmative Defenses

#### a. Noninfringement

Tetra Tech incorporates by reference Section II.A above concerning the key evidence in support of Tetra Tech's claims of infringement of the Asserted Patents. Tetra Tech will present evidence proving Pavemetrics' infringement of the Asserted Patents by a preponderance of the evidence, which necessarily defeats Pavemetrics' noninfringement declaratory judgment claims and affirmative defenses.

#### b. Invalidity

Tetra Tech's evidence in opposition to Pavemetrics' declaratory judgment claims and defenses of invalidity is summarized below and explained in more detail in the expert reports of Tetra Tech's technical expert Dr. Morellas, which is incorporated by reference.

The evidence at trial will include documents and testimony, including the testimony of Dr. Morellas and the inventor, Dr. Mesher, concerning the Asserted Patents, their prosecution file histories, the alleged prior art references or alleged prior

public use or sale, the level of ordinary skill in the art, the state of the art at the time of the invention, and secondary considerations. The evidence will establish that the claims of the Asserted Patents are neither anticipated nor obvious. Tetra Tech will also present documents and testimony of Pavemetrics' witnesses, Tetra Tech's employees, including the inventor, Dr. Mesher, and Dr. Morellas that establish secondary considerations of nonobviousness, including commercial success, long-felt need, industry praise, and copying by others.

Should factual issues underlying Pavemetrics' indefiniteness defense be tried before the jury, the evidence at trial, including the testimony of the inventor, Dr. Mesher, and Dr. Morellas, and the '293 patent and its prosecution file history will establish that the asserted claims of the '293 patent are not indefinite under 35 U.S.C. § 112.

### c.      Prosecution History Estoppel

As discussed in Section II.B.2.c above, Pavemetrics' prosecution history estoppel defense is moot because Tetra Tech plans to pursue literal infringement claims at trial.

### d.      Equitable and Legal Estoppel

Tetra Tech will offer testimony of its employees and documents to rebut any Pavemetrics' allegation of conduct by Tetra Tech that misleadingly suggested that Tetra Tech would not assert its patent rights. Tetra Tech will also introduce the testimony of Pavemetrics' employees and documents to rebut Pavemetrics' assertions that Pavemetrics relied on and such alleged conduct and was materially prejudiced.

### e.      Notice Under 35 U.S.C. § 287

Tetra Tech will offer documents and testimony establishing that Pavemetrics received actual notice of the '293 patent and its infringement allegations by January 5, 2021, and that Pavemetrics received actual notice of the '557 patent and its infringement allegations by July 22, 2021.

### f.      Immunity Under 28 U.S.C. § 1498

Tetra Tech understands that this affirmative defense is no longer a triable issue

23

in view of the Court's summary judgment order of July 6, 2022. If, however, Pavemetrics continues to maintain this defense, Tetra Tech will offer testimony and documents, including the LRAIL sales contracts with Pavemetrics' customers, LRAIL project plans presented to Pavemetrics' customers, and the FRA contracts at issue, to rebut Pavemetrics' allegation that the infringing sales and uses of the accused LRAIL to Pavemetrics' customers were for the U.S. government and with the authorization and consent of the U.S. government.

## C.    Anticipated Evidentiary Issues

Each of the parties filed motions *in limine* on July 11, 2022. Tetra Tech's positions on the evidentiary issues raised in these motions are set forth in Tetra Tech's motions *in limine* and Tetra Tech's oppositions to Pavemetrics' motions, which will be filed on July 18, 2022. In addition, the parties have made several objections to proposed exhibits based on, for example, authenticity, hearsay, relevance, and prejudice. The parties have and will attempt to resolve any disputes with respect to these objections.

## D.    Issues of Law

Pavemetrics' declaratory judgment claim and affirmative defense of invalidity of Claims 1, 2, 4, and 21 of the '293 patent based on indefiniteness under 35 U.S.C. § 112, is a question of law to be determined by the Court. *See Aero*, 466 F.3d at 1015; Fed. Civ. Jury Instr. 7th Cir. 11.3.2.4 (2010). In some circumstances, definiteness is "amenable to resolution by the jury where the issues are factual in nature." *BJ Servs. Co. v. Halliburton Energy Servs., Inc.*, 338 F.3d 1368, 1372 (Fed. Cir. 2003). Here, however, the evidence to resolve the definiteness issues is almost exclusively the intrinsic evidence—the '293 patent itself—and the question of definiteness does not necessarily require resolution of factual disputes.

Pavemetrics' estoppel defenses are equitable in nature and are issues for the Court to decide. *See* Sections II.B.2.c and II.B.3.c.

Enhanced damages resulting from Pavemetrics' willful infringement is for the Court to decide. *See* 35 U.S.C. § 284; *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S.

93, 110 (2016).

Attorneys' fees awarded to Tetra Tech is for the Court to decide. *See* 35 U.S.C. § 285 ("The court in exceptional cases may award reasonable attorney fees to the prevailing party"); *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 553 (2014).

Whether Tetra Tech is entitled to injunctive relief is an issue for the Court. *See eBay*, 547 U.S. at 391.

## III.   L.R. 16-4.3 BIFURCATION OF ISSUES

Tetra Tech does not request bifurcation of any issues.

## IV.   L.R. 16-4.4 JURY TRIAL

The parties' claims relating to patent infringement, validity (with the exception of indefiniteness), and damages claims are triable to a jury and a timely demand for a jury trial was made.

Tetra Tech's permanent injunction claim, claim for enhanced damages, and claim for attorneys' fees are tried to the Court. Pavemetrics' estoppel defenses and declaratory judgment claim and affirmative defense based on indefiniteness are tried to the Court.

## V.   L.R. 16-4.5 ATTORNEYS' FEES

Tetra Tech contends that this case is "exceptional" under 35 U.S.C. § 285 and, accordingly, will seek an award of reasonable attorneys' fees incurred by Tetra Tech in this action. The factual and legal bases for Tetra Tech's attorneys' fees claim are:

Pavemetrics knew, even before it filed this lawsuit, that its accused LRAILs infringed Tetra Tech's Asserted Patents (or was reckless of the fact that its actions constituted an unjustifiably high risk of infringement).

Pavemetrics did not make a good-faith effort to avoid infringing the Asserted Patents. Pavemetrics did not have a reasonable basis to believe that it did not infringe the Asserted Patents or that the Asserted Patents were invalid, nor did Pavemetrics have a reasonable defense to infringement. And Pavemetrics did not have a credible invalidity defense.

In addition, Tetra Tech submits that under 28 U.S.C. § 1927 and under this Court's inherent power, Tetra Tech will seek an award of fees, costs, and other incurred expenses.

## VI.    L.R. 16-4.6 ABANDONMENT OF ISSUES

While Tetra Tech has not abandoned its claims for infringement, solely for the purposes of streamlining and narrowing the issues presented at trial, Tetra Tech will not pursue previously asserted claims 15, 16, 19, 20, 22, 23, 36, 37, 40, and 41-43 of the '293 patent and claims 9, 10, and 14 of the '557 patent, without prejudice. Tetra Tech does not abandon any defenses and it fully intends to defend the claims asserted against it by demonstrating that Pavemetrics has failed to meet its burden of proof with response to some or all of the elements of Pavemetrics' declaratory judgment claims.

Dated: July 11, 2022

**CLARK HILL LLP**
By:

Donald L. Ridge

James R. Barney (*pro hac vice*)
Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Kelly S. Horn (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

*Attorneys for Defendant and Counterclaim Plaintiffs*
*TETRA TECH, INC. AND TETRA TECH TAS INC.*