# EXHIBIT 11

Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
1055 West Seventh Street, Suite 2400
Los Angeles, CA 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Jency J. Mathew (*pro hac vice*)
jency.mathew@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, Virginia 20190-6023
Telephone: (571) 203-2700
Facsimile: (571) 203-2777

*Attorneys for Defendant and Counterclaim Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**TETRA TECH'S NOTICE OF DEPOSITION OF PAVEMETRICS SYSTEMS, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)** |

1

Exhibit 11
123

1  PLEASE TAKE NOTICE that pursuant to Rule 30(b)(6) of the Federal Rules of
2  Civil Procedure, Tetra Tech, Inc. and Tetra Tech TAS Inc. (collectively, "Tetra Tech"),
3  by their attorneys, will take the deposition upon oral examination of Pavemetrics
4  Systems, Inc. ("Pavemetrics"). The oral examination will begin on December 20, 2021,
5  at 9:00 a.m. at the law offices of Finnegan, Henderson, Farabow, Garrett & Dunner,
6  LLP, 901 New York Avenue, NW, Washington, DC 20001-4413, or at such other time
7  and place as the parties mutually agree.

8  Pursuant to Federal Rule of Civil Procedure 30(b)(6), Pavemetrics is required to
9  designate one or more officers, directors, managing agents, or other persons to appear
10 on behalf of Pavemetrics and to testify at the deposition as to the Topics of Examination
11 set forth in Schedule A, attached hereto. At least two (2) weeks before the scheduled
12 deposition, Pavemetrics shall identify in writing each person who will testify on its
13 behalf, and shall specifically set forth, for each person designated, the matters described
14 in the Topics of Examination on which each person will testify.

15 The testimony taken pursuant to this Notice of Deposition may be used for any
16 and all appropriate purposes as provided by the Federal Rules of Civil Procedure and
17 the Federal Rules of Evidence. Pursuant to Fed. R. Civ. P. 30(b)(3), the testimony will
18 be recorded by sound, visual, or other electronic means in addition to stenographic
19 means.

20 Dated: November 16, 2021

By:   */s/ Aaron L. Parker*
         Aaron L. Parker

Donald L. Ridge
**CLARK HILL LLP**

Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP**

2

Exhibit 11
124

**SCHEDULE A**

**DEFINITIONS**

1. The term "this Action" means the above-captioned proceeding in the United States District Court for the Central District of California for *Pavemetrics Sys., Inc.* v. *Tetra Tech, Inc.*, No. 2:21-cv-1289 MCS-MMA (C.D. Cal.).

2. The terms "Pavemetrics," "Plaintiff," "Counterclaim Defendant," "you," and "your" refer to Pavemetrics Systems, Inc., and its officers, directors, employees, agents, partners, investors, licensees, franchisees, corporate parents, direct or indirect subsidiaries, related companies, affiliates, nominees, predecessors, and successors.

3. The term "Tetra Tech," "Defendant," or "Counterclaim Plaintiff" refers to Tetra Tech, Inc. and Tetra Tech TAS Inc., and their respective officers, directors, employees, agents, partners, investors, licensees, franchisees, corporate parents, direct or indirect subsidiaries, related companies, affiliates, nominees, predecessors, and successors.

4. The term "Asserted Patent(s)" means any and all patents owned or assigned to Tetra Tech that are being asserted in this litigation, including U.S. Patent No. 10,362,293 ("the '293 patent") and U.S. Patent No. 10,616,557 ("the '557 patent").

5. The term "product(s)" refers to both services and goods.

6. The term "Accused Products and Services" and "Accused Products or Services" means Pavemetrics' railroad track inspection and assessment products displayed, tested, designed, developed, manufactured, distributed, used, leased, sold, and/or offered for sale in the United States, and/or imported into the United States, such as the Laser Rail Inspection System ("LRAIL"), and including the software, functionality, applications, and Pavemetrics' services for such products.

