1   Christy G. Lea (SBN 212,060)
    christy.lea@knobbe.com
2   Joseph R. Re (SBN 134,479)
    joe.re@knobbe.com
3   Nicholas M. Zovko (SBN 238,248)
    nicholas.zovko@knobbe.com
4   Alan G. Laquer (SBN 259,257)
    alan.laquer@knobbe.com
5   Raymond Lu (SBN 340,873)
    raymond.lu@knobbe.com
6   KNOBBE, MARTENS, OLSON & BEAR, LLP
    2040 Main Street, Fourteenth Floor
7   Irvine, CA  92614
    Phone: (949) 760-0404
8   Facsimile: (949) 760-9502

9   *Attorneys for Plaintiff/Counterclaim Defendant*
    PAVEMETRICS SYSTEMS, INC.

10

11              **IN THE UNITED STATES DISTRICT COURT**

12              **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

13                         **WESTERN DIVISION**

14

| | |
|---|---|
| 15  PAVEMETRICS SYSTEMS, INC., | ) Case No. 2:21-cv-1289-MCS-MMA |
| 16              Plaintiff, | ) **PAVEMETRICS' MEMORANDUM** |
| | ) **OF CONTENTIONS OF FACT AND** |
| 17        v. | ) **LAW PURSUANT TO LOCAL** |
| | ) **RULE 16-4** |
| 18  TETRA TECH, INC., | ) |
| 19              Defendant. | ) Pretrial Conference: |
| | ) Date:  July 25, 2022 |
| 20 | ) Time:  2:00 p.m. |
| 21 | ) Trial: |
| 22 | ) Date:  August 9, 2022 |
| | ) Time:  8:30 a.m. |
| 23 | ) Ctrm:  7C |
| 24  AND RELATED COUNTERCLAIMS | ) Honorable Mark C. Scarsi |
| 25 | ) |

26

27

28

Pursuant to Local Rule 16-4 and the Court's Order re: Jury Trial (ECF 56), Plaintiff Pavemetrics Systems, Inc. respectfully submits this Memorandum of Contentions of Fact and Law.

## I.  SUMMARY OF CASE

This is an action concerning two related patents, U.S. Patent Nos. 10,362,293 and 10,616,557.  The parties are: (1) Pavemetrics, a small, privately held Canadian company; (2) Tetra Tech, Inc., a large publicly traded company; and (3) Tetra Tech TAS, Inc., a subsidiary of Tetra Tech, Inc., located in Canada.

Pavemetrics is a leader in vision systems for the automated inspection of transportation infrastructures, including roads and railway tracks.  Since its first European sale in 2010, and its first United States sale in 2012, Pavemetrics has been advertising and offering for sale its systems for inspecting railroads.  In 2014, Pavemetrics rebranded its technology for inspecting railway tracks under the name "Laser Rail Inspection System," or "LRAIL."  In 2017, Pavemetrics secured a contract with the Federal Railroad Administration (FRA) to demonstrate the capability of its LRAIL system.  Today, Pavemetrics continues to sell LRAIL around the world.

Pavemetrics sells and ships the LRAIL system as an unassembled kit of components in multiple boxes.  After the LRAIL system is assembled, it may include processing software based upon a recent version of Pavemetrics' source code, which is frequently updated.  Since 2019, Pavemetrics began using deep neural networks to identify defects in railway tracks.  A deep neural network develops its own operators that allow a computer to analyze images similar to how a human would.

The patents-in-suit claim priority to an application filed in 2015.  They relate to using computer vision to inspect railway tracks to identify defects in the tracks.  The patents do not contain any disclosure related to deep neural networks.  The '293 patent's alleged point of novelty is the computer algorithm,

i.e., processing steps that must be completed by a computer on the railway track data.  The '557 patent requires performing steps to identify cracks in railroad ties.

Tetra Tech first accused Pavemetrics of infringing the '293 patent in a series of letters beginning on January 5, 2021.  Pavemetrics was not aware of the '293 patent and immediately performed a preliminary analysis to confirm it did not infringe.  Shortly thereafter, Pavemetrics filed a declaratory judgment action seeking a declaration that it does not infringe the '293 patent.  Tetra Tech moved to preliminarily enjoin Pavemetrics from selling LRAIL.  The Court denied Tetra Tech's motion, finding it was not likely to succeed on the merits of its infringement claim and finding that Pavemetrics had raised a substantial question of invalidity.  ECF 61.  In July 2021, Tetra Tech accused Pavemetrics of infringing the '557 patent and added that patent to the suit.

Tetra Tech has alleged that Pavemetrics directly infringed system claims of the '293 patent by **_selling_** LRAIL systems to two customers in the United States, CSX and AID.  *See* Morellas Infringement Report ¶¶609-611.  Tetra Tech has **_not_** alleged that Pavemetrics directly infringed by making, using, offering for sale, or importing any LRAIL system in the U.S.  *Id.*

Tetra Tech has accused a total of six LRAIL sales of infringement.  *Id.*

| Accused Sales | Customer | Sale Invoiced |
|---|---|---|
| Unit A | CSX | Oct. 23, 2020 |
| Unit B | CSX | Oct. 23, 2020 |
| Unit 1 | AID | Dec. 23, 2020 |
| Unit 2 | CSX | Apr. 21, 2021 |
| Unit 3 | CSX | Apr. 21, 2021 |
| Unit 4 | CSX | Apr. 21, 2021 |

This Court granted summary judgment that Pavemetrics sold Units A and B before Tetra Tech provided notice of possible infringement in January 2021 and,

-2-

1  thus, are free of liability.  ECF 209 at 8-14.  As such, the only sales that remain

2  for trial are Units 1-4.

