1   Christy G. Lea (SBN 212060)
    christy.lea@knobbe.com
2   Joseph R. Re (SBN 134479)
    joe.re@knobbe.com
3   Nicholas M. Zovko (SBN 238248)
    nicholas.zovko@knobbe.com
4   Alan G. Laquer (SBN 259,257)
    alan.laquer@knobbe.com
5   Raymond Lu (SBN 340,873)
    raymond.lu@knobbe.com
6   **KNOBBE, MARTENS, OLSON &**
    **BEAR, LLP**
7   2040 Main Street, Fourteenth Floor
    Irvine, CA  92614
8   Telephone: (949) 760-0404
    Facsimile: (949) 760-9502
9
    Attorneys for Plaintiff/
10  Counterclaim Defendant
    PAVEMETRICS SYSTEMS, INC.
11

    Donald L. Ridge (SBN 132171)
    **CLARK HILL LLP**
    555 South Flower Street, 24th Floor
    Los Angeles, California 90017
    Telephone: (213) 891-9100
    Facsimile: (213) 488-1178
    DRidge@clarkhill.com

    James R. Barney (pro hac vice)
    James.barney@finnegan.com
    Aaron L. Parker (pro hac vice)
    aaron.parker@finnegan.com
    Daniel G. Chung (pro hac vice)
    daniel.chung@finnegan.com
    Nicholas A. Cerulli (pro hac vice)
    nicholas.cerulli@finnegan.com
    Kelly S. Horn (pro hac vice)
    Kelly.horn@finnegan.com
    Jency J. Mathew (pro hac vice)
    Jency.mathew@finnegan.com
    **FINNEGAN HENDERSON**
    901 New York Ave NW
    Washington, DC 20001
    Telephone: (202) 408-4000
    Facsimile: (202) 408-4400

    Attorneys for Defendant/
    Counterclaim Plaintiff
    TETRA TECH, INC. and TETRA
    TECH TAS, INC.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**DISPUTED PROPOSED JURY INSTRUCTIONS**<br><br>**Honorable Mark C. Scarsi**<br><br>Trial Date:          Aug. 16, 2022<br><br>Final Pre-Trial<br>Conference:         Aug. 1, 2022 |

Plaintiff Pavemetrics Systems, Inc. ("Pavemetrics") and Defendant and Counterclaim Plaintiff Tetra Tech, Inc. and Counterclaim Plaintiff Tetra Tech TAS Inc. (collectively "Tetra Tech"), by and through their respective counsel of record, and in compliance with the Court's Order Re: Jury Trial (ECF 56), the parties' agreed-upon pretrial schedule, Federal Rule of Civil Procedure 51, and Local Rule 51-1, hereby submit the following disputed jury instructions for the Court's consideration:

**Disputed Proposed Jury Instructions – Preliminary**

| Disputed Instruction No. | Title | Source | Page No. |
|---|---|---|---|
| 1 | Outline of Trial (Pavemetrics) | Fed. Cir. Model Patent A.5 | 6 |
| | Outline of Trial (Tetra Tech) | N.D. Cal. Model Patent Jury Instruction A.5 | |
| 2 | What A Patent Is and How It Is Obtained (Pavemetrics) | Fed. Cir. Model Patent A.1 | 11 |
| | The Patent Process (Tetra Tech) | Federal Judiciary Center, "The Patent Process: An Overview for Jurors." | |
| 3 | Summary of Contentions | Fed. Cir. Model Patent A.2 | 15 |
| 4 | Patents at Issue | Fed. Cir. Model Patent A.3 | 21 |
| 5 | Overview of Applicable Law (Pavemetrics) | Fed. Cir. Model Patent A.4 | 23 |

## Disputed Proposed Jury Instructions – Final

| Disputed Instruction No. | Title | Source | Page No. |
|---|---|---|---|
| 6 | Summary of Contentions (Pavemetrics) | Fed. Cir. Model Patent B.1 | 26 |
| 7 | Independent and Dependent Claims | Fed. Cir. Model Patent B.2.1a | 28 |
| 8 | Infringement Generally | Fed. Cir. Model Patent B.3.1 | 30 |
| 9 | Direct Infringement By "Literal Infringement" | Fed. Cir. Model Patent B.3.1a | 33 |
| 10 | Indirect Infringement—Active Inducement (Pavemetrics) | Fed. Cir. Model Patent B.3.2 | 36 |
|  | Inducing Patent Infringement (Tetra Tech) | N.D. Cal. Model Patent 3.7 |  |
| 11 | Indirect Infringement—Contributory Infringement (Pavemetrics) | Fed. Cir. Model Patent B.3.3; *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015) | 40 |
|  | Contributory Infringement (Tetra Tech) | 2019 AIPLA Model Patent Jury Instructions 3.10 |  |
| 12 | Presumption of Validity (Tetra Tech) | Adapted from O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed.); 2019 AIPLA Model Jury |  45 |

| | | | | |
|---|---|---|---|---|
| | | | Instructions 1.2; 35 U.S.C. § 282. | |
| 13 | Prior Art (Pavemetrics) | Fed. Cir. Model Patent B.4.3a-1 | | 47 |
| | Invalidity – Prior Art (Tetra Tech) | Fed. Cir. Model Patent B.4.3a-3 | | |
| 14 | Anticipation | Fed. Cir. Model Patent B.4.3b-1 | | 14 |
| 15 | Obviousness (Pavemetrics) | Fed. Cir. Model Patent B.4.3c; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007) | | 15 |
| | Obviousness—Generally (Tetra Tech) | 2019 AIPLA Model Jury Instructions 7.0 | | |
| 16 | Scope and Content of The Prior Art (Pavemetrics) | Fed. Cir. Model Patent B.4.3c(ii) | | 56 |
| | The First Factor: Scope and Content of The Prior Art (Tetra Tech) | 2019 AIPLA Model Jury Instructions 7.1 | | |
| 17 | The Second Factor: Differences Between the Claimed Invention and The Prior Art (Tetra Tech) | 2019 AIPLA Model Jury Instructions 7.2 | | 58 |
| 18 | The Fourth Factor: Other Considerations (Tetra Tech) | 2019 AIPLA Model Jury Instructions 7.4 | | 60 |

| 19 | Damages – Introduction | Fed. Cir. Model Patent B.5.1 | 62 |
| 20 | Lost Profits—Noninfringing Substitutes—Acceptability (Pavemetrics)<br><br>Lost Profits—Noninfringing Substitutes—Acceptability (Tetra Tech) | Fed. Cir. Model Patent B.5.2; AIPLA Model Jury Instructions 10.2.14<br><br>Fed. Cir. Model Patent B.5.2 | 65 |
| 21 | Reasonable Royalty—Relevant Factors (Pavemetrics) | Fed. Cir. Model Patent B.5.8 | 68 |
|  | Damages–Reasonable Royalty–Relevant Factors (Tetra Tech) | 2019 AIPLA Model Jury Instructions 10.2.5.3 |  |
| 22 | Date of Commencement of Damages | Fed. Cir. Model Patent B.5.10 | 72 |
| 23 | Damages – Apportionment (Pavemetrics) | Fed. Cir. Model Patent B.5.12 | 75 |

5

## DISPUTED INSTRUCTION NO. 1

**OUTLINE OF TRIAL**[1] **(Pavemetrics' Proposed Instruction)**

The trial will now begin.  First, each side may make an opening statement.  An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether certain facts have been proven by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, that is, that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. On other issues that I will identify for you, you must use a higher standard and decide whether the fact has been proven by clear and convincing evidence, that is, that you have been left with a clear conviction that the fact has been proven.

These standards are different from what you may have heard about in criminal proceedings where a fact must be proven beyond a reasonable doubt. On a scale of these various standards of proof, as you move from preponderance of the evidence, where the proof need only be sufficient to tip the scale in favor of the party proving the fact, to beyond a reasonable doubt, where the fact must be proven to a very high degree of certainty, you may think of clear and convincing evidence as being between the two standards.

---

[1] *See* Preliminary Instruction A.5, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

After the opening statements, Pavemetrics will present its evidence that the claims of the '293 and '557 patents are not infringed and are invalid. To prove invalidity of any claim, Pavemetrics must persuade you by clear and convincing evidence that the claim is invalid.

Tetra Tech will then present its evidence in support of its contention that claims of the '293 and '557 patents have been infringed by Pavemetrics and that the infringement has been willful. To prove infringement of any claim, Tetra Tech must persuade you that it is more likely than not that Pavemetrics has infringed that claim. To persuade you that any infringement was willful, Tetra Tech must also prove that it is more likely than not that the infringement was willful.  In addition to presenting its evidence of infringement, Tetra Tech may then put on evidence responding to Pavemetrics' evidence that the claims of the '293 and '557 patents are invalid. This is referred to as "rebuttal" evidence. Tetra Tech's "rebuttal" evidence may respond to any evidence offered by Pavemetrics.

Finally, Pavemetrics may have the option to put on its "rebuttal" evidence to support its contentions as to the invalidity of the claims of the '293 and '557 patents by responding to any evidence offered by Tetra Tech on that issue. Pavemetrics may also put on evidence responding to Tetra Tech's evidence of infringement and willfulness.

During the presentation of the evidence, the attorneys will be allowed brief opportunities to explain what they believe the evidence has shown or what they believe upcoming evidence will show. The attorneys' comments are not evidence and the attorneys are being allowed to comment solely for the purpose of helping you to understand the evidence.

After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case. These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

**OUTLINE OF TRIAL[2] (Tetra Tech's Proposed Instruction)**

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what that party expects the evidence will show.

The presentation of evidence will then begin. Witnesses will take the witness stand and the documents will be offered and admitted into evidence. There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is true by the preponderance of the evidence. On other issues, you must use a higher standard of proof and decide whether something is true by clear and convincing evidence.

Tetra Tech will present its evidence on its contention that some claims of the Asserted Patents have been infringed by Pavemetrics and that the infringement has been willful. These witnesses will be questioned by Tetra Tech's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. Finally, Tetra Tech's counsel has the opportunity to question the witness one more time in what is called redirect examination.

After Tetra Tech has presented its witnesses, Pavemetrics will call its witnesses, who will also be examined and subject to cross-examination and redirect. Pavemetrics

---

[2] **Authority in support of Tetra Tech's instruction:** United States District Court Northern District of California Model Patent Jury Instructions ("N.D. Cal. Model Patent") A.5.

8

will present its evidence that the asserted claims of the Asserted Patents are invalid. In addition to presenting its evidence of invalidity, Pavemetrics will put on evidence responding to Tetra Tech's infringement and willfulness contentions.

Tetra Tech will then return and will put on evidence responding to Pavemetrics' contention that the asserted claims of the Asserted Patents are invalid. Tetra Tech will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Pavemetrics of non-infringement or lack of willfulness.

