**NOTE CHANGES MADE BY THE COURT**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., | Case No. 2:21-cv-1289-MCS-MMA |
| Plaintiff, | Honorable Mark C. Scarsi |
| v. | **FINAL PRETRIAL CONFERENCE ORDER** |
| TETRA TECH, INC., | |
| Defendant. | Trial Date:        Aug. 16, 2022 |
| | Final Pretrial Conference:     Aug. 1, 2022 |
| AND RELATED COUNTERCLAIMS | |

Following pretrial proceedings, pursuant to Federal Rule of Civil Procedure 16 and Local Rule 16, IT IS ORDERED:

**1.    THE PARTIES AND PLEADINGS**

The parties are:

- Plaintiff and Counterclaim Defendant Pavemetrics Systems, Inc.
- Defendant and Counterclaim Plaintiff Tetra Tech, Inc.
- Counterclaim Plaintiff Tetra Tech TAS Inc.

Each of these parties has been served and has appeared. In this action, Pavemetrics Systems, Inc. is referred to as "Pavemetrics." Tetra Tech, Inc. and Tetra Tech TAS Inc. are collectively referred to as "Tetra Tech."

The pleadings which raise the issues are:

- Pavemetrics' Complaint for Declaratory Judgment of Non-Infringement [ECF 1].
- Tetra Tech's First Amended Counterclaim [ECF 79].
- Pavemetrics' Answer to First Amended Counterclaim [ECF 82].
- Pavemetrics' First Amended Compulsory Counterclaim for Declaratory Judgment of Invalidity and Non-Infringement [ECF 83].
- Tetra Tech's Answer to First Amended Compulsory Counterclaim [ECF 84].

Each party has also filed a Memorandum of Contentions of Fact and Law. ECF 236, 248.

**2.    JURISDICTION**

It is stipulated that subject matter jurisdiction over this action exists under 28 U.S.C. §§ 1331 and 1338, and venue is proper in this District and this Division pursuant to 28 U.S.C. § 1391 and 1400.

**3.    TRIAL DURATION**

The trial is estimated to take five (5) court days. Each party will have 14

hours to present its case.  **The parties shall each have 30 minutes to man an opening statement. The parties shall each have 10 hours total for direct and cross-examination. The parties shall each have one hour for closing argument.**

**4.    JURY TRIAL**

The trial is to be a jury trial (except for the bifurcated issues).

On July 18, 2022, the parties have filed "Agreed Upon Set of Jury Instructions and Verdict Forms" as well as the "Joint Statement re Disputed Instructions, Verdict Forms, etc."

**5.    ADMITTED FACTS**

The following facts are admitted and require no proof:

1.    Tetra Tech, Inc. is a Delaware corporation with its corporate headquarters in Pasadena, California.

2.    Tetra Tech TAS Inc. is a Canadian corporation with a principal place of business in Edmonton, Alberta, Canada.

3.    Pavemetrics Systems, Inc. is a Canadian corporation with a principal place of business in Quebec, Quebec, Canada.

4.    Tetra Tech filed U.S. Application No. 14/725,490 on May 29, 2015, which issued as U.S. Patent No. 10,362,293 (the "'293 patent") on July 23, 2019.

5.    The '293 patent is titled "3D Track Assessment System and Method."

6.    Darel Mesher is the named inventor of the '293 patent.

7.    Tetra Tech, Inc. owns by assignment the '293 patent.

8.    Tetra Tech TAS Inc. is the exclusive licensee of the '293 patent.

9.    Tetra Tech filed U.S. Application No. 16/516,686 on July 19, 2019, which issued as U.S. Patent No. 10,616,557 (the "'557 patent") on April 7, 2020.

10. The '557 patent is titled "3D Track Assessment Method."

11. The '557 patent is a continuation of the '293 Patent.

12. Darel Mesher is the named inventor of the '557 patent.

13. Tetra Tech, Inc. owns by assignment the '557 patent.

14. Tetra Tech TAS Inc. is the exclusive licensee of the '557 patent.

15. The '293 patent claims priority to a provisional patent application filed on February 20, 2015.

16. The '557 patent claims priority to a provisional patent application filed on February 20, 2015.

17. The '293 and '557 patents both have a claimed priority date (*i.e.*, earliest effective filing date) of February 20, 2015.

18. Claim 1 of the '293 patent is an independent claim.

19. Claim 21 of the '293 patent depends from Claim 1.

20. On January 5, 2021, Tetra Tech sent a letter to Pavemetrics accusing LRAIL of infringing the '293 patent.

21. Tetra Tech asserts the '293 patent covers its 3DTAS product.

22. On July 22, 2021, Tetra Tech sent a letter to Pavemetrics accusing LRAIL of infringing the '557 patent.

23. The LRAIL system includes two 3D laser triangulation sensors that can be mounted on a train car or hi-rail vehicle to capture high resolution scans of a railway.

24. In February 2021, Pavemetrics delivered to AID, LRAIL software version r10494 (2021-01-19).

25. In December 2021, Pavemetrics delivered to CSX, LRAIL software version 4.80.2.0-c4e9aa15f (2021-12-09).

## 6. **STIPULATED FACTS**

The following facts, though stipulated, shall be without prejudice to any evidentiary objection:

1.   Claim 2 of the '293 patent depends from Claim 1.

2.   Claim 4 of the '293 patent depends from Claims 1 and 2.

**7.   PARTIES' CLAIMS AND DEFENSES**

**Plaintiff's Claims and Counterclaims:[1]**

(a) Pavemetrics plans to pursue the following claims against Tetra Tech:

**Claim 1**:  Declaration that Pavemetrics does not infringe Claims 1 and 21 of the '293 patent.

**Counterclaim 1**:  Declaration that Claims 1 and 21 of the '293 patent are invalid.

**Counterclaim 2**:  Declaration that Claim 8 of the '557 patent is invalid.

**Counterclaim 3**:  Declaration that Pavemetrics does not infringe Claim 8 of the '557 patent.

(b) The elements required to establish Pavemetrics' claims are:

**Claim 1: Pavemetrics Does Not Infringe the Asserted Claims of the '293 Patent.**

Tetra Tech has alleged that Pavemetrics directly infringed Claims 1 and 21 of the '293 patent.  In addition, Tetra Tech has alleged that AID directly infringed the '293 patent, and Pavemetrics is liable for actively inducing direct infringement by AID.

Specifically, Tetra Tech has alleged that Pavemetrics directly infringed system claims of the '293 patent by ***selling*** LRAIL systems to two customers in the United States, CSX and AID.  *See* Morellas Infringement Report ¶¶609-611.

---

[1] ~~Pavemetrics contends that Tetra Tech should not be permitted to argue that LRAIL's elevation only algorithms infringe dependent Claims 2 and 4 for the reasons explained in Pavemetrics' MIL No. 3.  It has drafted its claims accordingly.  However, should the Court allow Tetra Tech to argue infringement of Claims 2 and 4 before the jury, then Pavemetrics would maintain its claim for a declaration that it does not infringe those claims and they are invalid.~~

Tetra Tech has *not* alleged that Pavemetrics directly infringed by making, using, offering for sale, or importing any LRAIL system in the U.S. *Id.*

Tetra Tech has accused a total of six LRAIL sales of infringement. *Id.*

| Accused Sales | Customer | Sale Invoiced |
|---------------|----------|---------------|
| Unit A | CSX | Oct. 23, 2020 |
| Unit B | CSX | Oct. 23, 2020 |
| Unit 1 | AID | Dec. 23, 2020 |
| Unit 2 | CSX | Apr. 21, 2021 |
| Unit 3 | CSX | Apr. 21, 2021 |
| Unit 4 | CSX | Apr. 21, 2021 |

This Court granted summary judgment that Pavemetrics sold Units A and B before Tetra Tech provided notice of possible infringement in January 2021 and, thus, are free of liability.  ECF 209 at 8-14.  As such, the only sales that remain for trial are Units 1-4.

Tetra Tech has alleged that three different LRAIL functionalities infringed the '293 patent claims: (1) inputting a Fake3D Image into a neural network ("Fake3D"); (2) inputting a Mixed Image into a neural network ("Mixed Image"); and (3) identifying features from elevation data only and overlaying those features onto a Fake3D Image ("Fake3D with Overlay").  Pavemetrics moved for summary judgment on all three functionalities and this Court granted its motion with respect to the third functionality (Fake3D with Overlay).  ECF 109; ECF 189 (Order at 9).  Thus, all that remain for trial are accused functionalities (1) Fake3D and (2) Mixed Image.

Once assembled, Units 1-4 included three different versions of software with different accused functionality, as shown below.  Units 2-3 never included accused functionality (1).  Unit 4 (or the latest software version) never included accused functionality (1) or (2).

-5-

| LRAIL Unit | Customer | Software Version | Accused functionality |
|---|---|---|---|
| Unit 1 | AID | 4.75 | (1) Fake3D only |
| | | 4.78 (road) | (1) Faked3D & (2) Mixed Image[2] |
| | | 4.82 | None |
| Unit 2 | CSX | 4.80 | (2) Mixed Image[3] |
| Unit 3 | CSX | 4.80 | (2) Mixed Image[3] |
| Unit 4 | CSX | 4.82 | None |

~~After the close of fact discovery, Pavemetrics sold another LRAIL to CSX in February 2022. Upon assembly in May 2022, that system included software version 4.82 with no accused functionality. Pavemetrics promptly supplemented its discovery responses and expert reports to disclose this information to Tetra Tech. Pavemetrics also offered for Tetra Tech to inspect version 4.82 of the source code and to depose Pavemetrics' Vice President of R&D and technical expert regarding that code. Tetra Tech declined and is seeking to exclude evidence of this seventh sale from the trial. That seventh sale is listed below as Unit C.~~

[2] Software based on source code version 4.78 was not configured to use either accused functionality (Fake3D or Mixed Image).

