Christy G. Lea (SBN 212060)
christy.lea@knobbe.com
Joseph R. Re (SBN 134479)
joe.re@knobbe.com
Nicholas M. Zovko (SBN 238248)
nicholas.zovko@knobbe.com
Alan G. Laquer (SBN 259,257)
alan.laquer@knobbe.com
Raymond Lu (SBN 340,873)
raymond.lu@knobbe.com
**KNOBBE, MARTENS, OLSON &**
**BEAR, LLP**
2040 Main Street, Fourteenth Floor
Irvine, CA  92614
Telephone: (949) 760-0404
Facsimile: (949) 760-9502

Attorneys for Plaintiff/
Counterclaim Defendant
PAVEMETRICS SYSTEMS, INC.

Donald L. Ridge (SBN 132171)
**CLARK HILL LLP**
555 South Flower Street, 24th Floor
Los Angeles, California 90017
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

James R. Barney (pro hac vice)
James.barney@finnegan.com
Aaron L. Parker (pro hac vice)
aaron.parker@finnegan.com
Daniel G. Chung (pro hac vice)
daniel.chung@finnegan.com
Nicholas A. Cerulli (pro hac vice)
nicholas.cerulli@finnegan.com
Kelly S. Horn (pro hac vice)
Kelly.horn@finnegan.com
Jency J. Mathew (pro hac vice)
Jency.mathew@finnegan.com
**FINNEGAN HENDERSON**
901 New York Ave NW
Washington, DC 20001
Telephone: (202) 408-4000
Facsimile: (202) 408-4400

Attorneys for Defendant/
Counterclaim Plaintiff
TETRA TECH, INC. and TETRA
TECH TAS, INC.

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**DISPUTED PROPOSED JURY INSTRUCTIONS**<br><br>**Honorable Mark C. Scarsi**<br><br>Trial Date:        Aug. 16, 2022 |

Plaintiff Pavemetrics Systems, Inc. ("Pavemetrics") and Defendant and Counterclaim Plaintiff Tetra Tech, Inc. and Counterclaim Plaintiff Tetra Tech TAS Inc. (collectively "Tetra Tech"), by and through their respective counsel of record, and in compliance with the Court's Order Re: Jury Trial (ECF 56), the parties' agreed-upon pretrial schedule, Federal Rule of Civil Procedure 51, and Local Rule 51-1, hereby submit the following disputed jury instructions for the Court's consideration:

**Disputed Proposed Jury Instructions – Preliminary**

| Disputed Instruction No. | Title | Source | Page No. |
|---|---|---|---|
| 1 | Summary of Contentions | Fed. Cir. Model Patent A.2 | 5 |
| 2 | Overview of Applicable Law | Fed. Cir. Model Patent A.4 | 7 |

### Disputed Proposed Jury Instructions – Final

| Disputed Instruction No. | Title | Source | Page No. |
|---|---|---|---|
| 3 | Summary of Contentions (Pavemetrics) | Fed. Cir. Model Patent B.1 | 10 |
| 4 | Direct Infringement By "Literal Infringement" | Fed. Cir. Model Patent B.3.1a | 12 |
| 5 | Presumption of Validity (Tetra Tech) | Adapted from O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed.); 2019 AIPLA Model Jury Instructions 1.2; 35 U.S.C. § 282. | 15 |
| 6 | The Fourth Factor: Other Considerations | 2019 AIPLA Model Jury Instructions 7.4 | 17 |
| 7 | Damages – Introduction | Fed. Cir. Model Patent B.5.1 | 19 |
| 8 | Lost Profits—Noninfringing Substitutes—Acceptability | Fed. Cir. Model Patent B.5.2; AIPLA Model Jury Instructions 10.2.14 | 21 |
| 9 | Reasonable Royalty – Entitlement | Fed. Cir. Model Patent B.5.5 | 24 |
| 10 | Reasonable Royalty— Relevant Factors | Fed. Cir. Model Patent B.5.8 | 26 |

| | | 2019 AIPLA Model Jury Instructions 10.2.5.3 | |
|---|---|---|---|
| 11 | Date of Commencement of Damages | Fed. Cir. Model Patent B.5.10 | 30 |

## DISPUTED INSTRUCTION NO. 1

**SUMMARY OF CONTENTIONS**[1]

To help you follow the evidence, I will now give you a summary of the positions of the parties.

