1
2
3
4
5
6
7

**FILED**
CLERK, U.S. DISTRICT COURT

8/24/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

8          UNITED STATES DISTRICT COURT

9          CENTRAL DISTRICT OF CALIFORNIA

10

| Pavemetrics Systems, Inc., | Case No. 2:21-cv-01289-MCS-MAA |
|---|---|
| Plaintiff, | **JURY INSTRUCTIONS** |
| v. | |
| Tetra Tech, Inc., | |
| Defendant. | |

17
18
19
20
21
22
23
24
25
26
27
28

1

**INSTRUCTION NO. 1**

**Duty of the Jury**

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

These instructions are preliminary instructions to help you understand the principles that apply to civil trials and to help you understand the evidence as you listen to it.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you,. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal  likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

Please do not read into these instructions or anything I may say or do that I have an opinion regarding the evidence or what your verdict should be.

### INSTRUCTION NO. 2

**Burden of Proof—Preponderance of the Evidence**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### INSTRUCTION NO. 3

**Burden of Proof—Clear and Convincing Evidence**

When a  party has the burden of proving any claim or defense by clear and convincing evidence, it means that the party must present evidence that leaves you with a firm belief or conviction that it is highly probable that the factual contentions of the claim or defense are true. This is a higher standard of proof than proof by a preponderance of the evidence, but it does not require proof beyond a reasonable doubt.

## INSTRUCTION NO. 4

### What Is Evidence

The evidence you are to consider in deciding what the facts are consists of:

(1) the sworn testimony of any witnesses;

(2) the exhibits that are admitted into evidence;

(3) any facts to which the lawyers have agreed; and

(4) any facts that I may instruct you to accept as proved.

**INSTRUCTION NO. 5**

**What Is Not Evidence**

In reaching your verdict, you may consider only the testimony and exhibits received into evidence. Certain things are not evidence, and you may not consider them in deciding what the facts are. I will list them for you:

(1) Arguments and statements by lawyers are not evidence. The lawyers are not witnesses. What they have said in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence. If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2) Questions and objections by lawyers are not evidence. Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it.

(3) Testimony that is excluded or stricken, or that you have been instructed to disregard, is not evidence and must not be considered. In addition some evidence was received only for a limited purpose; when I have instructed you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4) Anything you may have seen or heard when the court was not in session is not evidence. You are to decide the case solely on the evidence received at the trial.

**INSTRUCTION NO. 6**

**Direct and Circumstantial Evidence**

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned-on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in light of reason, experience, and common sense.

## INSTRUCTION NO. 7

### Ruling on Objections

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit may be received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore the evidence. That means when you are deciding the case, you must not consider the evidence for any purpose.

**INSTRUCTION NO. 8**

**Credibility of Witnesses**

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1) the opportunity and ability of the witness to see or hear or know the things testified to;

(2) the witness's memory;

(3) the witness's manner while testifying;

(4) the witness's interest in the outcome of the case, if any;

(5) the witness's bias or prejudice, if any;

(6) whether other evidence contradicted the witness's testimony;

(7) the reasonableness of the witness's testimony in light of all the evidence; and

(8) any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**INSTRUCTION NO. 9**

**Conduct of Jury**

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your

own. Do not visit or view any place discussed in this case, and do not use Internet programs or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

1

**INSTRUCTION NO. 10**

2

**No Transcript Available to Jury**

3        I urge you to pay close attention to the trial testimony as it is given. During

4   deliberations you will not have a transcript of the trial testimony.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# INSTRUCTION NO. 11

## Taking Notes

If you wish, you may take notes to help you remember the evidence. If you do take notes, please keep them to yourself until you go to the jury room to decide the case. Do not let notetaking distract you. When you leave, your notes should be left in the envelope in the jury room. No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence. Notes are only to assist your memory. You should not be overly influenced by your notes or those of other jurors.

**INSTRUCTION NO. 12**

**Bench Conferences and Recesses**

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 13**

**Deposition in Lieu of Live Testimony**

A deposition is the sworn testimony of a witness taken before trial. The witness is placed under oath to tell the truth and lawyers for each party may ask questions. The questions and answers are recorded. When a person is unavailable to testify at trial, the deposition of that person may be used at the trial.

Insofar as possible, you should consider deposition testimony, presented to you in court in lieu of live testimony, in the same way as if the witness had been present to testify at trial.

**INSTRUCTION NO. 14**

**Use of Interrogatories**

Evidence may be presented to you in the form of answers of one of the parties to written interrogatories submitted by the other side. These answers were given in writing and under oath before the trial in response to questions that were submitted under established court procedures. You should consider the answers, insofar as possible, in the same way as if they were made from the witness stand.

