# EXHIBIT A

RESTRICTED - ATTORNEYS' EYES ONLY

Tregillis, Christian March 25, 2022

```
                                                              1

                  UNITED STATES DISTRICT COURT

                  CENTRAL DISTRICT OF CALIFORNIA

      --------------------------------:

      PAVEMETRICS SYSTEMS, INC.,       :

           Plaintiff,                  :

                v.                     : Case No.

      TETRA TECH, INC.,                : 2:21-cv-1289 MCS-MMA

           Defendant.                  :

      AND RELATED COUNTERCLAIMS        :

      --------------------------------:


              **RESTRICTED - ATTORNEYS' EYES ONLY**


                                    VIRTUAL VIA ZOOM

                                    Friday, March 25, 2022




                    VIDEOTAPED DEPOSITION OF

                      CHRISTIAN TREGILLIS
```

Henderson Legal Services, Inc.

202-220-4158 www.hendersonlegalservices.com

183

| | | |
|---|---|---|
| 1 | important, as I've explained in my report. I | 18:13:20 |
| 2 | understand that there was an incumbent that had a | 18:13:23 |
| 3 | cost that CSX thought was too expensive. And | 18:13:31 |
| 4 | replacing that with a system that had a cost of | 18:13:38 |
| 5 | close to $5 million that could be amortized over a | 18:13:43 |
| 6 | period of time and used over a period of time, but | 18:13:50 |
| 7 | which, in the short term, could be expensive. That | 18:13:53 |
| 8 | that was not obvious to me that that would be | 18:13:59 |
| 9 | appealing to CSX. I think there would be | 18:14:06 |
| 10 | challenges, as we saw did occur. | 18:14:08 |
| 11 |     Q. Do you disagree with Mr. Schoettelkotte's | 18:14:10 |
| 12 | opinions and analysis concerning the cost savings | 18:14:20 |
| 13 | that CSX would have enjoyed, had it gone with Tetra | 18:14:25 |
| 14 | Tech's 3DTAS? | 18:14:30 |
| 15 |     A. I'm not offering a rebuttal opinion that | 18:14:33 |
| 16 | I disagree with that. I think that there are | 18:14:37 |
| 17 | potentially some issues it, but I'm not offering an | 18:14:40 |
| 18 | opinion rebutting his analysis on that. | 18:14:44 |
| 19 |     Q. What, ultimately, is your opinion | 18:14:47 |
| 20 | regarding lost profits in this case? | 18:14:54 |
| 21 |     A. I think that there is substantial | 18:14:56 |
| 22 | evidence indicating that there would not be lost | 18:15:03 |

184

1  profits, because of the failure on Panduit factor        18:15:07
2  number 2, relating to non-infringing substitutes.        18:15:15
3  But ultimately, like I said, while I see substantial     18:15:19
4  evidence that indicates there should not be an award    18:15:23
5  of lost profits, that's really the choice of the         18:15:26
6  jury, the trier of fact.                                 18:15:29
7        Q.    Is your opinion that there should be zero   18:15:32
8  lost profits, or it should be limited by a certain       18:15:41
9  amount, based on the availability of acceptable          18:15:44
10 non-infringing alternatives?                             18:15:48
11       A.    No, I think you maybe misunderstand my      18:15:49
12 opinion, as compared to that of Mr. Schoettelkotte.     18:15:54
13 Mr. Schoettelkotte has reached a conclusion that he     18:15:57
14 believes there should be an award of lost profits.      18:16:01
15 I don't think that's true.  But I also don't offer      18:16:05
16 an opinion that there should not be an award of lost    18:16:08
17 profits.                                                 18:16:12
18            I do have an opinion that relates to         18:16:12
19 non-infringing substitutes, which I think is            18:16:16
20 instructive to the question of lost profits, but it     18:16:18
21 is above my pay grade to call balls and strikes and     18:16:21
22 make decisions about whether there should be an         18:16:24

243

1        CERTIFICATE OF NOTARY PUBLIC & REPORTER

2

3     I, SUSAN L. CIMINELLI, the officer before whom

4  the foregoing deposition was taken, do hereby

5  certify that the witness whose testimony appears in

6  the foregoing deposition was duly sworn; that the

7  testimony of said witness was taken in shorthand and

8  thereafter reduced to typewriting by me or under my

9  direction; that said deposition is a true record of

10  the testimony given by said witness; that I am

11  neither counsel for, related to, nor employed by any

12  of the parties to the action in which this

13  deposition was taken; and, further, that I am not a

14  relative or employee of any attorney or counsel

15  employed by the parties hereto, nor financially or

16  otherwise interested in the outcome of this action.

