Donald Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

James R. Barney (*pro hac vice*)
james.barney@finnegan.com
Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
Kelly S. Horn (*pro hac vice*)
kelly.horn@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413
Telephone: (202) 408-4000
Facsimile:   (202) 408-4400

Jency J. Mathew (*pro hac vice*)
jency.mathew@finnegan.com
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, Virginia 20190-6023
Telephone:   (571) 203-2700
Facsimile:   (571) 203-2777

*Attorneys for Defendant and Counterclaim Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**TETRA TECH'S REPLY IN SUPPORT OF ITS RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING INVALIDITY AND MOTION FOR NEW TRIAL**<br><br>**Honorable Mark C. Scarsi**<br><br>**Date: October 24, 2022**<br>**Time: 9:00 a.m.**<br>**Courtroom: 7C** |

# **TABLE OF CONTENTS**

I.   PAVEMETRICS FAILED TO PROVE INVALIDITY AT TRIAL..............1

    A.   The Critical Source Code Was Never Shown to Be Prior Art..............1

    B.   The Evidence Does Not Support the Jury's Invalidity Findings ..........3

        1.   Claims 1 and 21 of the '293 patent.............................................4

        2.   Claim 8 of the '557 patent..........................................................6

II.   TETRA TECH IS ENTITLED TO A NEW TRIAL.....................................7

III.   CONCLUSION ............................................................................................10

Judgment as a matter of law on the validity of claims 1 and 21 of the '293 patent and claim 8 of the '557 patent is warranted here because Pavemetrics and its expert simply failed to prove invalidity at trial. Pavemetrics' opposition tries to cobble together pieces of the trial exhibits and testimony to justify how the jury found the asserted claims invalid. But the evidence Pavemetrics now identifies is insufficient to show that the claims are invalid. Moreover, Pavemetrics' arguments are too late. This presentation of allegedly invalidating evidence was never made in front of the jury, and thus, Pavemetrics failed to meet its burden at trial.

In addition, the significant and pervasive misconduct of Pavemetrics' counsel at trial entitles Tetra Tech to a new trial on infringement and damages. Pavemetrics' excuses and attempts to minimize its counsel's misconduct and shift the blame to Tetra Tech do not undo the resulting harm and prejudice to Tetra Tech.

## I.     PAVEMETRICS FAILED TO PROVE INVALIDITY AT TRIAL

### A.     The Critical Source Code Was Never Shown to Be Prior Art

Tetra Tech is entitled to judgment as a matter of law that the 2014 source code and the undated MATLAB script relied on in Pavemetrics' UML Sale and Support ground do not qualify as prior art. And, while Pavemetrics argues that UML Sale and Support was not needed to show obviousness (Opp. 1), there are differences among the prior art references, such that, without UML Sale and Support as prior art, it further ensures that no reasonable jury could have found the claims invalid.

Pavemetrics argues that Tetra Tech is incorrect to focus on the source code "in isolation" (Opp. 2), but that is not what Tetra Tech has done. For the UML Sale and Support ground, the source code is the only evidence cited to support the invalidity of certain claim limitations, and thus, it is necessary to establish the source code as prior art. Pavemetrics' suggestion that it does not have to show that the source code is prior art is contrary to law. *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1576 (Fed. Cir. 1996) (the patent challenger bears "the burden of persuasion by clear and convincing evidence on ***all issues*** relating to the status of the [reference] as prior art") (emphasis added).

1

Pavemetrics also wrongly suggests that the Final Pretrial Conference Order "defined" the alleged UML Sale and Support as prior art. Opp. 2. But Pavemetrics cites only to its own section of the Order with its own characterizations of the case. *Id.*; ECF 285 at 8. At no point did the parties ever agree to a definition for UML Sale and Support. Nor did Tetra Tech ever concede that any portions of UML Sale and Support constituted prior art. Regardless, Pavemetrics' reliance on this Order is further misplaced because the jury never considered it in reaching its verdict.

Pavemetrics next argues that the evidence supports that the UML Sale and Support was a public use because it was both commercially exploited and used in a manner accessible to the public. Opp. 2. But Pavemetrics incorrectly focuses on documents and testimony that are unrelated to the source code, which Tetra Tech has challenged as prior art. *Id.*, 2-4. Indeed, while there may have been a 2012 sale of Pavemetrics' LCMS sensors to the University of Massachusetts-Lowell ("UML") and other publications describing Pavemetrics' research with UML, no evidence supports the public use of the 2014 source code or undated MATLAB script.

