JS-5

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., | Case No. 2:21-cv-01289-MCS (MAAx) |
| Plaintiff, | **ORDER GRANTING TETRA TECH'S MOTION FOR A NEW TRIAL AND DENYING AS MOOT DEFENDANT TETRA TECH'S MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING INVALIDITY [323]** |
| v. | |
| TETRA TECH, INC., | |
| Defendant. | |

Defendant Tetra Tech, Inc. ("Tetra Tech") moves for a new trial on infringement and damages due to prejudicial conduct at trial and renews its motion for judgment as a matter of law that claims 1 and 21 of the '293 Patent and claim 8 of the '557 Patent are not invalid. "Notice," ECF No. 323; "Mot.," ECF No. 323-1. Tetra Tech filed a declaration and several exhibits with its motion. "Parker Decl.," ECF No. 323-2; "Def.'s Exs.," ECF Nos. 323-2 to -13. Plaintiff Pavemetrics Systems, Inc. ("Pavemetrics") filed an opposition, two declarations, and four exhibits. "Opp'n," ECF No. 328; "Zovko Decl.," ECF No. 329; "Laquer Decl.," ECF No. 330; "Pl.'s Exs.," ECF Nos. 329-1, 330-1 to -3. Tetra Tech then filed a reply. "Reply," ECF No. 331. Oral argument took place on October 24, 2022. For the following reasons, the motion for a new trial is **GRANTED** and the motion for judgment as a matter of law is **DENIED AS MOOT**.

## I.  BACKGROUND

Pavemetrics filed this action against Tetra Tech for a declaratory judgment that its LRAIL product does not infringe U.S. Patents Nos. 10,362,293 ("the '293 Patent") and 10,616,557 ("the '557 Patent").[1] After trial, the jury found that Pavemetrics did not infringe claims 1 and 21 of the '293 Patent or claim 8 of the '557 Patent. "Jury Verdict" 4, ECF No. 309; "Judgment" 1, ECF No. 320. The jury also found that claims 1 and 21 of the '293 Patent and claim 8 of the '557 Patent were invalid over UML Sale and Support and UML-TRB2014, either alone or in combination. Jury Verdict 6–7; Judgment 1–2.

## II.  LEGAL STANDARD

### A.  Motion for a New Trial

"The court may, on motion, grant a new trial on all or some of the issues . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1). Rule 59 does not specify the grounds upon which a new trial may be granted, but the Ninth Circuit recognizes that courts are bound by historically recognized grounds. For example, a new trial may be granted "if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) (quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)). Courts "enjoy[] considerable discretion" in deciding a new trial motion. *Jorgensen v. Cassiday*, 320 F.3d 906, 918 (9th Cir. 2003) (internal quotation marks omitted).

"A new trial is warranted on the ground of attorney misconduct during the trial where the 'flavor of misconduct . . . sufficiently permeates an entire proceeding to provide conviction that the jury was influenced by passion and prejudice in reaching its

---

[1] Pavemetrics added counterclaims seeking declaratory judgment that its LRAIL product does not infringe the '557 Patent and that the '293 and '557 Patents are invalid. ("Pl.'s First Am. Countercl." ¶¶ 12–29, ECF No. 83.)

2

verdict.'" *Anheuser-Busch Inc. v. Nat. Beverage Distribs.*, 69 F.3d 337, 346 (9th Cir. 1995) (ellipsis in original) (quoting *Kehr v. Smith Barney, Harris Upham & Co.*, 736 F.2d 1283, 1286 (9th Cir. 1984)). Courts consider "the totality of circumstances" in evaluating the likelihood of prejudice from improper comments made by counsel. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) (internal quotation marks omitted). Considerations include "the nature of the comments, their frequency, their possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case, and the verdict itself." *Id.* (internal quotation marks omitted).

### B.   Judgment as a Matter of Law

Federal Rule of Civil Procedure 50(b) authorizes a party to renew a motion for judgment as a matter of law submitted under Rule 50(a). Under Rule 50(b), a court may: "(1) allow judgment on the verdict, if the jury returned a verdict; (2) order a new trial; or (3) direct the entry of judgment as a matter of law." Fed. R. Civ. P. 50(b).

