Donald L. Ridge, Esq. (SBN: 132171)
**CLARK HILL LLP**
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone: (213) 891-9100
Facsimile: (213) 488-1178
DRidge@clarkhill.com

James R. Barney (*pro hac vice*)
james.barney@finnegan.com
Aaron L. Parker (*pro hac vice*)
aaron.parker@finnegan.com
Daniel G. Chung (*pro hac vice*)
daniel.chung@finnegan.com
Nicholas A. Cerulli (*pro hac vice*)
nicholas.cerulli@finnegan.com
Kelly S. Horn (*pro hac vice*)
kelly.horn@finnegan.com
**FINNEGAN, HENDERSON,
FARABOW, GARRETT &
DUNNER, LLP**
901 New York Avenue NW
Washington, D.C. 20001-4413

Telephone:  (202) 408-4000
Facsimile:  (202) 408-4400

Jency J. Mathew (*pro hac vice*)
jency.mathew@finnegan.com
**FINNEGAN, HENDERSON,
FARABOW, GARRETT &
DUNNER, LLP**
1875 Explorer Street, Suite 800
Reston, Virginia 20190-6023
Telephone:  (571) 203-2700
Facsimile:  (571) 203-2777

*Attorneys for Defendant and
Counterclaim Plaintiffs*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC.<br><br>Plaintiff,<br><br>v.<br><br>TETRA TECH, INC.<br><br>Defendant.<br><br>―――――――――<br>AND RELATED COUNTERCLAIMS. | CASE NO. 2:21-cv-1289 MCS-MMA<br><br>**TETRA TECH'S OPPOSITION TO PAVEMETRICS' MOTION FOR RECONSIDERATION OF ORDER GRANTING NEW TRIAL ON INFRINGEMENT OF '293 PATENT ONLY**<br><br>**Honorable Mark C. Scarsi**<br><br>**Date: March 20, 2022**<br>**Time: 9:00 a.m.**<br>**Courtroom: 7C** |

# **TABLE OF CONTENTS**

I.      INTRODUCTION ............................................................................................1

II.     PAVEMETRICS' MOTION IS IMPROPER UNDER THE LOCAL RULES.......................................................................................................2

    A.      Pavemetrics' Motion Violates Local Rule 7-18.......................................3

        1.      Pavemetrics simply repeats arguments made in opposition to Tetra Tech's Motion for New Trial. ..................................................3

        2.      Pavemetrics otherwise fails to establish an adequate basis for reconsideration. ....................................................................5

    B.      Pavemetrics' Motion Also Violates Local Rule 7-3 ................................8

III.    PAVEMETRICS' MOTION SHOULD BE DENIED ON THE MERITS .........9

    A.      The Court Considered the Strength of Tetra Tech's Infringement Claim for the '293 Patent ........................................................................9

    B.      A New Trial Would Not Be Futile .........................................................10

        1.      Trial Evidence Showed Pavemetrics Offered for Sale and Sold Infringing Accused Products ................................................10

        2.      Trial Evidence Showed the LRAIL Infringed the "Gradient Neighborhood" Limitation ...........................................................14

IV.     CONCLUSION ...........................................................................................17

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

*389 Orange St. Partners v. Arnold*,

  179 F.3d 656 (9th Cir. 1999) ................................................................2

*American Seating Co. v. USSC Group, Inc.*,

  514 F.3d 1262 (Fed. Cir. 2008) .........................................................13

*Aventis Pharms SA v. Amphstar Pharm., Inc.*,

  2005 WL 5957795 (C.D. Cal. Mar. 25, 2005) .....................................7

*Commil USA, LLC v. Cisco Systems, Inc.*,

  720 F.3d 1361 (Fed. Cir. 2013) ...........................................................8

*Evans v. DSW, Inc.*,

  No. 2:16-cv-03791-JGB-SPx, 2019 WL 91835 (C.D. Cal. Jan. 2, 2019)............7, 8

*Health Facilities of Cal. Mut. Ins. Co. v. Brit. Am. Ins. Grp., Ltd.*,

  No. 2:10-cv-03736-PSG-JCGx, 2011 WL 1296488 (C.D. Cal. Apr. 5, 2011).........8

*Kona Enters., Inc. v. Estate of Bishop*,

  229 F.3d 877 (9th Cir. 2000) ................................................................2

*Lutron Elecs. Co. v. Creston Elecs.*,

  970 F. Supp. 2d 1229 (D. Utah 2013) .................................................13

*Lorenzo Vargas v. City of Los Angeles*,

  No. 2:16-CV-08684-SVW-AFM, 2018 WL 10231166 (C.D. Cal. Nov. 14, 2018) ................................................................6

*Parity Networks, LLC v. ZyXEL Communications, Inc.*,

  No. SACV 20:697 JVS(KESx), 2021 WL 545282 (C.D. Cal. Jan. 26, 2021)........10

*Pegasus Satellite Television, Inc. v. DirectTV, Inc.*,

  318 F. Supp. 2d 968 (C.D. Cal. 2004)...................................................7

*Self v. Equinox Holdings, Inc.*, No. 2:14-cv-04241-MMM-AJWx, 2015 WL 13298571 (C.D. Cal. May 1, 2015) .........8

ii

*Shaked Investments Ltd., v. Trade Box, LLC*,

No. 2:19-CV-10593-AB-MAA, 2021 WL 9908724 (C.D. Cal. Oct. 20, 2021) ................................................................................................... 6

*SPS Techs., LLC v. Briles Aerospace, Inc.*,

2019 WL 6870346 (C.D. Cal. July 11, 2019) ......................................... 5

*Stewart v. Wilkie*, No.

