UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAVEMETRICS SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br><br> TETRA TECH, INC., <br><br> Defendant. | Case No. 2:21-cv-01289-MCS (MMAx) <br><br> **ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION [338]** |

Plaintiff Pavemetrics Systems, Inc. ("Pavemetrics") moves for reconsideration of the Court's order granting Defendant Tetra Tech, Inc. ("Tetra Tech")'s motion for new trial. "Notice and Mot.," ECF No. 338; "Memo ISO Mot.," ECF No. 339. Plaintiff filed a declaration and several exhibits with its motion. "First Laquer Decl.," ECF No. 340; "Pl.'s Exs.," ECF Nos. 340-1–340-13. Tetra Tech filed an opposition, a declaration, and several exhibits. "Opp'n," ECF No. 343; "Parker Decl.," ECF No. 343-1; "Dft.'s Exs.," ECF Nos. 343-2–342-8. Pavemetrics then filed a reply, a declaration, and additional exhibits. "Reply," ECF No. 344; "Second Laquer Decl.," ECF No. 345; "Pl.'s Add'l Exs.," ECF No. 345-1. The Court considered these filings and determined that the matter could be decided without oral argument; therefore, the hearing scheduled for

March 20, 2023 was taken off calendar. *See* Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated in this Order, the Motion is **DENIED**.

## I.     BACKGROUND

Pavemetrics filed this action against Tetra Tech for a declaratory judgment that its LRAIL product does not infringe U.S. Patents Nos. 10,362,293 ("the '293 Patent") and 10,616,557 ("the '557 Patent").[1] After trial, the jury found that Pavemetrics did not infringe claims 1 and 21 of the '293 Patent and claim 8 of the '557 Patent. "Judgment" 1–2, ECF No. 320. The jury also found that claims 1 and 21 of the '293 Patent and claim 8 of the '557 Patent were invalid over UML Sale and Support and UML-TRB2014, either alone or in combination. *Id*. 3–5. On January 23, 2023, the Court granted Tetra Tech's motion for new trial due to Pavemetrics' counsel's improper statements. "Order," ECF No. 335.

## II.    LEGAL STANDARD

### A.    Motion for Reconsideration

Local Rule 7-18 authorizes only three grounds upon which a motion for reconsideration may be brought:

> (a) a material difference in fact or law from that presented to the Court that, in the exercise of reasonable diligence, could not have been known to the party moving for reconsideration at the time the Order was entered, or
>
> (b) the emergence of new material facts or a change of law occurring after the Order was entered, or
>
> (c) a manifest showing of a failure to consider material facts presented to the Court before the Order was entered.

C.D. Cal. R. 7-18. The movant cannot "in any manner repeat any oral or written argument made in support of, or in opposition to, the original motion." *Id*.; *see also*

---

[1] Pavemetrics added counterclaims seeking declaratory judgment that its LRAIL product does not infringe the '557 Patent and that the '293 and '557 Patents are invalid. ("Pl.'s First Am. Countercl." ¶¶ 12–29, ECF No. 83.)

2

*Kona Enterprises, Inc. v. Estate of Bishop*, 229 F.3d 877, 890 (9th Cir. 2000) (A motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation.") "Motions for reconsideration are disfavored and should be granted only in rare circumstances." *Flores v. Callahan*, No. SACV 18-0543-RSWL (AS), 2020 WL 4875465, at *1 (C.D. Cal. May 15, 2020) (internal quotation marks omitted).

### III. DISCUSSION

The only possible basis for moving for reconsideration here is Local Rule 7-18(c). Pavemetrics argues that Tetra Tech has no evidence to support its infringement claims with respect to the '293 Patent and, therefore, Pavemetrics' counsel's conduct could not have affected the verdict. Memo ISO Mot. 6, ECF No. 339. Pavemetrics moves for reconsideration on the basis that the Court failed to consider whether Tetra Tech's infringement claims were futile. *Id*.

### A. Propriety of Pavemetrics' Motion

Pavemetrics' reconsideration motion is proper. First, Pavemetrics raises no new facts or arguments but rather repeats the arguments from its opposition to Tetra Tech's motion for new trial. Though the Court finds the extent of repetition unnecessary and inconsistent with the directive of L.R. 7-18, the Court does not view the motion as an improper attempt to rehash decided issues. *See Self v. Equinox Holdings, Inc.*, No. CV1404241MMMAJWX, 2015 WL 13298571, at *4 (C.D. Cal. May 1, 2015). Next, though the Court considered Pavemetrics' facts and arguments, it agrees that it did not expressly address whether Tetra Tech's infringement theory as to the '293 Patent is futile. Though consideration need not be express, the Court will address the futility issue herein for the parties' benefit. *See Shaked Investments Ltd. v. Trade Box, LLC*, No. 2:19-CV-10593-AB-MAA, 2021 WL 9908724, at *1 (C.D. Cal. Oct. 20, 2021).