7. The term "document(s)" has the meaning ascribed to it in Fed. R. Civ. P. 34(a), and includes, but is not limited to, every writing or record of every type that

is or has been in the possession, control, or custody of Pavemetrics, including, without limitation: originals, masters, and every copy of writings (including handwritings), and printed, typed, or other graphic or photographic matter including film or microfilm, video and/or audio recordings (tape, disc, or other), correspondence, communications, contracts, agreements, assignments, licenses, purchase orders, bills, invoices correspondence, communications, contracts, agreements, assignments, licenses, purchase orders, bills, invoices, receipts, statements, books, memoranda, notes (in pencil, ink, or typewritten), letters, notebooks, reports, training manuals, training materials, photographs, drawings, tracings, sketches, charts, catalogs, brochures, advertisements, promotional materials, presentations, records of communications, oral and otherwise, instructions, cables or telegrams, software applications, websites and/or internet links, computer databases, source code, object code, hard or floppy disc files, computer printouts, or other computer-generated matter, computer records of all types (including text files, graphic files, audio and multimedia files, instant messaging and electronic mail messages), studies, surveys, technical reports, laboratory reports, engineering reports, test protocols, data and analyses, specifications, performance requirements, product comparisons, patents, registrations of marks, copyrights, applications for a patent, applications for a mark, applications for a copyright, patent appraisals, infringement searches or studies, patentability searches or studies, validity searches or studies, minutes, reports, calendars, inter-office communications, price lists, bulletins, circulars, statements, manuals, instructions-for-use, directions-for-use, summaries, maps, charts, graphs, invoices, canceled or voided checks, bills or statistical material, insurance policies, pleadings, statements, affidavits, depositions, and transcripts. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

8. The term "thing" shall mean any physical specimen or other tangible item, other than a document, within Pavemetrics' possession, custody, or control.

9. The term "entity" means any natural person, corporation, company, partnership, sole proprietorship, firm, board, joint venture, association, organization, trust, governmental body, agency, authority, commission, or any other juristic person, business unit, or collective organization, and any legal, governmental, organizational, or political subdivision thereof.

10. The term "person" means any individual, group, or entity. Acts of a person shall include the acts of its directors, officers, owners, members, employees, agents, attorneys, and all other representatives acting on the person's behalf.

11. The term "communication(s)" means the transmittal of information (in the form of facts, data, knowledge, ideas, inquiries, or otherwise), regardless of the content and/or means utilized.

12. The term "date" means and refers to the exact day, month, and year, if ascertainable, and if the exact day, month, and year are not ascertainable, then the best approximation thereof.

13. The term "each" means and refers to "each and every," "all" means and includes "any and all," and "any" means and includes "any and all."

14. To "identify" a person means to state the person's name and present or last-known business address and, in the case of a natural person, his present or last-known home address, employer or business affiliation, and occupation or job title.

15. To "identify" a document means to provide the litigation document control (e.g., Bates) number or a brief description of the document sufficient to support a request for production, including the type of document, the general subject matter, the date of the document, version, identification of the author(s) and recipient(s), if any, and if the document embodies an agreement, the parties to such agreement. In answering interrogatories requiring identification of any document or documents, such document or documents may be produced for inspection and

1  copying in lieu of identification, provided you identify the request(s) to which it is
2  responsive.
3      16.    To "identify" a thing means to provide the litigation document control
4  (e.g., Bates) number or a brief description of the thing sufficient to support a request
5  for production including any numbers, markings, versions or other identifying
6  characteristics.
7      17.    To "locate" documents or things means to state the present whereabouts
8  of each document or thing, and to identify the person having possession, custody, or
9  control thereof.
10     18.    The terms "relating to," "referring to," and/or "concerning," mean
11 constituting, comprising, concerning, regarding, containing, setting forth, showing,
12 disclosing, describing, explaining, summarizing, evidencing, discussing, either
13 directly or indirectly, in whole or in part, and should be given the broadest possible
14 scope consistent with the Federal Rules of Civil Procedure.
15     19.    The conjunctions "and," "or," and "and/or" shall be construed either
16 disjunctively or conjunctively as necessary, whichever maximizes the scope of each
17 Topic of Examination in which they are used.
18 ///
19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

**TOPICS OF EXAMINATION**

1. The structure, function, and operation of the Accused Products and Services, including, but not limited to, the utility, distinguishing features, and alleged advantages of the Accused Products and Services.

2. The design and development of the Accused Products and Services, including, but not limited to, design requirements and protocols of the Accused Products and Services, alternative design options considered, schedules and timelines for the design and development, testing of the Accused Products and Services, and the names, timing, and specific roles of all persons involved in the design and development of the Accused Products and Services.

3. For each Accused Product or Service, the operation of each and every software module, function, or file in Pavemetrics' source code that implements any part or portion of the functionality or functionalities of the Accused Products and Services, the identification of which part(s) or portion(s) of the functionality or functionalities relates to the module, function, or file, and the interoperability of the same with the Accused Products and Services.