3       Tetra Tech has alleged that three different LRAIL functionalities infringed

4  the '293 patent claims: (1) inputting a Fake3D Image into a neural network

5  ("Fake3D"); (2) inputting a Mixed Image into a neural network ("Mixed

6  Image"); and (3) identifying features from elevation data only and overlaying

7  those features onto a Fake3D Image ("Fake3D with Overlay").  Pavemetrics

8  moved for summary judgment on all three functionalities and this Court granted

9  its motion with respect to the third functionality (Fake3D with Overlay).  ECF

10  109; ECF 189 (Order at 9).  Thus, all that remain for trial are accused

11  functionalities (1) Fake3D and (2) Mixed Image.

12       Once assembled, Units 1-4 included different versions of software, as

13  shown below.  Units 2-3 never included accused functionality (1).  Unit 4 (or the

14  latest software version) never included accused functionality (1) or (2).

| LRAIL Unit | Customer | Software Version | Accused functionality |
|---|---|---|---|
| Unit 1 | AID | 4.75.6.4 | (1) Fake3D only |
| | | 4.78.6.0 (road) | (1) Faked3D & (2) Mixed Image[1] |
| | | 4.82.0.0 | None |
| Unit 2 | CSX | 4.80.2.0 | (2) Mixed Image[2] |

_____

[1] Software based on source code version 4.78.6.0 was not configured to use either accused functionality (Fake3D or Mixed Image).

[2] Software based on source code version 4.80.2.0 was not configured to use the Mixed Image functionality.  CSX's license to version 4.80.2.0 expired on March 31, 2022.

| Unit 3 | CSX | 4.80.2.0 | (2) Mixed Image[2] |
| Unit 4 | CSX | 4.82.0.0 | None |

After the close of fact discovery, Pavemetrics sold another LRAIL to CSX in February 2022.  Upon assembly in May 2022, that system included software version 4.82.0.0 with no accused functionality.  Pavemetrics promptly supplemented its discovery responses and expert reports to disclose this information to Tetra Tech.  Pavemetrics also offered for Tetra Tech to inspect version 4.82.0.0 of the source code and to depose Pavemetrics' Vice President of R&D and technical expert regarding the revisions.  Tetra Tech declined and is seeking to exclude evidence of this seventh sale from the trial.  That seventh sale is listed below as Unit C.

| LRAIL Unit | Customer | Software Version | Accused functionality |
| --- | --- | --- | --- |
| Unit C | CSX | 4.82.0.0 | None |

Tetra Tech has alleged indirect infringement of both patents-in-suit.  Namely, Tetra Tech has alleged that Pavemetrics actively induced CSX and AID to directly infringe the '293 patent by using the accused LRAIL and to directly infringe the '557 patent by using the accused LRAIL to perform the claimed method.  Morellas Infringement Report ¶¶612-614, 624-625.  Tetra Tech also alleged that CSX directly infringed the method claimed in the '557 patent by importing into the U.S. a product made by a patented process.  *Id.* ¶¶615-616.  Specifically, Tetra Tech alleged that CSX collected data using Unit A, sent that data to Pavemetrics in Canada for processing, and Pavemetrics sent Tetra Tech output files from processing the data.

/ / /

Tetra Tech also alleged that Pavemetrics contributed to direct infringement by CSX and AID by selling LRAIL components that have no use other than to practice the method claim in the '557 patent and that CSX and AID used the LRAIL components to infringe Claim 8. *Id.* ¶¶624-626.

All allegations related to CSX directly infringing the patents are precluded by the Court's recent summary judgment rulings. All of the accused uses by CSX relate to CSX using Unit A to collect data, and Pavemetrics' processing that data in Canada pursuant to an FRA contract. This Court's ruling that the sale of Unit A is free of liability precludes Tetra Tech from continuing to argue that any use of Unit A infringes. This Court held on summary judgment that Pavemetrics' processing of data on July 21, 2021 and October 7 and 8, 2021 for CSX was pursuant to FRA contracts and protected by governmental immunity.[3] ECF. 209. This ruling precludes Tetra Tech from continuing to argue that importing data from that immune-from-suit processing infringes the asserted patents.

On June 22, 2022, the parties filed a stipulation to narrow the issues to be presented at trial. ECF 204. Tetra Tech narrowed the asserted claims to Claims 1, 2, 4, and 21 of the '293 patent and Claim 8 of the '557 patent. *Id.* As explained in Pavemetrics' Motion in Limine No. 3, filed concurrently herewith, this Court's ruling on Pavemetrics' Motion for Summary Judgment of Non-Infringement of the '293 Patent (ECF 189, Order at 9) precludes Tetra Tech from arguing that Pavemetrics' elevation-only algorithms (held not to infringe Claim 1) infringe its dependent Claims 2, 4, and 21. With respect to Claims 2 and 4, those adjudicated elevation-only algorithms are the only accused algorithms. Accordingly, Tetra Tech has no remaining infringing allegations with respect to Claims 2 and 4.

---

[3] Tetra Tech has not alleged that Pavemetrics has processed data for CSX on any other dates.