Finally, Pavemetrics will have the option to put on "rebuttal" evidence to any evidence offered by Tetra Tech on the validity of the asserted claims of the Asserted Patents.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

The parties may present the testimony of a witness by reading from his or her deposition transcript or playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness had testified at trial.

After the evidence has been presented, I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments. Closing arguments are not evidence. After the instructions and closing arguments, you will then decide the case.

**Pavemetrics' Position:** Pavemetrics objects to Tetra Tech selectively including instructions from multiple models including ND Cal. Model, AIPLA Model, and Federal Circuit Bar Model without explanation or justification.  Pavemetrics objects because Tetra Tech's proposed instruction reflects a realignment of the parties.  Tetra Tech did not timely seek realignment, the Court has not ordered realignment, and

Pavemetrics' opposes realignment for numerous reasons. *See* Pavemetrics' Opp'n to Tetra Tech's MIL No. 1.

**Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is the more appropriate instruction because it is taken from the N.D. Cal. Model Patent A.5, and presents a more accurate, complete, and easier to follow instruction. Tetra Tech objects to Pavemetrics' proposed instruction because it is duplicative with respect to the burdens of proof. These are already contained in the Ninth Circuit Model Instructions 1.6 and 1.7 ("Burden of Proof - Preponderance of the Evidence" and "Burden of Proof - Clear and Convincing Evidence"), which are proposed as Joint Instruction Nos. 2 and 3. Pursuant to the Court's order, the parties "should submit" the *Manual of Model Jury Instructions for the Ninth Circuit* that provides an applicable jury instruction. D.I. 56. Moreover, Tetra Tech objects to this proposed instruction because Pavemetrics, without citing any support or authority, modifies the model instruction to present invalidity before infringement. The circumstances of the case do not warrant these modifications, particularly given the proper alignment of the parties would have Tetra Tech presenting its infringement case first, as detailed in Tetra Tech's motion *in limine*. Tetra Tech also disagrees that Pavemetrics is entitled to an additional rebuttal case on infringement and willfulness. Furthermore, these modifications render the proposed instruction inaccurate, incomplete, misleading, and potentially confusing.

**DISPUTED INSTRUCTION NO. 2**

**WHAT A PATENT IS AND HOW IT IS OBTAINED**[3] **(Pavemetrics' Proposed Instruction)**

This case involves a dispute relating to United States patents. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." If a patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

---

[3] *See* Preliminary Instruction A.1, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

1

2    After the applicant files the application, an Examiner reviews the application to

3    determine whether or not the claims are patentable (appropriate for patent protection)

4    and whether or not the specification adequately describes the invention claimed. In

5    examining a patent application, the Examiner reviews certain information about the

6    state of the technology at the time the application was filed. The PTO searches for and

7    reviews information that is publicly available or that is submitted by the applicant.

8    This information is called "prior art." The Examiner reviews this prior art to determine

9    whether or not the invention is truly an advance over the state of the art at the time.

10   Prior art is defined by law, and I will give you, at a later time during these

11   instructions, specific instructions as to what constitutes prior art. However, in general,

12   prior art includes information that demonstrates the state of technology that existed

13   before the application was filed. A patent lists the prior art that the Examiner

14   considered; this list is called the "cited references."

15

16   After the prior art search and examination of the application, the Examiner

17   informs the applicant in writing of what the Examiner has found and whether the

18   Examiner considers any claim to be patentable and, thus, would be "allowed." This

19   writing from the Examiner is called an "Office Action." If the Examiner rejects the

20   claims, the applicant has an opportunity to respond to the Examiner to try to persuade

21   the Examiner to allow the claims, and to change the claims or to submit new claims.

22   This process may go back and forth for some time until the Examiner is satisfied that

23   the application meets the requirements for a patent and the application issues as a

24   patent, or that the application should be rejected and no patent should issue.

25   Sometimes, patents are issued after appeals within the PTO or to a court. The papers

26   generated during these communications between the Examiner and the applicant are

27   called the "prosecution history."

28

The fact that the PTO grants a patent does not necessarily mean that any invention claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not have had available to it all other prior art that will be presented to you. In addition, there is the possibility that mistakes were made or that information was overlooked. Examiners have a lot of work to do and no process is perfect. Also, unlike a court proceeding, patent prosecution takes place without input from those who are later alleged to infringe the patent. A person accused of infringement has the right to argue here in federal court that a claimed invention in the patent is invalid because it does not meet the requirements for a patent. It is your job to consider the evidence presented by the parties and determine independently whether or not Pavemetrics has proven that the patent is invalid.

After I finish reading these preliminary instructions to you, I will play a video providing an introduction to the patent system.

**THE PATENT PROCESS[4] (Tetra Tech's Proposed Instruction)**

Tetra Tech proposes that the Court play for the jury the Federal Judiciary Center's video, "The Patent Process: An Overview for Jurors."

**Pavemetrics' Position:** Pavemetrics requests this FCBA Model Instruction, which will help the jury understand the patent process and issues. Also, the Model contemplates the use of the Federal Judicial Center's video in addition to the instruction.

---

[4] **Authority in support of Tetra Tech's instruction:** Federal Judiciary Center, "The Patent Process: An Overview for Jurors."

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction because it is redundant with the Federal Judiciary Center's video, "The Patent Process: An Overview for Jurors." The parties appear to agree to play this video for the jury, which would render Pavemetrics' proposed instruction duplicative and confusing.

**DISPUTED INSTRUCTION NO. 3**

**SUMMARY OF CONTENTIONS[5] (Pavemetrics' Proposed Instruction)**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Tetra Tech Inc., Tetra Tech TAS Inc., and Pavemetrics Systems Inc. The case involves United States Patent Nos. 10,362,293, and 10,616,557 obtained by Darel Mesher, and transferred by Darel Mesher to Tetra Tech. For your convenience, the parties and I will often refer to U.S. Patent No. 10,362,293 and U.S. Patent No. 10,616,557 by the last three numbers of the patent number, namely, as the "'293 and '557 patents."

Pavemetrics filed suit in this court seeking a declaratory judgment that it does not infringe any claim of the '293 patent.   Pavemetrics also seeks a declaratory judgment that the '293 patent is invalid and that the '557 patent is invalid and that it does not infringe any claim of the '557 patent.

Tetra Tech denies that its patents are invalid and seeks money damages from Pavemetrics for allegedly infringing by selling products that Tetra Tech argues are covered by claims 1 and 21 of the '293 patent and by encouraging others to use those products in a way that Tetra Tech argues is covered by claim 8 of the '557 patent.

The products that are alleged to infringe are various versions of Pavemetrics' LRAIL system.  The methods that are alleged to infringe are uses of those versions of the LRAIL system by a Pavemetrics' customer in the United States.

---

[5] *See* Preliminary Instruction A.2, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

Pavemetrics denies that it has infringed any claim of the '293 and the '557 patents. Pavemetrics also argues that the asserted claims are invalid. I will instruct you later as to the ways in which a patent may be invalid. In general, however, a patent is invalid if it is not new or is obvious in view of the state of the art at the relevant time, or if the description in the patent does not meet certain requirements.

Your job will be to decide whether or not claims 1 and 21 of the '293 patent and claim 8 of the '557 patent have been infringed and whether or not those claims are invalid. If you decide that any claim of the '293 and '557 patents has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Tetra Tech to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

**SUMMARY OF PATENT CONTENTIONS[6] (Tetra Tech's Proposed Instruction)**

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Tetra Tech, Inc. and Tetra Tech TAS Inc., who will be collectively referred to as "Tetra Tech," and Pavemetrics Systems, Inc., who will be referred to as "Pavemetrics."

Tetra Tech, Inc. is the owner of the following two United States patents at issue in this case:

---

[6] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent A.2.

16

1.    The first patent is U.S. Patent No. 10,362,293, which will be referred to by its last three numbers as "the '293 Patent"; and

2.    The second patent is U.S. Patent No. 10,616,557, which will be referred to as "the '557 Patent."

These two patents will be collectively referred to as the "Asserted Patents." The Asserted Patents were invented by Darel Mesher. Tetra Tech TAS Inc. is the exclusive licensee of these patents.

The product at issue in this case is the Laser Rail Inspection System made and sold by Pavemetrics, which will be referred to as the "LRAIL."

Pavemetrics filed suit seeking declaratory judgment that its LRAIL does not infringe any of the Asserted Patents.

Tetra Tech answered Pavemetrics' suit and counterclaimed that the LRAIL Product infringes at least one claim of each of the Asserted Patents. Tetra Tech seeks monetary damages to compensate for Pavemetrics' infringement.

In response to Tetra Tech's infringement allegations, Pavemetrics argues that the asserted patent claims are invalid.

Your job will be to decide whether or not the claims of the Asserted Patents have been infringed and whether or not those claims are invalid. If you decide that any claim of the Asserted Patents is valid and has been infringed, you will then need to decide any money damages to be awarded to Tetra Tech to compensate them for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damage award you give. I will take willfulness into account later.

**Pavemetrics' Position:** Pavemetrics objects to this proposed instruction for multiple reasons. Tetra Tech's proposed instruction deviates from the model beyond simply inserting the relevant information about this case. Tetra Tech's instruction identifies only one accused product (LRAIL) when Tetra Tech has accused four LRAIL systems

1   with three different software versions of infringing the '293 patent and those versions

2   contain material differences with respect to the asserted claims.  *See Omega Patents v.*

3   *CalAmp*, 920 F.3d 1337, 1350-51 (Fed. Cir. 2019) (vacating damages award because

4   no evidence supported finding of infringement of more than "some unidentified

5   subset" of the accused products).  Also, no LRAIL product can infringe Claim 8 of the

6   '557 patent, which is a method claim.  ECF 204.  Pavemetrics also objects to the word

7   "made" because Tetra Tech's technical expert limited his opinions on Pavemetrics'

8   alleged direct infringement to sales only (Morellas ¶¶609-611) and Tetra Tech's

9   damages expert limited his opinions on damages to sales only (Schoettelkotte, e.g.,

10  ¶¶15-19).  Thus, Tetra Tech cannot offer any expert testimony on any act of

11  infringement by Pavemetrics other than "selling."  Pavemetrics objects because Tetra

12  Tech's instruction is inaccurate when it sets forth the history of the suit.  Pavemetrics

13  filed suit seeking a declaratory judgment that it does not infringe the '293 patent.

14  Pavemetrics had no knowledge of the '557 patent at the time it filed suit and had not

15  received any notice of that patent or its alleged infringement from Tetra Tech at the

16  time Pavemetrics filed suit.  Pavemetrics also counterclaimed that the asserted patent

17  claims are invalid.  Pavemetrics also contends that certain acts are immune from suit

18  under 28 U.S.C. § 1498 and the Court has granted summary judgment for Pavemetrics

19  on this issue.  Pavemetrics' Preliminary Instruction No. 14 (Summary of Contentions)

20  more closely aligns with the model and the claims and facts of this case.