[3] Software based on source code version 4.80 was not configured to use the Mixed Image functionality. CSX's license to version 4.80 expired on March 31, 2022.

| LRAIL Unit | Customer | Software Version | Accused functionality |
|---|---|---|---|
| ~~Unit C~~ | ~~CSX~~ | ~~4.82~~ | ~~None~~ |

Tetra Tech has the burden to prove infringement of the '293 patent by a preponderance of the evidence.  If Tetra Tech does not do so, then Pavemetrics does not infringe the '293 patent.

To prove direct infringement of a system claim, Tetra Tech must prove by a preponderance of the evidence that Pavemetrics sold in the United States a product that meets all of the requirements of that system claim.  *See* Infringement B.3.1a, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

Pavemetrics is liable for active inducement of a claim only if Tetra Tech proves by a preponderance of the evidence that:

1. Any uses by AID directly infringe that claim;

2. Pavemetrics took action during the time the '293 patent was in force that was intended to cause and led to the infringing use by AID; and

3. Pavemetrics was aware of the '293 patent and knew that uses, if taken, would constitute infringement of that patent or that Pavemetrics believed there was a high probability that the uses by AID would infringe the '293 patent and Pavemetrics took deliberate steps to avoid learning of that infringement.

*See* Infringement B.3.2, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

For active inducement, if Pavemetrics was aware of the '293 patent, but believed that the uses carried out by AID would not infringe the '293 patent, Pavemetrics cannot be liable for active inducement or contributory infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015).

**Counterclaim 1:  The Asserted Claims of the '293 Patent are Invalid.**

Pavemetrics asserts that Claims 1 and 21 of the '293 patent are invalid based on anticipation, obviousness, and indefiniteness.  Pavemetrics relies on prior art to the '293 patent, including:

- The printed publication Samy Metari et al., *Automatic Track Inspection Using 3D Laser Profilers to Improve Rail Transit Asset Condition Assessment and State of Good Repair – A Preliminary Study*, TRB 93RD ANNUAL MEETING COMPENDIUM OF PAPERS (2014) ("UML-TRB2014"), published in 2014.

- The printed publication Alejandro García Lorente et al., *Detection of Range-Based Rail Gage and Missing Rail Fasteners: Use of High-Resolution Two- and Three-Dimensional Images*, 2448 TRANSP. RSCH. REC.: J. TRANSP. RSCH. BD. 125 (2014) ("EC-TRB2014"), published in 2014.

- The printed publication Xavier Gibert-Serra et al., *A Machine Vision System for Automated Joint Bar Inspection from a Moving Rail Vehicle*, Proc. 2007 ASME/IEEE JOINT RAIL CONF. & INTERNAL COMBUSTION ENGINE SPRING TECH. CONF. 289 (2007) ("Gibert-Serra"), published in 2007.

- The September 27, 2012 sale of Pavemetrics LCMS (with railway inspection capabilities) to University of Massachusetts-Lowell (UML) and the use of that device to inspect railway tracks ("UML Sale"), and 2012–2014 technical support and development consulting for UML on USDOT Contract No. RITARS-12-H-UML, including uses of code tested as proof of concept, for example, the "matlab_cracks.m" crack detection algorithm ("UML Support") (collectively, "UML Sale and Support").

Specifically, Pavemetrics asserts as follows:

- Claims 1 and 21 of the '293 patent would have been obvious in view of the UML Sale and Support and/or UML-TRB2014, either alone or in combination with EC-TRB2014.

- Claim 21 of the '293 patent would have been obvious in view of the combinations above and when combined with Gibert-Serra.

- Claims 1 and 21 of the '293 patent are indefinite under 35 U.S.C. § 112(b).  A skilled artisan would not have been reasonably certain about the meaning of the term "small 2D track section" in Claim 1.  The claims that depend from Claim 1, such as Claim 21, similarly fail to satisfy the definiteness requirement.[4]

For anticipation, Pavemetrics will prove by clear and convincing evidence that all of the requirements of a claim are present in a single piece of prior art.  The claim requirements may either be disclosed expressly or inherently such that a person having ordinary skill in the art in the technology of the invention, looking at that one reference, could make and use the claimed invention.  *See* Validity—The Claims B.4.3b-1, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

For obviousness, Pavemetrics will establish that a patent claim is invalid by proving, by clear and convincing evidence, that the claimed invention would have been obvious to persons having ordinary skill in the art at the time the patent was filed in the field of applied image processing or computer vision.  In determining whether a claimed invention is obvious, the trier of fact must

---

[4] ~~If Claim 2 were in the case, it would also be invalid as indefinite because it depends from Claim 1 and because a skilled artisan would not be reasonably certain about the meaning of the recited phrase "significant vertical gradient edges."  The claims that depend from Claim 2, such as Claim 4, would similarly be invalid for indefiniteness.~~

consider the level of ordinary skill in the art that someone would have had at the time Tetra Tech's patent application was filed, the scope and content of the prior art, and any difference between the prior art at the claimed invention. The trier of fact should also consider any objective evidence that may shed light on the obviousness or not of the claimed invention. *See* Validity—The Claims B.4.3c, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

For indefiniteness, Pavemetrics will establish by clear and convincing evidence that a patent claim is indefinite because the language of the patent claim, when read in view of the specification and prosecution history, "fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014).

**Counterclaim 2:  The Asserted Claim of the '557 Patent is Invalid.**

Pavemetrics asserts that Claim 8 of the '557 patent is invalid based on anticipation and obviousness. Specifically, Pavemetrics asserts as follows:

- Claim 8 would have been obvious in view of the UML Sale and Support and/or UML-TRB2014.
- Claim 8 is anticipated by or would have been obvious in view of Tetra Tech's prior use, sale, offer for sale of Tetra Tech's 3D tie assessment system ("Tetra Tech's Prior Use").

The elements required to establish invalidity based on anticipation and obviousness of the '557 patent are the same as the elements required to establish invalidity based on anticipation and obviousness with respect to the '293 patent, which are set forth above in Counterclaim 1.

**Counterclaim 3:  Pavemetrics Does Not Infringe the Asserted Claim of the '557 Patent.**

Tetra Tech has alleged that AID directly infringed Claim 8 of the '557 patent, and Pavemetrics is liable for actively inducing or contributing to that direct infringement by AID.

Tetra Tech has the burden to prove infringement of the '557 patent by a preponderance of the evidence. Because Tetra Tech cannot do so, Pavemetrics does not infringe the '557 patent. The elements required to establish active inducement of the '557 patent are the same as the elements required to establish that claim with respect to the '293 patent, which are set forth above in Claim 1.

Pavemetrics is liable for contributory infringement of a claim if Tetra Tech proves by a preponderance of the evidence:

1. Pavemetrics sold within the United States a component of a product, material, or apparatus for use in a process, during the time the '557 patent is in force;

2. The component, material, or apparatus is not a staple article or commodity of commerce suitable for substantial noninfringing use;

3. The component, material, or apparatus constitutes a material part of the invention;

4. At the time of the sale, Pavemetrics was aware of the '557 patent and knew that the component, material, or apparatus is especially made or adapted for use as an infringement of the claim; and

5. AID used the component, material, or apparatus to directly infringe a claim.

*See* Infringement B.3.3, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

For both active inducement and contributory infringement, if Pavemetrics was aware of the '557 patent, but believed that the use of the component, material, or apparatus would not infringe the '557 patent, Pavemetrics cannot be liable for active inducement or contributory infringement. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639, 642 (2015).

(c) The key evidence Pavemetrics relies on for each claim is:

**Evidence in Support of Pavemetrics' Claim 1:**

-11-

Pavemetrics will present evidence through documents and live testimony of Jean-François Hébert and John Laurent relating to Pavemetrics' design, development, and sales of the LRAIL system, including that Pavemetrics sells and ships the LRAIL system as an unassembled kit.  Pavemetrics will also present evidence through documents and live testimony of Jean-François Hébert and John Laurent regarding the functionality of each version of LRAIL software provided to CSX and AID.

Pavemetrics will present evidence through deposition testimony of Brad Spencer of CSX that CSX has never used any version of LRAIL to process any data, that CSX has never used Units 2-4 to collect any data, and that a primary reason that CSX purchased LRAIL was its lower price relative to other products that CSX considered.  Pavemetrics will present evidence through deposition testimony of Ali Hafiz regarding AID's purchase and use of Unit 1.

Pavemetrics will present evidence through documents and live testimony of Richard Habel that Pavemetrics was not aware of the asserted patents before receiving notice letters from Tetra Tech and, at all times, believed it does not infringe the asserted patents.

Pavemetrics will present evidence through live testimony of its expert witness, Dr. David Frakes, showing that Pavemetrics does not infringe any of the asserted claims.

**Evidence in Support of Pavemetrics' Counterclaim 1:**

Pavemetrics will present evidence of prior art to the '293 patent, including UML Sale and Support, UML-TRB2014, EC-TRB2014, and Gibert-Serra. Pavemetrics also intends to present evidence of prior art that reflects the state of the art or shows how one of ordinary skill would be motivated to combine various prior art references.

Pavemetrics will present evidence through documents and live testimony of Jean-François Hébert and John Laurent relating to Pavemetrics' own prior art,

-12-

including UML Sale and Support, UML-TRB2014, EC-TRB2014.

Pavemetrics may present live and/or deposition testimony of Darel Mesher, Gary Keyes, William Larson, and/or Bernie Teufele regarding the scope and content of the prior art to the patents-in-suit and lack of secondary considerations of non-obviousness.

Pavemetrics will present evidence through the live testimony of Dr. David Frakes regarding opinions of invalidity of the '293 patent, the level of ordinary skill in the art, the scope and content of the prior art to the '293 patent, motivations to combine the prior art, materiality of the prior art, and lack of secondary considerations for nonobviousness.

**Evidence in Support of Pavemetrics' Counterclaim 2:**

Pavemetrics will present evidence of prior art to the '557 patent, including UML Sale and Support, UML-TRB2014, and Tetra Tech's Prior Use. Pavemetrics also intends to present evidence of prior art that reflects the state of the art or shows motivation to combine.