The parties in this case are Tetra Tech Inc. and Tetra Tech TAS Inc., who will be collectively referred to as "Tetra Tech," and Pavemetrics Systems Inc., who will be referred to as "Pavemetrics."  The case involves United States Patent Nos. 10,362,293, and 10,616,557. Darel Mesher is the named inventor of the patents and the patents are owned by Tetra Tech. For your convenience, the parties and I will often refer to U.S. Patent No. 10,362,293 and U.S. Patent No. 10,616,557 by the last three numbers of the patent number, namely, as the "'293 and '557 patents."

Pavemetrics filed suit in this court seeking a declaratory judgment that it does not infringe any patent claim.  At issue in this case is Pavemetrics' Laser Rail Inspection System, which will be referred to as "LRAIL."

Tetra Tech answered Pavemetrics' suit and counterclaimed that Pavemetrics infringes at least one patent claim.  Tetra Tech seeks monetary damages to compensate for Pavemetrics' infringement.

In response to Tetra Tech's infringement allegations, Pavemetrics argues that the asserted patent claims are invalid.

---

[1] *See* Preliminary Instruction A.2, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

Your job will be to decide whether or not the patent claims have been infringed and whether or not those claims are invalid. If you decide that a patent claim [**Pavemetrics**: from the '293 patent] has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Tetra Tech to compensate it for the infringement. You will also need to make a finding as to whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

**Pavemetrics' Position:** Pavemetrics objects to any damages on method Claim 8 of the '557 patent.  Tetra Tech did not preserve any damages claim for any act of infringement other than sales.  Tetra Tech's damages expert limited his opinions on damages to sales only.  Schoettelkotte, e.g., ¶¶15-19.

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed language because it is inconsistent with the Court's Final Pretrial Conference Order (ECF 285) and Court Order Re: Motions in Limine (ECF 287).

1
2

**DISPUTED INSTRUCTION NO. 2**

**OVERVIEW OF APPLICABLE LAW**[2]

3    In deciding the issues I just discussed, you will be asked to consider specific

4  legal standards. I will give you an overview of those standards now and will review

5  them in more detail before the case is submitted to you for your verdict.

6

7    The first issue you will be asked to decide is whether Pavemetrics has infringed

8  the claims of the '293 and '557 patents. Infringement is assessed on a claim-by-claim

9  basis. Therefore, there may be infringement as to one claim but not infringement as to

10  another. There are a few different ways that a patent may be infringed. I will explain

11  the requirements for each of these types of infringement to you in detail at the

12  conclusion of the case. In general, however, to prove infringement, Tetra Tech must

13  prove by a preponderance of the evidence that Pavemetrics sold [**Tetra Tech**: or

14  offered for sale] in the United States a product meeting all the requirements of a claim

15  of the '293 patent. Pavemetrics may also indirectly infringe the '557 patent by

16  inducing its customer AID to infringe. I will provide you with more detailed

17  instructions on the requirements for each of these types of infringement at the

18  conclusion of the case.

19

20    Another issue you will be asked to decide is whether the '293 and '557 patents

21  are invalid. A patent may be invalid for a number of reasons, including because it

22  claims subject matter that is not new or is obvious. For a claim to be invalid because it

23  is not new, Pavemetrics must show, by clear and convincing evidence, that all of the

24  elements of a claim are present in a single previous method. If a claim is not new, it is

25  said to be anticipated.

26

27

28    [2] *See* Preliminary Instruction A.4, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

1    Another way that a claim may be invalid is that it may have been obvious. Even

2  though every element of a claim is not shown or sufficiently described in a single

3  piece of "prior art," the claim may still be invalid if it would have been obvious to a

4  person of ordinary skill in the field of technology of the patent at the relevant time.