# INSTRUCTION NO. 15

## Expert Opinion

You may hear testimony from certain expert witnesses who will testify to opinions and the reasons for their opinions. This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony. You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the reasons given for the opinion, and all the other evidence in the case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 16**

**Charts and Summaries Not Received in Evidence**

Certain charts and summaries not admitted into evidence may be shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 17**

**Charts and Summaries Received in Evidence**

Certain charts and summaries may be admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underling evidence deserves.

**INSTRUCTION NO. 18**

**What a Patent Is and How It Is Obtained**

This case involves a dispute relating to United States patents. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to play a video that will explain what a patent is and how one is obtained. It will also explain why you are being asked to decide this dispute.

# INSTRUCTION NO. 19

## Outline for Trial

The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an outline to help you understand what the party expects the evidence will show.

The presentation of evidence will then begin. Witnesses will take the witness stand and the documents will be offered and admitted into evidence. There are two standards of proof that you will apply to the evidence, depending on the issue you are deciding. On some issues, you must decide whether something is true by the preponderance of the evidence. On other issues, you must use a higher standard of proof and decide whether something is true by clear and convincing evidence.

Tetra Tech will present its evidence on its contention that some claims of the Asserted Patents have been infringed by Pavemetrics and that the infringement has been willful. These witnesses will be questioned by Tetra Tech's counsel in what is called direct examination. After the direct examination of a witness is completed, the opposing side has an opportunity to cross-examine the witness. Finally, Tetra Tech's counsel has the opportunity to question the witness one more time in what is called redirect examination.

After Tetra Tech has presented its witnesses, Pavemetrics will call its witnesses, who will also be examined and subject to cross-examination and redirect. Pavemetrics will present its evidence that the asserted claims of the Asserted Patents are invalid. In addition to presenting its evidence of invalidity, Pavemetrics will put on evidence responding to Tetra Tech's infringement and willfulness contentions.

Tetra Tech will then return and will put on evidence responding to Pavemetrics' contention that the asserted claims of the Asserted Patents are invalid. Tetra Tech will also have the option to put on what is referred to as "rebuttal" evidence to any evidence offered by Pavemetrics of non-infringement or lack of willfulness.

Finally, Pavemetrics will have the option to put on "rebuttal" evidence to any evidence offered by Tetra Tech on the validity of the asserted claims of the Asserted Patents.

Because the evidence is introduced piecemeal, you need to keep an open mind as the evidence comes in and wait for all the evidence before you make any decisions. In other words, you should keep an open mind throughout the entire trial.

The parties may present the testimony of a witness by reading from his or her deposition transcript of playing a videotape of the witness's deposition testimony. A deposition is the sworn testimony of a witness taken before trial and is entitled to the same consideration as if the witness has testified at trial.

After the evidence has been presented, I will give you final instructions on the law that applies to the case and the attorneys will make closing arguments. Closing arguments are not evidence. After the instructions and closing arguments, you will then decide the case.

**INSTRUCTION NO. 20**

**Order of Presentation**

In a moment, the parties will begin their opening statements. Tetra Tech will give its opening statement first, and Pavemetrics will give its opening statement second. As I previously mentioned, Pavemetrics filed this suit for a declaration that it does not infringe. While the party who filed suit typically presents first, Tetra Tech will go first in this case because it bears the burden of proving infringement.

1

2

## INSTRUCTION NO. 21

### Summary of Contentions

3      As I did at the start of the case, I will first give you a summary of each side's

4 contentions in this case. I will then provide you with detailed instructions on what each

5 side must prove to win on each of its contentions.

6      As I previously told you, Pavemetrics seeks a declaratory judgment that it does

7 not infringe claims 1 and 21 of the '293 patent and claim 8 of the '557 patent. It also

8 seeks a declaratory judgment that those claims are invalid.

9      Tetra Tech seeks money damages from Pavemetrics for allegedly infringing the

10 '293 patent by selling products that Tetra Tech argues are covered by claims 1 and 21

11 of the '293 patent. Tetra Tech also argues that Pavemetrics caused its customer AID to

12 use those products to perform the method covered by claim 8 of the '557 patent. Claims

13 1 and 21 of the '293 patent and claim 8 of the '557 patent are the asserted claims.

14      The    products    that    are    alleged    to    infringe    are    Pavemetrics'

15 LRAIL systems. The methods that are alleged to infringe are any use of the LRAIL

16 system by Pavemetrics' customer AID in the United States.

17      Your job is to decide whether the asserted claims of the '293 and '557 patents are

18 invalid and whether Pavemetrics has infringed any of the asserted claims of the '293

19 and '557 patents. If you decide that any claim of the '293 patent or the '557 patent has

20 been infringed and is not invalid, you will then need to decide any money damages to

21 be awarded to Tetra Tech to compensate it for the infringement. You will also need to

22 make a finding as to whether the infringement was willful. If you decide that any

23 infringement was willful, that decision should not affect any damages award you make.