17

18        _____

19              SUSAN L. CIMINELLI

20           Notary Public in and for the

21           District of Columbia

22  My Commission Expires November 30, 2026.                    09:05:50

# EXHIBIT B

| | |
|---|---|
| **From:** | Cerulli, Nicholas |
| **To:** | Joe Re; Christy Lea; Nicholas Zovko; Alan Laquer; Raymond Lu; Lit PAVEL.001L |
| **Cc:** | Parker, Aaron; Chung, Daniel; Horn, Kelly; Mathew, Jency; Ridge, Donald L.; Ecklund, Steve; Barney, James |
| **Subject:** | RE: Tetra Tech"s Initial Deposition Designations - Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA |
| **Date:** | Monday, August 8, 2022 4:07:37 PM |
| **Attachments:** | 2022.08.08 - Tetra Tech"s Revised Initial Deposition Designations.zip |
| | 2022.08.08 - Tetra Tech"s Objections to Pavemetrics" Counter-Counter Deposition Designations.zip |

Counsel,

Attached are Tetra Tech's revised initial deposition designations.  Many designations related to authenticity have been deleted based on the stipulations agreed upon between the parties.  Should Pavemetrics challenge the authenticity of any documents related to these designations, Tetra Tech reserves the right to play the designations that have been deleted from its original designations.

Also attached are Tetra Tech's objections to Pavemetrics' counter-counter deposition designations.

Best regards,

Nick

**Nicholas Cerulli**
Associate

Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4248 | fax: 202.408.4400 | nicholas.cerulli@finnegan.com | www.finnegan.com



**From:** Cerulli, Nicholas
**Sent:** Thursday, July 14, 2022 11:30 PM
**To:** EXT- joe.re@knobbe.com <joe.re@knobbe.com>; Christy.Lea <Christy.Lea@knobbe.com>; Nicholas.Zovko <Nicholas.Zovko@knobbe.com>; Alan.Laquer <Alan.Laquer@knobbe.com>; Raymond.Lu <Raymond.Lu@knobbe.com>; Lit PAVEL.001L <LitPAVEL.001L@knobbe.com>
**Cc:** Parker, Aaron <Aaron.Parker@finnegan.com>; Chung, Daniel <Daniel.Chung@finnegan.com>; Horn, Kelly <Kelly.Horn@finnegan.com>; Mathew, Jency <Jency.Mathew@finnegan.com>; Ridge, Donald L. <dridge@clarkhill.com>; Ecklund, Steve <steve.ecklund@finnegan.com>; Barney, James <James.Barney@finnegan.com>
**Subject:** Tetra Tech's Initial Deposition Designations - Pavemetrics v. Tetra Tech, Case 2:21-cv-01289-MCS-MAA

Counsel,

Attached are Tetra Tech's initial deposition designations.

These initial designations are not intended to be comprehensive or encompassing of all testimony which Tetra Tech will ultimately designate or upon which Tetra Tech will rely, and Tetra Tech

reserves its right to supplement these initial deposition designations, including in view of Pavemetrics' designations and once the issues for trial are finalized.  Tetra Tech further reserves the right to rely on any testimony designated by Pavemetrics, subject to any evidentiary objections. Finally, Tetra Tech reserves the right to rely on any portion of a witness's deposition testimony for authentication or impeachment purposes.

Best regards,

Nick

**Nicholas Cerulli**
Associate

Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW, Washington, DC 20001-4413
202.408.4248 | fax: 202.408.4400 | nicholas.cerulli@finnegan.com | www.finnegan.com



This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

# EXHIBIT C

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Spencer, Bradford                                      January 20, 2022

```
                                                          1

               UNITED STATES DISTRICT COURT

              CENTRAL DISTRICT OF CALIFORNIA
    ---------------------------- )
    PAVEMETRICS SYSTEMS, INC.,    )
                    Plaintiff,    )Case No.
           vs.                    )2:21-cv-1289 MCS-MMA
    TETRA TECH, INC.,             )
                    Defendant.    )
    ---------------------------- )
    AND RELATED COUNTERCLAIMS     )
    ---------------------------- )

             CONFIDENTIAL - ATTORNEYS' EYES ONLY

            REMOTE DEPOSITION OF BRADFORD SPENCER

                      JANUARY 20, 2022














        REPORTED BY:  Tina Alfaro, RPR, CRR, RMR
```

Henderson Legal Services, Inc.