Pavemetrics' own witness, Dr. Hébert, admitted on the stand that Pavemetrics does not have any evidence to show that the 2014 source code or the undated MATLAB script were ever used. Ex. 4, 148:11-149:7; 150:2-10. And Dr. Hébert's testimony is clear that the only sale occurred in 2012, and that it did not include processing software. Ex. 4, 147:10-12, 146:18-20. The fact that the 2012 LCMS sale included some software does not mean that it included "processing software" for processing acquired railroad track data, let alone that it included the 2014 source code and the undated MATLAB script. In any event, Dr. Hébert confirmed that the 2014 source code and the undated MATLAB script were not part of the 2012 sale. *Id*. Pavemetrics suggests that it later delivered processing software but does not cite to any evidence to support this. Opp. 4. Indeed, Dr. Hébert admitted at trial that Pavemetrics did not have any evidence to support the delivery of the source code. Ex. 4, 148:11-149:7; 150:2-10.

Pavemetrics next cites to *Lockwood v. American Airlines*, 107 F.3d 1565, 1570

2

(Fed. Cir. 1997) and other cases to argue that the source code need not be accessible to the public, but its arguments miss the mark. To show public use, the prior art must either be accessible to the public or commercially exploited. ECF 307 at 37. Pavemetrics has shown neither here. Unlike the *Lockwood* case, in which the hidden software was clearly being used for commercial activity (e.g., booking travel reservations for customers), Pavemetrics has failed to show that the 2014 source code or undated MATLAB script were ever used, let alone commercially. Indeed, even if we assumed that the source code was used before the effective filing date, the documents from around that time suggest that Pavemetrics and UML were simply conducting research and just starting to experiment with algorithms for railroad inspection. Ex. 8 at 3; Ex. 9 at 19-20.

Finally, Pavemetrics argues that it presented sufficient evidence to corroborate the UML Sale and Support as prior art, while complaining that Tetra Tech "cherry-pick[s]" and focuses on the source code. But Pavemetrics ignores that it must corroborate the use of the 2014 source code and the undated MATLAB script in order to map those parts of the prior art to the claims. *See Mahurkar*, 79 F.3d at 1576. Pavemetrics failed to do that at trial, and Dr. Hébert's testimony confirmed that Pavemetrics lacks any corroborating evidence. Ex. 4, 148:11-149:7; 150:2-10.

### B. The Evidence Does Not Support the Jury's Invalidity Findings

Pavemetrics does not dispute that its technical expert failed to provide any invalidity analysis with respect to steps (c) and (d) of claim 1 of the '293 patent or any limitation of claim 8 of the '557 patent, even though it is Pavemetrics' burden to prove invalidity by clear and convincing evidence. *See* Opp. 6-13. Instead, Pavemetrics' opposition pieces together parts of the alleged prior art, many of which were never shown or discussed in front of the jury, to make an argument that the jury could have somehow found the claims obvious. Pavemetrics also exaggerates and mischaracterizes the testimony from other witnesses to try to fill the large void in its own expert's invalidity analysis. But even when viewed in the light most favorable to Pavemetrics, this record testimony and evidence does not support the jury's findings of invalidity.

1  And regardless, Pavemetrics failed to meet its burden ***at trial*** "to clearly disclose, discuss, and identify for the jury the supporting evidence upon which it was relying to prove that the claim limitation was present in the prior art." *Fresenius USA, Inc. v. Baxter Int'l., Inc.*, 582 F.3d 1288, 1300 (Fed. Cir. 2009).

As an initial matter, Pavemetrics argues that it is Tetra Tech's burden to prove that none of the record evidence supports the jury's obviousness verdict. Opp. 6. But this would amount to proving a negative, and it is inconsistent with the requirement that the verdict be supported by "substantial evidence." *Callicrate v. Wadsworth Mfg., Inc.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005). Tetra Tech properly pointed out the claim limitations missing from Pavemetrics' analysis and where it failed to meet its burden.

Pavemetrics is also quick to dismiss the *Fresenius* and *Koito* cases, but those cases make clear that it is Pavemetrics' burden to clearly disclose and explain its invalidity positions to the jury. *Fresenius*, 582 F.3d at 1300. This is of particular importance here, where the technology at issue is complex. *See e.g., Proveris Sci. Corp. v. Innovasystems, Inc.*, 536 F.3d 1256, 1267 (Fed. Cir. 2008). The fact that Pavemetrics' expert "reviewed the prior art and confirmed that it invalidates the claims" is not enough to support an invalidity finding.