"The standard for judgment as a matter of law . . . 'mirrors' the summary judgment standard." *Reed v. Lieurance*, 863 F.3d 1196, 1204 (9th Cir. 2017) (quoting *Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133, 150 (2000)). A court may grant the motion only if "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Jorgensen*, 320 F.3d at 917 (citation and internal quotation marks omitted); *accord Ostad v. Or. Health Scis. Univ.*, 327 F.3d 876, 881 (9th Cir. 2003) ("Judgment as a matter of law is proper when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury.").

## III.   DISCUSSION

### A.   Improper Statements Made During Trial

Tetra Tech asks the Court to vacate the judgment and set a new trial on infringement and damages due to repeated misconduct by Pavemetrics' counsel at trial. Mot. 14. The misconduct concerned raising discovery disputes, presenting misstatements of law and fact, and discouraging the jury from weighing the relevant

facts of the case. *See generally id.* at 14–25. Pavemetrics responds that Tetra Tech did not show the verdict was "against the great weight of the evidence."[2] Opp'n 13. In support, Pavemetrics argues that Tetra Tech's infringement analysis missed five claim limitations (*see* Def.'s Ex. 4, at 185:21–186:11, ECF No. 323-6), that Pavemetrics' neural network feature does not infringe the gradient neighborhood limitation because the feature was only performed in Canada (*see id*. at 128:6–22), and that there was no induced infringement (*see* Def.'s Ex. 3, at 157:5–11, ECF No. 323-5; Def.'s Ex. 4, at 75:19–76:10, 143:9–23). Opp'n 13–14. Tetra Tech responds that the aggregate effect of the many improper statements warrants a new trial because the statements left the impression that Tetra Tech acted improperly and that its witnesses were hiding information. Reply 7.

### 1. Statements Affecting Dr. Morellas' Credibility

Tetra Tech first argues that it was improper for Pavemetrics to imply that Dr. Morellas was careless in his analysis because he did not review Pavemetrics' neural network files. Mot. 14–15 (citing Def.'s Ex. 3, at 57:11–66:5.) The Court previously found that evidence regarding why Dr. Morellas could or could not review Pavemetrics' neural network files had little relevance and highlighted an unresolved discovery dispute as to whether the files were made available to Dr. Morellas during his source code inspection. "Order Re MILs" 5, ECF No. 287. While Pavemetrics agreed the question of *why* Dr. Morellas did not review the code was irrelevant, Pavemetrics argued that if Dr. Morellas did not review the code, he could not support his opinion that the code meets the "gradient neighborhood" limitations. Opp'n 14 (citing Def.'s Ex. 3, at 53:3–8). The Court agreed with Pavemetrics and found that statements directed merely to whether or not Dr. Morellas reviewed the code were relevant and not prejudicial.

---

[2] This is not the correct standard. Under Rule 59, a new trial may also be granted to prevent a miscarriage of justice, among other reasons. *See Molski*, 481 F.3d at 729; *Murphy v. City of Long Beach*, 914 F.2d 183, 187 (9th Cir. 1990).

But Pavemetrics did not stop there. Repeatedly, Pavemetrics sought to highlight the availability of the code for Dr. Morales' review despite the Court's admonition that this issue was improper. For example, during direct examination, counsel asked:

> Q: The neural network files were present on the inspection computer; correct?
> A: No. They were binary files that you are not able to look at them.
> Q. Pavemetrics did provide its neural network information for you to review, but you chose not to review it during the—or to attend that visit; correct?
> A. That is not correct.

Def.'s Ex. 3, at 57:19–58:1.

At sidebar, the Court reminded the parties of the Court's prior rulings and ordered that they move on. But once again, Pavemetrics deliberately violated the Court's order. During closing, Pavemetrics' counsel argued:

> Now Dr. Morales relied on the wrong neural network, and by the way it was on a special computer at my office. He was welcome to come look at it any time he wanted to.

Def.'s Ex. 5, at 228:17–21, ECF No. 323-7. While the Court issued a curative instruction on this point,[3] the jury was left with the prejudicial impression that the expert had the opportunity to review the source code but chose not to do so. This was unfair in that the parties both agreed that Dr. Morellas played no role in the discovery dispute regarding the source code.