2:18-cv-01887 ODW(SKX), 2020 WL 4286871(C.D. Cal. July 27, 2020) ............ 5

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,

617 F.3d 1296 (Fed. Cir. 2010) ............................................................ 14

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,

699 F.3d 1340 (Fed. Cir. 2012) ............................................................ 14

*Union Carbide Chemicals v. Shell Oil Co.*,

163 F. Supp. 2d 426 (D. Del. 2001) ..................................................... 10

*Union Pacific R.R. Co. v. Coast Packing Co.*,

236 F. Supp. 2d 1130 (C.D. Cal. 2002) ................................................. 4

iii

# I.     INTRODUCTION

Pavemetrics' motion for reconsideration of the Court's Order granting a new trial ("Motion for Reconsideration") should be denied. As an initial matter, Pavemetrics' motion violates Local Rule 7-18 by failing to establish that any of the limited grounds for reconsideration apply and by simply repeating arguments it previously presented in opposition to Tetra Tech's Motion for New Trial. Pavemetrics improperly reargues its positions under the guise of a "manifest showing of a failure to consider material facts," even though it admits the Court specifically acknowledged Pavemetrics' arguments in both its Order and at the hearing on the Motion for New Trial. Pavemetrics instead appears to take issue with the Court allegedly not providing sufficient reasoning for rejecting Pavemetrics' arguments in its Order granting a new trial. But Pavemetrics ignores that the Court is not required to explain each and every reason for rejecting a party's argument in its orders. Pavemetrics also violates Local Rule 7-3 by failing to meet and confer at least seven days prior to the filing of its Motion.

Even if Pavemetrics' motion was procedurally proper under the local rules (which it is not), the motion is substantively baseless. Pavemetrics' Motion for Reconsideration asks this Court to reverse its earlier ruling based on the flawed assertion that no misconduct could have affected the outcome at trial because Pavemetrics is allegedly entitled to judgment as a matter of law on noninfringement of the '293 patent.[1] Pavemetrics' argument fails because it conveniently ignores the ample evidence presented by Tetra Tech at trial establishing that the LRAIL system infringes the '293 patent. At the very least, the evidence presented by Tetra Tech at trial establishes a dispute of fact for the jury to decide, and it does not entitle Pavemetrics to judgment as a matter of law.

///

---

[1] Pavemetrics does not ask for reconsideration of the Court's order of a new trial on issues of validity and infringement for the '557 patent.

1

1    Accordingly, Pavemetrics' Motion for Reconsideration should be denied and the

2    Court's order for a new trial should stand.

3    **II.    PAVEMETRICS' MOTION IS IMPROPER UNDER THE LOCAL**

4    **RULES**

5    Reconsideration is an "extraordinary remedy, to be used sparingly in the interests

6    of finality and conservation of judicial resources." *Kona Enters., Inc. v. Estate of*

7    *Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (citations omitted). Thus, "a motion for

8    reconsideration should not be granted, absent highly unusual circumstances." *389*

9    *Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999). Local Rule 7-18 sets

10   forth the limited circumstances where a motion for reconsideration may be granted: "(a)

11   a material difference in fact or law from that presented to the Court that, in the exercise

12   of reasonable diligence, could not have been known to the party moving for

13   reconsideration at the time the Order was entered, or (b) the emergence of new material

14   facts or a change of law occurring after the Order was entered, or (c) a manifest showing

15   of a failure to consider material facts presented to the Court before the Order was

16   entered." L.R. 7-18. The rule emphasizes that "[n]o motion for reconsideration may in

17   any manner repeat any oral or written argument made in support of, or in opposition to,

18   the original motion." *Id.*

19   Here, Pavemetrics' Motion for Reconsideration fails to comply with the

20   requirements of Local Rule 7-18 because it (1) simply repeats arguments Pavemetrics

21   previously submitted to this court in opposition to Tetra Tech's Motion for New Trial,

22   and (2) otherwise fails to set forth a proper ground for reconsideration.

23   Pavemetrics' Motion for Reconsideration is also improper because Pavemetrics

24   failed to comply with Local Rule 7-3. Under Local Rule 7-3, Pavemetrics' counsel was

25   required to contact Tetra Tech's counsel to discuss the motion at least 7 days prior to

26   the filing. But Pavemetrics' counsel did not do so until 4 days before the filing, in

27   violation of Local Rule 7-3.

28   ///

2

**A.      Pavemetrics' Motion Violates Local Rule 7-18**

      **1.      Pavemetrics simply repeats arguments made in opposition to Tetra Tech's Motion for New Trial.**

Pavemetrics' motion is procedurally barred under Local Rule 7-18, as it merely repeats arguments made in Pavemetrics' original opposition to Tetra Tech's Motion for New Trial ("Opposition Brief") and at the hearing on the motion. *Compare* ECF 328 at 13-14, 21-24 *with* Mot. at 12-22; ECF 336 at 16:17-17:20, 24:13-17. Local Rule 7-18 expressly states that "[n]o motion for reconsideration shall ***in any manner*** repeat any oral or written argument made in support of or in opposition to the original motion." L.R. 7-18 (emphasis added).