As to the meet and confer issue, the Court finds that Pavemetrics' meet and confer request was untimely under L.R. 7-3. *See* Opp'n at 6. The Court may deny Pavemetrics' motion on this basis alone. *See Masimo Corp. v. Apple Inc.*, No.

820CV00048JVSJDEX, 2020 WL 5215385, at *2 (C.D. Cal. Aug. 4, 2020). However, because Tetra Tech had a fair opportunity to respond to Pavemetrics' arguments in its opposition brief, the Court will entertain Pavemetrics' motion on the merits. *See Santana v. Specialized Loan*, 2022 WL 17886019, at *3 (C.D. Cal. 2022).

### B. Alleged Futility of Tetra Tech's Infringement Position

#### 1. Summary of Contentions

Pavemetrics argues that even if the jury were to find Pavemetrics infringed the '293 Patent, such a finding would be improper as a matter of law. Memo ISO Mot. 17, ECF No. 339. Specifically, Pavemetrics argues that (1) its allegedly infringing offers and sales cannot constitute direct infringement because Pavemetrics offered to sell and sold unconnected components instead of a fully functional system and (2) its products do not meet the "gradient neighborhood" limitation of claim 1.[2] *Id.* at 19, 21.

First, Pavemetrics argues that no evidence suggests its offers or sales were for a connected system with installed software. *Id.* at 23. Pavemetrics argues that only an offer or sale of a functional, connected system could constitute direct infringement. *Id.* at 21. Tetra Tech argues that the Court previously considered and rejected this argument. Opp'n 14, ECF No. 343. Tetra Tech further argues that Pavemetrics sent a quotation and goods agreement to customers covering both hardware and software. *Id.* at 15. Tetra Tech also argues that Pavemetrics' witnesses described the offers and sales as "turnkey," meaning Pavemetrics offered and sold a complete, operational system. *Id.*

Pavemetrics also argues no evidence suggests the quotation and goods agreement contemplated software configured to perform the algorithm claim 1 teaches. Memo ISO Mot. 25, ECF No. 339. Rather, Pavemetrics argues, these documents refer to standard software that does not perform the claimed algorithm. Reply 9, ECF No. 344. Tetra Tech argues the system Pavemetrics offered to sell and sold, based on these documents,

---

[2] Claim 21 depends from and necessarily includes all limitations of claim 1. The Court refers only to claim 1 herein but understands the parties' arguments apply equally to claim 21.

4

included all necessary software. Opp'n 17, ECF No. 343. Tetra Tech further argues the system was configured to perform the algorithm because Pavemetrics offered the Fake3D functionalities at the time of the offer and sale. *Id.*

Second, as to the "appropriate gradient neighborhood" limitation of claim 1, the parties agree that LRAIL's neural network filters correspond to this limitation. Reply 12, ECF No. 344. The parties disagree regarding whether the filters actually infringe. Pavemetrics argues its neural network filters cannot infringe because its employees defined the filters in Canada using different hardware and software from that sold with the accused products. Memo ISO Mot. 26, ECF No. 339. Tetra Tech argues that its expert testified that Pavemetrics' product infringes by defining the appropriate gradient neighborhood when it uses the neural networks, regardless of where or when the networks were trained. Opp'n 18, ECF No. 343.

### 2. Analysis

The Court finds a new trial would not be futile at least because disputes of fact exist with respect to alleged infringement of the '293 Patent.

#### i. Unconnected System with Uninstalled Software

First, a dispute of fact exists regarding whether Pavemetrics offered and sold a fully functioning, connected system. The relevant evidence includes the quotation, the goods agreement, an advertisement, two invoices, a product manual, and witness testimony relating to the offers and sales.

The quotation lists a Laser Crack Measurement System ("LCMS") 2 including several hardware components as well as "LRAIL Software" including data acquisition and processing software configured to perform several listed functions. "Quotation," ECF No. 340-9. The quotation does not specify whether or not the quoted system would be connected and/or installed but does include labor and technical support. *Id.* The quotation does not expressly list a processor. The goods agreement provides for the sale of "LRAIL Systems and additional support." "Goods Agreement," ECF No. 340-11. An appendix to the goods agreement lists "Standard LRAIL Hardware and Software."

*Id*. The goods agreement does not indicate whether the system would be connected and/or installed, but does provide for assembly, configuration, testing, and remote support. *Id*. The goods agreement does list a processing computer under "special hardware." *Id*. An advertisement for Pavemetrics' LRAIL system also describes a system including both hardware and software. "LRAIL Ad," ECF No. 343-7.

Two Pavemetrics witnesses, Dr. Hebert and Mr. Laurent, described some of Pavemetrics' products as "turnkey." *See* Hebert Decl." ¶ 4, ECF No. 343-8; "Day 4 Trial Tr." 59:22–60:15, ECF No. 340-3. "Turnkey" means the sales included both hardware and software. Hebert Decl. ¶ 4. Both Pavemetrics witnesses testified that the products offered and sold were ultimately delivered as unconnected components without software installation. Day 4 Trial Tr. 63:11–15, 67:1–20, and 130:18–23. When using the term "turnkey," Mr. Laurent described a different sale from the accused sales. *Id*. at 59:22–60:15. Two invoices list the hardware and software the witnesses discussed. "Invoices," ECF Nos. 340-12 and 340-13. The hardware and software installation manual provides additional detail regarding the specifications of the LCMS-2 system. LCMS2 Manual," ECF No. 340-6.