4. For each Accused Product or Service, the function of any database used in connection with the Accused Products and Services, including, but not limited to, identifying, describing, or providing the contents of any database accessed, updated, or otherwise used in connection with any Accused Product or Service.

5. All facts and circumstances, including, but not limited to structures, functions, operations, procedures performed, and development history, relating to all source code that Pavemetrics has made available for inspection in this litigation.

6. All facts and circumstances relating to all changes, including updates, modifications, permissions for use, and restrictions on use, to any version of Pavemetrics' source code that implements any part or portion of the functionality or functionalities of the Accused Products and Services, including the reasons for each change, when each change was made by Pavemetrics, when each change was first

made available to third parties and the identities of such third parties, and a description of any features added, enabled, or disabled as a result of each change.

7. All facts, information, and documents concerning input parameters implemented to operate or test the Accused Products and Services, including, but not limited to, any computer files (e.g., configuration files) or other documents describing and identifying the configurations of the Accused Products and Services used for railway inspection, and functions or other commands for modifying any parameter or configuration of the Accused Products and Services.

8. All facts, information, and documents concerning outputs or results from operating or testing the Accused Products and Services and any processing of such outputs or results, including, but not limited to, output files, reports or summaries in, for example, Word, PDF, Excel, JPEG, XML (Extensible Markup Language), Shapefile, KML (Keyhole Markup Language), and/or LAS (LASer) formats, and presentations describing the results performed by the Accused Products and Services.

9. Testing, evaluating, or reverse-engineering of competitor or potential competitor's railroad track inspection and assessment systems (including any comparisons to the Accused Products and Services), including those of Tetra Tech, competitors, or others.

10. Whether and to what extent Pavemetrics has made any efforts to design around the Asserted Patents, the individuals involved in such efforts, the timing of such efforts, and the identity of any related documents.

11. The manufacture and assembly of the Accused Products and Services, including where the Accused Products and Services are manufactured, how each Accused Product and Service is manufactured, and the amount of the Accused Products and Services, including components of the Accused Products and Services, that have been manufactured.

12. The distribution of the Accused Products and Services, including how the Accused Products and Services are distributed, what entities distribute the Accused Products and Services, how many of the Accused Products and Services were distributed, and the chain of distribution for the Accused Products and Services.

13. The relationship between Pavemetrics and any other entity involved in the design, development, testing, manufacture, importation, exportation, distribution, use, or sale of any Accused Product or Service, including any agreement, license, contracts, distributorship, label arrangement, or joint venture concerning such relationship(s).

14. Training provided by Pavemetrics to railroad track inspection professionals, including actual and potential customers, sales representatives, technical representatives, and technical service personnel with respect to Accused Products and Services.

15. All facts, circumstances, and documents related to services that Pavemetrics has sold, offered for sale, or otherwise provided to actual and potential customers with respect to the Accused Products and Services, including consulting services, data acquisition services, data processing and analysis services, and technical support services, and any deliverables, summaries, reports, presentations, spreadsheets, images, files, and any other data or information from such services, including their contents, formats, intended use, and methods of delivery to any actual or potential customers.

16. Licensing or potential licensing relating to the Accused Products and Services and/or the fields of technology related to the Asserted Patents.

17. Litigations, demands, or disputes involving any of the Accused Products and Services, including, but not limited to, all intellectual property litigations.

18. Any investigations or activities relating to the Asserted Patents, including any steps taken before the filing of this Action by or on behalf of Pavemetrics to determine whether the Accused Products and Services infringe the

Asserted Patents or the claims of the Asserted Patents are valid or invalid, and any opinions of counsel that Pavemetrics intends to rely on in this Action.

19. Any indemnification requests made or received by Pavemetrics arising from Tetra Tech's allegations that the Accused Products and Services infringe the Asserted Patents, and the nature, identity, and location of all communications and documents relating to such requests.

20. All non-privileged communications, including, but not limited to, communications between Pavemetrics and any third party, concerning the Asserted Patents, the parties' infringement and validity allegations, and/or this Action, the identity of those persons who engaged in such communications, the dates of such communications, the content of such communications, and the identity of any documents recording, evidencing, or relating to such communications.

21. All facts, circumstances, and documents forming the basis for Pavemetrics' assertion that the Accused Products and Services do not infringe the Asserted Patents.

22. All facts, circumstances, and documents forming the basis for Pavemetrics' assertion that it is entitled to a complete defense to infringement of the Asserted Patents under 35 U.S.C. § 273.

23. All facts, circumstances, and documents forming the basis for Pavemetrics' assertion that the Asserted Patents are invalid and/or unenforceable.

24. For each Asserted Patent, the facts and circumstances, including the date, under which Pavemetrics first became aware of the Asserted Patent, the inventions described in the Asserted Patent, and/or any application(s) leading to the issuance of the Asserted Patent.

25. The facts and circumstances, including the date, under which Pavemetrics first became aware of Tetra Tech's three-dimensional track assessment system (3DTAS).

8

Exhibit 11
132

26. All facts and circumstances concerning any actions or efforts taken by Pavemetrics to monitor or track Tetra Tech's development, sales, marketing, or advertising of Tetra Tech's railroad track inspection and assessment systems, including the 3DTAS, and the identity of the person(s) involved in such actions or efforts.

27. The marketing and promotion of the Accused Products and Services, including, but not limited to, product manuals, reference manuals, technical manuals, and user's manuals; product catalogues, brochures, advertisements, press releases, videos, product specification sheets, customer communications, articles, posters, papers, internal or external presentations, or internet postings relating to any Accused Product or Service; and packaging, inserts, labeling, and/or instructions for use for any Accused Product or Service.

28. Pavemetrics' strategic business or portfolio plans with respect to any Accused Product or Service.

29. Market studies, surveys, market share data, market reports, projections, forecasts, marketing plans, budgets, sales reports, profitability assessments, or other marketing or financial reports or plans relating to any Accused Product or Service.

30. The identity of Pavemetrics' competitors for each Accused Product and Service, the total market size of Pavemetrics' share of the respective market for each Accused Product and Service, and the respective market share for each of Pavemetrics' competitors.

31. Pavemetrics' financial information relating to the Accused Products and Services, including, but not limited to, financial statements, notes to financial statements, balance sheets, income statements, statements of cash flow, profit and loss statements, that evidence the total capital costs associated with each and every Accused Product and Service, including, without limitation, documents and things which identify the factors comprising the amount of money spent in production and/or capital costs.

9

Exhibit 11
133

32. Sales information for each Accused Product and Service, including:
   - the quantity of units and services sold;
   - Pavemetrics' revenue on those sales;
   - Pavemetrics' discounts, if any, on those sales;
   - Pavemetrics' gross and net profit on those sales;
   - sales projection studies and supporting analyses;
   - Pavemetrics' direct, indirect, or overhead costs (fixed and variable) involved in researching, designing, manufacturing, and/or selling such products and services, including, but not limited to, the purchase cost if bought from a wholly unrelated entity, the cost of all materials and labor, R&D costs, and all other direct or indirect costs of manufacture and/or sale, including sales persons, commissions, waste and loss, and freight;
   - the identity of the distributors and customers to whom any Accused Products and Services were sold; and
   - the identity of third-party manufacturers and/or developers of any Accused Products and Services.

33. The methods by which Pavemetrics tracks or otherwise records its sales volume, sales revenues, gross profits, net profits, and costs sales of the Accused Products and Services.

34. The sales price of each Accused Product and Service, including how the sales price was determined for each Accused Product and Service, including, but not limited to, the rationale for the initial pricing or any changes thereto, competitive factors influencing the price at which the Accused Products and Service were/are sold, and communications and agreements with third parties regarding actual prices, proposed prices, and price changes.

35. Pavemetrics' projections or expectations regarding future sales, pricing, market share, sales volumes, market projections or analyses, and/or actual or

anticipated profitability of each Accused Product and Service, and the supporting analyses for such sales projection studies.

36. Description of how the Accused Products and Services are imported, sold, offered for sale, downloaded, or offered for use, including, without limitation, any Pavemetrics' selling techniques, strategies or incentives, compensation and commission rates for Pavemetrics' sales force and sales incentives pertaining to the Accused Products and Services, typical contracts or other agreements with customers or other buying organizations, leasing options, and details pertaining to any bundling of Accused Products and Services with other products and/or services offered by Pavemetrics, including consumables.

37. The factors that influence the purchasing decisions of customers in the railroad track inspection and assessment market, including, but not limited, to any factors derived from customer focus or preference groups, market research studies, or other feedback and comments from customers or potential customers and/or users or potential users of the Accused Products and Services.

38. Any product, functionality, or service that Pavemetrics contends to be an acceptable, noninfringing alternative to the Accused Products and Services, and the factual basis for such contentions.

39. Any agreement or license that Pavemetrics contends involves technology comparable to the Asserted Patents and/or Pavemetrics intends to rely on as evidence of a reasonable royalty based on the Asserted Patents.

40. All valuations of Pavemetrics and/or efforts to value Pavemetrics, including the facts and circumstances surrounding such valuation or valuation efforts, the result of each such valuation or valuation effort, and the proportion attributable to the Accused Products and Services.

41. Any valuations and/or efforts to value Pavemetrics' intellectual property, including any Pavemetrics' patents and patent applications, related to railroad track inspection and assessment, including the facts and circumstances

surrounding such valuation or valuation efforts and the result of each such valuation or valuation effort.

42. The existence, identification, and description of any technology licensing policies, procedures, or practices followed by Pavemetrics.

43. The existence, identification, and description of any Pavemetrics' policies, procedures, or practices for protecting and/or enforcing intellectual property rights related to railroad track inspection and assessment.

44. An explanation of each document cited in Tetra Tech's Preliminary and First Supplemental Infringement Contentions, including an explanation of the features described in each document, identification of the author of the document, and whether the document reflects implemented Pavemetrics' product design(s) and/or feature(s).

45. All facts and circumstances relating to Pavemetrics' statements in its Complaint, Answer to Tetra Tech's Counterclaim, Compulsory Counterclaim, Answer to Tetra Tech's First Amended Counterclaim, and First Amended Compulsory Counterclaim in this Action, including the factual bases and documents relied on by Pavemetrics for such statements and any related investigation.

46. All facts and circumstances relating to Pavemetrics' statements in its Opposition to Tetra Tech's Motion for Preliminary Injunction, including the factual bases and documents relied on by Pavemetrics for such statements and any related investigation.

47. The factual bases for Pavemetrics' responses to Tetra Tech's Interrogatories served in this Action.

48. Any steps taken to identify, locate, search for, collect, and/or produce documents from any source (e.g., person, entity, shared server), responsive to Tetra Tech's discovery requests in this Action.

49. Any steps taken to ensure that all documents potentially relevant to Pavemetrics' claims and/or defenses, Tetra Tech's counterclaims, or either party's

1 requests for relief in this Action were preserved, including, but not limited to, any
2 steps taken in accordance with any Pavemetrics policy, procedure, guideline, or
3 method of operation, relating to the generation, retention, maintenance, and/or
4 destruction of documents by Pavemetrics.

5   50.   Any instances of destruction, manipulation, or loss of any information
6 or documents potentially relevant to Pavemetrics' claims and/or defenses, Tetra
7 Tech's counterclaims, or either party's requests for relief, or responsive to Tetra
8 Tech's discovery requests in this Action, including, but not limited to, the facts and
9 circumstances under which any such information or document was destroyed
10 manipulated, lost, or otherwise made unavailable.

**PROOF OF SERVICE**

I am a citizen of the United States of America and I am employed in Washington, D.C. I am over the age of 18 and not a party to the action. My business address is 901 New York Avenue NW, Washington, D.C.

On November 16, 2021, I served **TETRA TECH'S NOTICE OF DEPOSITION OF PAVEMETRICS SYSTEMS, INC. PURSUANT TO FED. R. CIV. P. 30(b)(6)** on the parties or their counsel shown below, by transmitting it electronically to the addresses as follows:

> Joseph R. Re (SBN 134,479)
> joe.re@knobbe.com
> Christy G. Lea (SBN 212,060)
> christy.lea@knobbe.com
> Nicholas M. Zovko (SBN 238,248)
> nicholas.zovko@knobbe.com
> Payne M. Montgomery (*Pro Hac Vice*)
> mack.montgomery@knobbe.com
> **KNOBBE, MARTENS, OLSON & BEAR, LLP**
> 2040 Main Street, Fourteenth Floor
> Irvine, CA 92614
> Phone: (949) 760-0404
> Facsimile: (949) 760-9502

Executed on November 16, 2021 at Washington, D.C.

　　　　　　　　　　　　　/s/ Nicholas A. Cerulli
　　　　　　　　　　　　　Nicholas A. Cerulli

1

Exhibit 11
138