The operative pleadings, the parties' recent stipulation to limit patent claims for trial (ECF 204), and the Court's summary judgment Orders (ECF 189 & 209) set forth the following claims and defenses:

## II.   PAVEMETRICS' CLAIMS[4]

**A.    Summary of Pavemetrics' Claims:**

Pavemetrics has asserted the following claims and counterclaims:

**Claim 1**:  Declaration that Pavemetrics does not infringe Claims 1 and 21 of the '293 patent.

**Counterclaim 1**:  Declaration that Claims 1 and 21 of the '293 patent are invalid.

**Counterclaim 2**:  Declaration that Claim 8 of the '557 patent is invalid.

**Counterclaim 3**:  Declaration that Pavemetrics does not infringe Claim 8 of the '557 patent.

**B.    Elements Required to Establish Pavemetrics' Claims**

**1.    Claim 1:  Pavemetrics Does Not Infringe the Asserted Claims of the '293 Patent.**

Tetra Tech has alleged that Pavemetrics directly infringed Claims 1 and 21 of the '293 patent.  In addition, Tetra Tech has alleged that AID directly infringed the '293 patent, and Pavemetrics is liable for actively inducing direct infringement by AID.

Tetra Tech has the burden to prove infringement of the '293 patent by a preponderance of the evidence.  If Tetra Tech does not do so, then Pavemetrics does not infringe the '293 patent.

---

[4] Pavemetrics presumes that Tetra Tech will not be permitted to argue that LRAIL's elevation-only algorithms infringe dependent Claims 2 and 4.  It has drafted its claims accordingly.  However, should the Court allow Tetra Tech to argue infringement of Claims 2 and 4 before the jury, then Pavemetrics will seek a declaration that it does not infringe those claims and they are invalid.

To prove direct infringement of a system claim, Tetra Tech must prove by a preponderance of the evidence that Pavemetrics sold in the United States a product that meets all of the requirements of that system claim. *See* Infringement B.3.1a, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

Pavemetrics is liable for active inducement of a claim only if Tetra Tech proves by a preponderance of the evidence that:

1. Any uses by AID directly infringe that claim;

2. Pavemetrics took action during the time the '293 patent was in force that was intended to cause and led to the infringing use by AID; and

3. Pavemetrics was aware of the '293 patent and knew that uses, if taken, would constitute infringement of that patent or that Pavemetrics believed there was a high probability that the uses by AID would infringe the '293 patent and Pavemetrics took deliberate steps to avoid learning of that infringement.

*See* Infringement B.3.2, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

For active inducement, if Pavemetrics was aware of the '293 patent, but believed that the uses carried out by AID would not infringe the '293 patent, Pavemetrics cannot be liable for active inducement or contributory infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015).

2. **Counterclaim 1:  The Asserted Claims of the '293 Patent are Invalid.**

Pavemetrics asserts that Claims 1 and 21 of the '293 patent are invalid based on anticipation, obviousness, and indefiniteness.  Pavemetrics relies on prior art to the '293 patent, including:

- The printed publication Samy Metari et al., *Automatic Track Inspection Using 3D Laser Profilers to Improve Rail Transit Asset Condition Assessment and State of Good Repair – A Preliminary Study*, TRB 93RD ANNUAL MEETING COMPENDIUM OF PAPERS (2014) ("UML-TRB2014"), published in 2014.

- The printed publication Alejandro García Lorente et al., *Detection of Range-Based Rail Gage and Missing Rail Fasteners: Use of High-Resolution Two- and Three-Dimensional Images*, 2448 TRANSP. RSCH. REC.: J. TRANSP. RSCH. BD. 125 (2014) ("EC-TRB2014"), published in 2014.

- The printed publication Xavier Gibert-Serra et al., *A Machine Vision System for Automated Joint Bar Inspection from a Moving Rail Vehicle*, Proc. 2007 ASME/IEEE JOINT RAIL CONF. & INTERNAL COMBUSTION ENGINE SPRING TECH. CONF. 289 (2007) ("Gibert-Serra"), published in 2007.

- The September 27, 2012 sale of Pavemetrics LCMS (with railway inspection capabilities) to University of Massachusetts-Lowell (UML) and the use of that device to inspect railway tracks ("UML Sale"), and 2012–2014 technical support and development consulting for UML on USDOT Contract No. RITARS-12-H-UML, including uses of code tested as proof of concept, for example, the "matlab_cracks.m" crack detection algorithm ("UML Support") (collectively, "UML Sale and Support").

- Tetra Tech's prior use, sale, offer for sale of Tetra Tech's IRAP Prototype system, 3DTAS, and/or 3D tie assessment system ("Tetra Tech's Prior Use").

Specifically, Pavemetrics asserts as follows:

-8-

- Claims 1 and 21 of the '293 patent would have been obvious in view of the UML Sale and Support and/or UML-TRB2014, either alone or in combination with EC-TRB2014.

- Claim 21 of the '293 patent would have been obvious in view of the combinations above and when combined with Gibert-Serra.

- Claims 1 and 21 of the '293 patent are anticipated by or would have been obvious in view of Tetra Tech's prior use, sale, offer for sale of Tetra Tech's IRAP Prototype system, 3DTAS, and/or 3D tie assessment system ("Tetra Tech's Prior Use").

- Claims 1 and 21 of the '293 patent are indefinite under 35 U.S.C. § 112(b). A skilled artisan would not have been reasonably certain about the meaning of the term "small 2D track section" in Claim 1. The claims that depend from Claim 1, such as Claim 21, similarly fail to satisfy the definiteness requirement.[5]

For anticipation, Pavemetrics must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. The claim requirements may either be disclosed expressly or inherently such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention. *See* Validity—The Claims B.4.3b-1, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

For obviousness, Pavemetrics must establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would

---

[5] If Claim 2 were in the case, it would also be indefinite for additional reasons. A skilled artisan would not be reasonably certain about the meaning of the term "significant vertical gradient edges" recited in Claim 2. The claims that depend from Claim 2, such as Claim 4, similarly fail to satisfy the definiteness requirement.

have been obvious to persons having ordinary skill in the art at the time the patent was filed in the field of applied image processing or computer vision. In determining whether a claimed invention is obvious, the trier of fact must consider the level of ordinary skill in the art that someone would have had at the time Tetra Tech's patent application was filed, the scope and content of the prior art, and any difference between the prior art at the claimed invention. The trier of fact should also consider any objective evidence that may shed light on the obviousness or not of the claimed invention. *See* Validity—The Claims B.4.3c, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

For indefiniteness, Pavemetrics will establish by clear and convincing evidence that a patent claim is indefinite because the language of the patent claim, when read in view of the specification and prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

### 3.   Counterclaim 2:  The Asserted Claim of the '557 Patent is Invalid.

Pavemetrics asserts that Claim 8 of the '557 patent is invalid based on anticipation and obviousness. Specifically, Pavemetrics asserts as follows:

- Claim 8 is anticipated by or would have been obvious in view of the UML Sale and Support and/or UML-TRB2014.

- Claim 8 is anticipated or would have been obvious by Tetra Tech's Prior Use.

The elements required to establish invalidity based on anticipation and obviousness of the '557 patent are the same as the elements required to establish invalidity based on anticipation and obviousness with respect to the '293 patent, which are set forth above in Counterclaim 1.

/ / /

4. **Counterclaim 3:  Pavemetrics Does Not Infringe the Asserted**
**Claim of the '557 Patent.**

Tetra Tech has alleged that AID directly infringed Claim 8 of the '557 patent, and Pavemetrics is liable for actively inducing or contributing to that direct infringement by AID.

Tetra Tech has the burden to prove infringement of the '557 patent by a preponderance of the evidence.  Because Tetra Tech cannot do so, Pavemetrics does not infringe the '557 patent.  The elements required to establish active inducement of the '557 patent are the same as the elements required to establish that claim with respect to the '293 patent, which are set forth above in Claim 1.

Pavemetrics is liable for contributory infringement of a claim if Tetra Tech proves by a preponderance of the evidence:

1. Pavemetrics sold within the United States a component of a product, material, or apparatus for use in a process, during the time the '557 patent is in force;

2. The component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial noninfringing use;

3. The component, material, or apparatus constitutes a material part of the invention;

4. At the time of the sale, Pavemetrics was aware of the '557 patent and knew that the component, material, or apparatus is especially made or adapted for use as an infringement of the claim; and

5. AID used the component, material, or apparatus to directly infringe a claim.

*See* Infringement B.3.3, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

For both active inducement and contributory infringement, if Pavemetrics was aware of the '557 patent, but believed that the use of the component,

-11-

material, or apparatus would not infringe the '557 patent, Pavemetrics cannot be liable for active inducement or contributory infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015).

## C. Brief Description of Evidence in Support of Pavemetrics' Claims

### 1. Evidence in Support of Pavemetrics' Claim 1

Pavemetrics will present evidence through documents and live testimony of Jean-François Hébert and John Laurent relating to Pavemetrics' design, development, and sales of the LRAIL system, including that Pavemetrics sells and ships the LRAIL system as an unassembled kit. Pavemetrics will also present evidence through documents and live testimony of Jean-François Hébert and John Laurent regarding the functionality of each version of LRAIL software provided to CSX and AID.

Pavemetrics will present evidence through deposition testimony of Brad Spencer of CSX that CSX has never used any version of LRAIL to process any data, that CSX has never used Units 2-4 to collect any data, and that a primary reason that CSX purchased LRAIL was its lower price relative to other products that CSX considered. Pavemetrics will present evidence through deposition testimony of Ali Hafiz regarding AID's purchase and use of Unit 1.

Pavemetrics will present evidence through documents and live testimony of Richard Habel that Pavemetrics did not know of the asserted patents before receiving notice letters from Tetra Tech and, at all times, believed it does not infringe the asserted patents.

Pavemetrics will present evidence through live testimony of its expert witness, Dr. David Frakes, showing that Pavemetrics does not infringe any of the asserted claims.

### 2. Evidence in Support of Pavemetrics' Counterclaim 1

Pavemetrics will present evidence of prior art to the '293 patent, including UML Sale and Support, UML-TRB2014, EC-TRB2014, Gibert-Serra,

and Tetra Tech's Prior Use.  Pavemetrics also intends to present evidence of prior art that reflects the state of the art or shows how one of ordinary skill would be motivated to combine various prior art references.

Pavemetrics will present evidence through documents and live testimony of Jean-François Hébert and John Laurent relating to Pavemetrics' own prior art, including UML Sale and Support, UML-TRB2014, EC-TRB2014.

Pavemetrics will present evidence through documents and live testimony of Darel Mesher relating to Tetra Tech's prior art, including Tetra Tech's Prior Use.  Pavemetrics may present live testimony of Darel Mesher, Gary Keyes, William Larson, and/or Bernie Teufele regarding the scope and content of the prior art to the patents-in-suit and lack of secondary considerations of non-obviousness.

Pavemetrics will present evidence through the live testimony of Dr. David Frakes regarding opinions of invalidity of the '293 patent, the level of ordinary skill in the art, the scope and content of the prior art to the '293 patent, motivations to combine the prior art, materiality of the prior art, and lack of secondary considerations for nonobviousness.

### 3.    Evidence in Support of Pavemetrics' Counterclaim 2

Pavemetrics will present evidence of prior art to the '557 patent, including UML Sale and Support, UML-TRB2014, and Tetra Tech's Prior Use. Pavemetrics also intends to present evidence of prior art that reflects the state of the art or shows motivation to combine.

Pavemetrics will present evidence through documents and live testimony of Jean-François Hébert and John Laurent relating to Pavemetrics' own prior art, including UML Sale and Support and UML-TRB2014.

Pavemetrics will present evidence through documents and live testimony of Darel Mesher relating to Tetra Tech's prior art, including Tetra Tech's Prior Use.  Pavemetrics may present live testimony of Darel Mesher, Gary Keyes,

-13-

1    William Larson, and/or Bernie Teufele regarding the scope and content of the
2    prior art to the patents-in-suit and lack of secondary considerations of non-
3    obviousness.

4           Pavemetrics will present evidence through the live testimony of
5    Dr. David Frakes regarding opinions of invalidity of the '557 patent, the level of
6    ordinary skill in the art, the scope and content of the prior art to the '557 patent,
7    motivations to combine the prior art, materiality of the prior art, and lack of
8    secondary considerations for nonobviousness.

9           **4.      Evidence in Support of Pavemetrics' Counterclaim 3**

10          Pavemetrics will present evidence through documents and live testimony
11   of Jean-François Hébert and John Laurent relating to Pavemetrics' design,
12   development, and sales of the LRAIL system.  Pavemetrics will also present
13   evidence through documents and live testimony of Jean-François Hébert and
14   John Laurent regarding the functionality of each version of LRAIL software
15   provided to CSX and AID.

16          Pavemetrics will present evidence through deposition testimony of Brad
17   Spencer of CSX that CSX has never used any version of LRAIL to process any
18   data, that CSX has never used Units 2-4 to collect any data, and that the primary
19   reason that CSX purchased LRAIL was its lower price relative to other products
20   that CSX considered.  Pavemetrics will present evidence through deposition
21   testimony of Ali Hafiz regarding AID's purchase and use of Unit 1.

22          Pavemetrics will present evidence through documents and live testimony
23   of Richard Habel that Pavemetrics did not know of the asserted patents prior to
24   receiving notice letters from Tetra Tech and, at all times, believed it does not
25   infringe the '557 patent.

26          Pavemetrics will present evidence through live testimony of Dr. David
27   Frakes showing that Pavemetrics does not infringe Claim 8 of the '557 patent.

28

### III.  TETRA TECH'S COUNTERCLAIMS

**A.     Summary of Tetra Tech's Counterclaims:**

Tetra Tech's counterclaims are set forth in its First Amended Counterclaim (ECF 79) and the parties' Stipulation to Limit Patent Claims for Trial (ECF 204), and are as follows:

**Counterclaim 1**:  Direct and indirect infringement of Claims 1 and 21 of the '293 patent.

**Counterclaim 2**:  Indirect infringement of Claim 8 of the '557 patent.

**Damages**:   Tetra Tech also seeks damages for Pavemetrics' alleged infringement, asserting that it is entitled to lost profits and/or a reasonable royalty.

**B.     Elements Required to Establish Tetra Tech's Counterclaims**

> **1.     Counterclaim 1:  Tetra Tech Alleges that Pavemetrics Infringes Claims 1 and 21 of the '293 Patent.**

As explained above, Tetra Tech has alleged that Pavemetrics directly infringed Claims 1 and 21 of the '293 patent.  In addition, Tetra Tech has alleged that AID directly infringed the '293 patent, and Pavemetrics is liable for actively inducing that direct infringement by AID.

Tetra Tech has the burden to prove infringement of the '293 patent by a preponderance of the evidence.  Because Tetra Tech does cannot do so, Pavemetrics does not infringe the '293 patent.  The elements required to establish infringement of the '293 patent are set forth above with respect to Pavemetrics' Claim 1.

> **2.     Counterclaim 2:  Tetra Tech Alleges that Pavemetrics Infringes Claim 8 of the '557 Patent.**

As explained above, Tetra Tech has alleged that AID directly infringed Claim 8 of the '557 patent, and Pavemetrics is liable for actively inducing or contributing to that direct infringement by AID.

Tetra Tech has the burden to prove infringement of the '557 patent by a preponderance of the evidence.  Because Tetra Tech cannot do so, Pavemetrics does not infringe the '557 patent.  The elements required to establish infringement of the '557 patent are set forth above with respect to Pavemetrics' Claim 1 and Counterclaim 3.

### 3.   Tetra Tech's Claim for Damages

Tetra Tech's damages expert limited his opinions to damages based on Pavemetrics' *sales* of Units A and B and Units 1-4.  This Court held on summary judgment that Tetra Tech is not entitled to damages for sales of Units A and B.  ECF 209 at 8-14.  With respect to the sale of Unit 1, Tetra Tech's damages expert limited his opinion to a reasonable royalty.  With respect to sales of Unit 2-4, Tetra Tech's damages expert opined that Tetra Tech is entitled to lost profits for those sales, or, alternatively, a reasonable royalty.

Tetra Tech has the burden to prove its damages by a preponderance of the evidence.  To show it is entitled to lost profits on Units 2-4, Tetra Tech must establish each of the following:

1.   That there was demand for the patented product;

2.   That there were no available, acceptable, noninfringing substitute products;

3.   That Tetra Tech was capable of satisfying the demand; and

4.   The amount of profit that Tetra Tech would have made if Pavemetrics had not infringed.

*See* Patent Damages B.5.2, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

Because Tetra Tech cannot show liability, it is entitled to no damages.  Moreover, even if it could establish liability, Tetra Tech cannot show any entitlement to lost profits, particularly because there would be available, acceptable, noninfringing substitute products, as explained below.

**C.**     **Brief Description of Evidence in Opposition to Tetra Tech's Counterclaims**

**1.**     **Evidence in Opposition to Tetra Tech's Counterclaim 1**

The evidence Pavemetrics intends to present in opposition to Tetra Tech's Counterclaim 1 is explained above with respect to Pavemetrics' Claim 1, declaratory judgment of non-infringement of the '293 patent.

**2.**     **Evidence in Opposition to Tetra Tech's Counterclaim 2**

The evidence Pavemetrics intends to present in opposition to Tetra Tech's Counterclaim 2 is explained above with respect to Pavemetrics' Counterclaim 3, declaratory judgment of non-infringement of the '557 patent.

**3.**     **Evidence in Opposition to Tetra Tech's Damages Claim**

Pavemetrics intends to present testimony and evidence that Tetra Tech is not entitled to lost profits for Units 2-4.  For example, Pavemetrics' own LRAIL system is and has always been an acceptable, available non-infringing alternative.  LRAIL Units 2-4 have always been configured to identify features from a range image, and such algorithms are not accused of infringing.  Even after Pavemetrics removed the Mixed Images from its source code, CSX purchased an additional LRAIL (Unit C) from Pavemetrics that does not include any accused functionality.

Pavemetrics intends to present testimony and evidence that Tetra Tech is not entitled to the amount of a reasonable royalty that it seeks on Units 1-4.  For example, the value of the claimed invention is limited by the cost of removing the accused functionality (Fake3D and Mixed Images) from the source code, which is relatively low.  Thus, any reasonable royalty would be much lower than the amount that Tetra Tech seeks.

## IV.  PAVEMETRICS' AFFIRMATIVE DEFENSES

**A.**     **Summary of Pavemetrics' Affirmative Defenses:**

In opposition to Tetra Tech's patent infringement claims, Pavemetrics has

-17-

asserted and intends to pursue the following affirmative defenses:

**Affirmative Defense 1 (Invalidity)**:  Claims 1 and 21 of the '293 patent are invalid.  Claim 8 of the '557 patent is invalid.

**Affirmative Defense 4 (Estoppel)**:  Tetra Tech's claims are barred by equitable estoppel.

**Affirmative Defense 6 (Failure to Give Notice)**:  Pavemetrics is not liable to Tetra Tech for any sales before Pavemetrics received actual notice of the '293 patent.

\* \* \*

Pavemetrics has also asserted the following affirmative defenses but does not intend to pursue them at trial because they have been resolved or are otherwise no longer at issue, as explained below:

**Affirmative Defense 3 (Prosecution History Estoppel)**:  As a result of prosecution of one or more patents or patent applications, Tetra Tech is estopped from seeking a claim scope through claim construction or the doctrine of equivalents that would encompass any of Pavemetrics' products.

Tetra Tech has abandoned any allegations relating to infringement under the doctrine of equivalents.  Tetra Tech's infringement contentions and its expert report have no allegations regarding infringement under the doctrine of equivalents.  Because Tetra Tech's does not assert infringement under the doctrine of equivalents, prosecution history estoppel no longer applies.  Thus, Pavemetrics does not intend to present evidence at trial relating to prosecution history estoppel.

**Affirmative Defense 7 (Government Contractor's Defense)**:  Tetra Tech's claims for relief are barred, in part, under 28 U.S.C. § 1498 because Pavemetrics' products are provided under contract to the U.S. Government.

On July 6, 2022, the Court granted Pavemetrics' motion for summary judgment relating to governmental immunity as to immunity from suit for CSX

1   importing data processed by Pavemetrics on July 21, 2021 and October 7 and 8,

2   2021.   ECF 209 at 18-20, 25.   Tetra Tech has not identified any other

3   importations of data processed by Pavemetrics as accused of infringement.

4   Thus, the Court resolved this defense in Pavemetrics' favor and Pavemetrics

5   does not intend to present evidence at trial relating to this defense.

**B.      Elements Required to Establish Pavemetrics' Affirmative Defenses**

    **1.      Affirmative Defense 1:  The Asserted Claims Are Invalid.**

8       The elements required to establish invalidity of the '293 patent are set

9   forth above with respect to Pavemetrics' Counterclaim 1.   The elements

10  required to establish invalidity of the '557 patent are set forth above with respect

11  to Pavemetrics' Counterclaim 2.

    **2.      Affirmative Defense 4:  Tetra Tech Is Estopped from Raising
        Its Patent Infringement Claims.**

14      To establish equitable estoppel, Pavemetrics must show by preponderance

15  of the evidence that: (1) Tetra Tech, through misleading conduct, led

16  Pavemetrics to reasonably infer that Tetra Tech does not intend to enforce the

17  '293 or '557 patent against Pavemetrics; (2) Pavemetrics relied on Tetra Tech's

18  conduct; and (3) due to its reliance, Pavemetrics will be materially prejudiced if

19  Tetra Tech is allowed to proceed with its claims.   *A.C. Aukerman v. R.L.*

20  *Chaides Constr.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc).

    **3.      Affirmative Defense 6:  Tetra Tech Cannot Recover Damages
        Before Actual Notice of Alleged Infringement.**

23      There is no dispute that Tetra Tech never marked relevant products with

24  the patent number for the '293 patent.   ECF 182 (Undisputed Facts 4, 5);

25  ECF 209 at 9.   Thus, Tetra Tech cannot recover damages before it provided

26  Pavemetrics with actual notice of the '293 patent and the product alleged to

27  infringe, which Tetra Tech did in a letter to Pavemetrics dated January 5, 2021.

28  *Id.* (Undisputed Fact 3); ECF 209 at 9.

Tetra Tech has the burden of establishing by a preponderance of the evidence that it communicated to Pavemetrics a specific charge of infringement of the '293 patent by a specific accused product or device and Pavemetrics continued to infringe thereafter.  *See* Patent Damages B.5.10, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020); 35 U.S.C. § 287.

On July 6, 2022, the Court granted Pavemetrics' motion for summary judgment relating to no damages for the two 2020 CSX sales (Units A and B). ECF 209 at 8-14, 25.  Pavemetrics intends to show at trial that the 2020 AID sale (Unit 1) was also prior to actual notice.

## C.    Brief Description of Evidence in Support of Pavemetrics' Affirmative Defenses

### 1.    Evidence in Support of Pavemetrics' Affirmative Defense 1

Evidence Pavemetrics intends to present in support of Affirmative Defense 1 is described above with respect to Pavemetrics' Counterclaims 2 and 3.

### 2.    Evidence in Support of Pavemetrics' Affirmative Defense 4

Pavemetrics will present evidence of Tetra Tech's knowledge of Pavemetrics and its LRAIL, including communications between Tetra Tech and Pavemetrics.  Pavemetrics will present evidence of Tetra Tech continuing to do business with Pavemetrics and encouraging sales of LRAIL systems, even after the patents-in-suit issued, including communications between Tetra Tech and Pavemetrics in June 2020.  Pavemetrics will present live testimony of John Laurent and Richard Habel regarding Tetra Tech's knowledge of Pavemetrics and its LRAIL, Tetra Tech's correspondence with Pavemetrics in June 2020, and Pavemetrics' reliance on and prejudice from Tetra Tech's actions. Pavemetrics also intends to present live and/or deposition testimony from Darel Mesher and Robert Olenoski regarding Tetra Tech's misleading conduct.

/ / /

-20-

### 3.   Evidence in Support of Pavemetrics' Affirmative Defense 6

Because the Court granted Pavemetrics' motion for summary judgment relating to no damages for the two 2020 CSX sales (ECF 209 at 8-14, 25), Pavemetrics does not intend to present evidence at trial relating to this defense for those two CSX sales.

With respect to the accused sale to AID, Pavemetrics will present evidence that the accused LRAIL sale to AID occurred before January 5, 2021, including through documents, including invoices to AID and emails with AID, live testimony of Richard Habel and John Laurent, and deposition testimony of Ali Hafiz.

## V.   IDENTIFICATION OF ANTICIPATED EVIDENTIARY ISSUES

Each of the parties will be filing motions *in limine* as part of the pretrial process, which will include the parties' positions on disputed evidentiary issues.

## VI.   IDENTIFICATION OF ISSUES OF LAW GERMANE TO THE CASE

### A.   Claim Construction

The Court has already construed certain claim terms in connection with *Markman* proceedings and confirmed those constructions in the summary judgment ruling for the '293 patent.

### B.   Indefiniteness

Whether the asserted claims of the '293 patent are indefinite under 35 U.S.C. § 112(b) is an issue of law for the Court, not for the jury.  *Funai Elec. Co. v. Daewoo Elecs. Corp.*, 616 F.3d 1357, 1371 (Fed. Cir. 2010).

### C.   Obviousness

Obviousness is a question of law with underlying factual inquiries.  The ultimate question of whether the asserted claims of the '293 patent and the '557 patent are obvious under 35 U.S.C. § 103 is an issue of law for the Court, not the jury.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 426-27 (2007); *Eisai Co. v. Dr. Reddy's Labs., Ltd.*, 533 F.3d 1353, 1356 (Fed. Cir. 2008).  However, the

determination of obviousness is based upon several factual questions.  *Graham v. John Deere Co. of Kan. City*, 383 U.S. 1, 17 (1966).

**D.**   **Estoppel**

Whether Tetra Tech's claims are barred by equitable estoppel is an issue of law for the Court, not for the jury.  *A.C. Aukerman*, 960 F.2d at 1028.

**E.**   **Enhanced Damages**

If Tetra Tech proves willful patent infringement, whether Tetra Tech is entitled to enhanced damages is an issue of law for the Court, not for the jury. 35 U.S.C. § 284.

## VII.  BIFURCATION OF ISSUES

Pavemetrics request that the Court bifurcate the indefiniteness issue.

## VIII.  JURY TRIAL

Some issues are triable to a jury as a matter of right, and Tetra Tech demanded a jury trial.  Other issues are triable to the Court, as explained above and below.

**A.**   **Jury Issues**

The issues of fact for the jury to decide include the following:

(1) whether Pavemetrics infringed Claims 1 and 21 of the '293 patent by selling LRAIL system Unit 1 to AID and Units 2-4 to CSX;

(2) whether Pavemetrics induced AID to use LRAIL system Unit 1 in a manner that infringes Claims 1 and 21 of the '293 patent;

(3) whether Pavemetrics induced or contributed to AID using LRAIL system Unit 1 in a manner that infringes Claim 8 of the '557 patent;

(4) whether Pavemetrics willfully infringed any of the asserted claims of the '293 and '557 patents;

(5) whether the prior art anticipates Claims 1 and 21 of the '293 patent;

(6) whether the prior art anticipates Claim 8 of the '557 patent;

(7) whether the prior art shows the obviousness of Claims 1 and 21 of the

'293 patent;

(8) whether the prior art shows the obviousness of Claim 8 of the '557 patent;

(9) whether Tetra Tech has shown it can recover damages for the accused sale to AID that was invoiced and paid before January 5, 2021; and

(9) to the extent Tetra Tech proves patent infringement and no defenses apply, the amount of damages due to Tetra Tech for each infringing sale.

**B.**     **Court Issues**

The issues of law for the Court include the following:

(1) whether the asserted claims of the '293 patent are indefinite under 35 U.S.C. § 112(b);

(2) the ultimate issue of whether the asserted claims of the '293 and '557 patents are invalid for obviousness in view of the jury verdict;

(3) whether Tetra Tech's claims are barred by estoppel; and

(4) to the extent the jury finds willful patent infringement, whether Tetra Tech is entitled to any enhanced damages, and if so, the amount of enhanced damages.

Because Pavemetrics has removed all of the accused functionality from LRAIL, the Court has no need to decide any issues concerning any injunctive relief.

## IX.  ATTORNEYS' FEES

If Pavemetrics prevails on any of its claims or affirmative defenses, Pavemetrics will seek attorneys' fees pursuant to 35 U.S.C. § 285, which allows for an award of attorneys' fees to the prevailing party in "exceptional cases." *Octane Fitness, LLC v. Icon Health & Fitness, Inc.*, 575 U.S. 542, 553-54 (2014).

## X.  ABANDONMENT OF ISSUES

Tetra Tech has abandoned its counterclaim of infringement of the '293

-23-

patent with respect to Claims 15, 16, 19, 20, 22, 23, 36, 37, 40, and 41-43.  *See* ECF 204.  Tetra Tech has abandoned its counterclaim of infringement of the '557 patent with respect to Claims 9, 10, and 14.  *See id.*

Tetra Tech has also abandoned any allegations that Pavemetrics has directly infringed the '293 patent by making, using, offering for sale, or importing LRAIL in the U.S.  Morellas Expert Report ¶¶609-611.  Tetra Tech has also abandoned any allegation that Pavemetrics directly infringes the '557 patent.  *Id.*; ECF 204.

Tetra Tech has also abandoned any allegations relating to infringement under the doctrine of equivalents.  Tetra Tech's infringement contentions and its expert report have no allegations regarding infringement under the doctrine of equivalents.

For the purposes of streamlining the issues to be tried, Pavemetrics does not intend to pursue its claim and affirmative defense under 35 U.S.C. § 273 that Pavemetrics' cannot infringe the patents-in-suit due to Pavemetrics' prior commercial use.  ECF 82 (Second Defense).  Pavemetrics also does not intend to pursue its affirmative defense of acquiescence and waiver.  ECF 82 (Fifth Defense).  Pavemetrics does not intend to abandon any other issues.

Additionally, as explained above, certain issues have been resolved on summary judgment in light of the Court's (1) April 27, 2022 Order granting in part Pavemetrics' Motion for Summary Judgment of Non-Infringement of the '293 Patent [ECF 189] (e.g., issues relating to Fake3D Images with Overlay); and (2) July 6, 2022 Order granting Pavemetrics' motion for summary judgment relating to governmental immunity and Pavemetrics' motion for summary judgment relating to no damages for two sales (Units A and B) to CSX [ECF 209].

/ / /

# XI.  CONCLUSION

As set forth above, Pavemetrics has not infringed the asserted claims of the patents-in-suit.   The asserted patent claims are invalid as anticipated and obvious, and Pavemetrics should be awarded its reasonable attorneys' fees.

Respectfully Submitted,

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  July 11, 2022          By:  /s/ *Christy G. Lea*
                                    Christy G. Lea
                                    Joseph R. Re
                                    Nicholas M. Zovko
                                    Alan G. Laquer
                                    Raymond Lu

*Attorneys for Plaintiff/Counterclaim Defendant,* PAVEMETRICS SYSTEMS, INC.

55872630