21

22  **Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is the

23  appropriate instruction because it presents an objective representation of the issues

24  and is more accurate and complete. Tetra Tech objects to Pavemetrics' proposed

25  instruction because it improperly states detailed facts and legal elements. The purpose

26  of this instruction is to provide a ***summary*** of contentions, not details about the

27  elements of each of the claims and defenses. Further, Pavemetrics' proposed

28  instruction incorrectly states the parties' contentions, facts, and law, and is biased and

18

would confuse and mislead the jury. By way of example only, the proposed
instruction states that the asserted patents were "obtained by Darel Mesher" and were
"transferred" to Tetra Tech.  Such language implies that Darel Mesher is not the listed
inventor on the asserted patents and that Tetra Tech is not the owner of the asserted
patents, which is misleading, confusing, and prejudicial. Pavemetrics has not disputed
inventorship, ownership, or standing. In addition, the product at issue is the LRAIL,
and the statement in Pavemetrics' proposed instruction concerning "various versions
of Pavemetrics' LRAIL system" as the products alleged to infringe is misleading,
confusing, and unnecessary.

The proposed instruction is incomplete and inaccurate because it omits asserted claims
2 and 4 of the '293 patent and Tetra Tech's indirect infringement contention for the
'293 patent. As set forth in the proposed pre-trial order, the Court did not find that
these claims were not infringed, nor did Pavemetrics move for summary judgment.
Pavemetrics' request that the Court expand its findings to cover additional claims is
belated and procedurally improper. This issue is the subject of Pavemetrics' pending
motion *in limine* (which itself is an improperly "disguised motion[] for summary
adjudication of issues" (ECF 56), and Tetra Tech's detailed positions in response are
set forth in its opposition to Pavemetrics' motion *in limine*. Tetra Tech also objects to
the proposed instruction the extent Pavemetrics misstates the Court's rulings in its
summary judgment orders of April 27, 2022 and July 6, 2022. The proposed
instruction is also incomplete and inaccurate to the extent it misstates Tetra Tech's
direct and indirect infringement contentions for the '293 patent and damages claims.
For example, Tetra Tech alleged in its Amended Counterclaim that Pavemetrics' offer
for sale of the LRAIL constituted an infringing act and that Pavemetrics contributed to
the infringement of the system claims. D.I. 79, ¶¶ 34, 36. Further, Tetra Tech's
damages expert opined on the reasonable royalty resulting from Pavemetrics'
infringement, and his opinions were not limited to damages resulting from any

particular type of infringing act. Indeed, Tetra Tech is statutorily entitled to damages "to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention." 35 U.S.C. § 284.

Tetra Tech further objects to the proposed instruction to the extent Pavemetrics seeks to construe the Court's summary judgment order of July 6, 2022, to grant blanket immunity under § 1498. The Court's findings were limited to Pavemetrics' processing of "LRAIL data for the government on July 21, 2021, and October 7 and 8, 2021," and the Court "does not rule on any other identified acts" and "declin[ed] to hunt through the record for evidence establishing that Plaintiff only processed data for CSX pursuant to its FRA contract during or after June 2021." D.I. 209 at 19-20.

### DISPUTED INSTRUCTION NO. 4

**PATENTS AT ISSUE**[7]

I have already determined the meaning of the claims of the '293 and '557 patents. You have been given a document reflecting those meanings. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent. You are to apply my definitions of the terms I have construed throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

**Pavemetrics' Position**: Pavemetrics will respond to Tetra Tech's claim construction statements raised below when the parties prepare the document reflecting the Court's constructions.

**Tetra Tech's Position:** Tetra Tech believes that the parties are in agreement with the proposed instruction but disagree on the claim constructions to be provided to the jury. Tetra Tech understands that Pavemetrics will suggest that the construction of "configured to run an algorithm" by modified. Tetra Tech objects to this unsupported and belated request to reconsider the Court's construction. Tetra Tech submits that the Court's further construction of "track elevation map" in its April 27, 2022 summary judgment order would be appropriate to provide to the jury. Namely, that a "track elevation map" is not required to encode elevation and intensity data at each point, but

---

[7] *See* Preliminary Instruction A.3, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

21

instead may encode the elevation and intensity data by blending or merging the values with mathematical formulas. D.I. 189 at 5-6.

1    **DISPUTED INSTRUCTION NO. 5**

2    **OVERVIEW OF APPLICABLE LAW[8] (Pavemetrics' Proposed Instruction)**

3          In deciding the issues I just discussed, you will be asked to consider specific

4    legal standards. I will give you an overview of those standards now and will review

5    them in more detail before the case is submitted to you for your verdict.

6

7          The first issue you will be asked to decide is whether Pavemetrics has infringed

8    the claims of the '293 and '557 patents. Infringement is assessed on a claim-by-claim

9    basis. Therefore, there may be infringement as to one claim but not infringement as to

10   another. There are a few different ways that a patent may be infringed. I will explain

11   the requirements for each of these types of infringement to you in detail at the

12   conclusion of the case. In general, however, to prove infringement, Tetra Tech must

13   prove by a preponderance of the evidence that Pavemetrics sold in the United States a

14   product meeting all the requirements of a claim of the '293 patent. Pavemetrics may

15   also indirectly infringe the '293 and '557 patents by inducing another entity to

16   infringe and may also indirectly infringe the '557 patent by contributing to

17   infringement by another entity.. I will provide you with more detailed instructions on

18   the requirements for each of these types of infringement at the conclusion of the case.

19

20         Another issue you will be asked to decide is whether the '293 and '557 patents

21   are invalid. A patent may be invalid for a number of reasons, including because it

22   claims subject matter that is not new or is obvious. For a claim to be invalid because it

23   is not new, Pavemetrics must show, by clear and convincing evidence, that all of the

24   elements of a claim are present in a single previous method. If a claim is not new, it is

25   said to be anticipated.

26

27   _____

28   [8] *See* Preliminary Instruction A.4, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

1

2      Another way that a claim may be invalid is that it may have been obvious. Even

3   though every element of a claim is not shown or sufficiently described in a single

4   piece of "prior art," such as a previous device or described in a previous publication,

5   the claim may still be invalid if it would have been obvious to a person of ordinary

6   skill in the field of technology of the patent at the relevant time.

7

8      If you decide that any claim of the '293 patent has been infringed and is not

9   invalid, you will then need to decide any money damages to be awarded to Tetra Tech

10  to compensate it for the infringement. A damages award should put Tetra Tech in

11  approximately the same financial position that it would have been in had the

12  infringement not occurred, but in no event may the damages award be less than what

13  Tetra Tech would have received had it been paid a reasonable royalty. I will instruct

14  you later on the meaning of a reasonable royalty.  The damages you award are meant to

15  compensate Tetra Tech and not to punish Pavemetrics. You may not include in your

16  award any additional amount as a fine or penalty in order to punish Pavemetrics. I will

17  give you more detailed instructions on the calculation of damages at the conclusion of

18  the case.

19

20  **Pavemetrics' Position**:  Pavemetrics' instruction follows the Federal Circuit Bar

21  Model and appropriately provides the jury an overview of the issues and facts of this

22  case.

23

24  **Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction

25  because it is repetitive and duplicative of subjects and legal principles contained in

26  other proposed instructions. Pursuant to the Court's order, "[e]ach requested

27  instruction shall … (5) cover only one subject or principle of law and (6) not repeat

28  principles of law contained in any other requested instruction." D.I. 56. Indeed,

Federal Circuit Model Patent Jury Instruction A.4 from which this proposed instruction is based states that even if this overview is "given, the Court would, nonetheless, give complete instructions at the close of evidence." Moreover, Tetra Tech objects to this proposed instruction because Pavemetrics modifies the model instruction, without citing any support or authority, to delete "You will need to consider a number of questions in deciding whether the invention(s) claimed in the [ ] patent are obvious. I will provide you detailed instructions on these questions at the conclusion of the case." Furthermore, these modifications render the proposed instruction inaccurate, incomplete, misleading, and potentially confusing. Tetra Tech objects to the proposed instruction as incomplete and inaccurate because it omits and misstates Tetra Tech's direct and indirect infringement claims, as explained above. For example, Tetra Tech objects to Pavemetrics' proposed instruction as inaccurate and incomplete by limiting Tetra Tech's direct infringement claims to sales and Tetra Tech's contributory infringement claim to methods claims. Further, and as explained above, Tetra Tech objects to Pavemetrics' proposed instruction as inaccurate and incomplete by limiting damages to the '293 patent or a particular act of infringement. Tetra Tech further objects to the proposed instruction because it presents incomplete legal standards relating to infringement, validity, and damages. The explanations of these standards are cursory and may confuse rather than assist the jury in adjudicating these issues, particularly given that more complete instructions encompass these standards.

**DISPUTED INSTRUCTION NO. 6**

**SUMMARY OF CONTENTIONS**[9] **(Pavemetrics' Proposed Instruction)**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Pavemetrics seeks a declaratory judgment that it does not infringe claims 1 and 21 of the '293 patent and claim 8 of the '557 patent. It also seeks a declaratory judgment that those claims are invalid.

Tetra Tech seeks money damages from Pavemetrics for allegedly infringing the '293 patent by selling products that Tetra Tech argues are covered by claims 1 and 21 of the '293 patent. Tetra Tech also argues that Pavemetrics caused a customer to use those products to perform the method covered by claim 8 of the '557 patent. Claims 1 and 2 of the '293 patent and Claim 8 of the '557 patent are the asserted claims. Tetra Tech argues that Pavemetrics has actively induced infringement of these claims of the '293 and '557 patents by another, and contributed to the infringement of claim 8 of the '557 patent by another.

The products that are alleged to infringe are various versions of Pavemetrics' LRAIL system. The methods that are alleged to infringe are any use of those versions of the LRAIL system by a customer in the United States.

---

[9] *See* Summary of Contentions B.1, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

Your job is to decide whether the asserted claims of the '293 and '557 patents are invalid and whether Pavemetrics has infringed any of the asserted claims of the '293 and '557 patents. If you decide that any claim of the '293 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Tetra Tech to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

**Pavemetrics' Position:** Pavemetrics' instruction follows the Federal Circuit Bar Model and appropriately provides the jury an overview of the parties' contentions.

**Tetra Tech's Position:** Tetra Tech incorporates by reference its position concerning Disputed Instruction No. 3.

**DISPUTED INSTRUCTION NO. 7**

**INDEPENDENT AND DEPENDENT CLAIMS**[10] **(Pavemetrics' Proposed Instruction)**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. In this case, claim 1 of the '293 patent and claim 8 of the '557 patent are each independent claims.

The remainder of the claims in the '293 patent are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim(s) to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim(s) to which it refers. A product that meets all of the requirements of both the dependent claim and the claim(s) to which it refers is covered by that dependent claim.

---

[10] *See* Claim Construction B.2.1a, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

**INDEPENDENT AND DEPENDENT CLAIMS[11] (Tetra Tech's Proposed Instruction)**

This case involves two types of patent claims: independent claims and dependent claims.

An "independent claim" sets forth all of the requirements that must be met in order to be covered by that claim. Thus, it is not necessary to look at any other claim to determine what an independent claim covers. The claims at issue in this case that are independent claims are: claim 1 of the '293 Patent and claim 8 of the '557 Patent.

The remainder of the claims are "dependent claims." A dependent claim does not itself recite all of the requirements of the claim but refers to another claim for some of its requirements. In this way, the claim "depends" on another claim. A dependent claim incorporates all of the requirements of the claim to which it refers. The dependent claim then adds its own additional requirements. To determine what a dependent claim covers, it is necessary to look at both the dependent claim and any other claim to which it refers. A product or process that meets all of the requirements of both the dependent claim and the claim to which it refers is covered by that dependent claim. The claims at issue in this case that are dependent claims are: claims 2, 4, and 21 of the '293 Patent.

**Pavemetrics' Position:** Tetra Tech's allegations of infringement on Claims 2 and 4 rely on a theory rejected by the Court as a matter of law in its Order re: Motion for Summary Judgment dated April 27, 2022. ECF 189.

**Tetra Tech's Position:** As explained in detail above, Tetra Tech objects to Pavemetrics' proposed instruction as incomplete and inaccurate by omitting asserted claims 2 and 4 of the '293 patent.

---

[11] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent B.2.1a.

**DISPUTED INSTRUCTION NO. 8**

**INFRINGEMENT GENERALLY[12] (Pavemetrics' Proposed Instruction)**

I will now instruct you how to decide whether or not Tetra Tech has proven that Pavemetrics has infringed the '293 and '557 patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement.

Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.  In this case, Tetra Tech has alleged that Pavemetrics directly infringed the system claims of the '293 patent. In addition, Tetra Tech has alleged that AID directly infringed the '293 and '557 patents, and Pavemetrics is liable for actively inducing or contributing to that direct infringement by AID.

In order to prove infringement, Tetra Tech must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

---

[12] *See* Infringement B.3.1, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

**INFRINGEMENT GENERALLY[13] (Tetra Tech's Proposed Instruction)**

I will now instruct you how to decide whether or not Tetra Tech has proven that Pavemetrics has infringed the Asserted Patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are three possible ways that a claim may be infringed. The three types of infringement are called: (1) direct infringement; (2) active inducement; and (3) contributory infringement. Active inducement and contributory infringement are referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement.

In this case, Tetra Tech has alleged that Pavemetrics directly infringes the '293 patent. In addition, Tetra Tech has alleged that Pavemetrics' customers directly infringe the Asserted Patents, and Pavemetrics is liable for actively inducing or contributing to that direct infringement by Pavemetrics' customers.

In order to prove infringement, Tetra Tech must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, i.e., that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

**Pavemetrics' Position:** Pavemetrics objects to the language that "Pavemetrics directly infringes the Asserted Patents." Tetra Tech stipulated that Pavemetrics' sales do not directly infringe Claim 8 of the '557 patent. *See* ECF 204. Tetra Tech has not otherwise alleged direct infringement by Pavemetrics of Claim 8 of the '557 patent. *See* Morellas ¶¶609-611. Pavemetrics objects because Tetra Tech has accused

---

[13] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent B.3.1.

multiple versions of LRAIL as infringing the '293 patent and those versions contain material differences with respect to the asserted claims.  *See Omega Patents v. CalAmp*, 920 F.3d 1337, 1350-51 (Fed. Cir. 2019) (vacating damages award because no evidence supported finding of infringement of more than "some unidentified subset" of the accused products).  Thus, infringement must be determined on a product-by-product basis.  Tetra Tech's allegations of direct infringement are limited to one customer: AID.  Its prior allegations against a second customer, CSX, are based on LRAIL Unit A sold to CSX before notice under 35 U.S.C. § 287 and are also protected from suit by government immunity under 28 U.S.C. § 1498.  *See* ECF 209 (Order re: Motions for Summary Judgment dated July 6, 2022).

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction because specific references to AID rather than Pavemetrics' customers are inappropriate and legally unnecessary to prove indirect infringement. *See In re Bill of Lading Transmission & Processing Sys. Pat. Litig.*, 681 F.3d 1323, 1336 (Fed. Cir. 2012) ("This court has upheld claims of indirect infringement premised on circumstantial evidence of direct infringement by unknown parties"); *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 774 (Fed. Cir. 1993) ("Liability for either active inducement of infringement or for contributory infringement is dependent upon the existence of direct infringement"). Moreover, the circumstances of the case do not warrant these modifications and is biased and may be confusing to the jury. Tetra Tech objects to Pavemetrics' proposed instruction as incomplete and inaccurate because it omits and misstates Tetra Tech's indirect infringement claims. As explained in detail above, Tetra Tech objects to Pavemetrics' proposed instruction as incomplete and inaccurate to the extent it contends that there can be no underlying direct infringement by CSX for Tetra Tech's indirect infringement claims. This is contrary to the Court's summary judgment order of July 6, 2022.

1  **DISPUTED INSTRUCTION NO. 9**

2  **DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"[14] (Pavemetrics'**

3  **Proposed Instruction)**

4  In order to prove direct infringement by literal infringement of a system claim,

5  Tetra Tech must prove by a preponderance of the evidence, i.e., that it is more likely

6  than not, that Pavemetrics sold into the United States a product that meets all of the

7  requirements of a system claim and did so without the permission of Tetra Tech

8  during the time the '293 patent was in force. You must compare each product with

9  each and every one of the requirements of a claim to determine whether all of the

10 requirements of that claim are met by that particular product.

11

12 You must determine, separately for each asserted claim and each accused

13 product, whether or not there is infringement. For dependent claims, if you find that a

14 claim to which a dependent claim refers is not infringed, there cannot be infringement

15 of that dependent claim. On the other hand, if you find that an independent claim has

16 been infringed, you must still decide, separately, whether the product meets the

17 additional requirement(s) of any claims that depend from the independent claim to

18 determine whether those dependent claims have also been infringed. A dependent claim

19 includes all the requirements of any of the claims to which it refers plus additional

20 requirement(s) of its own.

21

22 **DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"[15] (Tetra Tech's**

23 **Proposed Instruction)**

24

25

26 [14] *See* Infringement B.3.1a, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions

27 (May 2020).

28 [15] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent B.3.1a.

In order to prove direct infringement by literal infringement, the patent holder must prove by a preponderance of the evidence, i.e., that it is more likely than not, that the alleged infringer made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim and did so without the permission of the patent holder during the time the asserted patent was in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. In this case, Tetra Tech contends that Pavemetrics sold or offered for sale in the United States the LRAIL that meets all of the requirements of claims 1, 2, 4, and 21 of the '293 patent.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirements of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

**Pavemetrics' Position:** Pavemetrics objects to including any acts of direct infringement other than "sold," because Tetra Tech's technical expert limited his opinions on Pavemetrics' alleged direct infringement to sales only (Morellas ¶¶609-611) and Tetra Tech's damages expert limited his opinions on damages to sales only (Schoettelkotte, e.g., ¶¶15-19). Thus, Tetra Tech cannot offer any expert testimony on any act of infringement by Pavemetrics other than "sold." Pavemetrics objects to use of "Asserted Patents" for direct infringement. Tetra Tech stipulated that Pavemetrics' sales do not directly infringe Claim 8 of the '557 patent. *See* ECF 204. Tetra Tech has not otherwise alleged direct infringement by Pavemetrics of Claim 8 of the '557 patent. *See* Morellas ¶¶609-611. Pavemetrics objects to "the product," because Tetra Tech has

accused multiple LRAIL systems with different versions of software as infringing the '293 patent and those versions contain material differences with respect to the asserted claims. *See Omega Patents v. CalAmp*, 920 F.3d 1337, 1350-51 (Fed. Cir. 2019) (vacating damages award because no evidence supported finding of infringement of more than "some unidentified subset" of the accused products).  Thus, infringement must be determined on a product-by-product basis.

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction as incomplete and inaccurate because it omits and misstates Tetra Tech's direct infringement claims, as explained above. Tetra Tech further objects to this proposed instruction because Pavemetrics, without citing any support or authority, modifies the model instruction to instruct the jury to compare "each product" to the claims, determine that all requirements of the claim are "met by that particular product," and that infringement must be determined separately for each asserted claim "and each accused product." The circumstances of the case do not warrant these modifications, particularly given that the model instructions are clear and do not need alteration. Pavemetrics' modifications otherwise are biased, inaccurate, incomplete, misleading, and potentially confusing.

## DISPUTED INSTRUCTION NO. 10

**INDIRECT INFRINGEMENT—ACTIVE INDUCEMENT[16] (Pavemetrics' Proposed Instruction)**

Tetra Tech alleges that Pavemetrics is liable for infringement by actively inducing another company to directly infringe the '293 and '557 patents. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Pavemetrics is liable for active inducement of a claim only if Tetra Tech proves by a preponderance of the evidence:

1. AID's use of LRAIL directly infringe that claim;
2. that Pavemetrics took action during the time the '293 and '557 patents were in force that was intended to cause and led to AID's infringing use; and
3. that Pavemetrics was aware of the '293 and '557 patents and knew that AID's use, if taken, would constitute infringement of that patent or that Pavemetrics believed there was a high probability that AID's use would infringe the '293 and '557 patents and Pavemetrics took deliberate steps to avoid learning of that infringement.

If you find that Pavemetrics was aware of the patents, but believed that the acts it encouraged did not infringe those patents, Pavemetrics cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that AID itself directly infringes the claim. Nor is it sufficient that Pavemetrics was aware of the

---

[16] *See* Infringement B.3.2, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

use by AID that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Pavemetrics specifically intended AID to infringe the '293 and '557 patents or that Pavemetrics believed there was a high probability that AID would infringe the '293 and '557 patents, but deliberately avoided learning the infringing nature of AID's use. The mere fact, if true, that Pavemetrics knew or should have known that there was a substantial risk that AID's use would infringe the '293 patent or the '557 patent would not be sufficient to support a finding of active inducement of infringement.

**INDUCING PATENT INFRINGEMENT[17] (Tetra Tech's Proposed Instruction)**

Tetra Tech argues that Pavemetrics has actively induced Pavemetrics' customers to infringe the Asserted Patents. In order for Pavemetrics to have induced infringement, Pavemetrics must have induced another to directly infringe a claim of the Asserted Patents; if there is no direct infringement by anyone, there can be no induced infringement. As with direct infringement, you must determine induced infringement on a claim-by-claim basis.

In order to be liable for inducing infringement, Pavemetrics must:

(1)    have intentionally taken action that actually induced direct infringement;

(2)    have been aware of the Asserted Patents; and

(3)    have known that the acts it was causing would infringe the Asserted Patents.

Pavemetrics may be considered to have known that the acts it was causing would infringe the Asserted Patents if Pavemetrics subjectively believed there was a high probability that the acts of Pavemetrics' customers would infringe the Asserted Patents

---

[17] **Authority in support of Tetra Tech's instruction:** N.D. Cal. Model Patent 3.7.

37

1    and nevertheless deliberately took steps to avoid learning that fact, in other words,

2    willfully blinded itself to the infringing nature of the direct infringer's acts.

3

4    **Pavemetrics' Position:** Pavemetrics objects to Tetra Tech selectively including

5    instructions from multiple models including ND Cal. Model, AIPLA Model, and

6    Federal Circuit Bar Model without explanation or justification.  Pavemetrics objects to

7    Tetra Tech's use of the ND Cal. Model instruction here when the FCBA Model Patent

8    Jury Instruction B.3.2 is more complete by adding a paragraph concerning the elements

9    of induced infringement.  For example, Tetra Tech's instruction omits that Pavemetrics'

10   good faith belief in non-infringement negates indirect infringement.  *Commil USA, LLC*

11   *v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015) (no liability for inducement where

12   "the defendant reads the patent's claims differently from the plaintiff, and that reading

13   is reasonable"); *Chaffin v. Braden*, 2018 WL 1794766, at *5 (S.D. Tex. Apr. 16, 2018)

14   ("A defendant's belief in noninfringement, based on its reasonable claim construction

15   argument, negates the knowledge requirement of indirect infringement.").  Pavemetrics

16   also objects because Tetra Tech's proposed instruction fails to inform the jury that

17   "knew or should have known of a substantial risk" is insufficient for inducement.  *Roche*

18   *Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir.

19   2022) (district court erred by requiring only that the alleged infringer "knew or should

20   have known" his actions would induce infringement).

21        Pavemetrics objects because Tetra Tech has accused multiple LRAIL systems

22   with different versions of software as infringing the '293 patent and those versions

23   contain material differences with respect to the asserted claims.  *See Omega Patents v.*

24   *CalAmp*, 920 F.3d 1337, 1350-51 (Fed. Cir. 2019) (vacating damages award because

25   no evidence supported finding of infringement of more than "some unidentified subset"

26   of the accused products).  Thus, infringement must be determined on a product-by-

27   product basis.

28

Pavemetrics objects to Tetra Tech including multiple "customers" when AID is the only alleged direct infringer remaining for trial. Tetra Tech's allegations of direct infringement by CSX are based on LRAIL Unit A sold to CSX before notice under 35 U.S.C. § 287 and are also protected from suit by government immunity under 28 U.S.C. § 1498. *See* ECF 209 (Order re: Motions for Summary Judgment dated July 6, 2022).

**Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is the more appropriate instruction because it is taken from the N.D. Cal. Model Patent B.3.7, and presents a more accurate, complete, and easier to follow instruction. Moreover, and as explained in detail above, Tetra Tech objects to Pavemetrics' proposed instruction because specific references to AID rather than Pavemetrics' customers are inappropriate and legally unnecessary to prove indirect infringement. Tetra Tech objects to Pavemetrics' proposed instruction as incomplete and inaccurate because it omits and misstates Tetra Tech's indirect infringement claims. As explained in detail above, Tetra Tech objects to Pavemetrics' instruction to the extent it contends that there can be no underlying direct infringement by CSX for Tetra Tech's indirect infringement claims. This is contrary to the Court's summary judgment order of July 6, 2022.

1

**DISPUTED INSTRUCTION NO. 11**

2

**INDIRECT     INFRINGEMENT—CONTRIBUTORY     INFRINGEMENT[18]**

3

**(Pavemetrics' Proposed Instruction)**

4

Tetra Tech argues that Pavemetrics is liable for contributory infringement by

5

contributing to the direct infringement of the '557 patent by AID. As with direct

6

infringement, you must determine contributory infringement on a claim-by-claim basis.

7

8

Pavemetrics is liable for contributory infringement of a claim if Tetra Tech proves

9

by a preponderance of the evidence:

10

1. Pavemetrics sold within the United States a component of a product, material, or

11

apparatus for use in a process, during the time the '557 patent was in force;

12

2. the component, material, or apparatus is not a staple article or commodity of

13

commerce suitable for substantial noninfringing use;

14

3. the component, material, or apparatus constitutes a material part of the invention;

15

4. At the time of the sale, Pavemetrics was aware of the '557 patent and knew that

16

the component, material, or apparatus is especially made or adapted for use as an

17

infringement of the claim; and

18

5. AID used the component, material, or apparatus to directly infringe a method

19

claim.

20

21

As with active inducement, if you find that Pavemetrics was aware of the patents,

22

but believed that the use of the component, material, or apparatus would not infringe

23

the '557 patent, Pavemetrics cannot be liable for contributory infringement.[19]

24

25

26

27

[18] *See* Infringement B.3.3, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions
(May 2020);

28

[19] Commil USA, LLC v. Cisco Sys., Inc., 575 U.S. 632, 639, 642 (2015).

The mere fact, if true, that Pavemetrics knew or should have known that there was a substantial risk that AID's use would infringe the '557 patent would not be sufficient to support a finding of contributory infringement.

**CONTRIBUTORY INFRINGEMENT[20] (Tetra Tech's Proposed Instruction)**

Tetra Tech asserts that Pavemetrics has contributed to infringement by another person.

To find contributory infringement, you must find that someone other than Pavemetrics has directly infringed a claimed invention of the Asserted Patents.

To establish contributory infringement, Tetra Tech must prove that it is more likely than not that Pavemetrics had knowledge of both the patent and direct infringement of that patent. Tetra Tech must prove that each of the following is more likely than not:

(1)    someone other than Pavemetrics has directly infringed a claim of the Asserted Patents;

(2)    Pavemetrics sold, offered for sale, or imported within the United States a component of the infringing product or an apparatus for use in the infringing method;

(3)    the component or apparatus is not a staple article or commodity of commerce capable of substantial non-infringing use;

(4)    the component or apparatus constitutes a material part of the claimed invention; and

(5)    Pavemetrics knew that the component was especially made or adapted for use in an infringing product or method.

---

[20] **Authority in support of Tetra Tech's instruction:** 2019 AIPLA Model Patent Jury Instructions 3.10.

A "staple article or commodity of commerce capable of substantial non-infringing use" is something that has uses other than as a part or component of the patented product or uses other than in the patented method, and those other uses are not occasional, farfetched, impractical, experimental, or hypothetical.

Pavemetrics' knowledge that the component was especially made or adapted for use in an infringing product or method may be shown with evidence of willful blindness where Pavemetrics consciously ignored the existence of both the patent and direct infringement of that patent. To find willful blindness (1) Pavemetrics must have subjectively believed that there was a high probability that a patent existed covering the accused product or method, and (2) Pavemetrics must have taken deliberate actions to avoid learning of the patent.

**Pavemetrics' Position:** Pavemetrics objects to Tetra Tech selectively including instructions from multiple models including ND Cal. Model, AIPLA Model, and Federal Circuit Bar Model without explanation or justification.  Pavemetrics objects to Tetra Tech's use of the AIPLA Model instruction here when the FCBA Model Patent Jury Instruction B.3.2 is more complete..  Pavemetrics objects because this instruction omits that Pavemetrics' good faith belief in non-infringement negates indirect infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015) (no liability for inducement where "the defendant reads the patent's claims differently from the plaintiff, and that reading is reasonable"); *Omega Patents v. CalAmp*, 920 F.3d 1337, 1352 (Fed. Cir. 2019) (reasonable belief in non-infringement negates inducement); *Chaffin v. Braden*, 2018 WL 1794766, at *5 (S.D. Tex. Apr. 16, 2018) ("A defendant's belief in noninfringement, based on its reasonable claim construction argument, negates the knowledge requirement of indirect infringement.").  Pavemetrics also objects because Tetra Tech's proposed instruction fails to inform the jury that "knew or should have known of a substantial risk" is insufficient for inducement. *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th 1109, 1118 (Fed. Cir.

42

1    2022) (district court erred by requiring only that the alleged infringer "knew or should

2    have known" his actions would induce infringement).

3         Pavemetrics objects to use of "Asserted Patents" in this contributory

4    infringement instruction.  Tetra Tech has not alleged that Pavemetrics contributed to

5    the infringement of system claims in the '293 patent.  Rather, it limited its contributory

6    infringement claims to the "asserted method claims of the '293 and '557 patents."  *See*

7    Morellas ¶624-626.  Because Tetra Tech no longer asserts method claims of the '293

8    patent, any contributory infringement assertions at trial are limited to the '557 patent.

9    Pavemetrics objects to use of "component of the infringing product," in (2), "uses other

10   than as a part or component of the patented product," and to use of "product or.",

11   because

12   Tetra Tech's allegations of contributory infringement are limited to components used

13   to practice the claimed method.  *See* Morellas ¶¶625-626; Tetra Tech's allegations of

14   contributory infringement by CSX are based on LRAIL Unit A sold to CSX before

15   notice under 35 U.S.C. § 287 and are also protected from suit by government immunity

16   under 28 U.S.C. § 1498.  *See* ECF 209 (Order re: Motions for Summary Judgment dated

17   July 6, 2022).

18

19   **Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is the more

20   appropriate instruction because it is taken from the 2019 AIPLA Model Patent Jury

21   Instruction 3.10, and presents a more accurate, complete, and easier to follow

22   instruction. Moreover, as explained in detail above, Tetra Tech objects to

23   Pavemetrics' proposed instruction because specific references to AID rather than

24   Pavemetrics' customers are inappropriate and legally unnecessary to prove indirect

25   infringement. Furthermore, Tetra Tech objects to Pavemetrics' proposed instruction as

26   incomplete and inaccurate because it omits and misstates Tetra Tech's indirect

27   infringement claims. As explained in detail above, Tetra Tech objects to the proposed

28   instruction to the extent it contends that there can be no underlying direct infringement

43

1   by CSX for Tetra Tech's indirect infringement claims. This is contrary to the Court's

2   summary judgment order of July 6, 2022. Moreover, and as explained in detail above,

3   Tetra Tech objects to Pavemetrics' proposed instruction as inaccurate and incomplete

4   by limiting Tetra Tech's contributory infringement claim to methods claims. To the

5   contrary, Tetra Tech alleged in its Amended Counterclaim that Pavemetrics

6   contributed to the infringement of the system claims. D.I. 79, ¶ 36, and Dr. Morellas

7   opined that the LRAIL and its "hardware and software components [are] made for

8   performing railroad inspections, ***including*** to perform the claimed methods." Morellas

9   Opening Report, ¶625. In addition, Tetra Tech objects to this proposed instruction

10  because Pavemetrics modifies the model instruction to state that "[a]s with active

11  inducement, if you find that Pavemetrics was aware of the patents, but believed that

12  the use of the component, material, or apparatus would not infringe the '557 patent,

13  Pavemetrics cannot be liable for contributory infringement." Pavemetrics' only

14  support for this proposition is *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632,

15  639, 642 (2015). This instruction is not a part of the model rule, and the "Court

16  seldom if ever gives instructions derived solely from cases." D.I. 56. Nor does

17  *Commil* support Pavemetrics' legal proposition. Tetra Tech also objects to this

18  proposed instruction because Pavemetrics modifies the model instruction to state that

19  "[t]he mere fact, if true, that Pavemetrics knew or should have known that there was a

20  substantial risk that AID's use would infringe the '557 patent would not be sufficient

21  to support a finding of contributory infringement.." Pavemetrics' only support for this

22  proposition is *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 30 F.4th

23  1109, 1118 (Fed. Cir. 2022). This instruction is not a part of the model rule, and the

24  "Court seldom if ever gives instructions derived solely from cases." D.I. 56. *Roche*

25  *Diagnostics* does not support Pavemetrics' legal proposition.

26

27

28

**DISPUTED INSTRUCTION NO. 12**

**PRESUMPTION OF VALIDITY[21] (Tetra Tech's Proposed Instruction)**

 The issuance of a patent by the Patent and Trademark Office (PTO) raises a presumption that the patent is valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.

**Pavemetrics' Position:** Pavemetrics objects because this instruction is not supported by any model and is already addressed, to the extent it needs to be addressed, by the burden of proof instruction. Pavemetrics also objects because the instruction is inapplicable to the facts of this case and could only serve to confuse the jury. Pavemetrics is not relying on any references that were submitted to the Patent Office during prosecution of the Asserted Patents. The treatise cited by Tetra Tech correctly explains that "[t]his presumption of validity, amounting to a presumption of invention, extends *only* to the record before the examiners in the PTO. . . This presumption does not extend or exist as to prior art patents or publications that do not appear from the record of the 'prosecution history.'" O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed.). The presumption, when applicable, is "merely a rule of evidence" that places the burden on the patent challenger to prove invalidity by clear and convincing evidence. *Id.* The jury was already instructed on that burden in the prior instruction.

**Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is appropriate because it is adapted from the O'Malley and AIPLA model instructions and 35 U.S.C. § 282. Moreover, Tetra Tech submits that the proposed instruction will be important

---

[21] **Authority in support of Tetra Tech's instruction:** Adapted from O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed.); 2019 AIPLA Model Jury Instructions 1.2; 35 U.S.C. § 282.

45

and helpful in educating the jury as to Pavemetrics must prove its invalidity claims by clear and convincing evidence.

**DISPUTED INSTRUCTION NO. 13**

**PRIOR ART[22] (Pavemetrics' Proposed Instruction)**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art.  Prior art is considered in determining whether the asserted claims of the '293 and the '557 patents are anticipated or obvious.  Prior art may include items that were publicly known or that have been used or offered for sale, or references, such as publications or patents, that disclose the claimed invention or elements of the claimed invention.

**INVALIDITY – PRIOR ART[23] (Tetra Tech's Proposed Instruction)**

In order for someone to be entitled to a patent, the invention must actually be "new" and not obvious over what came before, which is referred to as the prior art. You must determine whether "Pavemetrics' UML Sale and Support," "UML-TRB2014," "EC-TRB2014," Tetra Tech's 3D tie assessment ("Alleged Tetra Tech Prior Use"), and "Gibert-Serra" are prior art that can be considered in determining whether claim(s) of the Asserted Patents are anticipated or obvious. There are different types of prior art, and I will instruct you on the relevant types that you need to consider.

Pavemetrics contends that Pavemetrics' UML Sale and Support and Alleged Tetra Tech Prior Use are prior art because they were publicly known or were used, on sale, or otherwise made available to the public before the filing date of the Asserted Patents. An invention is known when the information about it was reasonably accessible to the public on that date. An invention was publicly used when it was either accessible to the public or commercially exploited. An invention was sold or offered for sale when

---

[22] *See* Validity—The Claims B.4.3a-1, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

[23] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent B.4.3a-3.

it was offered commercially and what was offered was ready to be patented, i.e., it was reduced to practice or it had been described such that a person having ordinary skill in the field of the technology could have made and used the claimed invention, even if it was not yet reduced to practice or publicly disclosed.

Pavemetrics also contends that UML-TRB2014, EC-TRB2014, and Gibert-Serra is prior art because it was published or otherwise made available to the public before the filing date of the Asserted Patents.

You may not find that Pavemetrics' UML Sale and Support, UML-TRB2014, EC-TRB2014, Alleged Tetra Tech Prior Use, and Gibert-Serra are prior art if:

- It is an item or publication that (a) is the inventor's own work or (b) describes the inventor's own work or (c) was directly or indirectly obtained from the inventor, unless it was made public more than one year before the filing date of the patent's application, or

- It is a patent or patent application that (a) discloses the inventor's own work or (b) was directly or indirectly obtained from the inventor or (c) was owned by the same person or subject to an obligation of assignment to the same person.

Pavemetrics must prove by clear and convincing evidence that Pavemetrics' UML Sale and Support, UML-TRB2014, EC-TRB2014, Alleged Tetra Tech Prior Use, and Gibert-Serra are prior art.

**Pavemetrics' Position:** Pavemetrics objects because Tetra Tech lacks a good faith basis to challenge UML-TRB2014, EC-TRB2014, and Gibert-Serra as prior art. Pavemetrics objects to asking the jury to decide whether UML-TRB2014, EC-TRB2014, and Gibert-Serra are Dr. Mesher's own work, describe his work, or were obtained from him.  Tetra Tech has not made such an allegation in this case and has no plausible, good faith basis to do so.

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction because Pavemetrics proposes submitting Fed. Cir. Model Patent Instruction B.4.3a-1, which is for cases where prior art is "Not in Dispute." The circumstances of the case do not warrant this instruction because the prior art is in dispute, and the burden rests with Pavemetrics to prove that the alleged prior art is in fact prior art. Thus, Fed. Cir. Model Patent Instruction B.4.3a-3, which Tetra Tech has proposed, is the more appropriate instruction.

**DISPUTED INSTRUCTION NO. 14**

**INVALIDITY – ANTICIPATION[24]**

In order for someone to be entitled to a patent, the invention must actually be "new." Pavemetrics contends that claim 8 of the '557 Patent is invalid because the claimed inventions are anticipated or because Tetra Tech lost the right to obtain a patent. Pavemetrics must convince you of this by clear and convincing evidence, i.e., that the evidence highly probably demonstrates that the claim(s) is/are invalid.

Specifically, Pavemetrics contends that the following piece of alleged prior art anticipates claim 8 of the '557 Patent: [Pavemetrics:] Tetra Tech's prior use, sale, offer for sale of Tetra Tech's 3D tie assessment ("Alleged Tetra Tech Prior Use").

Anticipation must be determined on a claim-by-claim basis. Pavemetrics must prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art. To anticipate the invention, the prior art does not have to use the same words as the claim, but all of the requirements of the claim must have been disclosed and arranged as in the claim. The claim requirements may either be disclosed expressly or inherently—that is, necessarily implied—such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.

Where Pavemetrics is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether Pavemetrics has carried its clear-and-convincing burden of proving invalidity.

---

[24] Fed. Cir. Model Patent B.4.3b-1.

If a dependent claim is anticipated by the prior art, then the claims from which it depends are necessarily anticipated as well.

**Pavemetrics' Position:** Pavemetrics objects because Tetra Tech has not accurately stated the name of the prior art that Pavemetrics contends anticipates Claim 8. Pavemetrics' proposed language is shown in underlined text on lines 10-11 of the previous page.

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction because the proposed name for the alleged prior art are misleading, confusing, and prejudicial:  "Tetra Tech's prior use, sale, offer for sale of Tetra Tech's 3D tie assessment ('Tetra Tech's Prior Use')." Tetra Tech's proposed identification of the alleged prior art provides a more objective and less prejudicial and biased presentation.

**DISPUTED INSTRUCTION NO. 15**

**OBVIOUSNESS[25] (Pavemetrics' Proposed Instruction)**

Even though an invention may not have been identically disclosed or described previously, in order to be patentable, the invention must also not have been obvious to a person of ordinary skill in the field of technology of the patent before the filing date of the patent.

Pavemetrics may establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the patent was filed in the field of applied image processing or computer vision.

In determining whether a claimed invention is obvious, you must consider the level of ordinary skill in the field of applied image processing or computer vision that someone would have had at the time the patent was filed, the scope and content of the prior art,  any differences between the prior art and the claimed invention, and, if present, so-called objective evidence or secondary considerations, which I will describe shortly.  Do not use hindsight; consider only what was known as the time of the patent's filing date.

Keep in mind that the existence of each and every element of the claimed invention in the prior art does not necessarily prove obviousness.  Most, if not all, inventions rely on building blocks of prior art.  In considering whether a claimed invention is obvious, you should consider whether, at the time of the patent's filing date, there was a reason that would have prompted a person having ordinary skill in the field

_____

[25] *See* Validity—The Claims B.4.3c, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

of the invention to combine the known elements in the prior art in a way the claimed invention does, taking into account such factors as (1) whether the claimed invention was merely the predictable result of using prior art elements according to their known function(s); (2) whether the claimed invention provides an obvious solution to a known problem in the relevant field; (3) whether the prior art teaches or suggests the desirability of combining elements claimed in the invention; (4) whether the prior art teaches away from combining elements in the claimed invention; (5) whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions. To find it rendered the claimed invention obvious, you must find that the prior art provided a reasonable expectation of success.

In determining whether the claimed invention is obvious, you should take into account any objective evidence (sometimes called "secondary considerations") that may shed light on whether or not the claimed invention is obvious, such as:

a. Whether the claimed invention was commercially successful as a result of the merits of the claimed invention (rather than the result of design needs or market-pressure advertising or similar activities);

b. Whether the claimed invention satisfied a long-felt need;

c. Whether others had tried and failed to make the claimed invention;

d. Whether others invented the claimed invention at roughly the same time;

e. Whether others copied the claimed invention;

f. Whether there were changes or related technologies or market needs contemporaneous with the claimed invention;

g. Whether the claimed invention achieved unexpected results;

h. Whether others in the field praised the claimed invention;

i. Whether persons having ordinary skill in the art of the invention expressed surprise or disbelief regarding the claimed invention;

j.  Whether others sought or obtained rights to the patent from the patent holder; and

k.  Whether the inventor proceeded contrary to accepted wisdom in the field.

In determining whether the claimed invention was obvious, consider each claim separately, but understand that if a dependent claim is obvious, then the claim from which it depends is necessarily obvious as well.

**OBVIOUSNESS—GENERALLY[26] (Tetra Tech's Proposed Instruction)**

Pavemetrics contends that the asserted claims of the Asserted Patents are invalid because the claimed inventions are "obvious."

A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention as of the filing date of the Asserted Patents. Unlike anticipation, which allows consideration of only one item of prior art, obviousness may be shown by considering one or more than one item of prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the Asserted Patents. You should not use the Asserted Patents as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of the filing date of the Asserted Patents.

The following factors must be evaluated to determine whether Pavemetrics has established that the claimed invention is obvious:

1.  the scope and content of the prior art relied upon by Pavemetrics;

2.  the differences, if any, between each claimed invention of the Asserted Patents that Pavemetrics contends is obvious and the prior art;

---

[26] **Authority in support of Tetra Tech's instruction:** 2019 AIPLA Model Jury Instructions 7.0.

54

3.      the level of ordinary skill in the art as of the filing date of the Asserted Patents; and

4.      additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Pavemetrics must prove by clear and convincing evidence that the invention would have been obvious. Again, you must undertake this analysis separately for each claim that Pavemetrics contends is obvious.

I will now explain each of the four factors in more detail.

**Pavemetrics' Position:** Pavemetrics objects to Tetra Tech selectively including instructions from multiple models including ND Cal. Model, AIPLA Model, and Federal Circuit Bar Model without explanation or justification.  Pavemetrics objects to Tetra Tech's use of the AIPLA Model instruction here when the FCBA Model Patent Jury Instruction B.4.3c is more complete..

**Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is the more appropriate instruction because it is taken from the 2019 AIPLA Model Jury Instruction 7.0, and presents a more accurate, complete, and easier to follow instruction. In addition, Tetra Tech objects to Pavemetrics' proposed instruction because it modifies the model instruction, without citing any support or authority, to delete "Obvious to try is not sufficient in unpredictable technologies."

**DISPUTED INSTRUCTION NO. 16**

**SCOPE AND CONTENT OF THE PRIOR ART [27] (Pavemetrics' Proposed
Instruction)**

In considering whether the claimed invention was obvious at the time the patent
was filed, you must first determine the scope and content of the prior art.

The scope and content of prior art for deciding whether the invention was
obvious includes at least prior art in the same field as the claimed invention.  It also
includes prior art from different fields that a person of ordinary skill in the art would
have considered when trying to solve the problem that is addressed by the invention.

Where Pavemetrics is relying on prior art that was not considered by the PTO
during examination, you may consider whether that prior art is significantly different
and more relevant than the prior art that the PTO did consider.  If you decide it is
different and more relevant, you may weigh that prior art more heavily when
considering whether Pavemetrics has carried its clear-and-convincing burden of
proving invalidity.

**THE FIRST FACTOR: SCOPE AND CONTENT OF THE PRIOR ART[28] (Tetra
Tech's Proposed Instruction)**

In deciding obviousness, a prior art reference may be considered if it discloses
information designed to solve any problem or need addressed by the patent. A prior art
reference may also be considered if it discloses information that has obvious uses

---

[27] *See* Validity—The Claims B.4.3c(ii), Fed. Cir. Bar. Assoc. Model Patent Jury
Instructions (May 2020).

[28] **Authority in support of Tetra Tech's instruction:** 2019 AIPLA Model Jury
Instructions 7.1.

beyond its main purpose and if a person of ordinary skill in the art would reasonably examine that reference when trying to solve any problem or need addressed by the patent.

**Pavemetrics' Position:** Pavemetrics objects to Tetra Tech selectively including instructions from multiple models including ND Cal. Model, AIPLA Model, and Federal Circuit Bar Model without explanation or justification.  Pavemetrics objects to Tetra Tech's use of the AIPLA Model instruction here when the FCBA Model Patent Jury Instruction B.4.3c(ii) provides a more complete and accurate instruction on scope and content of the prior art.  For example, the FCBA Model instructs the jury regarding prior art not considered by the PTO during examination and how that may affect the weight the jury gives to the art.  Pavemetrics objects because Tetra Tech has not raised a non-analogous art objection to any prior art, nor could it.  Thus, there is no factual dispute for the jury to resolve.

**Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is the more appropriate instruction because it is taken from the 2019 AIPLA Model Jury Instruction 7.1, and presents a more accurate, complete, and easier to follow instruction.

**DISPUTED INSTRUCTION NO. 17**

**THE SECOND FACTOR: DIFFERENCES BETWEEN THE CLAIMED INVENTION AND THE PRIOR ART[29] (Tetra Tech's Proposed Instruction)**

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art as of the date of the Asserted Patents. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the claimed invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may consider the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious.

Importantly, a claim is not proven obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long-known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of

---

[29] **Authority in support of Tetra Tech's instruction:** 2019 AIPLA Model Jury Instructions 7.2.

ordinary skill in the art in the relevant field to combine the teachings in the way the claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense. If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this evidence would make it more likely that the claimed invention was obvious. Similarly, you may consider the possibility that a reference teaches away from the claimed invention. A reference teaches away from the invention when it would have discouraged a person of ordinary skill in the art as of the filing date of the Asserted Patents from practicing the claimed invention, or when such a person would be led in a different direction than practicing the claimed invention.

You must undertake this analysis separately for each claim that Pavemetrics contends is obvious.

**Pavemetrics' Position**: Pavemetrics objects to including Tetra Tech's proposed instruction because it is duplicative of the Obviousness instruction proposed by Pavemetrics.

**Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is the more appropriate instruction because it is taken from the 2019 AIPLA Model Jury Instruction 7.2, and presents a more accurate, complete, and easier to follow instruction.

## DISPUTED INSTRUCTION NO. 18

**THE FOURTH FACTOR: OTHER CONSIDERATIONS[30] (Tetra Tech's Proposed Instruction)**

Before deciding the issue of obviousness for each claimed invention, you must also consider certain factors, which may help to determine whether the invention would have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole. Certain of these factors include:

1. Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2. Was there long-felt need for a solution to the problem facing the inventor, which was satisfied by the claimed invention?

3. Did others try, but fail, to solve the problem solved by the claimed invention?

4. Did others copy the claimed invention?

5. Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6. Did others in the field, or Pavemetrics, praise the claimed invention or express surprise at the making of the claimed invention?

7. Did others accept licenses under the Asserted Patents because of the merits of the claimed invention?

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. These factors are relevant only if there is a connection, or nexus, between

---

[30] **Authority in support of Tetra Tech's instruction:** 2019 AIPLA Model Jury Instructions 7.4.

60

the factor and the invention covered by the patent claim. Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether Pavemetrics has proven that the claimed invention would have been obvious.

**Pavemetrics' Position**: Pavemetrics objects to this instruction because the FCBA Model Patent Jury Instruction B.4.3c includes these considerations.  Pavemetrics objects to this instruction because it does not address near simultaneous invention. The fact that another person simultaneously and independently created the same invention claimed in the patent-in-suit can serve as an indication that the invention was obvious.  *Ecolochem, Inc. v. S. Cal. Edison Co*., 227 F.3d 1361 (Fed. Cir. 2000).

**Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is the more appropriate instruction because it is taken from the 2019 AIPLA Model Jury Instructions 7.4., and presents a more accurate, complete, and easier to follow instruction. Tetra Tech's proposed instruction expands upon the Fourth Factor ("additional considerations") identified in Tetra Tech's proposed instruction on Obviousness-Generally.

## DISPUTED INSTRUCTION NO. 19

**DAMAGES – INTRODUCTION[31]**

If you find that Pavemetrics infringed any valid claim of the Asserted Patents, you must then consider what amount of damages to award to Tetra Tech. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Pavemetrics has not infringed any valid claim of the patent, then Tetra Tech is not entitled to any damages.

The damages you award must be adequate to compensate Tetra Tech for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Tetra Tech in approximately the same financial position that it would have been in had the infringement not occurred.

Tetra Tech has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Tetra Tech establishes it more likely than not suffered. While Tetra Tech is not required to prove the amount of its damages with mathematical precision, they must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Tetra Tech may be entitled to recover. In this case, Tetra Tech seeks lost profits and/or a reasonable royalty. Lost profits consist of any actual reduction in business profits Tetra Tech suffered as a result of Pavemetrics' infringement. A reasonable royalty is defined as the money amount Tetra Tech and Pavemetrics would have agreed upon as a fee for use of the invention at the time prior to when infringement began. But, regardless of the type of damages you may

---

[31] *See* Patent Damages B.5.1, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

1  choose to award, you must be careful to ensure that award is no more or no less than

2  the value of the patented invention.

3  **Pavemetrics' Proposal:**

4      I will give more detailed instructions regarding damages shortly. Note, however,

5  that Tetra Tech is entitled to recover no less than a reasonable royalty for each infringing

6  sale.

7  **Tetra Tech's Proposal:**

8      I will give more detailed instructions regarding damages shortly. Note, however,

9  that Tetra Tech is entitled to recover no less than a reasonable royalty for each infringing

10  sale, offer for sale, use, and importation.

11

12  **Pavemetrics' Position:** The parties' dispute the last paragraph of this instruction.

13  Pavemetrics objects to Tetra Tech's proposal, because it includes for acts of

14  infringement other than sales, including "offer for sale, use, and importation." Tetra

15  Tech's damages expert did not opine on a reasonable royalty for any "offer for sale, use,

16  and importation." *See* Schoettelkotte, *e.g.*, ¶¶15-19. Moreover, Tetra Tech's technical

17  expert limited his opinions on Pavemetrics' alleged direct infringement to sales only.

18  Morellas ¶¶609-611. Tetra Tech's technical expert also limited his opinions on

19  Pavemetrics' alleged indirect infringement to alleged uses by AID and CSX and alleged

20  importation of data by CSX. Morellas ¶¶612-616, 622-623. Tetra Tech's allegations

21  of direct infringement by CSX are based on an LRAIL sold to CSX before notice under

22  35 U.S.C. § 287 and are also protected from suit by government immunity under 28

23  U.S.C. § 1498. *See* ECF 209 (Order re: Motions for Summary Judgment dated July 6,

24  2022). As explained in the Proposed Pretrial Conference Order, Tetra Tech has notified

25  Pavemetrics that it does not intend to pursue any theory of indirect infringement based

26  on importation of data by CSX under 35 U.S.C. § 271(g).

27

28

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction because Pavemetrics, without citing any support or authority, modifies the model instruction to delete the following statement: "I will give more detailed instructions regarding damages shortly. Note, however, that [patent holder] is entitled to recover no less than a reasonable royalty for each infringing [sale; fill in other infringing act]." This modification is unwarranted under the circumstances and excluding it from the instruction is inconsistent with 35 U.S.C. § 284. Moreover, as discussed above, Tetra Tech objects to Pavemetrics' proposed instruction as inaccurate and incomplete by limiting damages to the '293 patent or a particular act of infringement. Tetra Tech is statutorily entitled to damages to compensate for the infringement, and Tetra Tech's damages expert's opinions on the reasonable royalty resulting from Pavemetrics' infringement were not limited to damages resulting from any particular type of infringing act. Tetra Tech further objects to this proposed instruction as incomplete and inaccurate because it misstates Tetra Tech's damages contention as seeking "lost profits, or alternately, a reasonable royalty." Tetra Tech seeks lost profits and a reasonable royalty, and Tetra Tech would be entitled to recover no less than a reasonable royalty.

**DISPUTED INSTRUCTION NO. 20**

**Pavemetrics' Proposal:**

**LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY[32]**

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased an alleged infringer's product. If purchasers of an alleged infringer's product were motivated to buy that product because of the patented features, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with a patent holder's and an alleged infringer's products.  On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by the alleged infringer, despite a difference in the products, then the patentee is not entitled to lost profits on those sales.

The acceptable substitute may be a product that involved a modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product.[33]

**Tetra Tech's Proposal:**

**LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY[34]**

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased Pavemetrics'

---

[32] *See* Patent Damages B.5.2, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

[33] *See* Lost Profits – Panduit Factors – Acceptable Non-Infringing Substitutes 10.2.14. AIPLA Model Patent Jury Instructions.

[34] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent B.5.2.

65

product. If purchasers of Pavemetrics' product were motivated to buy that product
because of features available only from that product and Tetra Tech's patented product,
then some other, alternative product is not an acceptable substitute, even if it otherwise
competed with Tetra Tech's and Pavemetrics' products. On the other hand, if the
realities of the marketplace are that competitors other than the patentee would likely
have captured the sales made by the infringer, despite a difference in the products, then
the patentee is not entitled to lost profits on those sales.

**Pavemetrics' Position:** In the Acceptability instruction, Pavemetrics objects to the
language "features available only from that product and Tetra Tech's patented product."
That language does not tie the features of the accused product to the patented invention.
Purchasers must have been motivated to purchase Pavemetrics' LRAIL system because
of the patented features.  In this case, Pavemetrics has sold LRAIL systems that are not
accused of infringement.   Moreover, Pavemetrics has sold LRAIL systems with
functionalities not accused of infringement.   Pavemetrics also objects because the
instruction ignores that Pavemetrics' LRAIL is an acceptable noninfringing substitute.
Pavemetrics' acceptable substitute is in fact a modification of the alleged infringing
product and Pavemetrics has also removed at least one accused feature from the LRAIL
system.    The AIPLA Model has an instruction concerning this fact scenario.
Pavemetrics incorporated that AIPLA Model instruction from Lost Profits – Panduit
Factors – Acceptable Non-Infringing Substitutes 10.2.14. AIPLA Model Patent Jury
Instructions.

**Tetra Tech's Position:**  Tetra Tech objects to this proposed instruction because
Pavemetrics, without citing any support or authority, modifies the model instruction to
replace "motivated to buy that product because of features available only from that
product and a patent holder's patented product" with "motivated to buy that product
because of features in the patent claims." This modification is unwarranted under the

circumstances of the case and is inconsistent with the model instruction and the controlling law on lost profits. Moreover, Tetra Tech objects to this proposed instruction because Pavemetrics, without citing any support, modifies the model instruction to inject a select statement from the AIPLA Model Patent Jury Instruction 10.2.14: "The acceptable substitute may be a product that involved a modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product." The model instruction is already clear without the need to pick and choose select statements from other model instructions, and thus, the proposed instruction is biased, misleading, and confusing.

**DISPUTED INSTRUCTION NO. 21**

**REASONABLE ROYALTY—RELEVANT FACTORS**

**Pavemetrics' Proposal:** [35]

In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1)    The value that the claimed invention contributes to the accused product.

(2)    The value that factors other than the claimed invention contribute to the accused product.

(3)    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating a license.

No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**Tetra Tech's Proposal:** [36]

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

---

[35] *See* Patent Damages B.5.8, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

[36] **Authority in support of Tetra Tech's instruction:** 2019 AIPLA Model Jury Instructions 10.2.5.3.

1.   Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.   The rates paid by Pavemetrics to license other patents comparable to the Asserted Patents.

3.   The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.   The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.   The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.   The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.   The duration of the Asserted Patents and the term of the license.

8.   The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

9.   The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.  The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11.  The extent to which Pavemetrics has made use of the invention; and any evidence that shows the value of that use.

69

12.     The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13.     The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14.     The opinion testimony of qualified experts.

15.     The amount that a licensor and a licensee (such as Pavemetrics) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16.     Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Pavemetrics' Position:** Throughout these damages instructions, the parties have been using the FCBA Model.  But for this instruction, Tetra Tech rejects the FCBA Model and opts for the AIPLA Model.  Moreover, Pavemetrics objects to this instruction because the FCBA Model Patent Jury Instruction B.5.8 provides an instruction that is easier to understand and more tailored to the facts in this case.  Indeed, the parties' damages experts both agree that many of the *Georgia Pacific* factors are not applicable to the facts of this case.  For example, the first two factors in Tetra Tech's instruction are not relevant in this case.

70

**Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is the more appropriate instruction because it is taken from the 2019 AIPLA Model Patent Jury Instruction 10.2.5.3, and presents a more accurate, complete, and easier to follow instruction. Tetra Tech's proposed instruction sets for the Georgia Pacific factors to inform the hypothetical negotiation between the parties, and the jury would be better served with the detailed instruction.

1
2

### DISPUTED INSTRUCTION NO. 22

**DATE OF COMMENCEMENT OF DAMAGES**

3
4

**Pavemetrics' Proposal:** [37]

5
6

In determining the amount of damages, damages cannot include sales that occurred before January 5, 2021.

7
8

**Tetra Tech's Proposal:** [38]

9
10
11
12

In determining the amount of damages, you must determine when the damages began. For the '293 Patent, damages commence on the date that Pavemetrics has both infringed and been notified of the alleged infringement of the '293 Patent. Tetra Tech and Pavemetrics agree that date was January 5, 2021.

13
14
15
16

In determining when damages begin with regard to the '557 Patent, there is no notice requirement because the '557 Patent is directed to method claims. Accordingly, the calculation of damages for infringement of begins as of the date the patent issued or the date the infringement began, whichever was first.

17
18
19
20
21
22
23

**Pavemetrics' Position:** Pavemetrics objects to Tetra Tech's proposed instruction because damages cannot include units sold before January 5, 2021. Moreover, no such damages can be awarded with respect to the '557 patent because those sales cannot be the bases for any liability now that the Court has ruled that those sales occurred before notice. Tetra Tech cannot circumvent such ruling by preventing the normal use of such authorized sales. *See Packet Intelligence v. NetScout Sys.*, 965 F.3d 1299, 1314-15

24
25

_____

26
27

[37] *See* Patent Damages B.5.10, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

28

[38] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent B.5.10.

(Fed. Cir. 2020). Pavemetrics also objects because Tetra Tech cannot seek damages for the '557 method patent based on sales of LRAIL. *Id.* at 1315 (no damages for infringement of method claims where damages base not tailored to any alleged use of the claimed methods). It is undisputed that sales of LRAIL do not infringe the '557 patent. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("Method claims are not directly infringed by the mere sale of an apparatus capable of performing the claimed process."). Tetra Tech's damages expert offered damages opinions based solely on each unit sold by Pavemetrics and not based on uses by any particular customer. (Schoettelkotte, e.g., ¶¶15-19).

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction because Pavemetrics, without citing any support or authority, modifies the model instruction by replacing "Damages commence on the date that [alleged infringer] has both infringed and been notified of the alleged infringement of the [ ] patent [choose those that apply]" with "damages cannot include sales that occurred before January 5, 2021." This modification is inaccurate, misleading, and confusing. Moreover, the modification is inconsistent with the Court's summary judgment order of July 6, 2022, that found that "acts taken to complete a sale after actual notice constitute continuing acts of infringement under § 287(a) that can result in damages." D.I. 209 at 10-11. Moreover, Tetra Tech objects to this proposed instruction as incomplete because it does not address the '557 patent, which is directed to method claims, and under controlling law (and commented in the model instruction) is not subject to the notice provisions of § 287. Moreover, Tetra Tech objects to Pavemetrics' proposed instruction to the extent Pavemetrics contends that Tetra Tech's reasonable royalty damages would be limited to sales of the infringing product. As explained in detail above, Tetra Tech is statutorily entitled to damages "to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention." 35 U.S.C. § 284. Moreover, as discussed above, Tetra Tech's damages expert's opinions on the reasonable royalty

resulting from Pavemetrics' infringement were not limited to damages resulting from any particular type of infringing act.

**DISPUTED INSTRUCTION NO. 23**

**DAMAGES – APPORTIONMENT[39] (Pavemetrics' Proposed Instruction)**

 The amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Tetra Tech's size or market position. A royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more. The process of separating the value of the allegedly infringing features from the value of all other features is called apportionment.  When the accused infringing products have both patented and unpatented features, your award must be apportioned so that it is based only on the value of the patented features, and no more.

 If the claimed patented features are not the sole driving factor for customer demand for the accused infringing product, then you must perform what is called apportionment.  When damages must be apportioned, the amount you find as damages must be based on the value attributable to the patented invention, as distinct from unpatented features of the accused product or other factors such as marketing or advertising, or Tetra Tech size or market position. Put differently, when apportionment is required, a royalty compensating the patent holder for damages must reflect the value attributable to the infringing features of the product, and no more.

 On the other hand, if demand for the entire accused product depends only on the claimed feature(s), then apportionment is not necessary even though the accused product includes non-patented features.

---

 *See* Patent Damages B.5.12, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

**Pavemetrics' Position:**  Apportionment is an issue in this case because Pavemetrics' LRAIL system includes unaccused functionality and the accused functionality was not valuable.  Pavemetrics' damages expert explicitly considered the apportionment issue in his report.  Tregillis Report at ¶¶124, 161.  Even if he had not, Pavemetrics is free to cross-examine Tetra Tech's damages expert about his failure to apportion to determine the value of the claimed invention given all of the unaccused or unpatented features of LRAIL.

**Tetra Tech's Position:**  Tetra Tech objects to Pavemetrics' proposed instruction because apportionment and the entire market value are not disputed or have been at issue in this case. *See, e.g.*, Tregillis Dep. Tr. at 221-22. Accordingly, Tetra Tech objects to this proposed instruction as irrelevant and unwarranted under the circumstances of the case, and otherwise is unnecessary and may confuse the jury.

Approved as to form and content:

KNOBBE, MARTENS, OLSON & BEAR, LLP

Dated:  July 19, 2022          By:  /s/ Christy G. Lea
                                    Christy G. Lea
                                    Joseph R. Re
                                    Nicholas M. Zovko
                                    Alan G. Laquer
                                    Raymond Lu

*Attorneys for Plaintiff/Counterclaim Defendant*,
PAVEMETRICS SYSTEMS, INC.

FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP

Dated:  July 19, 2022          By:  /s/  Daniel G. Chung
                                    *(with permission Christy G. Lea)*
                                    James R. Barney
                                    Aaron L. Parker
                                    Nicholas A. Cerulli
                                    Daniel G. Chung
                                    Kelly S. Horn
                                    Jency J. Mathew

CLARK HILL LLC
                                    Donald L. Ridge

*Attorneys for Defendant/Counterclaimant*, TETRA TECH, INC.

55990080