Pavemetrics will present evidence through documents and live testimony of Jean-François Hébert and John Laurent relating to Pavemetrics' own prior art, including UML Sale and Support and UML-TRB2014.

Pavemetrics will present evidence through documents and live and/or deposition testimony of Darel Mesher relating to Tetra Tech's prior art, including Tetra Tech's Prior Use.  Pavemetrics may present live testimony of Darel Mesher, Gary Keyes, William Larson, and/or Bernie Teufele regarding the scope and content of the prior art to the patents-in-suit and lack of secondary considerations of non-obviousness.

Pavemetrics will present evidence through the live testimony of Dr. David Frakes regarding opinions of invalidity of the '557 patent, the level of ordinary skill in the art, the scope and content of the prior art to the '557 patent, motivations

to combine the prior art, materiality of the prior art, and lack of secondary considerations for nonobviousness.

### Evidence in Support of Pavemetrics' Counterclaim 3:

Pavemetrics will present evidence through documents and live testimony of Jean-François Hébert and John Laurent relating to Pavemetrics' design, development, and sales of the LRAIL system.   Pavemetrics will also present evidence through documents and live testimony of Jean-François Hébert and John Laurent regarding the functionality of each version of LRAIL software provided to CSX and AID.

Pavemetrics will present evidence through deposition testimony of Brad Spencer of CSX that CSX has never used any version of LRAIL to process any data, that CSX has never used Units 2-4 to collect any data, and that the primary reason that CSX purchased LRAIL was its lower price relative to other products that CSX considered.   Pavemetrics will present evidence through deposition testimony of Ali Hafiz regarding AID's purchase and use of Unit 1.

Pavemetrics will present evidence through documents and live testimony of Richard Habel that Pavemetrics was not aware of the asserted patents prior to receiving notice letters from Tetra Tech and, at all times, believed it does not infringe the '557 patent.

Pavemetrics will present evidence through live testimony of Dr. David Frakes showing that Pavemetrics does not infringe Claim 8 of the '557 patent.

### Defendant's Counterclaims:

Tetra Tech plans to pursue its claims that Pavemetrics infringes, directly and/or indirectly, Claims 1, 2, 4 and 21 of the '293 patent and Claim 8 of the '557 patent (collectively, the "Asserted Claims").

(a) Tetra Tech plans to pursue the following counterclaims:

**Counterclaim 1**: Pavemetrics' direct infringement of the '293 patent.

**Counterclaim 2**: Pavemetrics' induced infringement of the Asserted Patents.

**Counterclaim 3**: Pavemetrics' contributory infringement of the Asserted Patents.

**Counterclaim 4**: Pavemetrics' willful infringement of the Asserted Patents.

**Tetra Tech's Damages Claims**: If infringement is established, Tetra Tech is entitled to lost profits or no less than a reasonable royalty under 35 U.S.C. § 284.

**Tetra Tech's Claim for Injunctive Relief**: Tetra Tech seeks injunctive relief under 35 U.S.C. § 283 to prohibit continued infringement of the Asserted Patents.

(b) The elements required to establish Tetra Tech's counterclaims are:

**Counterclaim 1: Direct Infringement by Pavemetrics.**

Pavemetrics directly infringes the '293 patent. Specifically, Pavemetrics directly infringes Claims 1, 2, 4, and 21 of the '293 patent by offering for sale or selling in the United States Pavemetrics' LRAIL.

Tetra Tech will prove by a preponderance of the evidence that Pavemetrics has infringed Claims 1, 2, 4, and 21, of the '293 patent by establishing that Pavemetrics offered to sell and sold the accused LRAILs within the United States without the authority of Tetra Tech. 35 U.S.C. § 271(a). Tetra Tech will also prove by a preponderance of the evidence that the accused LRAILs meet all of the elements of each of Claims 1, 2, 4, and 21 of the '293 patent, as construed by the Court. *See* Fed. Cir. Model Patent B.3.la. Tetra Tech can prove infringement by both direct and circumstantial evidence. *Broadcom Corp. v. Qualcomm, Inc.*, 543 F.3d 683, 700 (Fed. Cir. 2008).

///

**Counterclaim 2**: **Induced Infringement by Pavemetrics**

Tetra Tech alleges that Pavemetrics induced its customers to infringe the Asserted Patents. 35 U.S.C. § 271(b). Tetra Tech will prove by a preponderance of the evidence that:

1. Pavemetrics sold the accused LRAILs to customers, who used within the United States the accused LRAILs to directly infringe at least one of the Asserted Claims;

2. Pavemetrics intentionally took action that actually led to direct infringement by Pavemetrics' customers; and

3. Pavemetrics was aware of the Asserted Patents and knew that the acts it was causing would constitute infringement of the Asserted Patents, or that Pavemetrics believed there was a high probability that the acts by Pavemetrics' customers would infringe an Asserted Patent and it took deliberate steps to avoid learning of that infringement, in other words, willfully blinded itself to the infringing nature of the direct infringer's acts.

*See* N.D. Cal. Model Patent 3.7. Tetra Tech can prove infringement by both direct and circumstantial evidence. *Broadcom*, 543 F.3d at 700.

**Counterclaim 3**: **Contributory Infringement by Pavemetrics**

Tetra Tech alleges that Pavemetrics contributed to infringement of the Asserted Patents by Pavemetrics' customers. 35 U.S.C. § 271(c). Tetra Tech will prove by a preponderance of the evidence:

1. Pavemetrics' customers directly infringed at least one of the Asserted Claims;

2. Pavemetrics sold or offered for sale within the United States a component of the accused LRAIL that infringes claims 1, 2, 4, and 21 of the '293 patent or for use in performing the method of claim 8 of the '557 patent;

3. The component is not a staple article or commodity of commerce suitable for substantial noninfringing use;

4. The component constitutes a material part of the claimed invention; and

5. Pavemetrics knew, or was willfully blinded itself, that the component was especially made or adapted for use in the accused LRAILs that infringe claims 1, 2, 4, and 21 of the '293 patent or to perform the method of claim 8 of the '557 patent.

*See* 2019 AIPLA Model Patent Jury Instructions 3.10. Tetra Tech can prove infringement by both direct and circumstantial evidence. *Broadcom*, 543 F.3d at 700.

**Counterclaim 4**: **Willful Infringement by Pavemetrics**

Tetra Tech alleges that Pavemetrics willfully infringed the Asserted Claims of the '293 and '557 patents.

Tetra Tech will prove by a preponderance of the evidence that:

1. The Asserted Patents are valid and were infringed by Pavemetrics;

2. Pavemetrics acted despite a high likelihood that its actions would constitute infringement of at least one valid and enforceable patent claim;

3. Pavemetrics actually knew or was reckless of the fact that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent claim because of the following considerations, which include, but are not limited to:

    a. Pavemetrics did not act in accordance with the standards of behavior in the industry;

    b. Pavemetrics did not have a reasonable basis to believe that it did not infringe the Asserted Patents or that the Asserted

Patents were invalid, nor did Pavemetrics have a reasonable defense to infringement;

    c. Pavemetrics did not make a good-faith effort to avoid infringing the Asserted Patents;

    d. Pavemetrics intentionally copied Tetra Tech's patented technology; and

    e. Pavemetrics tried to cover up its infringement.

See 35 U.S.C. § 284; N.D. Cal. Model Patent Jury Instruction B.3.8; Fed. Cir. Model Patent B.3.10.

**Tetra Tech's Damages Claims**:

If infringement is established, Tetra Tech is entitled to lost profits or no less than a reasonable royalty under 35 U.S.C. § 284.

Tetra Tech will prove by a preponderance of the evidence that it is entitled to lost profits by establishing that "but for" Pavemetrics' infringement, there is a reasonable probability that Tetra Tech would have made sales that Pavemetrics made of the infringing LRAIL. See Fed. Cir. Model Patent B.5.1; Fed. Cir. Model Patent B.5.2. This can be established by demonstrating that:

    1. There was demand for the patented product;

    2. There were no available, acceptable, noninfringing substitute products;

    3. Tetra Tech had the manufacturing and marketing capacity to make any infringing sales actually made by Pavemetrics and for which Tetra Tech seeks an award of lost profits—in other words, that Tetra Tech was capable of satisfying the demand;

    4. The amount of profit that Tetra Tech would have made if Pavemetrics had not infringed.

See Fed. Cir. Model Patent B.5.2; Fed. Cir. Model Patent B.5.2. Tetra Tech need not prove the amount of lost profits with mathematical precision but only with

reasonable certainty. *See* Fed. Cir. Model Patent B.5.1.

If Tetra Tech does not prove its claim for lost profits or has proved its claim for lost profits for only a portion of the infringing sales, then Tetra Tech should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages. *See* Fed. Cir. Model Patent B.5.5.

A reasonable royalty is the amount of royalty payment that Tetra Tech and Pavemetrics would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. *See* Fed. Cir. Model Patent B.5.5. Tetra Tech will prove by a preponderance of the evidence that it is entitled to a reasonable royalty based on the following factors, in addition to any other evidence on the economic value of the Asserted Patents:

1.     The royalties received for the licensing of the Asserted Patents, proving or tending to prove an established royalty (and terms thereof);

2.     The rates paid by licensees for the use of other patents comparable to the Asserted Patents;

3.     The nature and scope of the license, as exclusive or nonexclusive, or as restricted or unrestricted in terms of territory or with respect to whom the manufactured product may be sold for the Asserted Patents;

4.     Tetra Tech's established policy and marketing program to maintain its patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly;

5.     The commercial relationship between Tetra Tech and its licensee(s), such as whether they are competitors in the same territory in the same line of business, or whether they are an inventor or promoter;

6.   The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to Tetra Tech;

7.   The duration of the Asserted Patents and the term of the license;

8.   The established profitability of the products made under the Asserted Patents, their commercial success, and their current popularity;

9.   The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results;

10.  The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by Tetra Tech, and the benefits to those who have used the invention.

11.  The extent to which Pavemetrics has made use of the invention and any evidence probative of the value of that use;

12.  The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions;

13.  The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by Pavemetrics;

14.  The opinion and testimony of qualified experts;

15.  The amount that Tetra Tech and Pavemetrics would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular

article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

*See* 2019 AIPLA Model Jury Instructions 10.2.5.3. Tetra Tech need not prove the amount of reasonable royalties with mathematical precision but only with reasonable certainty. *See* Fed. Cir. Model Patent B.5.1.

**Tetra Tech's Claim for Injunctive Relief**:

Tetra Tech seeks injunctive relief under 35 U.S.C. § 283 to prohibit continued infringement of the Asserted Patents.

Whether to grant injunctive relief rests within the equitable discretion of the Court. To establish that Tetra Tech is entitled to a permanent injunction, Tetra Tech will demonstrate that:

1.    Tetra Tech has suffered an irreparable injury;

2.    Remedies available at law are inadequate to compensate for that injury;

3.    Considering the balance of hardships between Tetra Tech and Pavemetrics, remedy in equity is warranted; and

4.    The public interest would not be disserved by a permanent injunction.

*See eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006)

(c) The key evidence Tetra Tech relies on for each claim is:

**Counterclaim 1: Direct Infringement by Pavemetrics**

1.    The '293 patent;

2.    The Court's claim construction of the disputed claims of the '293 patent;

3.    Evidence of Pavemetrics' offer for sale and sale of the accused LRAILs within the United States, including, but not limited to,

Pavemetrics' admissions, communications, invoices, sales records, and sales contracts;

4.  Evidence of Pavemetrics' marketing of the accused LRAILs;

5.  Pavemetrics' source code and output files for the accused LRAILs;

6.  Product specifications for the accused LRAILs, including, but not limited to, LRAIL user and operator manuals, LRAIL installation and assembly instructions and manuals, LRAIL real time acquisition and processing software manuals, LRAIL data acquisition user manuals, LRAIL analyzer library user manuals, LRAIL technical reports, pictures, or documents, and LRAIL presentations on commissioning steps and calibration runs;

7.  Pavemetrics' technical papers, describing the accused LRAILs or its features;

8.  Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

9.  Testimony and declarations of Mr. Laurent;

10. Testimony of Mr. Talbot;

11.  Testimony of Mr. Nguyen;

12. Testimony of Mr. Fox-Ivey;

13. Testimony of Mr. Hafiz;

14. Testimony of Mr. Spencer;

15. Testimony and declarations of Dr. Hébert; and

16. Testimony of Mr. Habel.

**Counterclaim 2: Induced Infringement by Pavemetrics**

1.  Evidence of direct infringement of Claims 1, 2, 4, and 21 of the '293 patent, including evidence establishing that the accused LRAILs meet the elements of the asserted claims, as described above;

2.  Evidence of direct infringement of Claim 8 of the '557 patent,

including evidence establishing that Pavemetrics' customers used the accused LRAILs in a manner that meets the elements of the asserted claim;

3.   Evidence showing Pavemetrics had knowledge of the Asserted Patents, including letters from Tetra Tech's counsel notifying Pavemetrics of the '293 patent and its infringement claims on January 5, 2021, and notifying Pavemetrics of the '557 patent and its infringement claims on July 22, 2021;

4.   Evidence demonstrating that since at least 2015, Pavemetrics has been actively tracking and monitoring Tetra Tech's business activities, including rail inspection efforts, Tetra Tech's 3DTAS product, Tetra Tech's litigation activities, and Tetra Tech's intellectual property, including its patents;

5.   Evidence demonstrating that at least as early as December 2020, Pavemetrics was on notice of infringement risks concerning Tetra Tech's patents;

6.   Evidence demonstrating that at least as early as February 2021, Pavemetrics was notified of Tetra Tech's identification of its patents on Tetra Tech's website, which listed, among other patents, the '557 patent;

7.   Evidence showing Pavemetrics sold the accused LRAIL to customers;

8.   Evidence showing Pavemetrics' customers using the accused LRAILs within the United States in a manner that directly infringes the Asserted Patents, including, but not limited to, testimony and documents concerning data acquisition files and data processing files generated by the accused LRAILs;

9.   Evidence showing Pavemetrics' customers exchanging with

-23-

Pavemetrics information generated by the accused LRAILs and its components, including data acquisition files and data processing files, and benefiting from such exchanges;

10. Evidence showing Pavemetrics provided instructions to its customer to assemble, install, and use the accused LRAILs in a manner that directly infringes the Asserted Patents, including, but not limited to, LRAIL user and operator manuals, LRAIL installation and assembly instructions and manuals, LRAIL real time acquisition and processing software manuals, LRAIL data acquisition user manuals, LRAIL analyzer library user manuals, LRAIL technical reports, pictures, or documents, and LRAIL presentations on commissioning steps and calibration runs;

11. Evidence of Pavemetrics' ongoing technical support, training, and troubleshooting provided to its customers on the use of the accused LRAILs;

12. Product specifications for the accused LRAILs;

13. Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

14. Testimony of Dr. Mesher;

15. Testimony of Mr. Larson;

16. Testimony and declarations of Mr. Laurent;

17. Testimony of Mr. Talbot;

18.  Testimony of Mr. Nguyen;

19. Testimony of Mr. Fox-Ivey;

20. Testimony of Mr. Hafiz;

21. Testimony of Mr. Spencer;

22. Testimony and declarations of Dr. Hébert; and

23. Testimony of Mr. Habel.

-24-

**Counterclaim 3: Contributory Infringement by Pavemetrics**

1.  Evidence of direct infringement of Claims 1, 2, 4, and 21 of the '293 patent, including evidence establishing that the accused LRAILs meet the elements of the asserted claims, as described above;

2.  Evidence of direct infringement of Claim 8 of the '557 patent, including evidence establishing that Pavemetrics' customers used the accused LRAILs in a manner that meets the elements of the asserted claim;

3.  Evidence of induced infringement of the Asserted Claims, as described above;

4.  Evidence of direct infringement of the Asserted Claims by Pavemetrics' customers, as described above;

5.  Evidence that Pavemetrics sold or offered for sale within the United States hardware and software components of the accused LRAIL;

6.  Evidence that the hardware and software components of the accused LRAIL sold or offered for sale within the United States by Pavemetrics have no use other than as parts of the accused LRAILs that infringe Claims 1, 2, 4, and 21 of the '293 patent;

7.  Evidence that the hardware and software components sold or offered for sale within the United States by Pavemetrics have no use other than in performing the method of claim 8 of the '557 patent;

8.  Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

9.  Testimony of Dr. Mesher;

10. Testimony of Mr. Larson;

11. Testimony and declarations of Mr. Laurent;

12. Testimony of Mr. Talbot;

13. Testimony of Mr. Nguyen;

-25-

14.  Testimony of Mr. Fox-Ivey;

15.  Testimony of Mr. Hafiz;

16.  Testimony of Mr. Spencer;

17.  Testimony and declarations of Dr. Hébert; and

18.  Testimony of Mr. Habel.

**Counterclaim 4: Willful Infringement by Pavemetrics**

1.  Evidence showing Pavemetrics had knowledge of the Asserted Patents, as described above;

2.  Evidence of direct infringement, as described above;

3.  Evidence of indirect infringement, as described above;

4.  Evidence demonstrating that Pavemetrics deleted specific algorithms from the LRAIL source code to avoid disputes about features in light of this lawsuit;

5.  Evidence showing that Pavemetrics attempted to remove an infringing functionality from the LRAIL software only to add another functionality that also infringed at least one Asserted Claim;

6.  Evidence showing Pavemetrics deliberately hiding the direct infringement of one of its customers;

7.  Evidence showing that Pavemetrics acted despite a high likelihood that its actions would constitute infringement of the Asserted Claims; and

8.  Evidence showing Pavemetrics knew or was reckless of the fact that its actions constituted an unjustifiably high risk of infringement of the Asserted Claims.

**Tetra Tech's Damages Claims**

1.  Evidence of sales of the Accused Products;

2.  Evidence of sales of Tetra Tech's 3DTAS;

3.  Evidence showing the demand and industry need for the patented

product;

4.   Evidence of costs and profitability of the Accused Products;

5.   Evidence of costs and profitability of Tetra Tech's 3DTAS;

6.   Evidence of lack of acceptable noninfringing alternatives;

7.   Evidence that Tetra Tech had the manufacturing and marketing capacity to satisfy demand;

8.   Evidence supporting a reasonable royalty, including

    a.   evidence that the parties are competitors in the same territory in the same line of business;

    b.   evidence of the effect of selling the patented specialty in promoting sales of other products of the licensee;

    c.   evidence regarding the duration of the patent and the term of the license;

    d.   evidence regarding the established profitability of the product made under the patent, its commercial success, and its current popularity, as well as the extent to which Pavemetrics has made use of the invention and any evidence probative of the value of that use;

    e.   evidence regarding the utility and advantages of the patented property over the old modes or devices and the nature of the patented invention, the character of the commercial embodiment, and the benefits to those who have used the invention;

    f.   evidence regarding the portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by Pavemetrics;

g.  evidence regarding the amount that a licensor and licensee would have agreed upon if both had been reasonably and voluntarily trying to reach an agreement;

9. Testimony of Mr. Schoettelkotte and exhibits to Mr. Schoettelkotte's expert report;

10. Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

11. Testimony of Mr. Teufele;

12. Testimony of Mr. Keyes;

13. Testimony of Dr. Mesher;

14. Testimony of Mr. Larson; and

15. Testimony of Mr. Spencer.

**Tetra Tech's Claim for Injunctive Relief**

1. Evidence of infringement and irreparable harm, including the nature of the automated railway track assessment market, assessment of damages, Tetra Tech's policy not to license to competitors, Tetra Tech's goodwill and reputation, price erosion, and other factors;

2. Testimony of Mr. Schoettelkotte and exhibits to Mr. Schoettelkotte's expert report;

3. Testimony of Dr. Morellas and exhibits to Dr. Morellas's expert report;

4. Testimony of Mr. Teufele;

5. Testimony of Mr. Keyes;

6. Testimony of Dr. Mesher; and

7. Testimony of Mr. Larson.

**<u>Plaintiff's Affirmative Defenses:</u>**

(a) In opposition to Tetra Tech's patent infringement claims, Pavemetrics plans to pursue the following affirmative defenses:

-28-

**Affirmative Defense 1 (Invalidity)**: Claims 1 and 21 of the '293 patent are invalid. Claim 8 of the '557 patent is invalid.

**Affirmative Defense 4 (Estoppel)**: Tetra Tech's claims are barred by equitable estoppel. **<u>Plaintiff indicated at the final pretrial conference that it will not pursue the estoppel defense.</u>**

**Affirmative Defense 6 (Failure to Give Notice)**: Pavemetrics is not liable to Tetra Tech for any sales before Pavemetrics received actual notice of the '293 patent.

Pavemetrics has also asserted the following affirmative defenses but does not intend to pursue them at trial because they have been resolved or are otherwise no longer at issue, as explained below.  However, Pavemetrics reserves its right to assert either defense at trial if Tetra Tech is allowed to present testimony or make arguments relating to either defense.

**Affirmative Defense 3 (Prosecution History Estoppel)**: As a result of prosecution of one or more patents or patent applications, Tetra Tech is estopped from seeking a claim scope through claim construction or the doctrine of equivalents that would encompass any of Pavemetrics' products.

Tetra Tech has abandoned any allegations relating to infringement under the doctrine of equivalents. Tetra Tech's infringement contentions and its expert report have no allegations regarding infringement under the doctrine of equivalents. Because Tetra Tech's does not assert infringement under the doctrine of equivalents, prosecution history estoppel no longer applies. Thus, Pavemetrics does not intend to present evidence at trial relating to prosecution history estoppel.

**Affirmative Defense 7 (Government Contractor's Defense)**: Tetra Tech's claims for relief are barred, in part, under 28 U.S.C. § 1498 because Pavemetrics' products are provided under contract to the U.S. Government.

On July 6, 2022, the Court granted Pavemetrics' motion for summary judgment relating to governmental immunity as to immunity from suit for CSX

importing data processed by Pavemetrics on July 21, 2021 and October 7 and 8, 2021. ECF 209 at 18-20, 25. Tetra Tech has not identified any other importations of data processed by Pavemetrics as accused of infringement. Thus, the Court resolved this defense in Pavemetrics' favor and Pavemetrics does not intend to present evidence at trial relating to this defense.

(b) The elements required to establish Defendant's affirmative defenses are:

**Affirmative Defense 1: The Asserted Claims Are Invalid:**

The elements required to establish invalidity of the '293 patent are set forth above with respect to Pavemetrics' Counterclaim 1. The elements required to establish invalidity of the '557 patent are set forth above with respect to Pavemetrics' Counterclaim 2.

**Affirmative Defense 4: Tetra Tech Is Estopped from Raising Its Patent Infringement Claims:[5]**

To establish equitable estoppel, Pavemetrics will show by preponderance of the evidence that: (1) Tetra Tech, through misleading conduct, led Pavemetrics to reasonably infer that Tetra Tech does not intend to enforce the '293 or '557 patent against Pavemetrics; (2) Pavemetrics relied on Tetra Tech's conduct; and (3) due to its reliance, Pavemetrics will be materially prejudiced if Tetra Tech is allowed to proceed with its claims. *A.C. Aukerman v. R.L. Chaides Constr.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc).

**Affirmative Defense 6: Tetra Tech Cannot Recover Damages Before Actual Notice of Alleged Infringement:**

There is no dispute that Tetra Tech never marked relevant products with the patent number for the '293 patent. ECF 182 (Undisputed Facts 4, 5); ECF 209

---

[5] **Plaintiff indicated at the final pretrial conference it will not pursue this defense at trial.**

at 9. Thus, Tetra Tech cannot recover damages before it provided Pavemetrics with actual notice of the '293 patent and the product alleged to infringe, which Tetra Tech did in a letter to Pavemetrics dated January 5, 2021. *Id.* (Undisputed Fact 3); ECF 209 at 9.

Tetra Tech has the burden of establishing by a preponderance of the evidence that it communicated to Pavemetrics a specific charge of infringement of the '293 patent by a specific accused product or device and Pavemetrics continued to infringe thereafter. *See* Patent Damages B.5.10, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020); 35 U.S.C. § 287.

On July 6, 2022, the Court granted Pavemetrics' motion for summary judgment relating to no damages for the two 2020 CSX sales (Units A and B). ECF 209 at 8-14, 25. Pavemetrics intends to show at trial that the 2020 AID sale (Unit 1) was also before Tetra Tech provided actual notice of possible infringement on January 5, 2021.

(c) The key evidence Pavemetrics relies on for each affirmative defense is:

**Evidence in Support of Pavemetrics' Affirmative Defense 1**

Evidence Pavemetrics intends to present in support of Affirmative Defense 1 is described above with respect to Pavemetrics' Counterclaims 2 and 3.

**Evidence in Support of Pavemetrics' Affirmative Defense 4**

Pavemetrics will present evidence of Tetra Tech's knowledge of Pavemetrics and its LRAIL, including communications between Tetra Tech and Pavemetrics. Pavemetrics will present evidence of Tetra Tech continuing to do business with Pavemetrics and encouraging sales of LRAIL systems, even after the patents-in-suit issued, including communications between Tetra Tech and Pavemetrics in June 2020. Pavemetrics will present live testimony of John Laurent and Richard Habel regarding Tetra Tech's knowledge of Pavemetrics and its LRAIL, Tetra Tech's correspondence with Pavemetrics in June 2020, and Pavemetrics' reliance on and prejudice from Tetra Tech's actions. Pavemetrics

also intends to present live and/or deposition testimony from Darel Mesher and Robert Olenoski regarding Tetra Tech's misleading conduct.

**Evidence in Support of Pavemetrics' Affirmative Defense 6**

Because the Court granted Pavemetrics' motion for summary judgment relating to no damages for the two 2020 CSX sales (ECF 209 at 8-14, 25), Pavemetrics does not intend to present evidence at trial relating to this defense for those two CSX sales.

With respect to the accused sale to AID (Unit 1), Pavemetrics will present evidence that the accused LRAIL sale to AID occurred before January 5, 2021, including through documents, including invoices to AID and emails with AID, live testimony of Richard Habel and John Laurent, and deposition testimony of Ali Hafiz.

**8.   REMAINING TRIABLE ISSUES**

In view of the admitted facts and the elements required to establish the claims, counterclaims, and affirmative defenses, the following issues remain to be tried:

Pavemetrics' Position:

(1) whether Pavemetrics infringed Claims 1 and 21 of the '293 patent by selling LRAIL system Unit 1 to AID and Units 2-4 to CSX;

(2) whether Pavemetrics induced AID to use LRAIL system Unit 1 in a manner that infringes Claims 1 and 21 of the '293 patent;

(3) whether Pavemetrics induced or contributed to AID using LRAIL system Unit 1 in a manner that infringes Claim 8 of the '557 patent;

(4) whether Pavemetrics willfully infringed any of the asserted claims of the '293 and '557 patents;

(5) whether the prior art shows the obviousness of Claims 1 and 21 of the '293 patent;

(6) whether the prior art anticipates Claim 8 of the '557 patent;

(7) whether the prior art shows the obviousness of Claim 8 of the '557 patent;

(8) whether Claims 1 and 21 of the '293 patent are invalid for indefiniteness;

(9) whether Tetra Tech has shown it can recover damages for the accused sale to AID that was invoiced and paid before January 5, 2021; and

(10) to the extent Tetra Tech proves patent infringement and no defenses apply, the amount of damages due to Tetra Tech for the sales found to infringe.

<u>Tetra Tech's Position</u>:

(1) whether Pavemetrics directly infringed Claims 1, 2, 4, and 21 of the '293 patent;

(2) whether Pavemetrics induced infringement of the Asserted Claims;

(3) whether Pavemetrics contributorily infringed the Asserted Claims;

(4) if Pavemetrics is found to infringe, whether Pavemetrics' infringement was willful;

(5) whether claims 1, 2, 4, and 21 of the '293 patent would have been obvious to a person of ordinary skill in the art in view of the alleged prior art;

(6) whether claim 8 of the '557 patent was anticipated by the alleged prior art;

(7) whether claim 8 of the '557 patent would have been obvious to a person of ordinary skill in the art in view of the alleged prior art;

(8) if Pavemetrics is found to infringe, the amount of damages due to Tetra Tech for the infringement.

9. **<u>DISCOVERY</u>**

All discovery is complete.[6]

_____

[6] Tetra Tech maintains its objections to the untimely produced materials

-33-

## 10.   **DISCLOSURES AND EXHIBIT LIST**

All disclosures under Fed. R. Civ. P. 26(a)(3) have been made.

The joint exhibit list of the parties has been filed under separate cover, ECF 237, as required by L.R. 16-6.1 ("Joint Exhibit List").  The Joint Exhibit List contains objections, including the grounds for such objections, to the admissibility of certain exhibits.  All exhibits offered without objection will be admitted at trial if, and only if, used in evidence by either party.

The parties agree to the following stipulations regarding authenticity of exhibits and copies of documents:

**Authenticity of Exhibits** – The parties stipulate to the authenticity of each trial exhibit that is a document or thing produced by a party and on its face appears to be generated by the party, including by current or former employees, officers, or agents of the producing party, subject to the right of the party against whom such document or thing is offered to adduce evidence to the contrary. Notwithstanding this stipulation, each party preserves its right to object to the document or thing on any ground other than authenticity.

**Copies of Documents** – Complete legible copies of documents may be offered and received in evidence to the same extent as an original unless a genuine question is raised as to the authenticity of the original, or in the circumstances it would be unfair to admit the copy in lieu of the original.

Legible copies of the '293 patent and the '557 patent and the contents of their U.S. Patent and Trademark Office file histories may be offered and received in evidence in lieu of certified copies thereof, subject to all other objections that might be made to the admissibility of certified copies.

---

and evidence set forth in its Motion *in Limine* No. 4 and footnote 4 to this paper. Pavemetrics disagrees with Tetra Tech's characterizations and opposes Tetra Tech's Motion *in Limine* No. 4. **The Court addresses this issue in a separate order.**

**11.   <u>WITNESS LISTS</u>**

Witness lists have been filed with the Court.  ECF 239, 247.  Only the witnesses identified on the lists will be permitted to testify (other than solely for impeachment).

Due to health issues, Pavemetrics respectfully requests that Richard Habel, CEO of Pavemetrics, be permitted to testify remotely by video.  Tetra Tech does not oppose.  The Court approves Pavemetrics' request.  Mr. Habel will be permitted to testify at trial remotely by video.

Each party intending to present evidence by way of deposition testimony will mark such depositions in accordance with L.R. 16-2.7.  The parties anticipate the following depositions will be lodged with the Clerk, as required by L.R. 32-1:

- Robert Olenoski – January 14, 2022.
- Ali Hafiz – January 18, 2022.
- Darel Mesher – January 19, 2022.
- Gary Keyes – January 20, 2022.
- Bradford Spencer – January 20, 2022.
- Richard Fox-Ivey – December 17, 2021
- Richard Habel – December 29, 2021
- Jean-Francois Hebert – January 7, 2022
- John Laurent – December 21, 2021
- Thanh Nguyen (if necessary) – January 5, 2022
- Mario Talbot (if necessary) – January 6, 2022

The parties exchanged initial deposition designations on July 14, 2022.  The parties have a dispute regarding Tetra Tech's initial deposition designations.  The parties' respective positions are explained below.

~~Pavemetrics' Position:  L.R. 16-2.7 provides, in relevant part, as follows:~~ ~~"Each party intending to present any evidence by way of deposition shall: (a)~~ ***Identify*** ~~on the original transcript~~ ***the testimony the party intends to offer*** ~~by~~

bracketing the questions and answers in the margin."  (Emphases added.)  Tetra
Tech has not done so.

On July 11, 2022, Tetra Tech filed its Trial Witness List.  ECF 239.  Tetra
Tech identified eight witnesses for which it may present evidence by way of
deposition.  *Id.*  (Nos. 7-14).  Tetra Tech represented that the total time for
direction examination of those eight witnesses will be *1 hour, 30 minutes*.

On July 14, 2022, Tetra Tech served its initial deposition designations.  For
those same eight witnesses, Tetra Tech designated deposition testimony totaling
*more than 19 hours*, as shown below:

| Witness | Tetra Tech's Time for Direct Exam (ECF 239) | Tetra Tech's Time based on Initial Depo Designations |
|---|---|---|
| Jean-François Hébert | 15 minutes | 3 hours, 22 minutes |
| Richard Habel | 15 minutes | 2 hours, 9 minutes |
| John Laurent | 15 minutes | 2 hours, 31 minutes |
| Mario Talbot | 5 minutes | 2 hours, 22 minutes |
| Thanh Nguyen | 5 minutes | 2 hours, 13 minutes |
| Richard Fox-Ivey | 15 minutes | 3 hours, 1 minute |
| Ali Hafiz | 5 minutes | 2 hours, 7 minutes |
| Bradford Spencer | 15 minutes | 1 hour, 28 minutes |
| **Total Time** | **1 hour, 30 minutes** | **19 hours, 13 minutes** |

Tetra Tech's deposition designations are unreasonable, excessive, and do
not comply with L.R. 16-2.7.  Tetra Tech designated more than 12 times as much
testimony as it intends to present on direct examination for these witnesses.  It
also designated far more time than Tetra Tech is requesting for its entire case (14
hours).  Tetra Tech cannot possibly intend to present at trial over 19 hours of

-36-

1   ~~deposition testimony.~~

2   ~~During a meet and confer on July 15, Pavemetrics explained that it cannot~~
3   ~~provide meaningful counter designations and objections until Tetra Tech~~
4   ~~complies with L.R. 16-2.7 and provides initial designations for each witness~~
5   ~~consistent with the time allotted in Tetra Tech's Witness List.  Tetra Tech refused~~
6   ~~to do so.~~

7   ~~Pavemetrics respectfully requests that the Court direct Tetra Tech to~~
8   ~~designate approximately 1 hour, 30 minutes of total deposition testimony for the~~
9   ~~eight witnesses identified above.  After Tetra Tech does so, Pavemetrics will~~
10  ~~promptly provide counter-designations and objections to Tetra Tech's designated~~
11  ~~deposition testimony.~~

12  ~~**Tetra Tech's Position**:  Pursuant to the parties' agreed upon exchange~~
13  ~~schedule, Tetra Tech provided initial deposition designations to preserve its right~~
14  ~~to rely on that testimony at trial should the need arise and depending on the~~
15  ~~circumstances at trial. Tetra Tech's right to rely on such testimony should not be~~
16  ~~limited based on Pavemetrics' perception of what is "unreasonable" and~~
17  ~~"excessive." Pavemetrics' refusal to provide timely counter designations and~~
18  ~~evidentiary objections should be deemed a waiver of its right to counter-designate~~
19  ~~testimony and lodge evidentiary objections for trial.~~

20  **At the final pretrial conference, the Court ordered Tetra Tech to limit**
21  **its deposition designations where possible and for Pavemetrics to respond**
22  **with counterdesignations.**

23  **12.   MOTIONS IN LIMINE**

24  The parties have met and conferred on the motions *in limine*. The following
25  motions *in limine*, and no others, are pending before the Court:

26  • Pavemetrics' Motions *in Limine*:

27  o No. 1:  To Exclude Certain Hearsay Statements.  ECF 225.

28  o No. 2:  To Preclude Argument or Testimony Regarding

-37-

Source Code Inspection Unavailability.  ECF 227.

- o No. 3:  To Preclude Morellas Testimony Inconsistent with
  the Court's Order on Motion for Summary Judgment
  [Dkt. 189].  ECF 229.

- Tetra Tech's Motions *in Limine*:

  - o No. 1:  To Realign the Parties and Set the Order of Proof at
    Trial.  ECF 240.
  - o No. 2:  To Preclude Evidence, Argument, and Testimony
    Relating to the Preliminary Injunction Proceedings.
    ECF 241.
  - o No. 3:  To Preclude Certain Opinions of Christian Tregillis.
    ECF 242.
  - o No. 4:  To Exclude Pavemetrics' Untimely Produced
    Materials.  ECF 243.[7]
  - o No. 5:  To Exclude References to Undisclosed Legal
    Opinions or Lay Opinions to Defend against Tetra Tech's
    Claims of Induced and Willful Infringement.  ECF 244.

## 13.   **BIFURCATION**

Pavemetrics' Position: Bifurcation of the following issue for trial is
ordered:   Whether Claims 1 and 21 of the '293 patent are invalid due to
indefiniteness.

---

[7] After Tetra Tech filed its Motion *in Limine* No. 4, Pavemetrics served a
supplemental damages report from Mr. Christian Tregillis on July 13, 2022, and
disclosed for the first time an additional LRAIL sale to CSX from February 2022,
in its memorandum of contentions of fact and law (D.I. 248 at 5). For the same
reasons set forth in Tetra Tech's Motion *in Limine* No. 4, these untimely produced
materials and evidence should be excluded.  Pavemetrics disagrees with Tetra
Tech's characterizations and opposes Tetra Tech's Motion *in Limine* No. 4.

1    Tetra Tech's Position: Tetra Tech does not request bifurcation of any
2    issues.

3    **The Court will hold a jury trial over infringement and invalidity issues**
4    **and other associated defenses. The Court will hold a bench trial, if necessary,**
5    **over the issues of indefiniteness, enhanced damages, and the propriety of a**
6    **permanent injunction.**

7    **14.    OTHER ISSUES**

8    Pavemetrics requests that the Court resolve the following three issues
9    concerning the scope of the trial at the Final Pretrial Conference, in light of the
10   Court's recent rulings on summary judgment and Tetra Tech's Memorandum of
11   Contentions of Fact and Law.

12   Tetra Tech objects to Pavemetrics' inappropriate use of this proposed final
13   pretrial conference order to advance untimely legal and factual arguments that
14   should have been addressed through other pre-trial mechanisms in accordance
15   with the Court's schedule and procedures, including motions *in limine* and
16   motions for summary judgment. Nonetheless, Tetra Tech disagrees with
17   Pavemetrics' arguments and provides brief responses below and will be prepared
18   to address these issues at the final pre-trial conference should the Court deem it
19   necessary.

20        **a.    Issue 1: Whether Tetra Tech should be allowed to assert**
21             **Claims 2 and 4 of the '293 Patent in view of the Court's**
22             **first summary judgment Order, April 27, 2022 [ECF 189]**
23   **Pavemetrics' Position:** The Court should prevent Tetra Tech from
24   asserting dependent Claims 2 and 4 of the '293 patent in view of its grant of
25   summary judgment that Fake3D with Overlay does not infringe independent
26   Claim 1, from which Claims 2 and 4 depend. Tetra Tech did not preserve any
27   other argument with respect to those dependent claims.
28        The Court granted Pavemetrics' motion for summary judgment of no

1    infringement of the '293 patent as to Fake3D Image with Overlay.  ECF 189 at 9.
2    Specifically, the Court held: "Because Defendant puts forward no evidence
3    creating a material dispute about whether the Fake3D Image with Overlay
4    algorithm identifies features from a 3D map *based on both elevation and*
5    *intensity data*, no rational trier of fact could conclude the Fake3D Image with
6    Overlay algorithm meets the "track elevation map" and "three dimensional
7    elevation map" claim limitations." *Id.* (emphasis added).  The Court concluded:
8    "The Court determines that the Fake3D Image with Overlay does not infringe
9    independent *claims 1 and 22* or dependent *claims 15 and 36* of the '293 Patent.
10   Fed. R. Civ. P. 56(g). The Court denies the motion in all other respects." *Id.* at
11   10 (emphases added).

12   ⸺   Pavemetrics would like to clarify that Fake3D Image with Overlay and the
13   corresponding elevation only algorithms do not infringe any dependent claims
14   that depend from independent Claims 1 and 22.  *All of the claims*, by virtue of
15   their dependency on Claims 1 or 22, require an algorithm that identifies features
16   from a 3D map based on both elevation and intensity data, not just the dependent
17   claims that expressly mention the 3D map like Claims 15 and 36.

18   At the time of Pavemetrics' summary judgment motion, Tetra Tech
19   asserted Claims 2, 4, 15, 16, and 19-21, which depend from Claim 1, and Claims
20   23, 25, 36-37, and 40-43, which depend from Claim 22.  ECF 109 (Pavemetrics'
21   Opening Br.) at 4-5.  Pavemetrics moved for summary judgment of non-
22   infringement on Claims 1 and 22 *and their dependent claims, including Claims*
23   *2, 4, and 21*.  ECF 108 (moving for an Order granting summary judgment that
24   "Pavemetrics does not infringe any claim of U.S. Patent No. 10,362,293"); ECF
25   109 at 4 ("Asserted claims 2, 4, 15, 16, and 19-21 depend from claim 1."); *see*
26   *also* ECF 109 at 1-2, 12. Tetra Tech did not dispute that, if the independent claims
27   are not infringed, then the dependent claims are not infringed.  *See* ECF 124, 124-
28   1.

Now, Tetra Tech intends to assert at trial dependent Claim 2, 4, and 21 of the '293 patent.  ECF 236 at 2.  Because dependent Claims 2, 4, and 21 depend from independent Claim 1, Fake3D Image with Overlay and the elevation only algorithms cannot infringe Claims 2, 4, and 21.  *See Wahpeton Canvas Co. v. Frontier Inc.*, 870 F.2d 1546, 1552 n.9 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.").  Tetra Tech has refused to acknowledge this basic principle and intends to argue that algorithms that have been held not to infringe Claim 1 can and do infringe its dependent claims.

To clarify the issues remaining for trial and narrow the parties' disputes, Pavemetrics respectfully requests that the Court clarify its ruling on the record at the Final Pretrial Conference that Fake3D Image with Overlay does not infringe Claims 1, 2, 4, and 21 of the '293 patent.  Tetra Tech has preserved no other infringement contentions with respect to Claims 2 and 4, so they should be dismissed from the case.  *See* Pavemetrics MIL No. 3.

**Tetra Tech's Position:**  Tetra Tech disagrees with Pavemetrics' request to expand the Court's summary judgment decision regarding Fake3D Image with Overlay. Pavemetrics did not move for summary judgment on claims 2, 4, or 21, nor did the Court find that these claims were not infringed. Pavemetrics' current request that the Court expand its findings to cover additional claims is belated and procedurally improper. Furthermore, this issue is the subject of Pavemetrics' pending motion *in limine* (which itself is an improperly "disguised motion[] for summary adjudication of issues" (ECF 56), and thus, this proposed pretrial order is not the vehicle to advance further arguments on this issue. Tetra Tech's detailed positions in response are set forth in its opposition to Pavemetrics' motion *in limine*.

**b.** **Issue 2: Whether Tetra Tech should be allowed to assert indirect infringement based on the two pre-notice LRAIL**

**sales in view of the Court's second summary judgment Order, July 6, 2022 [ECF 209]**

**Pavemetrics' Position:** The Court should prevent Tetra Tech from asserting indirect infringement based on LRAIL Units A and B, because the Court has ruled that Pavemetrics sold Units A and B free of liability and, thus, Tetra Tech cannot seek damages for any use of Units A or B.

Tetra Tech has included many exhibits on the Joint Trial Exhibit List and designated extensive testimony related to the first LRAIL unit sold by Pavemetrics to CSX in 2020 (LRAIL Unit A). This Court granted summary judgment of no damages on the two LRAIL units Pavemetrics sold in 2020 prior to receiving notice of possible infringement from Tetra Tech in January 2021. ECF 209 at 14. Pavemetrics refers to those units as Unit A and Unit B. *See supra* Section 7. The Court also granted summary judgment that CSX's importation of data processed by Pavemetrics pursuant to an FRA contract on July 21, 2021 and October 7 and 8, 2021 is immune from suit under 28 U.S.C. §1498(a). *Id.* at 20.

Tetra Tech intends to argue at trial that CSX used LRAIL in an infringing manner even though the only accused uses relate to Unit A (and FRA processing). This Court should reject Tetra Tech's attempt to ignore and contravene this Court's summary judgment order.

Tetra Tech's technical expert, Dr. Morellas, identified CSX as having used only one LRAIL unit to collect data—Unit A, the first LRAIL sold to CSX in 2020. Morellas ¶612 (citing testimony of Brad Spencer of CSX discussing collecting data with Unit A in 2020). He identified only four output files: two output files generated by Pavemetrics dated Sept. 30, 2020 and Nov. 13, 2020 and the two output files generated by Pavemetrics pursuant to FRA contacts on October 7 and 8, 2021.

Tetra Tech has also designated extensive testimony from Brad Spencer at CSX about its use of Unit A to collect data, as well as testimony related to

-42-

1  Pavemetrics' processing that data for CSX pursuant to FRA contracts.  It also
2  designated testimony about alleged FRA uses.

3          Because Unit A was sold free of liability, Tetra Tech cannot seek damages
4  for its use.  *See Fonar Corp. v. Gen. Elec. Co.*, 107 F.3d 1543, 1555 (Fed. Cir.
5  1997) ("If a machine was sold under circumstances that did not subject its seller
6  to damages, then subsequent repair [or servicing] cannot subject it to damages.").
7  As this Court already held:

8          Applying *Fonar* makes sense where the underlying use of the
9          product would not constitute infringement, like when a patentee fails
10         to mark its competing product. *See Leapfrog Enters., Inc. v. Fisher-
11         Price, Inc.*, No. Civ. A. 03‑927‑GMS, 2005 WL 1331216, at *3 (D.
12         Del. June 6, 2005).  Here, Plaintiff sold the LRAIL and LCMS to
13         CSX free of liability.  Thus, the September 2021 upgrade of these
14         systems is not a continuing act of infringement.

15 ECF 209 (Court's MSJ Order) at 13‑14; *see also ePlus, Inc. v. Lawson Software,*
16 *Inc.*, 700 F.3d 509, 522 (Fed. Cir. 2012) (*Fonar* holding was "based on the fact
17 that the sale [by virtue of it being pre notice] was authorized and free of
18 liability").  Numerous courts have followed this same reasoning.  *Sysmex Corp.*
19 *v. Beckham Coulter, Inc.*, No. 19‑1642 JFB‑CJB, 2022 WL 1786526, at * 12 (D.
20 Del. May 26, 2022) (pre notice sales are "authorized sales" that carry with them
21 "an implied license to use" the product sold before notice); *RSA Protective Techs.,*
22 *LLC v. Delta Scientific Corp.*, 2021 WL 6104859, *1 & *3 (C.D. Cal. 2021)
23 (plaintiff has not established that it would be permitted to recover damages for
24 use of products that were sold before notice); *In re Transdata, Inc. v. Smart*
25 *Meters Patent Litig.*, 2015 WL 5098310, at *2 (W.D. Okla. Aug. 28, 2015) ("As
26 these cases make clear, whether the alleged infringer is a seller or user of the
27 products is immaterial to the fact that liability cannot attach to the sale of products
28 prior to notice of the infringement. Plaintiff offers no contrary authority to support

its argument that a continued use of the allegedly infringing device is sufficient. . . . ["T]he Federal Circuit has recognized that a sale prior to notice of infringement cannot carry liability because it, in effect, is an authorized or permissive sale."); *Tesco Corp. v. Weatherford Int'l, Inc.*, 722 F. Supp. 2d 755, 776 (S.D. Tex. 2010) ("the continued use of the products that were clearly sold prior to notice does not give rise to direct infringement").

**Tetra Tech's Position:** Tetra Tech disagrees with Pavemetrics' request for the Court to expand its summary judgment finding of no damages on the two pre notice LRAIL sales. Moreover, the Court did not grant Pavemetrics blanket immunity under § 1498, and stated as that it "does not rule on any other identified acts" and is "declin[ing] to hunt through the record for evidence establishing that Plaintiff only processed data for CSX pursuant to its FRA contract during or after June 2021." D.I. 209. The Court further denied Pavemetrics' summary judgment motion relating to no direct infringement by CSX. *Id.* at 15. Pavemetrics has no basis for requesting that the Court revisit issues now after they were rejected when ruling on Pavemetrics' motion for summary judgment.

### c. Issue 3: Whether Tetra Tech should be allowed to pursue certain infringement issues at trial

**Pavemetrics' Position:** The Court should prevent Tetra Tech from asserting acts of infringement at trial that it has not preserved or disclosed during discovery. Upon receiving Tetra Tech's Memorandum of Contentions, Pavemetrics learned that Tetra Tech intends to expand its infringement theories to include the following:

1. Direct infringement based on undisclosed "offers for sale" by Pavemetrics;

2. Induced infringement based undisclosed acts of alleged direct infringement by Pavemetrics' customers, specifically that they "made" and "imported" LRAIL systems; and

3.  ~~Contributory infringement based on undisclosed acts of these customers allegedly amounting to a direct infringement of the system claims.~~

~~For the reasons explained below, Pavemetrics respectfully requests that the Court limit the infringement issues for trial to disclosed theories as follows:~~

1.  ~~Direct infringement of '293 patent—Selling four LRAIL system units;~~

2.  ~~Induced infringement of '293 patent—Use of LRAIL unit sold to AID;~~

3.  ~~Induced infringement of '557 patent—Use of LRAIL unit sold to AID; and~~

4.  ~~Contributory infringement of '557 patent—Use of LRAIL unit sold to AID.~~

~~With respect to direct infringement of the system claims in the '293 patent, Tetra Tech has preserved only one act—selling four LRAIL system units. *See* Morellas ¶609. It did not preserve the act of "offering for sale" LRAIL. *Id.* Nor has it identified any accused offers for sale. Finally, Tetra Tech's damages expert relied solely on the four LRAIL sales—not on any offers for sale.~~

~~With respect to induced infringement of the system claims of the '293 patent, Tetra Tech has preserved only one act of the customer for the direct infringement—use of the LRAIL unit sold to AID (which we refer to as Unit 1).[8] *See* Morellas ¶¶612-613, *see also* ¶620 (discussing Pavemetrics encouraging "user to use" LRAIL), ¶621 (alleging Pavemetrics provides ongoing support to CSX and AID "on the use of the infringing LRAIL"). Tetra Tech did not preserve the act of "making" (i.e., assembling and installing LRAIL) or "importing" (i.e., importing LRAIL) by any customer. *Id.*; *see also* Tetra Tech's Third Supplemental Infringement Contentions dated January 17, 2022 (identifying each~~

---

~~[8] Tetra Tech also preserved use of Unit A by CSX, but, as discussed above, liability and damages for that use are precluded by 35 U.S.C. § 287, because Pavemetrics sold Unit A to CSX prior to notice of possible infringement.~~

claim alleged to be infringed by Pavemetrics' "customers using" its LRAIL).

With respect to induced infringement of the method claim in the '557 patent, Tetra Tech has preserved only AID using LRAIL Unit 1 to allegedly perform the method of Claim 8.  *See* Morellas ¶614.  With respect to CSX, Tetra Tech alleged only that CSX imported data allegedly made by the method of the '557 patent.  *See* Morellas ¶615, *see also* ¶622-623 (Pavemetrics "encouraged CSX to import into the United States output files").  Tetra Tech has confirmed that it does not intend to pursue importation of a product under 35 U.S.C. § 271(g) at trial.

With respect to contributory infringement, Tetra Tech limited its contributory infringement allegations to the claimed ***methods*** only.  *See* Morellas ¶625.  Dr. Morellas opined that LRAIL components "have no other uses than to practice the claimed methods."  *Id.* at ¶626.  He also opined that the LRAIL components "are suitable only for infringing the asserted method claims."  *Id.*  He did not identify any uses beyond those already identified for inducement.

With respect to damages, Tetra Tech acknowledges that it has preserved damages based on sales only.  See ECF 236 at 11-12 (seeking lost profits and reasonable royalty for "infringing sales").  Specifically, Tetra Tech preserved in its damages report a claim for lost profits or a reasonable royalty for the sales of Units 2-3 to CSX and a claim for a reasonable royalty for the sale of Unit 1 to AID.  It preserved no claim for damages based on any offers for sale, uses, importations, or other acts of possible infringement.

**Tetra Tech's Position:**  Pavemetrics' request is improper because it amounts to an end around of the Court's schedule, procedures, and rules governing motions *in limine* and motions for summary judgment. Pavemetrics should not be permitted to use the proposed pretrial order as a vehicle to raise before the Court belated, contested issues that it failed to timely raise. Furthermore, Tetra Tech disagrees with Pavemetrics' contentions. For example,

1  ~~Tetra Tech alleged in its Amended Counterclaim that Pavemetrics' offer for sale~~
2  ~~of the LRAIL constituted an infringing act and that Pavemetrics contributed to~~
3  ~~the infringement of the system claims. D.I. 79, ¶¶ 34, 36. Further, Tetra Tech's~~
4  ~~damages expert opined on the reasonable royalty resulting from Pavemetrics'~~
5  ~~infringement, and his opinions were not limited to damages resulting from any~~
6  ~~particular type of infringing act. Indeed, Tetra Tech is statutorily entitled to~~
7  ~~damages "to compensate for the infringement, but in no event less than a~~
8  ~~reasonable royalty for the use made of the invention." 35 U.S.C. § 284.~~

9  **The Court addresses these issues in a separate order.**

10 **15.   STIPULATIONS FOR TRIAL**

11 The parties agree on the following stipulations for trial:

12 **Scope of Examinations at Trial** – The parties stipulate that each side's
13 case-in-chief remains open (i.e., does not rest) until all witnesses on its witness
14 list have testified, including any adverse witnesses called by the other party. The
15 parties also agree that, for any witnesses on both parties' witness lists, the scope
16 of cross-examination shall not be limited to any direct examination or adverse
17 witness direct examination.

18 **Disclosure of Witnesses Testifying at Trial** – The parties have agreed to
19 the deadlines for disclosure of trial witnesses as follows:

20 During its case-in-chief, each side will identify any witnesses it expects to
21 call (live or by deposition) and the order in which it expects to call them by 6:00
22 pm two calendar days before the trial day during which the witnesses are called
23 (for example, by noon on Sunday for a witness who will be called on Tuesday).

24 **Disclosure of Deposition Designations** – The parties have agreed to the
25 deadlines for disclosure of deposition designations as follows:

26 If a party identifies a witness that it intends to call at trial by deposition,
27 then the party shall identify the specific pages and lines of the witness's
28 deposition testimony that the party expects to play by 6:00 pm two calendar days

before the trial day during which the deposition is expected to be read or played.

For each such witness, the opposing party shall identify objections and counter-designations by noon the following day (i.e., one calendar day before the trial day during which the testimony is expected to be read or played).

The parties will meet and confer by 6:00 pm that night (i.e., one calendar day before the trial day during which the testimony is expected to be read of played) in an effort to resolve their objections and any other issues relating to the deposition designations.

If to be offered by video, the party offering the testimony is responsible for preparing video deposition clips of all designated testimony for that witness. A copy of the video deposition clips shall be provided to the opposing party no later than 8:00 pm the calendar day before the deposition testimony is expected to be read or played.

Each party agrees that correct copies of transcripts and video recordings of depositions taken in this litigation may be used by either party at trial, without respect to whether the copy is certified.  No party shall object to the authenticity of a copy of a deposition transcript or video recording of a deposition absent evidence that the copy is, in fact, inaccurate or inauthentic. The party challenging the authenticity of a deposition transcript or video recording shall bear the burden of establishing that the transcript or video recording is not authentic.  All other objections to admissibility of deposition testimony are preserved.

The parties also agree that a party who wishes to call a witness of another party as part of its case-in-chief can do so by deposition pursuant to Fed. R. Civ. P. 32, regardless of the availability of the witness to testify live.

**Disclosure of Exhibits** – The parties have agreed to the deadlines for disclosure of exhibits and objections thereto as follows:

Each side will identify exhibits that will be offered into evidence during the testimony of a witness called by that side by 7:00 pm two calendar days before

-48-

the trial day the witness is called (for example, by 7:00 pm on Monday for a witness who will be called on Wednesday).

The parties will meet and confer by 8:00 pm one calendar day before the witness is called (for example, by 8:00 pm on Tuesday for a witness who will be called on Wednesday) in an effort to resolve their objections and any other issues relating to the disclosed exhibits and to any demonstrative material disclosed pursuant to the parties' agreement regarding disclosure of trial demonstratives set forth below.

For any unresolved objections to an exhibit, the parties will address those objections with the Court outside the presence of the jury before seeking to introduce the exhibit at trial. However, a party maintains the right to object to an exhibit in the presence of the jury for lack of foundation if the witness does not lay a proper foundation for the exhibit at trial.

If there are no objections to an exhibit or the Court overrules all objections to an exhibit, the exhibit will be deemed received in evidence upon its identification in connection with the examination of a witness without the need for the party identifying the exhibit to offer the exhibit into evidence.

**Disclosure of Trial Demonstratives** – In lieu of the deadline set forth in L.R. 16-3, the parties have agreed to the deadline for disclosure of trial demonstratives as follows:

Each side will disclose graphical, illustrative, or demonstrative material that will be shown to the trier of fact during opening statements by 6:00 pm one calendar day before the date on which opening statements are presented to the jury.

Each side will disclose graphical, illustrative, or demonstrative material that will be shown to the trier of fact during the testimony of a witness called by that side by 6:00 pm the calendar day before the witness is called (for example, by 6:00 pm on Tuesday for a witness who will be called on Wednesday). The

parties will meet and confer to agree upon a time for each side to disclose graphical, illustrative, or demonstrative material to be shown to the trier of fact during closing arguments that is not (i) graphical, illustrative or demonstrative material consisting solely of material excerpted from an exhibit or exhibits admitted into evidence; or (ii) graphic, illustrative or demonstrative materials previously used during opening statements or the testimony of a witness. Graphical, illustrative, and demonstrative material to be shown to the trier of fact during closing arguments falling within in categories (i) and/or (ii) need not be disclosed in advance.

Graphical, illustrative, or demonstrative material that consists solely of an excerpt from an exhibit to which admissibility has been stipulated (including, for example, highlighting and call-outs from such exhibit) need not be disclosed in advance of being shown to the trier of fact provided the exhibit has been disclosed pursuant to the above process.    Exhibits or graphical, illustrative, or demonstrative material that will be shown to the trier of fact during the examination of an adverse witness need not be disclosed in advance of such examination.

Graphic or illustrative material not disclosed in accordance with relevant stipulation and order may not be used at trial except by order of the Court on a finding of good cause for the failure to disclose.

///

## 16.    **ADMISSIONS**

The foregoing admissions having been made by the parties, and the parties having specified the foregoing issues remaining to be litigated, this Final Pretrial Order shall supersede the pleadings, and govern the course of the trial of this cause, unless modified to prevent manifest injustice.

Dated:  <u>August 7, 2022</u>

Mark C. Scarsi
United States District Judge

-51-