5  You will need to consider a number of questions in deciding whether the invention(s)

6  claimed in the '293 and '557 patents are obvious. I will provide you detailed

7  instructions on these questions at the conclusion of the case.

8

9    If you decide that any claim of the '293 patent [**Tetra Tech**: <u>or the '557 patent</u>]

10  has been infringed and is not invalid, you will then need to decide any money damages

11  to be awarded to Tetra Tech to compensate it for the infringement. A damages award

12  should put Tetra Tech in approximately the same financial position that it would have

13  been in had the infringement not occurred, but in no event may the damages award be

14  less than what Tetra Tech would have received had it been paid a reasonable royalty. I

15  will instruct you later on the meaning of a reasonable royalty. The damages you award

16  are meant to compensate Tetra Tech and not to punish Pavemetrics. You may not

17  include in your award any additional amount as a fine or penalty in order to punish

18  Pavemetrics. I will give you more detailed instructions on the calculation of damages at

19  the conclusion of the case.

20

21  **Pavemetrics' Position**:  Pavemetrics' instruction follows the Federal Circuit Bar

22  Model and appropriately provides the jury an overview of the issues and facts of this

23  case.  Pavemetrics objects to any damages on method Claim 8 of the '557 patent.

24  Tetra Tech did not preserve any damages claim for any act of infringement other than

25  sales.  Tetra Tech's damages expert limited his opinions on damages to sales only.

26  Schoettelkotte, e.g., ¶¶15-19.

27

28

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed language because it is inconsistent with the Court's Final Pretrial Conference Order (ECF 285) and Court Order Re: Motions in Limine (ECF 287).

**DISPUTED INSTRUCTION NO. 3**

**SUMMARY OF CONTENTIONS[3] (Pavemetrics' Proposed Instruction)**

As I did at the start of the case, I will first give you a summary of each side's contentions in this case. I will then provide you with detailed instructions on what each side must prove to win on each of its contentions.

As I previously told you, Pavemetrics seeks a declaratory judgment that it does not infringe claims 1 and 21 of the '293 patent and claim 8 of the '557 patent.  It also seeks a declaratory judgment that those claims are invalid.

Tetra Tech seeks money damages from Pavemetrics for allegedly infringing the '293 patent by selling products that Tetra Tech argues are covered by claims 1 and 21 of the '293 patent.  Tetra Tech also argues that Pavemetrics caused its customer AID to use those products to perform the method covered by claim 8 of the '557 patent. Claims 1 and 21 of the '293 patent and Claim 8 of the '557 patent are the asserted claims.

The products that are alleged to infringe are various versions of Pavemetrics' LRAIL system. The methods that are alleged to infringe are any use of those versions of the LRAIL system by Pavemetrics' customer AID in the United States.

Your job is to decide whether the asserted claims of the '293 and '557 patents are invalid and whether Pavemetrics has infringed any of the asserted claims of the '293 and '557 patents. If you decide that any claim of the '293 patent has been infringed and is not invalid, you will then need to decide any money damages to be awarded to Tetra Tech to compensate it for the infringement. You will also need to make a finding as to

---

[3] *See* Summary of Contentions B.1, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

10

whether the infringement was willful. If you decide that any infringement was willful, that decision should not affect any damages award you make. I will take willfulness into account later.

**Pavemetrics' Position:** Pavemetrics' instruction follows the Federal Circuit Bar Model and appropriately provides the jury an overview of the parties' contentions after the close of evidence and before closing arguments.

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction as unnecessary and duplicative at least in view of the parties' instruction concerning summary of contentions. Tetra Tech further objects to Pavemetrics' proposed instruction because it deviates from the model beyond simply inserting the relevant information about this case and is biased with respect to the sequence of the instruction. Further, Pavemetrics' proposed instruction is also incomplete and inaccurate to the extent it misstates Tetra Tech's damages claims and direct infringement contentions.

**DISPUTED INSTRUCTION NO. 4**

**DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"[4] (Pavemetrics' Proposed Instruction)**

In order to prove direct infringement by literal infringement of a system claim, Tetra Tech must prove by a preponderance of the evidence, i.e., that it is more likely than not, that Pavemetrics sold into the United States a product that meets all of the requirements of a system claim and did so without the permission of Tetra Tech during the time the '293 patent was in force. You must compare each product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met by that particular product.

You must determine, separately for each asserted claim and each accused product, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirement(s) of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirement(s) of its own.

**DIRECT INFRINGEMENT BY "LITERAL INFRINGEMENT"[5] (Tetra Tech's Proposed Instruction)**

---

[4] *See* Infringement B.3.1a, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

[5] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent B.3.1a.

12

In order to prove direct infringement by literal infringement, the patent holder must prove by a preponderance of the evidence, i.e., that it is more likely than not, that the alleged infringer made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim and did so without the permission of the patent holder during the time the asserted patent was in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. In this case, Tetra Tech contends that Pavemetrics sold or offered for sale in the United States the LRAIL that meets all of the requirements of claims 1 and 21 of the '293 patent.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claims, if you find that a claim to which a dependent claim refers is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that an independent claim has been infringed, you must still decide, separately, whether the product meets the additional requirements of any claims that depend from the independent claim to determine whether those dependent claims have also been infringed. A dependent claim includes all the requirements of any of the claims to which it refers plus additional requirements of its own.

**Pavemetrics' Position:** Pavemetrics objects to including any acts of direct infringement other than "sold," because Tetra Tech's technical expert limited his opinions on Pavemetrics' alleged direct infringement to sales only (Morellas ¶¶609-611) and Tetra Tech's damages expert limited his opinions on damages to sales only (Schoettelkotte, e.g., ¶¶15-19). Thus, Tetra Tech cannot offer any expert testimony on any act of infringement by Pavemetrics other than "sold." Pavemetrics objects to use of "asserted patent" for direct infringement. Tetra Tech stipulated that Pavemetrics' sales do not directly infringe Claim 8 of the '557 patent. *See* ECF 204. Tetra Tech has not otherwise alleged direct infringement by Pavemetrics of Claim 8 of the '557 patent. *See* Morellas ¶¶609-611. Pavemetrics objects to "the product" and "the LRAIL"

because Tetra Tech has accused multiple LRAIL systems with different versions of software as infringing the '293 patent and those versions contain material differences with respect to the asserted claims.  *See Omega Patents v. CalAmp*, 920 F.3d 1337, 1350-51 (Fed. Cir. 2019) (vacating damages award because no evidence supported finding of infringement of more than "some unidentified subset" of the accused products).  Thus, infringement must be determined on a product-by-product basis.

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction as incomplete and inaccurate because it omits and misstates Tetra Tech's direct infringement claims, as explained above. Tetra Tech further objects to this proposed instruction because Pavemetrics, without citing any support or authority, modifies the model instruction to instruct the jury to compare "each product" to the claims, determine that all requirements of the claim are "met by that particular product," and that infringement must be determined separately for each asserted claim "and each accused product." The circumstances of the case do not warrant these modifications, particularly given that the model instructions are clear and do not need alteration. Pavemetrics' modifications otherwise are biased, inaccurate, incomplete, misleading, and potentially confusing.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### DISPUTED INSTRUCTION NO. 5

**PRESUMPTION OF VALIDITY[6] (Tetra Tech's Proposed Instruction)**

The issuance of a patent by the Patent and Trademark Office (PTO) raises a presumption that the patent is valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.

**Pavemetrics' Position:** Pavemetrics objects because this instruction is not supported by any model and is already addressed, to the extent it needs to be addressed, by the burden of proof instruction. Pavemetrics also objects because the instruction is inapplicable to the facts of this case and could only serve to confuse the jury. Pavemetrics is not relying on any references that were submitted to the Patent Office during prosecution of the Asserted Patents. The treatise cited by Tetra Tech correctly explains that "[t]his presumption of validity, amounting to a presumption of invention, extends *only* to the record before the examiners in the PTO. . . This presumption does not extend or exist as to prior art patents or publications that do not appear from the record of the 'prosecution history.'" O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed.). The presumption, when applicable, is "merely a rule of evidence" that places the burden on the patent challenger to prove invalidity by clear and convincing evidence. *Id.* The jury was already instructed on that burden in Joint Stipulated Instruction No. 27.

**Tetra Tech's Position:** Tetra Tech submits that its proposed instruction is appropriate because it is adapted from the O'Malley and AIPLA model instructions and 35 U.S.C. § 282. Moreover, Tetra Tech submits that the proposed instruction will be important

---

[6] **Authority in support of Tetra Tech's instruction:** Adapted from O'Malley et al., 3A Fed. Jury Prac. & Instr. § 158:44 (6th ed.); 2019 AIPLA Model Jury Instructions 1.2; 35 U.S.C. § 282.

1    and helpful in educating the jury as to Pavemetrics must prove its invalidity claims by

2    clear and convincing evidence.

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 6**

**THE FOURTH FACTOR: OTHER CONSIDERATIONS[7]**

Before deciding the issue of obviousness for each claimed invention, you must also consider certain factors, which may help to determine whether the invention would have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole. Certain of these factors include:

1.  Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2.  Was there long-felt need for a solution to the problem facing the inventor, which was satisfied by the claimed invention?

3.  Did others try, but fail, to solve the problem solved by the claimed invention?

4.  [**Tetra Tech:** <u>Did others invent the claimed invention at roughly the same time?</u>]

5.  Did others copy the claimed invention?

6.  Did the claimed invention achieve unexpectedly superior results over the closest prior art?

7.  Did others in the field, or Pavemetrics, praise the claimed invention or express surprise at the making of the claimed invention?

8.  Did others accept licenses under the Asserted Patents because of the merits of the claimed invention?

---

[7] **Authority in support of Tetra Tech's instruction:** 2019 AIPLA Model Jury Instructions 7.4.

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious. These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim. Even if you conclude that some of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether Pavemetrics has proven that the claimed invention would have been obvious.

[**Pavemetrics**: <u>A factor that may suggest non-obviousness includes whether another person simultaneously and independently created the same invention claimed in the patents.</u>]

**Pavemetrics' Position**: Pavemetrics objects to this instruction because the FCBA Model Patent Jury Instruction B.4.3c includes these considerations.  Pavemetrics objects to this instruction because it does not address near simultaneous invention. The fact that another person simultaneously and independently created the same invention claimed in the patent-in-suit can serve as an indication that the invention was obvious.  *Ecolochem, Inc. v. S. Cal. Edison Co*., 227 F.3d 1361 (Fed. Cir. 2000).

**Tetra Tech's Position:** Tetra Tech submits that its proposed language is more accurate and should also be enumerated with the other factors, rather than as a standalone issue.

## DISPUTED INSTRUCTION NO. 7

**DAMAGES – INTRODUCTION[8]**

If you find that Pavemetrics infringed any valid claim of the Asserted Patents, you must then consider what amount of damages to award to Tetra Tech. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Pavemetrics has not infringed any valid claim of the patent, then Tetra Tech is not entitled to any damages.

The damages you award must be adequate to compensate Tetra Tech for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Tetra Tech in approximately the same financial position that it would have been in had the infringement not occurred.

Tetra Tech has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Tetra Tech establishes it more likely than not suffered. While Tetra Tech is not required to prove the amount of its damages with mathematical precision, they must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Tetra Tech may be entitled to recover. In this case, Tetra Tech seeks lost profits and/or a reasonable royalty. Lost profits consist of any actual reduction in business profits Tetra Tech suffered as a result of Pavemetrics' infringement. A reasonable royalty is defined as the money amount Tetra Tech and Pavemetrics would have agreed upon as a fee for use of the invention at the time prior to when infringement began. But, regardless of the type of damages you may

---

[8] *See* Patent Damages B.5.1, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

choose to award, you must be careful to ensure that award is no more or no less than the value of the patented invention.

I will give more detailed instructions regarding damages shortly. Note, however, that Tetra Tech is entitled to recover no less than a reasonable royalty for each infringing sale [**Tetra Tech**: offer for sale, and use].

**Pavemetrics' Position:** The parties' dispute the last paragraph of this instruction. Pavemetrics objects to Tetra Tech's proposal, because it includes acts of infringement other than sales, including "offer for sale and use." Tetra Tech's damages expert did not opine on a reasonable royalty for any "offer for sale and use." His royalty is based on per unit sold. *See* Schoettelkotte, *e.g.*, ¶¶15-19. Moreover, Tetra Tech's technical expert limited his opinions on Pavemetrics' alleged direct infringement to sales only. Morellas ¶¶609-611.

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed language because it is inconsistent with the Court's Final Pretrial Conference Order (ECF 285) and Court Order Re: Motions in Limine (ECF 287).

**DISPUTED INSTRUCTION NO. 8**

**Pavemetrics' Proposal:**

**LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY[9]**

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased Pavemetrics' product. If purchasers of Pavemetrics' product were motivated to buy that product because <u>of the patented features</u>, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with Tetra Tech's and Pavemetrics' products.  On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by the <u>alleged</u> infringer, despite a difference in the products, then the patentee is not entitled to lost profits on those sales.

The acceptable substitute may be a product that involved a modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product.[10]

**Tetra Tech's Proposal:**

**LOST PROFITS—NONINFRINGING SUBSTITUTES—ACCEPTABILITY[11]**

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased Pavemetrics'

---

[9] *See* Patent Damages B.5.2, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

[10] *See* Lost Profits – Panduit Factors – Acceptable Non-Infringing Substitutes 10.2.14. AIPLA Model Patent Jury Instructions.

[11] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent B.5.2.

21

1   product. If purchasers of Pavemetrics' product were motivated to buy that product

2   because of features <u>available only from that product and Tetra Tech's patented product</u>,

3   then some other, alternative product is not an acceptable substitute, even if it otherwise

4   competed with Tetra Tech's and Pavemetrics' products. On the other hand, if the

5   realities of the marketplace are that competitors other than the patentee would likely

6   have captured the sales made by <u>the infringer</u>, despite a difference in the products, then

7   the patentee is not entitled to lost profits on those sales.

8

9   **Pavemetrics' Position:**  In the Acceptability instruction, Pavemetrics objects to the

10  language "features available only from that product and Tetra Tech's patented product."

11  That language does not tie the features of the accused product to the patented invention.

12  Purchasers must have been motivated to purchase Pavemetrics' LRAIL system because

13  of the patented features.  In this case, Pavemetrics has sold LRAIL systems that are not

14  accused of infringement.   Moreover, Pavemetrics has sold LRAIL systems with

15  functionalities not accused of infringement.   Pavemetrics also objects because the

16  instruction ignores that Pavemetrics' LRAIL is an acceptable noninfringing substitute.

17  Pavemetrics' acceptable substitute is in fact a modification of the alleged infringing

18  product and Pavemetrics has also removed at least one accused feature from the LRAIL

19  system.    The AIPLA Model has an instruction concerning this fact scenario.

20  Pavemetrics incorporated that AIPLA Model instruction from Lost Profits – Panduit

21  Factors – Acceptable Non-Infringing Substitutes 10.2.14. AIPLA Model Patent Jury

22  Instructions.

23

24  **Tetra Tech's Position:**  Tetra Tech objects to this proposed instruction because

25  Pavemetrics, without citing any support or authority, modifies the model instruction to

26  replace "motivated to buy that product because of features available only from that

27  product and a patent holder's patented product" with "motivated to buy that product

28  because of features in the patent claims." This modification is unwarranted under the

circumstances of the case and is inconsistent with the model instruction and the controlling law on lost profits. Moreover, Tetra Tech objects to this proposed instruction because Pavemetrics, without citing any support, modifies the model instruction to inject a select statement from the AIPLA Model Patent Jury Instruction 10.2.14: "The acceptable substitute may be a product that involved a modification of the infringing product to avoid infringement or the removal of at least one feature of the invention from the product." The model instruction is already clear without the need to pick and choose select statements from other model instructions, and thus, the proposed instruction is biased, misleading, and confusing.

**DISPUTED INSTRUCTION NO. 9**

**REASONABLE ROYALTY—ENTITLEMENT**

If you find that a patent claim [**Pavemetrics**: of the '293 patent] is infringed and not invalid, Tetra Tech is entitled to at least a reasonable royalty to compensate it for that infringement.

If you find that Tetra Tech has not proved its claim for lost profits or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Tetra Tech a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

**Pavemetrics' Position:** Pavemetrics objects because Tetra Tech cannot seek damages for the '557 method patent based on sales of LRAIL. *Packet Intelligence v. NetScout Sys.*, 965 F.3d 1299, 1315 (Fed. Cir. 2020) (no damages for infringement of method claims where damages base not tailored to any alleged use of the claimed methods). It is undisputed that sales of LRAIL do not infringe the '557 patent. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993) ("Method claims are not directly infringed by the mere sale of an apparatus capable of performing the claimed process."). Tetra Tech's damages expert offered damages opinions based solely on each unit sold by Pavemetrics and not based on uses by AID or any other customer. (Schoettelkotte, e.g., ¶¶15-19).

**Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction to the extent Pavemetrics contends that Tetra Tech's reasonable royalty damages would be limited to sales of the infringing product. As explained in detail above, Tetra Tech is statutorily entitled to damages "to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention." 35 U.S.C. § 284. Moreover, as discussed above, Tetra Tech's damages expert's opinions on the reasonable royalty

24

1   resulting from Pavemetrics' infringement were not limited to damages resulting from
2   any particular type of infringing act.
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DISPUTED INSTRUCTION NO. 10**

**REASONABLE ROYALTY—RELEVANT FACTORS**

**Pavemetrics' Proposal:** [12]

    In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

    (1)    The value that the claimed invention contributes to the accused product.

    (2)    The value that factors other than the claimed invention contribute to the accused product.

    (3)    Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating a license.

    No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the alleged infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people.

**Tetra Tech's Proposal:** [13]

    In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

---

[12] *See* Patent Damages B.5.8, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

[13] **Authority in support of Tetra Tech's instruction:** 2019 AIPLA Model Jury Instructions 10.2.5.3.

1.     Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2.     The rates paid by Pavemetrics to license other patents comparable to the Asserted Patents.

3.     The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4.     The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5.     The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6.     The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7.     The duration of the Asserted Patents and the term of the license.

8.     The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

9.     The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10.     The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11.     The extent to which Pavemetrics has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as Pavemetrics) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

**Pavemetrics' Position:** Throughout these damages instructions, the parties have been using the FCBA Model. But for this instruction, Tetra Tech rejects the FCBA Model and opts for the AIPLA Model. Moreover, Pavemetrics objects to this instruction because the FCBA Model Patent Jury Instruction B.5.8 provides an instruction that is easier to understand and more tailored to the facts in this case. Indeed, the parties' damages experts both agree that many of the *Georgia Pacific* factors are not applicable to the facts of this case. For example, the first two factors in Tetra Tech's instruction are not relevant in this case.

1

2   **Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed language

3   because it is inconsistent with the Court's Final Pretrial Conference Order (ECF 285)

4   and the Court Order Re: Motions in Limine (ECF 287).

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DISPUTED INSTRUCTION NO. 11**

**DATE OF COMMENCEMENT OF DAMAGES**

**Pavemetrics' Proposal:** [14]

In determining the amount of damages, damages cannot include sales that occurred before January 5, 2021.

**Tetra Tech's Proposal:** [15]

In determining the amount of damages, you must determine when the damages began. For the '293 Patent, damages commence on the date that Pavemetrics has both infringed and been notified of the alleged infringement of the '293 Patent. Tetra Tech and Pavemetrics agree that date was January 5, 2021.

In determining when damages begin with regard to the '557 Patent, there is no notice requirement because the '557 Patent is directed to method claims. Accordingly, the calculation of damages for infringement of begins as of the date the patent issued or the date the infringement began, whichever was first.

**Pavemetrics' Position:** Pavemetrics objects to Tetra Tech's proposed instruction because damages cannot include units sold before January 5, 2021. Pavemetrics objects because Tetra Tech cannot seek damages for the '557 method patent based on sales of LRAIL. *Packet Intelligence v. NetScout Sys.*, 965 F.3d 1299, 1315 (Fed. Cir. 2020) (no damages for infringement of method claims where damages base not tailored to any alleged use of the claimed methods). It is undisputed that sales of LRAIL do not

---

[14] *See* Patent Damages B.5.10, Fed. Cir. Bar. Assoc. Model Patent Jury Instructions (May 2020).

[15] **Authority in support of Tetra Tech's instruction:** Fed. Cir. Model Patent B.5.10.

1    infringe the '557 patent. *Joy Techs., Inc. v. Flakt, Inc.*, 6 F.3d 770, 773 (Fed. Cir. 1993)

2    ("Method claims are not directly infringed by the mere sale of an apparatus capable of

3    performing the claimed process."). Tetra Tech's damages expert offered damages

4    opinions based solely on each unit sold by Pavemetrics and not based on uses by AID

5    or any other customer. (Schoettelkotte, e.g., ¶¶15-19).

6

7    **Tetra Tech's Position:** Tetra Tech objects to Pavemetrics' proposed instruction

8    because Pavemetrics, without citing any support or authority, modifies the model

9    instruction by replacing "Damages commence on the date that [alleged infringer] has

10   both infringed and been notified of the alleged infringement of the [ ] patent [choose

11   those that apply]" with "damages cannot include sales that occurred before January 5,

12   2021." This modification is inaccurate, misleading, and confusing. Moreover, the

13   modification is inconsistent with the Court's summary judgment order of July 6, 2022,

14   that found that "acts taken to complete a sale after actual notice constitute continuing

15   acts of infringement under § 287(a) that can result in damages." D.I. 209 at 10-11.

16   Moreover, Tetra Tech objects to this proposed instruction as incomplete because it does

17   not address the '557 patent, which is directed to method claims, and under controlling

18   law (and commented in the model instruction) is not subject to the notice provisions of

19   § 287. Moreover, Tetra Tech objects to Pavemetrics' proposed instruction to the extent

20   Pavemetrics contends that Tetra Tech's reasonable royalty damages would be limited

21   to sales of the infringing product. As explained in detail above, Tetra Tech is statutorily

22   entitled to damages "to compensate for the infringement, but in no event less than a

23   reasonable royalty for the use made of the invention." 35 U.S.C. § 284. Moreover, as

24   discussed above, Tetra Tech's damages expert's opinions on the reasonable royalty

25   resulting from Pavemetrics' infringement were not limited to damages resulting from

26   any particular type of infringing act.

27

28

1    Approved as to form and content:

2

3                               KNOBBE, MARTENS, OLSON & BEAR, LLP

4

5    Dated:  August 12, 2022        By:  /s/ Christy G. Lea
                                         Christy G. Lea
6                                        Joseph R. Re
                                         Nicholas M. Zovko
7                                        Alan G. Laquer
                                         Raymond Lu

8                                    *Attorneys for Plaintiff/Counterclaim Defendant,*
9                                    PAVEMETRICS SYSTEMS, INC.

10

11                               FINNEGAN HENDERSON FARABOW GARRETT &
12                               DUNNER, LLP

13

14   Dated:  August 12, 2022        By:  /s/  Daniel G. Chung
                                         (with permission Christy G. Lea)
15                                       James R. Barney
                                         Aaron L. Parker
16                                       Nicholas A. Cerulli
                                         Daniel G. Chung
17                                       Kelly S. Horn
                                         Jency J. Mathew

18

19                               CLARK HILL LLC
                                         Donald L. Ridge
20

21                                   *Attorneys for Defendant/Counterclaimant,* TETRA
                                     TECH, INC.

22   56130795

23

24

25

26

27

28

                                        32