24 I will take willfulness into account later.

25

26

27

28

24

# INSTRUCTION NO. 22

## Overview of Applicable Law

In deciding the issues I just discussed, you will be asked to consider specific legal standards. I will give you an overview of those standards now and will review them in more detail before the case is submitted to you for your verdict.

The first issue you will be asked to decide is whether Pavemetrics has infringed the claims of the '293 and '557 patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but not infringement as to another. There are a few different ways that a patent may be infringed. I will explain the requirements for each of these types of infringement to you in detail at the conclusion of the case. In general, however, to prove infringement, Tetra Tech must prove by a preponderance of the evidence that Pavemetrics sold or offered for sale in the United States a product meeting all the requirements of a claim of the '293 patent. Pavemetrics may also indirectly infringe the '557 patent by inducing its customer AID to infringe. I will provide you with more detailed instructions on the requirements for each of these types of infringement at the conclusion of the case.

Another issue you will be asked to decide is whether the '293 and '557 patents are invalid. A patent may be invalid for a number of reasons, including because it claims subject matter that would have been obvious.

Even though every element of a claim is not shown or sufficiently described in a single piece of "prior art," the claim may still be invalid if it would have been obvious to a person of ordinary skill in the field of technology of the patent at the relevant time. You will need to consider a number of questions in deciding whether the invention(s) claimed in the '293 and '557 patents are obvious. I will provide you detailed instructions on these questions at the conclusion of the case.

If you decide that any claim of the '293 patent or the '557 patent has been infringed and is not invalid, you will then need to decide any money damages

to be awarded to Tetra Tech to compensate it for the infringement. A damages award should put Tetra Tech in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Tetra Tech would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate Tetra Tech and not to punish Pavemetrics. You may not include in your award any additional amount as a fine or penalty in order to punish Pavemetrics. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

# INSTRUCTION NO. 23

## Patent Claims

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims." The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of the invention and provide a context for the claims, but it is the claims that define the breadth of the patent's coverage. Therefore, what a patent covers depends, in turn, on what each of its claims covers.

To know what a claim covers, a claim sets forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. The requirements of a claim are often referred to as "claim elements" or "claim limitations." The coverage of a patent is assessed claim-by-claim.

When a thing (such as a product or process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall" within the scope of that claim. In other words, a claim covers a product or process where each of the claim elements or limitations is present in that product or process.

You will first need to understand what each claim covers in order to decide whether or not there is infringement of the claim and to decide whether or not the claim is invalid. The first step is to understand the meaning of the words used in the patent claim.

The law says that it is my role to define the terms of the claims and it is your role to apply my definitions of the terms I have construed to the issues that you are asked to decide in this case. Therefore, as I explained to you at the start of the case, I have determined the meaning of certain claim terms and I will provide to you my definition of certain claim terms. You must accept my definitions of these words in the claims as being correct. It is your job to take these definitions and apply them to the issues that you are deciding, including the issues of infringement and validity.

For any words in the claim for which I have not provided you with a definition, you should apply the ordinary meaning of those terms in the field of the patent. You should not take my definition of the language of the claims as indication that I have a view regarding how you should decide the issues that you are being asked to decide, such as infringement and invalidity. These issues are yours to decide.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 24**

**Patents at Issue**

I have already determined the meaning of the claims of the '293 and '557 patents. A chart reflecting those meanings appears on the page following this instruction. For a claim term for which I have not provided you with a definition, you should apply the ordinary meaning of that term in the field of the patent. You are to apply my definitions of the terms I have construed throughout this case. However, my interpretation of the language of the claims should not be taken as an indication that I have a view regarding issues such as infringement and invalidity. Those issues are yours to decide. I will provide you with more detailed instructions on the meaning of the claims before you retire to deliberate your verdict.

# INSTRUCTION NO. 25

## Claim Terms Defined

The Court has defined the following terms in the '293 Patent.

| Term | Meaning |
|------|---------|
| "neighborhood" ('293 Patent, Claim 1) | "zone of a limited area" |
| "moving the gradient neighborhood like a sliding window over the 3D elevation data" ('293 Patent, Claim 1) | "sequentially and completely applying the gradient neighborhood to the 3D elevation data" |
| "is configured to run an algorithm" ('293 Patent, Claim 1) | "is programmed to run an algorithm without the need to rebuild, rewrite or recompile the code for, or redesign any of that hardware or software" |
| Comprising the steps of: a, b, c, d ('293 Patent, Claim 1) | "the algorithm must be configured to run the steps in the recited order" |
| "track elevation map" ('293 Patent, Claim 1) | "representation of both the height (elevation) and intensity of reflected laser light (intensity) at each data point within an area across the entire width of the railway track bed" A "track elevation map" is not required to encode elevation and intensity data separately at each point, but instead may encode the elevation and intensity data by blending or merging the values with mathematical formulas. |

**INSTRUCTION NO. 26**

**Direct Infringement by "Literal Infringement"**

In order to prove direct infringement by literal infringement, the patent holder must prove by a preponderance of the evidence, i.e., that it is more likely than not, that the alleged infringer made, used, sold, offered for sale within, or imported into the United States a product that meets all of the requirements of a claim and did so without the permission of the patent holder during the time the asserted patent was in force. You must compare the product with each and every one of the requirements of a claim to determine whether all of the requirements of that claim are met. In this case, Tetra Tech contends that Pavemetrics sold or offered for sale in the United States the LRAIL that meets all of the requirements of claims 1 and 21 of the '293 patent.

You must determine, separately for each asserted claim, whether or not there is infringement. For dependent claim 21, if you find that claim 1 from which it depends is not infringed, there cannot be infringement of that dependent claim. On the other hand, if you find that independent claim 1 has been infringed, you must still decide, separately, whether the product meets the additional requirements of claim 21 to determine if claim 21 has been infringed. Dependent claim 21 includes all the requirements of claim 1 plus additional requirements of its own.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 27**

**Infringement Generally**

I will now instruct you how to decide whether or not Tetra Tech has proven that Pavemetrics has infringed the '293 and '557 patents. Infringement is assessed on a claim-by-claim basis. Therefore, there may be infringement as to one claim but no infringement as to another.

In this case, there are two possible ways that a claim may be infringed. The two types of infringement are called: (1) direct infringement and (2) active inducement.

Active inducement is referred to as indirect infringement. There cannot be indirect infringement without someone else engaging in direct infringement. In this case, Tetra Tech has alleged that Pavemetrics directly infringed the system claims of the '293 patent. In addition, Tetra Tech has alleged that AID directly infringed the '557 patent, and Pavemetrics is liable for actively inducing that direct infringement by AID.

In order to prove infringement, Tetra Tech must prove that the requirements for one or more of these types of infringement are met by a preponderance of the evidence, that is, that it is more likely than not that all of the requirements of one or more of each of these types of infringement have been proved.

I will now explain each of these types of infringement in more detail.

# INSTRUCTION NO. 28

## Indirect Infringement—Active Inducement

Tetra Tech alleges that Pavemetrics is liable for infringement by actively inducing another company to directly infringe the '557 patent. As with direct infringement, you must determine whether there has been active inducement on a claim-by-claim basis.

Pavemetrics is liable for active inducement of a claim only if Tetra Tech proves by a preponderance of the evidence:

(1) AID's use of LRAIL directly infringe that claim;

(2) that Pavemetrics took action during the time the '557 patent was in force that was intended to cause and led to AID's infringing use; and

(3) that Pavemetrics was aware of the '557 patent and knew that AID's use, if taken, would constitute infringement of that patent or that Pavemetrics believed there was a high probability that AID's use would infringe the '557 patent and Pavemetrics took deliberate steps to avoid learning of that infringement.

If you find that Pavemetrics was aware of the patent, but believed that the uses it encouraged did not infringe that patent, Pavemetrics cannot be liable for inducement.

In order to establish active inducement of infringement, it is not sufficient that AID itself directly infringes the claim. Nor is it sufficient that Pavemetrics was aware of the use by AID that allegedly constitute the direct infringement. Rather, in order to find active inducement of infringement, you must find either that Pavemetrics specifically intended AID to infringe the '557 patent or that Pavemetrics believed there was a high probability that AID would infringe the '557 patent, but deliberately avoided learning the infringing nature of AID's use. The mere fact, if true, that Pavemetrics knew or should have known that there was a substantial risk that AID's use would infringe the '557 patent would not be sufficient to support a finding of active inducement of infringement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 29**

**Willful Infringement**

In this case, Tetra Tech argues that Pavemetrics willfully infringed the Asserted Patent(s).

To prove willful infringement, Tetra Tech must persuade you that Pavemetrics infringed a valid claim of the Asserted Patent(s). The requirements for proving such infringement were discussed in my prior instructions.

In addition, to prove willful infringement of a claim, Tetra Tech must persuade you that it is more likely true than not true that Pavemetrics intentionally ignored or recklessly disregarded that claim. You must base your decision on Pavemetrics' knowledge and actions at the time of infringement. Evidence that Pavemetrics had knowledge of the patent at the time of infringement by itself is not sufficient to show willfulness. Rather, to show willfulness, you must find that Pavemetrics engaged in additional conduct evidencing deliberate or reckless disregard of Tetra Tech's patent rights.

In deciding whether Pavemetrics willfully infringed, you should consider all of the facts surrounding the infringement including: whether Pavemetrics intentionally copied Tetra Tech's patented technology in developing the accused product or method; whether Pavemetrics knew, or should have known, that its conduct involved an unreasonable risk of infringement; and whether Pavemetrics had a reasonable belief that at the time of infringement that its products did not infringe the Asserted Patent(s) or that the Asserted Patent(s) were invalid.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 30**

**Invalidity—Burden of Proof**

I will now instruct you on the rules you must follow in deciding whether or not Pavemetrics has proven that the asserted claims of the Asserted Patents are invalid. To prove that any claim of a patent is invalid, Pavemetrics must persuade you by clear and convincing evidence, that is, you must be left with a clear conviction that the claim is invalid.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 31**

**Presumption of Validity**

A party accused of infringing a patent may deny infringement and/or prove that the asserted claims of the patent are invalid. A patent is presumed to be valid. In other words, it is presumed to have been properly granted by the PTO. But that presumption of validity can be overcome if clear and convincing evidence is presented in court that proves the patent is invalid.

1
2

**INSTRUCTION NO. 32**

**Invalidity—Prior Art**

3      In order for someone to be entitled to a patent, the invention must actually be not
4  obvious over what came before, which is referred to as the prior art. The parties agree
5  that "UML-TRB2014" is prior art. You must determine whether "Pavemetrics' UML
6  Sale and Support," "EC-TRB2014," and "Gibert-Serra" are prior art that can be
7  considered in determining whether claim(s) of the Asserted Patents would have been
8  obvious. There are different types of prior art, and I will instruct you on the relevant
9  types that you need to consider.

10      Pavemetrics contends that Pavemetrics' UML Sale and Support is prior art
11  because it was publicly known or was used, on sale, or otherwise made available to the
12  public before the filing date of the Asserted Patents. An invention is known when the
13  information about it was reasonably accessible to the public on that date. An invention
14  was publicly used when it was either accessible to the public or commercially exploited.
15  An invention was sold or offered for sale when it was offered commercially and what
16  was offered was ready to be patented, i.e., it was reduced to practice or it had been
17  described such that a person having ordinary skill in the field of the technology could
18  have made and used the claimed invention, even if it was not yet reduced to practice or
19  publicly disclosed.

20      Pavemetrics also contends that EC-TRB2014 and Gibert-Serra are prior art
21  because they were published or otherwise made available to the public before the filing
22  date of the Asserted Patents.

23      Pavemetrics must prove by clear and convincing evidence that Pavemetrics'
24  UML Sale and Support, EC-TRB2014, and Gibert-Serra are prior art.

25
26
27
28

**INSTRUCTION NO. 33**

**Obviousness—Generally**

Pavemetrics contends that the asserted claims of the Asserted Patents are invalid because the claimed inventions are "obvious." A claimed invention is invalid as "obvious" if it would have been obvious to a person of ordinary skill in the art of the claimed invention as of the filing date of the Asserted Patents. Obviousness may be shown by considering one or more than one item of prior art.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the Asserted Patents. You should not use the Asserted Patents as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the art as of the filing date of the Asserted Patents.

The following factors must be evaluated to determine whether Pavemetrics has established that the claimed invention is obvious:

(1) the scope and content of the prior art relied upon by Pavemetrics;

(2) the differences, if any, between each claimed invention of the Asserted Patents that Pavemetrics contends is obvious and the prior art;

(3) the level of ordinary skill in the art as of the filing date of the Asserted Patents; and

(4) additional considerations, if any, that indicate that the invention was obvious or not obvious.

Each of these factors must be evaluated, although they may be analyzed in any order, and you must perform a separate analysis for each of the claims.

Pavemetrics must prove by clear and convincing evidence that the invention would have been obvious. Again, you must undertake this analysis separately for each claim that Pavemetrics contends is obvious.

I will now explain each of the four factors in more detail.

**INSTRUCTION NO. 34**

**The First Factor: Scope and Content of Prior Art**

In deciding obviousness, a prior art reference may be considered if it discloses information designed to solve any problem or need addressed by the patent. A prior art reference may also be considered if it discloses information that has obvious uses beyond its main purpose and if a person of ordinary skill in the art would reasonably examine that reference when trying to solve any problem or need addressed by the patent.

Where Pavemetrics is relying on prior art that was not considered by the PTO during examination, you may consider whether that prior art is significantly different and more relevant than the prior art that the PTO did consider. If you decide it is different and more relevant, you may weigh that prior art more heavily when considering whether Pavemetrics has carried its clear-and-convincing burden of proving invalidity.

## INSTRUCTION NO. 35

## The Second Factor: Differences Between the Claimed Invention and the Prior Art

You should analyze whether there are any relevant differences between the prior art and the claimed invention from the view of a person of ordinary skill in the art as of the date of the Asserted Patents. Your analysis must determine the impact, if any, of such differences on the obviousness or nonobviousness of the claimed invention as a whole, and not merely some portion of it.

In analyzing the relevance of the differences between the claimed invention and the prior art, you do not need to look for precise teaching in the prior art directed to the subject matter of the claimed invention. You may consider the inferences and creative steps that a person of ordinary skill in the art would have employed in reviewing the prior art at the time of the invention. For example, if the claimed invention combined elements known in the prior art and the combination yielded results that were predictable to a person of ordinary skill in the art at the time of the invention, then this evidence would make it more likely that the claim was obvious. On the other hand, if the combination of known elements yielded unexpected or unpredictable results, or if the prior art teaches away from combining the known elements, then this evidence would make it more likely that the claim that successfully combined those elements was not obvious. Another factor is whether it would have been obvious to try the combinations of elements, such as when there is a design incentive or market pressure to solve a problem and there are a finite number of identified, predictable solutions.

Importantly, a claim is not proven obvious merely by demonstrating that each of the elements was independently known in the prior art. Most, if not all, inventions rely on building blocks long-known, and claimed discoveries almost of necessity will likely be combinations of what is already known. Therefore, you should consider whether a reason existed at the time of the invention that would have prompted a person of ordinary skill in the art in the relevant field to combine the teachings in the way the

claimed invention does. The reason could come from the prior art, the background knowledge of one of ordinary skill in the art, the nature of any problem or need to be addressed, market demand, or common sense. If you find that a reason existed at the time of the invention to combine the elements of the prior art to arrive at the claimed invention, and there would have been a reasonable expectation of success for doing so, this evidence would make it more likely that the claimed invention was obvious. Similarly, you may consider the possibility that a reference teaches away from the claimed invention. A reference teaches away from the invention when it would have discouraged a person of ordinary skill in the art as of the filing date of the Asserted Patents from practicing the claimed invention, or when such a person would be led in a different direction than practicing the claimed invention.

You must undertake this analysis separately for each claim that Pavemetrics contends is obvious.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## INSTRUCTION NO. 36

### The Third Factor: Level of Ordinary Skill

To determine the obviousness of the invention, you must determine the level of ordinary skill in the field of the invention at the time of the filing date of the Asserted Patents. Regardless of whether you are asked to articulate in your verdict what you believe was the level of ordinary skill in the field of the invention, you must consider and assess this factor before reaching your conclusion in this case.

The person of ordinary skill is presumed to know all prior art that you have determined to be reasonably relevant. The person of ordinary skill is also a person of ordinary creativity that can use common sense to solve problems.

When determining the level of ordinary skill in the art, you should consider all the evidence submitted by the parties, including evidence of:

(1) the level of education and experience of persons actively working in the field as of the filing date of the Asserted Patents, including the inventor;

(2) the types of problems encountered in the art as of the filing date of the Asserted Patents; and

(3) the sophistication of the technology in the art as of the filing date of the Asserted Patents, including the rapidity with which innovations were made in the art as of the filing date of the Asserted Patents.

**INSTRUCTION NO. 37**

**The Fourth Factor: Other Considerations**

Before deciding the issue of obviousness for each claimed invention, you must also consider certain factors, which may help to determine whether the invention would have been obvious. No factor alone is dispositive, and you must consider the obviousness or nonobviousness of the invention as a whole. Certain of these factors include:

1. Were products covered by the claim commercially successful due to the merits of the claimed invention rather than due to advertising, promotion, salesmanship, or features of the product other than those found in the claim?

2. Was there long-felt need for a solution to the problem facing the inventor, which was satisfied by the claimed invention?

3. Did others try, but fail, to solve the problem solved by the claimed invention?

4. Did others copy the claimed invention?

5. Did the claimed invention achieve unexpectedly superior results over the closest prior art?

6. Did others in the field, or Pavemetrics, praise the claimed invention or express surprise at the making of the claimed invention?

7. Did others accept licenses under the Asserted Patents because of the merits of the claimed invention?

Answering all, or some, of these questions "yes" may suggest that the claim was not obvious.

A factor that may suggest obviousness includes whether another person simultaneously and independently created the same invention claimed in the patents.

These factors are relevant only if there is a connection, or nexus, between the factor and the invention covered by the patent claim. Even if you conclude that some

of the above factors have been established, those factors should be considered along with all the other evidence in the case in determining whether Pavemetrics has proven that the claimed invention would have been obvious.

# INSTRUCTION NO. 38

## Damages—Introduction

If you find that Pavemetrics infringed any valid claim of the Asserted Patents, you must then consider what amount of damages to award to Tetra Tech. I will now instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win this case, on any issue. If you find that Pavemetrics has not infringed any valid claim of the patent, then Tetra Tech is not entitled to any damages.

The damages you award must be adequate to compensate Tetra Tech for the infringement. They are not meant to punish an infringer. Your damages award, if you reach this issue, should put Tetra Tech in approximately the same financial position that it would have been in had the infringement not occurred.

Tetra Tech has the burden to establish the amount of its damages by a preponderance of the evidence. In other words, you should award only those damages that Tetra Tech establishes it more likely than not suffered. While Tetra Tech is not required to prove the amount of its damages with mathematical precision, they must prove them with reasonable certainty. You may not award damages that are speculative, damages that are only possible, or damages that are based on guesswork.

There are different types of damages that Tetra Tech may be entitled to recover. In this case, Tetra Tech seeks lost profits and/or a reasonable royalty. Lost profits consist of any actual reduction in business profits Tetra Tech suffered as a result of Pavemetrics' infringement. A reasonable royalty is defined as the money amount Tetra Tech and Pavemetrics would have agreed upon as a fee for use of the invention at the time prior to when infringement began. But, regardless of the type of damages you may choose to award, you must be careful to ensure that award is no more or no less than the value of the patented invention.

1    I will give more detailed instructions regarding damages shortly. Note, however,

2    that Tetra Tech is entitled to recover no less than a reasonable royalty for each infringing

3    sale, offer for sale, and use.

# INSTRUCTION NO. 39

## Lost Profits—"But For" Test

To recover lost profits (as opposed to reasonable royalties), Tetra Tech must show a causal relationship between the infringement and Tetra Tech's loss of profit. In other words, Tetra Tech must show that, but for the infringement, there is a reasonable probability that Tetra Tech would have earned higher profits. To show this, Tetra Tech must prove that, if there had been no infringement, it would have made some portion of the sales that Pavemetrics made of the infringing product.

Tetra Tech is entitled to lost profits if it establishes each of the following:

(1) That there was demand for the patented product.

(2) That there were no available, acceptable, noninfringing substitute products.

(3) That Tetra Tech had the manufacturing and marketing capacity to make any infringing sales actually made by Pavemetrics and for which Tetra Tech seeks an award of lost profits—in other words, that Tetra Tech was capable of satisfying the demand.

(4) The amount of profit that Tetra Tech would have made if Pavemetrics had not infringed.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 40**

**Lost Profits—Demand**

Demand for the patented product can be proven by significant sales of a patent holder's patented product or significant sales of an infringing product containing the patented features.

**INSTRUCTION NO. 41**

**Lost Profits—Noninfringing Substitutes—Availability**

An alternative product may be considered "available" as a potential substitute even if the product was not actually on sale during the infringement period. Factors suggesting the alternative was available include whether the material, experience, and know-how to make or use the alleged substitute were readily available at the time of infringement. Factors suggesting the alternative was not available include whether the material was of such high cost as to render the alternative unavailable and whether an alleged infringer would have had to design or invent around the patented technology to develop an alleged substitute.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 42**

**Lost Profits—Noninfringing Substitutes—Acceptability**

To be an "acceptable, noninfringing substitute," a product must have the advantages of the patented invention that were important to people who purchased Pavemetrics' product. If purchasers of Pavemetrics' product were motivated to buy that product because of features available only from that product and Tetra Tech's patented product, then some other, alternative product is not an acceptable substitute, even if it otherwise competed with Tetra Tech's and Pavemetrics' products. On the other hand, if the realities of the marketplace are that competitors other than the patentee would likely have captured the sales made by the infringer, despite a difference in the products, then the patentee is not entitled to lost profits on those sales.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 43**

**Lost Profits—Capacity**

A patent holder is only entitled to lost profits for sales it could have actually made. In other words, Tetra Tech must show that it had the manufacturing and marketing capability to make the sales it said it lost. This means Tetra Tech must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

1
2

**INSTRUCTION NO. 44**

**Lost Profits—Amount of Profit**

3       A patent holder may calculate its lost profits on lost sales by computing the lost
4   revenue for sales it claims it would have made but for the infringement and subtracting
5   from that figure the amount of additional costs or expenses it would have incurred in
6   making those lost sales, such as cost of goods, sales costs, packaging costs, and shipping
7   costs. Certain fixed costs that do not vary with increases in production or scale, such as
8   taxes, insurance, rent, and administrative overhead, should not be subtracted from a
9   patent holder's lost revenue.

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 45**

**Reasonable Royalty—Entitlement**

If you find that a patent claim is infringed and not invalid, Tetra Tech is entitled to at least a reasonable royalty to compensate it for that infringement.

If you find that Tetra Tech has not proved its claim for lost profits or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Tetra Tech a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

1
2

# INSTRUCTION NO. 46

## Reasonable Royalty—Definition

A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the alleged infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the alleged infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and that both parties were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation just prior to the first infringement.

17
18
19
20
21
22
23
24
25
26
27
28

54

**INSTRUCTION NO. 47**

**Reasonable Royalty—Relevant Factors**

In determining the amount of a reasonable royalty, you may consider evidence on any of the following factors, in addition to any other evidence presented by the parties on the economic value of the patent:

1. Any royalties received by the licensor for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

2. The rates paid by Pavemetrics to license other patents comparable to the Asserted Patents.

3. The nature and scope of the license, as exclusive or non-exclusive, or as restricted or non-restricted in terms of its territory or with respect to whom the manufactured product may be sold.

4. The licensor's established policy and marketing program to maintain its right to exclude others from using the patented invention by not licensing others to use the invention, or by granting licenses under special conditions designed to preserve that exclusivity.

5. The commercial relationship between the licensor and the licensee, such as whether or not they are competitors in the same territory in the same line of business.

6. The effect of selling the patented product in promoting other sales of the licensee; the existing value of the invention to the licensor as a generator of sales of its non-patented items; and the extent of such collateral sales.

7. The duration of the Asserted Patents and the term of the license.

8. The established profitability of the product made under the Asserted Patents; its commercial success; and its popularity.

9. The utility and advantages of the patented invention over the old modes or devices, if any, that had been used for achieving similar results.

10. The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by or for the licensor; and the benefits to those who have used the invention.

11. The extent to which Pavemetrics has made use of the invention; and any evidence that shows the value of that use.

12. The portion of the profit or of the selling price that may be customary in the particular business or in comparable businesses to allow for the use of the invention or analogous inventions.

13. The portion of the profit that arises from the patented invention itself as opposed to profit arising from unpatented features, such as the manufacturing process, business risks, or significant features or improvements added by the accused infringer.

14. The opinion testimony of qualified experts.

15. The amount that a licensor and a licensee (such as Pavemetrics) would have agreed upon (at the time the infringement began) if both sides had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a patentee who was willing to grant a license.

16. Any other economic factor that a normally prudent business person would, under similar circumstances, take into consideration in negotiating the hypothetical license.

1
2

**INSTRUCTION NO. 48**

**Damages—Apportionment**

3    The amount you find as damages must be based on the value attributable to the
4  patented invention, as distinct from unpatented features of the accused product or other
5  factors such as marketing or advertising, or Tetra Tech's size or market position. A
6  royalty compensating the patent holder for damages must reflect the value attributable
7  to the infringing features of the product, and no more. The process of separating the
8  value of the allegedly infringing features from the value of all other features is called
9  apportionment. When the accused infringing products have both patented and
10 unpatented features, your award must be apportioned so that it is based only on the value
11 of the patented features, and no more.

12   If the claimed patented features are not the sole driving factor for customer
13 demand for the accused infringing product, then you must perform what is called
14 apportionment. When damages must be apportioned, the amount you find as damages
15 must be based on the value attributable to the patented invention, as distinct from
16 unpatented features of the accused product or other factors such as marketing or
17 advertising, or Tetra Tech size or market position. Put differently, when apportionment
18 is required, a royalty compensating the patent holder for damages must reflect the value
19 attributable to the infringing features of the product, and no more.

20   On the other hand, if demand for the entire accused product depends only on the
21 claimed feature(s), then apportionment is not necessary even though the accused
22 product includes non-patented features.

23
24
25
26
27
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 49**

**Date of Commencement of Damages**

In determining the amount of damages, you must determine when the damages began. For the '293 Patent, damages commence on the date that Pavemetrics has both infringed and been notified of the alleged infringement of the '293 Patent. Tetra Tech and Pavemetrics agree that Tetra Tech gave notice on January 5, 2021.

In determining when damages begin with regard to the '557 Patent, there is no notice requirement because the '557 Patent is directed to method claims. Accordingly, the calculation of damages for infringement of the '557 Patent begins as of the date the patent issued or the date the infringement began, whichever was later.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**INSTRUCTION NO. 50**

**Duty to Deliberate**

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

# INSTRUCTION NO. 51

## Consideration of Evidence—Conduct of the Jury

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves. Except for discussing the case with your fellow jurors during your deliberations:

Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses, or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete, or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

A juror who violates these restrictions jeopardizes the fairness of these proceedings, and a mistrial could result that would require the entire trial process to start over. If any juror is exposed to any outside information, please notify the court immediately.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 52**

**Communication with Court**

If it becomes necessary during your deliberations to communicate with me, you may send a note through the clerk, signed by any one or more of you. No member of the jury should ever attempt to communicate with me except by a signed writing. I will not communicate with any member of the jury on anything concerning the case except in writing or here in open court. If you send out a question, I will consult with the lawyers before answering it, which may take some time. You may continue your deliberations while waiting for the answer to any question. Remember that you are not to tell anyone—including the court—how the jury stands, whether in terms of vote count or otherwise, until after you have. reached a unanimous verdict or have been discharged.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INSTRUCTION NO. 53**

**Return of Verdict**

A verdict form has been prepared for you. The verdict form is made up of a number of yes or no questions. After you have reached unanimous agreement on a verdict, your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.