202-220-4158                          www.hendersonlegalservices.com

Exhibit C
-12-

CONFIDENTIAL - ATTORNEYS' EYES ONLY

Spencer, Bradford                                             January 20, 2022

4 (Pages 10 to 13)

---

Page 10

1  testimony?
2     A. No.
3     Q. Do you understand that you're here
4  testifying on behalf of CSX Transportation, Inc.
5  pursuant to a subpoena served by Tetra Tech in
6  connection with a civil action involving Tetra Tech
7  and Pavemetrics?
8     A. That's what I understand, yes.
9     MR. BILIK: This is counsel for CSX
10 Transportation, Inc. Just noting as the subpoena
11 topics were modified pursuant to a ruling of the
12 United States District Court for the Middle
13 District of Florida. So he's appearing today
14 pursuant to those narrowed topics, five topics.
15    Q. Mr. Spencer, do you understand that you're
16 here testifying on behalf of CSX Transportation,
17 Inc. on five agreed upon narrowed topics?
18    A. Yes.
19         (Defendants' Exhibit 450 was
20          marked for identification.)
21 BY MR. CHUNG:
22    Q. I'm going to mark as Exhibit 450 to your
23 deposition an e-mail chain between counsel for
24 Tetra Tech and counsel for CSX Transportation, Inc.
25    Mr. Spencer, I've put Exhibit 450 on the

---

Page 11

1  share screen. Do you see the document?
2     A. Yes.
3     Q. I'm just going to direct your attention to
4  page 2, and do you see the five topics bullet
5  pointed on page 2?
6     A. Yes.
7     MR. BILIK: Mr. Chung, if you don't have
8  an objection, we have printed out on a Word
9  document those topics just to have -- to put in
10 front of Mr. Spencer if you're okay with that.
11    MR. CHUNG: Okay. Is it -- is it the same
12 topics from this e-mail, Counsel?
13    MR. BILIK: Yes. It's verbatim. I'll
14 represent it's the identical topics that you're
15 showing on the screen.
16    MR. CHUNG: Okay. Great.
17 BY MR. CHUNG:
18    Q. Mr. Spencer, do you understand that these
19 five topics are the topics that you are designated
20 to testify --
21    A. Yes.
22    Q. -- on behalf of CSX Transportation?
23 Great.
24    And are you prepared to testify on the
25 topics --

---

Page 12

1     THE REPORTER: Please -- hold on. Please
2  make sure we wait for the question to finish
3  because I did not get the answer to the last
4  question.
5     A. Yes, I do understand that these are the
6  five topics.
7     Q. And are you prepared to testify on these
8  topics today?
9     A. Yes.
10    Q. If I refer to CSXT, do you understand that
11 that would refer to CSX Transportation, Inc.?
12    A. I do.
13    Q. Okay. Great.
14    Mr. Spencer, who is your current employer?
15    A. CSX Transportation, Inc.
16    Q. And what is your current position at CSXT?
17    A. I'm the director of track testing.
18    Q. And what are your responsibilities as the
19 director of track testing?
20    A. I'm responsible for geometry testing of
21 the CSX network, whether it be manned cars, manned
22 on-track cars, or whether it be autonomous boxcars
23 or we have several trucks that operate with
24 equipment that also do testing. One is a clearance
25 truck, it's a light R truck, and one is a light

---

Page 13

1  geometry and machine division joint bar truck.
2     Then, of course, the responsible people
3  that operate all this equipment, that also falls
4  under my jurisdiction. I also at times -- the
5  budget for the rail testing side of CSX, which is a
6  little different than geometry testing, falls under
7  me. That's basically it, all the geometry testing
8  for the engineering department.
9     Q. Generally what is the -- what is geometry
10 testing?
11    A. Geometry testing is to use automated
12 equipment to apply dynamic forces to the track
13 using heavy equipment, on-track equipment, and the
14 testing equipment is instrumented with sensors and
15 transducers and computers and a lot of hardware to
16 make these tests possible, and we measure the
17 relationship of one rail to the other rail and the
18 relationship from the rails to the ballast.
19    Q. I think you stated that you do budgeting
20 for the rail testing side for CSX, which is
21 different than geometry testing?
22    A. That's correct.
23    Q. What is different about the geometry
24 testing side of CSX and the rail testing side of
25 CSX?

---

# EXHIBIT D

                                                                          1

IN THE UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

CASE NO. 2:21-CV-1289 MCS-MMA

- - - - - - - - - - - - - - - - - -x

PAVEMETRICS SYSTEMS INC.,            :

        Plaintiff,                   :

  v.                                 :

TETRA TECH INC.,                     :

        Defendant.                   :

- - - - - - - - - - - - - - - - - -x


** RESTRICTED - ATTORNEYS' EYES ONLY **


VIDEO-RECORDED DEPOSITION OF ALI HAFIZ


Tuesday, January 18, 2022

Commencing at 8:59 a.m. (EST)


(This proceeding was conducted via Zoom.

All participants appeared remotely.)


------------------------------------------

REPORTED BY:  Deanna J. Dean, RDR, CRR

**Page 18**

1  A. No.
2  Q. I'd like to mark as Exhibit 400 to your
3  deposition the 2021, 11/08 subpoena to AID.
4      (Hafiz Exhibit 400 marked for
5      identification.)
6  Q. That should appear in your share file
7  folder shortly. When it appears, could you please
8  open that up.
9  A. Let me download this document.
10     Yeah. I open it in my PC.
11 Q. Thank you, Mr. Hafiz.
12     Have you seen this document before?
13 A. I didn't see this document before as a
14 whole document. Maybe there is some few pages
15 inside I already saw them, but I'm not sure. But
16 as a whole document, I didn't see before.
17 Q. Understood.
18     I will represent for the record that
19 Exhibit 400 is the subpoena served on Advanced
20 Infrastructure Design Incorporated in connection
21 with a civil action involving Tetra Tech and
22 Pavemetrics.
23     Mr. Hafiz, do you understand that you are
24 testifying today pursuant to a subpoena served on
25 behalf of AID?

**Page 19**

1  A. Yes.
2  Q. We can stop sharing, screen sharing, now.
3      Do you understand today that you are
4  testifying on three topics?
5      And, for the record, I will state those
6  three topics, which are, No. 1, the authenticity of
7  documents produced in response to the subpoena;
8  No. 2, from January 2021 to present AID's operation
9  or use of Pavemetrics LRAIL product, including
10 input parameters implemented to operator to use the
11 LRAIL product and output information, results, or
12 data from operating or using the LRAIL product; and
13 No. 3, communications between AID and Pavemetrics
14 relating to the '293 patent, the '557 patent, or
15 the underlying litigation involving the '293 patent
16 and the '557 patent captioned Pavemetrics Systems
17 Incorporated versus Tetra Tech Incorporated and
18 Tetra Tech TAS Incorporated, No.
19 221-cv-1289-MCS-MMA, in Central District of
20 California.
21     Are you prepared to testify on those
22 topics today?
23 A. Yes.
24 Q. Are you familiar with the company Safe
25 Traffic Operation Professionals, also known as

**Page 20**

1  STOP?
2  A. STOP company, according to my
3  understanding, this -- they are the sister company.
4  It's a traffic control company. Provides traffic
5  control for us and for other clients. For "us,"
6  that mean AID.
7  Q. Do AID and STOP share common customers?
8  A. We are the biggest customer for them.
9  Sometimes there is customer for us and the same
10 customer for STOP.
11 Q. Is AID a customer of STOP?
12 A. I don't know how can I say it, but my
13 understanding, STOP is sister company for AID. And
14 sometime we hire them or they provide services for
15 us, for traffic control.
16 Q. What types of services do they typically
17 provide to you?
18 A. Traffic control.
19    ATTORNEY FRABIZZIO: Objection to the
20 form. He answered that question previously.
21    Go ahead and answer.
22    Go ahead and answer, Ali.
23 A. Yeah.
24 Q. What type of traffic control services does
25 STOP provide to AID?

**Page 21**

1     ATTORNEY LU: Objection. Vague.
2  A. According my understanding, they provide
3  traffic control.
4  Q. How frequently do you communicate with
5  STOP employees?
6  A. It's depend on the project. If I need
7  them to help me provide traffic control, I have to
8  communicate with them.
9  Q. Other than traffic control, does STOP
10 provide any other type of service to AID?
11 A. I don't know.
12 Q. Mr. Hafiz, were you asked to produce
13 documents in this case?
14 A. Yes.
15 Q. Who asked you to produce documents?
16 A. Kaz Tabrizi.
17 Q. Could you please repeat the name of the
18 person who asked you to produce documents.
19 A. Kaz Tabrizi.
20 Q. And who is Kaz Tabrizi?
21 A. It is our vice president at Advanced
22 Infrastructure Design.
23 Q. And what did -- what types of documents
24 did he or she ask you to search for?
25 A. He asked me to prepare all the data

**Page 194**

1   A. From the name of the document is "Tie
2   Cracks." That mean this show all the detected
3   cracks from the LRAIL.
4   Q. And what does AID do with KML files?
5   A. We -- AID generate this KML file.
6   Q. What does AID do with KML files after they
7   are generated?
8   A. Let's say we have a project and we
9   generate KML file. We will share it with the
10  clients. But for this KML file, just for interior
11  use.
12  Q. We can take this document down.
13     Mr. Hafiz, what is a QMD file?
14     ATTORNEY LU: Objection. Lacks
15  foundation.
16  Q. I'll rephrase.
17     Mr. Hafiz, are you familiar with the term
18  "QMD file"?
19  A. QMD?
20  Q. Yes.
21  A. No.
22  Q. Are you familiar with any file type having
23  an extension QMD?
24  A. I don't -- no. KMD? No.
25  Q. Are you familiar with the term "Quicken

**Page 195**

1   file"?
2   A. Can you repeat it? Sorry.
3   Q. Are you familiar with the term "Quicken
4   file"?
5   A. No.
6   Q. When did you first hear about the patent
7   infringement case involving Tetra Tech and
8   Pavemetrics pursuant to which your subpoena was
9   issued?
10  A. I think in November.
11  Q. November of 2021?
12  A. Yes.
13  Q. How did you first hear about the patent
14  litigation?
15  A. Kaz Tabrizi sent the subpoena.
16  Q. Did you communicate with anyone at AID
17  about the litigation?
18  A. Sorry?
19  Q. Did you communicate with anyone at AID
20  about the litigation involving Tetra Tech and
21  Pavemetrics?
22  A. Yes.
23  Q. Who did you communicate with?
24  A. Kaz Tabrizi.
25  Q. Was -- were your discussions with Kaz

**Page 196**

1   Tabrizi directed to the subpoena?
2   A. Yes.
3   Q. Did you discuss with anyone at AID the
4   '293 patent?
5      ATTORNEY LU: Objection. Lacks
6   foundation.
7   A. I -- I remember I discussed the patent
8   with my supervisor, Manuel Celaya.
9   Q. Do you understand when I refer to '293
10  patent, I'm referring to one of the patents that
11  are being asserted in the underlying litigation?
12  A. Yes.
13  Q. And what did you discuss with your
14  supervisor?
15  A. About how the -- this company is suing
16  Pavemetrics regarding this patent. Yeah. And what
17  we have to prepare for the subpoena, we have to
18  submit all the datas.
19  Q. Did you discuss the -- discuss anything
20  about the patent itself?
21     ATTORNEY LU: Objection. Vague.
22  A. We are not expert in patent, so that's --
23  Q. So there -- did you speak with anyone at
24  AID about the '557 patent, which is the other
25  patent that's being asserted in the litigation

**Page 197**

1   involving Tetra Tech and Pavemetrics?
2   A. We had like very limited discussion about
3   both of them the same time. We didn't split them.
4   We say like the patent and the subpoena.
5   Q. Did you communicate with anyone at
6   Pavemetrics about the litigation?
7      ATTORNEY LU: Objection. Lacks
8   foundation.
9   A. No.
10  Q. Do you know if anyone at AID communicated
11  with Pavemetrics about the litigation?
12  A. Kaz Tabrizi, he was communicating with
13  Pavemetrics.
14  Q. What was discussed in those
15  communications?
16     ATTORNEY LU: Objection. Calls for
17  speculation. Lack of foundation.
18  A. Kaz Tabrizi informed me that he had phone
19  call with Pavemetrics and they told him that a
20  subpoena. Yes, this what Kaz Tabrizi told me. And
21  Pavemetrics ask Kaz to stop using their software
22  for now, and this what we did. We stopped using
23  the software.
24  Q. When did that phone call occur?
25  A. In November, let's say, around this.