### 1. Claims 1 and 21 of the '293 patent

Claim 1 (and claim 21 through its dependency) requires "identifying a railway track bed feature from [a] track elevation map." Pavemetrics identifies nothing in the prior art that discloses this limitation, let alone performing the identification by "defining an appropriate gradient neighborhood representing a small 2D track section over which differential vertical measurements are calculated and ii. moving the gradient neighborhood like a sliding window over the 3D elevation data," as claimed.

Regarding "identifying a railway track bed feature from [a] track elevation map," Pavemetrics points to a "3D merged" image from UML-TRB2014. Opp. 8. But even if the 3D merged image were a "track elevation map" (which Tetra Tech disputes), there is no disclosure in the reference of identifying a railway track bed feature from that

4

image. *See* Ex. 6. Pavemetrics argues that "it would have been obvious to try," but that only applies where there are multiple ***identified***, predictable solutions. Ex. 5, 126:9-13; ECF 307 at 40; *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 421 (2007). The reference itself says nothing about identifying a railway track bed feature from the 3D merged image, nor did anyone, including Pavemetrics' expert, identify this alleged solution to the jury. No reasonable jury could have made that leap on its own.

Pavemetrics also relies on UML Sale and Support's "Fake3D image" but again points to nothing in the reference that discloses identifying a railway track bed feature from that image. Opp. 9. Instead, Pavemetrics alleges that a jury could have found it obvious to apply "UML Sale and Support's feature identification algorithm" to its Fake3D image. *Id*. But not only does Pavemetrics fail to identify a particular algorithm, neither Pavemetrics nor its expert presented this obviousness position to the jury. Thus, no reasonable jury could have reached that conclusion on its own.

Finally, Pavemetrics alleges that EC-TRB2014 discloses algorithms for identifying features from 3D data. Opp. 9. But EC-TRB2014's disclosure of 3D data (i.e., "a 3-D cloud of points") is not sufficient to disclose identifying a railway track bed feature from a "track elevation map," which requires both elevation and intensity data, under the Court's construction. ECF 103 at 32. Indeed, the 3-D cloud of points includes only elevation data, and EC-TRB2014 is otherwise silent regarding both elevation and intensity data being used to identify a railway track bed feature. *See* Ex. 510.

Pavemetrics cites to the use of Sobel kernels and the Canny method in both UML Sale and Support and UML-TRB2014 to allege that they are gradient neighborhoods which are moved like a sliding window over images. Opp. 10-11. But Pavemetrics does not identify anything in the references that shows these operators are "appropriate gradient neighborhood[s]" or that they necessarily are used to calculate "differential vertical measurements." Pavemetrics' assertion that Dr. Morellas testified to this notion is incorrect, as he was discussing Pavemetrics' LRAIL and its neural network, and not making general characterizations about the art as a whole. Ex. 5, 52:2-20.

The record evidence also fails to disclose step (d) in claim 1. Pavemetrics argues, despite the lack of any evidence presented at trial, that because a feature is identified, or an image is captured, that the processor must have stored it in a data storage apparatus. Opp. 11. But this is an inherency argument that no expert ever presented to the jury. Pavemetrics also mischaracterizes Tetra Tech's expert's testimony to suggest that a system identifying features must also store the features, but again, Dr. Morellas was testifying about what Pavemetrics' LRAIL does based on the evidence he reviewed, not what is necessarily present in all cases. Ex. 2, 169:2-19, 188:9-189:2. Pavemetrics also cites to out-of-context statements in LCMS user manuals that discuss saving results and XML files, but again, this was never presented to the jury, and even if it was, it does not render obvious "storing information corresponding to the identified railway track bed feature in the data storage apparatus," as claimed. Further, that Tetra Tech never specifically argued whether the prior art disclosed step (d) is irrelevant because it is Pavemetrics' burden to prove invalidity of each and every limitation in the claims.

Finally, Pavemetrics ignores the fact that, after attempting to combine references at trial, it never explained to the jury which reference it was relying on to disclose each element of the claims. But it was Pavemetrics' burden at trial to clearly disclose and explain its invalidity positions to the jury. *Fresenius*, 582 F.3d at 1300. Thus, Pavemetrics' post hoc analysis for claims 1 and 21 is not only insufficient, it is too late because none of it was presented to the jury.

### 2. Claim 8 of the '557 patent

Pavemetrics contends that Tetra Tech identifies only one limitation in claim 8 that lacks substantial evidence for obviousness. Opp. 12. This is incorrect. Claim 8 includes several method steps, and Tetra Tech made clear in its opening brief that "no limitation of claim 8 was ever addressed in Pavemetrics' case-in-chief on invalidity." ECF 323-1 at 12-14. In its opposition, Pavemetrics fails to point to any evidence where the rest of the limitation of claim 8 were found in the prior art and, thus, has effectively conceded that no evidence was presented at trial on those other limitations of claim 8.

Regarding the one limitation Pavemetrics does address ("wherein significant elevations due to the rail heads for each rail have been removed from the elevation data"), that limitation is nowhere in the prior art. Pavemetrics argues that both UML-TRB2014 and UML Sale and Support disclose a double threshold operator that extracts the rail head contour. Opp. 11-13. But extracting the position of the rail head is different from removing the rail head from elevation data. In fact, the only expert that spoke about this limitation was Dr. Morellas, who explained that the prior art's extraction was the exact opposite of removing the rail head. Ex. 5, 79:10-80:2. Thus, no reasonable jury could have concluded that claim 8 was obvious.

## II. TETRA TECH IS ENTITLED TO A NEW TRIAL

Tetra Tech is entitled to a new trial because Pavemetrics' counsel exhibited a pattern of misconduct that permeated the entire trial, and often persisted after explicit reprimands from the Court. *Anheuser–Busch Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995); *see also* Br. 2. And even if the individual acts alone do not warrant a new trial, when viewed in the aggregate, the misconduct was prejudicial and rendered the trial unfair. The cumulative effect of the misconduct was that it left the jury with the intended and lasting impression that Tetra Tech acted improperly and that Tetra Tech's witnesses were hiding information.

Pavemetrics' assertion that "[Tetra Tech] failed to show infringement" (Opp. 14) is pure speculation because the verdict form did not indicate which of Pavemetrics' theories the jury found convincing or whether it discredited Tetra Tech's witnesses based on Pavemetrics' prejudicial remarks. Indeed, Pavemetrics admits repeatedly that the jury could have considered Pavemetrics' improper arguments to judge the credibility of Tetra Tech's witnesses, which emphasizes that the misconduct was egregious enough to taint the reliability of the verdict. *See* Opp. 15, 17, 19, 20, 24-25.

Pavemetrics correctly notes that Tetra Tech is "entitled to a fair, not a perfect trial." Opp. 13. But the misconduct by Pavemetrics' counsel ensured that the trial was neither perfect nor fair. Permitting the verdict to stand would effectively reward

7

Pavemetrics for its egregious misconduct. To prevent the miscarriage of justice, it is therefore necessary that Tetra Tech be granted a new trial.

Pavemetrics attempts to justify the various instances of misconduct at trial and minimize the effect of that misconduct on the jury. These attempts, however, fail to negate the pervasiveness of the misconduct and effect on the jury and instead, underscore the prejudice to Tetra Tech.

Pavemetrics' counsel improperly sought to blame Dr. Morellas for not having reviewed Pavemetrics' neural network files during his source code review and challenged the veracity of Dr. Morellas' explanation. Opp. 14-15. But as the Court recognized during trial, Dr. Morellas was testifying about his understanding of the availability of the code, and it was improper to expect him to testify about a discovery dispute between the parties and the facts underlying that dispute. Ex. 3, 62:10-63:4.

Pavemetrics argues that Tetra Tech exaggerates the improper attack on Dr. Morellas' character during Pavemetrics' closing because, according to Pavemetrics, the "primary point" being made was that Dr. Morellas relied on a paper rather than the code. Opp. 16. But this assertion is belied by the fact that Pavemetrics prefaced its remarks about the paper with an attack on Dr. Morellas about allegedly not reviewing the code. And regardless of the "primary point" of the argument, Pavemetrics' counsel's blatant disregard for the Court's ruling was prejudicial to Tetra Tech because it was inviting the jury to blame Dr. Morellas for the parties' discovery dispute.

Pavemetrics' assertion that "[t]he jury could have found Frakes more credible than Morellas on whether the neural network satisfied certain claim limitations" underscores the prejudicial effect the misconduct had on Tetra Tech. Opp. 15. Pavemetrics' attack on Dr. Morellas' credibility based on the parties' discovery disputes was improper, and the effect of that improper attack was that it tainted the jury's ability to fairly judge Dr. Morellas' credibility.

Pavemetrics further argues that Tetra Tech is precluded from objecting to Pavemetrics' closing remarks about customer subpoenas because Tetra Tech did not

8

1 object to the mention of those subpoenas earlier during trial. *See* Op. 16-17. But this argument is misplaced. Tetra Tech does not suggest that the earlier references to the customer subpoenas were improper. Rather, it was the closing remarks which were improper, as they attacked Tetra Tech's credibility for using routine litigation tools to obtain discovery. Contrary to Pavemetrics' assertion, the decision to subpoena customers is not an "extreme step," nor does it have any bearing on whether Tetra Tech is "a good corporate citizen." *See* Opp. 17 (citing Ex. 1, 8:18-23, 30:20-21:1).

Pavemetrics argues its remarks about the subpoena were intended to influence the jury's impression of Tetra Tech's motive for bringing suit and undermine Tetra Tech's witnesses' credibility. Opp. 17. But it was Pavemetrics, not Tetra Tech, that brought suit. And the decision to subpoena customers is a discovery issue, not something that should be blamed on fact witnesses. Moreover, Tetra Tech did not open the door to Pavemetrics' misconduct when it characterized Tetra Tech as an "honorable" company during its opening. In fact, the Court recognized that this type of argument was "pretty standard." Ex. 1, 8:4-9:10. By contrast, Pavemetrics' attack on Tetra Tech's honor for serving a subpoena is completely unwarranted and prejudicial.

Similarly, Pavemetrics improperly invited the jury to blame Dr. Mesher for his alleged "failure to disclose the LRAIL brochure to the PTO." Opp. 20; *see* Ex. 2, 74:18-75:6. This was ***after*** the Court ruled that Pavemetrics could not examine a witness about the "decision as to whether or not and why he didn't disclose [a reference] to the Patent Office" because that would be "getting into inequitable conduct issues" which were not part of the case. *See* Ex. 2, 12:21-13:2. Pavemetrics argues that the "jury could have considered [Dr.] Mesher's failure to disclose the LRAIL brochure to the PTO in judging his credibility" (Opp. 20), but this again underscores the prejudicial effect of the misconduct by Pavemetrics' counsel. Indeed, Pavemetrics' blatant violation of the Court's ruling was prejudicial to Tetra Tech precisely because Pavemetrics' improper argument could have tarnished the jury's view of Dr. Mesher's credibility.

Pavemetrics further argues that it did not disregard the Court's ruling on Dr.

9

1  Frakes' ability to testify about prior art references together and that the Court somehow
2  altered its initial ruling when Tetra Tech objected during Dr. Frakes' testimony. Opp.
3  20. This is not true. The Court ruled before Dr. Frakes took the stand that he could talk
4  about the references together "as long as he's not making an argument about combining
5  those two references." Ex. 4, 22:17-20. Then, after the Court recognized that
6  Pavemetrics was examining Dr. Frakes in a manner that created the impression he was
7  combining the references, rather than keeping the references separately, the Court was
8  forced to reiterate its earlier ruling. *See* Ex. 4, 212:19-24 ("We talked about that this
9  morning. [Pavemetrics is] sort of working around the issue. I need the parties to kind of
10 be straightforward with the Court."). Still undaunted, Pavemetrics' counsel continued
11 to examine Dr. Frakes in a confusing manner that conflated Pavemetrics' invalidity
12 grounds, forcing the Court to intervene yet again. Ex. 4, 216:3-217:9.

13       Pavemetrics also improperly invited the jury to narrow the scope of the claims,
14 by imploring the jury to find that the sensors must be connected to the processor when
15 the product is delivered to its customers, in order to satisfy the requirements of an
16 infringing sale or offer for sale, and suggesting that the claims could not cover
17 algorithms using AI. Nothing in the law requires that a system must be fully connected
18 upon delivery to constitute an infringing sale or offer for sale. Further, nothing in the
19 plain language of the claims or the Court's constructions categorically exclude
20 algorithms using AI from infringing. There is no support for Pavemetrics' assertion that
21 it can avoid liability on such bases, and it was therefore misleading and improper for
22 Pavemetrics to present such baseless non-infringement theories to the jury.

### III. CONCLUSION

24       For the foregoing reasons, and the reasons mentioned in its opening brief, the
25 Court should grant Tetra Tech's motion for judgment as a matter of law regarding the
26 validity of claims 1 and 21 of the '293 patent and claim 8 of the '557 patent, and grant
27 Tetra Tech's motion for a new trial on infringement and damages (or on all issues should
28 the Court deny the motion for judgment as a matter of law).

Dated: October 11, 2022

**CLARK HILL LLP**

By: _____
Donald L. Ridge

James R. Barney (*pro hac vice*)
Aaron L. Parker (*pro hac vice*)
Daniel G. Chung (*pro hac vice*)
Nicholas A. Cerulli (*pro hac vice*)
Kelly S. Horn (*pro hac vice*)
Jency J. Mathew (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

*Attorneys for Defendant and Counterclaim Plaintiffs*
*TETRA TECH, INC. AND TETRA TECH TAS INC.*