Further compounding the issue, Pavemetrics' expert, Dr. Frakes, testified that he did review the neural network code, but only after sitting for his deposition. The Court found Dr. Frakes' testimony regarding source code review following his deposition improper and struck those portions of testimony from the record. Def.'s Ex. 5, at 31:2–

---

[3] "[T]here was some illusion [sic] to the fact that [Pavemetrics' counsel] had software code in [their] office that could have been reviewed. That's not in evidence either. That's not really relevant to what we're talking about here. Def.'s Ex. 5, at 242:17–20.

15.

While the Court attempted to cure the prejudice caused by Pavemetrics' misconduct on this issue, the Court is left with the distinct impression that the issue unfairly impacted the jury's deliberations.

### 2.    Additional Improper References During Closing Argument

While the trial record was limited to three allegedly infringing sales to a third party, CSX, counsel for Pavemetrics improperly encouraged the jury look outside the trial record and decide the case based on societal impacts. For example, counsel argued:

> Now, this isn't just about CSX. We're not here because of three sales to CSX. I mean, look at all these lawyers that they're paying for to be here about three sales on CSX. I don't think so. This is about wanting to control the market. They are going to set the tone for this market by golly. They're going to do it any way they can.
>
> . . .
>
> They want to increase prices. They want inflation. And what happens when prices are kept high like that? Well, then it affects all of us. All of us who ride trains, all of us who buy[] products from Amazon, all of us because those prices will come back to us.

Def.'s Ex. 5, at 211:22–212:10.

Pavemetrics' counsel also reached outside the trial record in an attempt to color Tetra Tech as overly aggressive during the discovery process. In this regard, Pavemetrics' counsel stated:

> Even after the lawsuit was filed, Tetra Tech is collecting information on Pavemetrics. It gets a lot of the information through discovery in this case and it sought to depose the customers. It sent subpoenas to its customers, to Pavemetrics' customers. It subpoenaed CSX. CSX tried to fight that subpoena unsuccessfully and they were subpoenaed to testify.
>
> . . .
>
> They also subpoenaed AID. They even tried to depose the potential acquirer of Pavemetrics. They filed one motion to compel in this case and it was to find out the name—

Def.'s Ex. 5, at 238:1–13.

1   While the Court cut counsel off at that point, there was simply no legitimate basis
2   for counsel to interject these sort of discovery squabbles into closing summation.
3   Although the Court, once again, issued a curative instruction, the Court is left with the
4   strong view that counsel's improper argument led to a fundamentally unfair proceeding.

5   **B.   Pavemetrics' Counsel's Conduct Warrants a New Trial**

6   The Court finds a new trial is appropriate for several reasons. First, Pavemetrics
7   made two particularly problematic arguments during closing: (a) Pavemetrics
8   insinuated this was a trial about corporate greed instead of sales allegedly constituting
9   patent infringement; and (b) Pavemetrics characterized Tetra Tech's use of subpoenas
10  as extreme and improper. These statements left the jury with the impression that Tetra
11  Tech acted deceptively and improperly. However, no evidence suggests Tetra Tech
12  acted improperly in pursuing Pavemetrics for patent infringement. The statements also
13  urged the jury to decide the case on irrelevant factors. As the Court said at trial, this
14  case is about the three sales. Accordingly, the Court finds Pavemetrics' counsel's
15  statements made during closing sufficiently prejudicial to warrant a new trial.

16  Further, these statements suggesting an ulterior motive were not made in
17  isolation. Throughout trial, counsel for Pavemetrics made other improper statements
18  suggesting Tetra Tech had something to hide. For instance, counsel for Pavemetrics
19  suggested Dr. Morellas purposely chose not to review available source code and elicited
20  testimony relating to purported inequitable conduct from Dr. Mesher, despite the fact
21  that both sides agreed that inequitable conduct was not an issue in the case. Courts in
22  this district have found that improper statements suggesting deceit or ulterior motives
23  favors a new trial. "[J]urors may well wonder what they are being kept from knowing.
24  A   party   seemingly   responsible   for   cloaking   something   has   reason   for
25  apprehension . . . ." *Cones v. County of Los Angeles*, No. CV 14-8281 PSG (PLAx),
26  2016 WL 7438817, at *9 (C.D. Cal. Sept. 28, 2016) (alterations in original) (quoting
27  *Old Chief v. United States*, 519 U.S. 172, 189 (1997)). Accordingly, the improper
28  statements here warrant a new trial.

Pavemetrics points to *Burdyn v. Old Forge Borough*, 330 F.R.D. 399, 410 (M.D. Pa. 2019), to support its argument that "attempting to convince the jury that the plaintiff has ulterior motives for bringing the lawsuit such as financial gain" is "an often-used impeachment tactic in civil trials." However, counsel's statements extended far beyond pointing out that Tetra Tech stood to benefit financially from pursuing Pavemetrics. Counsel argued that the case was not about the three allegedly infringing sales, despite the fact that the case was clearly about those three sales. The statements were simply untrue and confusing. Pavemetrics also points to *Finjan, Inc. v. Blue Coat Systems, Inc.* as an example of a case in which statements made during closing did not warrant a new trial. No. 13-cv-03999-BLF, 2016 WL 3880774, at *13 (N.D. Cal. July 18, 2016), *aff'd in part, rev'd in part*, 879 F.3d 1299 (Fed. Cir. 2018). However, unlike here, "Finjan did not mislead the court . . . about the nature of testimony and then use it for an improper purpose during closing arguments." *Id*. This authority does not weigh against a new trial here.

Second, the Court finds the cumulative effect of Pavemetrics' counsel's improper statements warrants a new trial. As discussed above, counsel for Pavemetrics made numerous improper statements. Due to these statements, counsel for Tetra Tech was forced to raise numerous objections throughout the trial. The Court also offered several curative instructions. These objections and curative instructions likely amplified the adversarial tone of the trial. *See Anheuser-Busch*, 69 F.3d at 346 (noting constant objections can antagonize the jury).

The frequency of improper comments, and corresponding objections and curative instructions, favors a new trial here. Courts in this district have found that frequent improper comments made at "critical moments" during a case, including cross-examination of key witnesses and closing, warrant a new trial. *Cones*, 2016 WL 7438817 at *9. As discussed in Section III.A *supra*, Pavemetrics' counsel made improper comments during several phases of the trial, including witness examination and closing. The improper statements here were numerous, not "an isolated, short

comment during a closing statement." *Hemmings*, 285 F.3d at 1194. Thus, a new trial is appropriate given the cumulative effect of the improper statements.

Further, the frequent curative instructions in this case may have improperly affected the jury verdict. In some cases, curative instructions sufficiently mitigate prejudice caused by improper statements. *See Mateyko v. Felix*, 924 F.2d 824, 828 (9th Cir. 1990); *Kinetic Concepts, Inc. v. Blue Sky Med. Grp., Inc.*, 554 F.3d 1010, 1025 (Fed. Cir. 2009). However, even frequent curative instructions may be "insufficient to immunize the jury from the improper and inflammatory remarks." *Cones*, 2016 WL 7438817 at *9 (quoting *Fineman v. Armstrong World Indus.*, 980 F.2d 171, 206 (3d Cir. 1992)). At best, the Court's curative instructions were insufficient to cure the prejudice introduced by Pavemetrics' counsel's numerous improper statements. At worst, the Court's curative instructions may have exacerbated the poor optics of the trial. In other words, the jury may have found the repeated curative instructions harsh, which affected their view of the proceedings and the parties' credibility.

Accordingly, the Court **GRANTS** Tetra Tech's motion for new trial. Though Tetra Tech only requested a new trial on infringement and damages, the Court finds that Pavemetrics' counsel's prejudicial statements permeated the entire proceeding and likely affected the jury's verdict on invalidity as well as infringement. Accordingly, the Court orders a new trial on infringement, damages, and invalidity.

### C.    Judgment as a Matter of Law on Invalidity

In light of the Court's ruling on Tetra Tech's motion for new trial, the Court **DENIES AS MOOT** Tetra Tech's motion for judgment as a matter of law on invalidity. The Court finds Pavemetrics' counsel's improper statements permeated the entire proceeding. Therefore, a new trial on both infringement and invalidity is necessary. Additionally, in their briefing and at the hearing, counsel for Pavemetrics' argued that support for the invalidity verdict was developed during the infringement portion of the trial. Accordingly, because the Court vacates the infringement portion of the trial, the Court cannot render a decision on the propriety of the invalidity verdict, as it relates to

1    that evidence.

2    **IV.     CONCLUSION**

3           The motion for judgment as a matter of law is **DENIED AS MOOT**. The motion

4    for new trial is **GRANTED**.

5

6    **IT IS SO ORDERED.**

7

8    Dated: January 23, 2023

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28