But that is exactly what Pavemetrics' Motion does here. Pavemetrics argues that "there can be no miscarriage of justice because . . . Tetra Tech's infringement case was insufficient as a matter of law." Mot. at 13. In particular, Pavemetrics argues that it does not infringe because the accused hardware "was shipped in multiple boxes containing unconnected components," the units sold to CSX "were sold with a processor that was delivered without any software installed," and "LRAIL's neural network filters are defined only in Canada." Mot. at 16, 18, 21. But these arguments are not new. Instead, they are recycled from Pavemetrics' Opposition Brief and from those arguments made by Pavemetrics' counsel at the hearing on Tetra Tech's Motion for New Trial. *See* ECF 328 at 13-14, 21-24; ECF 336 at 16:17-17:20, 24:13-17.

Specifically, Pavemetrics argued in its Opposition Brief that the Court should not grant a new trial because Tetra Tech "failed to show infringement for many reasons, and thus cannot show any miscarriage of justice to warrant a new trial." ECF 328 at 14. Pavemetrics argued that it "never offered for sale or sold a fully connected system," "its system was missing at least five claim limitations," and "the gradient neighborhood limitation is performed only in Canada during training of the neural network." *Id.* at 13, 21-24. Moreover, at the October 24, 2022, hearing on Tetra Tech's Motion for New Trial, Pavemetrics repeated its arguments orally. ECF 336 at 16:17-21 ("[n]one of that

[alleged misconduct] matters here because [Tetra Tech] cannot show a miscarriage of justice here. None of the things they are pointing to affected the outcome here. And the reason is because if the verdict had gone in their favor, [Pavemetrics] would be entitled to [JMOL] of no infringement."). Pavemetrics also orally argued its noninfringement positions—that the accused LRAIL systems were sold as "unconnected components," that the units sold to CSX "didn't even have a processor with software on it," and that "the portion of the neural network that [Tetra Tech] accuses of defining a gradient neighborhood . . . occurs on . . . different software in Canada." ECF 336 at 16:25-17:4, 17:9-17.

The Court acknowledged these arguments at the hearing and in its Order granting Tetra Tech's Motion for New Trial. ECF 335 at 3; ECF 336 at 17:22-25. Pavemetrics itself even admits that the arguments presented in its Motion for Reconsideration were previously presented for the Court's consideration in its Opposition Brief and at the hearing. *See* Mot. at 8-9, 13 ("Pavemetrics raised Tetra Tech's inability to prove infringement in both its opposition brief and at the hearing."). Thus, Pavemetrics appears to concede that its own motion violates Local Rule 7-18.

To the extent Pavemetrics contends that the arguments in its Motion for Reconsideration do not repeat previously presented arguments because they are somehow presented differently, this argument also fails. Even if presented with minor variations, Pavemetrics' arguments in support of its Motion for Reconsideration were, or could have been, presented in its Opposition Brief. "'[A] mere attempt by [the moving party] to reargue its position by directing this Court to additional case law and . . . argument[s] which [it] clearly could have made earlier, but did not . . . is not the purpose of motions for reconsideration under' Local Rule 7-18." *Union Pacific R.R. Co. v. Coast Packing Co.*, 236 F. Supp. 2d 1130, 1137-38 (C.D. Cal. 2002) (citation omitted and alterations in original); *see also SPS Techs., LLC v. Briles Aerospace, Inc.*, 2019 WL 6870346, at *2 (C.D. Cal. July 11, 2019) ("A motion for reconsideration is not an appropriate forum for rehashing previously rejected arguments or arguing

matters that could have been heard during the pendency of the previous motion.") (citations omitted). Indeed, a court may disregard "repeated legal arguments" and "facts that were available earlier in the proceedings." *Stewart v. Wilkie*, No. 2:18-cv-01887 ODW(SKX), 2020 WL 4286871, at *2 (C.D. Cal. July 27, 2020) (quoting *Zimmerman v. City of Oakland*, 255 F.3d 734, 740 (9th Cir. 2001)).

Pavemetrics' motion thus improperly repeats arguments that were previously made and considered in its opposition to Tetra Tech's Motion for New Trial, and for at least this reason, its Motion for Reconsideration should be denied.

**2.    Pavemetrics otherwise fails to establish an adequate basis for reconsideration.**

While Pavemetrics' Motion for Reconsideration clearly violates Local Rule 7-18, based on its own admissions, the Motion also fails to set forth a proper basis for reconsideration. As noted above, a motion for reconsideration may be made only on one of the following grounds "(a) a material difference in fact or law from that presented to the Court before such decision that in the exercise of reasonable diligence could not have been known to the party moving for reconsideration at the time of such decision, or (b) the emergence of new material facts or a change of law occurring after the time of such decision, or (c) a manifest showing of a failure to consider material facts presented to the Court before such decision." L.R. 7-18. Indeed, "the grounds for reconsideration specified in L.R. 7-18 are the *exclusive* grounds for reconsideration in the Central District of California." *Lorenzo Vargas v. City of Los Angeles*, No. 2:16-CV-08684-SVW-AFM, 2018 WL 10231166, at *2 (C.D. Cal. Nov. 14, 2018) (citing *Reese v. Verizon California, Inc.*, No. CV 11-01934 SJO (JEMx), 2011 WL 13193419, at *1-2 (C.D. Cal. Sept. 21, 2011)).

Pavemetrics does not contend that there are any differences—much less material differences—in the factual and legal circumstances here. Rather, Pavemetrics argues that reconsideration is proper here based on a "manifest showing of a failure to consider material facts presented to the Court before such decision." Mot. at 11, 14 (citing L.R.

1   7-18). But Pavemetrics' assertion that the Court failed to consider material facts
2   presented to the Court is belied by the record. As noted above, the Court specifically
3   acknowledged and rejected Pavemetrics' arguments in granting Tetra Tech's Motion
4   for New Trial. ECF 335 at 4; ECF 336 at 17:22-18:5. That the Court allegedly did not
5   expressly provide details about its reasoning for rejecting those arguments does not
6   constitute "manifest showing of a failure to consider material facts presented to the
7   Court." *Shaked Investments Ltd., v. Trade Box, LLC*, No. 2:19-CV-10593-AB-MAA,
8   2021 WL 9908724, at *1 (C.D. Cal. Oct. 20, 2021) ("While the Court's order did not
9   expressly discuss the new facts Plaintiffs raised, it considered them and concluded that
10  the same overall reasoning that justified the November 2020 stay still applied. . . . This
11  is not a failure to consider the material facts."). Pavemetrics identifies no authority
12  requiring the Court to set forth each and every reason for rejecting every argument
13  presented by a party.
14          Rather than focusing on any overlooked "material facts," Pavemetrics apparently
15  takes issue with the Court's legal analysis. For example, Pavemetrics contends that this
16  Court "applied the wrong standard by overlooking that a 'miscarriage of justice' cannot
17  occur when the jury reached the only verdict supported by the evidence—regardless of
18  any alleged attorney misconduct." Mot. at 11. But simply disagreeing with the Court's
19  application of the law is not a sufficient basis for reconsideration. *Pegasus Satellite*
20  *Television, Inc. v. DirectTV, Inc.*, 318 F. Supp. 2d 968, 981 (C.D. Cal. 2004) ("Under
21  L.R. 7-18, a motion for reconsideration may not be made on the grounds that a party
22  disagrees with the Court's application of legal precedent."); *Aventis Pharms SA v.*
23  *Amphstar Pharm., Inc.*, 2005 WL 5957795, at *2 (C.D. Cal. Mar. 25, 2005) ("[W]hile
24  [defendant] may disagree with the court's application of the facts to the law, there is not
25  a 'manifest showing of a failure to consider material facts' by the court."); *see also*
26  *Evans v. DSW, Inc.*, No. 2:16-cv-03791-JGB-SPx, 2019 WL 91835, at *4 (C.D. Cal.
27  Jan. 2, 2019).
28  ///

6

1    Pavemetrics cites no authority in support of its proposition that this Court erred
2    by granting Tetra Tech's Motion for New Trial and instead cites several cases where
3    the Ninth Circuit affirmed denials of motions for new trial because the district court
4    determined that the alleged misconduct did not affect the outcome. Mot. at 11-12. But
5    the cases Pavemetrics cites are inapposite to the circumstances here, where the Court
6    has exercised its discretion to grant a new trial after considering the potential impact of
7    the misconduct on the jury and Pavemetrics is asking this Court to reverse its prior
8    ruling. *See Commil USA, LLC v. Cisco Systems, Inc.*, 720 F.3d 1361, 1370-71 (Fed. Cir.
9    2013) (finding that the district court did not abuse its discretion in ordering a new trial
10   based on attorney misconduct and noting that "[e]ven if we were inclined to agree with
11   [defendant] that there is no manifest injustice in this case—and we are not—we refuse
12   to substitute our judgment for that of a district court whose 'on-the-scene assessment of
13   the prejudicial effect, if any, carries considerable weight.'") (citations omitted).

14   Furthermore, any new arguments raised in Pavemetrics' Motion for
15   Reconsideration should not be considered at all. *Health Facilities of Cal. Mut. Ins. Co.*
16   *v. Brit. Am. Ins. Grp., Ltd.*, No. 2:10-cv-03736-PSG-JCGx, 2011 WL 1296488, at *4
17   (C.D. Cal. Apr. 5, 2011) (citing *Engleson v. Burling N. R. Co.*, 972 F.2d 1038, 1043
18   (9th Cir. 1992)). Indeed, courts in this District "have routinely held a motion for
19   reconsideration is not a vehicle for raising new arguments or citing new authority that
20   could have been addressed earlier." *Self v. Equinox Holdings, Inc.*, No. 2:14-cv-04241-
21   MMM-AJWx, 2015 WL 13298571, at *4 (C.D. Cal. May 1, 2015) (collecting cases).

22   For these reasons alone, Pavemetrics' Motion for Reconsideration should be
23   denied. Pavemetrics cannot use this "motion for reconsideration to get 'a second bite at
24   the apple.'" *Evans*, 2019 WL 91835, at *6 (quoting *Target Tech. Co, LLC v. Williams*
25   *Adv. Materials, Inc.*, No. 8:04-cv-01083-DOC-MLGx, 2008 WL 5002935, at *21 (C.D.
26   Cal. Nov. 21, 2008)).

27   ///

28   ///

7

**B.     Pavemetrics' Motion Also Violates Local Rule 7-3**

Pavemetrics' Motion for Reconsideration should also be denied because Pavemetrics failed to comply with the meet and confer requirement of Local Rule 7-3, which requires "counsel contemplating the filing of any motion must first contact opposing counsel to discuss," and that "conference must take place *at least 7 days prior to the filing of the motion.*" L.R. 7-3 (emphasis added).[2] Local Rule 7-4 further states that "the Court may decline to consider a motion unless it meets the requirements of L.R. 7-3 through 7-8." L.R. 7-4.

Denial of Pavemetrics' Motion for Reconsideration is appropriate here because Pavemetrics did not even reach out to Tetra Tech's counsel until February 2, 2023— just four days before it filed its motion on February 6, 2023. Parker Ex. 6. Had Pavemetrics waited at least seven days from when it notified Tetra Tech of its intention to file its Motion for Reconsideration, as required by the local rules, the Motion would have been untimely. L.R. 7-18 ("Absent good cause shown, any motion for reconsideration must be filed no later than 14 days after entry of the Order that is the subject of the motion or application.")

This Court has stated, unequivocally, that "[c]ompliance with Rule 7-3 is not optional" and that "[d]enial of a motion as the result of a failure to comply with local rules is well within a district court's discretion." *Parity Networks, LLC v. ZyXEL Communications, Inc.*, No. SACV 20:697 JVS(KESx), 2021 WL 545282, at *2 (C.D. Cal. Jan. 26, 2021) (quoting *Tri-Valley CAREs v. United State Department of Energy*, 671 F.3d 1113, 1131 (9th Cir. 2012)).

---

[2] In December 2022, the following change was made to Local Rule 7-3, further emphasizing that this meet and confer requirement is not optional: "The conference ~~shall~~ must take place at least ~~seven~~ (7) days prior to the filing of the motion." *See* http://www.cacd.uscourts.gov/news/new-and-amended-local-rules-effective-december-1-2022.

8

1    Accordingly, the Court should exercise its discretion to deny Pavemetrics'

2   Motion for Reconsideration based on its blatant violation of the Local Rules.

3   **III.    PAVEMETRICS' MOTION SHOULD BE DENIED ON THE MERITS**

4       **A.    The Court Considered the Strength of Tetra Tech's Infringement**

5           **Claim for the '293 Patent**

6    Pavemetrics argues that the Court erred by "overlook[ing]" the strength of

7   Pavemetrics' case. Mot. at 13 (citing *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1195

8   (9th Cir. 2002)). But Pavemetrics provides no support for its assertion that the Court

9   overlooked this one factor in its "totality of the circumstances" analysis. *See* ECF 335

10  at 3. In fact, Pavemetrics' own admission that the Court acknowledged the merits of its

11  argument (Mot. at 14) contradicts the entire basis of Pavemetrics' motion. Pavemetrics'

12  real gripe appears to be that the Court allegedly did not explain each and every reason

13  for rejecting Pavemetrics' arguments in its Order granting Tetra Tech's New Trial.

14  Notably, however, Pavemetrics does not identify any authority requiring the Court to

15  have done so. Nor could it as the Court is not required to expressly explain in its order

16  its reasoning for rejecting each and every one of Pavemetrics' arguments. *See e.g.,*

17  *Shaked Investments Ltd.*, 2021 WL 9908724, at *1.

18      Pavemetrics relies on *Union Carbide Chemicals v. Shell Oil Co.*, 163 F. Supp. 2d

19  426, 454 (D. Del. 2001), *aff'd in part, rev'd in part sub nom. Union Carbide Chemicals*

20  *& Plastics Tech. Corp. v. Shell Oil Co.*, 308 F.3d 1167 (Fed. Cir. 2002) for the alleged

21  proposition that a new trial is not appropriate where the patentee cannot offer evidence

22  to show that the accused product contains every claim limitation. Mot. at 14. But in

23  *Union Carbide Chemicals*, the court's construction resolved the parties' dispute over

24  infringement, whereas here, there are clear disputes of fact on the infringement issues

25  that Pavemetrics raises, as explained below. Contrary to Pavemetrics' assertions, Tetra

26  Tech presented evidence at trial that a reasonable jury could have found supported a

27  finding of infringement.

28

**B.     A New Trial Would Not Be Futile**

Despite Pavemetrics' suggestions to the contrary, a new trial would not be futile as there are clear disputes of fact between the parties on the infringement issues Pavemetrics raises in its Motion for Reconsideration. In fact, these infringement issues were the focus of trial and disputes between the parties' experts. Accordingly, Pavemetrics cannot show that it is entitled to judgment as a matter of law on noninfringement of the '293 patent.

**1.     Trial Evidence Showed Pavemetrics Offered for Sale and Sold Infringing Accused Products**

Pavemetrics argues that, even if a new trial were to be granted, Tetra Tech would be unable to show infringement of the '293 patent because Pavemetrics allegedly initially delivered unconnected components with no software. Mot. at 16-20. As explained above, this Court previously considered and rejected this argument. *See* ECF 328 at 21-24; ECF 335 at 4. Without relying on any new material facts or law, Pavemetrics merely repurposes the same noninfringement arguments from its opposition to Tetra Tech's Motion for New Trial.

Pavemetrics first argues that, because it delivered "unconnected components" to CSX, those sales cannot be found to infringe the "in communication" limitations of Claim 1 of the '293 patent. Mot. at 16. This is the same argument that Pavemetrics presented in its opposition. ECF 328 at 21-22 (arguing that because the "documents describe a list of unconnected components . . . the quoted system does not include 'each and every one of the requirements' of Claim 1"). Indeed, Pavemetrics admitted that this is not new evidence, stating that it raised this argument in its original opposition and throughout trial. Mot. at 9, 13.

Pavemetrics' second argument follows a similar theme, arguing that because it allegedly sold the processors to CSX without first installing software, those sales cannot infringe the limitation of Claim 1, "wherein at least one processor is configured to run an algorithm." Mot. at 18. Again, these arguments are recycled from its opposition to

10

Tetra Tech's Motion for New Trial. ECF 328 at 22-23 ("Instead of looking at the actual products sold, *i.e.*, what was shipped in response to the sale, TT wrongly encourages the jury to look at software previously licensed to CSX with a system sold in 2020.").

But these recycled arguments do not render a new trial futile. Tetra Tech can, and did, present evidence that Pavemetrics' offers for sale and sales to CSX infringe the '293 patent. And this evidence is more than sufficient to support an infringement verdict in favor of Tetra Tech.

It is undisputed that Pavemetrics sent CSX a quotation for three LRAIL systems. *See* Trial Ex. 811 (Laquer Ex. 811); Day 4 Trial Tr. (Laquer Ex. 4) at 81:1-82:15. The quotation includes the hardware and all the necessary data acquisition and processing software. Trial Ex. 811. There is no indication that Pavemetrics offered or attempted to sell the hardware and software separately. *Id.*; Trial Ex. 990, ¶ 4 (Parker Ex. 990). It is also undisputed that one month after sending CSX the LRAIL quotations, Pavemetrics executed a Goods Agreement with CSX for the sale of three LRAIL systems. *See* Trial Ex. 844 (Laquer Ex. 844); Day 4 Trial Tr. at 84:4-7. Again, the Goods Agreement states that the sale is for both "LRAIL Hardware and Software." Trial Ex. 844 at 17.

Moreover, Dr. Hébert, Pavemetrics' Vice President of Research and Development, submitted a sworn declaration that was presented to the jury, admitting that Pavemetrics' U.S. "sales were ***turnkey sales*** that basically included (1) LRAIL hardware, (2) LRAIL acquisition software, and (3) LRAIL processing software." Trial Ex. 990, ¶ 4 (emphasis added). Mr. Laurent, another Pavemetrics witness, confirmed that "turnkey" meant it includes the sensors, software, and everything you need to operate the LRAIL system. *See* Day 4 Trial Tr. at 59:22-60:15 ("**Q.** Okay. and I notice the quote is for a turnkey LRAIL inspection system. What does that mean? **A.** So the turnkey LRAIL would be the LCMS sensors, the LRAIL software and basically all the other components you would need. So there would be the acquisition computer and the GPS system and everything you need to operate on a hi-rail vehicle."). Dr. Hébert's sworn declaration further admits that the complete LRAIL packages sold to CSX "also

11

include[] executable copies of acquisition software compiled from LRAIL software source code," where "[t]he sensors send signals to the computer system running the acquisition software." Trial Ex. 990, ¶ 8. Thus, what was offered for sale and sold to CSX was a complete, operational LRAIL system. *See also* Trial Ex. 811; Trial Ex. 844; Trial Ex. 990, ¶ 8; *see also* Trial Ex. 905 (Parker Ex. 905) (advertising a complete system).

Pavemetrics tries once again to mislead and confuse the issues, arguing that while it sold complete systems, the systems it actually delivered were unconnected and included no software. Day 5 Trial Tr. (Parker Ex. 7) at 206:21-24, 224:4-13, 224:22. Notably, Pavemetrics repeatedly refers to the three CSX sales as "sensor kits" (Mot. 4-5 and 16-17), even though the record evidence, including the quotation, Goods Agreement, and the sworn declaration of Dr. Hébert, never mention "sensor kits." Instead, they all describe complete LRAIL systems. Trial Ex. 811; Trial Ex. 844; Trial Ex. 990, ¶ 4. But Pavemetrics conveniently ignores its own admissions and unfavorable record evidence that support a finding of infringement.

Pavemetrics argues instead that its LRAIL sales are irrelevant to whether it offered for sale and sold an infringing product. But, its alleged bait-and-switch strategy of selling "turnkey" systems and then later delivering unconnected components in boxes and without software, does not avail itself of infringement. *American Seating Co. v. USSC Group, Inc.*, 514 F.3d 1262, 1270 (Fed. Cir. 2008) (finding that the bait-and-switch of offering an accused product but delivering a different product did not avoid liability); *see also Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340, 1356-57 (Fed. Cir. 2012) ("*Transocean II*"). This is because the infringement occurred both when Pavemetrics offered for sale and when it sold the infringing systems. Pavemetrics' subsequent delivery of incomplete and unconnected systems to customers does not absolve Pavemetrics of liability for offering to sell and selling completed LRAIL systems pursuant to the quotation and Goods Agreement, nor does it remedy the harm Tetra Tech suffered as a result. *Id.*

12

Therefore, for at least the reasons above, Tetra Tech can, and did, establish that Pavemetrics infringed the '293 patent by offering for sale and selling complete LRAIL systems, inclusive of all the necessary hardware and software. And it is undisputed that the software Pavemetrics was offering at that time (around February-March 2021) contained the accused Fake3D functionalities. Day 5 Trial Tr. at 19:14-22. Thus, the quotation and Goods Agreement for the three LRAIL systems consisting of "LRAIL sensors, acquisition software, and processing software" were infringing offers for sale and sales. Day 4 Trial Tr. at 81:16-24, 82:12-15, 84:8-12.

Pavemetrics' attempt to distinguish the Federal Circuit's decision in *Transocean I* fails. *See Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1311 (Fed. Cir. 2010) ("*Transocean I*") (The fact that Maersk USA, after the execution of the contract, altered the rig . . . is irrelevant to this infringement analysis."). Pavemetrics argues that Tetra Tech cannot prove infringement without accompanying schematics similar to those used by patentee in *Transocean I*. Mot. at 19-20. This is incorrect. Pavemetrics plainly admitted that the Goods Agreement included the hardware and software necessary to operate the system, Trial Ex. 990, ¶¶ 4, 8, and the available software at the time of that sale included the infringing Fake3D functionality. Thus, similar to *Transocean I* and *II*, there was a contract to sell a patented product, and the fact that Pavemetrics may have later altered the product's software, after the contract was signed, is irrelevant to the infringement analysis.

Pavemetrics also cites *Lutron Elecs. Co. v. Creston Elecs.*, 970 F. Supp. 2d 1229, 1233-1236 (D. Utah 2013) for the proposition that only devices that the defendant installed using a wire connection could infringe the "at least one control device coupled to the electrical device by a wire connection" claim limitation. Mot. at 17-18. But *Lutron* is inapposite to the facts here. The defendant in *Lutron* sold only the control device, and not the electrical device, which is also required by the claims. *Id.* at 1233. Thus, the defendant was only selling part of the claim. Whereas here, Pavemetrics offered for sale and sold a complete, operational LRAIL system, inclusive of the necessary hardware

1    and software to meet each claim limitation, including the "in communication"

2    requirement. Trial Exs. 811, 844, 990.

3        **2.    Trial Evidence Showed the LRAIL Infringed the "Gradient**

4            **Neighborhood" Limitation**

5        Pavemetrics also argues that Tetra Tech cannot show the LRAIL satisfies the

6    "defining an appropriate gradient neighborhood" limitation recited in claim 1 of the

7    '293 patent. But this too is incorrect. There is ample evidence, including source code,

8    technical descriptions, and expert testimony, that establish that the LRAIL defines an

9    appropriate gradient neighborhood when it uses neural networks for feature detection

10   in the United States.

11       Pavemetrics alleges that the LRAIL does not satisfy "defining an appropriate

12   gradient neighborhood" because "trial evidence showed LRAIL's alleged 'gradient

13   neighborhood' was predefined on non-LRAIL hardware and software in Canada" and

14   the "LRAIL algorithms never included 'defining an appropriate gradient

15   neighborhood.'" Mot. at 6, 20. Both allegations, however, are based on a

16   mischaracterization of the record and the testimony of Tech Tetra's expert, Dr.

17   Morellas. For example, according to Pavemetrics, Dr. Morellas testified that the LRAIL

18   is "defin[ing] an appropriate gradient neighborhood" during the training stage of the

19   neural networks in Canada. Mot. at 6-7, 21.

20       But Dr. Morellas' analysis of the LRAIL source code and technical publications

21   instead demonstrated that the LRAIL infringes by "defining the appropriate gradient

22   neighborhood" when it *uses* the neural networks for identification, regardless of where

23   the networks are trained. *See* Trial Exs. 98 (Parker Ex. 98), 24 (Parker Ex. 24); 740

24   (Parker Ex. 740) at 295, 315, 322. Dr. Morellas explained at trial that the LRAIL defines

25   an appropriate gradient neighborhood when the LRAIL *uses* the neural networks to

26   detect features. Day 2 Trial Tr. (Laquer Ex. 2) 181:3-6 ("the LRAIL system uses a

27   convolutional neural network that means that it defines an appropriate neighborhood

28   that is called convolution here."). Dr. Morellas also provided examples of how the

14

LRAIL defines the appropriate gradient neighborhood for the detection of specific features. Referring to Trial Exhibit 117 (Parker Ex. 117), Dr. Morellas explained that the appropriate gradient neighborhood would be "defined based on the particular feature that you are detecting." Day 2 Trial Tr. 182:1-3; *see also* Nguyen Tr. at 94:16-24 (ECF 327-1 at 12).

At trial, Pavemetrics' technical expert, Dr. Frakes, raised the same noninfringement opinion that Pavemetrics advances in its Motion for Reconsideration, testifying that the LRAIL did not define appropriate gradient neighborhoods because the filters had been predefined or "set in stone." Day 4 Trial Tr. 190:9-15. But Dr. Morellas directly addressed Dr. Frakes' arguments on rebuttal, testifying that the LRAIL is "defining the appropriate gradient neighborhood" when it uses the convolutional neural network to identify specific features. *See* Day 5 Trial Tr. 45:23-47:10. Dr. Morellas supported his testimony with reference to the LRAIL's source code where the LRAIL defines an appropriate gradient neighborhood according to the dimensions of the targeted feature. Trial Ex. 740 at 295 (DetectFastenerNN), 315 (DetectSpikeNN), 322 (DetectTiePlateNN). Dr. Morellas explained to the jury that the LRAIL's source code showed that the LRAIL defines the appropriate gradient neighborhood for specific features, such as fasteners, spikes, and ties, when it identifies features using the neural networks. Day 5 Trial Tr. 46:3-21. Specifically, Dr. Morellas testified that "there are three different . . . parts of the code, one for fastener and one for spike and one for tie," and that "we have to have different . . . appropriate gradient neighborhoods to be able to . . . tell the fact they are different on the spike or the tie. We have . . . different dimensions, different . . . characteristics." Day 5 Trial Tr. 46:12-21.

Pavemetrics blatantly mischaracterizes the trial record by asserting that there is no evidence to show the LRAIL is "defining an appropriate gradient neighborhood" and reiterating an argument that was specifically a factual dispute between the experts. Indeed, Dr. Morellas' source code analysis supports the fact that "defining an appropriate gradient neighborhood," as recited in the claims, occurs when the LRAIL

15

1    uses the neural network functions for feature identification. Day 5 Trial Tr. 46:12-21;

2    Trial   Ex.   740   at   295   (DetectFastenerNN),   315   (DetectSpikeNN),   322

3    (DetectTiePlateNN).

4         In its Motion for Reconsideration, Pavemetrics repeatedly points to testimony of

5    its own witnesses that the LRAIL models are allegedly trained in Canada, not in the

6    United States. *See* Mot. at 6-7, 21 (citing Day 4 Trial Tr. 128:1-129:11). But

7    Pavemetrics is simply wrong when it argues that Dr. Morellas made a "fatal and

8    uncurable admission" when partially answering a question about the training of the

9    LRAIL models. Mot. at 7 (citing Day 5 Trial Tr. at 108:7-10). That testimony only

10   relates to filter values assigned "during the training stage of the neural network" alleged

11   to have occurred in Canada and has no bearing on the relevant testimony from Dr.

12   Morellas about the LRAIL defining an appropriate gradient neighborhood when ***using***

13   the neural network to identify features in the United States. *See* Day 5 Trial Tr. 107:15-

14   108:10. As noted above, Dr. Morellas testified that the LRAIL defines the appropriate

15   gradient neighborhood when the network is used for feature detection—irrespective of

16   where the network is trained. *See* Day 2 Trial Tr. 181:3-182:3. Thus, Dr. Morellas'

17   response to a question about whether filter values are predefined in Canada, which

18   Pavemetrics' counsel cut short, does not undermine Dr. Morellas' testimony that the

19   LRAIL defines the appropriate gradient neighborhood based on the particular feature

20   that is being detected (e.g., detection of a fastener vs. spike vs. tie).

21        This amounts to nothing more than a strawman argument, attacking positions that

22   Dr. Morellas did not convey, alleging "admissions" that are not relevant to the

23   infringement issues, and simply rehashing a noninfringement position that Dr. Morellas

24   directly rebutted at trial with Pavemetrics' own source code and technical descriptions.

25   Thus, contrary to Pavemetrics' allegations, the evidence supports a finding that the

26   LRAIL "defin[es] an appropriate gradient neighborhood."

27

28

1    Accordingly, Pavemetrics is not entitled to judgment as a matter of law on

2  noninfringement. And thus, Pavemetrics cannot establish that the outcome would not

3  have been different absent the misconduct of Pavemetrics' counsel.

4  **IV.    CONCLUSION**

5    For the foregoing reasons, the Court should deny Pavemetrics' motion for

6  reconsideration of the Court's Order granting a new trial on infringement of the '293

7  patent.

8

9  Dated: February 20, 2023                **CLARK HILL LLP**

10

11                                        By:   _/s/ Donald L. Ridge_
                                                  Donald L. Ridge

12

13                                        James R. Barney (*pro hac vice*)
                                          Aaron L. Parker (*pro hac vice*)

14                                        Daniel G. Chung (*pro hac vice*)

15                                        Nicholas A. Cerulli (*pro hac vice*)
                                          Kelly S. Horn (*pro hac vice*)

16                                        Jency J. Mathew (*pro hac vice*)

17                                        **FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**

18

19                                        *Attorneys for Defendant and Counterclaim Plaintiffs*

20                                        *TETRA TECH, INC. AND TETRA TECH TAS INC.*

21

22

23

24

25

26

27

28

1

### CERTIFICATE OF COMPLIANCE

2      The undersigned, counsel of record for Pavemetrics Systems, Inc., certifies that

3  this brief contains 5,507 words, which [choose one]:

4      X  complies with the word limit of L.R. 11-6.1.

5      __  complies with the word limit set by court order dated [date].

6

7  Dated: February 20, 2023          **CLARK HILL LLP**

8

9                                    By:   */s/ Donald L. Ridge*
                                           Donald L. Ridge
10

11                                   James R. Barney (*pro hac vice*)
                                     Aaron L. Parker (*pro hac vice*)
12                                   Daniel G. Chung (*pro hac vice*)
                                     Nicholas A. Cerulli (*pro hac vice*)
13                                   Kelly S. Horn (*pro hac vice*)
                                     Jency J. Mathew (*pro hac vice*)
14                                   **FINNEGAN, HENDERSON, FARABOW,**
                                     **GARRETT & DUNNER, LLP**
15

16                                   *Attorneys for Defendant and Counterclaim*
                                     *Plaintiffs*
17                                   *TETRA TECH, INC. AND TETRA TECH TAS*
                                     *INC.*
18

19

20

21

22

23

24

25

26

27

28

18