Based on all of this evidence, a reasonable jury could find that the offer and sales, as memorialized by the quotation and goods agreement, contemplated connected systems with installed software. For example, both the quotation and goods agreement provide for labor, technical support, configuration and/or testing, which may suggest Pavemetrics intended to sell an operational system. Moreover, two witnesses described Pavemetrics' products as "turnkey," which typically means ready to use.

A reasonable jury could also find, based on this same evidence, that Pavemetrics did not offer or sell connected systems with installed software. The quotation and goods agreement do not expressly provide for a connected system. A jury could find, based on witness testimony, that the term, "turnkey," means only including hardware and software. Pavemetrics also presents evidence that the delivered systems included unconnected hardware and uninstalled software. While the delivery of an unconnected

system does not necessarily establish that the offers and sales contemplated an unconnected system, a jury may find this evidence helpful in evaluating what the offers and sales contemplated.

Accordingly, a new trial on infringement of the '293 Patent is not futile in light of the above described evidence and the remaining factual disputes.

Pavemetrics also raises a pure legal question: can an offer or sale of a set of unconnected components constitute direct patent infringement of a system claim? *See* Reply 11, ECF No. 344. Given the above dispute of fact, however, the Court need not resolve this legal question to find a new trial would not be futile. The jury must decide whether the offer and sale contemplated a fully operational system, or a set of unconnected components and uninstalled software based on the evidence. Still, the authority Pavemetrics cites does not necessarily settle this issue.

For instance, in both *Cross Med. v. Medtronic*, 424 F.3d 1293, 311 (Fed. Cir. 2005) and *Lutron Elecs. Co. v. Crestron Elecs., Inc.*, 907 F. Supp. 2d 1229, 1236 (D. Utah 2013), the claims at issue taught a structural limitation as opposed to a capability. Here, claim 1 requires that "a data storage apparatus in communication with at least one processor," "one sensor is in communication with the at least one processor," and "at least one processor is configured to run an algorithm." The "configured to run an algorithm" language appears to recite a capability instead of a structural limitation. The "in communication with" language could refer to a hardwired connection, but it could also refer to an inherent feature of the computer that would allow such communication. It is not definitively a structural limitation. Additionally, the Court in *Rotec Indus., Inc. v. Mitsubishi Corp.*, 215 F.3d 1246, 1252 (Fed. Cir. 2000) found manufacture of parts abroad did not constitute direct infringement of a system. Here, however, Pavemetrics did more than manufacture component parts of a system abroad; Pavemetrics allegedly offered for sale and sold systems in the United States.

A dispute of fact also exists regarding the algorithm limitations of the '293 Patent. Pavemetrics contends the above described documents, including the quotation and

goods agreement, do not provide details regarding the software. Reply 10–11. Therefore, it is unclear whether the offers and sales contemplated software configured to perform the algorithm limitations of claim 1. Tetra Tech identifies evidence suggesting that the offers and sales contemplated software including the algorithms of claim 1. For instance, around the time of the offer, Pavemetrics offered software including the accused Fake3D functionalities, which Tetra Tech contends meets the algorithm limitations. "Day 5 Trial Tr." 19:14–22, ECF No. 340-4. The jury should hear and decide this factual dispute and determine whether the offer and sale contemplated software configured to run the algorithms of claim 1.

### ii. "Gradient Neighborhood" Limitation

Second, a dispute of fact exists regarding whether Pavemetrics' accused LRAIL product "defines the appropriate gradient neighborhood" only during a prior training in Canada or when it uses the filter. Tetra Tech points to expert witness testimony in support of its position ("Day 2 Trial Tr." 181:3–6 and 182:1–3, ECF No. 340-1) as well as papers (ECF Nos. 343-3, 343-4, and 343-5) and source code (ECF No. 343-6) documenting how convolutional neural networks operate. Pavemetrics identifies testimony where Tetra Tech's expert witness indicated Pavemetrics defined filter values during a training stage. "Day 5 Trial Tr." 107:15–108:10, ECF No. 340-4. Pavemetrics also identifies attorney argument explaining the "definition" step occurs only during the training phase and not during use. *See id.* 179:9–182:11. The jury should hear and decide this factual dispute based on the testimony and other evidence presented. The jury should then determine whether the "defining" step occurs during use, as Tetra Tech contends, or only during training, as Pavemetrics contends. The record evidence supports both inferences, depending on the weight the jury gives to the papers and the credibility of Dr. Morellas and Dr. Frakes.

/ / /

/ / /

/ / /

## IV. CONCLUSION

For at least the foregoing reasons, the Court does not find a new trial would be futile as to the '293 Patent. The motion for reconsideration is **DENIED**.

**IT IS SO ORDERED.**

Dated: March 14, 2023

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE